# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

SEED COMPANY, LTD., et al,

Plaintiffs

v.

WILLIAM F. WESTERMAN, et al.

Defendants.

Civil No. 1:08-cv-00355 (RMU)

## WESTERMAN DEFENDANTS' MOTION
## TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY
## JUDGMENT, ON STATUTE OF LIMITATIONS AND CAUSATION GROUNDS

Defendants William F. Westerman; Westerman, Hattori, Daniels & Adrian, LLP; John

Kong; and Ed Kenehan (collectively "the Westerman Defendants") move this Court to dismiss

the Complaint in its entirety. In support of their motion, the Westerman Defendants submit a

Memorandum of Points and Authorities in Support, a Statement of Undisputed Material Facts

with attachments, and a proposed Order.

Respectfully submitted,

Mark London
Christopher B. Mead
cmead@londonandmead.com
London & Mead
1225 19th Street, N.W., Suite 320
Washington, D.C. 20036
(202) 331-3334

Counsel for Defendants William F. Westerman;
Westerman, Hattori, Daniels & Adrian, LLP; John
Kong; and Ed Kenehan

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a true copy of the foregoing Westerman Defendants'

Motion to Dismiss, or, in the Alternative, for Summary Judgment, on Statute of Limitations and

Causation Grounds, Memorandum of Points and Authorities in Support, Statement of

Undisputed Material Facts in Support, and proposed Order to be served on Plaintiffs by

electronic filing and to be served by email on March 21, 2008 to:

> Paul J. Maloney
> pjm@carrmaloney.com
> Michael J. Sepanik
> mjs@carrmaloney.com
> Carr Maloney P.C.
> 1615 L Street
> Washington, D.C. 20036
> Attorneys for Defendants Kratz, Quinton & Hanson LLP; Armstrong, Kratz,
> Quintos, Hanson & Brooks, LLP; Armstrong, Westerman & Hattori, LLP;
> Armstrong, Westerman, Hattori, McLeland & Naughton, LLP

and

> John H. Harman
> chhlaw587@aol.com
> Coggins, Harman & Hewitt
> 8905 Fairview Road, Suite 600
> Silver Spring, MD 20910
> personal representative of the Estate of James Armstrong, III

Christopher B. Mead

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SEED COMPANY, LTD., et al, <br><br> **Plaintiffs** <br><br> v. <br><br> WILLIAM F. WESTERMAN, et al. <br><br> **Defendants.** | Civil No. 1:08-cv-00355 (RMU) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WESTERMAN DEFENDANTS' MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, ON STATUTE OF LIMITATIONS AND CAUSATION GROUNDS

Plaintiffs allege that Defendant attorneys and their law firms committed legal malpractice during the litigation of an interference proceeding before the Board of Patent Appeals and Interferences ("the Board") and the subsequent appeal of the Board's ruling to the Federal Circuit.[1]  The Complaint alleges two distinct acts of malpractice: (1) in October, 1997, during the interference proceeding before the Board, Defendants failed to file an English translation of Plaintiff's Patent Cooperation Treaty ("PCT") Application;[2] and (2) in January, 2004, during the appeal of the Board's ruling to the Federal Circuit, the Westerman Defendants incorrectly

_____

[1]Complaint, paragraph 1.  This Memorandum, filed on behalf of Defendants William F. Westerman; Westerman, Hattori, Daniels & Adrian, LLP; John Kong; and Ed Kenehan (collectively "the Westerman Defendants"), refers to "Defendants" and "Defendant attorneys" as a group for ease of reference.  This does not constitute an admission that any of the named Defendant attorneys or law firms participated in, or are vicariously responsible for, any of the conduct alleged in the Complaint.  All references to "Plaintiffs" in this Memorandum are to Seed Company Limited and Shigeru Tamai, the Plaintiffs in this action.

[2]Complaint, paragraphs 22, 28.

advised that if Plaintiffs lost the appeal, their patent application would be returned to the patent examiner where Plaintiffs could "add or amend claims" in their patent application.[3]

The statute of limitations for legal malpractice actions is three years. The first alleged act of malpractice (the failure to file an English translation of the PCT Application) occurred in 1997, almost 10 years before the effective limitations date.[4]

Controlling precedent mandates dismissal of claims related to the failure to file an English translation on limitations grounds. Plaintiffs were on inquiry notice of the failure to file an English translation when the Board ruled in 2002 that Plaintiffs were not entitled to the benefit of the PCT Application filing date. Plaintiffs' claim accrued long before the Federal Circuit ruled against them on appeal in 2004, because they incurred attorneys' fees in 2002 for the filing of a motion for reconsideration directed solely to the Board's ruling that an English translation was required.

It is black letter law that the "continuous representation" exception to the limitations period in legal malpractice actions does not continue during subsequent appeals. Thus, the "continuous representation" doctrine would not apply after May of 2003, when a notice of appeal to the Federal Circuit terminated the interference proceeding.

Further, Plaintiffs have failed to make allegations necessary to establish causation for any damages caused by advice that Plaintiffs could submit new or amended claims even if they lost the Federal Circuit appeal. Plaintiffs have not alleged that they had any new or amended claims

---

[3]Complaint, paragraph 26.

[4]Tolling Agreements between Plaintiffs and the Defendants provide that this Court should consider the effective limitations date as no earlier than May 3, 2007. Complaint, paragraph 32.

that they believed were more valuable than the settlement offers they turned down.

## STANDARDS ON MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

As this Court has recognized, the Supreme Court has clarified the standards for resolving

motions to dismiss:

> the plaintiff must allege a "plausible entitlement to relief," by setting forth "any set of facts consistent with the allegations." *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1967, 1969 (2007) (abrogating the oft-quoted language from *Conley* [*v. Gibson,* 355 U.S. 41, 45-46 (1957)], instructing courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim [] would entitle him to relief"). While these facts must "possess enough heft to 'sho[w]' that the pleader is entitled to relief,'" a complaint "does not need detailed factual allegations." *Id.* at 1964, 1966. In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations--including mixed questions of law and fact--as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States,* 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft,* 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning* [*v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002)]. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren* [*v. District of Columbia,* 353 F.3d 36, 39 (D.C. Cir. 2004)]; *Browning,* 292 F.3d at 242.

*Bouknight v. District of Columbia,* 2008 U.S. District LEXIS 17678, *6-7 (D.D.C. March 10,

2008)(Urbina, J.).[5]

"A defendant may raise the affirmative defense of statute of limitations via a Rule

12(b)(6) motion when the facts that give rise to the defense are clear from the face of the

complaint." *Johnson v. Ashcroft,* 2005 U.S. Dist. LEXIS 17961, *14-15 (D.D.C. August 17,

2005)(Urbina, J.), *citing Smith-Haynie v. District of Columbia,* 332 U.S. App. D.C. 182, 155

F.3d 575, 578 (D.C. Cir. 1998). However, because limitations issues often involve issues of

---

[5]*Bouknight v. District of Columbia* and other unpublished opinions cited in this Memorandum can be found at Exhibit 1 to this Memorandum.

contested fact, "the court should grant a motion to dismiss only if the complaint on its face is

conclusively time-barred." *Id., citing Smith-Haynie, supra,* and *Doe v. Department of Justice,*

243 U.S. App. D.C. 354, 753 F.2d 1092, 1115 (D.C. Cir. 1985).

Under Fed.R.Civ.Pro. 12(d), "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters

outside the pleadings are presented to and not excluded by the court, the motion must be treated

as one for summary judgment under Rule 56."

> In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson* [*v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)]. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex* [*v. Catrett,* 477 U.S. 317, 322 (1986)]. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

*Pierce v. Mansfield*, 530 F. Supp. 2d 146, 155 (D.D.C. 2008)(Urbina, J.).

## STATEMENT OF UNDISPUTED MATERIAL FACTS[6]

On July 31, 1991, Plaintiffs filed Japanese Patent Application No. 3-68371 ("JP '371")

for a correction tape dispenser.[7] On July 24, 1992, <u>less than one year after filing JP '371,</u>

Plaintiffs filed Patent Cooperation Treaty Application No. PCT/JP92/00947 ("the PCT '947

---

[6]Pursuant to Local Rule 7(h), the Westerman Defendants are filing with this motion a separate Statement of Undisputed Material Facts, identical in text to this section of this Memorandum. The separate Statement of Undisputed Material Facts contains additional citations and exhibits supporting each assertion of fact.

[7]Complaint, paragraph 13.

Application"), the first step in obtaining a U.S. patent for the same claims.[8]

In March, 1993, Plaintiffs retained Defendant attorneys to prosecute a U.S. patent claim based on the PCT '947 Application. On March 29, 1993, more than one year after the filing of JP '371, Defendants filed U.S. Patent Application Serial No. 08/030,183 directed to the subject matter of the JP '371 and PCT '947 Application ("the '183 Application"). On February 15, 1994, Defendants filed U.S. Patent Application Serial No. 08/196,839 ("the '839 Application"), a continuation-in-part of the '183 Application.[9]

A competing patent applicant, Christopher Stevens, filed an application for a similar correction tape dispenser. Stevens actually received a patent for his device, which issued on February 28, 1995 ("the Stevens patent"). In 1997, however, the U.S. Patent Office determined that Plaintiffs' patent claims and the Stevens patent were not patentably distinct, and declared an interference proceeding to determine which party could claim priority by demonstrating through earlier filed applications that they had reduced their patent claims to practice.[10]

In interference proceedings, 37 C.F.R. 1.633(f) provides that a party may file a preliminary motion "to be accorded the benefit of the filing date of an earlier filed application." 37 C.F.R. 1.637 provides that a party filing such a preliminary motion has the burden of proof to establish entitlement to the relief sought. Section 1.637(f)(2) says that if the earlier application is not in English, "the requirements of section 1.647 must also be met." 37 C.F.R. 1.647 says:

---

[8]Complaint, paragraph 14.

[9]Complaint, paragraphs 16-18.

[10]Complaint, paragraphs 19-20; *Stevens v. Tamai*, 366 F.3d 1325, 1330-31 (Fed. Cir. 2004)(describing interference proceedings).

"When a party relies on a document or is required to produce a document in a language other than English, a translation into English and an affidavit attesting to the accuracy of the translation shall be filed with the document."[11]

In the interference proceeding, Stevens filed an unopposed motion to be accorded the benefit of a February 10, 1993, United Kingdom patent application for his device. On October 21, 1997, Defendant attorneys filed a motion to have Plaintiffs accorded the benefit of their July 31, 1991 Japanese Patent Application, JP '371, and the July 24, 1992 PCT '947 Application. Defendant attorneys filed an English translation of the JP '371 application. However, they did not file an English translation of the PCT '947 Application. The attorneys believed that an English translation of the PCT '947 Application was unnecessary, because an English translation had been included in the '183 Application and had been accepted by the Patent Office.[12]

Stevens argued that the failure to file an English translation for the PCT '947 Application meant that Plaintiffs had not met their burden of proof, and should not get the benefit of its 1992 filing date. On June 25, 2002, the Board of Patent Appeals and Interferences ("the Board") issued an opinion agreeing that the failure to file an English translation meant that Plaintiffs were not entitled to the benefit of the PCT '947 Application. However, the Board ruled that Plaintiffs were entitled to the filing date for their 1991 Japanese patent application, and held that Plaintiffs

---

[11]*See Stevens v. Tamai, supra*, 366 F.3d at 1328.

[12]Complaint, paragraphs 21-22; Declaration of William F. Westerman ("Westerman Dec."), paragraph 4, attached as Exhibit 1 to Statement of Undisputed Material Facts in Support of Westerman Defendants' Motion to Dismiss, Or, in the Alternative, for Summary Judgment, on Statute of Limitations and Causation Grounds.

were entitled to priority over the Stevens claims.[13]

Unfortunately for Plaintiffs, the Board's ruling carried the seeds of its own dismissal.  35 U.S.C. 119(a) provides:

> An application for patent for an invention filed in this country by any person who has . . . filed an application for a patent for the same invention in a foreign country . . . shall have the same effect as the same application would have if filed in this country on the date on which the application for patent . . . was first filed in such foreign country, if the application in this country is filed within twelve months from the earliest date on which such foreign application was filed . . . .

Plaintiffs filed the '183 Application more than one year after the JP '371 Application.  Thus, losing the benefit of the PCT '947 Application broke the required one-year chain.

Defendant attorneys notified Plaintiffs of the risk that the Board's requirement of an English translation "could potentially break the chain of priority between the JP '371 and the US '183 applications."  Defendant attorneys filed a motion for reconsideration with the Board on July 25, 2002, arguing that an English translation of the PCT '947 application was not required.  The motion for reconsideration ended its argument by asking: "If this request is denied, it is respectfully requested that the Board explain how Tamai is entitled to the benefit of the JP '371 application without the linking PCT application in the chain of priority."[14]

The motion for reconsideration dealt solely with the issue of the failure to file an English translation of the PCT '947 Application.  Plaintiffs paid a minimum of $4,000 in fees for the preparation and filing of the motion for reconsideration in October, 2002, more than four years

---

[13]Complaint, paragraph 23; Westerman Dec., paragraph 5.

[14]Westerman Dec., paragraphs 7-8.  *See* letter of July 12, 2002, from William F. Westerman to Mr. Kenji Itami, attached to the Westerman Dec. as Exhibit A; Senior Party Tamai's Request for Reconsideration Under 37 C.F.R. 1.658(b) of June 25, 2002 Board Decision at 7, attached as Exhibit B to the Westerman Dec.; *Stevens v. Tamai*, 366 F.3d at 1329.

before the effective limitations date.[15]

The Board issued a Decision on Request for Reconsideration in March, 2003, reaffirming its ruling that Plaintiffs were required to file an English translation of the PCT '947 Application. The Board did not address Plaintiffs' request for an explanation of how they could be accorded the benefit of the JP '371 Application, and declined to modify its opinion.[16]

Stevens filed a Notice of Appeal of the Board's decision to the Federal Circuit on May 12, 2003.[17] That Notice of Appeal terminated the interference litigation before the Board.

As the Federal Circuit noted, Plaintiffs and their Defendant attorneys conceded on the appeal that without the PCT '947 Application, they could not get the benefit of the earlier filed JP '371 Application. *Stevens v. Tamai*, 366 F.3d at 1331. Plaintiffs were thus on notice that they would lose the Federal Circuit Appeal if the Federal Circuit affirmed the Board's holding that an English translation of the PCT '947 Application was necessary.

The Complaint alleges that in January, 2004, while the appeal was pending in the Federal Circuit, attorney Westerman incorrectly advised Plaintiffs that even if they lost the pending appeal, Plaintiffs' application would be returned to the patent examiner with an opportunity to "add or amend claims." The Complaint alleges that Plaintiffs turned down settlement offers in January and July, 2004, as a result of that allegedly negligent advice.[18]

---

[15]Westerman Dec., paragraphs 9-14, and exhibits C and D to that Declaration.

[16]Westerman Dec., paragraph 15; *see* Decision on Request for Reconsideration, mailed March 13, 2003, attached as Exhibit E to the Westerman Dec.

[17]Westerman Dec., paragraph 16; *see* Notice of Appeal, attached as Exhibit F to that Declaration.

[18]Complaint, paragraphs 25-27, 29.

– 8 –

On May 4, 2004, the Federal Circuit issued an opinion affirming the Board's holding that Plaintiffs lost the benefit of the PCT '947 Application because of the failure to file an English translation. The Federal Circuit reversed the Board's ruling that Plaintiffs were entitled to priority, holding that the unavailability of the PCT '947 Application broke the one-year chain required by 35 U.S.C. 119(a). *Stevens v. Tamai, supra.*

The Complaint alleges that in December, 2006, Westerman admitted that he had been mistaken in believing that Plaintiffs' application would be returned to the examiner. Instead, the Federal Circuit's decision meant that "no further action is needed," and "a notice of abandonment should be issued."[19]

The Complaint does not allege that Plaintiffs believed that they had any new or amended claims that would have exceeded the value of the settlement offers they refused.

## ARGUMENT

I. **THE STATUTE OF LIMITATIONS BARS ALL CLAIMS BASED ON A FAILURE TO FILE AN ENGLISH TRANSLATION OF THE PCT APPLICATION IN 1997.**

A. **D.C. Law Applies.**

Plaintiffs allege diversity as the basis for federal jurisdiction.[20] A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). The District of Columbia Court of Appeals recently summarized its choice of law analysis:

[i]n determining which jurisdiction's law to apply in a tort case, we use the

---

[19]Complaint, paragraph 30.

[20]Complaint, paragraph 10.

- 9 -

"governmental interests" analysis, under which we evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be more advanced by the application of its law to the facts of the case under review. As part of this analysis we also consider the four factors enumerated in the Restatement (Second) of Conflict of Laws § 145 [1971]: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship is centered. . . . When both jurisdictions have an interest in applying their own laws to the facts of the case, the forum law will be applied unless the foreign jurisdiction has a greater interest in the controversy.

*Drs. Groover, Christie & Merritt v. Burke*, 917 A.2d 1110, 1117 (D.C. 2007) (quotation marks, brackets in original, and citations omitted).

Plaintiffs hired Defendants in the District of Columbia to pursue patent rights under U.S. law, and to conduct patent litigation in D.C. before U.S. courts. Although Plaintiffs are located in Japan, they allege harms to their economic interests in the United States. The alleged conduct causing the injury occurred in the District, Defendants work in the District, and the relationship between the parties was centered in the District. Accordingly, D.C. law clearly applies.

### B.      The D.C. Statute Of Limitations For Legal Malpractice Is Three Years.

Under District of Columbia law, the statute of limitations for legal malpractice actions is three years. D.C. Code 12-301(8); *Bradley v. National Association of Securities Dealers Dispute Resolution, Inc.*, 369 U.S. App. D.C. 79; 433 F.3d 846, 849 (D.C. Cir. 2005).

### C.      Plaintiffs Were On Inquiry Notice Of The Failure To File A Required English Translation In 1997, And The Board's Ruling In 2002 Confirmed It.

The Complaint alleges that on May 9, 1997, the U.S. Patent Office found that Plaintiffs' patent claims for a correctable tape dispenser were not distinct from the patent claims of Christopher Stevens for a similar device. The Patent Office declared an interference proceeding

before the Board of Patent Appeals and Interferences.[21]  The Complaint alleges that on October 21, 1997, Defendants filed a motion in the interference proceeding to grant priority to Plaintiffs' '839 patent application based on the earlier filing dates of PCT application and Plaintiffs' '371 Japanese patent application.  Defendant attorneys did not file an English translation of the PCT application.[22]

Stevens argued from that point forward that the attorneys' failure to file an English translation of the PCT application meant that Plaintiffs should not be given the benefit of the early filing dates of the PCT application and the Japanese patent application.  The Complaint specifically alleged that on June 25, 2002, the Board held that the failure to file an English translation meant that Plaintiffs could not benefit from the filing date of the PCT application.[23]

In ruling on a motion to dismiss, this Court may consider "documents attached as exhibits or incorporated by reference in the complaint . . . ."  *Gustave-Schmidt v. Chao,* 226 F. Supp. 2d 191, 196 (D.D.C. 2002*)* (Walton, J.).  The Board's opinion, referenced in paragraph 23 of the Complaint, specifically noted Stevens' argument that Defendants had failed to file a required English translation of the PCT application.[24]  The record is clear; before the Board issued its opinion on June 25, 2002, Stevens had argued that the failure to file an English translation of the PCT application was fatal to Plaintiffs' patent claims in the interference.  The Board's opinion

---

[21]Complaint, paragraph 20.

[22]Complaint, paragraph 22.

[23]Complaint, paragraph 23.

[24]*See Stevens v. Tamai,* Patent Interference No. 103,662, June 25, 2002, at p. 21 (attached as Exhibit 2 to this Memorandum).

held that the translation was required. Accordingly, Plaintiffs were on inquiry notice of

Defendants' failure to file the translation by at least June, 2002.

Under D.C. law, a plaintiff has "inquiry notice" of a claim for legal malpractice "as of the

time a reasonable investigation would have led to actual notice." *Wagner v. Sellinger*, 847 A.2d

1151, 1154 (D.C. 2004), *citing Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996)(opinion of

Ruiz, J.). "In short, knowledge is deemed sufficient if the plaintiff has reason to suspect that the

defendant did something wrong, even if the full extent of the wrongdoing is not yet known."

*Wagner v. Sellinger*, *supra*, 847 A.2d at 1154, *citing Morton v. National Med. Enters., Inc.*, 725

A.2d 462, 468-69 (D.C. 1999).

Based on the allegations of the Complaint and the text of the Board's June 25, 2002

opinion, incorporated by reference, there is no dispute that Plaintiffs were on inquiry notice at

least as early as June, 2002, that Defendants had failed to file a required English translation.

**D.    Plaintiffs Suffered Injury, And Their Claim Accrued, At Least
As Early As July 2002, When Plaintiffs Incurred And Paid Attorneys
Fees Addressing The Issue Of A Failure To File An English Translation.**

In July, 2002, Plaintiffs and their attorneys filed a motion for reconsideration with the

Board. The motion for reconsideration addressed only one issue–the effect of a failure to file an

English translation of the PCT '947 Application. Plaintiffs would not have filed that motion but

for the allegedly negligent failure to file a translation. Plaintiffs suffered economic loss as a

result, because they paid legal fees for the preparation and filing of the  motion for

reconsideration. While any additional damages from the failure to file a translation might have

been uncertain, it is undisputed that by July, 2002, the failure to file a translation had begun to

cause economic injury to Plaintiffs, in the form of incurred attorneys' fees. Plaintiffs paid for the

- 12 -

filing of the motion for reconsideration in October, 2002, more than four years before the

effective limitations date.

The law in the District of Columbia is crystal clear–the statute of limitations for legal

malpractice actions starts to run when the client begins to suffer damages by paying additional

attorneys' fees resulting from the alleged negligence.  As the Court of Appeals for the District of

Columbia has written:

> It is not necessary that all or even the greater part of the damages have to occur
> before the cause of action arises.  *United States v. Gutterman*, 701 F.2d 104, 106
> (9th Cir. 1983)(quoting *Bell v. Hummel & Pappas*, 136 Cal. App.3d 1009, 1-15,
> 186 Cal. Rptr. 688, 694 (1982)); *see also Cantu v. Saint Paul Companies*, 401
> Mass. 53, 514 N.E.2d 666, 668-69 (1987). . . .  We conclude that attorney's fees
> and costs expended as a result of an attorney's alleged malpractice constitute
> legally cognizable damages for purposes of stating a claim for such malpractice.
> *See Wettanen* [*v. Cowper*, 749 P.2d 362, 365 (Alaska 1988)](plaintiff-client was
> injured when he retained new counsel and paid costs of appealing trial court order
> because of attorney's alleged negligence); *Cantu*, 514 N.E.2d at 669 (legal fees
> expended by plaintiff to ameliorate harm caused by alleged legal malpractice
> considered legal injury); *Budd* [*v. Nixon*, 6 Cal.3d 195, 491 P.2d 433, 437, 98 Cal.
> Rptr. 849 (1971)](plaintiff-client compelled to "incur and pay attorney's fees and
> legal costs and expenditures" would sustain sufficient injury to run statute of
> limitations claim).  The fact that not all of a client's damages are finally
> ascertainable pending the outcome of an appeal may suggest in some
> circumstances that trial of the malpractice action should be stayed pending the
> appeal; it does not indicate that the client has not been injured earlier.

