# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SEED COMPANY, LTD., et al. ) | |
| ) | |
| **Plaintiffs** ) | |
| ) | |
| **v.** ) | **CASE NUMBER 1:08-CV-00355-RMU** |
| ) | |
| WILLIAM F. WESTERMAN, et al. ) | |
| ) | |
| **Defendants.** ) | |

## PLAINTIFFS' OPPOSITION TO WESTERMAN DEFENDANTS' MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, ON STATUTE OF LIMITATIONS AND CAUSATION GROUNDS

Plaintiffs Seed Company, Ltd. and Shigeru Tamai (collectively, "Plaintiffs"), hereby oppose the motion to dismiss, or in the alternative, motion for summary judgment, of Defendants William F. Westerman, John Kong, Ed Kennehan and Westerman, Hattori, Daniels & Adrian, LLP, and respectfully request that the Court deny Defendants' motion to dismiss, or in the alternative, motion for summary judgment. Plaintiffs direct the Court's attention to the attached Plaintiffs' Memorandum of Points and Authorities in Response to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. If the Court treats this motion to dismiss as a motion for summary judgment, then plaintiffs request a continuance pursuant to Fed. R. Civ. P. 56(f) to conduct discovery to obtain additional evidence in opposition to defendants' motion.

This Response is supported by the concurrently-filed declarations of Messrs. Masatoshi Shintani and James Howard, and the exhibits attached to the declarations. Alternative proposed Orders accompany these papers, as well.

Dated: April 11, 2008

Respectfully submitted,

/s/ Creighton R. Magid
Creighton R. Magid (D.C. Bar No. 476961)
DORSEY & WHITNEY LLP
1050 Connecticut Avenue, N.W., Suite 1250
Washington, D.C. 20036
Telephone:  (202) 442-3555
Fax:  (202) 442-3199
magid.chip@dorsey.com

Counsel For Plaintiffs
SEED COMPANY LIMITED and SHIGERU
TAMAI

OF COUNSEL:
Paul T. Meiklejohn
Curt R. Hineline
James Howard
Mark S. Carlson
DORSEY & WHITNEY LLP
U.S. Bank Centre
1420 Fifth Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone:  (206) 903-8800
Fax:  (206) 903-8820

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 11th day of April, 2008, copies of the foregoing

Plaintiffs' Opposition To Westerman Defendants' Motion To Dismiss, Or, In The Alternative,

For Summary Judgment, On Statute Of Limitations And Causation Grounds, Memorandum Of

Points And Authorities In Opposition To Defendants' Motion To Dismiss, Or, In The

Alternative, Motion For Summary Judgment, Statement Of Genuine Issues Of Material Facts,

Declaration of James E. Howard, Declaration of Masatoshi Shintani and proposed Orders were

sent by first-class mail, postage prepaid to:


Christopher B. Mead, Esquire
London & Mead
1225 19th Street, N.W., Suite 320
Washington, D.C.  20036

Paul J. Maloney, Esquire
Carr Maloney, P.C.
1615 L Street, N.W., Suite 500
Washington, D.C.  20036

John H. Harman, Esquire
Coggins, Harman & Hewitt
8905 Fairview Road, Suite 600
Silver Spring, MD 20910



/s/ Creighton R. Magid

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SEED COMPANY, LTD., et al.** | ) |
| | ) |
| **Plaintiffs** | ) |
| | ) |
| **v.** | )    **CASE NUMBER 1:08-CV-00355-RMU** |
| | ) |
| **WILLIAM F. WESTERMAN, et al.** | ) |
| | ) |
| **Defendants.** | ) |

### MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Creighton R. Magid (D.C. Bar No. 476961)
DORSEY & WHITNEY LLP
1050 Connecticut Avenue, N.W., Suite 1250
Washington, D.C. 20036
Telephone:  (202) 442-3555
Fax:  (202) 442-31990
magid.chip@dorsey.com

Counsel For Plaintiffs
SEED COMPANY LIMITED and SHIGERU
TAMAI

OF COUNSEL:
Paul T. Meiklejohn
Curt R. Hineline
James Howard
Mark S. Carlson
DORSEY & WHITNEY LLP
U.S. Bank Centre
1420 Fifth Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone:  (206) 903-8800
Fax:  (206) 903-8820

Dated:  April 11, 2008

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF MATERIAL FACTS.........................................................................2

    A.    The Parties. .............................................................................................2

    B.    The Seed Patent Applications and USPTO Prosecution—March 13, 1993-
        May 9, 1997. ...........................................................................................3

    C.    The Board's Interference Proceeding Regarding Seed's Patent
        Application, and its Ruling Granting Victory to Seed—May 9, 1997-May
        12, 2003..................................................................................................4

    D.    Stevens' Federal Circuit Appeal of Seed's Interference Victory—May 12,
        2003-June 10, 2004...............................................................................10

    E.    Defendants' Post-Appeal Representation of Seed, Seeking to Overturn the
        Federal Circuit's Reversal of the Board—June 10, 2004-October 26, 2004.........12

    F.    The Westerman Defendants First Report to Their Malpractice Insurance
        Carrier of a Potential Claim by Plaintiffs—September 29, 2004 .........................13

    G.    Stevens' January 14, 2004 Settlement Offer to Seed, Before the Federal
        Circuit Reversed the Board's Ruling in Favor of Seed...........................................14

    H.    The Tolling Agreement and This Litigation. ...........................................15

ARGUMENT ....................................................................................................................16

    A.    Legal Standards Governing Defendants' Motion to Dismiss and for
        Summary Judgment. ..............................................................................16

    B.    Seed's Legal Malpractice Claims Against Defendants Were Timely Filed
        Under the Law of the District of Columbia. ...........................................17

        1.    Under The Discovery Rule, Seed's Claims Were Filed Timely...............18

            a.    Defendants Have Failed to Carry Their Burden of Showing that
                Seed Knew it had Been Injured by Defendants at Any Point
                Outside the Statute of Limitations Period......................................18

            b.    District of Columbia Cases Applying the Discovery Rule Under
                Similar Circumstances Are Instructive .........................................21

            c.    The Cases that Defendants Rely on Demonstrate that Seed's
                Claims Are Timely.......................................................................23

i

2.    Defendants' Lulling Comments Estop Them From Asserting the
Statute of Limitations Under the "Lulling Doctrine" ...............................28

    a.    The District of Columbia Follows the "Lulling Doctrine" ............27

    b.    The "Lulling Doctrine" Estops Defendants From Asserting the
Statute of Limitations Defense........................................................27

3.    Under the Continuous Representation Rule, the Statue of
Limitations Was Tolled Until Defendants' Representation of Seed
Terminated in December, 2006....................................................................34

    a.    The Continuous Representation Rule Tolls the Statute of
Limitations Until After the Representation Terminates................33

    b.    Defendants' Cases Are Not District of Columbia Law, Are
Not Controlling Precedent, and Do Not Support the
Proposition that the Continuous Representation Rule
Does Not Apply During Appeals....................................................37

C.    Plaintiffs' Claims Arising from Erroneous Legal Advice After the Board
Ruled Are Not Barred For Failure to Allege Proximate Cause. ...........................43

D.    If the Court Treats This Motion As a Motion for Summary Judgment, and
Believes Defendants Have Carried Their Burden, Then Seed Requests a
Continuance Pursuant to Rule 56(f) to Conduct Further Discovery......................45

CONCLUSION........................................................................................................................46

## TABLE OF AUTHORITIES

**C**ASES                                                                                                    **P**AGE(S)

*Beaty v. Republic of Iraq,* 480 F. Supp. 2d 60 (D.D.C. 2007) ........................................39

*Biomet Inc. v. Barnes & Thornburg*, 791 N.E. 2d 760 (Ind. Ct. App. 2003) ..........................37, 40

*Black v. National Football League Players Ass'n*, 87 F. Supp. 2d 1 (D.D.C. 2000) ....................44

*Bouknight v. District of Columbia*, 2008 U.S. District LEXIS 17678 (D.D.C. March 10,
     2008) ................................................................................................................15

*Bradley v. National Ass'n. of Securities Dealers Dispute Resolution, Inc.*, 433 F.3d 846
     (D.C. Cir. 2005) ................................................................................................39, 40

*Campbell v. Grand Trunk W.R.R. Co.,* 238 F.3d 772 (6th Cir. 2001) ..........................................16

*Doe v. Dept. of Justice*, 753 F.2d 1092 (D.C. Cir. 1985) ........................................................15

*Gallucci v. Schaffer*, 507 F. Supp.2d 85 (D.D.C. 2007) ........................................................39, 41

*Gonzalez v. K-Mart Corp.,* 940 F. Supp. 429 (D.P.R. 1996) ....................................................44

*Hobson v. Wilson,* 737 F.2d 1 (D.C.Cir.1984) ........................................................................16, 27

*In re Deep Vein Thrombosis,* 356 F. Supp. 2d 1055 (N.D. Cal. 2005) ..........................................44

*Interdonato v. Interdonato*, 521 A.2d 1124 (D.C. 1987) ..........................................................27

*Janicki Logging & Constr. Co., Inc. v. Schwabe, Williamson & Wyatt, P.C.,* 109
     Wash.App. 655, 37 P.3d 309 (2001) ....................................................................37, 40

*Johnson v. Ashcroft*, 2005 U.S. Dist. LEXIS 17961 (D.D.C. August 17, 2005) ..........................15

*Knight v. Furlow*, 553 A.2d 1232 (D.C. 1989) .................................................... *passim*

*Minebea Co., Ltd. v. Papst*, 444 F. Supp.2d 68 (D.D.C. 2006) ....................................................16

*Pierce v. Mansfield*, 530 F. Supp. 2d 146 (D.C.C. 2008) ............................................................16

*R.D.H. Communications, Ltd. v. Winston*, 700 A.2d 766 (D.C.App. 1997) ........................ *passim*

*Ray v. Queen*, 747 A.2d 1137 (D.C. 2000) ................................................................................27

*RDH Communications Ltd. v. Fed. Communications Comm'n*, 1994 WL 88230 (D.C. Cir.
     March 8, 1994) ................................................................................................34, 35, 38

*Richards v. Mileski*, 662 F.2d 65 (D.C. Cir. 1981) ......................................................................15

*Rogers v. Ingersoll-Rand Co.*, 144 F.3d 841 (D.C. Cir. 1998) ......................................................39

*Wagner v. Sellinger*, 847 A.2d 1151 (D.C. 2004).................................................................. *passim*

*Williams v. Mordkofsky*, 901 F.2d 158 (D.C. Cir. 1990) ....................................................25, 26, 27

## STATUTES AND REGULATIONS

35 U.S.C. § 119(a) .......................................................................................................................4, 5, 9

35 U.S.C. § 146.................................................................................................................................12

37 C.F.R. § 1.637 ..........................................................................................................................4, 5

37 C.F.R. § 1.647 ................................................................................................................................5

37 C.F.R. § 41.127(a)(2) ..................................................................................................................14

37 C.F.R. § 143.633(f) ........................................................................................................................4

D.C. Code § 12-301(8)......................................................................................................................16

## OTHER AUTHORITIES

Fed. R. Civ. P. 8 (a) .........................................................................................................................43

Fed. R. Civ. P. 12(d) ........................................................................................................................15

Fed. R. Civ. P. 15(a) ........................................................................................................................44

Fed. R. Civ. P. 56(f) ....................................................................................................................2, 44

Mallen & Smith, 3 LEGAL MALPRACTICE § 23:18 (2008) .....................................22, 23, 24, 37, 40

Mallen & Smith, LEGAL MALPRACTICE, § 22.11 (5th ed. 2000) ....................................................22

Manual of Patent Examining Procedure § 2308.01 .........................................................................14

## PRELIMINARY STATEMENT

This is an action for legal malpractice against attorneys that represented plaintiffs to procure United States patent rights.  Plaintiff Shigeru Tamai ("Tamai") is the inventor of a type of correction tape dispenser.  Tamai assigned his invention to Plaintiff Seed Company Ltd.[1] Seed applied for a patent in Japan, and subsequently engaged defendants to apply for a patent in the United States.  Prosecution of the patent application before the United States Patent and Trademark Office ("USPTO") led to an Interference proceeding before the Board of Patent Appeals and Interferences ("Board").  This in turn led to appeals to the Federal Circuit and the Supreme Court, which were followed by further proceedings before the Board.  While the procedural history may be complex, the issue for the Court is simple.  Defendants caused Seed to lose its United States patent rights by failing to file an English language translation of a critical Japanese language patent application in the Interference proceeding, in violation of federal regulations and Board rules, and then provided misleading and incorrect legal advice regarding this and other proceedings that deprived Seed of critical settlement opportunities.  As a consequence, Seed lost its patent rights, lost its royalty stream, must contend with the patent to which it lost in the interference, and has suffered *millions* of dollars in damages.

A subset of the defendants in this action, Messrs. Westerman, Kong and Kenehan, and Westerman, Hattori, Daniels & Adrian, LLP (collectively, "Westerman defendants"), have filed the present motion, inviting this Court to help them evade responsibility for their negligence by invoking the statute of limitations.  However, defendants have not carried their burden of proof to show that Seed was on notice of a non-speculative injury, its cause, and their misconduct within the limitations period.  This is not surprising, because Seed was *victorious* in the Interference—notwithstanding defendants' negligence—and its rights were not lost until its victory was finally and irrevocably reversed in appellate proceedings.  It is incredible that

---

[1] Unless otherwise noted, Tamai and Seed Company Ltd. are collectively referred to herein as "Seed" or "Plaintiffs."

defendants now assert that Seed should have sued them when they had just *won* in the interference.  Furthermore, defendants continuously reassured plaintiffs that they had not been harmed by the Board's ruling in any way, that defendants had done nothing wrong in the Interference, that the Board and the Federal Circuit rulings were erroneous, and that plaintiffs were likely to ultimately prevail.  Defendants' went so far as to assure plaintiffs that Seeds' opponents' positions were so frivolous as to be sanctionable.  Defendants' statements lulled plaintiffs such that they did not commence litigation against defendants, which estops defendants from asserting the statute of limitations under the "lulling doctrine."  Moreover, it is a matter of public record that defendants continued to represent Seed in proceedings before the USPTO, the Board, the Federal Circuit, and the Supreme Court, until at least *December 2006*, tolling the applicable three-year statute of limitations under the "continuous representation doctrine."[2]

Accordingly, the Westerman defendants' motion to dismiss, or in the alternative their motion for summary judgment, must be denied.  If the Court treats this motion to dismiss as a motion for summary judgment, then plaintiffs request a continuance pursuant to Fed. R. Civ. P. 56(f) to conduct discovery to obtain additional evidence in opposition to defendants' motion.

## STATEMENT OF MATERIAL FACTS

### A.    The Parties.

Seed is a small Japanese limited liability company, with offices in Osaka, Japan.[3]  Seed is in the business of designing, developing, manufacturing and distributing office and stationary supplies such as plastic erasers, rubber erasers and correction tape.[4]  It is also in the business of licensing others to market and sell its products in Japan, Europe, and the United States.[5]  It has

---

[2] Defendants' argument that it is "black letter law" that the "continuous representation doctrine" does not apply when an appeal is filed—*regardless of whether the plaintiff won or lost at trial*—is not the law of the District of Columbia.  *See infra.*

[3] Complaint, ¶ 2.

[4] *Id.*

[5] *Id.*

no offices in the United States, it employs no in-house United States lawyers or patent agents, and the employees responsible for its patents are primarily fluent only in Japanese.[6]  Seed is the owner by assignment of all Seed patent applications referred to herein.  Plaintiff Shigeru Tamai is an individual who resides in Osaka, Japan.[7]  Mr. Tamai is the inventor of the correction tape dispenser claimed in all Seed patent applications referred to herein.[8]

The defendants are attorneys and law firms that plaintiffs engaged to represent them in proceedings before the USPTO, the Board, the Federal Circuit Court of Appeals, and the Supreme Court of the United States with respect to Seed's United States patent applications and related proceedings.[9]  These attorneys included the Westerman defendants, who bring the present motion invoking the statute of limitations in the hope of avoiding liability for their negligence.

B.    **The Seed Patent Applications and USPTO Prosecution—March 13, 1993- May 9, 1997.**

On July 31, 1991, Seed filed for Japanese patent protection for the Tamai correction tape dispenser *via* Japanese Patent Application No. 3-68371 ("JP '371 Application").[10]  Seed desired to procure international patent rights for the invention of the JP '371 Application, so as the first step in this process, Seed filed Patent Cooperation Treaty Application No. PCT/JP92/00947 ("PCT '947") in the USPTO on July 24, 1992—less than one year after the  JP '371 Application was filed.[11]  Both the JP '371 Application and the PCT '947 Application are in Japanese.[12]

---

[6] Shintani Dec. ¶ 4.

[7] Complaint, ¶ 3.

[8] Complaint ¶ 3.

[9] Complaint ¶¶ 4-9.

[10] Complaint ¶¶ 13, 15.

[11] Complaint, ¶¶ 14, 15.

[12] Complaint, 13-14.

Seed, acting through Mr. Kenji Itami, engaged defendants to represent them on March 13, 1993, to procure a United States patent based on the PCT '947 Application.[13]  Defendants filed United States Patent Application No. 08/030,183 ("US '183 Application") on behalf of Seed on March 29, 1993—less than one year after the PCT '947 Application was filed.[14]  The time interval is critical.  Under United States patent law, an application may claim the benefit of an earlier foreign application's filing date only if the interval between the two filing dates is less than one year.[15]  Seed subsequently abandoned the US '183 application in favor of United States Patent Application No. 08/196,839 ("US '839 Application"), which, as a continuation of the US '183 Application, enjoyed the same filing date as the US '183 Application.[16]

### C.    The Board's Interference Proceeding Regarding Seed's Patent Application, and its Ruling Granting Victory to Seed—May 9, 1997-May 12, 2003

A competing patent applicant, Christopher Stevens, filed an application for a similar correction tape dispenser, and was awarded a patent, which issued on February 28, 1995 (the "Stevens patent").[17]  On May 9, 1997, the USPTO determined that the Stevens patent claims and the claims in Seed's US '839 Application claimed the same invention, and therefore declared an Interference proceeding.  An interference is an adversarial proceeding before the Board, in which the Board determines which party was the first to invent.[18]  One means of doing so is for a party to demonstrate through earlier-filed patent applications that the party had an effective filing date before the filing date of the other party.  Under federal regulations governing Interference procedure before the Board and Board rules, to be accorded the benefit of the filing date of an earlier application, a party must file a motion in the Interference with a copy of the application

---

[13] Shintani Dec. ¶¶ 3 and 39, and Shintani Dec. Ex. 1 at p. 1; Ex. 2.

[14] Complaint, ¶ 17 and Shintani Dec. Ex. 3.

[15] 35 U.S.C. § 119(a).

[16] Complaint ¶ 18; Shintani Dec. Ex. 4 at p. 1; Ex. 5 at p. 1; Ex. 6 at p. 1.

[17] Complaint ¶ 19.

[18] Complaint ¶ 20;  Shintani Dec. Ex. 7 at p. 3.

*and, if the application is not in English, a certified English language translation*.[19]  Plaintiffs engaged defendants to represent them in the Interference.[20]

Stevens filed an unopposed motion to be accorded the benefit of a United Kingdom patent application filed on February 10, 1993.[21]  This was the date that Seed had to beat to establish priority for the US '839 Application over the Stevens patent.  Defendants filed a motion for Seed to be accorded the benefit of both the July 31, 1991 filing date of the JP '371 Application, and the July 24, 1992 filing date of the PCT '947 Application.[22]  Of these two earlier patent applications, the *essential* one was the PCT '947 Application, for two reasons. First, the PCT '947 application, alone, established an earlier priority date than Stevens' 1993 priority date.  Second, all applications in the chain of priority must have filing dates that are no more than one year apart, so, since the JP '371 Application was filed more than one year before the US '839 Application, Seed needed the filing date of the intervening PCT '947 Application.[23] In other words, to be entitled to the earliest filing date of the JP '371 Application, there must be an unbroken chain from the US '839 Application back to the PCT '947 Application, back in turn to the JP '371 Application, with each link no more than one year apart.  In support of the motion for the benefit of the earlier filing dates, defendants filed an English language translation of the

---

[19]  In interference proceedings, 37 C.F.R. § 143.633(f) provides that a party may file a motion "to be accorded the benefit of the filing date of an earlier filed application."  37 C.F.R. § 1.637 provides that a party filing such a motion has the burden of proof to establish entitlement to the relief sought.  Critical to the instant litigation, 37 C.F.R. § 1.637(f)(2) provides that if the earlier application is not in English, "the requirements of section 1.647 must also be met."  In turn, 37 C.F.R. § 1.647 requires that "[w]hen a party relies on a document or is required to produce a document in a language other than English, a translation into English and an affidavit attesting to the accuracy of the translation shall be filed with the document."

[20]  Shintani Dec. Ex. 8 at p. 1; Ex. 9 at p. 1.

[21]  Complaint, ¶ 21.

[22]  Complaint, ¶ 22; Shintani Dec. Ex. 10 at p. 1.

[23]  *See,* 35 U.S.C. § 119(a).

JP '371 Application, *but they failed to file the English language translation of the intervening PCT '947 Application, required by federal regulations and Board rules.*[24]

On June 25, 2002, the Board issued its ruling.[25]  It denied Seed the benefit of the PCT '947 Application because of defendants' failure to file an English language translation.[26] Nevertheless, it granted <u>*victory*</u> to Seed, according it the benefit of the JP '371 Application's filing date, and concluding that Tamai had priority over the Stevens patent.[27]

Based on this ruling, defendants repeatedly emphasized to Seed that the Board's ruling was favorable, and that Seed was the prevailing party:

> We are enclosing two (2) copies of the decision recently received from the Board of Patent Appeals and Interferences.  *This is a decision in our favor*.

July 8, 2002 Letter from Defs. to Pls. (emphasis added).[28]  And again:

> The judgment indicates that, [plaintiff] **Tamai** established a constructive reduction to practice as of July 31, 1991, prior to **Stevens'[s]** date of February 10, 1993, thus, judgment was entered against **Stevens**.

July 11, 2002 Letter from Defs. to Pls. (emphasis in original).[29]  In defendants' July 11, 2002 letter to Seed, however, they recommended that Seed file a motion for reconsideration of the portion of the Board's ruling denying Seed the benefit of the PCT '947 Application's filing date.[30]  Accordingly, on July 25, 2002, defendants filed the motion for reconsideration of the portion of the Board's ruling with respect to the PCT '947 Application.[31]

---

[24] Complaint, ¶ 22.

[25] Complaint, ¶ 23; Shintani Dec. Ex. 11, Decision at p. 1.