*Knight v. Furlow*, 553 A.2d 1232, 1235-36 (D.C. 1989).

In strongly analogous circumstances, the D.C. Circuit affirmed Judge Gasch's ruling

granting summary judgment on limitations grounds to defendant attorneys in *Williams v.

Mordofsky*, 284 U.S. App. D.C. 52, 901 F.2d 158 (D.C. Cir. 1990).  In that case, plaintiff

business owners made an application to the FCC in 1981 for a license to construct a TV station

in Salt Lake City.  In their application, plaintiffs represented that they would work full time

running the TV station.

In 1982, while the TV application was still pending, plaintiffs hired defendant attorneys to represent them in connection with an application to the FCC to build a cellular radio facility. Plaintiffs told the FCC they would work full time on that cellular radio facility.

At a hearing on the TV station application in August, 1984, one of the plaintiffs was cross-examined about the conflicting full-time commitments in the TV application and the cellular radio application. A different law firm represented plaintiffs on the TV application; that firm advised plaintiffs after the August hearing that the TV application was in "deep trouble" unless plaintiffs could explain the conflict between TV and cellular radio applications.

In November, 1984, the FCC administrative law judge requested an additional hearing on the TV application to determine whether plaintiffs' full-time commitment "lacked candor." Plaintiffs spent $7,235 in attorneys' fees trying to straighten out the confusion over the dueling time commitments and preparing for the hearing, which took place in January, 1985.

The ALJ ruled against Plaintiffs in May, 1985. They filed suit in January, 1988, alleging that the attorneys representing them on the cellular radio facility application had been negligent in advising them to make a full-time commitment in that application.

Judge Gasch ruled that the statute of limitations began to run when plaintiffs started incurring attorneys' fees to deal with the issue of the conflicting time commitments. The D.C. Circuit affirmed, holding: "the first element, existence of actual injury, was satisfied by the accrual of $7,235 in legal fees in November 1984." *Williams*, 901 F.2d at 162.

The D.C. Circuit ruled that plaintiffs' injury began when they started to incur attorneys' fees as a result of the alleged negligence, <u>six months before the ALJ ruled against plaintiffs</u>. The

- 14 -

same analysis applies here.  Plaintiffs in this action were aware of the allegedly negligent failure

to file an English translation; they incurred attorneys' fees specifically addressing that issue at

least as early as July, 2002, and paid the bill in October, 2002.  They knew by June, 2002, that

the Board had ruled that the failure to file an English translation meant that they could not obtain

the benefit of the PCT '947 Application.  They knew, at least as early as when their attorneys

filed the motion for reconsideration with the Board in July, 2002, that without the benefit of the

PCT '947 Application, they risked not obtaining the benefit of their Japanese patent application.

Accordingly, under the reasoning of *Knight v. Furlow* and *Williams v. Mordofsky*, the

statute of limitations began to run at least as early as July, 2002, when Plaintiffs started incurring

attorneys' fees to address the failure to file an English translation, not in May, 2004, when the

Federal Circuit ruled against them.[25]

      **E.**      **The Continuous Representation Rule**
                    <u>**Does Not Apply To Subsequent Appeals.**</u>

      The District of Columbia has adopted an exception to the discovery rule in legal
malpractice suits–the continuous representation rule.  Under this rule, "when the
injury to the client may have occurred during the period the attorney was retained,
the malpractice cause of action does not accrue until the attorney's representation
concerning <u>the particular matter in issue</u> is terminated."  *R.D.H. Communs v.
Winston*, 700 A.2d 766, 768 (D.C. 1997)(quoting *Weisberg v. Williams, Connolly
& Califano*, 390 A.2d 992, 995 (D.C. 1977).

---

[25]*Wagner v. Sellinger*, 847 A.2d 1151 (D.C. 2004), is not to the contrary.  In that case,
defendants presented no evidence that plaintiffs had incurred additional attorneys' fees as a result
of the alleged malpractice more than three years before filing suit.  The D.C. Circuit noted this
crucial distinction in *Havens v. Patton Boggs, LLP*, 235 Fed. Appx. 750, 2007 U.S. App. LEXIS
11914, *2-3 (D.C. Cir. 2007) (unpublished; attached in Exhibit 1 to this Memorandum)("While it
is true that in some cases the existence of an injury from inferior representation may not be
evident until a final verdict, *see Wagner v. Sellinger*, 847 A.2d 1151, 1156 (D.C. 2004), this is
not always the case, *see Weisberg v. Williams, Connolly & Califano*, 390 A.2d 992, 995 (D.C.
1978)").

*Bradley v. National Association of Securities Dealers Dispute Resolution, Inc.*, 369 U.S. App.

D.C. 79, 433 F.3d 846, 850 (D.C. Cir. 2005)(emphasis added).

However, it is black letter law in the District of Columbia that the continuous

representation rule does not apply to subsequent appeals. *See Bradley,* 433 F.3d at 851 ("The

court in *Winston* also set an outer bound on the duration of the 'specific dispute'–it does not

include appeals. [*R.D.H. Communs v. Winston.* 700 A.2d] at 770-71; *see also Knight v. Furlow*,

553 A.2d 1232, 1235 (D.C. 1989)"); *Galluci v. Schaffer*, 507 F. Supp.2d 85, 91 (D.D.C.

2007)(Kessler, J.)("The scope of the 'particular matter in issue' extends to a final, appealable

decision, but does not include appeals")(citing *Bradley*).

Accordingly, this Court should dismiss all of Plaintiffs' claims based on the failure to file

an English translation of the PCT '947 Application, because those claims accrued at least as early

as July, 2002, and are barred by the applicable three-year statute of limitations.

**II.    PLAINTIFFS HAVE NOT ALLEGED THAT THEY
BELIEVED THAT ANY NEW OR AMENDED CLAIMS WERE MORE
VALUABLE THAN THE SETTLEMENT OFFERS THEY TURNED DOWN.**

Plaintiffs allege that in January, 2004,[26] the Westerman Defendants incorrectly advised

them that even if they lost the Federal Circuit Appeal, their application would be returned to the

patent examiner with the opportunity to add or amend claims.[27]  Plaintiffs allege that later in

---

[26]Defendants gave the allegedly negligent advice that the application would return to the
patent examiner more than three years before the applicable limitations date.  Plaintiffs have
failed to allege that they were not on inquiry notice of this alleged negligence.  Nor have they
pled facts sufficient to establish the continuous representation rule.  Without waiving their statute
of limitations defense, the Westerman Defendants assume that, with leave to amend, Plaintiffs
can plead sufficient facts to defeat a statute of limitations defense at this stage of the litigation.

[27]Complaint, paragraph 26.

January, 2004, before the Federal Circuit ruled on Stevens' appeal, they turned down a settlement offer from Stevens that would have granted each party a royalty-free, non-exclusive license, including the right to sublicense, for the other party's patent rights.[28]  Plaintiffs allege that in July, 2004, after the Federal Circuit ruled in favor of Stevens, Plaintiffs turned down a settlement offer for mutual cross-licenses, without a right to sublicense.[29]

The Complaint does not make a crucial allegation–it does not say that Plaintiffs believed that they had any new or amended claims that would have had an estimated economic value exceeding the value of either or both settlement offers.  This pleading failure is more than academic.  The Westerman Defendants contend that Plaintiffs did not turn down the settlement offers because of the possibility of adding new or amended claims.  Further, the Westerman Defendants contend that Plaintiffs did not have any new or amended claims that would have resulted in any substantial economic value.

Plaintiffs must plead facts sufficient to show that Defendants' alleged negligence "resulted in and was the proximate cause of loss to the client." *Niosi v. Aiello*, 69 A.2d 57, 60 (D.C. 1949).   The allegedly negligent advice that Plaintiffs' application would return to the patent examiner even if they lost the Federal Circuit appeal was the proximate cause of Plaintiffs' decision to reject the two settlement offers only if Plaintiffs believed that any new or amended claims would be more valuable than the settlement offers.  The Westerman Defendants do not believe that Plaintiffs can in good faith plead this crucial link to causation.

Accordingly, Plaintiffs' claims based on the allegedly negligent advice in January, 2004,

---

[28]Complaint, paragraphs 25, 27.

[29]Complaint, paragraph 29.

should be dismissed, unless Plaintiffs can plead, in good faith and subject to Rule 11, that they believed that any new or amended claims were worth more than the value of the settlement offers.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed in its entirety.

Respectfully submitted,

Mark London
Christopher B. Mead
London & Mead
1225 19th Street, N.W., Suite 320
Washington, D.C.  20036
(202) 331-3334

Counsel for Defendants William F. Westerman;
Westerman, Hattori, Daniels & Adrian, LLP; John
Kong; and Ed Kenehan

# EXHIBIT
# 1

LEXSEE 2008 US DIST LEXIS 17678

**ANTHONY BOUKNIGHT, Plaintiff, v. DISTRICT OF COLUMBIA, Defendant.**

**Civil Action No. 06-2118 (RMU), Document Nos. 8, 9**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

*2008 U.S. Dist. LEXIS 17678*

**March 10, 2008, Decided**

**COUNSEL:** [*1] For ANTHONY BOUKNIGHT, Plaintiff: Donna Williams Rucker, LEAD ATTORNEY, DUBOFF & ASSOCIATES, CHARTERED, Silver Spring, MD.

For DISTRICT OF COLUMBIA GOVERNMENT (D.C. FIRE AND EMS DEPARTMENT), Defendant: James H. Vricos, OFFICE OF THE ATTORNEY GENERAL FOR THE DISTRICT OF COLUMBIA, Washington, DC.

**JUDGES:** RICARDO M. URBINA, United States District Judge.

**OPINION BY:** RICARDO M. URBINA

**OPINION**

**MEMORANDUM OPINION**

DENYING WITHOUT PREJUDICE THE DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT; ORDERING THE PLAINTIFF TO PROVIDE A MORE DEFINITE STATEMENT

### I. INTRODUCTION

This matter comes before the court on the defendant's motion to dismiss or, in the alternative, for summary judgment. The plaintiff, Anthony Bouknight, brings a discrimination and a hostile work environment claim against his employer the District of Columbia, the defendant. Specifically, the plaintiff alleges that the defendant harassed, threatened, transferred and suspended him in violation of Title VII of the Civil Rights Act of 1964, *42 U.S.C. §§ 2000e et seq.* and the D.C. Human Rights Act, D.C. Code §§ 2-1401 *et seq.* [1] Because the plaintiff's complaint is too vague and conclusory to allow the court to thoroughly evaluate the defendant's motion to dismiss, [*2] the court converts the motion to one for a more definite statement and orders the plaintiff to provide greater factual specificity in support of his claims. In addition, the court denies the defendant's motion to dismiss the plaintiff's racial discrimination claim based on his transfer because it is unclear whether the transfer adversely affected the plaintiff's earning capacity.

1

The plaintiff acknowledges that he failed to comply with the notice requirement in *D.C. Code § 12-309* for claims arising under the D.C. Human Rights Act, D.C. Code §§ 2-1401 *et seq.* Pl.'s Opp'n at 2. He, therefore, voluntarily dismisses these claims, which include retaliation, intentional infliction of emotional distress, negligence, negligent hiring and negligent supervision. *Id.*

### II. FACTUAL & PROCEDURAL BACKGROUND

The plaintiff alleges the following facts in support of his claims. The plaintiff, who is African-American, began serving as a paramedic with the D.C. Fire and EMS department in December 1991. Am. Comp. PP 6-7. On

August 6, 2006, the plaintiff and his partner, Matthew Shook, who is Caucasian, responded to a call at 3800 Reservoir Road, N.W., Washington, D.C. *Id.* P 8. The plaintiff drove an ambulance [*3] to the scene where Shook proceeded to provide a patient care while the plaintiff assisted the patient's mother into the front passenger seat of the ambulance. *Id.* PP 10-12. The plaintiff then drove the patient and her mother to the Georgetown University Hospital emergency room. *Id.* P 13. Once they arrived, the plaintiff assisted the patient's mother out of the ambulance while Shook accompanied the patient into the emergency room. *Id.*

On August 22, 2005, the plaintiff's supervisor, Captain Hattie Thompkins, who is African-American, instructed the plaintiff and Shook to report to her office where she informed both men that the mother of the patient they assisted on August 6, 2005 had filed a complaint against them. *Id.* PP 17-18, 25. The Captain called the plaintiff into her office again on August 30, 2005 and told the plaintiff that no disciplinary action would be taken against him as a result of their discussions at that meeting. *Id.* P 23. Shortly thereafter, Thompkins notified the plaintiff that she would be transferring the plaintiff and Shook to separate units effective September 4, 2005. *Id.* P 24. Approximately one week later, Thompkins told the plaintiff that although he did nothing [*4] wrong, she transferred him because he is African-American. *Id.* P 25.

Then, on October 1, 2005, Thompkins recommended that the plaintiff be suspended for being "[i]nefficient; to wit: [n]egligent or careless work performance." *Id.* P 27. And on January 18, 2006, the D.C. Emergency Medical Services Department suspended the plaintiff for nine calendar days effective February 11, 2006 through February 20, 2006. Pl.'s Opp'n, Ex. 7.

In December 2005, the plaintiff filed a D.C. Office of Human Rights ("OHR") Complaint (cross-filed with the Equal Employment Opportunity Commission ("EEOC")) for racial discrimination based on his transfer to another unit. Def.'s Mot., Ex. A ("OHR Compl."). In March 2006, the plaintiff amended his OHR Complaint to include his suspension as an additional ground for racial discrimination. Def.'s Mot. Ex. B ("OHR Am."). The OHR issued a letter of determination on June 13, 2006, rejecting the plaintiff's discrimination claim arising from the transfer, stating that the plaintiff "fail[ed] to establish that he suffered an adverse action, and this failure is fatal

to his charge of discrimination." Pl.'s Opp'n, Ex. 9. OHR did, however, determine that probable cause exists [*5] to "believe that [the defendant] discriminated against [the plaintiff] on the basis of his race (Black) when it suspended him for nine (9) calendar days." *Id.*

Six months later, the plaintiff filed a complaint in this court alleging discrimination and hostile work environment on account of his race. *See generally* Am. Compl. The plaintiff claims that as a result of this harassment he suffered "embarrassment, humiliation, pain and suffering . . . [and] sustained damages and/or injuries that are permanent in nature." *Id.* P 41. As a result, the plaintiff seeks attorneys' fees, $ 500,000 in compensatory and punitive damages and declaratory and injunctive relief. *Id.* P 42. On March 5, 2007, the defendant filed a motion to dismiss, or in the alternative for summary judgment. Now fully briefed, the court turns to the defendant's motion.

## III. ANALYSIS

### A. Legal Standard for a 12(b)(6) Motion to Dismiss

A *Rule 12(b)(6)* motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton, 352 U.S. App. D.C. 4, 292 F.3d 235, 242 (D.C. Cir. 2002).* The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams, 358 U.S. App. D.C. 295, 348 F.3d 1033, 1040 (D.C. Cir. 2003)* [*6] (citing *FED. R. CIV. P. 8(a)(2)* and *Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)*). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley, 355 U.S. at 47-48* (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sonoma N.A., 534 U.S. 506, 511-14, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)*, or "plead law or match facts to every element of a legal theory," *Krieger v. Fadely, 341 U.S. App. D.C. 163, 211 F.3d 134, 136 (D.C. Cir. 2000)* (internal quotation marks and citation omitted).

Yet, the plaintiff must allege a "plausible entitlement to relief," by setting forth "any set of facts consistent with the allegations." *Bell Atl. Corp. v. Twombly, 127 S. Ct.*

2008 U.S. Dist. LEXIS 17678, *6

*1955, 1967, 1969, 167 L. Ed. 2d 929 (2007)* (abrogating the oft-quoted language from *Conley, 355 U.S. at 45-46*, instructing courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim [] would entitle him to relief"). While these facts must [*7] "possess enough heft to 'sho[w] that the pleader is entitled to relief,'" a complaint "does not need detailed factual allegations." *Id. at 1964, 1966.* In resolving a *Rule 12(b)(6)* motion, the court must treat the complaint's factual allegations--including mixed questions of law and fact--as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States, 357 U.S. App. D.C. 223, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); Holy Land Found. for Relief & Dev. v. Ashcroft, 357 U.S. App. D.C. 35, 333 F.3d 156, 165 (D.C. Cir. 2003); Browning, 292 F.3d at 242.* While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren, 353 F.3d at 39; Browning, 292 F.3d at 242.*

**B. The Plaintiff's Hostile Work Environment Claim**

The defendant insists that the plaintiff's alleged acts in support of his hostile work environment claim--his transfer and his suspension--"are patently insufficient to survive a *Rule 12(b)(6)* challenge." Def.'s Mot. at 11-12. In response, the plaintiff summarily concludes that he "did allege facts regarding a hostile work environment," and that "[a]llegations of [*8] the same are acknowledged by the OHR." Pl.'s Opp'n. at 6. It is undisputed that the plaintiff has alleged that he is a member of a protected class, that the defendant took adverse action on account of his race, and that this action materially affected the terms and conditions of his employment. *See generally* Am. Compl. Thus, the defendant's sole point of contention is that the plaintiff has not alleged the type and quantity of incidents necessary to set forth a claim of hostile work environment. 2 Def.'s Mot. at 11-12; *see Williams v. Chertoff, 2005 U.S. Dist. LEXIS 38847, 2005 WL 3200794, at *3 (D.D.C. Nov. 1, 2005)* (concluding that the plaintiff alleged "enough incidents of alleged discrimination to set forth a claim of hostile environment"). "Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. . . . [They] cannot be said to occur on any particular day [but] over a series of days or perhaps years . . . . [A] single act of harassment may not be

actionable on its own." *Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)* (quoting *42 U.S.C. § 2000e-5(e)(1)*) (internal citations and quotations omitted). Indeed, "except in extreme circumstances, [*9] courts have refused to hold that one incident is so severe to constitute a hostile work environment." *Stanford v. Potomac Elec. Power Co., 2006 U.S. Dist. LEXIS 41468, 2006 WL 1722329, at *6 (D.C. Cir. June 21, 2006)* (quoting *Stewart v. Evans,* Civ. No. 00-1241, at 6 (D.D.C. Feb. 6, 2001)). Even when a plaintiff alleges multiple incidents of discrimination, allowing them "to be converted into a contemporaneous hostile work environment claim . . . would significantly blur the distinctions between both the elements that underpin each cause of action and the kinds of harm each cause of action was designed to address." *Rattigan v. Gonzales, 503 F. Supp. 2d 56, 82 (D.D.C. 2007)* (quoting *Parker v. State Dep't of Pub. Safety, 11 F. Supp. 2d 467, 475 (D. Del. 1998)).* A hostile work environment claim, for example, "must be based on 'one unlawful employment practice' of pervasive, insulting, discriminatory conduct that makes the plaintiff's day-to-day work environment severely 'abusive.'" *Id.* (quoting *Morgan, 536 U.S. at 117*).

2

The defendant makes an additional argument that the hostile work environment claim should be dismissed because the plaintiff failed to exhaust his administrative remedies. Def.'s Mot. at 12. Title [*10] VII suits are "limited in scope to claims that are 'like or reasonably related to the allegations of the [OHR] charge and grow[s] out of such allegations.'" *Park v. Howard Univ., 315 U.S. App. D.C. 196, 71 F.3d 904, 907 (D.C. Cir. 1995)* (quoting *Cheek v. Western & Southern Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994)).* The plaintiff's OHR Complaint and Amendment recite allegations of racial discrimination based on the plaintiff's transfer and nine-day suspension respectively. OHR Compl.; OHR Am. Because the

2008 U.S. Dist. LEXIS 17678, *10

alleged discriminatory conduct the plaintiff uses as the foundation for his hostile work environment claim is the same conduct the plaintiff included in his complaints before the OHR, the plaintiff has adequately exhausted his administrative remedies. *Compare* Am. Compl. PP 17-28 (alleging that his transfer and suspension were due to his race) *and* OHR Compl. *and* OHR Am. (same); *Nurriddin v. Goldin, 382 F. Supp. 2d 79, 106 n.10 (D.D.C. 2005)* (observing that exhaustion of administrative remedies for hostile work environment claims is less stringent than for discrete claims of discrimination or retaliation, in that a plaintiff "need only have filed an EEOC complaint alleging some of the claims that comprise [*11] the hostile work environment claim").

In this case, the plaintiff's claim rests on his transfer, suspension, and yet unspecified incidents of "harassment" and "threat[s of] other disciplinary action." Am. Compl. P 40. Because these additional incidents of "harassment" and "threat[s]" are too vague and conclusory for the court to thoroughly address the defendant's motion, the court treats the motion to dismiss as a motion for more definite statement under *Federal Rule of Civil Procedure 12(e), Powers-Bunce v. District of Columbia, 479 F. Supp. 2d 146, 158-59 (D.D.C. 2007)*, and accordingly, orders the plaintiff to provide specific factual support for these alleged events. Once the plaintiff has filed such support, the defendant may re-file its motion to dismiss.

## C. The Plaintiff's Transfer

The defendant next alleges that the plaintiff's discrimination claim under Title VII based on his transfer to another medic unit fails because "it is a lateral transfer and is not an adverse employment action." Def.'s Mot. at 9. The plaintiff responds that the transfer "caused a great amount of stress and inconvenience because the shift change upset the family schedule" and "affected overtime potential." [*12] Pl.'s Opp'n at 9, 11. Although a plaintiff does not need to set forth a prima facie case to survive a

motion to dismiss, the court may "probe whether the plaintiff can ever meet [t]his initial burden." *Rochon v. Ashcroft, 310 F. Supp. 2d 23, 29 (D.D.C. 2004)*. Courts are able to make such an inquiry because some "litigants may plead themselves out of court by alleging facts that establish defendants' entitlement to prevail." *Id.* Here, however, the plaintiff has not pled himself out of court.