[26] Shintani Dec. Ex. 11, Decision at p. 22; Ex. 12 at p. 2.

[27] Shintani Dec. Ex. 11, Decision at p. 29; Ex. 12 at p. 1.

[28] Shintani Dec. Ex. 11, Westerman letter at p. 3.

[29] Shintani Dec. Ex. 12 at p. 1.

[30] *Id* at p. 3.

[31] Shintani Dec. Ex. 13 at p. 1.

The Board issued a Decision on Request for Reconsideration on March 17, 2003, reaffirming its prior ruling in all respects.[32]  In response, defendants continued to emphasize to Seed that the most important aspect of the Board's ruling was that Seed was the prevailing party:

> The most significant item to consider in the FINAL JUDGMENT is that priority was awarded to Tamai, that judgment was entered against Stevens and that claims 1-5, 7-16, 18-21 of the Stevens patent are invalid.

March 21, 2003 Letter from Defs. to Pls. at 1-2 (emphasis in original).[33]  And again, a month later, defendants stressed the victory that they had achieved, *despite* the Board's denial of the benefit of the PCT '947 Application's filing date:

> The Board re-affirmed its Decision awarding priority to Tamai in this Interference even without granting us the benefit of the PCT application date.

April 18, 2003 Letter from Defs. to Pls. at 2.[34]  Regarding the prospect of appealing the Board's denial of Seed's motion for reconsideration, defendants assured Seed that they should be satisfied with the Board's ruling:

> However, at this time, we do not recommend such an appeal.  We believe it is best to let the decision stand.

March 21, 2003 Letter from Defs. to Pls. at 2.[35]  Defendants reiterated this point in April:

> Appeals under 35 USC 141 (CAFC) or 35 USC 146 (District Court) are for parties who are unsatisfied with the decision.  *We are satisfied with the decision. The Decision granted priority to Tamai in the Interference.  [. . . .]  Given the points above, letting the Decision stand ends the Interference in our favor.*

April 18, 2003 Letter from Defs. to Pls. at 2, 4 (emphasis added).[36]

Defendants reassured plaintiffs that the Board's ruling with respect to the PCT '947 Application *had caused them no harm.*  Defendants assured Seed that, after the Board's ruling in Seed's favor, the USPTO would allow a patent to issue on the pending US '839 Application:

---

[32] Shintani Dec. Ex. 14 at p. 1.

[33] Shintani Dec. Ex. 15 at p. 1.

[34] Shintani Dec. Ex. 16 at p. 2.

[35] Shintani Dec. Ex. 15 at p. 2.

[36] Shintani Dec. Ex. 16 at pp. 2-4.

> Tamai has priority with respect to Stevens and Stevens cannot be used as a
> reference against Tamai during the further prosecution of the Tamai application.
> Thus, we see no reason why the Tamai prosecution should not continue before the
> Patent Office (and eventually be allowed).

March 21, 2003 Letter from Defs. to Pls. at 2.[37]  Defendants repeatedly assured Seed that the

Board's failure to accord Seed the benefit of the PCT '947 Application would have no adverse

consequences in any future patent litigation:

> A Federal District Court (which hears patent cases) is not required to follow the
> rules of the Board of Patent Appeals and Interferences.  *Accordingly, we believe
> that a Federal District Court could conclude that there is sufficient support for
> the claims in the Tamai application.*

March 21, 2003 Letter from Defs. to Pls. at 2 (emphasis added).[38]  They reiterated this point:

> PTO rules apply only towards the claiming of priority benefits ***during an
> Interference***, and are not applicable during any future patent infringement
> lawsuits in federal district court.  The present Decision ends the Interference
> between Stevens and Tamai.  The Board's denial of benefits to the PCT date for
> lack of compliance with certain procedural Interference rules should not affect the
> substantive priority of our application if we later enforced a patent issuing
> therefrom against a third party.

April 18, 2003 Letter from Defs. to Pls., at 3 (emphasis in original).[39]

Defendants consistently *denied any wrongdoing on their part in the Interference*.  They

consistently attributed the Board's failure to accord Seed the benefit of the filing date of the PCT

'947 Application to mistakes of fact or law, rather than their failure to file the required

translation:

> In the Decision on the Request for Reconsideration, the Board stated that
> "Stevens was in possession of a translation of the JP '371 application at the time
> the motion was filed and was not in possession of the translation of the PCT
> application"  However, if Stevens was in possession of a translation of JP '371 at
> the time the motion was filed, then Stevens also had possession of a translation of
> the PCT application since our motion for benefit stated that "[t]he drawings of JP
> '371 and PCT '947 are exactly identical . . . and the PCT '947 specification is
> substantially the disclosure of JP '371."  [. . . .]
>
> In Stevens'[s] opposition to our Request for Reconsideration, Stevens asserted

---

[37] Shintani Dec. Ex. 15 at p. 2.

[38] *Id.*

[39] Shintani Ex. 16 at p. 3.

that "[t]o this day, Tamai has never served a copy of the Japanese-language PCT application, an English-language translation thereof, or an affidavit attesting to the accuracy of such a translation." However, we had served these items on Stevens with our Reply to Stevens's Opposition to our motion for priority benefit. In particular, our Reply included a copy of the Japanese-language PCT application, an English-language translation of JP '371, and a Declaration by Mr. Sadao Kinashi verifying that the verified translation of JP '371 is also a verified translation of the PCT application.

April 18, 2003 Letter from Defs. to Pls. at 2.[40]

---

[40] *Id* at p. 2.

**D.    Stevens' Federal Circuit Appeal of Seed's Interference Victory—May 12, 2003-June 10, 2004**

Stevens, having lost before the Board, appealed to the Federal Circuit on May 12, 2003.[41] According to defendants, however, plaintiffs had no reason to be alarmed by the appeal. From the date of the Board's ruling throughout the appeal, defendants continuously assured Seed that it was likely to be the prevailing party in the appeal, as well, and that Stevens' position in his appeal brief was so untenable as to be sanctionable:

> In view of Tamai's position, as expressed in the Appellee's Brief, *we fail to see how Stevens can, in good faith, maintain the appeal*. [. . . .] *Accordingly, if Stevens does not dismiss the appeal, Tamai may request an award of attorney's fees*, at least for those fees associated with reviewing any Reply Brief by Stevens and presenting an oral argument before the Federal Circuit.

Oct.8, 2003 Letter from Defs. to Pls. at 1 (emphasis added).[42] They emphasized in January 2004 the likelihood of prevailing: "[w]e continue to believe that our prospects for success [in the Federal Circuit appeal] are very good." Jan. 22, 2004 Letter from Defs. to Pls. at 1.[43] These representations were in accord with the Westerman defendants' internal assessment of Seed's likelihood of prevailing in the appeal. In Mr. Westerman's September 29, 2004 report to his firm's malpractice insurer, the Westerman defendants observed:

> In preparing and filing the Tamai brief and reply brief for the Federal Circuit, we believed that we had a clear winning case . . . .

Sept. 29, 2004 Letter from Defs. to Minnesota Lawyers Mutual.[44]

On May 4, 2004, however, the Federal Circuit affirmed the Board's ruling that Seed was not entitled to the benefit of the priority date of the PCT '947 Application, due to defendants' failure to file the required English translation.[45] The Federal Circuit then *reversed the ruling*

---

[41] Complaint, ¶ 23; Shintani Dec. Ex. 17, Notice of Appeal at p. 1.

[42] Shintani Dec. Ex. 18 at p. 1.

[43] Shintani Dec. Ex. 19 at p. 1.

[44] Howard Dec. Ex. 2.

[45] Complaint, ¶ 28; Shintani Dec. Ex. 20 at p. 1.

*that Seed was entitled to the benefit of the earlier JP '371 Japanese application.*  The Federal Circuit ruled that 35 U.S.C. § 119(a) precluded Seed from directly claiming the benefit of the JP '371 application because the JP '371 application was filed more than one year before the '183 application, of which the pending US '839 application was a continuation-in-part.

After the Federal Circuit's ruling reversing the Board, defendants continued to deny any wrongdoing in the Interference, and continued to blame the failure to accord Seed the benefit of the PCT '947 Application on legal and factual errors by the Federal Circuit:

> We are very disappointed with the Federal Circuit decision in Stevens v. Tamai. . . .  We believe that the decision includes legal errors, as well as mischaracterizations of the written record and the oral argument.

May 5, 2004 Letter by Defs. to Pls. at 1.[46]  This representation to Seed was in accord with the Westerman defendants' internal assessment of the Federal Circuit's ruling.  In the Westerman defendants' report to their malpractice carrier, they stated:

> We felt and still feel that this was a wrong decision and requested reconsideration on May 18, 2004.

9/29/04 Letter from Defs. to Minnesota Lawyers Mutual, at Report, p. 1.[47]

On May 12, 2004, defendants wrote to Seed, indicating that they were "in the process of drafting a petition for rehearing *en banc* (including a petition for reconsideration by the Panel)," *and that their firm would "absorb the cost for preparing and filing such a Petition*."  May 12,

---

[46] Shintani Dec. Ex. 20 at p. 1.

[47] Howard Dec. Ex. 2.  In fact, to this day, defendants insist that the decision to deny Seed the benefit of the priority date of  the PCT '947 Application was caused by legal and factual errors by the Board and Federal Circuit, not any wrongdoing of their own:

> [W]e did not file an English translation of the PCT '947 Application.  We believed that an English translation of the PCT '947 Application was unnecessary, because an English translation had been included in the '183 Application and had been accepted by the Patent Office.  Stevens and the Board had full access to that translation.  To this day, I believe that the Board and Federal Circuit's rulings with respect to the translation issue were wrongly decided, and elevate form over substance.

March 20, 2008 Decl. of William F. Westerman, ¶ 4.

2004 Letter from Defs. to Pls. (emphasis added).[48]  Defendants reassured Seed "that there is

sound legal basis for filing a Petition for Rehearing En Banc."

On May 27, 2004, while the Petitions for Rehearing were pending, defendants wrote to

Seed, and continued to blame the failure to accord Seed the benefit of the PCT '947 Application

on legal and factual errors by the Board and the Federal Circuit:

> We believe that Tamai is an obvious winner to one fully comprehending the facts
> and applicable law of the present Interference.  However, neither the Federal
> Circuit nor the Board (as well as, perhaps our opponent, Stevens) has appreciated
> these facts and applicable law.

May 27, 2004 Letter from Defs. to Pls. at 2.[49]  Defendants continued to deny any wrongdoing:

> The outcome of this matter may be based on unpredictable factors out of our
> control.  We could not have predicted the manner in which the Board and the
> Federal Circuit would misconstrue the facts and applicable law of the present
> Interference.

*Id.*  On June 10, 2004, however, the Federal Circuit denied the petitions for rehearing.[50]

### E. Defendants' Post-Appeal Representation of Seed, Seeking to Overturn the Federal Circuit's Reversal of the Board—June 10, 2004-October 26, 2004

On June 15, 2004, defendants wrote to Seed, outlining various options that defendants

would pursue in representing Seed regarding its United States patent applications, while at the

same time forcefully continuing to deny that they had made any errors in the Interference:

> As we have discussed in detail in our arguments before the Federal Circuit, *the
> issue is not a simple procedural error in which a translation was not filed*.  In
> fact, Stevens already had numerous "translations" [of] the PCT ['947] application.
> One such translation is the '183 application itself since the USPTO accepted the
> '183 application as a proper national stage application of the international PCT
> application.  . . . . We did not expect both the Board and the Federal Circuit to
> misunderstand this fact and misapply the law.  *We intend to pursue all reasonable
> means to have this corrected*.

June 15, 2004 Letter from Defs. to Pls. at 1 (emphasis added).[51]

---

[48] Shintani Dec. Ex. 21 at p. 1.

[49] Shintani Dec. Ex. 22 at p. 2.

[50] Shintani Dec. Ex. 23 at p. 1.

[51] *Id.*

On July 8, 2004, after the Federal Circuit remanded the Interference proceeding to the Board, defendants filed a petition on behalf of Seed to reopen the Interference.[52]  The Westerman firm also advised Seed that other options for overturning the result of the Federal Circuit's ruling: "[e]ven if the Petition [before the Board] is denied for whatever reason, and judgment is finally entered against Tamai, there are still other options for appeal, such as to the District Court under 35 U.S.C. § 146." July 27, 2004 Letter from Defs. to Pls. at 2.[53] Defendants closed the letter by emphasizing that "[w]e are continuing to take action.  As mentioned above, a Second Petition [to the Board] was filed on July 23, 2004." *Id.* at 3.

On September 7, 2004, defendants notified Seed that they would file a Petition for Writ of *Certiorari* in the Supreme Court of the United States the following day, and that the Petition would be at no charge to Seed.  Sept. 7, 2004 Letter from Defs. to Pls.[54]  On October 12, 2004, defendants notified Seed that the USPTO had denied the petitions for reconsideration.  Oct. 12, 2004 Letter from Defs. to Pls. at 1.[55]  On October 26, 2004, defendants notified Seed that the Supreme Court had also denied the Petition for Writ of *Certiorari*, and consequently, "there are no further appeals possible."  Oct. 26, 2004 Letter from Defs. to Pls. at 1.[56]

### F.    The Westerman Defendants First Report to Their Malpractice Insurance Carrier of a Potential Claim by Plaintiffs—September 29, 2004

While defendants argue in their motion to dismiss that plaintiffs—Japanese-speaking, non-lawyers—should have known that their cause of action for malpractice had accrued against the Westerman defendants in October, 2002, the Westerman defendants' conduct flatly contradicts this argument.  Did they report a potential claim to their malpractice insurer in October, 2002, when they assert that *plaintiffs* should have been on notice of their claim?  They

---

[52] Shintani Dec. Ex. 24 at p. 1.

[53] Shintani Dec. Ex. 25 at p. 2.

[54] Shintani Dec. Ex. 26 at p. 1.

[55] Shintani Dec. Ex. 27 at p. 1.

[56] Shintani Dec. Ex. 28 at p. 1.

did not.  It was not until almost *two years after defendants now say that Seed was on notice that its claim had accrued* that the Westerman defendants first reported their own knowledge of a potential claim by Seed to their malpractice insurer, in a report dated September 29, 2004 attached to a letter of the same date.[57]

### G.    Stevens' January 14, 2004 Settlement Offer to Seed, Before the Federal Circuit Reversed the Board's Ruling in Favor of Seed.

On January 14, 2004, after Seed had been proclaimed the victor in the Interference, and while Stevens's appeal of that ruling was pending but undecided before the Federal Circuit, the owner of the Stevens patent offered to settle the Interference with each party granting to the other a royalty-free, non-exclusive license, including the right to sublicense.[58]  In other words, the offer meant that Seed could retain its right and ability to license its product to licensees distributing office supplies in the United States, as long as Stevens retained a similar right.

If Seed had accepted this offer, the appeal to the Federal Circuit would have been dismissed, and the Board's ruling awarding priority to the US '839 Application to Seed would have become final.  Seed could have continued prosecuting its application, and as defendants had assured them would be the case, would have procured a United States patent.  Stevens' United States patent would have been invalid under the final Board ruling.

In a letter dated January 22, 2004, defendants incorrectly advised that even if Seed were to lose the pending Federal Circuit appeal, the patent application would thereafter "be returned to the Examiner" and Seed would be permitted to "add or amend claims."  Jan. 22, 2004 Letter from Defs. to Pls. at 4-5.[59]  In other words, defendants wrongly advised Seed that by losing its appeal it would not lose its ability to obtain patent rights in the United States.  Seed, in reliance upon the Westerman firm's incorrect legal advice, decided not to accept the settlement offer.[60]

---

[57] Howard Dec. Ex. 2.

[58] Complaint ¶ 25; Shintani Dec. Ex. 29 at pp. 1-2.

[59] Complaint ¶ 26; Shintani Dec. Ex. 19 at pp. 4-5.

[60] Complaint ¶ 27.

By letter dated December 4, 2006, Mr. Westerman admitted that defendants had recently learned that they were *"mistaken in thinking that the prosecution would reopen"* if Seed ultimately lost the Federal Circuit appeal.  Dec. 4, 2006 Letter from Defs. to Pls. at 1 (emphasis added).[61]  Contrary to defendants' advice, under 37 C.F.R. § 41.127(a)(2), "[a]dverse judgment against a claim is a final action of the [Patent] Office requiring no further action by the [Patent] Office to dispose of the claim permanently."[62]  Indeed, the Manual of Patent Examining Procedure ("MPEP") § 2308.01, a public document that instructs Patent Office Examiners how to examine patent applications, provides that, if no claim is allowed by the Board, "no further action is needed from the examiner" and "a notice of abandonment should be issued."[63]

**H.    The Tolling Agreement and This Litigation.**

Plaintiffs and defendants Westerman and the Westerman firm entered into a Tolling Agreement to toll the running of the statute of limitations on any claims for legal malpractice that Seed may have against defendants effective May 3, 2007.[64]  The Tolling Agreements for defendants Kong and Kenehan had an effective date of May 10, 2007.[65]  Plaintiffs timely filed the Complaint in this action on February 28, 2008.[66]

---

[61] Shintani Dec. Ex. 30 at p. 1; Complaint ¶ 30.

[62] Complaint ¶ 30.

[63] *Id.*

[64] Shintani Dec. Ex. 31.

[65] Shintani Dec. Ex. 32 and 33.

[66] Each Tolling Agreement expired by its own terms on December 31, 2007; however, they all included a provision that "[u]pon termination of the Agreement, any lawsuit commenced by Seed against the [defendants herein] shall, as to all claims preserved by this agreement, be considered timely commenced if a Complaint is filed within sixty (60) days following termination of the Agreement."  The Tolling Agreements preserved all claims that were not already time-barred as of May 3, 2007 (as to defendants William F. Westerman and Westerman, Hattori, Daniels & Adrien LLP) or May 10, 2007 (as to defendants John Kong and Ed Kenehan).

## ARGUMENT

**A.    Legal Standards Governing Defendants' Motion to Dismiss and for Summary Judgment.**

To prevail in opposing a motion to dismiss, the plaintiff must allege "a plausible entitlement to relief," by setting forth "any set of facts consistent with the allegations." *Bouknight v. District of Columbia*, 2008 U.S. District LEXIS 17678, *6-7 (D.D.C. March 10, 2008)[67], *quoting Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1967, 1969 (2007).  The court must treat the complaint's factual allegations—including mixed questions of law and fact—as true and draw all reasonable inferences therefrom in the plaintiff's favor.  *Id.* (citations omitted).  With respect to statute of limitations issues, courts in this Circuit are particularly reluctant to terminate a plaintiff's right to redress for injuries caused by a defendant due to the inherent factual questions that arise, and look upon motions to dismiss with disfavor, reasoning:

> [t]here is an inherent problem in using a motion to dismiss for purposes of raising a statute of limitations defense.  Although it is true that a complaint sometimes discloses such defects on its face, it is more likely that the plaintiff can raise factual setoffs to such an affirmative defense. . . . We do not hold that the use of a motion to dismiss is always improper to raise a statute of limitations defense, but we do suggest that a responding party often imposes an undue burden on the trial court and impedes the orderly administration of the lawsuit when he relies on a motion to dismiss to raise such an affirmative defense.

*Richards v. Mileski*, 662 F.2d 65, 73 (D.C. Cir. 1981).  The parties agree that, because statute of limitations issues often involve issues of contested fact, "the court should grant a motion to dismiss only if the complaint on its face is conclusively time-barred."  *Johnson v. Ashcroft*, 2005 U.S. Dist. LEXIS 17961, *14-15 (D.D.C. August 17, 2005), *citing Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998) and *Doe v. Dept. of Justice*, 753 F.2d 1092, 1115 (D.C. Cir. 1985).

Both parties have presented materials outside of the pleadings.  If these materials are not excluded by the Court, defendants' motion "must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  Deciding a motion for summary judgment, "the court must

---

[67] Copies of unpublished opinions are attached hereto.

draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true." *Pierce v. Mansfield*, 530 F. Supp. 2d 146, 155 (D.C.C. 2008) (citation omitted). "Because the statute of limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run. If the defendant meets this requirement then the burden shifts to the plaintiff to establish an exception to the statute of limitations." *Campbell v. Grand Trunk W.R.R. Co.,* 238 F.3d 772, 775 (6th Cir. 2001).

However, when, as here, the wrong remains undiscovered because it is by its nature "self-concealing," or because the defendant has taken affirmative steps to conceal it, as defendants have here, the defendant bears the burden of proving that the plaintiff was on inquiry notice of its claims. *See Hobson v. Wilson,* 737 F.2d 1, 35 (D.C.Cir.1984) ("When tolling is proper because the defendants have concealed the very cause of action . . . they have the burden of coming forward with any facts showing that the plaintiff could have discovered . . . the cause of action if he had exercised due diligence.") (*quoting Richards v. Mileski,* 662 F.2d 65, 71 (D.C.Cir.1981)); *Minebea Co., Ltd. v. Papst*, 444 F. Supp.2d 68, 174 (D.D.C. 2006) (same).

### B.    Seed's Legal Malpractice Claims Against Defendants Were Timely Filed Under the Law of the District of Columbia.

Both parties agree that District of Columbia law governs the issues raised by defendants' motion. In the District of Columbia, a legal malpractice action must be filed within three years after the right to maintain the action accrues. D.C. Code § 12-301(8). Here, it is undisputed that the parties executed a tolling agreement that preserves all claims that had not been extinguished by the statute of limitations as of May 3 or 10, 2007. Thus, Seed's claims are not barred by the statute of limitations unless they accrued before May 3, 2004, as to defendants Westerman and the Westerman firm, or before May 10, 2004, as to defendants Kong and Kenehan.

Seed's legal malpractice claims against defendants are not barred by the applicable District of Columbia three-year statute of limitations for three reasons, any one of which is sufficient to deny the Westerman defendants' motion. First, the District of Columbia applies the "discovery rule" to determine when a cause of action accrues, on which date the statute of

limitations begins to run.  Here, plaintiffs' malpractice claims did not accrue until substantially less than three years ago.  Second, defendants' reassurances to plaintiffs that plaintiffs had suffered no injury, that defendants had done nothing wrong, that the Board's and Federal Circuit's rulings were in error, and that plaintiffs were likely to prevail in each successive procedural phase of the litigation, lulled plaintiffs into believing that they had no reason to suspect a malpractice claim against defendants.  Under the "lulling doctrine," these statements estop defendants from asserting that the statute of limitations began to run until they ceased, substantially less than three years ago.  Third, defendants continued to represent plaintiffs with respect to plaintiffs patent applications through December, 2006.  Under the District of Columbia's "continuous representation doctrine," the statute of limitations did not begin to run until after the attorney client relationship ended, substantially less than three years ago.