The complaint states that the plaintiff and his partner, Shook, "were being transferred from their assignment on Medic 1 and were sent to separate units." Am. Compl. P 24. The defendant characterizes this as a "lateral transfer," Def.'s Mot. at 9, but the plaintiff retorts that the transfer "affected overtime potential," Pl.'s Opp'n at 11. Although it is well settled that lateral transfers do not constitute adverse employment action, a diminution in pay or benefits is the type of objective harm that qualifies as an adverse employment action. *See Stewart v. Evans, 348 U.S. App. D.C. 382, 275 F.3d 1126, 1134 (D.C. Cir. 2002); Brown v. Brody, 339 U.S. App. D.C. 233, 199 F.3d 446, 457 (D.C. Cir. 1999)* (holding that a "plaintiff who is made to undertake [*13] or who is denied a lateral transfer—that is, one in which she suffers no diminution in pay or benefits—does not suffer an actionable injury unless there are some other materially adverse consequences"). Because the complaint is silent as to the nature of the transfer, and because the plaintiff now contends that the transfer adversely affected his earning capacity, the court denies the defendant's motion to dismiss. [3]

[3]

The defendant also argues that the court should grant its motion for summary judgment as to the plaintiff's discrimination and hostile work environment claims. Def.'s Mot. at 9-10. Given the dearth of evidence before the court, it is too early to resolve the defendant's motion for summary judgment. *Americable Int'l, Inc. v. Dep't of Navy, 327 U.S. App. D.C. 159, 129 F.3d 1271, 1274 (D.C. Cir. 1997)* (recognizing that "summary judgment ordinarily is proper only after the plaintiff has been given adequate time for discovery" (internal quotations

omitted)); *Chandler v. Bernanke, 2008 U.S. Dist. LEXIS 6224, 2008 WL 238953, at *6 (D.D.C. Jan. 30, 2008)* (stating that "[s]ummary [*14] judgment is premised on the notion that parties will have had 'adequate time for discovery' to establish whether a genuine issue of material facts exists" (quoting *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)))*.

## VI. CONCLUSION

For the foregoing reasons, the court denies without prejudice the defendant's motion to dismiss or for summary judgment and orders the plaintiff to articulate his allegations of "harassment" and "threat[s]" with greater specificity. An order consistent with this Memorandum Opinion is issued this 10th day of March, 2008.

RICARDO M. URBINA

United States District Judge

LEXSEE 2005 US DIST LEXIS 17961



Analysis
As of: Mar 21, 2008

**EMANUEL JOHNSON, JR., Plaintiff, v. JOHN ASHCROFT, et. al. Defendants.**

**Civil Action No.: 04-1158 (RMU), Document No.: 3**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

*2005 U.S. Dist. LEXIS 17961*

**August 17, 2005, Decided**
**August 17, 2005, Filed**

**SUBSEQUENT HISTORY:** Summary judgment granted, in part, summary judgment denied, in part by *Johnson v. Ashcroft, 2006 U.S. Dist. LEXIS 60453 (D.D.C., Aug. 28, 2006)*

**PRIOR HISTORY:** *Johnson v. Williams, 2004 U.S. App. LEXIS 27406 (D.C. Cir., Dec. 29, 2004)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff pro se former employee brought a constitutional torts claim against defendants, various employees of the District of Columbia (D.C. defendants), for allegedly interfering with his employment relationship with the D.C. Office of the Inspector General (OIG). The employee sued the remaining D.C. defendants for allegedly submitting false evidence in a related proceeding. D.C. defendants' moved to dismiss.

**OVERVIEW:** After retiring from the Federal Bureau of Investigation, the employee - an African-American male - went on to work for the OIG and alleged that two of the D.C. defendants conspired to interfere, and did interfere, with his employment relationship with the OIG. Notwithstanding the employee's failure to effect timely service on the D.C. defendants, the court did not dismiss the complaint in its entirety because the employee effected service within a few days of the deadline, defendants did not claim that they were prejudiced by the delay in effecting service, and the employee was litigating the case pro se. Defendants' argument that the employee's claims against the two D.C. defendants were brought under *42 U.S.C.S. § 1986*, and hence barred by its one-year statute of limitations, was incorrect. The employee claimed that he was not selected for a job at the OIG because those defendants were concerned that he might create "racial problems." Actions alleging employment discrimination on the basis of race could be brought under *42 U.S.C.S. § 1981*, which had a four-year statute of limitations. The employee's claims against the other D.C. defendants were barred by res judicata.

**OUTCOME:** D.C. defendants' motion to dismiss was denied as to two D.C. defendants and denied as to all other D.C. defendants.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
*Civil Procedure > Pleading & Practice > Service of Process > Summons > Content & Form*
*Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > Dismissals*

2005 U.S. Dist. LEXIS 17961, *

[HN1] A party can move the court to dismiss a complaint under *Fed. R. Civ. P. 12(b)(5)* for insufficient service of process. The party on whose behalf service is made has the burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure employed has satisfied the requirements of the relevant portions of *Fed. R. Civ. P. 4* and any other applicable provision of law.

*Civil Procedure > Pleading & Practice > Service of Process > Summons > Content & Form*
[HN2] *Fed. R. Civ. P. 4* governs service of process.

*Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > General Overview*
[HN3] See *Fed. R. Civ. P. 4(m)*.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > General Overview*
*Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > General Overview*
*Evidence > Procedural Considerations > Burdens of Proof > General Overview*
[HN4] Where a plaintiff fails to effect proper service within the 120-day time limit laid down by *Fed. R. Civ. P. 4(m)*, the plaintiff carries the burden of showing good cause for that failure. Even if the plaintiff does not show good cause, the court may, in its discretion, direct the plaintiff to effect service within a certain time rather than dismiss the case. Ultimately, however, unless the procedural requirements of effective service of process are satisfied, a court lacks power to assert personal jurisdiction over a defendant.

*Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > General Overview*
*Governments > Courts > Clerks of Court*
[HN5] *Fed. R. Civ. P. 4(m)* explicitly states that the complaint and the summons must be served "within 120 days after the filing of the complaint."

*Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > Dismissals*
*Civil Procedure > Dismissals > General Overview*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN6] When a plaintiff fails to effect proper service

without showing good cause, *Fed. R. Civ. P. 4(m)* entrusts courts with the discretion to either dismiss the case or to direct the plaintiff to perfect service within a prescribed period of time. Factors that a court may consider in exercising its discretion include: (1) whether the defendants show any actual harm on the merits of the suit caused by the delay in service; (2) whether it is likely that the defendants received actual notice of the suit within a short time after the attempted service; and (3) whether dismissal without prejudice will effectively equal dismissal with prejudice because the statute of limitations has run after the filing of the suit.

*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN7] Pro se plaintiffs are generally subject to less stringent standards in filing and maintaining their lawsuits than those plaintiffs who are represented by lawyers.

*Civil Procedure > Pleading & Practice > Service of Process > General Overview*
*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN8] The D.C. Circuit has held that pro se litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleading. While the courts do not need to provide detailed guidance to pro se litigants they should supply minimal notice of the consequence of not complying with procedural rules.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Governments > Legislation > Statutes of Limitations > Pleading & Proof*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN9] A defendant may raise the affirmative defense of statute of limitations via a *Fed. R. Civ. P. 12(b)(6)* motion when the facts that give rise to the defense are clear from the face of the complaint. Because statute of limitations issues often depend on contested questions of fact, however, the court should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint. Rather, the court should grant a motion to dismiss only if the complaint on its face is conclusively time-barred. If no reasonable person could

disagree on the date on which the cause of action accrued, the court may dismiss a claim on statute of limitations grounds.

*Civil Rights Law > Contractual Relations & Housing > Equal Rights Under the Law (sec. 1981) > Protected Parties*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Labor & Employment Law > Affirmative Action > General Overview*
[HN10] Actions alleging employment discrimination on the basis of race may be brought under *42 U.S.C.S. § 1981*, which has a four-year statute of limitations.

*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Estoppel > Collateral Estoppel*
*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata*
[HN11] The doctrine of res judicata prevents repetitious litigation involving the same causes of action or the same issues. Res judicata has two distinct aspects --claim preclusion and issue preclusion (commonly known as collateral estoppel) - that apply in different circumstances and with different consequences to the litigants. Under claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Under issue preclusion or collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. Claim preclusion forecloses all that which might have been litigated previously, while issue preclusion prevents the relitigation of any issue that was raised and decided in a prior action. In this way, res judicata helps conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and prevent serial forum-shopping and piecemeal litigation.

*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata*
[HN12] Because res judicata belonged to courts as well as to litigants, a court may invoke res judicata sua sponte.

*Civil Procedure > Pleading & Practice > Defenses,*

*Demurrers, & Objections > Waiver & Preservation*
*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata*
[HN13] A litigant may not sit idly by during the course of litigation and then seek to present additional defenses in the event of an adverse outcome.

COUNSEL: [*1] For EMANUEL JOHNSON, JR, Plaintiff: Pro se, Woodbridge, VA.

For ANTHONY A. WILLIAMS Mayor, Government of the District of Columbia, JOHN A. KOSKINEN, City Administrator, Government of the District of Columbia, KELVIN ROBINSON, Chief of Staff to the Mayor of the Government of the District of Columbia, JUDY BANKS, Personnel Officer for the Government of the District of Columbia, E. BARRETT PRETTYMAN, JR., Inspector General, Government of the District of Columbia, CHARLES C. MADDOX, Inspector General, Government of the District of Columbia, AUSTIN A. ANDERSEN, Interim Inspector General, Government of the District of Columbia, KAREN A. BRANSON, General Counsel, Office of the Inspector General, TERRY WYLLIE, Assistant Inspector General for Metropolitan Police Department Corruption, GAIL DAVIS, Assistant Corporation Counsel, TERESA A. QUON, Assistant Corporation Counsel, DAVID A. JACKSON, Assistant Corporation Counsel, Defendants: Wendel Vincent Hall, OFFICE OF THE CORPORATON COUNSEL, Washington, DC.

JUDGES: RICARDO M. URBINA, United States District Judge.

OPINION BY: RICARDO M. URBINA

OPINION

MEMORANDUM OPINION

**DENYING IN PART AND GRANTING IN PART THE DEFENDANTS' MOTION TO DISMISS THE [*2] COMPLAINT**

**I. INTRODUCTION**

The *pro se* plaintiff, Emanuel Johnson, Jr., brings a constitutional torts claim against various employees of the District of Columbia. Specifically, the plaintiff sues the following D.C. employees in their official and

2005 U.S. Dist. LEXIS 17961, *2

individual capacities: Kelvin Robinson, Barrett Prettyman, Charles Maddox, Austin Anderson, Karen Branson, Judy Banks, Gail Davis, Teresa Quon, David Jackson, Terry Wyllie, and John A. Koskinen (collectively, the "D.C. defendants"). [1] The plaintiff sues D.C. defendants Prettyman and Wyllie for allegedly interfering with his employment relationship with the D.C. Office of the Inspector General ("OIG"). The plaintiff sues the remaining D.C. defendants for allegedly submitting false evidence in a related proceeding. This matter is before the court on the D.C. defendants' motion to dismiss the complaint for failure to effect timely service and for failure to comply with the applicable statutes of limitations. Because the plaintiff makes a cognizable claim against Prettyman and Wyllie, the court denies the defendant's motion to dismiss the claims against them. Because the claims against Davis, Quon, Jackson, Maddox, Andersen, Branson, [*3] Koskinen, Robinson and Banks are barred by res judicata, the court grants the motion to dismiss as to those defendants.

> 1 The complaint also names John Ashcroft, J.C. Carter, Danny O. Coulson, Ralph Lawrence, Steven Riggin, James W. Vatter, and Edward M. Shubert as federal defendants, but, to date, only the District defendants have filed a motion to dismiss. Accordingly, this opinion addresses only the D.C. defendants' motion to dismiss and the claims against those defendants.

## II. BACKGROUND

### A. Factual History

The plaintiff, an African-American male, worked as a special agent with the FBI between 1973 and 1999. Compl. at 13. During that time, the plaintiff was a named plaintiff in a Title VII class action lawsuit filed in the United States District Court for the District of Columbia by African-American special agents against the FBI. *Id.* at 26. That lawsuit, commonly known as the BADGE lawsuit, settled in 1993. *Id.*; Mem. in Support of Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") [*4] at 4. After retiring from the FBI, the plaintiff began working as a special agent with the OIG. Pl.'s Opp'n at 3-4. Although it is unclear from the plaintiff's complaint, it seems that the plaintiff applied to work at the OIG twice: once in 1998 and once in 1999. [2] Compl. at 4, Ex. E.

> 2 The plaintiff also states that *Johnson v. Ashcroft, et al.,* 00-cv-2743 is a related case

regarding his termination from the OIG. Mem. in Support of Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") at 4, Ex. E. The D.C. Circuit opinion in that case states that he began his employment at the OIG in June 1999. *Johnson v. Williams,* 117 Fed. Appx. 769, slip op. at 1 (D.C. Cir. 2004).

In Counts III and IV of the plaintiff's complaint, [3] the plaintiff alleges that D.C. defendants Prettyman and Wyllie conspired to interfere, and did interfere, with his employment relationship with the OIG. *Id.* at 25-71. Specifically, the plaintiff alleges that Wyllie spread rumors about him and that he was not selected for [*5] a position at the OIG in 1998 as a result. *Id.* at 67-68. The plaintiff further alleges that Prettyman improperly considered racially-charged statements made by federal defendant Carter in his decision not to hire the plaintiff in 1998. Pl.'s Opp'n at 4, Ex. E. The plaintiff claims that he found out about Wyllie's and Prettyman's actions after on April 14, 2003, when he heard Richard Sullivan's testimony at a trial related to the plaintiff's termination from the OIG, *Johnson v. Ashcroft et al.,* No. 00-cv-2743. Pl.'s Opp'n at 2-3, 8, Ex. E.

> 3 Counts I, II and V of the plaintiff's complaint contain his allegations against the federal defendants. The plaintiff alleges that the federal defendants created a hostile work environment during his tenure at the FBI, Compl. at 14, and that they retaliated against him for his participation in the BADGE class action suit. Pl.'s Opp'n at 4.

The remaining counts of the plaintiff's complaint allege that some of the D.C. defendants provided false evidence to the court [*6] during the proceedings surrounding his termination from the OIG after he was hired in 1999. Compl. 72-74. The plaintiff contends that the false evidence, consisting of a trial exhibit and an affidavit, resulted in an adverse ruling in *Johnson v. Ashcroft et al.,* No. 00-cv-2743, on July 9, 2003. Compl. at 73-74; Pl.'s Opp'n at 8.

### B. Procedural History

The plaintiff filed the complaint in the current action on July 9, 2004. The plaintiff claims that he executed requests for waiver of service as to the D.C. defendants in the early part of November 2004. Pl.'s Opp'n at 5. Defendant Banks returned a signed request for a waiver

2005 U.S. Dist. LEXIS 17961, *6

of service on November 13, 2004, *id.* at 2, and was the only D.C. defendant to return the request for waiver of service. *See* Compl. at 6; Def.'s Mot. at 5.

The D.C. defendants filed a motion to dismiss the complaint on December 21, 2004 because the plaintiff failed to effect timely service. Additionally, the D.C. defendants claim that the plaintiff's complaint is time barred by the applicable statute of limitations. The court now turns to the defendants' motion.

### III. ANALYSIS

#### A. Failure to Effect Timely Service

The defendants first [*7] argue that the complaint should be dismissed because the plaintiff did not effect timely service on the D.C. defendants, as required by *Federal Rule of Civil Procedure 4(m).* Defs.' Mot. at 4. The court agrees that the plaintiff failed to effect timely service. But, because this Circuit gives wide latitude to *pro se* plaintiffs and because the D.C. defendants have not been prejudiced by the late service, the court, in its discretion, declines to dismiss the plaintiff's complaint for failure to timely serve the defendants.

##### 1. Legal Standard for a *Rule 12(b)(5)* Motion to Dismiss for Insufficient Service of Process

[HN1] A party can move the court to dismiss a complaint under *Federal Rule of Civil Procedure 12(b)(5)* for insufficient service of process. "The party on whose behalf service is made has the burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of *Rule 4* and any other applicable provision of law." *Light v. Wolf,* 259 U.S. App. D.C. 442, 816 F.2d 746, 751 (D.C. Cir. 1987) (internal quotations omitted); [*8] *Hilska v. Jones,* 217 F.R.D. 16, 20 (D.D.C. 2003).

[HN2] *Rule 4* governs service of process. [HN3] *FED. R. CIV. P. 4. Rule 4(m)* provides the time limits for service and the consequences of failing to provide proper service. It states that:

> if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss

> the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

*FED. R. CIV. P. 4(m).* Thus, [HN4] where the plaintiff fails to effect proper service within the 120-day time limit laid down by *Rule 4(m),* the plaintiff carries the burden of showing good cause for that failure. *FED. R. CIV. P. 4(m); Whitehead v. CBS/Viacom, Inc.,* 221 F.R.D. 1, 3 (D.D.C. 2004). Even if the plaintiff does not show good cause, the court [*9] may, in its discretion, direct the plaintiff to effect service within a certain time rather than dismiss the case. *FED. R. CIV. P. 4(m).* Ultimately, however, unless the procedural requirements of effective service of process are satisfied, a court lacks power to assert personal jurisdiction over a defendant. *Gorman v. Ameritrade Holding Corp.,* 352 U.S. App. D.C. 229, 293 F.3d 506, 514 (D.C. Cir. 2002) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104, 98 L. Ed. 2d 415, 108 S. Ct. 404 (1987)).

##### 2. The Plaintiff Failed to Effect Timely Service

The plaintiff argues that, although he filed his complaint on July 9, 2004, the period for service of process did not begin to run until July 15, 2004, the day the plaintiff received the signed summonses from the clerk of the court. Pl.'s Opp'n at 4-5. The plaintiff's argument, however, is entirely without merit. [HN5] *Rule 4(m)* explicitly states that the complaint and the summons must be served "within 120 days *after the filing of the complaint."* *FED. R. CIV. P. 4(m)* (emphasis added). The rule does not carve out any exceptions based on the date that the clerk [*10] signs the summons. Accordingly, the deadline for service was November 6, 2004. Because the plaintiff did not serve the requests for waiver of service until after that date, Pl.'s Opp'n at 4; Pl.'s Opp'n to Defs.' Supp. at 2, he failed to serve the defendants in a timely manner. [4]

> 4   In the alternative, the plaintiff argues that he has shown good cause for his failure to effect timely service. The court finds the plaintiff's excuses for not effecting service unpersuasive. The plaintiff's excuse that he is involved in numerous complex suits, Pl.'s Opp'n. at 5, 7, does not show that he had good cause to fail to effect

timely service. Indeed, attorneys involved in many complex suits are still expected to comply with the Federal Rules of Civil Procedure. The plaintiff's claim that he "utilized economic discretion" in incurring costs to obtain the addresses of some of the defendants is also unavailing. The plaintiff was able to perfect service within ten days after the deadline for service had passed, *id.* at 5, suggesting that his lateness was not an exercise in "economic discretion," but rather, a lack of diligence. Furthermore, the plaintiff that does not have the authority to *sua sponte* "coordinate service results for the convenience of this court." *Id.* at 7. The court assures the plaintiff that it can handle the logistical process of a complex case so long as the parties follow the Federal Rules of Civil Procedure.

[*11] **3. The Court Declines to Dismiss the Case Based on the Plaintiff's Failure to Effect Proper Service**

Notwithstanding the plaintiff's failure to effect timely service on the D.C. defendants, the court does not dismiss the complaint in its entirety. The court's decision is based on the following: (1) the plaintiff effected service within a few days of the deadline, (2) the defendants have not claimed that they were prejudiced by the delay in effecting service, and (3) the plaintiff is litigating this case *pro se.*

[HN6] When a plaintiff fails to effect proper service without showing good cause, *Rule 4(m)* entrusts courts with the discretion to either dismiss the case or to direct the plaintiff to perfect service within a prescribed period of time. *FED. R. CIV. P. 4(m).* Factors that a court may consider in exercising its discretion include: (1) whether the defendants show any actual harm on the merits of the suit caused by the delay in service; (2) whether it is likely that the defendants received actual notice of the suit within a short time after the attempted service; and (3) whether dismissal without prejudice will effectively equal dismissal [*12] with prejudice because the statute of limitations has run after the filing of the suit. *Coleman v. Milwaukee Bd. of Sch. Dirs., 290 F.3d 932, 934 (7th Cir. 2002); see also Panaras v. Liquid Carbonic Ind. Corp., 94 F.3d 338, 340 (7th Cir. 1996).* This court, in previous cases, has attempted to balance the hardships that the plaintiff and the defendants face. *Wilson v. Prudential*

*Fin., 332 F.Supp.2d 83, 89 (D.D.C. 2004)* (granting an extension of time to perfect service where there was no great prejudice to the defendant). The D.C. defendants in this case have not claimed that they were prejudiced by the late service. Also, the D.C. defendants likely received actual notice when Banks returned the waiver of service request after the service deadline had passed.

Further, [HN7] pro se plaintiffs are generally subject to less stringent standards in filing and maintaining their lawsuits than those plaintiffs who are represented by lawyers. *Haines v. Kerner, 404 U.S. 519, 520, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972)* (holding that a *pro se* complaint is subject to less stringent standards than formal pleadings drafted by attorneys). This circuit also affords [*13] *pro se* plaintiffs latitude with regards to service issues. [HN8] The D.C. Circuit has held that "pro se litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleading." *Moore v. Agency for Int'l Dev., 301 U.S. App. D.C. 327, 994 F.2d 874, 876 (D.C. Cir. 1993).* In *Moore,* the court emphasized the "importance of providing pro se litigants with the necessary knowledge to participate effectively in the trial process," and concluded that while the courts "do not need to provide detailed guidance to pro se litigants . . . [they] should supply minimal notice of the consequence of not complying with procedural rules." *Id.; see also Hilska v. Jones, 217 F.R.D. 16, 22 (D.D.C. 2003)* (declining to dismiss the *pro se* plaintiff's complaint without minimal notice of the consequence of his failure to effect proper service). Accordingly, the court declines to dismiss the plaintiff's complaint based on the failure to effect timely service.

**B. The Statute of Limitations**

The defendants also argue that this court should dismiss the plaintiff's claims because they are barred by the statute of limitations. Defs. [*14] ' Mot. at 6. The defendants state that the plaintiff's claims against Prettyman and Wyllie are based on *42 U.S.C. § 1986,* which has a one-year statute of limitations, and that the claims against the other D.C. defendants are based on *42 U.S.C. § 1983,* which has a three-year statute of limitations. *Id.* As fully set forth below, the court rules that the plaintiff's claims are not barred by the applicable statute of limitations.