### 1.    Under The Discovery Rule, Seed's Claims Were Filed Timely.

The discovery rule governs the issue of when a cause of action for legal malpractice accrues.  *Knight v. Furlow*, 553 A.2d 1232, 1234 (D.C. 1989).  Under the discovery rule, a claim does not accrue until a plaintiff knows, or in the exercise of reasonable diligence should know, of (1) an injury, (2) its cause, and (3) some evidence of wrongdoing.  *Wagner v. Sellinger*, 847 A.2d 1151, 1154 (D.C. 2004).  Contrary to defendants' representations, there is no bright line rule in the District of Columbia that knowledge sufficient to cause a malpractice cause of action to accrue occurs upon the filing of an appeal:

> [t]hat knowledge may exist. . . well before the resolution of an appeal.  *Or a client may not have reason to discover malpractice, in some instances, until years after an appeal has been resolved.*  We do not wish to encourage clients to rush prematurely into court, before their attorney's malpractice can be proved . . . .

*Knight,* 553 A.2d at 1236 (emphasis added).  Thus, in all discovery rule cases, "the inquiry is highly fact-bound and requires an evaluation of all of the plaintiff's circumstances."  *Id.*

          **a.**      **Defendants Have Failed to Carry Their Burden of Showing that Seed Knew it had Been Injured by Defendants at Any Point Outside the Statute of Limitations Period.**

A claim for legal malpractice requires proof of an "appreciable and actual harm flowing from the attorney's negligent conduct." *Knight*, 553 A.2d at 1235. Nominal, speculative or contingent harm is insufficient, because "the mere breach of a professional duty, causing only nominal damages, speculative harm or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence." *Id.* This principle is broadly recognized:

> [A]ll of the case-law formulations that allow the statute of limitations to commence running based on an attenuated idea of notice, rather than on actual knowledge, presuppose notice of an actual injury—an injury that has occurred—not merely a speculative wrong. If there is no injury, even the strongest belief that the defendant has caused the plaintiff real harm will not transmute that belief into a reality for limitations purposes.

*Wagner*, 847 A.2d at 1155.

The Westerman defendants argue that Seed was on notice that it had suffered injury when: (1) the Board ruled *in favor of Seed* without the benefit of the filing date of the PCT '947 Application; and (2) Seed incurred approximately $4,000 in legal fees in October, 2002 when it moved for reconsideration of the portion of the Board's ruling as to the PCT '947 Application. They argue that, although the Board's ruling in the Interference was a victory for Seed, it "carried the seeds of its own dismissal" because "losing the benefit of the PCT '947 Application broke the required one-year chain" between the JP '371 Application and the PCT '947 Application. Defs.' Mem. at 7.

The premise of this argument—that a *prevailing* litigant has been "injured" if a mistake is made in the litigation, so long as that mistake later results in a reversal on appeal on some future date—is absurd. Seed engaged defendants to litigate the Interference between Seed's US '839 Application and the Stevens patent. The object of that litigation was to secure priority for Seed over Stevens. On June 25, 2002, the Board ruled in Seed's favor, *granting* priority to plaintiffs' US '839 Application and invalidating the Stevens patent. Seed thus *won* the Interference, and at that point in time, was not injured.

Defendants' argument that the Board's ruling in the Interference in favor of Seed nevertheless "carried the seeds of its own dismissal" because "losing the benefit of the PCT '947 Application broke the required one-year chain" between the JP '371 Application and the PCT '947 Application (Defs.' Mem. at 7), reveals the speculative, contingent nature of the "harm" that defendants allege Seed had suffered at the time the Board ruled.  Since Seed was the prevailing party in the Interference, any "injury" from defendants' failure to file an English language translation of the PCT '947 Application was contingent on:  (1) Stevens filing an appeal to the Federal Circuit;  (2) the Federal Circuit reversing the Board based on defendants' failure;  and (3) that decision becoming final.  Such speculative harm, contingent upon uncertain future events, does not constitute injury under the discovery rule.  *Knight*, 553 A.2d at 1235; *Wagner*, 847 A.2d at 1155.

Furthermore, contrary to their argument now that Seed had been injured by the Board's failure to accord them the benefit of the PCT '947 Application's filing date, defendants consistently told plaintiffs the *opposite*.  They consistently reassured plaintiffs that they had *not* suffered any injury as a consequence of the portion of the Board's ruling regarding the PCT '947 Application.  Defendants assured Seed that upon remand of the Board's favorable ruling to the Examiner, the USPTO would allow a patent to issue on the pending US '839 Application despite the Board's ruling on the PCT '947 Application:

> Tamai has priority with respect to Stevens and Stevens cannot be used as a reference against Tamai during the further prosecution of the Tamai application.  Thus, we see no reason why the Tamai prosecution should not continue before the Patent Office (and eventually be allowed).

March 21, 2003 Letter from Defs. to Pls. at 2.[68]  Defendants repeatedly assured Seed that the Board's failure to accord Seed the benefit of the PCT '947 Application would have no adverse consequences to Seed in any future patent litigation:

> A Federal District Court (which hears patent cases) is not required to follow the rules of the Board of Patent Appeals and Interferences.  *Accordingly, we believe*

---

[68] Shintani Dec. Ex. 15 at p. 2.

> *that a Federal District Court could conclude that there is sufficient support for the claims in the Tamai application.*

March 21, 2003 Letter from Defs. to Pls. at 2 (emphasis added).[69]  They reiterated this point:

> PTO rules apply only towards the claiming of priority benefits ***during an Interference***, and are not applicable during any future patent infringement lawsuits in federal district court.  <u>The present Decision ends the Interference between Stevens and Tamai.</u>  The Board's denial of benefits to the PCT date for lack of compliance with certain procedural Interference rules should not affect the substantive priority of our application if we later enforced a patent issuing therefrom against a third party.

April 18, 2003 Letter from Defs. to Pls., at 3 (emphasis in original).[70]

Finally, defendants' argument that Seed should have been on notice that its cause of action against defendants had accrued as of October, 2002 is *flatly* contradicted by their own actions.  If Seed should have been on notice that it had a malpractice claim against defendants as of October, 2002, then it is indisputable that defendants—English speaking patent lawyers with expertise in USPTO interference proceedings—should equally have been on notice *at least* as of that date.  Yet did defendants, with all their expertise, did not notify their malpractice carrier of a potential claim by Seed in October, 2002.  Rather, it was not until *two years later*, on September 29, 2004, that defendants informed their malpractice carrier that they had notice of a potential claim by Seed against them arising from the Interference proceeding.[71]  This was *years* after the Board's initial ruling and after the Board denied the request for reconsideration, and *months* after the Federal Circuit had denied the petitions for rehearing.  If defendants did not have notice of a potential claim by Seed against them until September 29, 2004, *how could plaintiffs have been on inquiry notice of a claim before then?*

Here, Seed did not have inquiry notice of any injury until at the very earliest June 10, 2004, when the Federal Circuit denied their petitions for panel rehearing and for rehearing *en banc*, or alternatively, until October 26, 2004, when defendants informed them that the Supreme

---

[69] *Id.*

[70] Shintani Ex. 16 at p. 3.

[71] Howard Dec. Ex. 2.

Court had denied *Certiorari*.  Indeed, Seed arguably was not on inquiry notice until December 4, 2006, when the Westerman defendants first notified Seed that they had been mistaken all along in advising that the Interference action before the Board could simply be reopened, and any procedural errors remedied, after Stevens' appeal became final.[72]

> **b.    District of Columbia Cases Applying the Discovery Rule Under Similar Circumstances Are Instructive.**

Circumstances similar to those before the Court were present in *Wagner*, 847 A.2d 1151 (D.C. 2004).  There, plaintiff Wagner was injured during a surgical operation in October, 1990. *Id.* at 1153.  She engaged Sellinger to bring a medical malpractice action on her behalf in June 1992, and Sellinger filed a complaint on March 24, 1993, demanding ten million dollars in damages.  *Id.*  He then deposed each doctor for approximately one hour, and in the summer of 1994, advised Wagner to settle for a mere $175,000.  *Id.*  In July 1994, Wagner terminated her representation by Sellinger and engaged another attorney.  *Id.*

The new attorney opined that Sellinger's discovery efforts had been inadequate, and moved to depose the surgeons a second time, but the court denied the motion in October 1994. *Id.*  Wagner's case went to trial, and in August 1996, the jury found no liability.  *Id.*  In August 1997, the Wagners brought a malpractice claim against Sellinger.  *Id.* at 1154.  Sellinger moved for summary judgment based upon the statute of limitations, and the trial court granted the motion, ruling that the cause of action accrued on the day that Wagner terminated her representation by Sellinger, in July 1994.  *Id.*

The District of Columbia Court of Appeals reversed, observing that all of the case law that allows the statute of limitations to begin running based on notice "presuppose notice of an actual injury—an injury that has occurred—not merely a speculative wrong."  *Id.* at 1155.  The court thus rejected the notion that the cause of action had accrued when Wagner terminated her representation by Sellinger before a verdict had been entered against her, even though she knew

---

[72] Shintani Dec. Ex. 30 at p. 1.

her claims were likely to fail due to Sellinger's malpractice. *Id.* at 1156. The Court opined that such injury was still too speculative for purposes of the discovery rule, because:

> [T]he Wagners still had hope, however faint, that matters could be turned around, especially if successor counsel could reopen discovery. But even more to the point, had the Wagners sued Sellinger and his firm on July 21, 1994, there was no way to articulate any injury that could yield ascertainable damages. No injury allocable to Sellinger's apparent negligence could be ascertained unless and until the Wagners—using competent counsel to resurrect their medical malpractice claim—failed nonetheless to recover damages from the medical defendants, a result that did not occur until late August 1996.

*Id.* at 1156 (citations omitted). The Court reasoned:

> [A]n attorney's negligent error in the prosecution of a lawsuit 'may create only the potential for injury.' If that potential is not realized until later—if its occurrence depends on a 'contingent or future event'—then the injury is not sustained until the contingent or future event occurs.

*Id., citing* Mallen & Smith, 3 LEGAL MALPRACTICE, § 22.11, at 396-97 (5th ed. 2000). Accordingly, the Court held that Wagner's cause of action did not accrue until the date of the adverse jury verdict. *Id*. at 1157.

The current edition of Mallen & Smith, 3 LEGAL MALPRACTICE, the leading treatise on legal malpractice cited by the District of Columbia Court of Appeals, discusses this same point. It notes the factual nature of the inquiry, and emphasizes that a party that prevailed at the trial court level—as Seed did here—may not have knowledge of injury until after his or her victory is reversed on appeal:

> If the plaintiff had actual knowledge of only some facts, the application of the discovery rule depends on whether the plaintiff should have known of the other facts. *Often, the resolution raises an issue for the trier of fact concerning what a reasonable person should have known*. For example, a plaintiff may have actual knowledge of the conduct and of damage but not know that the attorney erred or that the error was tortious. *The plaintiff may be unaware of the fact of injury, until apparent success is reversed by an appeal*.

Mallen & Smith, 3 LEGAL MALPRACTICE, § 23:18 (2008) (emphasis added).

Here, as in *Wagner*, defendants were engaged to represent Seed in litigation. During the litigation, defendants committed legal malpractice by failing to file an English language

translation of the PCT '947 Application. That omission created, however, only the potential for injury, because the potential injury could not be realized until some future contingent event had occurred. In the words of the *Wagner* court, plaintiffs "still had hope" after they had been denied the benefit of the PCT '947 Application's filing date, because the Board had nevertheless ruled in their favor. *Wagner*, 847 A.2d at 1156. Whether, or not, Seed would ever suffer injury from the Board's ruling as to the PCT '947 Application depended on: (1) an appeal that might or might not be filed; (2) an appellate ruling that might or might not reverse the Board's favorable ruling; and (3) the outcome of other procedural efforts by defendants, which might or might not overturn the appellate ruling.

Thus, applying *Wagner*, Seed did not sustain actual, non-contingent injury until, at the *earliest*, when its victory before the Board was irrevocably reversed on appeal by the Federal Circuit's denial of Seed's petitions for rehearing and for rehearing *en banc* on June 10, 2004, or alternatively, on October 26, 2004, when defendants informed Seed that the Supreme Court had denied *Certiorari*. Indeed, given defendants' erroneous representations that Seed could continue prosecution of its pending patent application even if it *lost* the Stevens appeal, Seed could not have been on notice of its injury or defendants' wrongdoing until defendants notified Seed that their advice on this point was incorrect by letter dated December 4, 2006. *See, e.g.*, Mallen & Smith, 3 LEGAL MALPRACTICE, § 23:18 (2008).

### c. The Cases that Defendants Rely on Demonstrate that Seed's Claims Are Timely.

Defendants rely on *Knight v. Furlow*, 553 A.2d 1232 (D.C. 1989), to advance their argument that the statute of limitations bars Seed's claims. Knight, however, does not offer defendants any assistance. In *Knight*, plaintiff Knight engaged attorney Furlow to draft a will for Knight's father in 1980, under which Knight was to be the sole beneficiary. *Knight*, 553 A.2d at 1232. In 1981, Knight's father died, and Knight offered the will for probate, where it was contested by his brother. *Id.* In 1983, the trial court invalidated the will, meaning that—unlike the plaintiffs here—*Knight lost*. *Id.* at 1232-33. Knight promptly wrote Furlow, demanding that

Furlow put him in the same position as if the will had been upheld, and asserting that he did not believe an appeal could change the outcome. *Id.* at 1233. Shortly thereafter, Knight hired another attorney, who appealed the adverse trial court ruling and wrote to Furlow accusing him of malpractice. *Id.* The court of appeals affirmed the trial court on April 18, 1984. *Id.* Knight sued Furlow one day less than three years after the court of appeals ruling. *Id.*

On appeal, Knight did not dispute the fact that more than three years before filing a claim he knew that his attorney committed malpractice due to the adverse judgment entered against him. *Id.* at 1234. His sole argument was that he did not suffer injury until the appellate court affirmed the trial court's adverse judgment. *Id.* The appellate court disagreed. Since Knight admitted that he knew of his attorney's malpractice within weeks of the trial court's adverse judgment, which was well outside the statute of limitations period, the only remaining inquiry was when Knight knew that he had been injured. The court emphasized that nominal damages, speculative harm, or the threat of uncertain future harm could not cause a claim to accrue. *Id.* at 1235. However, the court concluded that the fact that Knight had hired a new attorney and paid court costs and attorneys fees—implicitly not "nominal" in amount—to appeal the trial court adverse judgment, was sufficient injury under the discovery rule. *Id.* at 1235-36.

Here, unlike the plaintiff in *Knight*, Seed was the prevailing party in the initial proceeding. Consequently, Seed did not suffer a non-speculative harm, but rather, only the threat of a possible future harm, contingent on a successful appeal ultimately becoming final. The *Knight* court specifically warned that "harm" of this nature could not cause a cause of action for legal malpractice to accrue. *Id.* at 1235. Rather, the court emphasized that an appeal affirming an adverse trial court ruling is not a critical event under the discovery rule, *because a claim could accrue either before or "years after an appeal has been resolved." Id.* at 1236 (emphasis supplied); *see also*, Mallen & Smith, 3 LEGAL MALPRACTICE, § 23:18 (2008).

Furthermore, under *Knight,* the occurrence of "nominal damages . . . does not suffice to create a cause of action for negligence." *Knight*, 553 A.2d at 1235. The meager $4,000 in legal fees that Seed incurred when defendants moved for reconsideration of the Board's ruling on its

entitlement to the priority date of the PCT '947 Application, could not constitute "injury" under the discovery rule.  By that point in time, defendants had charged Seed over $120,000 in attorney's fees for the patent prosecution and litigation of the Interference.[73]  The $4,000 in legal fees therefore represents a *de minimus* fraction—less than 4%—of the overall fees billed to Seed, and an *infinitesimal* sum compared to the injury that ultimately materialized.[74]

Defendants also rely on *Williams v. Mordkofsky*, 901 F.2d 158 (D.C. Cir. 1990), which they characterize as "strongly analogous."  In fact Williams offers defendants no assistance.  The *Williams* case involved Mr. and Mrs. Williams, who had engaged the Arent, Fox firm to apply to the Federal Communications Commission ("FCC") for a license to construct a television station in Salt Lake City, Utah in 1981.  *Id.* at 160.  The application included a commitment from the Williamses that they would devote themselves full-time to the management of the station.  *Id.* While this application was pending, the Williamses engaged Mordkofsky to apply to the FCC for a license to construct a cellular radio facility in 1982.  *Id.*  Mordkofsky advised the Williamses to include a directly conflicting commitment to devote themselves full-time to the management of the cellular facility, and assured them that the conflicts in the two applications would never be discovered, and if they were, one of the applications could be abandoned.  *Id.*

In 1984, Mr. Williams testified before an administrative law judge in support of the television application, and was questioned extensively about the conflicting time commitments.  *Id.*  The Arent Fox firm advised him that the television application was in "deep trouble" unless he could explain the inconsistency.  *Id.*  In November 1984, the ALJ requested an additional hearing to determine whether there had been a lack of candor.  *Id.* at 161.  In May of 1985, the ALJ denied the television application, based principally on the lack of an acceptable time commitment, and Mr. Williams' lack of candor.  *Id.*  The Williamses appealed to the FCC

---

[73] Shintani Dec. ¶ 6.

[74] This is not a $4,000 case, nor is it a $120,000 case.  Seeds damages presently are in the *millions* of dollars.

Review Board, and the Board turned down the Williamses' appeal in December of 1985. The Williamses then sued Mordkofsky over three years later, in January of 1988. *Id.*

The District Court granted summary judgment, concluding that the Williamses' claims were time-barred. *Id.* The D.C. Circuit affirmed, holding that the Williamses' claims accrued as of November 1984. *Id.* at 162. The court reasoned that Williams had knowledge that Mordkofsky had injured him, because since as early as August 1984, Williams had admitted that he blamed his legal problem on Mordkofsky. *Id.* The court then emphasized that the last element, evidence of wrongdoing, was a closer call, stating:

> [A] layman may not always be aware when unsatisfactory conduct by his attorney will give rise to a malpractice action. For that reason, *we have cautioned that courts should be wary of finding against a plaintiff on this point on a defendant's motion for summary judgment.*

*Id.* However, given that the Williamses "knew that Mordkofsky had urged them not to qualify their time commitment in the [cellular] application, and that their [television] application likely was doomed as a result," the court concluded that this was as a rare instance where summary judgment was appropriate. *Id.* In the process, the court noted that "adverse judicial action" was not strictly required before a plaintiff would have notice of wrongdoing. Rather, the court opined that a case-by-case analysis should be employed, under which a hearing to specifically evaluate Mr. Williams' lack of candor due to Mordkofsky's bad advice had to be viewed as putting Mr. Williams on notice of Mordkofsky's wrongdoing.

While *Williams*, as a federal case, is only persuasive authority regarding the District of Columbia discovery rule, to the extent that it can be appropriately compared to the instant case it shows that plaintiffs' claims here are timely under the discovery rule. First, unlike the Williamses, Seed was the prevailing party, *i.e.*, it won its case. This gave Seed no reason to suspect injury, let alone its cause, or wrongdoing. Second, if there were any doubt of this fact, unlike in *Williams*, defendants repeatedly assured Seed that there would be no adverse consequences from the Board's ruling on the PCT '947 Application. Third, the Williamses clearly were in an adversarial posture with respect to Mordkofsky as soon as a hearing was

ordered to evaluate the lack of candor they had exhibited through reliance on his advice, giving them ample evidence of wrongdoing. *Id.* at 163 (noting an adversarial posture existed by November 1984). This is demonstrated, among other things, by Mordkofsky's refusal to cooperate with the Williamses as soon as the hearing was ordered. *Id.* at 161, 163.

### 2. Defendants' Lulling Comments Estop Them From Asserting the Statute of Limitations Under the "Lulling Doctrine."

#### a. The District of Columbia Follows the "Lulling Doctrine."

In the District of Columbia, "[a] defendant is estopped from asserting the statute of limitations as a bar to plaintiff's action if he has done anything that would tend to lull the plaintiff into inaction and thereby permit the statutory limitation to run against him." *Interdonato v. Interdonato*, 521 A.2d 1124, 1135 (D.C. 1987) (*quoting Property 10-F, Inc. v. Pack & Ptocess, Inc.*, 265 A.2d 290, 291 (D.C. 1970)). This doctrine "is frequently applied where the conduct of a fiduciary is alleged to have lulled the plaintiff into failure to protect his interests within the statutory limitations period." *Ray v. Queen*, 747 A.2d 1137, 1142 (D.C. 2000). Determining whether a defendants' statements lulled a plaintiff into not filing a cause of action presents issues of fact that preclude summary judgment. *Interdonato*, 521 A.2d at 1135.

When a wrong remains undiscovered because the defendant has taken affirmative steps to conceal it, the defendant bears the burden of proving that the plaintiff was on inquiry notice of its claims. *See Hobson v. Wilson,* 737 F.2d 1, 35 (D.C.Cir.1984) (quoting *Richards v. Mileski,* 662 F.2d 65, 71 (D.C.Cir.1981) ("When tolling is proper because the defendants have concealed the very cause of action . . . they have the burden of coming forward with any facts showing that the plaintiff could have discovered . . . the cause of action if he had exercised due diligence.")). Defendants have not met their burden here.

#### b. The "Lulling Doctrine" Estops Defendants From Asserting the Statute of Limitations Defense.

Here, defendants assert that plaintiffs had notice of a claim against the Westerman defendants when (1) the Board handed plaintiffs a victory in the Interference while, notwithstanding, denying them the benefit of the filing date of the PCT '947 Application; and (2)

plaintiffs incurred a meager $4,000 in legal fees in October, 2002, moving the Board to reconsider its ruling as to the PCT '947 Application.  Yet to argue that Seed should have been on notice of this claim as of October, 2002, defendants themselves would have had to have been on notice.  Their representations to Seed, however, denied the existence of any claim.  They emphasized that the most important fact was that Seed had prevailed before the Board, that Seed would not suffer any adverse consequences from the Board's ruling as to the PCT '947 Application, that defendants had done nothing wrong in the Interference, that the Board's and Federal Circuit's rulings as to the PCT '947 Application were erroneous, and that plaintiffs' were likely to ultimately prevail.

Defendants consistently downplayed the portion of the Board's ruling on the PCT '947 Application, *reminding plaintiffs that they were the victorious party*:

> We are enclosing two (2) copies of the decision recently received from the Board of Patent Appeals and Interferences.  *This is a decision in our favor*.

July 8, 2002 Letter from Defs. to Pls. (emphasis added).[75]

> The judgment indicates that, [plaintiff] **Tamai** established a constructive reduction to practice as of July 31, 1991, prior to **Stevens'[s]** date of February 10, 1993, thus, judgment was entered against **Stevens**.