**1. Legal Standard for *Rule 12(b)(6)* and Statute of Limitations**

[HN9] A defendant may raise the affirmative defense of statute of limitations via a *Rule 12(b)(6)* motion when the facts that give rise to the defense are clear from the face of the complaint. *Smith-Haynie v. District of Columbia, 332 U.S. App. D.C. 182, 155 F.3d 575, 578 (D.C. Cir. 1998)*. Because statute of limitations issues often depend on contested questions of fact, however, the court should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint. *Firestone v. Firestone, 316 U.S. App. D.C. 152, 76 F.3d 1205, 1209 (D.C. Cir. 1996)*. Rather, the court should grant a motion to dismiss only if the complaint on [*15] its face is conclusively time-barred. *Id.*; *Doe v. Dep't of Justice, 243 U.S. App. D.C. 354, 753 F.2d 1092, 1115 (D.C. Cir. 1985)*. If "no reasonable person could disagree on the date" on which the cause of action accrued, the court may dismiss a claim on statute of limitations grounds. *Smith v. Brown & Williamson Tobacco Corp., 3 F. Supp. 2d 1473, 1475 (D.D.C. 1998)* (citing *Kuwait Airways Corp. v. Am. Sec. Bank, N.A., 281 U.S. App. D.C. 339, 890 F.2d 456, 463 n.11 (D.C. Cir. 1989))*.

## 2. The Plaintiff's Claims Against Prettyman and Wyllie are not Barred by the Applicable Statute of Limitations

The defendants' argument that the plaintiff's claims against Prettyman and Wyllie are brought under *42 U.S.C. § 1986*, [5] and hence barred by its one year statute of limitations, is incorrect. The plaintiff claims that he was not selected for a job at the OIG in 1998 because Prettyman and Wyllie were concerned that he might create "racial problems." Pl.'s Opp'n, Ex. E. [HN10] Actions alleging employment discrimination on the basis of race may be brought under *§ 1981*, which has a four-year statute of limitations. *Jones v. R. R. Donnelly & Sons Co., 541 U.S. 369, 373, 383, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004)* [*16] (holding that a hostile work environment claim was governed by *§ 1981* and explaining that § 1981 claims are governed by a four year statute of limitations); *Saint Francis College v. Al-Khazraji, 481 U.S. 604, 609, 95 L. Ed. 2d 582, 107 S. Ct. 2022 (1987)* (noting that *§ 1981* applies to claims of racial discrimination). Additionally, the statute of limitations period begins to run when a plaintiff, "in the exercise of due diligence," would become aware of the defendant's actions. *Connors v. Hallmark & Son Coal Co., 935 F.2d 336, 343, 290 U.S. App. D.C. 170 (D.C. Cir. 1991)*. See also *United States v. Kubrick, 444 U.S.*

*111, 122-24, 62 L. Ed. 2d 259, 100 S. Ct. 352 (1979)* (holding that for a cause of action to accrue, the plaintiff must know that he has been hurt and who inflicted the injury). The plaintiff alleges that he found out about Prettyman and Wyllie's acts of racial discrimination only upon hearing sworn testimony in April 2003. Pl.'s Opp'n at 8. Because the plaintiff filed his complaint in July 2004, the plaintiff asserted his claim well within the four year statute of limitations. Accordingly, the plaintiff's allegations against Prettyman and Wyllie were timely filed.

5 *Section 1986* creates a cause of action for neglect in failing to prevent a conspiracy to violate an individual's civil rights; the statute of limitations for actions brought under § 1986 is one year. *42 U.S.C. § 1986*.

## [*17] 3. The Plaintiff's Claims Against the Other D.C. Defendants are not Barred by the Statute of Limitations.

The plaintiff's claims against Davis, Quon, Jackson, Maddox, Andersen, Branson, Koskinen, Robinson and Banks are based on *42 U.S.C. § 1983*. Pl.'s Opp'n at 8-9. *Section 1983* has a three-year statute of limitations. *Singletary v. District of Columbia, 359 U.S. App. D.C. 1, 351 F.3d 519, 529 n.11 (D.C. Cir. 2003)*. The defendants argue that the claims against these defendants are untimely because "the most recent alleged action occurred on May 10, 2000." Defs.' Mot. at 6. The plaintiff, however, contends that he did not become aware of these defendants' wrongful acts until Sullivan's testimony in a related matter in April 2003. Pl.'s Opp'n at 8. Because at this stage of the proceedings the court must construe all material facts in the complaint in favor of the plaintiff, *Macharia v. United States, 357 U.S. App. D.C. 223, 334 F.3d 61, 64, 67 (D.C. Cir. 2003)*, the court accepts as true that the statute of limitations began to run in April 2003. Because the plaintiff filed his complaint on July 2004, his claims against Davis, Quon, Jackson, Maddox, Andersen, Branson, [*18] Koskinen, Robinson and Banks are not barred by the statute of limitations.

## C. Res Judicata

Although the court does not rule that the claims against Davis, Quon, Jackson, Maddox, Andersen, Branson, Koskinen, Robinson and Banks are barred by the statute of limitations, the court determines that the plaintiff's claims against these defendants are

nevertheless barred by res judicata. In Counts VI -- X, the plaintiff claims that defendants Davis, Quon, Maddox, Andersen, and Branson had a role in submitting a false affidavit to Magistrate Judge Facciola in the civil action 00-2743. Compl. at 72-73. In Counts XI and XII, the plaintiff claims that defendants Davis, Quon, Jackson, Maddox, Andersen, Branson, Koskinen, Robinson and Banks entered a "false letter" as a trial exhibit in the same proceedings. Compl. at 73-74. As discussed below, the plaintiff's indirect attack on a previous adverse ruling is barred by the doctrine of res judicata.

### 1. Legal Standard for Res Judicata

[HN11] "The doctrine of res judicata prevents repetitious litigation involving the same causes of action or the same issues." *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co., 232 U.S. App. D.C. 418, 723 F.2d 944, 946 (D.C. Cir. 1983).* [*19] Res judicata has two distinct aspects -- claim preclusion and issue preclusion (commonly known as collateral estoppel) -- that apply in different circumstances and with different consequences to the litigants. *NextWave Pers. Communs., Inc. v. FCC, 254 F.3d 130, 142, 349 U.S. App. D.C. 53 (D.C. Cir. 2001)* (citing *id.*); *Novak v. World Bank, 227 U.S. App. D.C. 83, 703 F.2d 1305, 1309 (D.C. Cir. 1983).* Under claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Drake v. FAA, 291 F.3d 59, 66, 351 U.S. App. D.C. 409 (D.C. Cir. 2002)* (quoting *Allen v. McCurry, 449 U.S. 90, 94, 66 L. Ed. 2d 308, 101 S. Ct. 411 (1980)).* Under issue preclusion or collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Yamaha Corp. of Am. v. United States, 295 U.S. App. D.C. 158, 961 F.2d 245, 254 (D.C. Cir. 1992)* (quoting *Allen, 449 U.S. at 94).* In short, "claim preclusion forecloses all that [*20] which might have been litigated previously," while issue preclusion "prevents the relitigation of any issue that was raised and decided in a prior action." *I.A.M. Nat'l Pension Fund, 723 F.2d at 949; Novak, 703 F.2d at 1309.* In this way, res judicata helps "conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and [] prevent serial forum-shopping and piecemeal litigation." *Hardison v. Alexander, 211 U.S. App. D.C. 51, 655 F.2d 1281, 1288 (D.C. Cir. 1981); see also Allen, 449 U.S. at 94.*

[HN12] Because "res judicata belongs to courts as well as to litigants," a court may invoke res judicata *sua sponte. Stanton v. D.C. Ct. of Appeals, 326 U.S. App. D.C. 404, 127 F.3d 72, 77 (D.C. Cir. 1997); see also Tinsley v. Equifax Credit Info. Servs., 1999 U.S. App. LEXIS 15837, 1999 WL 506720, at *1 (D.C. Cir. 1999)* (per curiam) (noting that a district court may apply res judicata upon taking judicial notice of the parties' previous case).

### 2. The Plaintiff's Claims are Barred by Res Judicata

Perhaps because he has already lost on appeal, the plaintiff does not bring a direct attack on Judge [*21] Facciola's ruling. Instead, he brings a claim against some of the D.C. defendants alleging that they submitted a false affidavit and a false trial exhibit that led to the adverse ruling. Compl. 72-74.

The plaintiff's indirect attack on a previous adverse ruling is nothing more than an attempt to relitigate the claim that he was improperly discharged from the OIG. The plaintiff's own complaint states that he became aware of the facts surrounding the allegedly false affidavit in April 2003, Pl.'s Opp'n at 8, before Judge Facciola issued a ruling on July 9, 2003. [6] While the plaintiff has not submitted much information with respect to the allegedly false trial exhibit submitted by the D.C. defendants, the court notes that the plaintiff never filed a Rule 60(b) motion alleging that Judge Facciola based his decision on either a false affidavit or a false trial exhibit. *See Russell v. Sunamerica Secur., Inc., 962 F.2d 1169, 1176-77 (5th Cir. 1992)* (noting that a "collateral attack on the validity of the prior judgment is improper. While fraudulent procurement of a prior judgment may indeed preclude the application of res judicata, the party claiming fraud should address [*22] this claim to the court which rendered the first judgment." (citing 18 C. Wright, A. Miller & E. Cooper § 4415, at 129; *Restatement (Second) of Judgments §§ 26,78-82*(1981)).

6  The court notes that Judge Facciola addressed the plaintiff's concerns surrounding the affidavit. The 14-page transcript excerpt submitted by the plaintiff shows that Judge Facciola investigated some of the plaintiff's concerns about the affidavit. Pl.'s Opp'n, Ex. J. The plaintiff also submitted an e-mail, Pl.'s Opp'n Ex. J, to support the allegation that the affidavit in question is untrue.But, the e-mail is stamped "Plaintiff's Exhibit 28" from the prior proceeding before

2005 U.S. Dist. LEXIS 17961, *22

Judge Facciola, which further supports the court's conclusion that the trial Judge had explored the issues surrounding the veracity of the affidavit.

As a result, the court interprets the plaintiff's claim as nothing more than an attack on the previous adverse ruling. *See Henry v. Farmer City State Bank, 808 F.2d 1228, 1235 (7th Cir. 1986)* [*23] (holding that the plaintiff's claim based on allegedly fraudulent documents was barred on res judicata grounds because the plaintiff did not assert that the documents were fraudulent in a previous suit). This court echoes the sentiment expressed in *Griffin v. Fed. Deposit Ins. Corp., 831 F.2d 799, 803 (8th Cir. 1987)*: [HN13] "A litigant may not sit idly by during the course of litigation and then seek to present additional defenses in the event of an adverse outcome . . . the [plaintiff] had [his] day in court." Accordingly, the court *sua sponte* dismisses the plaintiff's claims against D.C. defendants Davis, Quon, Jackson, Maddox, Andersen, Branson, Koskinen, Robinson and Banks on res judicata grounds. [7]

> 7  Moreover, the court doubts that Judge Facciola would have issued a different ruling had he not considered the allegedly false evidence because that evidence is just one of the grounds that form the basis of his decision.

**IV. CONCLUSION**

For the foregoing reasons, the court grants in [*24]

part and denies in part the defendants' motion to dismiss. Accordingly, defendants Davis, Quon, Jackson, Maddox, Andersen, Branson, Koskinen, Robinson and Banks are dismissed from this suit. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 17th day of August 2005.

RICARDO M. URBINA

United States District Judge

**ORDER**

**DENYING IN PART AND GRANTING IN PART THE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

For the reasons stated in the accompanying Memorandum Opinion, it is this 17th day of August, 2005,

**ORDERED** that the defendants' motion to dismiss the complaint is **GRANTED in part** and **DENIED in part**.

**SO ORDERED**.

RICARDO M. URBINA

United States District Judge

235 Fed. Appx. 750, *; 2007 U.S. App. LEXIS 11914, **

LEXSEE 235 FED APPX 750

**WARREN C. HAVENS, APPELLANT v. PATTON BOGGS, LLP, A LIMITED LAW PARTNERSHIP, ET AL., APPELLEES**

No. 06-7124

**UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT**

*235 Fed. Appx. 750; 2007 U.S. App. LEXIS 11914*

**May 17, 2007, Filed**

**NOTICE:** [**1] PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**SUBSEQUENT HISTORY:** Rehearing denied by *Havens v. Boggs, 2007 U.S. App. LEXIS 17033 (D.C. Cir., July 13, 2007)*

**PRIOR HISTORY:** Appeal from the United States District Court for the District of Columbia. (No. 05cv01454).
*Havens v. Patton Boggs LLP, 2006 U.S. Dist. LEXIS 42910 (D.D.C., June 26, 2006)*

**COUNSEL:** For WARREN C. HAVENS, Plaintiff - Appellant: Matthew Henry Simmons, Sean Patrick Malloy, Simmons & Associates, Bethesda, MD.

For PATTON BOGGS, LLP, a Limited Law Partnership, STEVEN SCHNEEBAUM, an individual, Defendants - Appellees: Benjamin Gaillard Chew, Andrew Zimmitti, Patton Boggs, Washington, DC.

**JUDGES:** Before: RANDOLPH, TATEL and BROWN, Circuit Judges.

**OPINION**

[*751] JUDGMENT

This case was considered on the record from the United States District Court for the District of Columbia and on the briefs and arguments by the parties. Upon consideration of the foregoing, it is

**ORDERED** and **ADJUDGED** that the judgment of the District Court is hereby affirmed.

Warren C. Havens brought this claim against Patton Boggs on July 22, 2005, for breach of contract and legal malpractice in Patton Boggs's representation of Havens in a previous civil action. Havens, as the defendant, had filed counterclaims. The district court dismissed two of Havens's counterclaims. He argues [**2] this was a result of Patton Boggs's negligent representation. Havens fired Patton Boggs, retained new counsel, and, after settling the previous case, filed this action against Patton Boggs.

The district court dismissed Havens's claims as barred by the three-year statute of limitations, which it decided started running on May 8, 2000, once Havens fired Patton Boggs and retained new counsel. *Warren C. Havens v. Patton Boggs LLP, No. 05-01454, 2006 U.S. Dist. LEXIS 42910, 2006 WL 1773473, at *2-4 (D.D.C. June 26, 2006)*. Havens claims in this appeal that the district court should have calculated the statute of limitations as starting almost two years later -- on July 23, 2002, when the district court in the previous case enforced the written settlement agreement. Patton Boggs agrees with the district court, but argues alternatively that the latest the limitations period began running was March 28, 2001, the date of the dismissal of Havens's counterclaims.

We agree with the district court that Havens would have been aware long before the enforcement of the settlement agreement of any injury Patton Boggs caused him. While it is true that in some cases the existence of an injury from inferior representation [**3] may not be evident until a final verdict, *see Wagner v. Sellinger, 847 A.2d 1151, 1156 (D.C. 2004)*, this is not always the case, *see Weisberg v. Williams, Connolly & Califano, 390 A.2d 992, 995 (D.C. 1978)*. Here, the very latest Havens must have known he was injured was when the district court dismissed his counterclaims in the previous litigation. He may not have known the extent of the injury that dismissal caused, but such knowledge is not required for the statute of limitations to begin running. *See Knight v. Furlow, 553 A.2d 1232, 1235-36 (D.C. 1989)*.

Pursuant to *D.C. Circuit Rule 36*, this disposition

235 Fed. Appx. 750, *; 2007 U.S. App. LEXIS 11914, **

will not be published. The [*752] Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See FED. R. APP. P. 41(b); D.C. Cir. Rule 41.*

# EXHIBIT
# 2

JPK



940094 I
Callup Imo
Paper No. 78
July 25, 2002

Filed by: Merits panel
         Box Interference
         Washington, D.C. 20231
         Tel: 703-308-9797
         Fax: 703-308-7953

RECEIVED
JUN 28 2002
ARMSTRONG, WESTERMAN, HATTORI, LLP

The opinion in support of the decision being entered today is <u>not</u> binding precedent of the Board.


UNITED STATES PATENT AND TRADEMARK OFFICE


BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

**MAILED**

JUN 2 5 2002

PAT. & T.M. OFFICE
BOARD OF PATENT APPEALS
AND INTERFERENCES

CHRISTOPHER J. STEVENS,

Junior Party,
(P.N. 5,393,368)

v.

SHIGERU TAMAI,

Senior Party.
(S.N. 08/196,839)


Patent Interference No. 103,662


Before: CRAWFORD, GARDNER-LANE, and MEDLEY, <u>Administrative Patent Judges</u>.

CRAWFORD, <u>Administrative Patent Judge</u>.


-1-

Interference No. 103,662

## FINAL DECISION

This interference was declared on May 9, 1997. Tamai's involved application Serial No. 08/196,839 was filed on February 15, 1994. Stevens' involved U.S. Patent No. 5,393,368 was filed on February 7, 1994 and issued on February 28, 1995. At the time this interference was declared, Tamai was accorded the benefit of U.S. Serial No. 08/030,183 ("'183 application") which was filed March 29, 1993 and was accorded senior party status on that basis. Stevens filed a reissue application Serial No. 08/940,815 on September 30, 1997. Stevens' reissue application was added to this interference on September 28, 2000.

The invention at issue in this interference relates to a correction tape dispenser. The particular subject matter in issue is illustrated by count 1, the sole count, as follows:

A correction tape dispenser comprising:

a tape comprising a carrier ribbon with correction composition thereon,

supply and take-up spools for the tape,

a tip having an edge for pressing the tape against a surface

a portion of the tape between the supply and take-up spools being guided to extend around said edge

-2-

Interference No. 103,662

wherein the edge is inclined to a feed direction which is the direction of travel of the tape leaving the supply spool, and

the tip includes guide means on either side of the edge which operate in conjunction with the shape of the tip for twisting the tape so that the path of the tape around the edge between the guide means is in a plane substantially perpendicular to said edge and inclined to the feed direction.

The claims of the parties which correspond to this count are:

Stevens' patent: Claims 1 though 5, 7 through 16 and 18 through 21.

Stevens' reissue application: Claims 1 through 5, 7 through 16 and 18 through 21.

Tamai's application: Claims 1 through 21.

The following matters are before us for review:

(a)  Stevens' motion under 37 CFR § 1.633(a) for judgment.

(b)  Stevens' motion under 37 CFR § 1.633(f) to be accorded the benefit of earlier filed priority applications.

-3-

Interference No. 103,662

    (c)   Stevens' motion under 37 CFR § 1.633(g) to deny benefit of earlier filed application to party Tamai accorded in notice of interference.

    (d)   Tamai's motion under 37 CFR § 1.633(f) for benefit of earlier filed foreign priority applications.

    (e)   Stevens' motion under 37 CFR § 1.633(c) to redefine interference subject matter by designating claims of Stevens' U.S. Patent 5,393,368 as not corresponding to the count.

    (f)   Stevens' motion to suppress evidence pursuant to 37 CFR § 1.656(h).

    (g)   Stevens' objections to evidence of Senior party Tamai.

<u>Redeclaration</u>

The count as originally filed is identical to Stevens' claim 1 and Tamai's claim 20. The claims, however, include means plus function language i.e.:

> guide means on either side of the edge which operate in conjunction with the shape of the tip for twisting the tape so that the path of the tape around the edge between the guide means is in a plane substantially perpendicular to said edge and inclined to the feed direction.

When an element in the claim is expressed as a means for performing a specified function, the claim shall be construed to cover the corresponding structure described in the specification

-4-

Interference No. 103,662

and equivalents thereof. 35 U.S.C. § 112, paragraph six. Thus, it is possible to have two identical claims with slightly different meanings.

This interference is hereby redeclared, so that the count is the disjunctive alternative union of Stevens' claim 1 and Tamai's claim 20.

The claims of the parties that correspond to the count remain the same.

Thus, for purposes of the priority, a party may demonstrate priority with respect to Stevens' claim 1, which will be interpreted in view of the Stevens specification, or with respect to Tamai's claim 20, which will be interpreted in view of the Tamai specification.

Stevens' Motion under § 1.633(a)

Stevens seeks to have the interlocutory order denying its motion under CFR § 1.633(a) modified. Stevens argues in this motion that claim 20 of Tamai's involved application is unpatentable under 35 U.S.C. § 112, first paragraph, because, in Stevens' view, the Tamai application does not contain a written description of the subject matter of claim 20. Stevens also argues that the disclosure of the Tamai application does not

-5-

Interference No. 103,662

enable a person of ordinary skill in the art to make and use the invention.

As this is a substantive issue, we review this interlocutory order de novo.

## Written Description

In regard to the written description requirement, Stevens argues that the Tamai description does not disclose:

> the tip includes guide means on either side of the edge which operate in conjunction with the shape of the tip for twisting the tape so that the path of the tape around the edge between the guide means is in a plane substantially perpendicular to said edge and inclined to the feed direction.

Specifically, Stevens argues that Tamai does not describe a tip which includes a guide means on either side of the edge which operates in conjunction with the shape of the tip for twisting the tape. In Stevens' opinion, the head 18 of the Tamai device is the only portion of the Tamai device that can be called the tip. Stevens argues that head 18 does not have guide means on either side of the edge. In Stevens' opinion, the flanges 33 are the only guide means on the side of head 18 and these flanges 33 do not perform any twisting function.

Central to Stevens' argument is their contention that the tip in Tamai is the head 18.

-6-

Interference No. 103,662

We note that in construing claims in an interference for
purposes of a motion under 37 CFR § 1.633(a), the claim is
construed in light of the specification of the application in
which it appears.   As such, we will construe the term "tip" in
claim 20 of the Tamai application in light of the disclosure of
the Tamai application.

The Tamai application does not explicitly describe a tip.
However, the test for determining compliance with the written
description requirement is whether the disclosure of the
application as originally filed reasonably conveys to the artisan
that the inventor had possession at that time of the later
claimed subject matter, rather than the presence or absence of
literal support in the specification for the claim language.  See
Vas-Cath, Inc. v. Mahurkar, 935 F.2d 1555, 1563-64, 19 USPQ2d
1111, 1116-17 (Fed. Cir. 1991) and In re Kaslow, 707 F.2d 1366,
1375, 217 USPQ 1089, 1096 (Fed. Cir. 1983).

The Tamai application describes a correction tape dispenser
having supply and take-up spools, 15 and 16 respectively.  The
tape is fed out of the supply spool 15 guided on its path by pin
21, guide pin 22, a slit 20 and a flange 33 to arrive at head 18.
The tape is then guided on its path from the head 18 by the other
flange 33, the other slit 20 and the other guide pin 23 to arrive
at the take-up spool 16.

-7-

Interference No. 103,662

Stevens argues that the term "tip" which is recited in claim 1 of Stevens is the tip 10.   Therefore, the tip which is recited in claim 20 of the Tamai application must be the head 18.

We do not agree with Stevens that the tip recited in claim 1 of the Stevens patent is necessarily the tip 10.   In our view, the recitation of a "tip" in claim 1 of Stevens is broad enough to refer to the tip member 10.   This interpretation is especially compelling to us in view of the recitation in claim 6 of the Stevens patent of a unitary member.   However, as we stated above, claim 20 of the Tamai application is construed in light of the Tamai application for the purposes of a § 1.633(a) motion.   As the Tamai application does not expressly define a tip, this term is given its customary meaning.   We note that the Webster's Third New International Dictionary (G&C Meriiam Co., 1981) defines "tip" as "a pointed or rounded extremity of something" and defines an extremity as "an outlying or terminal part, section or point."   When claim 20 is given its broadest reasonable interpretation, we find that the term "tip" is broad enough to include the section of the device below the take-up spool 16.