July 11, 2002 Letter from Defs. to Pls. (emphasis in original).[76]  In response to the Board's denial of the motion for reconsideration, defendants continued to emphasize that Seed was the prevailing party:

> The most significant item to consider in the FINAL JUDGMENT is that priority was awarded to Tamai, that judgment was entered against Stevens and that claims 1-5, 7-16, 18-21 of the Stevens patent are invalid.

March 21, 2003 Letter from Defs. to Pls. at 1-2 (emphasis in original).[77]  A month later, defendants stressed again the victory that they had achieved in the Interference:

---

[75] Shintani Dec. Ex. 11 at p. 1.

[76] Shintani Dec. Ex. 12 at p. 1.

[77] Shintani Dec. Ex. 15 at p. 1.

> On the merits of the Interference, the Board agreed with our arguments and awarded a Decision in our favor.  [. . . .]  The Board re-affirmed its Decision awarding priority to Tamai in this Interference even without granting us the benefit of the PCT application date.

April 18, 2003 Letter from Defs. to Pls. at 2.[78]  Defendants assured Seed that it should be content with the Board's ruling:

> However, at this time, we do not recommend such an appeal.  We believe it is best to let the decision stand.

March 21, 2003 Letter from Defs. to Pls. at 2.[79]  They made this point more forcefully in April:

> Appeals under 35 USC 141 (CAFC) or 35 USC 146 (District Court) are for parties who are unsatisfied with the decision.  *We are satisfied with the decision. The Decision granted priority to Tamai in the Interference.  [. . . .]  Given the points above, letting the Decision stand ends the Interference in our favor.*

April 18, 2003 Letter from Defs. to Pls. at 2, 4 (emphasis added).[80]

Defendants also continuously assured Seed that *it had not been injured by the Board's ruling with respect to the PCT '947 Application*.  Defendants assured Seed that, upon remand to the Examiner, the USPTO would allow a patent to issue on the pending US '839 Application:

> Tamai has priority with respect to Stevens and Stevens cannot be used as a reference against Tamai during the further prosecution of the Tamai application. Thus, we see no reason why the Tamai prosecution should not continue before the Patent Office (and eventually be allowed).

March 21, 2003 Letter from Defs. to Pls. at 2.[81]  Defendants repeatedly emphasized that the Board's failure to accord Seed the benefit of the PCT '947 Application would have no adverse consequences in any future patent litigation:

> A Federal District Court (which hears patent cases) is not required to follow the rules of the Board of Patent Appeals and Interferences.  *Accordingly, we believe that a Federal District Court could conclude that there is sufficient support for the claims in the Tamai application.*

---

[78] Shintani Dec. Ex. 16 at p. 2.

[79] Shintani Dec. Ex. 15 at p. 2.

[80] Shintani Dec. Ex. 16 at p. 2-4.

[81] Shintani Dec. Ex. 15 at p. 2.

March 21, 2003 Letter from Defs. to Pls. at 2 (emphasis added).[82]  Defendants pointed out that

they had won the Interference, and subsequent patent litigation by Seed would be unaffected:

> PTO rules apply only towards the claiming of priority benefits ***during an Interference***, and are not applicable during any future patent infringement lawsuits in federal district court.  <u>The present Decision ends the Interference between Stevens and Tamai</u>.  The Board's denial of benefits to the PCT date for lack of compliance with certain procedural Interference rules should not affect the substantive priority of our application if we later enforced a patent issuing therefrom against a third party.

April 18, 2003 Letter from Defs. to Pls., at 3 (emphasis in original).[83]

Defendants consistently *denied any wrongdoing in the Interference*.  They consistently

attributed the Board's failure to accord Seed the benefit of the filing date of the PCT '947

Application to mistakes of fact or law, rather than their failure to file the required translation:

> In the Decision on the Request for Reconsideration, the Board stated that "Stevens was in possession of a translation of the JP '371 application at the time the motion was filed and was not in possession of the translation of the PCT application"  However, if Stevens was in possession of a translation of JP '371 at the time the motion was filed, then Stevens also had possession of a translation of the PCT application since our motion for benefit stated that "[t]he drawings of JP '371 and PCT '947 are exactly identical . . . and the PCT '947 specification is substantially the disclosure of JP '371."  [. . . .]
>
> In Stevens'[s] opposition to our Request for Reconsideration, Stevens asserted that "[t]o this day, Tamai has never served a copy of the Japanese-language PCT application, an English-language translation thereof, or an affidavit attesting to the accuracy of such a translation."  However, we had served these items on Stevens with our Reply to Stevens's Opposition to our motion for priority benefit.  In particular, our Reply included a copy of the Japanese-language PCT application, an English-language translation of JP '371, and a Declaration by Mr. Sadao Kinashi verifying that the verified translation of JP '371 is also a verified translation of the PCT application.

April 18, 2003 Letter from Defs. to Pls. at 2.[84]  On May 27, 2004, while the Petitions for

Rehearing were pending, defendants wrote to Seed, and continued to blame the ruling on  the

PCT '947 Application on legal and factual errors by the Board and the Federal Circuit:

> We believe that Tamai is an obvious winner to one fully comprehending the facts

---

[82] *Id.*

[83] Shintani Ex. 16 at p. 3.

[84] *Id* at p. 2*.*

and applicable law of the present Interference.  However, neither the Federal
Circuit nor the Board (as well as, perhaps our opponent, Stevens) has appreciated
these facts and applicable law.

May 27, 2004 Letter from Defs. to Pls. at 2.[85]  Defendants continued to deny any wrongdoing:

The outcome of this matter may be based on unpredictable factors out of our
control.  We could not have predicted the manner in which the Board and the
Federal Circuit would misconstrue the facts and applicable law of the present
Interference.

*Id.*  On June 15, 2004, defendants wrote to Seed, outlining various options that defendants would

pursue in representing Seed regarding its United States patent applications, while at the same

time forcefully continuing to deny that they had made any errors in the Interference:

As we have discussed in detail in our arguments before the Federal Circuit, *the
issue is not a simple procedural error in which a translation was not filed*.  In
fact, Stevens already had numerous "translations" [of] the PCT ['947] application.
One such translation is the '183 application itself since the USPTO accepted the
'183 application as a proper national stage application of the international PCT
application.  . . . . We did not expect both the Board and the Federal Circuit to
misunderstand this fact and misapply the law.  *We intend to pursue all reasonable
means to have this corrected*.

June 15, 2004 Letter from Defs. to Pls. at 1 (emphasis added).[86]  After the Federal Circuit's

ruling reversing the favorable Board ruling, defendants continued to deny any wrongdoing in the

Interference, and continued to blame the failure to accord Seed the benefit of the PCT '947

Application on legal and factual errors:

We are very disappointed with the Federal Circuit decision in Stevens v.
Tamai. . . .  We believe that the decision includes legal errors, as well as
mischaracterizations of the written record and the oral argument.

May 5, 2004 Letter by Defs. to Pls. at 1.[87]  On May 27, 2004, while the petitions for rehearing

were pending, defendants wrote to Seed, continuing to blame the failure to accord Seed the

benefit of the PCT '947 Application on legal and factual errors by the Board and the Federal

Circuit, and denying any wrongdoing:

---

[85] Shintani Dec. Ex. 22 at p. 2.

[86] *Id.*

[87] Shintani Dec. Ex. 20 at p. 2.

> The outcome of this matter may be based on unpredictable factors out of our control. We could not have predicted the manner in which the Board and the Federal Circuit would misconstrue the facts and applicable law of the present Interference.

*Id.*

From the date of the Board's ruling throughout the appeal, defendants assured Seed that the Federal Circuit was likely to affirm the Board's ruling in favor of Seed. They told Seed that Stevens' position in his appeal brief was so untenable as to be sanctionable:

> In view of Tamai's position, as expressed in the Appellee's Brief, *we fail to see how Stevens can, in good faith, maintain the appeal.* [. . . .] *Accordingly, if Stevens does not dismiss the appeal, Tamai may request an award of attorney's fees*, at least for those fees associated with reviewing any Reply Brief by Stevens and presenting an oral argument before the Federal Circuit.

Oct.8, 2003 Letter from Defs. to Pls. at 1 (emphasis added).[88] Defendants emphasized in January 2004 that: "[w]e continue to believe that our prospects for success [in the Federal Circuit appeal] are very good." Jan. 22, 2004 Letter from Defs. to Pls. at 1.[89] Even after the Federal Circuit reversed the Board, defendants wrote to Seed on May 12, 2004 that they were "in the process of drafting a petition for rehearing *en banc* (including a petition for reconsideration by the Panel)," and "that there is sound legal basis for filing a Petition for Rehearing En Banc." May 12, 2004 Letter from Defs. to Pls. (emphasis added).[90]

The circumstances here show that: (1) Seed was a foreign language client relying heavily on defendants' advertised patent expertise; (2) Seed was advised that it was victorious in the Interference proceeding; (3) Seed was assured that the Board's ruling as to the PCT '947 Application had not injured Seed; (4) defendants consistently denied any wrongdoing in the Interference; (5) Seed was assured that an appeal by Stevens to the Federal Circuit was so frivolous as to entitle Seed to an award of attorney's fees; (6) Seed was assured that the Federal Circuit was likely to affirm the Board's ruling in Seed's favor; (7) Seed was told that the Board's

---

[88] Shintani Dec. Ex. 18 at p. 1.

[89] Shintani Dec. Ex. 19 at p. 1.

[90] Shintani Dec. Ex. 21 at p. 1.

and Federal Circuit's rulings as to the PCT '947 Application were erroneous; (8) Seed was repeatedly advised that additional avenues of appeal existed, and its rights were protected, even after the Federal Circuit reversed its victory and denied a petition for rehearing and a petition for rehearing *en banc*; (9) Seed was incorrectly told by defendants that the Interference action could be reopened to fix any procedural errors after the appeals were final; and (10) Seed was incorrectly told by defendants that the prosecution of their patent application would continue even if the Federal Circuit reversed the Board's favorable ruling.  On these facts, it is difficult to conceive of a stronger case for applying the "lulling doctrine," estopping defendants from asserting the statute of limitations.

> ### 3.    Under the Continuous Representation Rule, the Statue of Limitations Was Tolled Until Defendants' Representation of Seed Terminated in December, 2006.

Even if plaintiff's claims could be said to have accrued more than three years ago, and even if defendants were not estopped to raise the statute of limitations within the past three years by the "lulling doctrine," the District of Columbia follows the continuous representation rule as an exception to the discovery rule.  The continuous representation rule operates here to toll the statute of limitations during defendants' continuing representation of Seed in relation to its correction tape dispenser patent application.  That representation continued well into 2006, placing Seed's malpractice claims well within the three year statute of limitations.

> #### a.    The Continuous Representation Rule Tolls the Statute of Limitations Until After the Representation Terminates.

Under the continuous representation rule, "when the injury to the client may have occurred during the period the attorney was retained, the malpractice cause of action does not accrue until the attorney's representation concerning the particular matter in issue is terminated." *R.D.H. Communications, Ltd. v. Winston*, 700 A.2d 766, 768 (D.C.App. 1997).  The continuous representation rule is based on the sound policy that "a client should not be placed in the untenable position of suing his attorney while the latter continues to represent him." *Id.*  In adopting the rule, the Court emphasized the importance of allowing a client with knowledge of a

potential error to decide whether to continue the relationship by allowing the attorney to attempt

to remedy it, stating:

> Indeed, the rule is based on respect for the attorney/client relationship and the
> desire, if the client so chooses, to avoid unnecessarily disrupting the representation
> in which the error occurred. The attorney has the opportunity to remedy, avoid or
> establish that there was no error or attempt to mitigate the damages. The client is
> not forced to end the relationship, although the option exists.

*Id.* at 768-79 (citation omitted). The question of when the representation terminated is

accordingly very often a question of fact. *See id* at 768.

The facts of the *R.D.H. Communications* are analogous to those presented here. In

*R.D.H. Communications*, attorney Winston represented R.D.H. Communications ("R.D.H.") in

an application to the FCC in connection with R.D.H.'s plan to build a radio station. *Id.* at 767.

On January 28, 1991, the FCC dismissed the application because it failed to include a required

financial certification page. *Id.* On January 29, Winston wrote to R.D.H., and offered three

possible explanations for what had happened to the missing page, one of which was that the page

may have been lost by Winston's law firm. *Id.* Winston stated that the firm would file a motion

for reconsideration, and offered the following analysis:

> It is too early to provide a complete assessment of the likelihood of success of our
> petition. However, our initial research suggests that we have a strong argument
> for reinstatement. We will do everything we can to get the application reinstated,
> and I will keep you fully advised of our progress.

*Id*. at 767. Subsequently, in a letter forwarding the motion for reconsideration, Winston wrote:

> I am confident that we will be successful in obtaining reinstatement of your
> application. I will keep you advised.

*Id.* The FCC denied the petition for reconsideration, and Winston appealed to the Court of

Appeals for the District of Columbia Circuit, which affirmed the FCC's ruling. *Id.; see also*

*RDH Communications Ltd. v. Fed. Communications Comm'n*, 1994 WL 88230 at *1 (D.C. Cir.

March 8, 1994). Winston wrote R.D.H. on March 15, 1994, stating that it was unlikely that the

D.C. Circuit would rehear the case, and unlikely that the Supreme Court would accept an appeal,

so "we have come to the end of the road on this case." *Id.*

On August 17, 1995, R.D.H. sued Winston. *Id.* The trial court found that R.D.H. knew or should have known of the injury on January 29, 1991, when Winston wrote to R.D.H. and acknowledged that his firm may have lost the requisite financial certification page, resulting in accrual of plaintiff's claims according to the discovery rule. *Id.* It therefore concluded that R.D.H.'s claims were barred by the statute of limitations. The District of Columbia Court of Appeals reversed, adopting the continuous representation rule. *Id.* at 768-69.

In the process of adopting this rule, the court discussed the important policies advanced by the rule in great detail. *Id.* at 768-775. The court acknowledged that R.D.H. could have fired Winston and started a malpractice action against him at any time, but it reasoned:

> R.D.H.'s decision to stay the course with Winston is not one this court should second-guess in relation to the statue of limitations issue . . . . Whether R.D.H. chose to remain with Winston because of his assurances, because of his firm's ten years of experience in filing such applications, or because of blind loyalty is of no consequence to us now. Often a client looks to his attorney for advice in areas in which he knows little to nothing. This is a relationship of trust and we see no compelling reason for effectively informing the client that he can no longer trust the professional from whom he seeks guidance, especially when this professional with expertise in the field indicates he is confident that the error can be remedied.

*Id.* at 769.

The *R.D.H. Communications* court also emphasized that the continuous representation rule applies even where the client has full and actual knowledge of the attorney's alleged error. *Id.* at 772-73. The court explained:

> Unlike some courts which deem the continuous representation rule inapplicable once the client knows of the attorney's alleged error, we believe the client's knowledge should not nullify the rule. A policy behind the rule is respect for the attorney/client relationship. A client may fully know his attorney has erred to his detriment, and still willingly place his confidence in the attorney's ability to correct the error. We see no reason for interfering with such a decision.

*Id.* Absent the continuous representation rule, the court observed, the client would be placed in exactly the type of dilemma that defendants effectively argue for in their motion, *i.e.*:

> If the client chooses to retain his attorney, he risks the possibility that during such representation the statute of limitations would expire (because the client "discovered" the alleged negligence and three years passed) and thus he risks foregoing redress of his legal rights. If the client chooses not to stay with his original attorney, he must sue that attorney for malpractice (and presumably hire a new attorney to remedy the error in the underlying case thus causing a major

disruption of the underlying case).

*Id.* In the court's opinion, by adopting the continuous representation rule it could avoid exactly such a "fish or cut bait scenario." *Id.*

Here, on July 8, 2002, defendants forwarded the Board's ruling, which stated that defendants had not filed an English language translation of the PCT '947 Application, and as a consequence, Seed was not entitled to the benefit of the filing date of that Application.[91] Unlike *R.D.H. Communications*, however, defendants also stressed that Seed had nonetheless completely prevailed despite the Board's ruling with respect to the priority date of the PCT '947 Application, and that Stevens' subsequent appeal was so frivolous as to be and potentially sanctionable.[92] From that date until at least the Federal Circuit denied Seed's petitions for rehearing and rehearing *en banc* on June 10, 2004 defendants, like the attorneys in *R.D.H. Communications*, assured Seed that their prospects of protecting their patent rights and prevailing in the appeal, were highly favorable.[93]

Also as in *R.D.H.*, Seed chose to continue with defendants' representation in the motion for reconsideration before the Board, and the subsequent appeals, proceedings, which afforded defendants an opportunity to remedy their error. This representation continued through not only the Federal Circuit's May 4, 2004 ruling, but also through defendants' efforts to remedy their errors by petitioning the District of Columbia Circuit for rehearing *en banc*, petitioning the United States Supreme Court for a writ of *certiorari*, and attempting to renew Seed's petition before the Board at the conclusion of all appeals. Under *R.D.H Communications*, the statute of limitations was tolled until the conclusion of defendants' representation of Seed in this matter, which included all of these proceedings, and extended into 2006.

---

[91] Shintani Dec. Ex. 11, Decision at p. 22.

[92] Shintani Dec. Ex. 18 at p. 1.

[93] Shintani Dec. Exs. 15-21.

There should be little doubt that such tolling applies. As succinctly captured by the leading malpractice treatise, from which the D.C. Court of Appeals adopted the continuous representation rule: "In a 'continuous representation' rule jurisdiction [such as District of Columbia], *accrual is deferred until the relationship is terminated, and this may extend through years of trial and appellate review*." Mallen & Smith, 3 LEGAL MALPRACTICE § 23:18 (2008); *see also Janicki Logging & Constr. Co., Inc. v. Schwabe, Williamson & Wyatt, P.C.,* 109 Wash.App. 655, 37 P.3d 309 (2001) (same); *Biomet Inc. v. Barnes & Thornburg*, 791 N.E. 2d 760 (Ind. Ct. App. 2003) (same). Such tolling is precisely what occurred in this case, where as a matter of public record, defendants represented Seed with respect to its U.S. patent application through at least December, 2006.

> **b.** **Defendants' Cases Are Not District of Columbia Law, Are Not Controlling Precedent, and Do Not Support the Proposition that the Continuous Representation Rule Does Not Apply During Appeals.**

Defendants nonetheless argue that "it is black letter law in the District of Columbia that the continuous representation rule does not apply to subsequent appeals." Defs.' Mem. at 16. A close reading of the cases cited by defendants demonstrates that this is not the law in the District of Columbia. For that matter, plaintiffs' counsel has been unable to locate any case in *any* jurisdiction where the appeal of a judgment *in a client's favor* ends tolling under the continuous representation doctrine as a matter of law. Such a rule would be patently ridiculous, as readily demonstrated here, where defendants advised Seed that Stevens' appeal of its victory before the Board was *frivolous and potentially sanctionable*. Absent tolling under the continuous representation rule, Seed would have been placed in the position of suing its own attorneys, who had just prevailed before the Board, to protect itself in relation to an appeal that its attorneys advised was frivolous. This would have forced Seed into a position adverse to its own attorneys, and would likely have required it to argue that it had actually lost before the Board, to defend against the assertion that its malpractice action was frivolous.

Moreover, in *R.D.H. Communications*, the court considered the issue of whether R.D.H.'s cause of action for legal malpractice against Winston should be tolled through the conclusion of all appeals. The court evaluated adoption of the exhaustion of appeals doctrine, under which a cause of action for legal malpractice cannot accrue until the damages are certain and not contingent upon the outcome of any appeal, in other words, when all appeals are exhausted. *Id*. at 770-71. The court observed that this rule was "meant to prevent clients from prematurely rushing into court before the attorney's malpractice can be proved," however, it found that the exhaustion of appeals rule "manipulates the concept of legal injury." *Id*. at 771. It noted that the premise of the rule is that a client does not sustain actionable injury until a lower court judgment, adverse to that client, is affirmed on appeal, when in fact, the client may sustain injury in the form of legal fees and costs during appeal. *Id*.

The court observed that the continuous representation rule fully addresses these concerns without manipulating the concept of legal injury, and remarked that the rule would allow Winston to maintain a timely claim despite a lengthy appeal, stating:

> For example, in the instant case, had Winston successfully appealed the denial of the [FCC] application, presumably R.D.H. could still sue Winston for the delay in getting the application approved.

*Id*. In other words, the Court did not intend for an appeal to cut off tolling under the continuous representation rule. Quite to the contrary, it stated that even though R.D.H. *lost* due to Winston's malpractice, it could have still sued Winston if it prevailed on appeal to recover for any injury that resulted from the delay in obtaining its license due to Winston's negligence. *Id*.[94]

---

[94] Since the D.C. Circuit did not issue an opinion until March 8, 1994, a timely post-appeal malpractice claim would only be possible if the court concluded that the statute of limitations was tolled due to Winston's continuous representation of R.D.H. on appeal. *See RDH Communications Ltd. v. Fed. Communications Comm'n*, 1994 WL 88230 at *1 (D.C. Cir. March 8, 1994). This necessarily follows because the *R.D.H. Communications* court assumed that plaintiff's cause of action had accrued, at the latest, on January 29, 1991—well over three years prior to the D.C. Circuit's March 8, 1994 opinion. *R.D.H. Communications*, 700 A.2d at 768. Without tolling, such a claim would be barred.

39

Defendants, by contrast, do not cite any District of Columbia Court of Appeals case on the District's continuous representation rule for the proposition that "the continuous representation rule does not apply to subsequent appeals."  Rather, they cite two cases, *Bradley v. National Ass'n. of Securities Dealers Dispute Resolution, Inc.*, 433 F.3d 846 (D.C. Cir. 2005) and *Gallucci v. Schaffer*, 507 F. Supp.2d 85 (D.D.C. 2007), neither of which is binding authority (as a federal court is required by *Erie* principals to follow the highest state appellate court's pronouncements of state law), and, more importantly, neither of which is apposite.  *See Beaty v. Republic of Iraq,* 480 F. Supp. 2d 60, 94 (D.D.C. 2007) ("well settled [that] [t]his Court is bound by the highest state court's construction of state law").

In the District of Columbia, the highest appellate court is the District of Columbia Court of Appeals.  *See Rogers v. Ingersoll-Rand Co.*, 144 F.3d 841, 843 (D.C. Cir. 1998) (decisions of the District of Columbia Court of Appeals are treated as decisions of the highest court of a state for *Erie* doctrine purposes).  Since the rule created by the District of Columbia Court of Appeals is that continuous representation rule *does* apply to subsequent appeals involving the same topic of representation, any passing statement to the contrary in federal opinions is not binding authority.