In the Tamai device, the tape is guided on its path below the take-up spool 16 by guide means 22 and 23, slits 20, and flanges 33.   As such, these elements together form the guide means recited in claim 20.

-8-

Interference No. 103,662

The tape leaving guide pin 21 is guided and twisted by the combination of actions of the guide pins 22, 23, flanges 33 and head 18. Stevens argues that this twisting is done solely by the pins 22, 23. We do not agree because the twisting of the tape could not be accomplished without the anchoring actions of slits 20 and flanges 33. The twisting would also not be achieved without the overall configuration or shape of the tip of the device. In addition, the shape of the head 18, which is a portion of the tip, guides the tape so that it is traveling in a plane substantially parallel to the edge of the device.

In regard to the language that the path of the tape around the edge is inclined to the feed direction, Stevens argues that this feed direction is the direction of the tape as it leaves the guide pin 22 and that because the tape is traveling parallel to the axis of the device as it leaves pin 22 and also traveling to the head 18 in a direction parallel to the axis of the device, the path of the tape is not inclined to the feed direction.

Claim 20 recites that the feed direction is the direction of travel of the tape leaving the supply spool. In the Tamai device, the tape leaves the supply spool 15 at an angle with respect to the axis of the device while the tape travels parallel to the axis of the device as it travels to the head 18. As such,

Interference No. 103,662

the path of the tape is clearly inclined to the feed direction as
it travels to the head.

Enablement

In regard to the question of enablement, Stevens argues that
there is no guidance in the Tamai disclosure of how to provide
guide means in the head 18 which Stevens views as the tip.  As we
have stated above, the tip language in claim 20 is broad enough
to include the portion of the Tamai device which is below the
take-up spool 16.  As the guide means includes pins 22, 23, slits
20, and flanges 33, the guide means is disposed at least in part
on either side of the edge of the device.  Accordingly, Tamai
does include a description that would enable one of ordinary
skill in the art to make or use a guide means on either side of
the edge.

Stevens also argues that there is no recognition that the
peak portion of the head 18 is inclined relative to the
tape feed direction to allow the coating file transfer tool to be
angled forwardly and downwardly in a pen like manner in use.

We note initially that claim 20 does not recite that the
coating film transfer tool in use is angled forwardly and
downwardly in a pen like manner.  Therefore, this portion of the
argument is not persuasive because it is not commensurate with

-10-

Interference No. 103,662

the actual scope of claim 20.  Furthermore, as stated above, the edge of the head 18 is disposed parallel to the case body and the tape leaves spool 15 at an angle to the axis of the device. Thus, head 18 is inclined relative to the tape feed direction.

Stevens further argues that the Tamai application lacks sufficient information on the construction of the tape dispenser to enable a person of ordinary skill in the art to make and use the claimed invention.  Specifically, Stevens argues that the Tamai application contains no explanation of how the peak portion 32 of the head 18 is supported by the case 11.

An analysis of whether the claims are supported by an enabling disclosure requires a determination of whether that disclosure contains sufficient information regarding the subject matter of the appealed claims as to enable one skilled in the pertinent art to make and use the claimed invention.  The test for enablement is whether one skilled in the art could make and use the claimed invention from the disclosure coupled with information known in the art without undue experimentation.  See United States v. Telectronics, Inc., 857 F.2d 778, 785, 8 USPQ2d 1217, 1223 (Fed. Cir. 1988), cert. denied, 109 S.Ct. 1954 (1989); In re Stephens, 529 F.2d 1343, 1345, 188 USPQ 659, 661 (CCPA 1976).

Interference No. 103,662

Thus, the dispositive issue is whether Tamai's disclosure, considering the level of ordinary skill in the art as of the date of Tamai's application, would have enabled a person of such skill to make and use the Tamai device without undue experimentation.

In our view, Stevens has not met its burden with respect to this aspect of the enablement issue because Stevens has not even addressed the issue of whether a person of ordinary skill in the art would have known how to attach the head 18 to the case 11 without undue experimentation.  In other words, even though the connection of the head 18 to the case 11 is not explicitly disclosed in the Tamai application, Stevens has the burden of establishing that a person skilled in the art would not have known how to secure the head 18 to the case without undue experimentation.  This Stevens has not done and as such this portion of the enablement argument also fails.

In view of the foregoing, we will not modify the interlocutory order denying Steven's motion under 37 CFR § 1.633(a).

Tamai's benefit application

In the notice declaring this interference, Tamai was accorded the benefit of an application Serial No. 08/030,183 filed March 29, 1993 ("183 application").  Stevens has filed a

-12-

Interference No. 103,662

motion under 37 CFR § 1.633(g) requesting that Tamai be denied
benefit of this application because in Stevens' opinion, Tamai's
application does not contain adequate support for the following
claim limitation:

> the tip includes guide means on either side of the edge
> which operate in conjunction with the shape of the tip
> for twisting the tape so that the path of the tape
> around the edge between the guide means is in a plane
> substantially perpendicular to said edge and inclined
> to the feed direction.

In order to prevail on this motion, Stevens must prove that the
'183 application does not describe an embodiment within the scope
of the count.  Hunt v. Treppschurch, 523 F.2d 1386, 1389, 187
USPQ 426, 429 (CCPA 1975).

Before this motion can be analyzed, we must first construe
the elements included in the count.  Specifically, we must
interpret what is meant in the count by the language "tip,"
"guide means," and "inclined to the feed direction."

We note that Stevens has compared the language of claim 20
of the Tamai application with the disclosure of the '183
application and asserts that Tamai's claim 20 is not supported by
the '183 application.

Benefit for the purposes of priority in an interference
declared under 35 U.S.C. § 135(a) is something different than
benefit for the purpose of overcoming prior art.  Anderson v.

-13-

Interference No. 103,662

Norman, 185 USPQ 371, 372 (Comm'r Pat. 1968).  A benefit application need only describe a single enabled embodiment within the scope of the count to constitute a constructive reduction to practice of the invention of the count.  Hunt v. Treppschuh, 523 F.2d at 1389, 187 USPQ at 429; see also Weil v. Fritz, 572 F.2d 856, 865 n.16, 196 USPQ 600, 608 n.16 (CCPA 1978).

For an earlier-filed application to serve as constructive reduction to practice of the subject matter of an interference count, the earlier application must reasonably convey that the inventor had possession at the time of the later claimed subject matter.

It is well settled that counts should be given their broadest reasonable interpretation and that only when there is ambiguity can resort be had to the specification.  Reese v. Hurst, 661 F.2d 1222, 1236, 211 USPQ 936, 949-50 (CCPA 1981); In re Baxter, 656 F.2d 679, 686, 210 USPQ 795, 802 (CCPA 1981).  We note that broad count language is not ambiguous merely because it reads on more than one embodiment.  Kroekel v. Shah, 558 F.2d 29, 32, 194 USPQ 544, 547 (CCPA 1977).  Nor is an ambiguity established by the fact that the parties offer different interpretations of the count.  Id.  The rationale for this reasoning is that when an applicant selects language which is somewhat broad in scope, he takes the risk that others with

-14-

Interference No. 103,662

specifically different structures may be able to meet the language selected; he will not be permitted to later urge that the selected language should only be read in light of his disclosure merely because the language originated with him. Hemstreet v. Rohland, 433 F.2d 1403, 1406, 167 USPQ 761, 763 (CCPA 1970).

The count includes a tip having an edge for pressing the tape against the surface. Stevens has not established that this language is ambiguous. In fact, Stevens has not addressed the ambiguity of the count language in their opening brief. In the reply brief, Stevens argues that if an ambiguity exists, it arises from the interpretation given the term "tip" by the interlocutory order and by Tamai. However, Stevens must prove that there is an ambiguity in the count language itself to warrant resort to the Stevens specification to interpret the count.

We do not find that there is ambiguity in regard to the language in the count directed to the tip and as such, we will give this language its broadest reasonable interpretation.

In regard to the language "guide means on either side of the . . . tip . . . for twisting the tape" which is set out in means plus function format, it is interpreted in view of the

-15-

Interference No. 103,662

specification of the Tamai application or the Stevens patent in view of our Redeclaration.

When interpreted in view of the Tamai specification, this language refers to the operation of the guide pins 22, 23, flanges 33 and slits 20 which are disposed on either side of the tip (the portion of the device below reel 16) as we discussed above in our analysis of the Stevens' motion under 37 CFR § 1.633(a).

When interpreted in view of the Stevens specification, this language refers to the prepositioning posts 7, 8, and 9, the guide ridges 11 and 12 in the embodiment disclosed in Figure 1 and it refers to the guide pegs 22 and 23 and the wings 16 in the embodiment disclosed in Figure 8. We note that Stevens refers to posts 7, 8, and 9 as guiding means (col. 3, lines 25 to 30).

In regard to the language "the edge is inclined to a feed direction which is the direction of travel of the tape leaving the supply spool," there is no ambiguity. In our view, this language refers to the direction the tape is traveling as it leaves the supply spool 3 in Stevens and the direction the tape is traveling as it leaves the supply spool 15 in Tamai.

-16-

Interference No. 103,662

The '183 application

Stevens specifically argues that the '183 disclosure does not disclose the unique tip construction of the count.

Stevens argues that the tip which is disclosed in the '183 application is the head 18 and that the head 18 does not include guide means on either side of the edge. As we stated above, we do not agree that the tip which is recited in the count must be construed so narrowly. In our view, the term "tip" is broad enough to encompass more than the head 18. Specifically, the term tip may be interpreted to include the portion of the '183 device below the reel 16.

Stevens argues that the term "tip" as defined by Webster's Third New International Dictionary is a small piece or part (as a belt, shoe, cane, pen or billiard cue) designed to serve as an end, cap or point and made usually of metal, leather, or other durable substance. Stevens then concludes that only peak portion 32 of head 18 is the tip. We must point out that the proceeding dictionary definition indicates that the tip may be a part which serves as an end. In addition, the first definition given for "tip" in Webster's Third New International Dictionary as we discussed above is "a pointed or rounded extremity of something" and further defines extremity as "an outlying or terminal part, section or point". When this broad definition is considered, it

-17-

Interference No. 103,662

is clear that the broadest reasonable construction of the term

"tip" would include the tip member 10

in the Stevens device and the portion below the reel 16 in the

Tamai device.

Stevens views the ridges 11 and 12 disclosed in Stevens to

be the only elements in the Stevens device which comprise the

guide means of the count.

However, Stevens discloses:

A length of tape extending between the supply and take-up spools is guided to pass around the tip edge 6. The guiding means include tape positioning means provided by posts 7, 8, and 9 . . . .[col. 3, lines 23 to 27].

Therefore, in our view the guide means in the first embodiment

disclosed in Stevens is a combination of elements, namely, the

prepositioning posts 7, 8, and 9 and the ridges 11 and 12.  In

addition, the guide means that is disclosed in the embodiment

disclosed in Figure 8 includes pegs 22 and 23 and wing

projections 16 which is very similar to the guide means disclosed

in Tamai.

In any case, in view of our redeclaration in this

interference, the guide means language can be interpreted in

terms of the Tamai disclosure or the Stevens disclosure.  When

this language is interpreted in view of the Tamai disclosure, it

is clear that the guide means of the count is disclosed in the

-18-

Interference No. 103,662

'183 specification as guide pins 22 and 23, slits 20 and flanges 33 as these elements operate to guide the travel of the tape.

In regard to the language about the direction of travel of the tape leaving the spool, Stevens argues that the '183 disclosure is totally devoid of any discussion of the tape feed direction and the relationship of the tape feed direction to the peak portion 32 of the head 18.

While it is true that the '183 disclosure does not specifically discuss the relationship of the travel of the tape leaving the spool and the edge of the tip, it is clear from Figure 1 of the '183 disclosure, that the tape leaves the feed reel at an inclined angle with respect to the plane of the edge.

Stevens also argues that the '183 application does not meet the enablement requirements of 35 U.S.C. § 112. Steven's argument in regard to enablement is that the '183 application does not explain how to provide guide means on the head 18 and how to arrange the guide means on the head 18 to cooperate with the shape of the head to achieve the travel of the tape in the desired path perpendicular to the peak portion 32 and inclined to the feed direction.

As we have interpreted the tip language of the count to be broad enough to include the portion of the device below the winding reel, we do not find this argument persuasive. The tip

-19-

Interference No. 103,662

of the '183 as depicted in Figure 1, includes the guide means as recited in the count as we have discussed above.

In view of the foregoing, the Junior party's motion to deny the Senior party's benefit in the '183 application is <u>denied</u>.

Tamai's PCT and JP applications

Tamai has moved for the benefit of earlier filed PCT and Japanese applications. Tamai has identified the applications as Japanese Patent Application No. 3-68371 ("JP '371") and PCT Application No. PCT/JP92/00947 ("PCT application"). The PCT application is part of the file wrapper of the '183 application and JP '371 is part of the file wrapper for the involved Tamai application and the '183 application. Translation of the JP '371 application is part of the file wrapper of the involved Tamai application. A copy of the translation of the JP '371 application was attached with the motion. Copies of translations of these documents were served on Stevens with the Reply to the Opposition to this motion.

The motion indicates that the written specification of the JP '371 and the PCT application are substantially identical to the specification of the '183 application and that the drawings of the JP '371 application and the PCT application are exactly identical to the drawings of the '183 application and that thus

-20-

Interference No. 103,662

Tamai is entitled to the benefit of the JP '371 and PCT application for the same reasons that it is entitled to the benefit of the '183 application.

Stevens has opposed this motion stating that (1) Tamai has failed to submit a copy of the JP '371 and PCT application with the motion, (2) Tamai failed to make a showing that the JP '371 and PCT application constitute a constructive reduction to practice of the count and (3) no statement of material facts was submitted by Tamai to support the motion.

It is true that Tamai did not file a copy of the JP '371 and PCT applications, or a translation of the PCT application with the motion. Tamai did file a translation of the JP '371 application with the motion. In fact, Stevens analyzes the subject matter disclosed in the JP '371 application in its opposition with reference to the translation of the JP '371 application. In addition, copies of both applications are a part of the file wrapper of the '183 application and a translation of the JP '371 application is part of the file wrapper for the involved application. As such, Stevens did have access to the copies and translations of the JP '371 at the time of the motion. Therefore, Tamai's failure to submit copies of the JP '371 application and its translation did not prejudice Stevens. As

-21-

Interference No. 103,662

such, in the interest of justice, we will consider the motion as it is directed to JP '371.

However, Tamai did not supply a translation of the PCT application, nor does it appear that Stevens was in possession of the application or the translation. Although Tamai alleges that the PCT application has the same disclosure as the JP '371 and submitted a declaration executed by Sadao Kinashi attesting to the fact that the disclosures of the PCT application and JP '371 are the same, Stevens was not given the opportunity to examine the disclosures and translations for themselves. Therefore, we will not grant the motion as it is directed to the PCT application.

In regard to Stevens' allegation that the motion failed to include a statement of material facts and to prove that the disclosure of the JP '371 application is a constructive reduction to practice of the count, we disagree. The motion clearly states that the drawings of the JP '371 application are identical to the drawings of the '183 application. We note that Figure 1 of the JP '371 application and Figure 1 of the '183 application are identical. And from this figure, it is clear that the '183 device includes the elements of the count. Tamai also argues that the specification of the JP '371 application is substantially identical to the specification of the '183

-22-

Interference No. 103,662

application.  As such, in our view, Tamai did include in the motion a statement of material facts to prove that the disclosure of the JP '371 application is a constructive reduction to practice of the count.

Stevens also argues that the disclosure of the JP '371 application does not meet the requirements of 35 U.S.C. § 112, first paragraph, because in Stevens' opinion, the disclosure does not contain a written description of the invention of the count and does not enable a person of ordinary skill in the art to make and use the invention of the count. Specifically, Stevens argues that the disclosure of the JP '371 application does not include a guide means on either side of the tip which operates with the tip shape to twist the tape, the tape path is not in a plane substantially perpendicular to the tip edge and that the JP '371 application does not enable a person of ordinary skill in the art to include a guide means in the tip of the device.  We do not agree with this analysis for the reasons stated above in our discussion of Tamai's preliminary motion for benefit for the '183 application.

For the foregoing reasons, we will <u>grant</u> the Senior party's motion for benefit as it is directed to the JP '371 application but will <u>deny</u> this motion with regard to the PCT application.

-23-

Interference No. 103,662

<u>Motion to suppress and Objections to evidence</u>

Stevens has objected to and moved to suppress the JP '371 and the translation of JP '371 which are Exhibits 6 and 7 respectively. Stevens argues that Tamai did not certify in the Preliminary Motions under 37 CFR § 1.633(f) that the copy of the JP '371 was served on Stevens as is required by 37 CFR § 1.637(f)(2). As we stated above, while it is true that Tamai did not file a copy of JP '371 when the preliminary motion to be accorded the benefit of the filing date of JP '371 was filed, a translation of the document was served with the motion and the document itself was a part of the file wrapper of the '183 application which Stevens had access to. Therefore, in our opinion, it is in the interest of justice that this document be considered as evidence.

Stevens also argues that Tamai has failed to establish that this document is a constructive reduction to practice of the count. However, this argument goes to the sufficiency of the document rather than whether the document should be entered as evidence. In any case, as we discussed above, it is our view that Tamai has established that the JP '371 application is a constructive reduction to practice of the count.

Stevens has also moved to suppress the translation of JP '371 because in Stevens' view, Tamai did not show that the

-24-

Interference No. 103,662

translation constitutes a reduction to practice of the count.  We do not agree for the reasons stated above.

As such, we consider JP '371 as evidence in spite of the objections of Stevens and the motion as it is directed to JP '371 and its translation is <u>denied</u>.

The motion and the objections are  also directed to various other exhibits of Tamai but as these exhibits are not relied on in making our decision, the motion and objections in regard to these other exhibits are <u>moot</u>.

Therefore, Tamai has established a constructive reduction to practice of the count as of July 31, 1991.

<u>Stevens' motion for benefit</u>

Stevens has moved for benefit of the filing date of several European applications.  The motion is unopposed.  Therefore, we will grant Stevens' motion for benefit.  As such, Stevens has established a constructive reduction to practice of the count as of February 10, 1993.

<u>Stevens' motion to redefine</u>

Stevens seeks review of the interlocutory order that denied its motion to redefine the interfering subject matter by designating claims 2 to 5, 7 to 16 and 18 to 21 as not

-25-

Interference No. 103,662

corresponding to the count. Stevens alleges that the APJ failed to consider the declaration of Joseph Vallera or to analyze the dependent claims.

We note that a party has the burden of establishing by a preponderance of the evidence that any argued claim is separately patentable or patentably distinct with respect to the prior art in accordance with the guidelines set forth in <u>Graham v. John Deere</u>. See 37 CFR § 1.637(c)(4)(ii) and § 1.601(n). Mere reference to a claimed feature which is not disclosed by the prior art and not included in the count does not per se establish "separate patentability" within the meaning of § 1.601(n). Rather, the question is whether that feature would have been obvious to a person of ordinary skill in the subject art. For example, we note that Stevens does not allege that he knows of no prior art that would render its claims 1 through 5, 7 through 16 and 18 through 21 unpatentable over Tamai's claims.

In regard to claims 2 to 4 and 7 to 10, Stevens argues that the particular features of these dependent claims are not included in the count. With reference to the Form 850, in regard to claims 5, 11 to 16 and 18 to 21, Stevens argues that neither the count nor JP 63-56690 includes or discloses the particular features of the count. However, Stevens has not established that the features that are recited in these claims render the claims

-26-

Interference No. 103,662

separately patentable from any other claim whose designation to the count Stevens does not dispute. Stevens has failed to present any evidence that the claimed configurations are something more than obvious variations well within the ordinary skill of those versed in the art. Nor has Stevens established or even argued that the use of the claimed configurations in lieu of that disclosed in the prior art solves a particular problem or otherwise provides a particular benefit. In re Kuhle, 526 F.2d 553, 555, 188 USPQ 7, 9 (CCPA 1975).

For example, claim 2 recites that the guide means comprises a linear edge around which the tape passes from one side to the other side. Stevens argues that the count does not include such a linear edge. Stevens has not established that this edge has patentable significance. In this regard, we note that the other embodiments disclosed in Stevens do not include such an edge (see Figures 6 to 9). In addition, Stevens has not pointed to any portion of the specification, and we can find none, which establishes that the provision of the linear edge as the guide means solves any problems or produces any unexpected results.

In regard to claim 5, for example, Stevens argues that neither JP 63-56690 nor the count includes tape positioning means to determine a first fixed position from which the tape passes to the tip in the feed direction. While this may be so, Stevens has

-27-

Interference No. 103,662

not established that the provision of the fixed position solves any problem or produces any unexpected result and would therefore render claim 5 separately patentable. Again, as we view the embodiment in Figures 6 and 7, no such fixed position is provided.

Stevens directs our attention to the declaration of Joseph Vallera (JP record, tab 2) which the Junior party asserts was misconstrued by the examiner and incorrectly applied to Stevens' claims 5, 11 to 16 and 18 to 21. Stevens does not indicate where such analysis is located in the Vallera declaration. We have reviewed the Vallera declaration and fail to find an analysis of how the JP 63-56690 reference relates to the subject matter of claims 5, 11 to 16 and 18 to 21. The Vallera declaration does discuss the JP 63-56690 reference on page 17 but only discusses what the JP 63-56690 reference teaches. The Vallera declaration does not discuss claims 5, 11 to 16 and 18 to 21 in relation to the JP 63-56690 reference. The Vallera declaration does not discuss the obviousness of the features recited in claims 5, 11 to 16 and 18 to 21.

In view of the foregoing, we will not modify the interlocutory order denying this motion.

-28-

Interference No. 103,662

<u>Judgment</u>

Because Tamai has established a constructive reduction to practice of July 31, 1991 and Stevens has established a constructive reduction to practice of February 10, 1993, judgment is herein entered against Stevens. Accordingly, Stevens is not entitled to claims 1 through 5, 7 through 16 and 18 through 21 of their involved patent or of claims 1 through 5, 7 through 16 and 18 through 21 of their reissue application which correspond to the count.

In view of the Redeclaration of the interference (supra at 4-5), the parties shall, within the time set for requesting reconsideration under 37 CFR § 1.658(b), present any arguments

Interference No. 103,662

for reconsideration and, if the parties present any new
arguments, explain why the arguments are necessitated by the
Redeclaration.