Furthermore, the federal opinions cited by defendants are simply inapposite.  While *Bradley* did incorrectly imply that an appeal cuts off tolling in the District of Columbia under the continuous representation rule, it did so only in passing dicta, and without analysis.  *Gallucci*, in turn, did nothing more than quote *Bradley*, again in passing dicta.  It is important to note that *Bradley* is not an attorney malpractice case; rather, the claims at issue there were *pro se* claims for alleged arbitrator malpractice.  Bradley had an investment account with Dean Witter Reynolds, Inc., and she initiated an NASD arbitration proceeding on October 24, 1994, contending Dean Witter made unauthorized and unsuitable investments on her behalf, causing $750,000 in losses to her stock and bond portfolio.  *Bradley*, 433 F.3d at 848.  From the initiation of the arbitration through 1998, the arbitrators allegedly committed various acts of professional negligence.  *Id.*  On January 7, 1998, the arbitrators dismissed Bradley's complaint.  *Id.*  Bradley

40

challenged the dismissal in state court, which remanded the case to the panel to explain the basis for the dismissal. *Id.* On February 24, 1999, the panel issued an amended order of dismissal. *Id.* Bradley then filed a pro se complaint against the NASD and its employees on September 26, 2001, in federal district court, essentially alleging arbitral malpractice. *Id.* at 849. The district court dismissed her complaint on the grounds that they were time-barred. *Id.*

On appeal to the District of Columbia Circuit, the federal appeals court affirmed. It acknowledged that "[t]he analogy between legal malpractice claims and arbitral malpractice claims is tenuous and therefore it is not obvious that District of Columbia courts would borrow the continuous representation rule from legal malpractice cases and apply it to arbitral malpractice suits." *Id.* at 850. The court observed that the "analogue to arbitral malpractice claims is that the limitation period is tolled until the arbitrators cease to service the parties in the specific dispute between them." *Id.* at 851. Thus, the court held that Bradley's claims accrued when the panel dismissed her claims in 1998, rendering her claims time-barred "even under the continuous representation rule." *Id.*

Nevertheless, in *dictum,* the court stated that "[t]he court in *[R.D.H. Communications]* also set an outer bound on the duration of the 'specific dispute'—it does not include appeals." *Id.* As demonstrated above, however, the *R.D.H. Communications* court said exactly the *opposite*, when it explained that the continuous representation rule "fully addresses" the concerns that had caused other jurisdictions to adopt the exhaustion of appeals rule. *R.D.H. Communications*, 700 A.2d at 771. Cutting off tolling under the continuous representation doctrine due to an appeal would be contrary to the plain language of *R.D.H. Communications*, and would directly contravene its extensive policy analysis, as well as cases from other jurisdictions. *See, e.g.*, Mallen & Smith, 3 LEGAL MALPRACTICE § 23:18 (2008); *Janicki Logging & Constr. Co., Inc. v. Schwabe, Williamson & Wyatt, P.C.,* 109 Wash.App. 655, 37 P.3d 309 (2001); *Biomet Inc. v. Barnes & Thornburg*, 791 N.E. 2d 760 (Ind. Ct. App. 2003).

The *Bradley* court also included *Knight v. Furlow* in its string cite. *Knight*, however, was a discovery rule case, decided almost a decade before the District of Columbia adopted the

continuous representation rule in *R.D.H. Communications*. Apparently, the *Bradley* court misconstrued the *Knight* court's rejection of a strict rule delaying accrual until all appeals have been exhausted after a party loses at the trial court level. This is *contrary* to the rationale of both *R.D.H. Communications* ("For example, in the instant case, had Winston successfully appealed the denial of the [FCC] application, presumably R.D.H. could still sue Winston for the delay in getting the application approved." *R.D.H. Communications, Ltd. v. Winston*, 700 A.2d at 771), as well as *Knight* ("Or a client may not have reason to discover malpractice, in some instances, until years after an appeal has been resolved. We do not wish to encourage clients to rush prematurely into court, before their attorney's malpractice can be proved." *Knight,* 553 A.2d at 1236). Accordingly, this Court should follow *R.D.H. Communications*, which is binding authority as to the law of the District of Columbia, rather than passing *dicta* in *Bradley*.

The *Gallucci* case that defendants cite merely recites the incorrect *dicta* from *Bradley*. *Gallucci,* 507 F. Supp.2d at 91. Furthermore, the *Gallucci* court's recitation of the incorrect Bradley *dicta* is itself also *dicta* because the *Gallucci* court similarly ruled, without reliance on any appeal as part of its analysis, that "the continuous representation rule does not apply." *Id.* at 91. This result was not surprising given that, among other things, twenty-five years had intervened between any contact or work being performed, making any representation far from "continuous." *Gallucci*, 507 F. Supp.2d at 91. The court explained:

> Plaintiff alleges no contact with any of the Defendants between his 1976 conversation with [attorney] Schaffer and the November 2002 telephone call. He offers no evidence raising a disputed issue of fact about whether Defendants continued to represent him on related matters after the 1976 conversation with Schaffer.

*Id.* Thus, the court held that the continuous representation rule was inapplicable *not* because it does not include appeals, but rather because the defendant attorneys did not continue to represent the plaintiff between the date of the alleged malpractice in 1976 and the material date for application of the statute of limitations. *Id.*

**C.    Plaintiffs' Claims Arising from Erroneous Legal Advice After the Board Ruled Are Not Barred For Failure to Allege Proximate Cause.**

Defendants argue that Seed's claims for damages caused by defendants' erroneous legal advice (*i.e.,* that even if they were to lose the Federal Circuit appeal, their patent application would continue in prosecution), should be dismissed because the complaint fails to allege proximate cause between defendants' negligent legal advice and plaintiffs' damages. In particular, defendants argue that proximate cause may be pled only by alleging that "Plaintiffs believed that any new or amended claims [in the pending patent application] would be more valuable than the settlement offers" that plaintiffs rejected in reliance on defendants' negligent advice. Defs.' Mem. at 17. Defendants cite no authority for this proposition.

Defendants fail to note that plaintiffs had at least one claim in the US '839 Application that was the subject of the Interference. Had they settled with Stevens, the Board's ruling granting the US '839 Application priority over the Stevens patent would have become final, and a patent would presumably have issued with at least the claim at issue in the Interference. The position that defendants now take—that plaintiffs at least implicitly would not have been awarded a patent upon the Board's remand to the Examiner—is flatly contradicted by their own assurances to Seed after the Board had ruled. Defendants assured Seed that, after the Board's ruling in Seed's favor, the USPTO would allow a patent to issue on the pending US '839 Application:

> Tamai has priority with respect to Stevens and Stevens cannot be used as a reference against Tamai during the further prosecution of the Tamai application. Thus, we see no reason why the Tamai prosecution should not continue before the Patent Office (and eventually be allowed).

March 21, 2003 Letter from Defs. to Pls. at 2.[95]

Defendants also overlook the fact that federal courts apply a notice pleading standard that requires nothing more than a short, plain statement of jurisdiction, the plaintiff's claim, and a

---

[95] Shintani Dec. Ex. 15 at p. 2.

demand for damages.  *See* Fed. R. Civ. P. 8 (a).  In fact, Seed's complaint goes well beyond

these basic requirements by duly pleading duty, breach, proximate cause and damages, albeit not

in the way that defendants argue it must be pled.  The complaint alleges that:

> 25.    In a letter dated January 14, 2004, the owner of the Stevens patent offered
> to settle the Interference by each party granting to the other a royalty-free, non-
> exclusive license, including the right to sublicense.
>
> 26.    On January 22, 2004, the Westerman firm incorrectly advised Seed in a
> letter from Westerman that even if Seed were to lose the pending Federal Circuit
> appeal, the patent application would thereafter "be returned to the Examiner" and
> Seed would be permitted to "add or amend claims."
>
> 27.    Seed, in reliance upon the Westerman firm's incorrect advice, decided not
> to accept the cross-license settlement offer.

Compl. at ¶¶ 25-27.  Had Seed accepted this offer, the favorable ruling of the Board according

Seed's application priority over the Stevens patent would not have been reversed by the Federal

Circuit.  The Complaint alleges that defendants admitted their advice was erroneous:

> 30.    By letter dated December 4, 2006, Westerman finally admitted that he and
> his firm had been "mistaken in thinking that the prosecution would reopen" if
> Seed lost the Federal Circuit appeal.  Instead, under 37 C.F.R. § 41.127(a)(2), an
> "[a]dverse judgment against a claim is a final action of the [Patent] Office
> requiring no further action by the [Patent] Office to dispose of the claim
> permanently."  Contrary to Westerman's advice, the Manual of Patent Examining
> Procedure ("MPEP") § 2308.01 provides that, if no claim is allowed by the Board,
> "no further action is needed from the examiner" and "a notice of abandonment
> should be issued."

Compl. at ¶ 30.  Regarding proximate cause and damages, the Complaint alleges:

> 41.    The erroneous legal advice provided by defendants was the proximate
> cause of plaintiffs' loss of royalties that would have been earned had plaintiffs
> agreed to the settlement proposed by the owner of the Stevens patent, in that
> plaintiffs' decision not to accept the settlement proposal was made in reliance on
> the erroneous advice provided by defendants.
>
> 42.    As a proximate consequence of defendants' negligence, plaintiffs have
> been damaged in an amount to be proved at trial, but in any event not less than
> $75,000, exclusive of interest and costs.

Compl. at ¶¶ 41-42.  This is more than sufficient to satisfy notice pleading requirements.  Should

this Court for any reason disagree, then Seed requests leave to amend, which is freely granted

under the Federal Rules, to remedy any deficiencies.  *See* Fed. R. Civ. P. 15(a).

**D.    If the Court Treats This Motion As a Motion for Summary Judgment, and Believes Defendants Have Carried Their Burden, Then Seed Requests a Continuance Pursuant to Rule 56(f) to Conduct Further Discovery.**

The Court, at its option, may choose to convert this motion into one for summary judgment.  If the Court does so, and further believes that defendants have carried their initial burden of proving that Seed's claims are outside the statute of limitation, despite the self-concealing nature of the harm, and defendants' lulling comments, then the burden shifts to Seed to show that the continuous representation rule applies.

Seed believes that, on the current record, it is clear that defendants continued to represent it far into the statute of limitations period by representing it with respect to Stevens' appeal to the Federal Circuit, petitions for rehearing and rehearing *en banc*, a petition for *certiorari* to the U.S. Supreme Court, and a renewed petition to the Board.  Thus, *as a matter of public record*, defendants continued to actively represent Seed in relation to its United States patent applications through 2006.

Should the Court nonetheless believe that further evidence is necessary to raise a question of fact as to the continuous nature of this representation, then Seed respectfully requests a continuance of defendants' motion pursuant to Fed. R. Civ. P. 56(f), to conduct further discovery.  Requests to continue a summary judgment motion under Rule 56(f) should be liberally granted.  *Black v. National Football League Players Ass'n*, 87 F. Supp. 2d 1, 4 (D.D.C. 2000) (*citing Moore's Federal Practice* § 56.10[8][a] (3d ed.1999)); *see also, Gonzalez v. K-Mart Corp.,* 940 F. Supp. 429, 431 (D.P.R. 1996) ("[c]ourts should generally grant Rule 56(f) requests" unless party has been dilatory in conducting discovery or is attempting to delay case); *In re Deep Vein Thrombosis,* 356 F. Supp. 2d 1055, 1060 (N.D. Cal. 2005) (district court should grant Fed. R. Civ. P. 56(f) application when moving party files summary judgment early in the litigation, before opposing party has had any realistic opportunity to pursue discovery).

Such discovery would involve, at a minimum, requests for the production of defendants' billing records, correspondence files, e-mails, notes, and internal correspondence.  It would also

include depositions of defendants. *See, e.g.,* Howard Dec. Ex. 1 (Proposed Discovery Requests). It is expected that such discovery will produce further evidence of defendants' lulling comments, additional incorrect legal advice by defendants, knowledge by defendants of their malpractice, and an intent by defendants to hide the ramifications of the malpractice from Seed. Finally, it would involve an assessment of the overall damages Seed ultimately incurred through the loss of its patent. This figure runs into millions of dollars, showing that the "injury" that defendants point to in an attempt to trigger the statute of limitations—$4,000 for a motion to reconsider that defendants advised was not required to protect Seed's victory before the Board—was nominal.

## **CONCLUSION**

For the foregoing reasons, plaintiffs respectfully request that the Westerman defendants' motion be denied.

Dated: April 11, 2008

Respectfully submitted,

/s/ Creighton R. Magid _____
Creighton R. Magid (D.C. Bar No. 476961)
DORSEY & WHITNEY LLP
1050 Connecticut Avenue, N.W., Suite 1250
Washington, DC 20036
Telephone: (202) 442-3555
Fax: (202) 442-3199
magid.chip@dorsey.com

Counsel For Plaintiffs
SEED COMPANY LIMITED and SHIGERU
TAMAI

OF COUNSEL:
Paul T. Meiklejohn
Curt R. Hineline
James Howard
Mark S. Carlson
DORSEY & WHITNEY LLP
U.S. Bank Centre
1420 Fifth Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: (206) 903-8800
Fax: (206) 903-8820

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SEED COMPANY, LTD. and SHIGERU TAMAI | ) |
| | ) |
| **Plaintiffs** | ) |
| | ) **CASE NUMBER 1:08-CV-00355-RMU** |
| v. | ) |
| | ) |
| WILLIAM F. WESTERMAN, et al. | ) |
| | ) |
| **Defendants.** | ) |

**STATEMENT OF GENUINE ISSUES OF MATERIAL FACTS
IN RESPONSE TO WESTERMAN DEFENDANTS' MOTION TO DISMISS,
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, ON
STATUTE OF LIMITATIONS AND CAUSATION GROUNDS**

**A.    The Parties.**

1.    Seed is a small Japanese limited liability company, with offices in Osaka, Japan.[1] Seed is in the business of designing, developing, manufacturing and distributing office and stationary supplies such as plastic erasers, rubber erasers and correction tape.[2]  It is also in the business of licensing others to market and sell its products in Japan, Europe, and the United States.[3]  It has no offices in the United States, it employs no in-house United States lawyers or patent agents, and the employees responsible for its patents are primarily fluent only in Japanese.[4]  Seed is the owner by assignment of all Seed patent applications referred to herein.

2.    Plaintiff Shigeru Tamai is an individual who resides in Osaka, Japan.[5]  Mr. Tamai is the inventor of the correction tape dispenser claimed in all Seed patent applications referred to herein.[6]

---

[1] Complaint, ¶ 2.
[2] *Id.*
[3] *Id.*
[4] Shintani Dec. ¶ 4.
[5] Complaint, ¶ 3.
[6] Complaint ¶ 3.

3.      The defendants are attorneys and law firms that Plaintiffs engaged to represent them in proceedings before the United States Patent and Trademark Office ("USPTO"), the USPTO's Board of Patent Appeals and Interferences ("Board"), the Federal Circuit Court of Appeals, and the Supreme Court of the United States with respect to Seed's United States patent applications and related proceedings.[7]  These attorneys included the Westerman defendants, who bring the present motion invoking the statute of limitations in the hope of avoiding liability for their negligence.

**B.    The Seed Patent Applications and USPTO Prosecution—March 13, 1993-May 9, 1997.**

4.      On July 31, 1991, Seed filed for Japanese patent protection for the Tamai correction tape dispenser *via* Japanese Patent Application No. 3-68371 ("JP '371 Application").[8] Seed desired to procure international patent rights for the invention of the JP '371 Application, so as the first step in this process, Seed filed Patent Cooperation Treaty Application No. PCT/JP92/00947 ("PCT '947") in the USPTO on July 24, 1992—less than one year after the  JP '371 Application was filed.[9]  Both the JP '371 Application and the PCT '947 Application are in Japanese.[10]

5.      Seed, acting through Mr. Kenji Itami, engaged defendants to represent them on March 13, 1993, to procure a United States patent based on the PCT '947 Application.[11] Defendants filed United States Patent Application No. 08/030,183 ("US '183 Application") on behalf of Seed on March 29, 1993—less than one year after the PCT '947 Application was filed.[12]  The one-year time interval is critical.  Under United States patent law, *an application*

---

[7] Complaint ¶¶ 4-9.

[8] Complaint ¶¶ 13, 15.

[9] Complaint, ¶¶ 14, 15.

[10] Complaint, 13-14.

[11] Shintani Dec. ¶¶ 3 and 39, and Shintani Dec. Ex. 1 at p. 1; Ex. 2.

[12] Complaint, ¶ 17 and Shintani Dec. Ex. 3.

*may claim the benefit of an earlier foreign application's filing date only if the interval between the two filing dates is less than one year*.[13]  Seed subsequently abandoned the US '183 application in favor of United States Patent Application No. 08/196,839 ("US '839 Application"), which, as a continuation of the US '183 Application, enjoyed the same filing date as the US '183 Application.[14]

### C. The Board's Interference Proceeding Regarding Seed's Patent Application, and its Ruling Granting Victory to Seed—May 9, 1997-May 12, 2003

6.    A competing patent applicant, Christopher Stevens, filed an application for a similar correction tape dispenser, and was awarded a patent, which issued on February 28, 1995 (the "Stevens patent").[15]  On May 9, 1997, the USPTO determined that the Stevens patent claims and the claims in Seed's US '839 Application claimed the same invention, and therefore declared an Interference proceeding, in which the Board must determine which party was the first to invent.[16]  One means of doing so is for a party to demonstrate through earlier-filed patent applications that the party had an effective filing date before the filing date of the other party. Under federal regulations governing Interference procedure before the Board and Board rules, to be accorded the benefit of the filing date of an earlier application, a party must file a motion in the Interference with a copy of the application and, if the application is not in English, a certified English language translation.[17]  Plaintiffs engaged defendants to represent them in the Interference.[18]

---

[13] 35 U.S.C. § 119(a).

[14] Complaint ¶ 18; Shintani Dec. Ex. 4 at p. 1; Ex. 5 at p. 1; Ex. 6 at p. 1.

[15] Complaint ¶ 19.

[16] Complaint ¶ 20;  Shintani Dec. Ex. 7 at p. 3.

[17]  In interference proceedings, 37 C.F.R. § 143.633(f) provides that a party may file a motion "to be accorded the benefit of the filing date of an earlier filed application."  37 C.F.R. § 1.637 provides that a party filing such a motion has the burden of proof to establish entitlement to the relief sought.  Critical to the instant litigation, 37 C.F.R. § 1.637(f)(2) provides that if the earlier application is not in English, "the requirements of section 1.647 must also be met."  In turn, 37 C.F.R. § 1.647 requires that "[w]hen a party relies on a document or is required to produce a document in a language other than English, a translation

3

7.     Stevens filed an unopposed motion to be accorded the benefit of a United Kingdom patent application filed on February 10, 1993.[19]  This was the date that Seed had to beat to establish priority for the US '839 Application over the Stevens patent.  Defendants filed a motion for Seed to be accorded the benefit of both the July 31, 1991 filing date of the JP '371 Application, and the July 24, 1992 filing date of the PCT '947 Application.[20]  Of these two earlier patent applications, the essential one was the PCT '947 Application, for two reasons. First, the PCT '947 application, alone, established an earlier priority date than Stevens' 1993 priority date.  Second, all applications in the chain of priority must have filing dates that are no more than one year apart, so, since the JP '371 Application was filed more than one year before the US '839 Application, Seed needed the filing date of the intervening PCT '947 Application.[21] In other words, to be entitled to the earliest filing date of the JP '371 Application, there must be an unbroken chain from the US '839 Application back to the PCT '947 Application, back in turn to the JP '371 Application, with each link no more than one year apart.

8.     In support of the motion for the benefit of the earlier filing dates, defendants filed an English language translation of the JP '371 Application, but they failed to file the English language translation of the intervening PCT '947 Application, required by federal regulations and Board rules.[22]

9.     On June 25, 2002, the Board issued its ruling.[23]  It denied Seed the benefit of the PCT '947 Application because of defendants' failure to file an English language translation.[24]

---

into English and an affidavit attesting to the accuracy of the translation shall be filed with the document."

[18] Shintani Dec. Ex. 8 at p. 1; Ex. 9 at p. 1.

[19] Complaint, ¶ 21.

[20] Complaint, ¶ 22; Shintani Dec. Ex. 10 at p. 1.

[21] *See,* 35 U.S.C. § 119(a).

[22] Complaint, ¶ 22.

[23] Complaint, ¶ 23; Shintani Dec. Ex. 11, Decision at p. 1.

[24] Shintani Dec. Ex. 11, Decision at p. 22; Ex. 12 at p. 2.

Nevertheless, it granted victory to Seed, according it the benefit of the JP '371 Application's filing date, and concluding that Tamai had priority over the Stevens patent.[25]

10.    Based on this ruling, defendants repeatedly emphasized to Seed that the Board's ruling was favorable, and that Seed was the prevailing party:

> We are enclosing two (2) copies of the decision recently received from the Board of Patent Appeals and Interferences.  This is a decision in our favor.

July 8, 2002 Letter from Defs. to Pls.[26]  And again:

> The judgment indicates that, [plaintiff] **Tamai** established a constructive reduction to practice as of July 31, 1991, prior to **Stevens'[s]** date of February 10, 1993, thus, judgment was entered against **Stevens**.

July 11, 2002 Letter from Defs. to Pls. (emphasis in original).[27]  In defendants' July 11, 2002 letter to Seed, however, they recommended that Seed file a motion for reconsideration of the portion of the Board's ruling denying Seed the benefit of the PCT '947 Application's filing date.[28]  Accordingly, on July 25, 2002, defendants filed the motion for reconsideration of the portion of the Board's ruling with respect to the PCT '947 Application.[29]

11.    The Board issued a Decision on Request for Reconsideration on March 17, 2003, reaffirming its prior ruling in all respects.[30]  In response, defendants continued to emphasize to Seed that the most important aspect of the Board's ruling was that Seed was the prevailing party:

> The most significant item to consider in the FINAL JUDGMENT is that priority was awarded to Tamai, that judgment was entered against Stevens and that claims 1-5, 7-16, 18-21 of the Stevens patent are invalid.

March 21, 2003 Letter from Defs. to Pls. at 1-2 (emphasis in original).[31]  And again, a month

---

[25] Shintani Dec. Ex. 11, Decision at p. 29; Ex. 12 at p. 1.

[26] Shintani Dec. Ex. 11, Westerman letter at p. 3.

[27] Shintani Dec. Ex. 12 at p. 1.

[28] *Id* at p. 3.

[29] Shintani Dec. Ex. 13 at p. 1.

[30] Shintani Dec. Ex. 14 at p. 1.

[31] Shintani Dec. Ex. 15 at p. 1.

later, defendants stressed the victory that they had achieved, despite the Board's denial of the

benefit of the PCT '947 Application's filing date:

> The Board re-affirmed its Decision awarding priority to Tamai in this Interference
> even without granting us the benefit of the PCT application date.