Murriel E. Crawford                    )
Administrative Patent Judge            )
                                       )
                                       )
                                       )
Sally Gardner-Lane                     )    BOARD OF PATENT
Administrative Patent Judge            )      APPEALS AND
                                       )    INTERFERENCES
                                       )
Sally C. Medley                        )
Administrative Patent Judge            )


MEC:tdl


-30-

Interference No. 103,662

Attorney(s) for Stevens

Charles P. Boukus, Jr.
Suite 202
2001 Jefferson Davis Highway
Arlington, VA 22202


Attorneys for Tamai

William F. Westerman
1725 K Street, N.W., Suite 1000
Washington, D.C. 20006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SEED COMPANY, LTD., et al,

Plaintiffs

v.

WILLIAM F. WESTERMAN, et al.

Defendants.

Civil No. 1:08-cv-00355 (RMU)

## STATEMENT OF UNDISPUTED MATERIAL FACTS
## IN SUPPORT OF WESTERMAN DEFENDANTS' MOTION
## TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY
## JUDGMENT, ON STATUTE OF LIMITATIONS AND CAUSATION GROUNDS

1.    On July 31, 1991, Plaintiffs filed Japanese Patent Application No. 3-68371 ("JP '371") for a correction tape dispenser.[1]  On July 24, 1992, less than one year after filing JP '371, Plaintiffs filed Patent Cooperation Treat Application No. PCT/JP92/00947 ("the PCT '947 Application"), the first step in obtaining a U.S. patent for the same claims.[2]

2.    In March, 1993, Plaintiffs retained Defendant attorneys to prosecute a U.S. patent claim based on the PCT '947 Application.  On March 29, 1993, more than one year after the filing of JP '371, Defendants filed U.S. Patent Application Serial No. 08/030,183 directed to the subject matter of the JP '371 and PCT '947 Application ("the '183 Application").  On February

---

[1]Complaint, paragraph 13.

[2]Complaint, paragraph 14.

15, 1994, Defendants filed U.S. Patent Application Serial No. 08/196,839 ("the '839

Application), a continuation-in-part of the '183 Application.[3]

3.    A competing patent applicant, Christopher Stevens, filed an application for a

similar correction tape dispenser.  Stevens actually received a patent for his device, which issued

on February 28, 1995 ("the Stevens patent").  In 1997, however, the U.S. Patent Office

determined that Plaintiffs' patent claims and the Stevens patent were not patentably distinct, and

declared an interference proceeding to determine which party could claim priority by

demonstrating through earlier filed applications that they had reduced their patent claims to

practice.[4]

4.    In interference proceedings, 37 C.F.R. 1.633(f) provides that a party may file a

preliminary motion "to be accorded the benefit of the filing date of an earlier filed application."

37 C.F.R. 1.637 provides that a party filing such a preliminary motion has the burden of proof to

establish entitlement to the relief sought.  Section 1.637(f)(2) says that if the earlier application is

not in English, "the requirements of section 1.647 must also be met." 37 C.F.R. 1.647 says:

"When a party relies on a document or is required to produce a document in a language other

than English, a translation into English and an affidavit attesting to the accuracy of the translation

shall be filed with the document."[5]

5.    In the interference proceeding, Stevens filed an unopposed motion to be accorded

_____

    [3]Complaint, paragraphs 16-18.

    [4]Complaint, paragraphs 19-20; *Stevens v. Tamai*, 366 F.3d 1325, 1330-31 (Fed. Cir. 2004)(describing interference proceedings).

    [5]*See Stevens v. Tamai, supra*, 366 F.3d at 1328.

the benefit of a February 10, 1993 United Kingdom patent application for his device. On October 21, 1997, Defendant attorneys filed a motion to have Plaintiffs accorded the benefit of their July 31, 1991 Japanese Patent Application, JP '371, and the July 24, 1992 PCT '947 Application. Defendant attorneys filed an English translation of the JP '371 application. However, they did not file an English translation of the PCT '947 Application. The attorneys believed that an English translation of the PCT '947 Application was unnecessary, because an English translation had been included in the '183 Application and had been accepted by the Patent Office.[6]

6.      Stevens promptly argued that the failure to file an English translation for the PCT '947 Application meant that Plaintiffs had not met their burden of proof, and should not get the benefit of its 1992 filing date. On June 25, 2002, the Board of Patent Appeals and Interferences ("the Board") issued an opinion agreeing that the failure to file an English translation meant that Plaintiffs were not entitled to the benefit of the PCT '947 Application. However, the Board ruled that Plaintiffs were entitled to the filing date for their 1991 Japanese patent application, and held that Plaintiffs were entitled to priority over the Stevens claims.[7]

7.      Unfortunately for Plaintiffs, the Board's ruling carried the seeds of its own dismissal. 35 U.S.C. 119(a) provides:

> An application for patent for an invention filed in this country by any person
> who has . . . filed an application for a patent for the same invention is a foreign

---

[6]Complaint, paragraphs 21-22; Declaration of William F. Westerman ("Westerman Dec."), paragraph 4, attached as Exhibit 1 to this Statement.

[7]Complaint, paragraph 23; Westerman Dec., paragraph 5.

country . . . shall have the same effect as the same application would have if filed in this country on the date on which the application for patent . . . was first filed in such foreign country, if the application in this country is filed within twelve months from the earliest date on which such foreign application was filed . . . .

Plaintiffs filed the '183 Application more than one year after the JP '371 Application. Thus, losing the benefit of the PCT '947 Application broke the required one-year chain.

8.    Defendant attorneys notified Plaintiffs of the risk that the Board's requirement of an English translation "could potentially break the chain of priority between the JP '371 and the US '183 applications." Defendant attorneys filed a motion for reconsideration with the Board on July 25, 2002, arguing that an English translation of the PCT '947 application was not required. The motion for reconsideration ended its argument by asking: "If this request is denied, it is respectfully requested that the Board explain how Tamai is entitled to the benefit of the JP '371 application without the linking PCT application in the chain of priority."[8]

9.    The motion for reconsideration dealt solely with the issue of the failure to file an English translation of the PCT '947 Application. Plaintiffs paid a minimum of $4,000 in fees for the preparation and filing of the motion for reconsideration in October, 2002, more than four years before the effective limitations date.[9]

---

[8]Westerman Dec., paragraphs 7-8. *See* letter of July 12, 2002, from William F. Westerman to Mr. Kenji Itami, attached to the Westerman Dec. as Exhibit A; Senior Party Tamai's Request for Reconsideration Under 37 C.F.R. 1.658(b) of June 25, 2002 Board Decision at 7, attached as Exhibit B to the Westerman Dec.; *Stevens v. Tamai*, 366 F.3d at 1329.

[9]Westerman Dec., paragraphs 9-14, and exhibits C and D to that Declaration.

10.    The Board issued a Decision on Request for Reconsideration in March, 2003, reaffirming its ruling that Plaintiffs were required to file an English translation of the PCT '947 Application. The Board did not address Plaintiff's request for an explanation of how they could be accorded the benefit of the JP '371 Application, and declined to modify its opinion.[10]

12.    Stevens filed a Notice of Appeal of the Board's decision to the Federal Circuit on May 12, 2003.[11] That Notice of Appeal terminated the interference litigation before the Board.

13.    As the Federal Circuit noted, Plaintiffs and their Defendant attorneys conceded on the appeal that without the PCT '947 Application, they could not get the benefit of the earlier filed JP '371 Application. *Stevens v. Tamai*, 366 F.3d at 1331. Plaintiffs were thus on notice that they would lose the Federal Circuit Appeal if the Federal Circuit affirmed the Board's holding that an English translation of the PCT '947 Application was necessary.

14.    The Complaint alleges that in January, 2004, while the appeal was pending in the Federal Circuit, attorney Westerman incorrectly advised Plaintiffs that even if they lost the pending appeal, Plaintiffs' application would be returned to the patent examiner with an opportunity to "add or amend claims." The Complaint alleges that Plaintiffs turned down settlement offers in January and July, 2004, as a result of that allegedly negligent advice.[12]

15.    On May 4, 2004, the Federal Circuit issued an opinion affirming the Board's holding that Plaintiffs lost the benefit of the PCT '947 Application because of the failure to file

_____

[10]Westerman Dec., paragraph 15; *see* Decision on Request for Reconsideration, mailed March 13, 2003, attached as Exhibit E to the Westerman Dec.

[11]Westerman Dec., paragraph 16; *see* Notice of Appeal, attached as Exhibit F to that Declaration.

[12]Complaint, paragraphs 25-27, 29.

an English translation. The Federal Circuit reversed the Board's ruling that Plaintiffs were entitled to priority, holding that the unavailability of the PCT '947 Application broke the one-year chain required by 35 U.S.C. 119(a). *Stevens v. Tamai, supra*.

16.     The Complaint alleged that in December, 2006, Westerman admitted that he had been mistaken in believing that Plaintiffs' application would be returned to the examiner. Instead, the Federal Circuit's decision meant that "no further action is needed," and "a notice of abandonment should be issued."[13]

17.     The Complaint does not allege that Plaintiffs believed that they had any new or amended claims that would have exceeded the value of the settlement offers they refused.

Respectfully submitted,

Mark London
Christopher B. Mead
London & Mead
1225 19th Street, N.W., Suite 320
Washington, D.C.  20036
(202) 331-3334

Counsel for Defendants William F. Westerman;
Westerman, Hattori, Daniels & Adrian, LLP; John
Kong; and Ed Kenehan

---

[13]Complaint, paragraph 30.

- 6 -

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **SEED COMPANY, LTD., et al,** | |
| **Plaintiffs** | |
| **v.** | **Civil No. 1:08-cv-00355 (RMU)** |
| **WILLIAM F. WESTERMAN, et al.** | |
| **Defendants.** | |

### DECLARATION OF WILLIAM F. WESTERMAN

I, William F. Westerman, declare as follows:

1.       I am over 18 years of age and competent to testify about the matters in this Declaration from personal knowledge.

2.       I am an attorney licensed to practice in the District of Columbia since 1982 and Oklahoma since 1979.  I am registered to practice patent law before the United States Patent and Trademark Office.

3.       While associated with different law firms over the years, I represented Plaintiffs Seed Company Limited and Shigeru Tamai in the filing of the United States patent applications described in the Complaint.  I represented Plaintiffs in the interference proceeding referenced in the Complaint, which was litigated before the Board of Patent Appeals and Interferences ("the Board") of the United States Patent and Trademark Office between 1997 and 2003.  I also represented Plaintiffs in the appeal, referenced in the Complaint, of the Board's ruling to the Federal Circuit.

4.    During the litigation of the interference proceeding, my firm filed a motion to have Plaintiffs accorded the benefit of their July 31, 1991 Japanese Patent Application, JP '371, and the July 24, 1992 PCT '947 Application. We filed an English translation of the JP '371 application. However, we did not file an English translation of the PCT '947 Application. We believed that an English translation of the PCT '947 Application was unnecessary, because an English translation had been included in the '183 Application and had been accepted by the Patent Office. Stevens and the Board had full access to that translation. To this day, I believe that the Board and Federal Circuit's rulings with respect to the translation issue were wrongly decided, and elevate form over substance.

5.    Stevens argued during the interference litigation that the failure to file an English translation for the PCT '947 Application meant that Plaintiffs had not met their burden of proof, and should not get the benefit of its 1992 filing date. On June 25, 2002, the Board issued an opinion agreeing that the failure to file an English translation meant that Plaintiffs were not entitled to the benefit of the PCT '947 Application. However, the Board ruled that Plaintiffs were entitled to the filing date for their 1991 Japanese patent application, and held that Plaintiffs were entitled to priority over the Stevens claims.

6.    We were concerned that the Board's decision refusing to grant Plaintiffs the benefit of the PCT '947 Application would break the chain of Plaintiff's patent priority. 35 U.S.C. 119(a) provides:

> An application for patent for an invention filed in this country by any person who has . . . filed an application for a patent for the same invention is a foreign country . . . shall have the same effect as the same application would have if filed

- 2 -

in this country on the date on which the application for patent . . . was first filed in such foreign country, if the application in this country is filed within twelve months from the earliest date on which such foreign application was filed . . . .

Plaintiffs filed the '183 Application more than one year after the JP '371 Application. Thus, losing the benefit of the PCT '947 Application broke the required one-year chain.

7.    In a July 12, 2002, letter to Kenji Itami, a Japanese patent lawyer who was our primary contact with Plaintiffs, we advised that "the board denied priority for the PCT application. The risk is that . . . that could potentially break the chain of priority between the **JP '371** and the **US '183** applications. . . . Thus, we strongly recommend filing a Request for Reconsideration on this point." In that letter, we estimated that filing a motion for reconsideration would cost between $10-15,000.[1]

8.    Plaintiffs authorized the filing a motion for reconsideration. We filed that motion with the Board on July 25, 2002, arguing that an English translation of the PCT '947 application was not required. The motion for reconsideration ended its argument by asking: "If this request is denied, it is respectfully requested that the Board explain how Tamai is entitled to the benefit of the JP '371 application without the linking PCT application in the chain of priority."[2]

9.    The motion for reconsideration dealt solely with the issue of the failure to file an English translation of the PCT '947 Application. It would not have been necessary to file that

---

[1]Letter of July 12, 2002, from William F. Westerman to Mr. Kenji Itami, attached to this Declaration as Exhibit A.

[2]Senior Party Tamai's Request for Reconsideration Under 37 C.F.R. 1.658(b) of June 25, 2002 Board Decision at 7, attached as Exhibit B to this Declaration.

motion for reconsideration except for the issue of our failure to file an English translation of the PCT '947 Application.

10.     Attached as Exhibit C to this Declaration is my then firm's Debit Note number 02-07-179. That Debit Note was for services rendered to Plaintiffs between July 5, 2002 and July 31, 2002. The total attorneys' fees billed for that period was $11,392.50. We provided the Riggs National Bank account number at the top of the Debit Note to provide the client with wire transfer instructions for payment.

11.     The second page of Attachment C is the backup detail for Debit Note 02-07-179. The backup reflects attorneys' fees billed for the preparation and filing of the motion for reconsideration to the Board. Specific time entries for preparation of the motion for reconsideration include John Kong's time entries for July 10, July 22, July 23, and July 24, and my time entries for July 23 and July 24. These time entries make it clear that we billed Plaintiffs a minimum of over $4,000 for time devoted solely to the preparation of the motion for reconsideration. Indeed, all of the time entries on the second page of Attachment C reflect work related to that motion.

12.     I am personally familiar with the documentation my firm created and maintained for billing purposes. Attachment C is a record of attorneys' fees incurred and billed made at or near the time of the entries from persons with knowledge of the hours worked. Our firm kept those billing records in the course of its regularly conducted business activity, and it was the regular practice of that business activity to make and record such time entries and bills. It was our regular practice to send such bills to clients on a periodic basis, and the first page of Debit Note 02-07-179 reflects that the bill and billing entry backup were sent to our contact for

- 4 -

Plaintiffs for payment.

13.    Attachment D to this Declaration is an Electronic Payment Advice from Riggs Bank, indicating that in October, 2002, our firm received by wire transfer from Plaintiffs payment for various invoices, including Debit Note 02-07-179.  Thus, Plaintiffs began paying thousands of dollars in attorneys' fees as a result of our failure to file an English translation of the PCT '947 Application at least as early as October, 2002.

14.    Attachment D is a record of payments received made at or near the time of the entries.  Our firm received and kept such records of payment from Riggs National Bank in the course of its regularly conducted business activity, and it was the regular practice of that business activity to make and record records of banking transactions with Riggs.  In addition, if Plaintiffs had not paid their bills in 2002, I would have been advised of such a failure to pay by our firm's accounting department in the regular course of our business activity, and I do not recall being so advised.

15.    The Board issued a Decision on Request for Reconsideration in March, 2003, reaffirming its ruling that Plaintiffs were required to file an English translation of the PCT '947 Application.  The Board did not address Plaintiff's request for an explanation of how they could be accorded the benefit of the JP '371 Application, and declined to modify its opinion.[3]

16.    Stevens filed a Notice of Appeal of the Board's decision to the Federal Circuit on May 12, 2003.[4]  That Notice of Appeal terminated the interference litigation before the Board.

---

[3]Decision on Request for Reconsideration, mailed March 13, 2003, attached as Exhibit E to this Declaration.

[4]Notice of Appeal, attached as Exhibit F to this Declaration.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on March 20, 2008.

William F. Westerman

# Exhibit
# A

LAW OFFICES

# Armstrong, Westerman & Hattori, LLP

SUITE 1000
1725 K STREET, N.W.
WASHINGTON, D.C. 20006

(202) 659-2930
FACSIMILE (202) 887-0357
FACSIMILE (202) 331-7519
FACSIMILE (202) 887-5155
VIDEO (202) 728-6844
www.armstrongpat.com

JAMES E. ARMSTRONG, III
WILLIAM F. WESTERMAN
KEN-ICHI HATTORI
WILLIAM G. KRATZ, JR.*
MEL R. QUINTOS
DONALD W. HANSON
STEPHEN G. ADRIAN
SCOTT M. DANIELS
WILLIAM L. BROOKS
THOMAS J. MACPEAK
JOHN F. CARNEY
JOHN P. KONG

JAMES E. ARMSTRONG, IV
SADAO KINASHI
THOMAS E. BROWN*
MICHAEL J. CARIDI
MICHAEL S. ALPRIN*
JOSEPH L. FELBER
KENNETH H. SALEN*
MICHAEL N. LAU
GEORGE N. STEVENS*
*Practice limited to matters and proceedings
before federal courts and agencies

TOKYO LIAISON OFFICE
6TH FL., DIAMOND PLAZA BLDG.
25 ICHIBANCHO, CHIYODA-KU
TOKYO 102, JAPAN
TEL. (03) 3234-8429
FACSIMILE (03) 3234-5643

PITTSBURGH OFFICE
THE LAW & FINANCE BUILDING
SUITE 707, 429 FOURTH AVENUE
PITTSBURGH, PENNSYLVANIA 15219
TEL. (412) 281-2931
FACSIMILE (412) 281-1821

BALTIMORE OFFICE
502 WASHINGTON AVENUE, SUITE 220
TOWSON, MARYLAND 21204
TEL. (410) 337-2295
FACSIMILE (410) 337-2296

SENIOR COUNSEL
LEONARD BLOOM

OF COUNSEL
RONALD F. NAUGHTON*
EDWARD F. WELSH*
NICOLAS E. SECKEL*
NICHOLAS S. BROMER*
EDWARD F. KENEHAN, JR.

JAPANESE BENRISHI
SHUJI YOSHIZAKI
YASUHISA KUROSE

PATENT AGENTS
JAMES N. BAKER
DANIEL A. GESELOWITZ, Ph.D.

July 12, 2002

** VIA FACSIMILE **

CONFIRMATION

Mr. Kenji Itami
ITAMI PATENT OFFICE
Daisan Bldg.
2-4, 3-Chome, Nishitenma
Kita-ku, Osaka 530
JAPAN

Re:    Interference No. 103,662
       U.S. Serial No.: 08/196,839
       By: TAMAI, Shigeru
       Your Ref: P123/SE.90
       Our Ref: P1151-2717-A940094I

Dear Itami san:

    Thank you for your facsimile letter of today.  After reviewing the Board's decision in this case, we estimate that it will take approximately $10,000 to $15,000 to prepare and file an appropriate Request for Reconsideration.

    Since, for some reason, the Board denied priority for the PCT application.  The risk is that, if **Stevens** files a Request for Reconsideration and prevails at the Board, then that could potentially break the chain of priority between the **JP '371** and the **US '183** applications.  While that may not happen, we believe that it is a risk and it is very important to address that risk at this time.  Thus, we strongly recommend filing a Request for Reconsideration on this point.



Mr. Kenji Itami
July 12, 2002
Page 2

Also of note, is that, if **Stevens** files a Request for Reconsideration, then we have the opportunity to file an Opposition to his Request for Reconsideration. We have 14 days after the service of **Stevens'** Request for Reconsideration to file our Opposition. The cost to file such an Opposition would be in addition to the cost quoted above. However, we would expect to review **Stevens'** Request for Reconsideration before we can estimate how much such an Opposition would cost.

Of course, it is possible that **Stevens** may not file a Request for Reconsideration.

For your information, it is also possible that, after a final determination by the Board, a dissatisfied party may appeal the Board's decision to the Court of Appeals for the Federal Circuit. Although, we are not yet at that stage, we do not expect that **Stevens** will pursue this matter that far.

We look forward to your further instructions.

With best regards,

Very truly yours,

ARMSTRONG, WESTERMAN & HATTORI, LLP

William F. Westerman

WFW/klh

# Exhibit
# B

UNITED STATES PATENT AND TRADEMARK OFFICE

---

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

---

CHRISTOPHER J. STEVENS,
Junior Party
(P.N. 5,393,368)

v.

SHIGERU TAMAI
Senior Party
(S.N. 08/186,839)

---

Patent Interference No. 103,662

---

**SENIOR PARTY TAMAI'S
REQUEST FOR RECONSIDERATION UNDER 37 C.F.R. § 1.658(b)
OF JUNE 25, 2002 BOARD DECISION**

Date: July 25, 2002

---

SHIGERU TAMAI

<u>Administrative Patent Judges</u>

**Murriel E. Crawford
Sally Gardner-Lane
Sally C. Medley**

RECEIVED
JUL 25 PM 4:03
BOARD OF PATENT APPEALS
AND INTERFERENCES

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................... 1

II.   APPLICATION OF 37 CFR § 1.639(a) ..................................... 3

III.  STEVENS NEVER DISPUTED THE SUBSTANTIVE CORRESPONDENCE
      BETWEEN TAMAI'S '183 AND PCT APPLICATIONS ............................... 5

IV.   STEVENS HAD ACCESS TO THE PCT APPLICATION AND TRANSLATION........ 6

V.    FIGURE 1 SUPPORTS CONSTRUCTIVE REDUCTION TO PRACTICE FOR
      BOTH THE '183 AND PCT APPLICATIONS .................................... 6

i

## <u>TABLE OF AUTHORITIES</u>

<u>Statutes</u>

35 USC §371 ............................................................................................. 4, 5


<u>Regulations</u>

37 CFR §1.494 ......................................................................................... 4, 5

37 CFR §1.612(a) ..................................................................................... passim

37 CFR §1.633(f) ...................................................................................... passim

37 CFR §1.639(a) ..................................................................................... passim

ii

## I.    **INTRODUCTION**

Senior party Tamai hereby requests reconsideration of the Board's decision mailed June 25, 2002 (hereinafter, the Decision).  The Decision granted judgment in favor of Tamai, but denied Tamai's motion under 37 CFR §1.633(f) to be accorded the benefit of the filing date of its PCT application no. PCT/JP92/00947 (PCT application).   Reconsideration of the Board's decision regarding Tamai's PCT application is respectfully requested, in view of the following reasons:

1.    Authorized representatives of the U.S. Patent and Trademark Office already determined that a translation of Tamai's PCT application was present in the '183 file wrapper, and 37 CFR §1.639(a) obviated the need for Tamai's 1.633(f) motion to include another copy of documents already in the file wrappers of record;

2.    Stevens has not and cannot identify any material discrepancies between the subject matter of the '183 application and the PCT application;

3.    Stevens had access to and the opportunity to examine the PCT application and translation pursuant to 37 CFR §1.612(a); and

4.    the Board's Decision finding constructive reduction to practice in Figure 1 of the '183 application essentially necessitates the same finding for the PCT application having the identical drawing.