April 18, 2003 Letter from Defs. to Pls. at 2.[32]  Regarding the prospect of appealing the Board's

denial of Seed's motion for reconsideration, defendants assured Seed that they should be

satisfied with the Board's ruling:

> However, at this time, we do not recommend such an appeal.  We believe it is
> best to let the decision stand.

March 21, 2003 Letter from Defs. to Pls. at 2.[33]  Defendants reiterated this point in April:

> Appeals under 35 USC 141 (CAFC) or 35 USC 146 (District Court) are for
> parties who are unsatisfied with the decision.  We are satisfied with the decision.
> The Decision granted priority to Tamai in the Interference.  [. . . .]  Given the
> points above, letting the Decision stand ends the Interference in our favor.

April 18, 2003 Letter from Defs. to Pls. at 2, 4.[34]

> 12.    Defendants reassured plaintiffs that the Board's ruling with respect to the PCT

'947 Application had caused them no harm.  Defendants assured Seed that, after the Board's

ruling in Seed's favor, the USPTO would allow a patent to issue on the pending US '839

Application:

> Tamai has priority with respect to Stevens and Stevens cannot be used as a
> reference against Tamai during the further prosecution of the Tamai application.
> Thus, we see no reason why the Tamai prosecution should not continue before the
> Patent Office (and eventually be allowed).

March 21, 2003 Letter from Defs. to Pls. at 2.[35]  Defendants repeatedly assured Seed that the

Board's failure to accord Seed the benefit of the PCT '947 Application would have no adverse

consequences in any future patent litigation:

---

[32] Shintani Dec. Ex. 16 at p. 2.

[33] Shintani Dec. Ex. 15 at p. 2.

[34] Shintani Dec. Ex. 16 at pp. 2-4.

> A Federal District Court (which hears patent cases) is not required to follow the rules of the Board of Patent Appeals and Interferences. Accordingly, we believe that a Federal District Court could conclude that there is sufficient support for the claims in the Tamai application.

March 21, 2003 Letter from Defs. to Pls. at 2.[35]  They reiterated this point:

> PTO rules apply only towards the claiming of priority benefits ***during an Interference***, and are not applicable during any future patent infringement lawsuits in federal district court. <u>The present Decision ends the Interference between Stevens and Tamai</u>. The Board's denial of benefits to the PCT date for lack of compliance with certain procedural Interference rules should not affect the substantive priority of our application if we later enforced a patent issuing therefrom against a third party.

April 18, 2003 Letter from Defs. to Pls., at 3 (emphasis in original).[37]

      13.    Defendants consistently denied any wrongdoing on their part in the Interference.

They consistently attributed the Board's failure to accord Seed the benefit of the filing date of the

PCT '947 Application to mistakes of fact or law, rather than their failure to file the required

translation:

> In the Decision on the Request for Reconsideration, the Board stated that "Stevens was in possession of a translation of the JP '371 application at the time the motion was filed and was not in possession of the translation of the PCT application" However, if Stevens was in possession of a translation of JP '371 at the time the motion was filed, then Stevens also had possession of a translation of the PCT application since our motion for benefit stated that "[t]he drawings of JP '371 and PCT '947 are exactly identical . . . and the PCT '947 specification is substantially the disclosure of JP '371." [ . . . .]
>
> In Stevens'[s] opposition to our Request for Reconsideration, Stevens asserted that "[t]o this day, Tamai has never served a copy of the Japanese-language PCT application, an English-language translation thereof, or an affidavit attesting to the accuracy of such a translation." However, we had served these items on Stevens with our Reply to Stevens's Opposition to our motion for priority benefit. In particular, our Reply included a copy of the Japanese-language PCT application, an English-language translation of JP '371, and a Declaration by Mr. Sadao Kinashi verifying that the verified translation of JP '371 is also a verified translation of the PCT application.

April 18, 2003 Letter from Defs. to Pls. at 2.[38]

---

[35] Shintani Dec. Ex. 15 at p. 2.

[36] *Id.*

[37] Shintani Ex. 16 at p. 3.

[38] *Id* at p. 2*.*

**D.    Stevens' Federal Circuit Appeal of Seed's Interference Victory—May 12, 2003-June 10, 2004**

14.    Stevens, having lost before the Board, appealed to the Federal Circuit on May 12, 2003.[39]  According to defendants, however, plaintiffs had no reason to be alarmed by the appeal. From the date of the Board's ruling throughout the appeal, defendants continuously assured Seed that it was likely to be the prevailing party in the appeal, as well, and that Stevens' position in his appeal brief was so untenable as to be sanctionable:

> In view of Tamai's position, as expressed in the Appellee's Brief, we fail to see how Stevens can, in good faith, maintain the appeal.  [. . . .]  Accordingly, if Stevens does not dismiss the appeal, Tamai may request an award of attorney's fees, at least for those fees associated with reviewing any Reply Brief by Stevens and presenting an oral argument before the Federal Circuit.

Oct.8, 2003 Letter from Defs. to Pls. at 1 (emphasis added).[40]  They emphasized in January 2004 the likelihood of prevailing: "[w]e continue to believe that our prospects for success [in the Federal Circuit appeal] are very good."  Jan. 22, 2004 Letter from Defs. to Pls. at 1.[41]  These representations were in accord with the Westerman defendants' internal assessment of Seed's likelihood of prevailing in the appeal.  In Mr. Westerman's September 29, 2004 report to his firm's malpractice insurer, the Westerman defendants observed:

> In preparing and filing the Tamai brief and reply brief for the Federal Circuit, we believed that we had a clear winning case . . . .

Sept. 29, 2004 Letter from Defs. to Minnesota Lawyers Mutual.[42]

15.    On May 4, 2004, however, the Federal Circuit affirmed the Board's ruling that Seed was not entitled to the benefit of the priority date of the PCT '947 Application, due to defendants' failure to file the required English translation.[43]  The Federal Circuit then reversed

---

[39] Complaint, ¶ 23; Shintani Dec. Ex. 17, Notice of Appeal at p. 1.

[40] Shintani Dec. Ex. 18 at p. 1.

[41] Shintani Dec. Ex. 19 at p. 1.

[42] Howard Dec. Ex. 2.

[43] Complaint, ¶ 28; Shintani Dec. Ex. 20 at p. 1.

the ruling that Seed was entitled to the benefit of the earlier JP '371 Japanese application. The Federal Circuit ruled that 35 U.S.C. § 119(a) precluded Seed from directly claiming the benefit of the JP '371 application because the JP '371 application was filed more than one year before the '183 application, of which the pending US '839 application was a continuation-in-part.

16.    After the Federal Circuit's ruling reversing the Board, defendants continued to deny any wrongdoing in the Interference, and continued to blame the failure to accord Seed the benefit of the PCT '947 Application on legal and factual errors by the Federal Circuit:

> We are very disappointed with the Federal Circuit decision in Stevens v. Tamai. . . . We believe that the decision includes legal errors, as well as mischaracterizations of the written record and the oral argument.

May 5, 2004 Letter by Defs. to Pls. at 1.[44]  This representation to Seed was in accord with the Westerman defendants' internal assessment of the Federal Circuit's ruling. In the Westerman defendants' report to their malpractice carrier, they stated:

> We felt and still feel that this was a wrong decision and requested reconsideration on May 18, 2004.

9/29/04 Letter from Defs. to Minnesota Lawyers Mutual, at Report, p. 1.[45]

17.    On May 12, 2004, defendants wrote to Seed, indicating that they were "in the process of drafting a petition for rehearing *en banc* (including a petition for reconsideration by the Panel)," and that their firm would "absorb the cost for preparing and filing such a Petition."

------

[44] Shintani Dec. Ex. 20 at p. 1.

[45] Howard Dec. Ex. 2. In fact, to this day, defendants insist that the decision to deny Seed the benefit of the priority date of the PCT '947 Application was caused by legal and factual errors by the Board and Federal Circuit, not any wrongdoing of their own:

> [W]e did not file an English translation of the PCT '947 Application. We believed that an English translation of the PCT '947 Application was unnecessary, because an English translation had been included in the '183 Application and had been accepted by the Patent Office. Stevens and the Board had full access to that translation. To this day, I believe that the Board and Federal Circuit's rulings with respect to the translation issue were wrongly decided, and elevate form over substance.

March 20, 2008 Decl. of William F. Westerman, ¶ 4.

May 12, 2004 Letter from Defs. to Pls. (emphasis added).[46]  Defendants reassured Seed "that there is sound legal basis for filing a Petition for Rehearing En Banc."

18.    On May 27, 2004, while the Petitions for Rehearing were pending, defendants wrote to Seed, and continued to blame the failure to accord Seed the benefit of the PCT '947 Application on legal and factual errors by the Board and the Federal Circuit:

> We believe that Tamai is an obvious winner to one fully comprehending the facts and applicable law of the present Interference.  However, neither the Federal Circuit nor the Board (as well as, perhaps our opponent, Stevens) has appreciated these facts and applicable law.

May 27, 2004 Letter from Defs. to Pls. at 2.[47]  Defendants continued to deny any wrongdoing:

> The outcome of this matter may be based on unpredictable factors out of our control.  We could not have predicted the manner in which the Board and the Federal Circuit would misconstrue the facts and applicable law of the present Interference.

*Id.*  On June 10, 2004, however, the Federal Circuit denied the petitions for rehearing.[48]

### E.    Defendants' Post-Appeal Representation of Seed, Seeking to Overturn the Federal Circuit's Reversal of the Board—June 10, 2004-October 26, 2004

19.    On June 15, 2004, defendants wrote to Seed, outlining various options that defendants would pursue in representing Seed regarding its United States patent applications, while at the same time forcefully continuing to deny that they had made any errors in the Interference:

> As we have discussed in detail in our arguments before the Federal Circuit, the issue is not a simple procedural error in which a translation was not filed.  In fact, Stevens already had numerous "translations" [of] the PCT ['947] application.  One such translation is the '183 application itself since the USPTO accepted the '183 application as a proper national stage application of the international PCT application. . . . . We did not expect both the Board and the Federal Circuit to misunderstand this fact and misapply the law.  We intend to pursue all reasonable means to have this corrected**.**

June 15, 2004 Letter from Defs. to Pls. at 1.[49]

---

[46] Shintani Dec. Ex. 21 at p. 1.

[47] Shintani Dec. Ex. 22 at p. 2.

[48] Shintani Dec. Ex. 23 at p. 1.

20.     On July 8, 2004, after the Federal Circuit remanded the Interference proceeding to the Board, defendants filed a petition on behalf of Seed to reopen the Interference.[50]  The Westerman firm also advised Seed that other options for appeal existed beyond the Supreme Court, stating: "[e]ven if the Petition [for certiorari] is denied for whatever reason, and judgment is finally entered against Tamai, there are still other options for appeal, such as to the District Court under 35 U.S.C. § 146."  July 27, 2004 Letter from Defs. to Pls. at 2.[51]  Defendants closed the letter by emphasizing that "[w]e are continuing to take action.  As mentioned above, a Second Petition [to the Board] was filed on July 23, 2004."  *Id.* at 3.

21.     On September 7, 2004, defendants notified Seed that they would file a Petition for Writ of *Certiorari* in the Supreme Court of the United States the following day, and that the Petition would be at no charge to Seed.  Sept. 7, 2004 Letter from Defs. to Pls.[52]  On October 12, 2004, defendants notified Seed that the USPTO had denied the petitions for reconsideration.  Oct. 12, 2004 Letter from Defs. to Pls. at 1.[53]  On October 26, 2004, defendants notified Seed that the Supreme Court had also denied the Petition for Writ of *Certiorari*, and consequently, "there are no further appeals possible."  Oct. 26, 2004 Letter from Defs. to Pls. at 1.[54]

22.     At all material times, plaintiffs relied upon the above representations by defendants.

23.     Defendants represented plaintiffs continuously in the same matter, *i.e.*, plaintiffs' United States patent applications, from March 13, 1993 through December 6, 2004, and beyond.

---

[49] *Id.*

[50] Shintani Dec. Ex. 24 at p. 1.

[51] Shintani Dec. Ex. 25 at p. 2.

[52] Shintani Dec. Ex. 26 at p. 1.

[53] Shintani Dec. Ex. 27 at p. 1.

[54] Shintani Dec. Ex. 28 at p. 1.

### F.    The Westerman Defendants First Report to Their Malpractice Insurance Carrier of a Potential Claim by Plaintiffs—September 29, 2004

24.    While defendants argue in their motion to dismiss that plaintiffs—Japanese-speaking, non-lawyers—should have known that their cause of action for malpractice had accrued against the Westerman defendants in October, 2002, the Westerman defendants' conduct flatly contradicts this argument.  Did they report a potential claim to their malpractice insurer in October, 2002, when they assert that plaintiffs should have been on notice of their claim?  They did not.  It was not until almost two years after defendants now say that Seed was on notice that its claim had accrued that the Westerman defendants first reported their own knowledge of a potential claim by Seed to their malpractice insurer, in a report dated September 29, 2004 attached to a letter of the same date.[55]

### G.    Steven's January 14, 2004 Settlement Offer to Seed, Before the Federal Circuit Reversed the Board's Ruling in Favor of Seed.

25.    On January 14, 2004, after Seed had been proclaimed the victor in the Interference, and while Stevens's appeal of that ruling was pending but undecided before the Federal Circuit, the owner of the Stevens patent offered to settle the Interference with each party granting to the other a royalty-free, non-exclusive license, including the right to sublicense.[56]  In other words, the offer meant that Seed could retain its right and ability to license its product to its licensees distributing office supplies in the United States, as long as Stevens retained a similar right.

26.    If Seed had accepted this offer, the appeal to the Federal Circuit would have been dismissed, and the Board's ruling awarding priority to the US '839 Application to Seed would have become final.  Seed could have continued prosecuting its application, and as defendants had

---

[55] Howard Dec. Ex. 2.

[56] Complaint ¶ 25; Shintani Dec. Ex. 29 at pp. 1-2.

assured them would be the case, would have procured a United States patent.  Stevens' United States patent would have been invalid under the final Board ruling.

27.    In a letter dated January 22, 2004, defendants incorrectly advised that even if Seed were to lose the pending Federal Circuit appeal, the patent application would thereafter "be returned to the Examiner" and Seed would be permitted to "add or amend claims."  Jan. 22, 2004 Letter from Defs. to Pls. at 4-5.[57]  In other words, defendants wrongly advised Seed that by losing its appeal it would not lose its ability to obtain patent rights in the United States.  Seed, in reliance upon the Westerman firm's incorrect legal advice, decided not to accept the settlement offer.[58]

28.    By letter dated December 4, 2006, Mr. Westerman admitted that defendants had recently learned that they were *"mistaken in thinking that the prosecution would reopen"* if Seed ultimately lost the Federal Circuit appeal.  Dec. 4, 2006 Letter from Defs. to Pls. at 1 (emphasis added).[59]  Contrary to defendants' advice, under 37 C.F.R. § 41.127(a)(2), "[a]dverse judgment against a claim is a final action of the [Patent] Office requiring no further action by the [Patent] Office to dispose of the claim permanently."[60]  Indeed, the Manual of Patent Examining Procedure ("MPEP") § 2308.01, a public document that instructs Patent Office Examiners how to examine patent applications, provides that, if no claim is allowed by the Board, "no further action is needed from the examiner" and "a notice of abandonment should be issued."[61]

**H.    The Tolling Agreement and This Litigation.**

29.    Plaintiffs and defendants Westerman and the Westerman firm entered into a Tolling Agreement to toll the running of the statute of limitations on any claims for legal

---

[57] Complaint ¶ 26; Shintani Dec. Ex. 19 at pp. 4-5.

[58] Complaint ¶ 27.

[59] Shintani Dec. Ex. 30 at p. 1; Complaint ¶ 30.

[60] Complaint ¶ 30.

[61] *Id.*

malpractice that Seed may have against defendants effective May 3, 2007.[62]  The Tolling

Agreements for defendants Kong and Kenehan had an effective date of May 10, 2007.[63]

Plaintiffs timely filed the Complaint in this action on February 28, 2008.[64]

Dated: April 11, 2008                          Respectfully submitted,


                                               /s/ Creighton R. Magid _____
                                               Creighton R. Magid (D.C. Bar No. 476961)
                                               DORSEY & WHITNEY LLP
                                               1050 Connecticut Avenue, N.W., Suite 1250
                                               Washington, D.C. 20036
                                               Telephone:  (202) 442-3555
                                               Fax:  (202) 442-3199
                                               magid.chip@dorsey.com

                                               Counsel For Plaintiffs
                                               SEED COMPANY LIMITED and SHIGERU
OF COUNSEL:                                     TAMAI
Paul T. Meiklejohn
Curt R. Hineline
James E. Howard
Mark S. Carlson
DORSEY & WHITNEY LLP
U.S. Bank Centre
1420 Fifth Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone:  (206) 903-8800
Fax:  (206) 903-8820

---

[62] Shintani Dec. Ex. 31.

[63]  Shintani Dec. Ex. 32 and 33.

[64] Each Tolling Agreement expired by its own terms on December 31, 2007; however, they all included a provision that "[u]pon termination of the Agreement, any lawsuit commenced by Seed against the [defendants herein] shall, as to all claims preserved by this agreement, be considered timely commenced if a Complaint is filed within sixty (60) days following termination of the Agreement."  The Tolling Agreements preserved all claims that were not already time-barred as of May 3, 2007 (as to defendants William F. Westerman and Westerman, Hattori, Daniels & Adrien LLP) or May 10, 2007 (as to defendants John Kong and Ed Kenehan).

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SEED COMPANY, LTD. and SHIGERU TAMAI**<br><br>**Plaintiffs**<br><br>·v.<br><br>**WILLIAM F. WESTERMAN, et al.**<br><br>**Defendants.** | **CASE NUMBER 1:08-CV-00355-RMU**<br><br><br>**DECLARATION OF JAMES E. HOWARD** |

James E. Howard declares as follows:

1.    I am over the age of eighteen years, and I am competent to testify as to the matters asserted herein.

2.    I am an attorney, licensed in the District of Columbia, representing Plaintiffs Seed Company, Ltd. and Shigeru Tamai in this litigation ("Seed"), and this declaration is made based upon my personal knowledge.

3.    At this early date Seed has not, and indeed could not have, conducted discovery in this litigation. Defendants have not answered Seed's Complaint, and a Fed. R. Civ. P. 26(f) conference has not yet taken place. Thus, Seed does not have the benefit of knowing what facts are in dispute, does not have Fed. R. Civ. P. 26(a) initial disclosures, and cannot yet serve discovery requests.

4.    In effect Seed has only the benefits of its own investigation. While relevant billing records, correspondence files, case files, emails, letters, and other documents are known to be readily available to the defendants, Seed has to date had none of the discovery contemplated by the Federal Rules of Civil Procedure.

5.      Defendants Westerman, Kong, Kenehan, and Westerman, Hattori, Daniels & Adrian, LLP (collectively, "Westerman defendants") filed a Motion to Dismiss, or in the Alternative, a Motion for Summary Judgment, based on the statute of limitations.

6.      If the Court converts the Westerman defendants' motion into a motion for summary judgment, and believes that the record before the Court is insufficient to deny the motion, then Seed respectfully requests a continuance pursuant to Fed. R. Civ. P. 56(f). Such a continuance would be necessary for Seed to have a meaningful opportunity to develop evidence to support its claims, and to meet the Westerman defendants' defenses.

7.      There are numerous areas of inquiry that Seed would pursue in discovery that are relevant to the application of the statute of limitations in this action.

8.      Under the discovery rule, the Westerman defendants must show that Seed was aware of an injury, its cause, and their wrongdoing before a claim for their malpractice will accrue. Seed expects to develop further evidence that will show that these elements were not fulfilled until well within the statute of limitations period.

9.      Documents and testimony from Westerman, Kong, Kenehan, and a 30(b)(6) representative will logically establish that the Westerman defendants either knew that they committed malpractice and did not tell Seed, or that they did not know they committed malpractice until much later in the representation. In the first instance, breach of fiduciary duty issues are raised which support the argument that the Westerman defendants should be estopped from relying on the statute of limitations. In the second instance, it would be difficult for the Westerman defendants to suggest that even though they were unaware of their own malpractice, their foreign clients who were relying on their specialized expertise should nonetheless have

caught their mistakes. Accordingly, such evidence is relevant to the application of the statute of limitations.

10.    The documents currently in Seed's possession provide evidence that the Westerman defendants engaged in lulling comments related to their malpractice. Further, documents and testimony from Westerman, Kong, and Kenehan related to such comments are expected to disclose additional false and/or lulling statements that the Westerman defendants made to Seed about the continued viability of its U.S. Patent application. Such evidence would raise additional questions of fact as to the accrual date of Seed's claims.

11.    The Westerman defendants have also selected and submitted discrete billing records for work they performed for Seed. Their argument is that $4,000 that Seed ultimately paid for the Westerman firm's work on a motion for reconsideration of what was implied to be a minor aspect of the Board's ruling granting Seed an unqualified victory, caused Seed's malpractice claims to accrue. A complete set of billing and other records will confirm that the $4,000 that Seed ultimately paid the Westerman defendants was 3% or less of the total amount Seed was billed. This would put the cost of a motion to reconsider a discrete aspect of a ruling, that on its face granted Seed victory in the Interference action, into context for purposes of assessing Seed's knowledge of injury due to the Westerman defendant's malpractice.

12.    Furthermore, the damages that Seed ultimately sustained due to defendants' negligence, when developed through evidence from licensees, competitors, and expert witnesses, will be shown to be in the millions of dollars. Such evidence would further undermine the Westerman defendants' argument that a $4,000 expenditure on a motion relating to an order granting Seed a complete victory in the Interference proceeding could be construed as knowledge by Seed of injury from defendants' malpractice.

3

13.     Documents and testimony from Westerman, Kong, and Kenehan regarding the Westerman defendants' assertion that Stevens had no basis to appeal the victory that the Board granted to Seed in the Interference proceeding, and might even be sanctioned for doing so, would also be developed. This would provide further evidence showing that Seed had no reason to believe that it was injured, let alone that defendants had engaged in wrongdoing, until well within the limitations period.

14.     Seed has submitted documents to the court that it believes show that the Westerman defendants provided incorrect legal advice regarding the ramifications of their malpractice, both before and after the U.S. Court of Appeals for the Federal Circuit reversed Seed's victory in the Interference. Seed contends that this constituted independent malpractice that deprived it of opportunities to settle the Interference proceeding. Documents and testimony from Westerman, Kong, Kenehan, and a 30(b)(6) representative are expected to provide further confirmation that the Westerman defendants provided incorrect advice. This would supply even further evidence that Seeds' claims were timely, and would potentially uncover additional malpractice claims.