The following table summarizes the points believed to be misapprehended or overlooked in the Decision.

| Board's Statements in the Decision | Points Misapprehended or Overlooked |
|---|---|
| "At the time this interference was declared, Tamai was accorded the benefit of U.S. Serial No. 08/030,183 (" '183 application") which was filed March 29, 1993 and was accorded senior party status on that basis." (Decision, page 2). | Therefore, Stevens had access to Tamai's PCT application and translation in the '183 application file wrapper pursuant to 37 CFR §1.612(a). Pursuant to 37 CFR §1.639(a), there is no need to serve additional copies of the PCT document and translation with Tamai's 1.633(f) motion. |
| "The PCT application is part of the file wrapper of the '183 application and JP '371 is part of the file wrapper for the involved Tamai application and the '183 application." (Decision, page 20). | Same as above. *See*, 37 CFR §§ 1.612(a) and 1.639(a). |
| "It is true that Tamai did not file a copy of the JP '371 and PCT applications, or a translation of the PCT application with the motion." (Decision, page 21). | Yes, but Stevens already had access to these documents in the '183 file wrapper and Tamai need not submit additional copies with the motion. *See*, 37 CFR §§ 1.612(a) and 1.639(a). |
| "In addition, copies of both applications are a part of the file wrapper of the '183 application and a translation of the JP '371 is part of the file wrapper for the involved application." (Decision, page 21). | Therefore, Stevens had access to Tamai's PCT application and translation in the '183 application file wrapper pursuant to 37 CFR §1.612(a). Pursuant to 37 CFR §1.639(a), there is no need to serve additional copies of the PCT document and translation with Tamai's 1.633(f) motion. |
| "As such, Stevens did have access to the copies and translations of the JP '371 at the time of the motion." (Decision, page 21). | Stevens also had access to copies and translations of Tamai's PCT application at the time of Tamai's motion. *See*, 37 CFR §§ 1.612(a) and 1.639(a), as well as paper no. 10 in the present interference pleadings (Stevens' Request for Access and Power to Inspect Tamai's '183 application, filed June 4, 1997 - copy attached in Appendix 1). |
| "Therefore, Tamai's failure to submit copies of the JP '371 application and its translation did not prejudice Stevens." (Decision, page 21). | Stevens was also not prejudiced regarding the PCT application and translation. *See*, 37 CFR §§ 1.612(a) and 1.639(a). |

| Board's Statements in the Decision | Points Misapprehended or Overlooked |
|---|---|
| "However, Tamai did not supply a translation of the PCT application, nor does it appear that Stevens was in possession of the application or the translation." (Decision, page 22). | Stevens had access to copies and translations of Tamai's PCT application at the time of Tamai's motion. *See*, 37 CFR §§ 1.612(a) and 1.639(a), as well as paper no. 10 in the present interference pleadings (Stevens' Request for Access and Power to Inspect Tamai's '183 application, filed June 4, 1997 - copy attached in Appendix 1). |
| "Stevens was not given the opportunity to examine the disclosures and translations for themselves." (Decision, page 22). | Stevens had access to and the opportunity to examine the PCT disclosures and translations for themselves, pursuant to 37 CFR § 1.612(a). *See also*, paper no. 10 in the present interference pleadings (Stevens' Request for Access and Power to Inspect Tamai's '183 application, filed June 4, 1997 - copy attached in Appendix 1). Furthermore, Stevens never averred lack of access, so Tamai never had the opportunity to challenge such a position. |
| "Therefore, we will not grant the motion as it is directed to the PCT application." (Decision, page 22). | Denial of Tamai's 1.633(f) motion regarding the PCT application was based upon points which were misapprehended or overlooked. |

## II.    APPLICATION OF 37 CFR § 1.639(a)

Benefit to Tamai's PCT application was denied primarily because a translation of that document was not served with Tamai's motion. Reconsideration of this decision is respectfully requested in view of 37 CFR §1.639(a).

For evidence in support of a motion, opposition, or reply, 37 CFR §1.639(a) requires that "proof of any material fact alleged in a motion, opposition, or reply must be filed and served with the motion, opposition, or reply unless the proof relied upon is part of the interference file

3

or the file of any patent or application involved in the interference or any earlier application filed

in the U.S. of which a party has been accorded or seeks to be accorded benefit."

Application of §1.639(a) obviated the need for Tamai to include another copy of the PCT

application or its translation with its 1.633(f) motion. The PCT application document and its

translation are already a part of the file wrapper for Tamai's U.S. patent application serial no.

08/030,183 ('183 application). Another copy need not be served with Tamai's motion. Tamai's

motion should not be denied for failing to provide extra copies of the documents already part of

the file wrappers of record.

The only issue is whether a "translation" was provided. In this regard, Tamai provided

the requisite translation of its PCT application upon the filing of its '183 application. More

importantly, the U.S. Patent and Trademark Office identified and accepted the '183 application

as a translation of Tamai's foreign language PCT application.

To comply with U.S. national stage entry requirements under 35 USC §371 and 37 CFR

§1.494, a translation of a foreign language PCT application must be provided. Compliance with

these requirements are checked by the authorized officers of the U.S. Patent and Trademark

Office before issuance of a Notification of Acceptance of Application under 35 USC §371 and

37 CFR §1.494.

In entering the U.S. national stage, Tamai submitted a translation of the PCT application

into English, as specifically identified by Tamai in the Transmittal Form PTO-1390 for the '183

application (paper no. 1 in the '183 file wrapper, copy attached in Appendix 2). Following

established procedures, an authorized officer of the U.S. Patent and Trademark Office completed

a checklist identifying the satisfaction of the requirement for a translation for the description,

claims, and abstract of the foreign language PCT application, and then issued the Notification of

Acceptance of Application under 35 USC §371 and 37 CFR §1.494 on June 3, 1993 (paper no. 3 in the '183 file wrapper, Tab 12 in Record for Senior Party Tamai, copy attached in Appendix 3). Therefore, authorized representatives of the U.S. Patent and Trademark Office already identified the presence of an accepted translation of Tamai's PCT application, as part of the '183 file wrapper.

Another copy of the translation need not be submitted as part of Tamai's 1.633(f) motion, pursuant to the provisions of 37 CFR § 1.639(a). Tamai's motion to be accorded the benefit of its PCT application cannot be denied for failing to provide another copy of a translation that authorized officers of the U.S. Patent and Trademark Office already deemed to be present in the '183 file wrapper. Stevens was not prejudiced and Tamai should not be penalized.

III.   **STEVENS NEVER DISPUTED THE SUBSTANTIVE CORRESPONDENCE BETWEEN TAMAI'S '183 AND PCT APPLICATIONS**

Stevens never identified any discrepancies between any foreign language document(s) and any translation(s). As the Decision points out, Stevens was in possession of a translation of Tamai's Japanese Patent Application No. 3-68371 (JP '371) and, in fact, analyzed the subject matter disclosed in the JP '371 application in its opposition with reference to the translation of JP '371 (Decision, page 21). Even with a copy of the translation for JP '371, Stevens never disputed the accuracy of the translation. Stevens never averred that the party had *not* considered the translation.

The same can be said about a translation of the PCT application. As mentioned above, 37 CFR §1.639(a) imputes to Stevens access and possession of documents and translations present in the file wrapper of Tamai's '183 application and Tamai's application no. 08/196,839 involved in the present interference. Stevens never challenged the substantive correspondence between

5

the PCT application and the '183 application. Stevens never averred that the '183 application was *not* an accurate translation of the PCT application. Stevens never averred that the party had *not* considered the '183 application to be an accurate translation of the PCT application. Stevens never averred the party had *not* obtained or reviewed an accurate translation of the PCT application. Stevens has not and cannot aver that Figure 1 of the PCT application is different from Figure 1 of the '183 application.

## IV.    STEVENS HAD ACCESS TO THE PCT APPLICATION AND TRANSLATION

The Decision denied Tamai's motion for benefit to the PCT application because "Stevens was not given the opportunity to examine the [PCT] disclosure and translations for themselves." (Decision, page 22). This is incorrect. Stevens had access to and was given the opportunity to examine the PCT application and translation pursuant to 37 CFR §1.612(a). In fact, Stevens specifically requested access to Tamai's '183 application (containing both the PCT application and its translation) in Stevens' Request for Access and Power to Inspect dated June 4, 1997 (paper no. 10 in the interference pleadings, copy attached in Appendix 1). By addressing the '183 application, Stevens, in fact, addresses the translation of the PCT application.

## V.    FIGURE 1 SUPPORTS CONSTRUCTIVE REDUCTION TO PRACTICE FOR BOTH THE '183 AND PCT APPLICATIONS

Even assuming, *arguendo*, that Stevens did not have a translation of Tamai's PCT application, no prejudice exists to Stevens because all substantive issues were readily resolved by simply referring to the embodiment shown in Figure 1 of Tamai's PCT application (present in the file wrapper of the '183 application). For instance, to resolve constructive reduction to

practice issues related to Tamai's Japanese Patent Application No. 3-68371 (JP '371), the Decision stated:

> We note that Figure 1 of the JP '371 application and Figure 1 of the '183 application are identical. And *from this figure*, it is *clear* that the '183 device *includes the elements of the count.* (Decision, page 22).

The Decision also pointed out that "[a] benefit application need only describe a single enabled embodiment within the scope of the count to constitute a constructive reduction to practice of the invention of the count." (Decision, page 14).  Neither Stevens nor the Board disputes the fact that the drawings of Tamai's PCT application are exactly identical to the drawings of Tamai's JP '371 and '183 applications.  By finding that single enabled embodiment and constructive reduction to practice in Figure 1 of Tamai's JP '371 and '183 applications, the Board's Decision essentially necessitates the same finding for Tamai's PCT application.

To be consistent with the Board's Decision granting Tamai the benefit of the '183 and JP '371 applications, Tamai respectfully requests reconsideration and grant of Tamai's motion to be accorded the benefit of its PCT application.  Otherwise, if this request is denied, it is respectfully requested that the Board explain how Tamai is entitled to the benefit of the JP '371 application without the linking PCT application in the chain of priority.  A proposed modification of the Board's Decision is attached in Appendix 4.

Respectfully submitted,

ARMSTRONG, WESTERMAN & HATTORI, LLP

William F. Westerman
Reg. No. 29,988

JPK
Atty. Docket No. **940094I**
1725 K Street, N.W., Suite 1000
Washington, D.C. 20006
Tel. (202) 659-2930
Fax: (202) 887-0357

23850

PATENT TRADEMARK OFFICE

H:\HOME\JPK\Special Prosecution\940094i\Request for Reconsideration

8

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that a copy of the REQUEST FOR RECONSIDERATION UNDER

37 C.F.R § 1.658(b) OF JUNE 25, 2002 BOARD DECISION by the Senior Party TAMAI has been

mailed by Federal Express courier, postage pre-paid, this July 25, 2002, to the attorney for the party

STEVENS at the below-listed address:

Charles P. Boukus, Jr., Esq.
Suite 202
2001 Jefferson Davis Highway
Arlington, Virginia 22202

Kristin A. Linn

Tab 1

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

In re Patent Application of          )
                                     )
Shigeru Tamai                        )     Attention:
                                     )
Application No. 08/030,183           )     Andrew H. Metz
                                     )
Filed:  March 29, 1993               )     Interference No. 103,662
                                     )
For:  [UNKNOWN]                      )

Honorable Commissioner of
     Patents and Trademarks
Washington, D. C. 20231

Dear Sir:

### REQUEST FOR ACCESS AND POWER TO INSPECT

The undersigned, Charles P. Boukus, Jr., attorney for the party Stevens in Interference No. 103,662, hereby requests access to the prosecution file of the above-identified application for purposes of inspection and copying of the file. Application No. 08/030,183, filed March 29, 1993, is identified in the Notice of Interference No. 103,662 dated May 9, 1997.

Respectfully submitted,

*Charles P. Boukus Jr.*
Charles P. Boukus, Jr.
Registration No. 24,754
Suite 202
2001 Jefferson Davis Highway
Arlington, Virginia 22202

Telephone:  (703) 415-2620
Fascimile:  (703) 415-2622

June 4, 1997

1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing

REQUEST FOR ACCESS AND POWER TO INSPECT

was served by first class mail, postage prepaid, on attorney for
party Tamai, William F. Westerman, Armstrong, Westerman, Hattori,
McLeland & Naughton, Suite 1000, 1725 K Street, N.W., Washington,
D. C. 20006 on June  4 , 1997.

Charles P. Boukus, Jr.
Registration No. 24,754

2

Tab 2



IF030183

38 Rec'd PCT/PTO 2 9 MAR '93

| Form PTO-1390 | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTORNEY'S DOCKET NUMBER |
|---|---|---|
| TRANSMITTAL LETTER TO THE UNITED STATES DESIGNATED/ELECTED OFFICE (DO/EO/US) | | 930203 |
| | | DATE: March 29, 1993 |
| INTERNATIONAL APPLICATION NO. PCT/JP92/00947 | INTERNATIONAL FILING DATE July 24, 1992 | PRIORITY DATE CLAIMED July 31, 1991 |

TITLE OF INVENTION
COATING FILM TRANSFER TOOL

APPLICANT(S) FOR DO/EO/US
Shigeru TAMAI

Applicant herewith submits to the United States Designated/Elected Office (DO/EO/US) the following items under 35 U.S.C. 371:
1. [xx] This express request to immediately begin national examination procedures (35 U.S.C. 371(f)).
2. [xx] The U.S. National Fee (35 U.S.C. 371(c)(1)); and/or xx other fees as follows:

| CLAIMS | (1) FOR | (2) NUMBER FILED | (3) NUMBER EXTRA | (4) RATE | (5) CALCULATIONS |
|---|---|---|---|---|---|
| | TOTAL CLAIMS | 1    -20= | 0 | x$ 22.00 | $    0 |
| | INDEPENDENT CLAIMS | 1    -3= | 0 | x$ 74.00 | 0 |
| | MULTIPLE DEPENDENT CLAIMS(S) (if applicable) | | | +$230.00 | 0 |

BASIC NATIONAL FEE (37 CFR 1.492(A)(1)-(4)):

[ ] International preliminary examination fee paid to USPTO (37 CFR 1.482) .........................$640
[ ] No international prelim. examination fee paid to USPTO (37 CFR 1.482) but international search fee paid to USPTO (37 CFR.1.445 (a)(2)) ....$710
[ ] Neither international preliminary examination fee (37 CFR 1.482 nor international search fee (37 CFR 1.445(a)(2)) paid to USPTO.........$950
[ ] International preliminary examination fee paid to USPTO (37 CFR 1.482) and all claims satisfied provisions of PCT Article 33(2) to (4).....$ 90
[xx] for filing with JPO search report (37 CFR 1.492(a)(5)) ................$830    830.00

| Surcharge of $130. for furnishing the National fee or oath or declaration later than [ ] 20 [ ] 30 mos. from the earliest claimed priority date (37 CFR 1.482(3)). | 0 |
|---|---|
| TOTAL OF ABOVE CALCULATIONS | = 830.00 |
| Reduction by 1/2 for filing by small entity, if applicable.  Affidavit must be filed also.  (Note 37 CFR 1.9, 1.27, 1.28) | 415.00 |
| SUBTOTAL | = 415.00 |
| Processing fee of $130. for furnishing the English Translation later than [ ] 20 [ ] 30 mos. from the earliest claimed priority date (37 CFR 1.482(f) | 0 |
| TOTAL NATIONAL FEE | = 415.00 |
| Fee for recording the enclosed assignment (37 CFR 1.21(h)). | + 40.00 |
| TOTAL FEES ENCLOSED | $ 455.00 |

a. [xx] A check in the amount of $   455.00   to cover the above fees is enclosed.
b. [ ] Please charge my Deposit Account No.  01-2340  in the amount of $_____ to cover the above fees. A duplicate copy of this sheet is enclosed.
c. [xx] The Commissioner is hereby authorized to charge any additional fees which may be required, or credit any overpayment to Deposit Account No.  01-2340 . A duplicate copy of this sheet is enclosed.

DATE: March 29, 1993

| Attorney's Docket Number |
| 930203 |

3. A copy of the International Application as filed (35 U.S.C. 371(c)(2)).
   a. [ ] is transmitted herewith (required only if not transmitted by the International Bureau).
   b. [ ] is not required, as the application was filed in the United States Receiving Office (RO/US).
   c. [XX] has been transmitted by the International Bureau.
4. [XX] A translation of the International Application into English (35 U.S.C. 371 (c)(2)).
5. Amendments to the claims of the International Application under PCT Article 19 (35 U.S.C. 371 (c)(3))
   a. [ ] are transmitted herewith (required only if not transmitted by the International Bureau).
   b. [ ] have been transmitted by the International Bureau.
6. [XX] An oath or declaration of the inventor (35 U.S.C. 371(c)(4)).
7. [ ] A translation of the Annexes to the International Preliminary Examination Report under PCT Article
   36(35 U.S.C. 371(c)(5)).

Other document(s) or information included:
8. [XX] International Search Report
9. [ ] An Information Disclosure Statement under 37 CFR 1.97 and 1.98.
10. [XX] An assignment document for recording.
    Please mail the recorded assignment document to:
    a. [XX] the person whose signature, name & address appears at the bottom of this page.
    b. [ ] the following:

11. The above checked items are being transmitted
    a. [ ] before the 18th month publication.
    b. [XX] after publication and the Article 20 communication but before 20 months from the priority date.
    c. [ ] after 20 months but before 22 months (surcharge and/or processing fee included).
    d. [ ] after 22 months (surcharge and/or processing fee included).
       Note: Petition to revive (37 CFR 1.137(a) or (b) is necessary if 35 U.S.C. 371 requirements
       submitted after 22 months and no proper demand for International Preliminary Examination was
       made by 19 months from the earliest claimed priority date.
    e. [ ] by 30 months and a proper demand for International Preliminary Examination was made by the 19th
       month from the earliest claimed priority date.
    f. [ ] after 30 months but before 32 months and a proper demand for International Preliminary Examina-
       tion was made by the 19th month from the earliest claimed priority date (surcharge and/or
       processing fee included).
    g. [ ] after 32 months (surcharge and/or processing fee included).
       Note: Petition to revive (37 CFR 1.137(a) or (b) is necessary if 35 U.S.C. 371 requirements
       submitted after 32 months and a proper demand for International Preliminary Examination was
       made by 19 months from the earliest claimed priority date.
12. At the time of transmittal, the time limit for amending claims under Article 19
    a. [ ] has expired and no amendments were made.
    b. [XX] has not yet expired.
13. [ ] Certain requirements under 35 U.S.C. 371 were previously submitted by the applicant on
    _____, namely:
    date
14. _____5_____ Sheets of Formal Drawings
15. XX Small Entity Declaration

Armstrong, Westerman, Hattori, McLeland & Naughton
NAME

Suite 1000 - 1725 K Street, N.W.
ADDRESS

Washington, D.C. 20006

Telephone No. (202) 659-2930

Albert Tockman
SIGNATURE    Albert Tockman

19,722
REGISTRATION NUMBER

Tab 3

#3

<table>
<tr><td>ARMSTRONG, WESTERMAN, HATTORI,<br>MCLELAND & NAUGHTON<br>1725 K. STREET, N.W.<br>SUITE 1000<br>WASHINGTON, D.C. 20006</td><td>UNITED STATES DESIGNATED/ELECTED<br>OFFICE (DO/EO/US)<br>NOTIFICATION OF ACCEPTANCE OF<br>APPLICATION UNDER 35 U.S.C. 371<br>AND 37 CFR 1.494 OR 1.495<br><br>Date of Mailing    0 3 JUN 1993<br><br>File Reference<br>930203</td></tr>
</table>

### IDENTIFICATION OF THE INTERNATIONAL APPLICATION

| International application No. | International filing date | Priority date claimed |
|---|---|---|
| PCT/JP92/00947 | 24 JUL 92 | 30 JUL 91 |

Applicant for DO/EO/US

TAMAI, SHIGERU

### NOTIFICATION

The applicant is hereby advised that the United States Patent and Trademark Office in its capacity as a ☑ Designated Office, ☐ Elected Office, has determined that the above identified international application has met the requirements of 35 U.S.C. 371 and 37 CFR ☑ 1.494, ☐ 1.495 and is ACCEPTED for national patentability examination in the United States Patent and Trademark Office.

The United States Serial Number assigned to the application and the relevant dates are:

08/030,183     29 Mar 93     29 Mar 93

| US NATIONAL SERIAL NO. | 35 U.S.C. 102(e) DATE | DATE OF RECEIPT 35 U.S.C. 371 REQUIREMENTS |
|---|---|---|

☑ A request for immediate examination under 35 U.S.C. 371 (f) was received on

29 Mar 93     and the application will be examined in turn.

☐ No request for immediate examination under 35 U.S.C. 371(f) was received. The application will not be processed or examined before the time limit set forth in either ☐ PCT Article 23 (Chapter I of the PCT) or ☐ PCT Article 40 (Chapter II of the PCT) whichever is applicable.