15.     Letters, facsimiles, emails, or testimony may provide further confirmation that information related to Seed's Interference proceeding before the Board of Patent Appeals and Interferences (the "Board") was not always communicated to Seed, and that given the distance and language barriers involved, information that was communicated was frequently delayed. This is directly relevant in determining an accrual date for Seed's malpractice claims for purposes of applying the statute of limitations.

16.     Documents and testimony from Westerman, Kong, Kenehan, and a 30(b)(6) representative regarding the Westerman defendants' claimed expertise in interference

4

proceedings, as communicated to Seed, are expected to be developed in discovery. Such evidence may be used to demonstrate that it was reasonable for Seed to believe there had been no wrong doing, and no accrual of any claim, until at least the point when the Westerman defendants began to admit their mistakes in 2006.

17.    Billing records, correspondence, and testimony from Westerman, Kong, Kenehan, and a 30(b)(6) representative will also help establish the continuing nature of defendants' representation of Seed. Such records could further confirm that the defendants were representing Seed in the same underlying matter from the filing of its U.S. patent application through the many related proceedings that arose out of the Interference. This is relevant to the application of the continuous representation tolling doctrine. In addition, drafts of billing records are expected to contain comments showing when the Westerman defendants became aware that they committed malpractice.

18.    An example of the initial interrogatories, requests for production, and requests for admission that Seed would serve on the Westerman defendants, which are focused on developing the evidence discussed herein, is attached hereto as Exhibit A.

19.    Seed intends to take the depositions of all of the named defendants, and would also take the depositions of Fed. R. Civ. P. 30(b)(6) representatives for each named law firm. Among other things, the 30(b)(6) depositions would focus on the topics set forth above, and those set forth in the discovery requests attached hereto as Exhibit 1. This would include topics such as the Westerman firm's expertise in interference proceedings; the basis for the firm's mistaken belief that other appeals would be possible after the Federal Circuit ruling became final; the basis for the firm's mistaken belief that the Interference proceeding could be reopened; the firm's procedures for dealing with foreign language clients; the firm's billing practices in

general, and with respect to Seed in particular; the firm's discussions of the Seed Interference proceeding with other attorneys; the firm's discussion of the Seed Interference proceeding with its malpractice carrier; the firm's efforts to retain Seed as a client; the firm's document retention policies; when the firm became aware that it may have committed malpractice; the firm's procedures for handling interference proceedings, both at the time of the Seed Interference and now; the dates of the firm's representation of Seed; the firm's settlement discussions with counsel for the opposing party in the Interference; the firm's knowledge of the injury that would occur to Seed if the patent did not issue; and the firm's risk management procedures.

20.    Attached as Exhibit B is a true and correct copy of a letter from William F. Westerman to Minnesota Lawyers Mutual, dated September 29, 2004, notifying Minnesota Lawyers Mutual that the Westerman Firm might have committed malpractice. This letter was filed in *Minnesota Lawyers Mutual Ins. Co. v. Westermana, Hattori, Daniels & Andrian, LLP*, currently pending before this Court as Case No. 1:07-cv-01038-RMU

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated this 10th day of April, 2008.

James E. Howard

6

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Seed Company, Ltd., et al.**<br><br>          **Plaintiffs**<br><br>·v.<br><br>**William F. Westerman, et al.**<br><br>          **Defendants.** | PLAINTIFFS FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION, AND REQUESTS FOR ADMISSION TO DEFENDANT WESTERMAN, HATTORI, DANIELS, AND ADRIAN LLP<br><br>**CASE NUMBER 1:08-CV-00355-RMU** |

Plaintiffs Seed Company and Shigeru Tamai, hereby submits their First Set of Interrogatories, Requests for Production of Documents, and Requests for Admissions to Defendant Westerman, Hattori, Daniels, and Adrian LLP.  These discovery requests are served upon you pursuant to Federal Rules of Civil Procedure 26, 33, 34, and 36.

### DEFINITIONS

1.     For the purposes of these requests only, the term "Seed" means Seed Company Limited and all of its agencies, divisions, departments, nominees, affiliated entities and units, including subsidiaries, instrumentalities, subdivisions, predecessors, successors and assignees of any of them, administrators, officers, directors, employees, agents, representatives, consultants, special assistants, joint ventures, contractors, and attorneys of any of them; and any persons who at any time acted by, through, or on behalf of any of them, including without limitation, Shigeru Tamai and Kenji Itami.

2.     The phrase "this Action" means this litigation, captioned *Seed Company Ltd., et al. v. William F. Westerman, et al.*, Case No.1:08-CV-00355-RMU, in the United States District Court for the District of Columbia.

3.      The term "Defendants" means the defendants in this Action, individually and collectively, and all of their employees, agents, representatives, attorneys, directors, officers, predecessors, successors and assigns.

4.      The terms "concerning," "referring," or "relating," and any variants thereof, are used in their broadest possible sense and include, without limitation, concerning, referring to, relating to, alluding to, responding to, pertaining to, relevant to, concerned with, commenting upon, in respect of, about, regarding, discussing, evidencing, mentioning, showing, describing, reflecting, analyzing, touching upon, constituting, defining, containing, embodying, identifying, stating, supporting, dealing with, and being.

5.      The term "communication" shall include any meeting, telephone call, conversation, letter, discussion, memorandum, e-mail, document, or any other form of communication, whether verbal or nonverbal.

6.      The term "document" is used in its broadest possible sense as interpreted under the Federal Rules of Civil Procedure and includes, without limitation, all of the items identified in and reasonably inferred from Federal Rule of Civil Procedure 34(a), all original and copies, duplicates, drafts, and recordings of any written, graphic, or otherwise recorded matter, however produced or reproduced, and all "writings" as defined in Section 1001 of the Federal Rules of Evidence, including, without limitation, the following:  abstracts, advertisements, agendas, agreements, analyses, appointment books, articles, blueprints, brochures, calendars, charts, compilations, computer runs and printouts, diaries, electronic mail, letters, logs, journals, notes, reports (including reports or notes of telephone or other conversations), memoranda, books, ledgers, drawings, photographs, specifications, sound recordings, telephone call records, drafts, catalogs, invoices, bills of materials, purchase orders, proposals, contracts, and other writings of whatsoever nature, whether on paper, film, magnetic tape or any other non-paper information storage means, including the content of all computer files, memory, disks, and drives, and all other devices or things used for storage, transmission, or retrieval of data, images, records, or

-2-

information. Where any such items contain any marking not appearing on the original or are altered from the original, then such items shall be considered separate original documents.

7.     The term "thing" refers to any tangible object other than a document, and includes objects of every kind and nature such as, but not limited to, models, samples, prototypes and commercial units, whether or not they are complete or functional.

8.     The term "person" includes any individual, firm, partnership, association, joint venture, corporation, governmental agency, other entity, or any combination of the above.

9.     The term "the Kratz, Quintos & Hanson Firm" includes Kratz, Quintos, Hanson and Brooks, LLP, and its predecessors in interest dating back to March 13, 1993, including without limitation, the partnerships of Armstrong, Westerman, Hattori, McLeland & Naughton, LLP; Armstrong, Westerman and Hattori, LLP; and Armstrong, Kratz, Quintos, Hanson, and Brooks, LLP, and all partners, associates, or employees of these firms.

10.    The term "the Westerman Firm" includes without limitation, Westerman, Hattori, Daniels, and Adrian, LLP and all of its partners, associates, or employees.

11.    Seed's "U.S. Patent Application" refers to Seeds' United States Patent Application No. 08/030,183 ("US '183 Application") and Seeds' United States Patent Application No. 08/196,839, which was a continuation of the US '183 Application.

12.    The term "Interference" refers to the interference proceeding declared by the United State Patent Office's Board of Patent Appeals and Interferences, and designated as Interference No. 103,662, between Seed's U.S. Patent Application and the patent application of Christopher Stevens, U.S. Patent No. 5,393,368.

13.    The term "PCT '947 application" refers to Seed's Patent Cooperation Treaty Application No. PCT/JP92/00947.

14.    As used herein, the singular form of any word includes within its meaning the plural form, and vice versa; the use of the masculine form of a pronoun includes within its meaning the feminine form of the pronoun, and vice versa; the use of the tense of any verb includes all other tenses of the verb so used; and the use of "and" includes "or," and vice versa.

-3-

## GENERAL INSTRUCTIONS

1.     These requests are served upon you by Seed in accordance with the Federal Rules of Civil Procedure, and incorporate by reference the instructions set forth in Fed. R. Civ. P. 33, 34, and 36.

2.     In responding to these discovery requests, you are requested to furnish all information and documents in your possession, custody or control, including information and documents to which you have access that may be currently in the possession of agents, attorneys, or others.

3.     To "state the factual basis" or "describe" means to set out with particularity and in detail ever aspect of every fact, circumstance, act, omission or course of conduct known to you, or that can be inferred by you from the existence of other known facts, relating in any way to the matter inquired about.

4.     You are requested to produce the original and all non-identical copies, including all drafts, of each document requested below.  If you are not able to produce the original of any document, produce the best available copy and all non-identical copies, including drafts.

5.     <u>You are requested to produce all documents in the order and as they are kept in the usual course</u>, with any identifying labels, file markings, or similar identifying features.

6.     If any portion of a document is responsive, produce the entire document.

7.     If there are no documents responsive to any particular Request, state so in writing.

8.     If any document requested herein was at one time in existence, but has been lost, discarded or destroyed, identify each missing document with as much specificity as possible, including its date, author and subject matter.

9.     If you refuse to produce any documents requested herein based on a claim that it is privileged or otherwise immune from discovery, please prepare a log that: (1) identifies each document by specifying its author, title, date and recipients; (2) identifies the type of document (e.g., letter, memo, etc.); (3) describes the subject matter of the document; (4) identifies the

-4-

particular discovery request or requests to which the document is responsive; and (5) specifies the precise grounds on which a privilege or immunity is claimed.

10.    If you do not know, and cannot ascertain with the reasonable effort and investigation required by the Federal Rules of Civil Procedure, the answer or response to any discovery request, please state that affirmatively in lieu of your answer.

11.    If you object to answering only part of a discovery request, please specify the part to which you object and answer the remainder.

12.    If you are relying on a general objection in answering a discovery request, please specifically so state in each instance when responding to each such request.

13.    These discovery requests are continuing in nature. Should you become aware of additional information or documents after making your initial responses, you must provide supplemental responses.

## INTERROGATORIES

**Interrogatory No. 1:** Identify by name, address, and telephone number all individuals who worked on or have knowledge of legal work performed for Seed in any way related to Seed's U.S. Patent Application or the related Interference proceeding, including any and all appeals of any kind, and include the dates such work was performed.

**Response:**


**Interrogatory No. 2:** If the Westerman Firm has had malpractice claims threatened, asserted, or filed against it related to work it performed on a U.S. patent application since it was formed in 2003, please describe the circumstances of each such occurrence, including the date, the client, the patent involved, and for any instances involving a court filing, the court, filing date, and cause of action number.

**Response:**


**Interrogatory No. 3:** Describe in detail the steps the Westerman firm has taken to prevent electronic or hard copy documents in any way related to the work that it performed on the Seed Patent, including its alleged malpractice, from being destroyed.

　　**Response:**


**Interrogatory No. 4:** If your response to any of Plaintiffs' First Set of Requests for Production is that documents sought exist, but are not reasonable accessible to you, describe in detail your factual basis for this assertion, including without limitation, the technical details of any computer or electronic storage system or software involved, and all technical or other steps necessary to retrieve responsive documents.

　　**Response:**


**Interrogatory No. 5:** Please state how many interference actions before the Board of Patent Appeals and Interferences the Westerman Firm represented clients in prior to or during the Seed Interference Action, and provide the name of the attorneys, dates, party names, and interference numbers.

　　**Response:**


**Interrogatory No. 6:** Please list any interference actions attorneys working for the Westerman Firm had represented clients in before joining the firm in 2003, and provide the name of the attorneys, dates of each interference action, the parties involved, and the interference

numbers.

**Response:**

**Interrogatory No. 7:** Please list all the individuals, other than defense counsel, who supplied information or assistance in relation to each of these discovery requests, and note the requests that each individual supplied such information or assistance for.

**Response:**

**Interrogatory No. 8:** Identify all individuals, by name, address, and telephone number, that the Westerman Firm has spoken to regarding the Board of Patent Appeals and Interferences' ruling in Seed's Interference proceeding, including without limitation, the patent attorneys referenced in the Westerman Firm's letter dated May 12, 2004.

**Response:**

**Interrogatory No. 9:** Identify which individuals at the Westerman Firm mistakenly believed that Seed's Interference proceeding could be reopened after Stevens' appeal to the Federal Circuit Court of Appeals became final, and describe in detail all bases for each individual's mistaken belief.

**Response:**

## REQUESTS FOR PRODUCTION

**Request for Production No. 1:**  Please produce copies of all billing records (as noted in the direction section above, including all drafts) related to any work that the Westerman Firm has performed for Seed.

**Response:**


**Request for Production No. 2:**  Please produce the entire case file or files for any matters that you have handled for Seed.

**Response:**


**Request for Production No. 3:**  Please produce copies of all correspondence of any kind, including without limitation, letters or emails, that the Westerman Firm has had with Seed.

**Response:**


**Request for Production No. 4:**  Please produce copies of all correspondence of any kind, including without limitation, notes or conversations, letters or emails, that the Westerman Firm has had with attorneys representing Christopher Stevens, or any successor in interest to the Stevens patent application.

**Response:**

**Request for Production No. 5:**  Please produce copies of all documents of any kind, including without limitation, memoranda, correspondence, drafts, spreadsheets, Power Point presentations, outlines, handwritten notes, and emails, related to any work that the Westerman Firm has performed for Seed.

**Response:**

**Request for Production No. 6:**  Please produce copies of all documents, including without limitation handwritten notes, memoranda, drafts, outlines, Power Point presentations, emails, and letters, discussing, reflecting, or memorializing the Westerman Firm's failure to file an English language translation of Seed's PCT '947 application in the Interference proceeding.

**Response:**

**Request for Production No. 7:**  Please produce copies of all documents, including without limitation handwritten notes, memoranda, Power Point presentations, emails, and letters, discussing, analyzing, reflecting or memorializing the malpractice exposure of the Westerman Firm for its work on Seed's U.S. Patent Application.

**Response:**

**Request for Production No. 8:**  Please produce copies of all documents, including without limitation handwritten notes, memoranda, drafts, outlines, Power Point presentations, emails, and letters, discussing the Board of Patent Appeals and Interferences ruling in Seed's Interference action.

**Response:**

**Request for Production No. 9:**  Please produce a copy of any checklist, memorandum, flow chart, diagram, or outline of any kind created or used by any employee of the Westerman Firm since it was formed in 2003 that describes the steps or procedures to be followed in an Interference proceeding.

**Response:**

**Request for Production No. 10:**  Please produce a copy of all of the document preservation policies that have existed for the Westerman firm since it began representing Seed in 2003 through the present date.

**Response:**

**Request for Production No. 11:**  Please produce a copy of all of the risk management policies that have existed for the Westerman Firm since it began representing Seed in 2003 through the present date.

**Response:**

**Request for Production No. 12:**  If Interrogatory No. 4 was answered in the affirmative, and the Westerman firm has had one or more other malpractice proceedings filed against it related to work it performed on a U.S. patent since it was formed in 2003, then please produce copies of all of the publicly filed documents related to any such proceedings.

**Response:**

**Request for Production No. 13:**  Please produce copies of all insurance policies that may provide coverage for the malpractice claims that have been asserted in this Action.

**Response:**

**Request for Production No. 14:**  Please produce copies of any correspondence between the Westerman Firm and its malpractice carrier regarding the Westerman Firm's malpractice exposure for work it performed for Seed, that took place while the Westerman Firm was performing work on Seed's U.S. Patent or related in any way to the Interference proceeding.

**Response:**

**Request for Production No. 15:**  Please produce a copy of the Westerman Firm's partnership agreement or agreements from the time it was formed in 2003 through the present.

**Response:**

**Request for Production No. 16:**  Please produce a copy of all versions of the Westerman Firm's office manuals, operating manuals, or other documents describing the Westerman Firm's policies, procedures, rules, or methods of operation, regardless of the name used to describe such documents, since the firm was formed in 2003 through 2006.

**Response:**

**Request for Production No. 17:**  Please produce copies of any documents of any kind in the possession of the Westerman Firm or its employees offering guidelines or suggestions for representing foreign language clients.

-11-

**Response:**

**Request for Production No. 18:**  Please produce a copy of any marketing materials of any kind, including without limitation, Power Point presentations, brochures, or handouts, describing the Westerman Firms' capabilities or services for foreign clients interested in U.S. patent protection.

**Response:**

**Request for Production No. 19:**  Please produce copies of any employee directories for the Westerman Firm from the date the Firm first began representing Seed in the Interference Action in 2003 through the present.

**Response:**

**Request for Production No. 20:**  Please produce copies of any documents that refer to the Westerman Firm's Interference Group, or any group or committee by whatever name that specializes in interference proceedings before the U.S. Board of Patent Appeals and Interferences.

**Response:**

**Request for Production No. 21:**  Please produce copies of any correspondence of any kind with any consultants that the Westerman Firm retained in relation to Seed's Interference proceeding or any related proceedings, including notes of any conversations with any such consultants.

**Response:**

**Request for Production No. 22:**  Please produce copies of any correspondence or documents of any kind sent to or received from any other defendants to this Action related in any way to Seed's U.S. Patent Application, Seed's Interference proceeding, or this action, including without limitation, documents relating to insurance coverage or malpractice exposure.

   **Response:**

### REQUESTS FOR ADMISSION

**Request for Admission No. 1:**  Admit that in relation to interference proceedings before the Board of Patent Appeals and Interferences, 37 C.F.R. § 1.637(f) provides that a party may file a preliminary motion "to be accorded the benefit of the filing date of an earlier filed application, " but if the earlier application is not in English, "the requirements of section 1.647 must also be met."

   **Response:**

**Request for Admission No. 2:**  Admit that 37 C.F.R. § 1.647 requires that "[w]hen a party relies on a document or is required to produce a document in a language other than English, a translation into English and an affidavit attesting to the accuracy of the translation shall be filed with the document."

   **Response:**

**Request for Admission No. 3:**  Admit that the Westerman Firm attempted to rely on Seed's PCT '947 application in the Interference proceeding in order to be accorded the benefit of the PCT '947 application's earlier July 24, 1992 filing date.

**Response:**

**Request for Admission No. 4:**  Admit that to obtain the benefit of Seed's PCT '947 application in the Interference proceeding, an English language translation of the PCT '947 application, supported by an affidavit, had to be filed.

**Response:**

**Request for Admission No. 5:**  Admit that the Westerman Firm failed to file an English language translation of Seed's PCT '947 application, supported by an affidavit, in the Interference proceeding.

**Response:**

**Request for Admission No. 6:**  Admit that the Board of Patent Appeals and Interferences ruled that Seed had failed to file the required English language translation of Seed's PCT '947 application, and accompanying affidavit, in the Interference proceeding.

**Response:**

**Request for Admission No. 7:**  Admit that in response to Seed's motion for reconsideration, the Board of Patent Appeals affirmed its ruling that Seed had failed to file the required English language translation of Seed's PCT '947 application.

-14-

**Response:**


**Request for Admission No. 8:** Admit that the Westerman Firm sent a letter to Seed on or about March 21, 2003, advising that "[t]he most important issue regarding the Board's Decision mailed March 13, 2003, is that it does not modify the Board's FINAL DECISION."

**Response:**


**Request for Admission No. 9:** Admit that the Westerman Firm sent a letter to Seed on or about April 18, 2003, advising that the Board of Patent Appeals' ruling on Seed's Motion for Reconsideration "re-affirmed its Decision awarding priority to Tamai in this Interference even without granting us the benefit of the PCT application date."

**Response:**


**Request for Admission No. 10:** Admit that the Westerman Firm advised Seed that it had won the interference proceeding before the Board of Patent Appeals and Interferences.

**Response:**


**Request for Admission No. 11:** Admit that the Westerman Firm advised Seed that the Board of Patent Appeals and Interferences' final decision rendered the Steven's patent invalid.

**Response:**


-15-

**Request for Admission No. 12:**  Admit that the Westerman Firm advised Seed that it was satisfied with the Board of Patent Appeals and Interferences' final decision in the Interference proceeding.

**Response:**


**Request for Admission No. 13:**  Admit that the Westerman Firm advised Seed that it did not recommend an appeal of the Board of Patent Appeals and Interferences final decision in the Interference proceeding.

**Response:**


**Request for Admission No. 14:**  Admit that the Westerman Firm sent a letter to Seed on or about October 3, 2003, advising that in relation to Stevens' appeal of the Board of Patent Appeals and Interferences' final decision to the Federal Circuit, "we fail to see how Stevens can, in good faith, maintain the appeal."

**Response:**


**Request for Admission No. 15:**  Admit that the Westerman Firm sent a letter to Seed on or about January 14, 2004, advising that even if it were to lose the pending Federal Circuit appeal, its U.S. Patent Application would be returned to the patent examiner, and it would be permitted to add or amend claims.

**Response:**


-16-

**Request for Admission No. 16:**  Admit that the Westerman Firm's was wrong in advising Seed that even if it were to lose the pending Federal Circuit appeal, its U.S. Patent Application would be returned to the patent examiner, and it would be permitted to add or amend claims.

**Response:**


**Request for Admission No. 17:**  Admit that the Westerman Firm advised Seed that if Stevens did not voluntarily dismiss his appeal to the Federal Circuit Court of Appeals, Seed might be entitled to an award of attorney's fees from Stevens.

**Response:**


**Request for Admission No. 18:**  Admit that the Westerman Firm advised Seed that its chances of prevailing on Steven's appeal before the Federal Circuit Court of Appeals were very good.

**Response:**


**Request for Admission No. 19:**    Admit that the United States Court of Appeals for the Federal Circuit affirmed the Board of Patent Appeals and Interferences' ruling that Seed had failed to file a required English language translation of Seed's PCT '947 application, supported by an affidavit.

**Response:**


**Request for Admission No. 20:**  Admit that the Westerman Firm represented Seed in

-17-

relation to its U.S. Patent Application during Steven's appeal of the Board of Patent Appeals and Interferences ruling to the United States Court of Appeals for the Federal Circuit.

**Response:**

**Request for Admission No. 21:**  Admit that the Westerman Firm represented Seed in relation to its U.S. Patent Application during Seed's petition for rehearing *en banc* to the United States Court of Appeals for the Federal Circuit.