### UNITED STATES DESIGNATED/ELECTED OFFICE

<table>
<tr><td>ADDRESS ONLY<br>COMMISSIONER OF PATENTS AND TRADEMARKS<br>Box PCT, Attn. DO/EO/US<br>Washington, D.C. 20231</td><td>AUTHORIZED OFFICER<br><br>Allan Salyards</td></tr>
</table>

Form PCT/DO/EO/903 (U.S. Version) (April 1987)    U.S. DEPARTMENT OF COMMERCE - PTO

APPLICATION NO. 08/030,183

| INTERNATIONAL APPLICATION NO. | PRIORITY DATE | | DUE DATE |
|---|---|---|---|
| PCT GP92/00947 | July 31, '91 | | ☑ ☐ |

INTERNATIONAL FILING DATE: July 24, '92

FIRST NAMED APPLICANT FOR DO/EO/US: Tamai

TOTAL # APPLICANTS 1

LANGUAGE OF FILED APPLICATION: English

DATE OF RECEIPT OR MAILING:

PCT/IB/302

PCT/IB/304

PCT/IB/310A

PCT/IB/310(PD) - PRIORITY DOC. COPY: 20 May '93

PCT/IB/331 - US ELECTED: 20 May '93

PCT/IPEA/409 - IPER RECEIVED

PUBLICATION:
PUBL. NO. WO 93/0 287c
PUBL. DATE Feb 18, 93
LANGUAGE Japanese
GAZETTE ISSUE

NOT PUBLISHED:
☐ US ONLY DO/EO
☐ AS OF EP REQUE

**ARTICLE 20 RECEIPTS**
NORMAL FROM IB ☑
FROM APPLICANT ☐

| | YES | NO |
|---|---|---|
| REQUEST - RO 101 | ☑ YES | ☐ NO |
| DESCRIPTION | ☑ YES | ☐ NO |
| CLAIMS | ☑ YES | ☐ NO |
| DRAWINGS | ☑ YES | ☐ NO |
| COPY OF SEARCH | ☑ YES | ☐ NO |

NO DRAWINGS ON FILING ☐

TOTAL NO. OF PRIORITY DOCS. 1

**RECEIPTS FROM APPLICANT UNDER 35 U.S.C. 371**

COMPLETE AT ☑ 20 MO ☐ 30 MO.

| | YES | NO |
|---|---|---|
| NATIONAL FEE | ☑ YES | ☐ NO |
| OATH / DECL | ☑ YES | ☐ NO |
| TRANSLATION OF: | | |
| REQUEST | ☐ YES | ☑ NO |
| DESCRIPTION | ☑ YES | ☐ NO |
| CLAIMS | ☑ YES | ☐ NO |
| ABSTRACT | ☑ YES | ☐ NO |
| WORDS IN DRAWING | ☐ YES | ☑ NO |
| ARTICLE 19 AMDT | ☐ YES | ☐ NO |
| | ☐ Cancelled | |
| | ☑ None | |
| ARTICLE 34 AMDT | ☐ YES | ☑ NO |
| | ☐ Cancelled | |
| | ☐ None | |
| ARTICLE 36(3) AMDT | ☐ YES | ☐ NO |
| | ☐ Cancelled | |
| | ☑ None | |

COMPLETE AT ☐ 22 MO ☐ 32MO.

| | YES | NO |
|---|---|---|
| NATIONAL FEE | ☐ YES | ☐ NO |
| | ☐ Surcharge | |
| OATH / DECL | ☐ YES | ☐ NO |
| | ☐ Surcharge | |
| TRANSLATION OF: ☐ Processing fee | | |
| REQUEST | ☐ YES | ☐ NO |
| DESCRIPTION | ☐ YES | ☐ NO |
| CLAIMS | ☐ YES | ☐ NO |
| ABSTRACT | ☐ YES | ☐ NO |
| WORDS IN DRAWING | ☐ YES | ☐ NO |
| ARTICLE 34 AMDT | ☐ YES | ☐ NO |
| | ☐ Cancelled | |
| | ☐ None | |
| ARTICLE 36(3) AMDT | ☐ YES | ☐ NO |
| | ☐ Cancelled | |
| | ☐ None | |

35 U.S.C. 371 - RECEIPT OF REQUEST: 29. Mar. '93

DATE ASSIGNMENT RECEIVED: 29. Mar. '93

DATE PRELIMINARY AMENDMENT RECEIVED

DATE DISCLOSURE STATEMENT RECEIVED

DATE DO/EO 905 MAILED

DATE 905 RESPONSE RECEIVED

DATE DO/EO/903 MAILED - ACCEPTANCE NOTICE

DATE DO/EO/909 MAILED - ABANDONMENT NOTICE

DATE 35 USC 371 REQUIREMENTS MET: 29. Mar. '93

REQUESTED DOCUME. FROM IB THAT ARE NO IN THE FILE: ☐ YES ☐
DATE REQUESTED

☐ PCT GAZETTE PAGE
☐ SEARCH REPORT
☐ OTHER

INFORMALITIES NOTE
☐ YES ☐ NO

☐ OATH / DECLARATION
☐ OTHER

**OTHER RECEIPTS FROM THE APPLICANT AND DATE RECEIVED:**
☐ PTOL 1449 DISCLOSURE DOC.
☑ ASSIGNMENT
☐ NEW CLAIMS FOR PRIORITY
☑ OTHER small entity

REMEMBER TO ATTACH THIS TO THE DO/EO ASSIGNMENT / CREDIT SHEET FOR CREDIT

Tab 4

Interference No. 103,662

Tamai's PCT and JP applications

Tamai has moved for the benefit of earlier filed PCT and Japanese applications.  Tamai has identified the applications as Japanese Patent Application No. 3-68371 ("JP '371") and PCT Application No. PCT/JP92/00947 ("PCT application").  The PCT application is part of the file wrapper of the '183 application and JP '371 is part of the file wrapper for the involved Tamai application and the '183 application.  A translation of the PCT application was included in the '183 application in compliance with 35 USC §371 and 37 CFR §1.494.  Translation of the JP '371 application is part of the file wrapper of the involved Tamai application.  A copy of the translation of the JP '371 application was attached with the motion.  Copies of translations of these documents were served on Stevens with the Reply to the Opposition to this motion.  Nevertheless, pursuant to 37 CFR §1.639(a), Tamai was not required to submit with the motion copies of documents already present in the file wrappers of record.

The motion indicates that the written specification of the JP '371 and the PCT application are substantially identical to the specification of the '183 application and that the drawings of the JP '371 application and the PCT application are exactly identical to the drawings of the '183 application and that thus Tamai is entitled to the benefit of the JP '371 and PCT

Interference No. 103,662

application for the same reasons that it is entitled to the benefit of the '183 application.

Stevens has opposed this motion stating that (1) Tamai has failed to submit a copy of the JP '371 and PCT application with the motion, (2) Tamai has failed to make a showing that the JP '371 and PCT application constitute a constructive reduction to practice of the count and (3) no statement of material facts was submitted by Tamai to support the motion.

It is true that Tamai did not file a copy of the JP '371 and PCT applications, or a translation of the PCT application with this motion. Tamai did file a translation of the JP '371 application with the motion. In fact, Stevens analyzes the subject matter disclosed in the JP '371 application in its opposition with reference to the translation of the JP '371 application. In addition, copies of both the JP '371 and PCT applications and a translation of the PCT application are a part of the file wrapper of the '183 application and a translation of the JP '371 application is part of the file wrapper for the involved application. Stevens obtained access to the JP '371 and PCT applications and to the translation of the PCT application by Stevens' Request (Paper No. 10 filed 6/4/97) for the file history of the '183 application. As such, Stevens did have access to the copies and translations of the JP '371 and PCT applications at the time of the motion. Therefore, Tamai's

Interference No. 103,662

failure to submit copies of the JP '371 application and the PCT application and [its] the translation of the PCT application did not prejudice Stevens. [As such, in the interest of justice, we will consider the motion as it is directed to JP '371.]

[However, Tamai did not supply a translation of the PCT application, nor does it appear] Stevens never averred that Stevens was not in possession of the application or the translation. [Although Tamai alleges that the PCT application has the same disclosure as the JP '371 and submitted a declaration executed by Sadao Kinashi attesting to the fact that the disclosures of the PCT application and JP '371 are the same,] Stevens [was not given] had the opportunity to examine the disclosures and translations for themselves. [Therefore, we will not grant the motion as it is directed to the PCT application.]

In regard to Stevens' allegation that the motion failed to include a statement of material facts and to prove that the disclosure of the JP '371 and PCT applications [is] are a constructive reduction to practice of the count, we disagree. The motion clearly states that the drawings of the JP '371 and PCT applications are identical to the drawings of the 183' application. We note that Figure 1 of the JP '371 and PCT applications and Figure 1 of the '183 application are identical. And from this figure, it is clear that the '183 device includes

Interference No. 103,662

the elements of the count. Tamai also argues that the specifications of the JP '371 and PCT applications [is] are substantially identical to the specification of the '183 application. As such, in our view, Tamai did include in the motion a statement of material facts to prove that the disclosures of the JP '371 and PCT applications [is] are a constructive reduction to practice of the count.

Stevens also argues that the disclosures of the JP '371 and PCT applications [does] do not meet the requirements of 35 U.S.C. § 112, first paragraph, because in Steven's opinion, the disclosures [does] do not contain a written description of the invention of the count and [does] do not enable a person of ordinary skill in the art to make and use the invention of the count. Specifically, Stevens argues that the disclosures of the JP '371 and PCT applications [does] do not include a guide means on either side of the tip which operates with the tip shape to twist the tape, the tape path is not in a plane substantially perpendicular to the tip edge and that the JP '371 and PCT applications [does] do not enable a person of ordinary skill in the art to include a guide means in the tip of the device. We do not agree with this analysis for the reasons stated above in our discussion of Tamai's preliminary motion for benefit of the '183 application.

Interference No. 103,662

For the foregoing reasons, we will __grant__ the Senior party's motion for benefit [as it is directed] to the JP '371 application __and__ [but will __deny__ this motion with regard] to the PCT application.

# Exhibit C

Law Offices
**ARMSTRONG, WESTERMAN & HATTORI, LLP**
Suite 1000, 1725 K Street, Washington, D.C. 20006
Telephone (202) 659-2930
Facsimile (202) 887-0357 (GP III)
            (202) 331-7519 (GP III)

To: Riggs National Bank NA, Lincoln Branch, Account #37 17143 569

Date: July 31, 2002
Debit Note: 02-07-179

Itami Patent Office
Daisan Bldg.,
2-4, 3-Chome, Nishitenma
Kita-ku, Osaka 530-0047
Japan

Our File No: 1151-0179
===========================================================================

For services rendered during the period
July 5, 2002 through July 31, 2002
Re: COATING FILM TRANSFER TOOL

11,392.50

Disbursements                                                    112.80

                                                            ------------
Total Amount Due:                                           $ 11,505.30
                                                            ============

COATING FILM TRANSFER TOOL
Our Reference: 1181 0179

| DATE | ATTORNEY | DESCRIPTION | TIME | VALUE |
|------|----------|-------------|------|-------|
| | | Review Decision. | 2.5 | $750.00 |
| 07/05/02 | J. Kong | | | |
| 07/06/02 | J. Kong | Detailed review of Decision; conference with Messrs. W. Westerman, B. Kenehan and T. Macpeak. | 1.9 | $570.00 |
| 07/08/02 | E. Kenehan | Office conference with Messrs. W. Westerman, J. Kong and T. Macpeak; review the Board's decision. | 1.5 | $525.00 |
| 07/08/02 | W. Westerman | Discuss with Mr. T. Macpeak and prepare letter to Mr. Itami | 0.4 | $140.00 |
| 07/09/02 | B. Kenehan | Office conference with Mr. T. Macpeak. | 0.3 | $105.00 |
| 07/10/02 | W. Westerman | Review Board's decision in detail and discuss with Messrs. J. Kong, T. Macpeak and B. Kenehan. | 2.5 | $875.00 |
| 07/10/02 | J. Kong | Conference with Messrs. W. Westerman, E. Kenehan and T. Macpeak; prepare for Request for Reconsideration. | 1.5 | $450.00 |
| 07/12/02 | W. Westerman | Discuss with Messrs. J. Kong, T. Macpeak and E. Kenehan, draft letter to client. | 0.8 | $280.00 |
| 07/22/02 | J. Kong | Draft Request for Reconsideration. | 6.8 | $2,040.00 |
| 07/23/02 | J. Kong | Revise Request for Reconsideration; conference with Messrs. W. Westerman and E. Kenehan. | 6.7 | $2,010.00 |
| 07/23/02 | W. Westerman | Review Request for Reconsideration and discussed with Messrs. T. Macpeak, E. Kenehan and J. Kong. | 2.0 | $700.00 |
| 07/23/02 | T. Macpeak | Review draft request for reconsideration and comments thereon; office conference with Messrs. W. Westerman and E. Kenehan regarding Request for Reconsideration; further conference with Mr. E. Kenehan | 1.1 | $662.50 |
| 07/23/02 | E. Kenehan | Review draft reconsideration request from Mr. J. Kong; draft comments; draft appendix commenting on particular statements in decision; draft appendix; review decision; office conferences with Messrs. T. Macpeak, J. Kong and W. Westerman. | 2.5 | $875.00 |
| 07/24/02 | J. Kong | Prepare proposed modified decision. | 3.9 | $1,170.00 |
| 07/24/02 | W. Westerman | Review and discussion with Messrs. E. Kenehan and J. Kong | 1.0 | $350.00 |

Total Attorney Services. . . . .  $ 11,392.50

DISBURSEMENTS
-------------

Duplicating                                      55.80
Patent Office Copies                             57.00


ATTORNEY TIME:
WFW     6.70 HOURS AT $350.00     $2,345.00
TJM     1.30 HOURS AT $425.00       $552.50
EFK     4.30 HOURS AT $350.00     $1,505.00
JPK    23.30 HOURS AT $300.00     $6,990.00

# Exhibit D

 **RIGGS**

ELECTRONIC PAYMENT ADVICE

Riggs Bank N.A.
Money Transfer Department

ARMSTRONG WESTERMAN HATTORI                    17143569
MCLELAND & NAUGHTON
1725 K ST NW STE 1000                          OCTOBER 8, 2002
WASHINGTON        DC 20006-1401

FWI TRN 021008-000368    1008B1Q8383C00220310080948FT01        $20,650.50
  ORG: ITAMI PATENT OFFICE 2-4,3-CHOME NISHITENMA KITA-KU OSAKA   +15.00
  OGB: SUMITOMO MITSUI BANKING CORPORATION 4-6-5, KITAHAMA, CHYUO-KU
    OSAKA,JP                                                   20665.50
  FROM: DEUTSCHE BANK TRUST CO. AMERICAS    ABA/021001033    1151
  RFB: 710TTS-Z0642Z273
  OBI: FEES DEDUCTED $15.00 MF-045 MF-151 MF-184           02-07-217 02-07-21
    9 02-08-218 02-08-201

SUMMARY

              NUMBER           AMOUNT

DEBITS          0              $.00
CREDITS        12              $77,690.65

  TOTAL        12

PLEASE NOTE:  All incoming wire transfers which have a valid beneficiary name and account number are credited to the beneficiary's
              account for the amount received. All related charges are then debited from the account.

RM-01015 (Rev. 3/97)

# Exhibit
# E

Paper No. 82

Filed by: Merits panel
         Box Interference
         Washington, D.C. 20231
         Tel: 703-308-9797
         Fax: 703-308-7953

The opinion in support of the decision being entered today is <u>not</u>
binding precedent of the Board.

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

_____

CHRISTOPHER J. STEVENS,

Junior Party,
(P.N. 5,393,368)

v.

SHIGERU TAMAI,

Senior Party.
(S.N. 08/196,839)

_____

Patent Interference No. 103,662

_____

MAILED

MAR 1 3 2003

PAT. & T.M. OFFICE
BOARD OF PATENT APPEALS
AND INTERFERENCES

Before: CRAWFORD, GARDNER-LANE, and MEDLEY, <u>Administrative Patent
Judges</u>.

CRAWFORD, <u>Administrative Patent Judge</u>.

-1-



Interference No. 103,662

## DECISION ON REQUEST FOR RECONSIDERATION

Tamai has requested reconsideration and modification of our FINAL DECISION mailed June 25, 2002 (hereinafter, Decision). Specifically, Tamai seeks reconsideration of that portion of the Decision that denied Tamai's motion for benefit as it relates to PCT Application No. PCT/JP92/00947 ("PCT application"). Stevens opposes the request. For the following reasons, Tamai's request for modification of the Decision is denied.

In our Decision, we noted that the PCT application is part of the file wrapper of Tamai's application Serial No. 08/030,183 ("'183 application"). Tamai was accorded the benefit for purposes of priority of the '183 application.

Section 1.637(f) of 37 CFR states in relevant part:

> A preliminary motion for benefit under § 1.633(f) shall:
>
> . . . When the earlier application is an application filed in a foreign country, certify that a copy of the application has been served on all opponents. If the earlier filed application is not in English, the requirements of § 1.647 must also be met.

Section 1.647 of 37 CFR states:

> When a party relies on a document or is required to produce a document [is] in a language other than English, a translation of the document into English and an affidavit attesting to the accuracy of the translation shall be filed with the document.

Clearly, as Tamai filed a motion for benefit of the filing date

-2-

Interference No. 103,662

of its PCT application, which was in Japanese, Tamai was required
to file a translation of the PCT application along with the
motion.  This Tamai did not do.

In regard to Tamai's argument that the '183 application is a
translation of the PCT application, we note that Tamai did not
state that the '183 application is a translation of the PCT
application, attaching same, when the motion for benefit was
filed.  As such, we are not persuaded that such an alleged
correspondence between the '183 application and the PCT
application relieves Tamai of its obligations under 37 CFR
§ 1.637(f).[1]  In addition, we agree with Stevens that it is not
the burden of Stevens or this tribunal to look to the '183
application and determine whether it is a translation of the PCT
application.  Tamai argues that the provisions of 37 CFR § 1.639
obviate the need for Tamai's 1.633(f) motion to include another
copy of documents already in the file wrappers of record.

The provisions of 37 CFR § 1.639 do not obviate the need for
the filing of the PCT application as argued by Tamai.  Section
1.639 of 37 CFR relates to evidence in support of a motion and
states in relevant part that:

     . . .proof of any material fact alleged in a

---

[1] We also note that 35 U.S.C. § 371 (c)(2) requires a
translation but 37 CFR § 1.647 requires a translation and an
affidavit attesting to the accuracy of the translation.

-3-

Interference No. 103,662

> motion, opposition, or reply must be filed
> and served with the motion, opposition, or
> reply unless the proof relied upon is part of
> the interference file or the file of any
> patent or application involved in the
> interference or any earlier application filed
> in the United States of which a party has
> been accorded or seeks to be accorded
> benefit.

As section 1.639 relates to evidence needed to prove a material

fact in a motion while § 1.637(f) relates to documents that are

required to be filed with a motion for benefit, the provisions of

§ 1.637(f) are not obviated by the provisions of § 1.639.

Tamai also argues that all substantive issues were readily

resolved by simply referring to the embodiments shown in Figure 1

of Tamai's PCT application which was present in the file wrapper

of the '183 application.

However, it was not the obligation of Stevens to go through

the '183 application, find the PCT application and review the

drawings to resolve substantive issues.  It was Tamai's

obligation to file a copy of the translation with the motion

pursuant to the provisions of 37 CFR § 1.637(f).

Tamai has not met the requirements of 37 CFR § 1.637(f).

Tamai argues that it would be in the interest of justice to

accord Tamai the benefit of the filing date of the PCT

application notwithstanding the fact that the motion for benefit

was filed without the requisite translation of the PCT

-4-

Interference No. 103,662

application. We do not agree.

It is true that we may, in accordance with the provisions of 37 CFR § 1.640(b), take such other actions as will secure the just, speedy and inexpensive determination of the interference. However, we do not consider the granting of a motion for benefit of a PCT application which was filed without a copy of the translation of that PCT application to be in the interest of a just, speedy and inexpensive determination of the interference.

First, Stevens is entitled to review a translation of the PCT application at the time the motion was filed to determine how to respond to the motion. In addition, Stevens is entitled to expect that the rules of this tribunal will be followed by all parties to this interference.

Finally, we address Tamai's argument that it is inconsistent to accord Tamai the benefit of the Japanese Patent Application No. 3-68371 ("JP '371") and not accord Tamai the benefit of the PCT application. As we stated in our decision, Stevens was in possession of a translation of the JP '371 application at the time the motion was filed and was not in possession of the translation of the PCT application. As such, in our view, any inconsistency in the treatment of the JP '371 application and the PCT application arises because of Tamai's inconsistent actions in regard to these two applications.

Interference No. 103,662

The request for reconsideration is granted to the extent that we have reconsidered our decision but denied in that we decline to make any modifications to our decision.

Murriel E. Crawford ) 
Administrative Patent Judge )
)
)
Sally Gardner-Lane ) BOARD OF PATENT
Administrative Patent Judge ) APPEALS AND
) INTERFERENCES
)
Sally C. Medley )
Administrative Patent Judge )

MEC:tdl

-6-

Interference No. 103,662

Attorney(s) for Stevens:

Charles P. Boukus, Jr.
Suite 202
2001 Jefferson Davis Highway
Arlington, VA 22202


Attorney(s) for Tamai:

William F. Westerman
1725 K Street, N.W., Suite 1000
Washington, D.C. 20006

-7-

# Exhibit
# F

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

---

CHRISTOPHER J. STEVENS,

        Junior Party,

    v.                                   Interference No. 103,662

SHIGERU TAMAI,

        Senior Party.

---

NOTICE OF APPEAL TO THE UNITED STATES
COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Mail Stop 8
Director of the United States Patent and Trademark Office
PO Box 1450
Alexandria, Virginia 22313-1450

Attention: Office of the Solicitor

Sir:

        Junior Party Christopher J. Stevens hereby serves notice under 35 U.S.C. §§ 141 and 142 of his appeal to the United States Court of Appeals for the Federal Circuit from the "Decision on Request for Reconsideration" of the Board of Patent Appeals and Interferences ("Board") dated March 13, 2003, and from the Board's "Final Decision" dated June 25, 2002, in Interference No. 103,662.

Pursuant to Federal Circuit Rules 15 and 52, three copies of this notice and payment of the $100.00 docketing fee are being filed simultaneously with the Clerk of the Federal Circuit.

Respectfully submitted,

May 12, 2003                     By:    _____
                                        Michael R. Weiner (Reg. No. 38,359)
                                        Sandip H. Patel (Reg. No. 43,848)
                                        MARSHALL, GERSTEIN & BORUN
                                        6300 Sears Tower
                                        233 South Wacker Drive
                                        Chicago, Illinois 60606-6357
                                        (312) 474-6300 Telephone
                                        (312) 474-0448 Facsimile

- 2 -

## CERTIFICATE OF MAILING

The undersigned hereby certifies that the foregoing "NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT" is being deposited with the United States Postal Services on May 12, 2003, utilizing the "Express Mail Post Office to Addressee" service of the United States Postal Service under Mailing Label No. **EV 341012678 US**, in an envelope addressed to:

> Mail Stop 8
> Director of the United States Patent and Trademark Office
> PO Box 1450
> Alexandria, Virginia 22313-1450

Richard Zimmermann

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and complete copy of the foregoing "NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT" is being served upon Counsel for Senior Party Shigeru Tamai by being deposited with the United States Postal Services on May 12, 2003, utilizing the "Express Mail Post Office to Addressee" service of the United States Postal Service under Mailing Label No. **EV 341012664 US**, in an envelope addressed to:

> Mr. William F. Westerman
> Armstrong, Westerman & Hattori, LLP
> 1725 K Street, N.W., Suite 100
> Washington, D.C. 20006

Richard Zimmermann

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **SEED COMPANY, LTD., et al,** |
| **Plaintiffs** |
| **v.** |
| **WILLIAM F. WESTERMAN, et al.** |
| **Defendants.** |

**Civil No. 1:08-cv-00355 (RMU)**

## <u>ORDER</u>

This matter having come before this Court on this _____ day of _____, 2008 on Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, on Statute of Limitations and Causation Grounds, and this Court having considered said Motion and any opposition thereto, it is hereby

ORDERED, that Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, on Statute of Limitations and Causation Grounds be and hereby is GRANTED.

_____
U.S. District Court Judge Ricardo Urbina