**Response:**

**Request for Admission No. 22:**  Admit that on or about May 12, 2004, the Westerman Firm sent a letter to Seed advising that it had a sound legal basis for filing a petition for rehearing of the Federal Circuit's decision *en banc*.

**Response:**

**Request for Admission No. 23:**  Admit that on or about May 12, 2004, the Westerman Firm sent a letter to Seed advising that it was "considering filing a motion to reopen the testimony period when the interference is remanded to the Board."

**Response:**

**Request for Admission No. 24:**  Admit that on or about May 12, 2004, the Westerman Firm sent a letter to Seed advising that it was "also considering the filing of one or more petitions to the Commissioner to be filed in lieu of motions to the Board [of Patent Appeals and Interferences] and/or to request reconsideration of a refusal of the Board to grant our motion."

**Response:**

-18-

**Request for Admission No. 25:**  Admit that on or about May 27, 2004, the Westerman Firm sent a letter to Seed advising that it believed Seed was an obvious winner in the interference to one fully comprehending the facts and applicable law.

   **Response:**


**Request for Admission No. 25:**  Admit that the Westerman Firm represented Seed in relation to its U.S. Patent Application during Seed's petition for a writ of *certiorari* from the United States Supreme Court.

   **Response:**


**Request for Admission No. 26:**  Admit that the Westerman Firm advised Seed on or about July 27, 2004, that "[e]ven if the Petition [for certiorari] is denied for whatever reason, and judgment is finally entered against Tamai, there are still other options for appeal, such as to the District Court under 35 U.S.C. § 146."

   **Response:**


**Request for Admission No. 27:**  Admit that the Westerman Firm was wrong in advising Seed on or about July 27, 2004, that "[e]ven if the Petition [for certiorari] is denied for whatever reason, and judgment is finally entered against Tamai, there are still other options for appeal."

   **Response:**


**Request for Admission No. 28:**  Admit that the Westerman Firm represented Seed in

-19-

relation to its U.S. Patent Application when it filed a Request for Status with the United States Patent Office on June 9, 2006.

**Response:**


**Request for Admission No. 29:**  Admit that one or more attorneys at the Westerman Firm mistakenly believed that Seed could reopen the Interference proceeding after Steven's appeal to the Federal Circuit became final.

**Response:**


**Request for Admission No. 30:**  Admit that the Westerman Firm notified Seed in a letter dated December 6, 2006, that it had been mistaken in believing that the Interference would reopen when the ruling of the Federal Circuit Court of Appeals became final.

**Response:**


**Request for Admission No. 31:**  Admit that the Westerman Firm represented Seed with respect to its U.S. Patent Application through June 9, 2006.

**Response:**


**Request for Admission No. 32:**  Admit that the Westerman Firm represented Seed with respect to its U.S. Patent Application through December 6, 2006.

**Response:**


**Request for Admission No. 33:**  Admit that the result of the Federal Circuit Court of

Appeals' final mandate was ultimately that Seeds' U.S. Patent claims were rejected.

**Response:**


**Request for Admission No. 34:**  Admit that the Westerman firm owed fiduciary duties to Seed at all times that it represented Seed.

**Response:**


**Request for Admission No. 35:**  Admit that Seed would have prevailed over Stevens in the Interference proceeding if Seed had been afforded the benefit of the filing date of its '947 PCT application.

**Response:**


**Request for Admission No. 36:**  Admit that it was foreseeable that Seed would be injured if it did not prevail in the Interference proceeding.

**Response:**


**Request for Admission No. 37:**  Admit that William Westerman and John Kong began representing Seed with respect to its U.S. Patent Application and related Interference proceeding while they were at the Kratz, Quintos & Hanson Firm (as defined above).

**Response:**

**Request for Admission No. 38:**  Admit that on or about October 1, 2003, Mr. Westerman and Mr. Kong left the Kratz, Quintos & Hanson Firm to form the Westerman Firm.

**Response:**

**Request for Admission No. 39:**  Admit that Mr. Westerman and Mr. Kong sought to continue to represent Seed with respect to its U.S. Patent Application and its Interference proceeding after leaving the Kratz, Quintos & Hanson Firm, at the Westerman Firm.

**Response:**

Dated: April 11, 2008

Respectfully submitted,

_____

Creighton R. Magid (D.C. Bar No. 476961)
DORSEY & WHITNEY LLP
1050 Connecticut Avenue, N.W., Suite 1250
Washington, DC 20036
Telephone: (202) 442-3555
Fax: (202) 442-3199
magid.chip@dorsey.com

Counsel For Plaintiffs
SEED COMPANY LIMITED and SHIGERU
TAMAI

OF COUNSEL:
Paul T. Meiklejohn
Curt R. Hineline
James Howard
Mark S. Carlson
DORSEY & WHITNEY LLP
U.S. Bank Centre
1420 Fifth Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: (206) 903-8800
Fax: (206) 903-8820

# EXHIBIT B

djt 10/1/04


**WESTERMAN HATTORI DANIELS & ADRIAN, LLP**

RECD OCT 0 1 2004

04-426

# FACSIMILE

1250 Connecticut Avenue, NW – Suite 700
Washington, DC 20036

Tel: (202) 822-1100
Fax: (202) 822-1111

| | |
|---|---|
| Date: | September 29, 2004 |
| To: | Carlene Orloff<br>Client Relations Coordinator<br>Minnesota Lawyers Mutual |
| Re: | Insurance Report |
| Fax Number: | 1800-305-1510 |
| Number of Pages | 4  (including cover sheet) |
| From: | William F. Westerman/mcu     (9999-9910) |

THE INFORMATION CONTAINED IN THIS MESSAGE IS CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED. This message may also be an attorney/client communication that is privileged and confidential. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by calling us collect and return the original message to us at the above address by mail. Thank you.

Q:\Attorney Files\Westerman W\Fax ltr Carlene Orloff.doc



**WESTERMAN**
**HATTORI**
**DANIELS &**
**ADRIAN, LLP**

WILLIAM F. WESTERMAN
KEN HATTORI
SCOTT M. DANIELS
STEPHEN B. ADRIAN
JOHN P. KONG
SADAO KINASHI
THOMAS J. MACPEAK
EDWARD F. KENEHAN, JR.
NICOLAS E. SECKEL*

THOMAS E. BROWN*
MICHAEL J. CARDI
M. SCOTT ALPRIN
JOSEPH L. FELKER
KENNETH H. GALEN*
WILLIAM M. SCHERTLER

*Practice limited to matters and
proceeding a before federal
courts and agencies

PATENT AGENT
SHUJI YOSHIZAKI

JAPANESE BENRISHI
TOMOKO NAKAJIMA
YASUHISA KUROSE

September 29, 2004

**VIA FACSIMILE**

Carlene Orloff
**Client Relations Coordinator**
Minnesota Lawyers Mutual
2200 Accenture Tower
333 South Seventh Street
Minneapolis, MN 55402

Dear Carlene:

    Please be advised that we are forwarding this incident report to our previous insurer,
General Star.

    With best regards,

                              Very truly yours,
                    WESTERMAN, HATTORI, DANIELS & ADRIAN, LLP

                              William F. Westerman

WFW/meu

WASHINGTON OFFICE:  1250 CONNECTICUT AVE., N.W., SUITE 700, WASHINGTON, D.C. 20036   |   TEL. 202.822.1100   |   FAX. 202.822.1111   |   www.WHDApatentlaw.com
TOKYO OFFICE:  COSMO SHINJUKU GYOEN BLDG. 6F, 1-1-7 SHINJUKU, SHINJUKU-KU, TOKYO, 160-0022, JAPAN   |   TEL. 03.3356.1527   |   FAX. 03.3356.1529

Report of appeals from the Tamai interference                          9/29/2004

The patent application (USSN 08/196,839) at issue for our client Tamai was filed in the Patent Office on February 15, 1994. It was a continuation of USSN 08/030,183, filed on March 29, 1993. The '183 application was the national stage a PCT international application (PCT/JP2/00947) filed on July 24, 1992. Priority for the PCT international application was based on a Japanese application (JP '371) filed on July 31, 1991.

An interference was declared on May 9, 1997 between the '839 application and a patent to Stevens (USP 5,393,368) issued on February 28, 1995. Stevens application (USSN 08/192,471) was filed on February 7, 1994.

During the preliminary motions period of the interference, as representatives of Tamai, we filed a motion requesting that priority be given to Tamai's Japanese parent application and the PCT international application, both of which predated any alleged invention date put forward by our opponent, Stevens.

During the interference, Stevens raised the issue of whether Tamai supplied them with a verified English translation of the PCT international application, which was filed in Japanese. Tamai argued that it was not necessary since the certified English translation of JP '371 is substantially identical to the specification of the '183 application and the PCT '947 specification is substantially the disclosure of JP '371.

The Board of Patent Appeals and Interferences, at the Patent Office, ruled in favor of Tamai, our client, awarding priority to Tamai's Japanese parent application (JP '371).

Even after Tamai filed a Request for Reconsideration to the Board of Patent Appeals and Interferences, to clarify their earlier decision, the Board reaffirmed (March 13, 2003) that Tamai should have priority.

After this reaffirmation of priority, Stevens pursued an appeal to the Court of Appeals for the Federal Circuit (which handles all patent appeals).

In preparing and filing the Tamai brief and reply brief for the Federal Circuit, we believed we had a clear winning case, on the basis that the filing date of an international PCT application is the filing date of a U.S. national stage application which claims priority from the PCT application, and therefore there was no need for Tamai to request priority of the PCT application, since the involved application was not a new application, but merely and entry into the national stage.

An oral hearing was held at the Federal Circuit on February 6, 2004. The decision was handed down on May 4, 2004. It awarded priority to Stevens. We felt and still feel that this was a wrong decision and requested reconsideration on May 18, 2004.

The Federal Circuit denied the Request for Reconsideration.

Still believing that the Federal Circuit erred, Tamai filed requests to the Patent Office to reopen the case and have the Patent office request reconsideration by the Federal Circuit.

Tamai also filed an appeal to the Supreme Court on September 8, 2004.

Just recently on September 20, 2004 the Patent Office issued a decision that the Requests to reopen the case at the Patent office were denied. We believe that this denial could reasonably be expected to bring rise to a claim against our firm and/or our predecessor.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SEED COMPANY, LTD. and SHIGERU TAMAI | ) | |
| | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | CASE NUMBER 1:08-CV-00355-RMU |
| v. | ) | |
| | ) | |
| WILLIAM F. WESTERMAN, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF MASATOSHI SHINTANI

I, Masatoshi Shintani, declare as follows:

1.     I am over the age of eighteen years, I make the following declaration based upon my personal knowledge, and I am competent to testify as to the matters asserted herein.

2.     I am the General Manager of the Development Department of Seed Company, Ltd. ("Seed").

3.     Seed, acting through its representative, Mr. Kenji Itami, engaged the defendants in this case as its attorneys to represent Seed in matters before the United States Patent and Trademark Office, including prosecuting the United States national phase of the Patent Cooperation Treaty Application No. PCT/JP92/00947 ("PCT '947 Application") and the *Tamai v Stevens* Patent Interference No. 103,662.

4.     From the time this interference commenced until now, Seed has not employed an in-house United States Patent Attorney, or a United States Patent Agent.  Seed has no offices in the United States, and the employees handling its patents are primarily fluent only in Japanese.

5.     At all material times during the interference and the subsequent decisions of the courts and the Patent Office concerning the interference, Seed generally relied upon the

statements, representations, correspondence and advice of defendants in the legal matters on which they were engaged for Seed.

6.    Between 1993, when Seed first engaged defendants, and 2002, Seed paid legal fees and costs to defendants for the PCT '947 Application and the *Tamai v Stevens* Patent Interference No. 103,662 exceeding $120,000.  Of course, in the years following 2002 Seed's damages greatly exceeded this sum due to additional legal fees and loss of actual and potential license revenue.

7.    Attached hereto as Exhibit 1 is a true and correct copy of a letter by Mr. Kenji Itami to the firm of Armstrong, Westerman, Hattori, McLeland & Naughton and dated March 13, 1993.  Seed received a copy of this correspondence.

8.    Attached hereto as Exhibit 2 is a true and correct copy of a letter from Mr. Albert Tockman to Mr. Kenji Itami and dated March 29, 1993.  Seed received a copy of this correspondence.

9.    Attached hereto as Exhibit 3 is a true and correct copy of a letter from Armstrong, Westerman, Hattori, McLeland & Naughton to Mr. Kenji Itami and dated July 15, 1993.  Seed received a copy of this correspondence.

10.    Attached hereto as Exhibit 4 is a true and correct copy of a letter from Mr. Kenji Itami to Mr. James P. Welch and dated February 8, 1994.  Seed received a copy of this correspondence.

11.    Attached hereto as Exhibit 5 is a true and correct copy of a letter from James P. Welch to Mr. Kenji Itami and dated February 23, 1994.  Seed received a copy of this correspondence.

12.    Attached hereto as Exhibit 6 is a true and correct copy of a letter from Armstrong, Westerman, Hattori, McLeland & Naughton to Mr. Kenji Itami and dated November 9, 1994. Seed received a copy of this correspondence.

13.    Attached hereto as Exhibit 7 is a true and correct copy of a letter from Mr. Ronald F. Naughton to Mr. Kenji Itami and dated May 16, 1997. Seed received a copy of this correspondence.

14.    Attached hereto as Exhibit 8 is a true and correct copy of a letter from Mr. Kenji Itami to Mr. Ronald F. Naughton and dated May 20, 1997. Seed received a copy of this correspondence.

15.    Attached hereto as Exhibit 9 is a true and correct copy of a letter from Mr. William F. Westerman to Mr. Kenji Itami and dated May 21, 1997. Seed received a copy of this correspondence.

16.    Attached hereto as Exhibit 10 is a true and correct copy of a letter from Mr. William F. Westerman to the Assistant Commissioner for Patents and dated October 21, 1997. Seed received a copy of this correspondence.

17.    Attached hereto as Exhibit 11 is a true and correct copy of a letter from Mr. William F. Westerman to Mr. Kenji Itami and dated July 8, 2002. Seed received a copy of this correspondence. Seed received a copy of this correspondence.

18.    Attached hereto as Exhibit 12 is a true and correct copy of a letter from Mr. William F. Westerman to Mr. Kenji Itami and dated July 11, 2002. Seed received a copy of this correspondence.

19.    Attached hereto as Exhibit 13 is a true and correct copy of a letter from Mr. William F. Westerman to Mr. Kenji Itami and dated August 7, 2002.  Seed received a copy of this correspondence.

20.    Attached hereto as Exhibit 14 is a true and correct copy of a letter from Mr. William F. Westerman to Mr. Kenji Itami and dated March 17, 2003.  Seed received a copy of this correspondence.

21.    Attached hereto as Exhibit 15 is a true and correct copy of a letter from Mr. William F. Westerman to Mr. Kenji Itami and dated March 21, 2003.  Seed received a copy of this correspondence.

22.    Attached hereto as Exhibit 16 is a true and correct copy of a letter from Mr. William F. Westerman to Mr. Kenji Itami and dated April 18, 2003.  Seed received a copy of this correspondence.

23.    Attached hereto as Exhibit 17 is a true and correct copy of a letter from Mr. William F. Westerman to Mr. Kenji Itami and dated May 13, 2003.  Seed received a copy of this correspondence.

24.    Attached hereto as Exhibit 18 is a true and correct copy of a letter from Mr. Edward F. Kenehan, Jr. to Mr. Kenji Itami and dated October 8, 2003.  Seed received a copy of this correspondence.

25.    Attached hereto as Exhibit 19 is a true and correct copy of a letter from Mr. Edward F. Kenehan, Jr. to Mr. Kenji Itami and dated January 22, 2004.  Seed received a copy of this correspondence.

26.     Attached hereto as Exhibit 20 is a true and correct copy of a facsimile from Mr. Edward F. Kenehan, Jr., William F. Westerman and John P. Kong to Mr. Kenji Itami and dated May 5, 2004.  Seed received a copy of this correspondence.

27.     Attached hereto as Exhibit 21 is a true and correct copy of a letter from Mr. Edward F. Kenehan, Jr. to Mr. Kenji Itami and dated May 12, 2004.  Seed received a copy of this correspondence.

28.     Attached hereto as Exhibit 22 is a true and correct copy of a letter from Mr. Edward F. Kenehan, Jr. to Mr. Kenji Itami and dated May 27, 2004.  Seed received a copy of this correspondence.

29.     Attached hereto as Exhibit 23 is a true and correct copy of a letter from Mr. John P. Kong to Mr. Kenji Itami and dated June 15, 2004.  Seed received a copy of this correspondence.

30.     Attached hereto as Exhibit 24 is a true and correct copy of a letter from Mr. John P. Kong to Mr. Kenji Itami and dated July 8, 2004.  Seed received a copy of this correspondence.

31.     Attached hereto as Exhibit 25 is a true and correct copy of a letter from Mr. John Kong to Mr. Kenji Itami and dated July 27, 2004.  Seed received a copy of this correspondence.

32.     Attached hereto as Exhibit 26 is a true and correct copy of a letter from Mr. William F. Westerman to Mr. Toru Matsumoto and dated September 7, 2004.  Seed received a copy of this correspondence.

33.     Attached hereto as Exhibit 27 is a true and correct copy of a letter from Mr. William F. Westerman to Mr. Toru Matsumoto and dated October 12, 2004.  Seed received a copy of this correspondence.

34.    Attached hereto as Exhibit 28 is a true and correct copy of a letter from Mr. William F. Westerman to Mr. Toru Matsumoto and dated October 26, 2004.  Seed received a copy of this correspondence.

35.    Attached hereto as Exhibit 29 is a true and correct copy of a letter from Mr. Stuart Graff to Mr. Yasuhiro Nishioka and dated January 14, 2004.  Seed received a copy of this correspondence.

36.    Attached hereto as Exhibit 30 is a true and correct copy of a letter from Mr. William F. Westerman to Mr. Kenji Itami and dated December 4, 2006.  Seed received a copy of this correspondence.

37.    Attached hereto as Exhibit 31 is a true and correct copy of a Tolling Agreement between Seed Company, Ltd. and William F. Westerman and Westerman, Hattori, Daniels & Adrian, and dated May 3, 2007.

38.    Attached hereto as Exhibit 32 is a true and correct copy of a Tolling Agreement between Seed Company, Ltd. and John P. Kong, and dated May 10, 2007.

39.    Attached hereto as Exhibit 33 is a true and correct copy of a tolling Agreement between Seed Company, Ltd. and Edward F. Kenehan, Jr., and dated May 10, 2007.

40.    Mr. Kenji Itami, at all material times, was an intermediary for Seed in this interference.  Neither Mr. Itami, nor anyone in his firm, is a U.S. attorney or U.S. Patent Agent.  Mr. Itami forwarded defendants' May 5, 2004 letter (Exhibit 22, above) to Seed.  Based on this letter, Seed believed that the Federal Circuit's ruling contained legal and factual errors, and that the Westerman defendants would remedy those errors through one of the procedural options described in the letter.  Seed continued to hold this belief at least until it was informed by the Westerman defendants that the Federal Circuit had denied Seed's Petition for Panel Rehearing

and Rehearing *En Banc* on June 10, 2004. Before that date, Seed relied on defendants'

assurances that the Board and the Federal Circuit rulings were based on legal and factual

mistakes, and Seed did not know that defendants had committed attorney malpractice.

41.    I have read a translation of certain excerpts from the Westerman Defendants'

Motion to Dismiss, or in the Alternative, for Summary Judgment. At page 8, I understand that

the brief states that "Plaintiffs and their Defendant attorneys conceded on the appeal that without

the PCT '947 Application, they could not get the benefit of the earlier-filed JP '371

Application." Seed did not know that defendants had made this concession, and did not

authorize them to make it.

I declare under penalty of perjury of the United States of America that the foregoing is

true and correct.

Signed in Osaka, Japan, this _10th_ day of April, 2008.


_Masatoshi Shintani_
Masatoshi Shintani

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SEED COMPANY, LTD. and SHIGERU TAMAI** | ) ) ) |
| **Plaintiffs** | ) ) |
| **v.** | ) **CASE NUMBER 1:08-CV-00355-RMU** ) ) |
| **WILLIAM F. WESTERMAN, et al.** | ) ) |
| **Defendants.** | ) ) |

## <u>ORDER</u>

This matter having come before this Court on this ___ day of _____, 2008 on Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment, on Statute of Limitations and Causation Grounds, and this Court having considered said Motion and Plaintiffs' opposition thereto, it is hereby

ORDERED, that Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, on Statute of Limitations and Causation Grounds is hereby DENIED.

_____
U.S. District Court Judge Ricardo Urbina

COPIES:

Creighton R. Magid, Esquire
DORSEY & WHITNEY LLP
1050 Connecticut Avenue, N.W., Suite 1250
Washington, D.C. 20036

Christopher B. Mead, Esquire
London & Mead
1225 19th Street, N.W., Suite 320
Washington, D.C. 20036

Paul J. Maloney, Esquire
Carr Maloney, P.C.
1615 L Street, N.W., Suite 500
Washington, D.C. 20036

John H. Harman, Esquire
Coggins, Harman & Hewitt
8905 Fairview Road, Suite 600
Silver Spring, MD 20910

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SEED COMPANY, LTD. and SHIGERU TAMAI** | ) |
| | ) |
| **Plaintiffs** | ) |
| | ) **CASE NUMBER 1:08-CV-00355-RMU** |
| **v.** | ) |
| | ) |
| **WILLIAM F. WESTERMAN, et al.** | ) |
| | ) |
| **Defendants.** | ) |

## <u>ORDER</u>

This matter having come before this Court on this ___ day of _____, 2008 on Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment, on Statute of Limitations and Causation Grounds, and this Court having considered said Motion and Plaintiffs' opposition thereto, it is hereby

ORDERED, that the Court regards Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, on Statute of Limitations and Causation Grounds as a motion for summary judgment, and because: (1) discovery has not commenced in this case; and (2) Plaintiffs have shown to the Court's satisfaction that they cannot at this time present facts essential to justify their opposition; then pursuant to Fed. R. Civ. P. 56(f) Defendants' motion is hereby DENIED.

_____
U.S. District Court Judge Ricardo Urbina

COPIES:

Creighton R. Magid, Esquire
DORSEY & WHITNEY LLP
1050 Connecticut Avenue, N.W., Suite 1250
Washington, D.C. 20036

Christopher B. Mead, Esquire
London & Mead
1225 19th Street, N.W., Suite 320
Washington, D.C.  20036

Paul J. Maloney, Esquire
Carr Maloney, P.C.
1615 L Street, N.W., Suite 500
Washington, D.C.  20036

John H. Harman, Esquire
Coggins, Harman & Hewitt
8905 Fairview Road, Suite 600
Silver Spring, MD 2091