## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SEED COMPANY, LTD., *et. al.* | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Civil No.: 1:08-Cv-00355 (RMU) |
| | * | |
| WILLIAM F. WESTERMAN, *et. al.* | * | |
| | * | |
| Defendants | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## KRATZ DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendants Kratz, Quintos & Hanson, LLP, Armstrong, Kratz, Quintos, Hanson & Brooks, LLP, Armstrong, Westerman & Hattori, LLP, and Armstrong, Westerman, Hattori, McLeland & Naughton (collectively the "Kratz defendants"), by counsel, hereby move for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, move for summary judgment.

As demonstrated by the Kratz Defendants' Memorandum in Support of its Motion to Dismiss and its Statement of Undisputed Material Facts, Plaintiffs' complaint fails to state a claim agsinst the Kratz Defendants and should be dismissed.

Respectfully submitted,

CARR MALONEY P.C.

By:      /s/  Michael J. Sepanik
        Paul J. Maloney, #362533
        Michael J. Sepanik, #471594
        1615 L Street, N.W., Suite 500
        Washington, D.C.  20036
        (202) 310-5500 (telephone)
        (202) 310-5555 (facsimile)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SEED COMPANY, LTD., *et. al.* | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Civil No.: 1:08-Cv-00355 (RMU) |
| | * | |
| WILLIAM F. WESTERMAN, *et. al.* | * | |
| | * | |
| Defendants | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## KRATZ DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

The Kratz Defendants submit the following memorandum of points and authorities in support of its motion to dismiss, or in the alternative, for summary judgment.

## INTRODUCTION

The three year statute of limitations for legal malpractice actions bars all claims alleged against the Kratz Defendants[1]. Plaintiffs Seed Company Limited and Shigeru Tamai (hereinafter "Plaintiffs") filed a Complaint alleging legal malpractice against several attorneys and legal entities (collectively "Defendants"). While the Complaint sets forth over a decade's worth of patent law services, along with attendant filings and competing patent claims in the United States and abroad, the allegations of malpractice are confined to two discrete acts. Thus, for the purposes of determining whether plaintiffs' complaint states a claim against the Kratz Defendants, the analysis is focused. The first act of alleged legal malpractice occurred in

---

[1] The Kratz Defendants include Kratz, Quintos & Hanson, LLP, as well as predecessor firms Armstrong, Kratz, Quintos, Hanson & Brooks, LLP, Armstrong, Westerman & Hattori, LLP, and Armstrong, Westerman, Hattori, McLeland & Naughton.

October of 1997, when, in connection with an interference proceeding before the Board of Patent Appeals, defendants failed to file an English translation of plaintiffs' Patent Cooperation Treaty Application. *See* Complaint, at ¶22-28. The second alleged act of malpractice was erroneous advice provided to the plaintiffs in January 2004 that plaintiffs relied upon to their detriment. *See* Complaint, at ¶ 25-30.

As noted above, one group of defendant attorneys and legal entities is referred to as the Kratz Defendants. A second group of defendant attorneys and legal entities- William Westerman, John Kong, Ed Kenehan and Westerman, Hattori, Daniels and Adrian, LLP- has been referred to in a prior motion to dismiss, and shall herein be referred to as the "Westerman Defendants." Both groups practiced law in one law firm (although the firm name went through several iterations) until October 1, 2003, when the Westerman Defendants severed their professional association with their former firm and formed the firm of Westerman, Hattori, Daniels and Adrian, LLP. When the Westerman Defendants formed their new firm, Plaintiffs decided to maintain their attorney-client relationship with the Westerman Defendants, and they no longer utilized the professional services of, nor maintained an attorney-client relationship with, the Kratz defendants. *See* Complaint, at ¶ 24; *see also* Declaration of Donald Hanson, Esquire, attached as Exhibit 1, at ¶ 3.

For the purposes of this motion, the first alleged act of malpractice, occurring prior to October 1, 2003, may be attributed to legal services provided by both the Kratz defendants and the Westerman defendants. The second alleged act of malpractice, occurring in 2004, cannot be attributed to legal services by the Kratz defendants, as plaintiffs terminated their attorney-client relationship with the Kratz defendants as of October 1, 2003.

## LEGAL STANDARD FOR MOTIONS TO DISMISS
## AND MOTIONS FOR SUMMARY JUDGMENT

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests whether the facts stated in a Complaint support a claim for relief. The United States Supreme Court recently refined the standard for deciding a Rule 12(b)(6) motion in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In *Twombly*, the Supreme Court held that a plaintiff must allege a "plausible entitlement to relief" by setting forth "a set of facts consistent with the allegations." *Id*. at 1967.

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept plaintiff's factual allegations as true. *Albright v. Oliver*, 510 U.S. 266, 114 S. Ct. 807, 810 (1994). However, conclusory allegations or legal conclusions masquerading as factual allegations will not suffice to prevent a motion to dismiss. *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004); *Bender v. Suburban Hosp., Inc.,* 159 F.3d 186, 192 (4th Cir. 1998).

Pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, the Court may choose to treat the instant motion as one for summary judgment. Rule 12(d) states in pertinent part:

> If, on a motion under Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the Court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).

Under the applicable rules of this Court, summary judgment is properly granted when, considering the pleadings and discovery on file in the case, it clearly appears "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(c).

The United States Supreme Court addressed the procedural mechanics of summary judgment in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S. Ct. 2548 (1986). In *Celotex,* the Court held that a defendant moving for summary judgment meets its initial burden of production simply by indicating an absence of evidence in the record to support the plaintiff's claim. 477 U.S. at 325. The burden then shifts to the non-moving party, who must "go beyond the pleadings" to designate specific facts which show there is a genuine triable issue. *Id.* at 324. The rule set forth by *Celotex* is consistent with the plain language of Fed. R. Civ. P. 56:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must- by affidavits or as otherwise provided in this rule- set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2)(emphasis added).

As set forth below, plaintiffs cannot state a claim for legal malpractice against the Kratz defendants, therefore this motion should be granted and judgment entered in favor of the Kratz defendants at this time.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

The Kratz Defendants refer this Court to its Statement of Undisputed Material Facts[2], attached hereto as Exhibit 2.

---

[2] For ease of reference, the Kratz Defendants are filing a Statement of Undisputed Material Facts that is essentially identical to the Westerman Defendants' Statement of Undisputed Material Facts (filed on March 21, 2008). The sole difference in the two Statements of Undisputed Material Facts is the contents of Paragraph Seventeen (17).

## ARGUMENT

I.    PLAINTIFFS' CLAIM FOR LEGAL MALPRACTICE BASED UPON THE
FAILURE TO FILE AN ENGLISH TRANSLATION OF THE PCT APPLICATION
IS BARRED BY THE STATUTE OF LIMITATIONS

The Kratz Defendants' fully adopt and incorporate the factual assertions, choice of law

analysis, and arguments (including all exhibits referenced) set forth in Section I of the Argument

portion of the Westerman Defendants' Memorandum of Points and Authorities in Support of Its

Motion to Dismiss, filed on March 21, 2008 ("Westerman Memorandum").  The section

referenced is located at pages 9 through 16 of the Westerman Memorandum.  The Kratz

Defendants, to the extent necessary, also adopt and incorporate the Statement of Undisputed

Material Facts located at pages 4 through 9 of the Westerman Memorandum.  A copy of the

Westerman Defendants Motion to Dismiss and Memorandum of Points and Authorities

(excluding exhibits) is attached hereto as Exhibit 3.

II.    THE ALLEGATION OF MALPRACTICE BASED UPON THE 2004 ERRONEOUS
ADVICE IS ONLY DIRECTED AT LEGAL SERVICES PROVIDED BY THE
WESTERMAN DEFENDANTS AND AFTER THE PLAINTIFFS TERMINATED
THEIR ATTORNEY-CLIENT RELATIONSHIP WITH THE KRATZ DEFENDANTS.

Under District of Columbia law a suit for legal malpractice[3] may not lie unless the

plaintiff can establish that an attorney-client relationship existed between the parties. *See Smith*

*v. Haden*, 868 F. Supp.1, 1 (D.D.C. 1994); *see also M&S Bldg. Supplies, Inc. v. Keiler*, 738 F.2d

467, 472 (D.C. Cir. 1984).   Plaintiffs allege that they initially retained the attorney defendants

on March 13, 1993.  *See* Complaint, at ¶4.   All named individual attorneys practiced law in one

law firm (although the firm name went through several iterations) until October 1, 2003. *See*

---

[3] Under District of Columbia law, in order to recover in a legal malpractice claim, a plaintiff must prove
the following: (1) the parties entered into an attorney-client relationship, (2) the attorney breached a duty
owed to the client; and (3) the attorney's negligence proximately caused, or resulted in, a loss to the
client. *See Smith v. Haden*, *supra*.

Declaration of Donald Hanson, attached as Exhibit 1, at ¶ 3.  On October 1, 2003, the

Westerman Defendants (William Westerman, John Kong, Ed Kenehan and Westerman, Hattori,

Daniels and Adrian, LLP) severed their professional association with their former firm and

formed the firm of Westerman, Hattori, Daniels and Adrian, LLP. *See id.* at ¶ 3.  When the

Westerman Defendants formed their new firm, Plaintiffs decided to maintain their attorney-client

relationship with the Westerman Defendants, and they no longer utilized the professional

services of, nor maintained an attorney-client relationship with, the Kratz Defendants.  *See*

Complaint, at ¶ 24; *see also id.* at ¶ 3.

Plaintiffs allege that the second alleged act of malpractice occurred on January 22, 2004[4],

when the Westerman firm "incorrectly advised Seed…that even if Seed were to lose the pending

Federal Circuit appeal, the patent application would thereafter 'be returned to the examiner' and

Seed would be permitted to 'add or amend claims.'" *See* Complaint, at ¶26.   During 2004, the

Kratz Defendants were no longer employed by Plaintiffs.  As the Kratz Defendants had no role

in the legal advice at issue, under no set of circumstances can Plaintiffs state a claim for legal

malpractice against the Kratz Defendants for the second alleged act of malpractice- the

erroneous advice provided in 2004.   It is without dispute that Plaintiffs terminated their

attorney-client relationship with the Kratz Defendants as of October 1, 2003, and that the

erroneous advice at issue was not provided until January of 2004.  Plaintiffs' legal malpractice

claim against the Kratz defendants based upon the 2004 advice should be dismissed at this time.

---

[4] Plaintiffs allege that they relied upon the erroneous advice to their financial detriment on multiple
occasions during 2004. *See* Complaint, at ¶25-29.

## **CONCLUSION**

For the reasons set forth above, the Kratz Defendants respectfully request that Plaintiffs'

claims against the Kratz Defendants should be dismissed in their entirety.  A proposed Order is

attached hereto as Exhibit 4.

Respectfully submitted,

CARR MALONEY P.C.


By:      /s/ Michael J. Sepanik
         Paul J. Maloney, #362533
         Michael J. Sepanik, #471594
         1615 L Street, N.W., Suite 500
         Washington, D.C.  20036
         (202) 310-5500 (telephone)
         (202) 310-5555 (facsimile)

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the Kratz Defendants' Motion to Dismiss, or in the alternative, for summary judgment, was electronically served, this 14th day of April, 2008, upon:

Creighton R. Magid, Esquire
Dorsey & Whitney LLP
1050 Connecticut Avenue, N.W.
Suite 1250
Washington, D.C.  20036

Paul T. Meiklejohn, Esquire
Curt R. Hineline, Esquire
Mark S. Carlson, Esquire
Dorsey & Whitney LLP
U.S. Bank Centre
1420 Fifth Avenue, Suite 3400
Seattle, Washington  98101-4010

Christopher Mead, Esquire
Mark London, Esquire
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C.  20036

John H. Harmon, Esquire
Coggins, Harmon & Hewitt
8905 Fairview Road, Suite 600
Silver Spring, Maryland  20910


<u>/s/ Michael J. Sepanik</u>
Michael J. Sepanik

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SEED COMPANY, LTD., *et. al.* | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Civil No.: 1:08-Cv-00355 (RMU) |
| | * | |
| WILLIAM F. WESTERMAN, *et. al.* | * | |
| | * | |
| Defendants | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

**O R D E R**

UPON CONSIDERATION of the Kratz Defendants' motion to dismiss, or in the alternative, for summary judgment, and any opposition thereto, it is this ___ day of _____, 2008

ORDERED, that the Motion is GRANTED; and it is further,

ORDERED, that judgment is entered in favor of Kratz, Quintos & Hanson, LLP, Armstrong, Kratz, Quintos, Hanson & Brooks, LLP, Armstrong, Westerman & Hattori, LLP, and Armstrong, Westerman, Hattori, McLeland & Naughton on all counts of plaintiffs' complaint.

_____
Hon. Ricardo Urbina

cc: counsel of record

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SEED COMPANY, LTD., *et. al.* | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Civil No.: 1:08-Cv-00355 (RMU) |
| | * | |
| WILLIAM F. WESTERMAN, *et. al.* | * | |
| | * | |
| Defendants | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

## DECLARATION OF DONALD HANSON

I, Donald Hanson, Esquire, individually and as a partner in the law firm of Kratz, Quintos & Hanson, LLP, declare as follows:

1.      I am over the age of 18 and competent to testify regarding the matters in this Declaration from personal knowledge.

2.      I was first admitted to practice law in 1974, and I am currently licensed to practice law in the District of Columbia.   I am a partner in the law firm of Kratz, Quintos & Hanson, LLP.  There were several predecessor firms to Kratz, Quintos & Hanson, LLP, including Armstrong, Kratz, Quintos, Hanson & Brooks, LLP, Armstrong, Westerman & Hattori, LLP, and Armstrong, Westerman, Hattori, McLeland & Naughton.

3.      William Westerman, John Kong, and Ed Kenehan (among other attorneys) were formerly attorneys with predecessor firms to Kratz, Quintos & Hanson, LLP.  On October 1, 2003, Westerman, Kong and Kenehan severed their professional association with our firm and

Fin Declaration

formed the firm of Westerman, Hattori, Daniels and Adrian, LLP (collectively "Westerman

Defendants"). When the Westerman Defendants began their new firm, Plaintiffs decided to

maintain their attorney-client relationship with the Westerman Defendants. *See* September 9,

2003 facsimile from Japanese patent agent K. Itami to Armstrong, Westerman & Hattori,

attached as Exhibit A to this Declaration.   After October 1, 2003, Plaintiffs no longer utilized the

professional services of, nor maintained an attorney-client relationship with, Kratz, Quintos &

Hanson, LLP (or any of our predecessor firms).


        I DECLARE UNDER THE PENALTY OF PERJURY THAT THE CONTENTS OF
THE FOREGOING DECLARATION ARE TRUE AND ACCURATE.

*April 14 2008*
Date

Donald Hanson, Esquire, individually and as
a partner of the firm of Katz, Quintos &
Hanson, LLP, and predecessor firms
Armstrong, Kratz, Quintos, Hanson &
Brooks, LLP, Armstrong, Westerman &
Hattori, LLP, and Armstrong, Westerman,
Hattori, McLeland & Naughton.

2

# EXHIBIT A

# 1151

# ITAMI PATENT OFFICE

DAISAN BLDG.
2-4, 3-CHOME, NISHITENMA, KITA-KU.
OSAKA, 530-0047, JAPAN

TELEPHONE: (06)6365-9078
FACSIMILE: (06)6365-8577
(GII, GIII)
CABLE: ITAMIPAT
E-MAIL:
itamipt@mua.biglobe.ne.jp

Law Offices
Armstrong, Westerman
& Hattori, LLP
Suite 1000, 1725 K Street, N.W.
Washington, D.C. 20006
U.S.A

September 9, 2003

VIA FACSIMILE

Dear Sirs,

Re:  Representation of our cases

Thank you for your letters of July 31 through August 26, 2003, relating to transition into two separate law firms.

Please be informed that only one case: Patent interference No. 103,662, US Pat. Appln. S.N. 08/196,839, Your ref: P1151-2717-A 940094 I is entrusted to Westerman, Hattori, Daniels & Adrian, and that the all of the rest cases are entrusted to Armstrong, Kratz, Quintos, Hanson & Brooks.

Yours faithfully,

K. Itami

KI/ky

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SEED COMPANY, LTD., *et al,*    *

       *

    Plaintiffs       *

       *

v.       *    Civil No. 1:08-cv-00355 (RMU)

       *

WILIIAM F. WESTERMAN, *et al.*    *

       *

    Defendants.       *

       *

* * * * * * * * * * * * * * * * * *

## KRATZ DEFENDANTS' STATEMENT
## OF UNDISPUTED MATERIAL FACTS

1.    On July 31, 1991, Plaintiffs filed Japanese Patent Application No. 3-68371 ("JP '371") for a correction tape dispenser.[1] On July 24, 1992, <u>less than one year after filing JP '371,</u> Plaintiffs filed Patent Cooperation Treaty Application No, PCT/JP92/00947 ("the PCT '947 Application"), the first step in obtaining a U.S. Patent for the same claims.[2]

2.    In March, 1993, Plaintiffs retained Defendant attorneys to prosecute a U.S. patent claim based on the PCT '947 Application.  On March 29, 1993, <u>more than one year after the filing of JP '371,</u> Defendants filed U.S. Patent Application Serial No. 08/030,183 directed to the subject matter of the JP '371 and PCT '947 Application ("the '183 Application").  On February

---

[1] Complaint, paragraph 13
[2] Complaint, paragraph 14

15, 1994, Defendants filed U.S. Patent Application Serial No. 08/196,839 ("the '839 Application"), a continuation-in-part of the '183 Application.[3]

3.      A competing patent applicant, Christopher Stevens, filed an application for a similar correction tape dispenser. Stevens actually received a patent for his device, which issued on February 28, 1995 ("the Stevens patent"). In 1997, however, the U.S. Patent Office determined that Plaintiffs' patent claims and the Stevens patent were not patentably distinct, and declared an interference proceeding to determine which party could claim priority by demonstrating through earlier filed applications that they had reduced their patent claims to practice.[4]

4.      In interference proceedings, 37 C.F.R. 1.633(f) provides that a party may file a preliminary motion "to be accorded the benefit of the filing date of an earlier filed application." 37 C.F.R. 1.637 provides that a party filing such a preliminary motion has the burden of proof to establish entitlement to the relief sought. Section 1.637(f)(2) says that if the earlier application is not in English, "the requirements of section 1.647 must also be met." 37 C.F.R. 1.647 says: "When a party relies on a document or is required to produce a document in a language other than English, a translation into English and an affidavit attesting to the accuracy of the translation shall be filed with the document."[5]

5.      In the interference proceeding, Stevens filed an unopposed motion to be accorded

---

[3] Complaint, paragraphs 16-18
[4] Complaint, paragraphs 19-20; *Stevens v. Tamai*, 366 F.3d 1325, 1330-31 (Fed. Cir. 2004) (describing interference proceedings)
[5] *See, Stevens v. Tamai, supra,* 366 F.3d at 1328

the benefit of a February 10, 1993, United Kingdom patent application for his device.  On October 21, 1997, Defendant attorneys filed a motion to have Plaintiffs accorded the benefit of their July 31, 1991, Japanese Patent Application, JP '371, and the July 24, 1992 PCT '947 Application.  Defendant attorneys filed an English translation of the JP '371 application.  However, they did not file an English translation of the PCT '947 Application.  The attorneys believed that an English translation of the PCT '947 Application was unnecessary, because an English translation had been included in the '183 Application and had been accepted by the Patent Office.[6]

6.      Stevens promptly argued that the failure to file an English translation for the PCT '947 Application meant that Plaintiffs had not met their burden of proof, and should not get the benefit of its 1992 filing date.  On June 25, 2002, the Board of Patent Appeals and Interferences ("the Board") issued an opinion agreeing that the failure to file an English translation meant that Plaintiffs were not entitled to the benefit of the PCT '947 Application.  However, the Board ruled that Plaintiffs were entitled to the filing date for their 1991 Japanese patent application, and held that Plaintiffs were entitled to priority over the Stevens claims.[7]

7.      Unfortunately for Plaintiffs, the Board's ruling carried the seeds of its own dismissal. 35 U.S.C. 119(a) provides:

> An Application for patent for an invention filed in this country by any person who
>
> has . . . filed an application for a patent for the save invention in a foreign country

---

[6] Complaint, paragraphs 21-22; Declaration of William F. Westerman ("Westerman Dec." paragraph 4, attached as Exhibit 1 to this Statement

[7] Complaint, paragraph 23; Westerman Dec. paragraph 5

. . . shall have the safe effect as the same application would have if filed in this country on the date on which the application for patent . . . was first filed in such foreign country, if the application in this country is filed within twelve months from the earliest date on which such foreign application was filed . . .

Plaintiffs filed the '183 Application more than one year after the JP '371 Application, Thus, losing the benefit of the PCT'947 Application broke the required one-year chain.

8.     Defendant attorneys notified Plaintiffs of the risk that the Board's requirement of an English translation "could potentially break the chain of priority between the JP '371 and the US '183 applications." Defendant's attorneys filed a motion for reconsideration with the Board on July 25, 2002, arguing that an English translation of the PCT '947 Application was not required. The motion for reconsideration ended its argument by asking: "If this request is denied, it is respectfully requested that the Board explain how Tamai is entitled to the benefit of the JP '371 application without the linking PCT application in the chain of priority."[8]

9.     The motion for reconsideration dealt solely with the issue of the failure to file an English translation of the PCT '947 Application. Plaintiffs paid a minimum of $4,000 in fees for the preparation and filing of the motion for reconsideration in October, 2002, more than four years before the effective limitations date.[9]

---

[8] Westerman Dec. paragraphs 7-8. *See* letter of July 12, 2002, from William F. Westerman to Mr. Kenji Itami, attached to the Westerman Dec. as exhibit A; Senior Party Tamai's Request for Reconsideration under 37 C.F.R L658(b) of June 25, 2002, Board Decision at 7, attached as Exhibit B to the Westerman Dec.; *Stevens v. Tamai,* 366 F.3d at 1329.

[9] Westerman Dec. paragraphs 9-14 and Exhibits C and D to that Declaration

10.    The Board issued a Decision on Request for Reconsideration in March, 2003, reaffirming its decision that Plaintiffs were required to file an English translation of the PCT '947 Application. The Board did not address Plaintiffs' request for an explanation of how they could be accorded the benefit of the JP '371 Application and declined to modify its opinion.[10]

12.    Stevens filed a Notice of Appeal of the Board's decision to the Federal Circuit on May 12, 2003.[11] That Notice of Appeal terminated the interference litigation before the Board.

13.    As the Federal Circuit noted, Plaintiffs and their Defendant's attorneys conceded on the appeal that without the PCT '947 Application they could not get the benefit of the earlier filed JP '371 Application. *Stevens v. Tamai*, 366 F.3d at 1331. Plaintiffs were thus on notice that they would lose the Federal Circuit Appeal if the Federal Circuit affirmed the Board's holding that an English translation of the PCT '947 Application was necessary.

14.    The Complaint alleges that in January, 2004, while the appeal was pending the Federal Circuit, attorney Westerman incorrectly advised Plaintiffs that even if they lost the pending appeal, Plaintiffs' application would be returned to the patent examiner with an opportunity to "add or amend claims." The Complaint alleges that Plaintiffs turned down settlement offers in January and July, 2004, as a result of that allegedly negligent advice.[12]

15.    On May 4, 2004, the Federal Circuit issued an opinion affirming the Board's holding that Plaintiffs lost the benefit of PCT '947 Application because of the failure to file an

---

[10] Westerman Dec., paragraph 15; *see* Decision on Request for Reconsideration mailed March 13, 2003, attached as Exhibit E to the Westerman Dec.
[11] Westerman Dec., paragraph 16; *see* Notice of Appeal, attached as Exhibit F to that Declaration.
[12] Complaint, paragraphs 25-27, 29.

English translation.  The Federal Circuit reversed the Board's ruling that <u>Plaintiffs</u> were entitled

to priority, holding that the unavailability of the PCT '947 Application broke the one-year chain

required by 35 U.S.C. 119(a).  *Stevens v. Tamai, supra.*

16.    The Complaint alleged that in December, 2006, Westerman admitted that he had

been mistaken in believing that Plaintiffs' Application would be returned to the examiner.

Instead, the Federal Circuit's decision meant that "no further action is needed," and "a notice of

abandonment should be issued."[13]

17.    William Westerman, John Kong, and Ed Kenehan (among other attorneys) were

formerly attorneys with predecessor firms to Kratz, Quintos & Hanson, LLP. *See* Declaration of

Donald Hanson, attached as Exhibit 1 to Kratz Defendants' Motion to Dismiss, ¶ 3.  On October

1, 2003, Westerman, Kong and Kenehan severed their former professional association and

formed the firm of Westerman, Hattori, Daniels and Adrian, LLP (collectively "Westerman

Defendants").  *Id.* at ¶ 3.  When the Westerman Defendants began their new firm, Plaintiffs

decided to maintain their attorney-client relationship with the Westerman Defendants. *Id.* at ¶ 3.

After October 1, 2003, Plaintiffs no longer utilized the professional services of, nor maintained

an attorney-client relationship with, Kratz, Quintos & Hanson, LLP (or any of its predecessor

firms). *Id.* at ¶ 3.

_____/s/_____

Paul J. Maloney, #362533
Michael J. Sepanik, #471594
1615 L Street, N.W., Suite 500
Washington, D.C.  20036
(202) 310-5500 (telephone)
(202) 310-5555 (facsimile)

---

[13] Complaint, paragraph 30.

# EXHIBIT 1
# TO KRATZ
# DEFENDANTS'
# STATEMENT OF
# UNDISPUTED
# MATERIAL FACTS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SEED COMPANY, LTD., et al,

Plaintiffs

v.

WILLIAM F. WESTERMAN, et al.

Defendants.

Civil No. 1:08-cv-00355 (RMU)

## DECLARATION OF WILLIAM F. WESTERMAN

I, William F. Westerman, declare as follows:

1.      I am over 18 years of age and competent to testify about the matters in this
Declaration from personal knowledge.

2.      I am an attorney licensed to practice in the District of Columbia since 1982 and
Oklahoma since 1979.  I am registered to practice patent law before the United States Patent and
Trademark Office.

3.      While associated with different law firms over the years, I represented Plaintiffs
Seed Company Limited and Shigeru Tamai in the filing of the United States patent applications
described in the Complaint.  I represented Plaintiffs in the interference proceeding referenced in
the Complaint, which was litigated before the Board of Patent Appeals and Interferences ("the
Board") of the United States Patent and Trademark Office between 1997 and 2003.  I also
represented Plaintiffs in the appeal, referenced in the Complaint, of the Board's ruling to the
Federal Circuit.

4.    During the litigation of the interference proceeding, my firm filed a motion to
have Plaintiffs accorded the benefit of their July 31, 1991 Japanese Patent Application, JP '371,
and the July 24, 1992 PCT '947 Application. We filed an English translation of the JP '371
application. However, we did not file an English translation of the PCT '947 Application. We
believed that an English translation of the PCT '947 Application was unnecessary, because an
English translation had been included in the '183 Application and had been accepted by the
Patent Office. Stevens and the Board had full access to that translation. To this day, I believe
that the Board and Federal Circuit's rulings with respect to the translation issue were wrongly
decided, and elevate form over substance.

5.    Stevens argued during the interference litigation that the failure to file an English
translation for the PCT '947 Application meant that Plaintiffs had not met their burden of proof,
and should not get the benefit of its 1992 filing date. On June 25, 2002, the Board issued an
opinion agreeing that the failure to file an English translation meant that Plaintiffs were not
entitled to the benefit of the PCT '947 Application. However, the Board ruled that Plaintiffs
were entitled to the filing date for their 1991 Japanese patent application, and held that Plaintiffs
were entitled to priority over the Stevens claims.

6.    We were concerned that the Board's decision refusing to grant Plaintiffs the
benefit of the PCT '947 Application would break the chain of Plaintiff's patent priority. 35
U.S.C. 119(a) provides:

> An application for patent for an invention filed in this country by any person
> who has . . . filed an application for a patent for the same invention is a foreign
> country . . . shall have the same effect as the same application would have if filed

- 2 -

in this country on the date on which the application for patent . . . was first filed in

such foreign country, if the application in this country is filed within twelve

months from the earliest date on which such foreign application was filed . . . .

Plaintiffs filed the '183 Application more than one year after the JP '371 Application. Thus,

losing the benefit of the PCT '947 Application broke the required one-year chain.

7.    In a July 12, 2002, letter to Kenji Itami, a Japanese patent lawyer who was our

primary contact with Plaintiffs, we advised that "the board denied priority for the PCT

application. The risk is that . . . that could potentially break the chain of priority between the **JP**

**'371** and the **US '183** applications. . . . Thus, we strongly recommend filing a Request for

Reconsideration on this point." In that letter, we estimated that filing a motion for

reconsideration would cost between $10-15,000.[1]

8.    Plaintiffs authorized the filing a motion for reconsideration. We filed that motion

with the Board on July 25, 2002, arguing that an English translation of the PCT '947 application

was not required. The motion for reconsideration ended its argument by asking: "If this request

is denied, it is respectfully requested that the Board explain how Tamai is entitled to the benefit

of the JP '371 application without the linking PCT application in the chain of priority."[2]

9.    The motion for reconsideration dealt solely with the issue of the failure to file an

English translation of the PCT '947 Application. It would not have been necessary to file that

---

[1]Letter of July 12, 2002, from William F. Westerman to Mr. Kenji Itami, attached to this Declaration as Exhibit A.

[2]Senior Party Tamai's Request for Reconsideration Under 37 C.F.R. 1.658(b) of June 25, 2002 Board Decision at 7, attached as Exhibit B to this Declaration.

motion for reconsideration except for the issue of our failure to file an English translation of the PCT '947 Application.

10.    Attached as Exhibit C to this Declaration is my then firm's Debit Note number 02-07-179. That Debit Note was for services rendered to Plaintiffs between July 5, 2002 and July 31, 2002. The total attorneys' fees billed for that period was $11,392.50. We provided the Riggs National Bank account number at the top of the Debit Note to provide the client with wire transfer instructions for payment.

11.    The second page of Attachment C is the backup detail for Debit Note 02-07-179. The backup reflects attorneys' fees billed for the preparation and filing of the motion for reconsideration to the Board. Specific time entries for preparation of the motion for reconsideration include John Kong's time entries for July 10, July 22, July 23, and July 24, and my time entries for July 23 and July 24. These time entries make it clear that we billed Plaintiffs a minimum of over $4,000 for time devoted solely to the preparation of the motion for reconsideration. Indeed, all of the time entries on the second page of Attachment C reflect work related to that motion.

12.    I am personally familiar with the documentation my firm created and maintained for billing purposes. Attachment C is a record of attorneys' fees incurred and billed made at or near the time of the entries from persons with knowledge of the hours worked. Our firm kept those billing records in the course of its regularly conducted business activity, and it was the regular practice of that business activity to make and record such time entries and bills. It was our regular practice to send such bills to clients on a periodic basis, and the first page of Debit Note 02-07-179 reflects that the bill and billing entry backup were sent to our contact for

-  4  -

Plaintiffs for payment.

13.    Attachment D to this Declaration is an Electronic Payment Advice from Riggs

Bank, indicating that in October, 2002, our firm received by wire transfer from Plaintiffs

payment for various invoices, including Debit Note 02-07-179. Thus, Plaintiffs began paying

thousands of dollars in attorneys' fees as a result of our failure to file an English translation of

the PCT '947 Application at least as early as October, 2002.

14.    Attachment D is a record of payments received made at or near the time of the

entries. Our firm received and kept such records of payment from Riggs National Bank in the

course of its regularly conducted business activity, and it was the regular practice of that business

activity to make and record records of banking transactions with Riggs. In addition, if Plaintiffs

had not paid their bills in 2002, I would have been advised of such a failure to pay by our firm's

accounting department in the regular course of our business activity, and I do not recall being so

advised.

15.    The Board issued a Decision on Request for Reconsideration in March, 2003,

reaffirming its ruling that Plaintiffs were required to file an English translation of the PCT '947

Application. The Board did not address Plaintiff's request for an explanation of how they could

be accorded the benefit of the JP '371 Application, and declined to modify its opinion.[3]

16.    Stevens filed a Notice of Appeal of the Board's decision to the Federal Circuit on

May 12, 2003.[4] That Notice of Appeal terminated the interference litigation before the Board.

---

[3]Decision on Request for Reconsideration, mailed March 13, 2003, attached as Exhibit E
to this Declaration.

[4]Notice of Appeal, attached as Exhibit F to this Declaration.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on
March 20, 2008.

William F. Westerman

# Exhibit
# A

LAW OFFICES

# ARMSTRONG, WESTERMAN & HATTORI, LLP

SUITE 1000
1725 K STREET, N.W.
WASHINGTON, D.C. 20006

(202) 659-2930
FACSIMILE (202) 887-0357
FACSIMILE (202) 331-7519
FACSIMILE (202) 887-5155
VIDEO (202) 728-6844
www.armstrongpat.com

JAMES E. ARMSTRONG, III
WILLIAM F. WESTERMAN
KEN-ICHI HATTORI
WILLIAM G. KRATZ, JR.*
MEL R. QUINTOS
DONALD W. HANSON
STEPHEN G. ADRIAN
SCOTT M. DANIELS
WILLIAM L. BROOKS
THOMAS J. MACPEAK
JOHN F. CARNEY
JOHN P. KONG

JAMES E. ARMSTRONG, IV
SADAO KINASHI
THOMAS E. BROWN*
MICHAEL J. CARIDI
MICHAEL S. ALPRIN*
JOSEPH L. FELBER
KENNETH H. SALEN*
MICHAEL N. LAU
GEORGE N. STEVENS*
*Practice limited to matters and proceedings
before federal courts and agencies

TOKYO LIAISON OFFICE
6TH FL., DIAMOND PLAZA BLDG.
25 ICHIBANCHO, CHIYODA-KU
TOKYO 102, JAPAN
TEL. (03) 3234-8429
FACSIMILE (03) 3234-5643

PITTSBURGH OFFICE
THE LAW & FINANCE BUILDING
SUITE 707, 429 FOURTH AVENUE
PITTSBURGH, PENNSYLVANIA 15219
TEL. (412) 281-2931
FACSIMILE (412) 281-1821

BALTIMORE OFFICE
502 WASHINGTON AVENUE, SUITE 220
TOWSON, MARYLAND 21204
TEL. (410) 337-2295
FACSIMILE (410) 337-2296

SENIOR COUNSEL
LEONARD BLOOM

OF COUNSEL
RONALD F. NAUGHTON*
EDWARD F. WELSH*
NICOLAS E. SECKEL*
NICHOLAS S. BROMER*
EDWARD F. KENEHAN, JR.

JAPANESE BENRISHI
SHUJI YOSHIZAKI
YASUHISA KUROSE

PATENT AGENTS
JAMES N. BAKER
DANIEL A. GESELOWITZ, Ph.D.

July 12, 2002

** VIA FACSIMILE **

Mr. Kenji Itami
ITAMI PATENT OFFICE
Daisan Bldg.
2-4, 3-Chome, Nishitenma
Kita-ku, Osaka 530
JAPAN

CONFIRMATION

Re:   Interference No. 103,662
      U.S. Serial No.: 08/196,839
      By: TAMAI, Shigeru
      Your Ref: P123/SE.90
      Our Ref: P1151-2717-A940094I

Dear Itami san:

Thank you for your facsimile letter of today. After reviewing the Board's decision in this case, we estimate that it will take approximately $10,000 to $15,000 to prepare and file an appropriate Request for Reconsideration.

Since, for some reason, the Board denied priority for the PCT application. The risk is that, if Stevens files a Request for Reconsideration and prevails at the Board, then that could potentially break the chain of priority between the JP '371 and the US '183 applications. While that may not happen, we believe that it is a risk and it is very important to address that risk at this time. Thus, we strongly recommend filing a Request for Reconsideration on this point.

Mr. Kenji Itami
July 12, 2002
Page 2

Also of note, is that, if **Stevens** files a Request for Reconsideration, then we have the opportunity to file an Opposition to his Request for Reconsideration. We have 14 days after the service of **Stevens'** Request for Reconsideration to file our Opposition. The cost to file such an Opposition would be in addition to the cost quoted above. However, we would expect to review **Stevens'** Request for Reconsideration before we can estimate how much such an Opposition would cost.

Of course, it is possible that **Stevens** may not file a Request for Reconsideration.

For your information, it is also possible that, after a final determination by the Board, a dissatisfied party may appeal the Board's decision to the Court of Appeals for the Federal Circuit. Although, we are not yet at that stage, we do not expect that **Stevens** will pursue this matter that far.

We look forward to your further instructions.

With best regards,

Very truly yours,

ARMSTRONG, WESTERMAN & HATTORI, LLP

William F. Westerman

WFW/klh

# Exhibit
# B

UNITED STATES PATENT AND TRADEMARK OFFICE

---

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

---

CHRISTOPHER J. STEVENS,
Junior Party
(P.N. 5,393,368)

v.

SHIGERU TAMAI
Senior Party
(S.N. 08/186,839)

---

Patent Interference No. 103,662

---

SENIOR PARTY TAMAI'S
REQUEST FOR RECONSIDERATION UNDER 37 C.F.R. § 1.658(b)
OF JUNE 25, 2002 BOARD DECISION

Date: July 25, 2002

---

ROBERT TAM

Administrative Patent Judges

Murriel E. Crawford
Sally Gardner-Lane
Sally C. Medley

RECEIVED
JUL 25 PM 4: 03
BOARD OF PATENT APPEALS
INTERFERENCES

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................... 1

II.     APPLICATION OF 37 CFR § 1.639(a) ................................................. 3

III.    STEVENS NEVER DISPUTED THE SUBSTANTIVE CORRESPONDENCE
        BETWEEN TAMAI'S '183 AND PCT APPLICATIONS ................................ 5

IV.     STEVENS HAD ACCESS TO THE PCT APPLICATION AND TRANSLATION ........ 6

V.      FIGURE 1 SUPPORTS CONSTRUCTIVE REDUCTION TO PRACTICE FOR
        BOTH THE '183 AND PCT APPLICATIONS ........................................... 6

# TABLE OF AUTHORITIES

### Statutes

35 USC §371 ...................................................................................................... 4, 5

### Regulations

37 CFR §1.494 ...................................................................................................... 4, 5

37 CFR §1.612(a) ................................................................................................. passim

37 CFR §1.633(f) ................................................................................................. passim

37 CFR §1.639(a) ................................................................................................ passim

ii

I.    **INTRODUCTION**

Senior party Tamai hereby requests reconsideration of the Board's decision mailed June 25, 2002 (hereinafter, the Decision). The Decision granted judgment in favor of Tamai, but denied Tamai's motion under 37 CFR §1.633(f) to be accorded the benefit of the filing date of its PCT application no. PCT/JP92/00947 (PCT application). Reconsideration of the Board's decision regarding Tamai's PCT application is respectfully requested, in view of the following reasons:

1.    Authorized representatives of the U.S. Patent and Trademark Office already determined that a translation of Tamai's PCT application was present in the '183 file wrapper, and 37 CFR §1.639(a) obviated the need for Tamai's 1.633(f) motion to include another copy of documents already in the file wrappers of record;

2.    Stevens has not and cannot identify any material discrepancies between the subject matter of the '183 application and the PCT application;

3.    Stevens had access to and the opportunity to examine the PCT application and translation pursuant to 37 CFR §1.612(a); and

4.    the Board's Decision finding constructive reduction to practice in Figure 1 of the '183 application essentially necessitates the same finding for the PCT application having the identical drawing.

The following table summarizes the points believed to be misapprehended or overlooked in the Decision.

| Board's Statements in the Decision | Points Misapprehended or Overlooked |
|---|---|
| "At the time this interference was declared, Tamai was accorded the benefit of U.S. Serial No. 08/030,183 (" '183 application") which was filed March 29, 1993 and was accorded senior party status on that basis." (Decision, page 2). | Therefore, Stevens had access to Tamai's PCT application and translation in the '183 application file wrapper pursuant to 37 CFR §1.612(a). Pursuant to 37 CFR §1.639(a), there is no need to serve additional copies of the PCT document and translation with Tamai's 1.633(f) motion. |
| "The PCT application is part of the file wrapper of the '183 application and JP '371 is part of the file wrapper for the involved Tamai application and the '183 application." (Decision, page 20). | Same as above. See, 37 CFR §§ 1.612(a) and 1.639(a). |
| "It is true that Tamai did not file a copy of the JP '371 and PCT applications, or a translation of the PCT application with the motion." (Decision, page 21). | Yes, but Stevens already had access to these documents in the '183 file wrapper and Tamai need not submit additional copies with the motion. See, 37 CFR §§ 1.612(a) and 1.639(a). |
| "In addition, copies of both applications are a part of the file wrapper of the '183 application and a translation of the JP '371 is part of the file wrapper for the involved application." (Decision, page 21). | Therefore, Stevens had access to Tamai's PCT application and translation in the '183 application file wrapper pursuant to 37 CFR §1.612(a). Pursuant to 37 CFR §1.639(a), there is no need to serve additional copies of the PCT document and translation with Tamai's 1.633(f) motion. |
| "As such, Stevens did have access to the copies and translations of the JP '371 at the time of the motion." (Decision, page 21). | Stevens also had access to copies and translations of Tamai's PCT application at the time of Tamai's motion. See, 37 CFR §§ 1.612(a) and 1.639(a), as well as paper no. 10 in the present interference pleadings (Stevens' Request for Access and Power to Inspect Tamai's '183 application, filed June 4, 1997 - copy attached in Appendix 1). |
| "Therefore, Tamai's failure to submit copies of the JP '371 application and its translation did not prejudice Stevens." (Decision, page 21). | Stevens was also not prejudiced regarding the PCT application and translation. See, 37 CFR §§ 1.612(a) and 1.639(a). |

| Board's Statements in the Decision | Points Misapprehended or Overlooked |
|---|---|
| "However, Tamai did not supply a translation of the PCT application, nor does it appear that Stevens was in possession of the application or the translation," (Decision, page 22). | Stevens had access to copies and translations of Tamai's PCT application at the time of Tamai's motion. *See*, 37 CFR §§ 1.612(a) and 1.639(a), as well as paper no. 10 in the present interference pleadings (Stevens' Request for Access and Power to Inspect Tamai's '183 application, filed June 4, 1997 - copy attached in Appendix I). |
| "Stevens was not given the opportunity to examine the disclosures and translations for themselves." (Decision, page 22). | Stevens had access to and the opportunity to examine the PCT disclosures and translations for themselves, pursuant to 37 CFR § 1.612(a). *See also*, paper no. 10 in the present interference pleadings (Stevens' Request for Access and Power to Inspect Tamai's '183 application, filed June 4, 1997 - copy attached in Appendix 1). Furthermore, Stevens never averred lack of access, so Tamai never had the opportunity to challenge such a position. |
| "Therefore, we will not grant the motion as it is directed to the PCT application" (Decision, page 22). | Denial of Tamai's 1.633(f) motion regarding the PCT application was based upon points which were misapprehended or overlooked. |

## II.   APPLICATION OF 37 CFR § 1.639(a)

Benefit to Tamai's PCT application was denied primarily because a translation of that document was not served with Tamai's motion. Reconsideration of this decision is respectfully requested in view of 37 CFR §1.639(a).

For evidence in support of a motion, opposition, or reply, 37 CFR §1.639(a) requires that "proof of any material fact alleged in a motion, opposition, or reply must be filed and served with the motion, opposition, or reply <u>unless the proof relied upon is part of the interference file</u>

or the file of any patent or application involved in the interference or any earlier application filed in the U.S. of which a party has been accorded or seeks to be accorded benefit."

Application of §1.639(a) obviated the need for Tamai to include another copy of the PCT application or its translation with its 1.633(f) motion. The PCT application document and its translation are already a part of the file wrapper for Tamai's U.S. patent application serial no. 08/030,183 ('183 application). Another copy need not be served with Tamai's motion. Tamai's motion should not be denied for failing to provide extra copies of the documents already part of the file wrappers of record.

The only issue is whether a "translation" was provided. In this regard, Tamai provided the requisite translation of its PCT application upon the filing of its '183 application. More importantly, the U.S. Patent and Trademark Office identified and accepted the '183 application as a translation of Tamai's foreign language PCT application.

To comply with U.S. national stage entry requirements under 35 USC §371 and 37 CFR §1.494, a translation of a foreign language PCT application must be provided. Compliance with these requirements are checked by the authorized officers of the U.S. Patent and Trademark Office before issuance of a Notification of Acceptance of Application under 35 USC §371 and 37 CFR §1.494.

In entering the U.S. national stage, Tamai submitted a translation of the PCT application into English, as specifically identified by Tamai in the Transmittal Form PTO-1390 for the '183 application (paper no. 1 in the '183 file wrapper, copy attached in Appendix 2). Following established procedures, an authorized officer of the U.S. Patent and Trademark Office completed a checklist identifying the satisfaction of the requirement for a translation for the description, claims, and abstract of the foreign language PCT application, and then issued the Notification of

4

Acceptance of Application under 35 USC §371 and 37 CFR §1.494 on June 3, 1993 (paper no. 3 in the '183 file wrapper, Tab 12 in Record for Senior Party Tamai, copy attached in Appendix 3). Therefore, authorized representatives of the U.S. Patent and Trademark Office already identified the presence of an accepted translation of Tamai's PCT application, as part of the '183 file wrapper.

Another copy of the translation need not be submitted as part of Tamai's 1.633(f) motion, pursuant to the provisions of 37 CFR § 1.639(a). Tamai's motion to be accorded the benefit of its PCT application cannot be denied for failing to provide another copy of a translation that authorized officers of the U.S. Patent and Trademark Office already deemed to be present in the '183 file wrapper. Stevens was not prejudiced and Tamai should not be penalized.

III.     **STEVENS NEVER DISPUTED THE SUBSTANTIVE CORRESPONDENCE BETWEEN TAMAI'S '183 AND PCT APPLICATIONS**

Stevens never identified any discrepancies between any foreign language document(s) and any translation(s). As the Decision points out, Stevens was in possession of a translation of Tamai's Japanese Patent Application No. 3-68371 (JP '371) and, in fact, analyzed the subject matter disclosed in the JP '371 application in its opposition with reference to the translation of JP '371 (Decision, page 21). Even with a copy of the translation for JP '371, Stevens never disputed the accuracy of the translation. Stevens never averred that the party had *not* considered the translation.

The same can be said about a translation of the PCT application. As mentioned above, 37 CFR §1.639(a) imputes to Stevens access and possession of documents and translations present in the file wrapper of Tamai's '183 application and Tamai's application no. 08/196,839 involved in the present interference. Stevens never challenged the substantive correspondence between

5

the PCT application and the '183 application. Stevens never averred that the '183 application was *not* an accurate translation of the PCT application. Stevens never averred that the party had *not* considered the '183 application to be an accurate translation of the PCT application. Stevens never averred the party had *not* obtained or reviewed an accurate translation of the PCT application. Stevens has not and cannot aver that Figure 1 of the PCT application is different from Figure 1 of the '183 application.

## IV.    STEVENS HAD ACCESS TO THE PCT APPLICATION AND TRANSLATION

The Decision denied Tamai's motion for benefit to the PCT application because "Stevens was not given the opportunity to examine the [PCT] disclosure and translations for themselves." (Decision, page 22). This is incorrect. Stevens had access to and was given the opportunity to examine the PCT application and translation pursuant to 37 CFR §1.612(a). In fact, Stevens specifically requested access to Tamai's '183 application (containing both the PCT application and its translation) in Stevens' Request for Access and Power to Inspect dated June 4, 1997 (paper no. 10 in the interference pleadings, copy attached in Appendix 1). By addressing the '183 application, Stevens, in fact, addresses the translation of the PCT application.

## V.    FIGURE 1 SUPPORTS CONSTRUCTIVE REDUCTION TO PRACTICE FOR BOTH THE '183 AND PCT APPLICATIONS

Even assuming, *arguendo*, that Stevens did not have a translation of Tamai's PCT application, no prejudice exists to Stevens because all substantive issues were readily resolved by simply referring to the embodiment shown in Figure 1 of Tamai's PCT application (present in the file wrapper of the '183 application). For instance, to resolve constructive reduction to

practice issues related to Tamai's Japanese Patent Application No. 3-68371 (JP '371), the Decision stated:

> We note that Figure 1 of the JP '371 application and Figure 1 of the '183 application are identical. And *from this figure*, it is *clear* that the '183 device *includes the elements of the count.* (Decision, page 22).

The Decision also pointed out that "[a] benefit application need only describe a single enabled embodiment within the scope of the count to constitute a constructive reduction to practice of the invention of the count." (Decision, page 14). Neither Stevens nor the Board disputes the fact that the drawings of Tamai's PCT application are exactly identical to the drawings of Tamai's JP '371 and '183 applications. By finding that single enabled embodiment and constructive reduction to practice in Figure 1 of Tamai's JP '371 and '183 applications, the Board's Decision essentially necessitates the same finding for Tamai's PCT application.

To be consistent with the Board's Decision granting Tamai the benefit of the '183 and JP '371 applications, Tamai respectfully requests reconsideration and grant of Tamai's motion to be accorded the benefit of its PCT application. Otherwise, if this request is denied, it is respectfully requested that the Board explain how Tamai is entitled to the benefit of the JP '371 application without the linking PCT application in the chain of priority. A proposed modification of the Board's Decision is attached in Appendix 4.

Respectfully submitted,

ARMSTRONG, WESTERMAN & HATTORI, LLP

William F. Westerman
Reg. No. 29,988

JPK
Atty. Docket No. 940094I
1725 K Street, N.W., Suite 1000
Washington, D.C. 20006
Tel. (202) 659-2930
Fax: (202) 887-0357

23850
PATENT TRADEMARK OFFICE

H:\HOME\JPK\Special Prosecution\940094i\Request for Reconsideration

8

## CERTIFICATE OF SERVICE

It is hereby certified that a copy of the REQUEST FOR RECONSIDERATION UNDER

37 C.F.R § 1.658(b) OF JUNE 25, 2002 BOARD DECISION by the Senior Party TAMAI has been

mailed by Federal Express courier, postage pre-paid, this July 25, 2002, to the attorney for the party

STEVENS at the below-listed address:

Charles P. Boukus, Jr., Esq.
Suite 202
2001 Jefferson Davis Highway
Arlington, Virginia 22202

Kristin A. Linn

Tab 1

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

In re Patent Application of )
)
Shigeru Tamai )        Attention:
)
Application No. 08/030,183 )        Andrew H. Metz
)
Filed: March 29, 1993 )        Interference No. 103,662
)
For: [UNKNOWN] )

Honorable Commissioner of
    Patents and Trademarks
Washington, D. C. 20231

Dear Sir:

### REQUEST FOR ACCESS AND POWER TO INSPECT

The undersigned, Charles P. Boukus, Jr., attorney for
the party Stevens in Interference No. 103,662, hereby requests
access to the prosecution file of the above-identified application
for purposes of inspection and copying of the file. Application
No. 08/030,183, filed March 29, 1993, is identified in the Notice
of Interference No. 103,662 dated May 9, 1997.

Respectfully submitted,

Charles P. Boukus, Jr.
Registration No. 24,754
Suite 202
2001 Jefferson Davis Highway
Arlington, Virginia 22202

Telephone:  (703) 415-2620
Facsimile:  (703) 415-2622

June 4, 1997

1

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing

REQUEST FOR ACCESS AND POWER TO INSPECT

was served by first class mail, postage prepaid, on attorney for party Tamai, William F. Westerman, Armstrong, Westerman, Hattori, McLeland & Naughton, Suite 1000, 1725 K Street, N.W., Washington, D. C. 20006 on June _4_, 1997.

Charles P. Boukus, Jr.
Registration No. 24,754

2

Tab 2



012030183

38 Rec'd PCT/PTO  2 9 MAR '93

| Form PTO-1390 | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTORNEY'S DOCKET NUMBER 930203 |
|---|---|---|
| TRANSMITTAL LETTER TO THE UNITED STATES DESIGNATED/ELECTED OFFICE (DO/EO/US) | | DATE: March 29, 1993 |

| INTERNATIONAL APPLICATION NO. PCT/JP92/00947 | INTERNATIONAL FILING DATE July 24, 1992 | PRIORITY DATE CLAIMED July 31, 1991 |
|---|---|---|

TITLE OF INVENTION
COATING FILM TRANSFER TOOL

APPLICANT(S) FOR DO/EO/US
Shigeru TAMAI

Applicant herewith submits to the United States Designated/Elected Office (DO/EO/US) the following items under 35 U.S.C. 371:
1. [xx] This express request to immediately begin national examination procedures (35 U.S.C. 371(f)),
2. [xx] The U.S. National Fee (35 U.S.C. 371(c)(1)); and/or [xx] other fees as follows:

| CLAIMS | (1) FOR | (2) NUMBER FILED | (3) NUMBER EXTRA | (4) RATE | (5) CALCULATIONS |
|---|---|---|---|---|---|
| | TOTAL CLAIMS | 1    -20= | 0 | x$ 22.00 | $    0 |
| | INDEPENDENT CLAIMS | 1    -3= | 0 | x$ 74.00 | 0 |
| | MULTIPLE DEPENDENT CLAIMS(S) (if applicable) | | | +$230.00 | 0 |

BASIC NATIONAL FEE (37 CFR 1.492(A)(1)-(4)):

[ ] International preliminary examination fee paid to USPTO (37 CFR 1.482)
...................................................................$640
[ ] No international prelim. examination fee paid to USPTO (37 CFR 1.482)
but international search fee paid to USPTO (37 CFR 1.445 (a)(2))
...................................................................$710
[ ] Neither international preliminary examination fee nor
international search fee (37 CFR 1.445(a)(2)) paid to USPTO........$950
[ ] International preliminary examination fee paid to USPTO (37 CFR 1.482)
and all claims satisfied provisions of PCT Article 33(2) to (4).....$ 90
[xx] For filing with JPO search report (37 CFR 1.492(e)(5))
...................................................................$830       830.00

| Surcharge of $130. for furnishing the National fee or oath or declaration later than [ ] 20 [ ] 30 mos. from the earliest claimed priority date (37 CFR 1.482(3)). | 0 |
|---|---|
| TOTAL OF ABOVE CALCULATIONS | ≈    830.00 |
| Reduction by 1/2 for filing by small entity, if applicable. Affidavit must be filed also. (Note 37 CFR 1.9, 1.27, 1.28) | 415.00 |
| SUBTOTAL | ≈    415.00 |
| Processing fee of $130. for furnishing the English Translation later than [ ] 20 [ ] 30 mos. from the earliest claimed priority date (37 CFR 1.482(f) | 0 |
| TOTAL NATIONAL FEE | ≈    415.00 |
| Fee for recording the enclosed assignment (37 CFR 1.21(h)). | +    40.00 |
| TOTAL FEES ENCLOSED | $    455.00 |

a. [xx] A check in the amount of $   455.00   to cover the above fees is enclosed.
b. [ ] Please charge my Deposit Account No.  01-2340  in the amount of $_____ to cover the above fees. A duplicate copy of this sheet is enclosed.
c. [xx] The Commissioner is hereby authorized to charge any additional fees which may be required, or credit any overpayment to Deposit Account No.  01-2340.  A duplicate copy of this sheet is enclosed.

DATE: March 29, 1993

| | Attorney's Docket Number |
|---|---|
| | 930203 |

3. A copy of the International Application as filed (35 U.S.C. 371(c)(2))
   a. [ ] is transmitted herewith (required only if not transmitted by the International Bureau).
   b. [ ] is not required, as the application was filed in the United States Receiving Office (RO/US).
   c. [xx] has been transmitted by the International Bureau.
4. [xx] A translation of the International Application into English (35 U.S.C. 371 (c)(2)).
5. Amendments to the claims of the International Application under PCT Article 19 (35 U.S.C. 371 (c)(3))
   a. [ ] are transmitted herewith (required only if not transmitted by the International Bureau).
   b. [ ] have been transmitted by the International Bureau.
6. [xx] An oath or declaration of the inventor (35 U.S.C. 371(c)(4)).
7. [ ] A translation of the Annexes to the International Preliminary Examination Report under PCT Article
   36(35 U.S.C. 371(c)(5)).

Other document(s) or information included:
8. [xx] International Search Report
9. [ ] An Information Disclosure Statement under 37 CFR 1.97 and 1.98.
10. [xx] An assignment document for recording.
    Please mail the recorded assignment document to:
    a. [xx] the person whose signature, name & address appears at the bottom of this page.
    b. [ ] the following:

11. The above checked items are being transmitted
    a. [ ] before the 18th month publication.
    b. [xx] after publication and the Article 20 communication but before 20 months from the priority date.
    c. [ ] after 20 months but before 22 months (surcharge and/or processing fee included).
    d. [ ] after 22 months (surcharge and/or processing fee included).
       Note: Petition to revive (37 CFR 1.137(a) or (b) is necessary if 35 U.S.C. 371 requirements
       submitted after 22 months and no proper demand for International Preliminary Examination was
       made by 19 months from the earliest claimed priority date.
    e. [ ] by 30 months and a proper demand for International Preliminary Examination was made by the 19th
       month from the earliest claimed priority date.
    f. [ ] after 30 months but before 32 months and a proper demand for International Preliminary Examina-
       tion was made by the 19th month from the earliest claimed priority date (surcharge and/or
       processing fee included).
    g. [ ] after 32 months (surcharge and/or processing fee included).
       Note: Petition to revive (37 CFR 1.137(a) or (b) is necessary if 35 U.S.C. 371 requirements
       submitted after 32 months and a proper demand for International Preliminary Examination was
       made by 19 months from the earliest claimed priority date.
12. At the time of transmittal, the time limit for amending claims under Article 19
    a. [ ] has expired and no amendments were made.
    b. [xx] has not yet expired.
13. [ ] Certain requirements under 35 U.S.C. 371 were previously submitted by the applicant on
    _____, namely:
        date
14. ___5___ Sheets of Formal Drawings

15. XX Small Entity Declaration


Armstrong, Westerman, Hattori, McLeland & Naughton
NAME

Suite 1000 - 1725 K Street, N.W.
ADDRESS

Washington, D.C. 20006

Telephone No. (202) 659-2930

SIGNATURE   Albert Tockman          19,722
            Albert Tockman          REGISTRATION NUMBER

Tab 3

#3

| ARMSTRONG, WESTERMAN, HATTORI, MCLELAND & NAUGHTON 1725 K. STREET, N.W. SUITE 1000 WASHINGTON, D.C. 20006 | UNITED STATES DESIGNATED/ELECTED OFFICE (DO/EO/US) NOTIFICATION OF ACCEPTANCE OF APPLICATION UNDER 35 U.S.C. 371 AND 37 CFR 1.494 OR 1.495 |
|---|---|
| | Date of Mailing: **0 3 JUN 1993** |
| | File Reference: 930203 |

## IDENTIFICATION OF THE INTERNATIONAL APPLICATION

| International Application Number | International filing date | Priority date claimed |
|---|---|---|
| PCT/EP92/00947 | 24 JUL 92 | 31 JUL 91 |

Applicant for DO/EO/US

TAMAI, SHIGERU

## NOTIFICATION

The applicant is hereby advised that the United States Patent and Trademark Office in its capacity as a [✓] Designated Office, [ ] Elected Office, has determined that the above identified international application has met the requirements of 35 U.S.C. 371 and 37 CFR [✓] 1.494,

[ ] 1.495 and is ACCEPTED for national patentability examination in the United States Patent and Trademark Office.

The United States Serial Number assigned to the application and the relevant dates are:

| 08/030,183 | 29 Mar 93 | 29 Mar 93 |
|---|---|---|
| US NATIONAL SERIAL NO. | 35 U.S.C. 102(e) DATE | DATE OF RECEIPT 35 U.S.C. 371 REQUIREMENTS |

[✓] A request for immediate examination under 35 U.S.C. 371 (f) was received on
29 Mar 93 and the application will be examined in turn.

[ ] No request for immediate examination under 35 U.S.C. 371(f) was received. The application will not be processed or examined before the time limit set forth in either
[ ] PCT Article 23 (Chapter I of the PCT) or [ ] PCT Article 40 (Chapter II of the PCT) whichever is applicable.

## UNITED STATES DESIGNATED/ELECTED OFFICE

| ADDRESS ONLY: COMMISSIONER OF PATENTS AND TRADEMARKS Box PCT, Attn: DO/EO/US Washington, D.C. 20231 | AUTHORIZED OFFICER: Allen Salyards |
|---|---|

Form PCT/DO/EO/903 (U.S. Version) (April 1987)          U.S. DEPARTMENT OF COMMERCE - PTO

APPLICATION NO. 08 / 030, 183

| INTERNATIONAL APPLICATION NO. | PRIORITY DATE | | |
|---|---|---|---|
| PCT 6P92/ 00947 | July 31, '91 | | ☑ ☐ |

| INTERNATIONAL FILING DATE | FIRST NAMED APPLICANT FOR DO/EO/US | TOTAL # APPLICANTS 1 |
|---|---|---|
| July 24, '92 | Tama | |

**LANGUAGE OF FILED APPLICATION**
English

**ARTICLE 20 RECEIPTS**
NORMAL FROM IB ☑
FROM APPLICANT ☐

REQUEST - RO 101......... ☑ YES ☐ NO
DESCRIPTION.................. ☑ YES ☐ NO
CLAIMS............................. ☑ YES ☐ NO
DRAWINGS........................ ☑ YES ☐ NO
COPY OF SEARCH........... ☑ YES ☐ NO

NO DRAWINGS ON FILING ☐

TOTAL NO. OF PRIORITY DOCS. 1

**RECEIPTS FROM APPLICANT UNDER 35 U.S.C. 371**

COMPLETE AT ☑ 20 MO ☐ 30 MO.

NATIONAL FEE ............ ☑ YES ☐ NO
OATH / DECL ................ ☑ YES ☐ NO
TRANSLATION OF:
REQUEST..................... ☐ YES ☑ NO
DESCRIPTION............. ☑ YES ☐ NO
CLAIMS......................... ☑ YES ☐ NO
ABSTRACT.................... ☑ YES ☐ NO
WORDS IN DRAWING.. ☐ YES ☑ NO
ARTICLE 19 AMDT....... ☐ YES ☐ NO
                              ☐ Cancelled
                              ☑ None
ARTICLE 34 AMDT....... ☐ YES ☑ NO
                              ☐ Cancelled
                              ☑ None
ARTICLE 36(3) AMDT..... ☐ YES ☑ NO
                              ☐ Cancelled
                              ☑ None

COMPLETE AT ☐ 22 MO ☐ 32MO.

NATIONAL FEE ........... ☐ YES ☐ NO
                              ☐ Surcharge
OATH / DECL ............... ☐ YES ☐ NO
                              ☐ Surcharge
TRANSLATION OF: ☐ Processing fee
REQUEST..................... ☐ YES ☐ NO
DESCRIPTION............. ☐ YES ☐ NO
CLAIMS......................... ☐ YES ☐ NO
ABSTRACT.................... ☐ YES ☐ NO
WORDS IN DRAWING.. ☐ YES ☐ NO
ARTICLE 34 AMDT....... ☐ YES ☐ NO
                              ☐ Cancelled
                              ☐ None
ARTICLE 36(3) AMDT..... ☐ YES ☐ NO
                              ☐ Cancelled
                              ☐ None

**DATE OF RECEIPT OR MAILING:**
PCT/IB/302

PCT/IB/304

PCT/IB/310A

PCT/IB/310(PD) -PRIORITY DOC. COPY
20 May '93

PCT/IB/331 - US ELECTED
20 May '93

PCT/IPEA/409 - IPER RECEIVED

35 U.S.C. 371 - RECEIPT OF REQUEST
29 Mar. '93

DATE ASSIGNMENT RECEIVED
29 Mar. '93

DATE PRELIMINARY AMENDMENT RECEIVED

DATE DISCLOSURE STATEMENT RECEIVED

DATE DO/EO/ 905 MAILED

DATE 905 RESPONSE RECEIVED

DATE DO/EO/903 MAILED - ACCEPTANCE NOTICE

DATE DO/EO/909 MAILED - ABANDONMENT NOTICE

DATE 35 USC 371 REQUIREMENTS MET
29 Mar. '93

**PUBLICATION:**
PUBL. NO. WO 93/0 287c
PUBL. DATE Feb 18, 93
LANGUAGE Japanese
GAZETTE ISSUE

NOT PUBLISHED:
☐ US ONLY DO/EO
☐ AS OF EP REQUE

**REQUESTED DOCUMEN FROM IB THAT ARE NO IN THE FILE:** ☐ YES ☐
DATE REQUESTED

☐ PCT GAZETTE PAGE
☐ SEARCH REPORT
☐ OTHER _____

**INFORMALITIES NOTE**
☐ YES ☐ NO

☐ OATH / DECLARATION
☐ OTHER _____

**OTHER RECEIPTS FROM THE APPLICANT AND DATE RECEIVED:**
☐ PTOL-1449 DISCLOSURE DOC.
☑ ASSIGNMENT
☑ NEW CLAIMS FOR PRIORITY
☑ OTHER small entity

REMEMBER TO ATTACH THIS TO THE DO/EO ASSIGNMENT / CREDIT SHEET FOR CREDIT

Tab 4

Interference No. 103,662

## Tamai's PCT and JP applications

Tamai has moved for the benefit of earlier filed PCT and
Japanese applications.  Tamai has identified the applications as
Japanese Patent Application No. 3-68371 ("JP '371") and PCT
Application No. PCT/JP92/00947 ("PCT application").  The PCT
application is part of the file wrapper of the '183 application
and JP '371 is part of the file wrapper for the involved Tamai
application and the '183 application.  <u>A translation of the PCT</u>
<u>application was included in the '183 application in compliance</u>
<u>with 35 USC §371 and 37 CFR §1.494.</u>  Translation of the JP '371
application is part of the file wrapper of the involved Tamai
application.  A copy of the translation of the JP '371
application was attached with the motion.  Copies of
translations of these documents were served on Stevens with the
Reply to the Opposition to this motion.  <u>Nevertheless, pursuant</u>
<u>to 37 CFR §1.639(a), Tamai was not required to submit with the</u>
<u>motion copies of documents already present in the file wrappers</u>
<u>of record.</u>

The motion indicates that the written specification of the
JP '371 and the PCT application are substantially identical to
the specification of the '183 application and that the drawings
of the JP '371 application and the PCT application are exactly
identical to the drawings of the '183 application and that thus
Tamai is entitled to the benefit of the JP '371 and PCT

Interference No. 103,662

application for the same reasons that it is entitled to the

benefit of the '183 application.

Stevens has opposed this motion stating that (1) Tamai has

failed to submit a copy of the JP '371 and PCT application with

the motion, (2) Tamai has failed to make a showing that the JP

'371 and PCT application constitute a constructive reduction to

practice of the count and (3) no statement of material facts was

submitted by Tamai to support the motion.

It is true that Tamai did not file a copy of the JP '371

and PCT applications, or a translation of the PCT application

with this motion.  Tamai did file a translation of the JP '371

application with the motion.  In fact, Stevens analyzes the

subject matter disclosed in the JP '371 application in its

opposition with reference to the translation of the JP '371

application.  In addition, copies of both the JP '371 and PCT

applications and a translation of the PCT application are a part

of the file wrapper of the '183 application and a translation of

the JP '371 application is part of the file wrapper for the

involved application.  Stevens obtained access to the JP '371

and PCT applications and to the translation of the PCT

application by Stevens' Request (Paper No. 10 filed 6/4/97) for

the file history of the '183 application.  As such, Stevens did

have access to the copies and translations of the JP '371 and

PCT applications at the time of the motion.  Therefore, Tamai's

Interference No. 103,662

failure to submit copies of the JP '371 application and the PCT application and [its] the translation of the PCT application did not prejudice Stevens. [As such, in the interest of justice, we will consider the motion as it is directed to JP '371.]

[However, Tamai did not supply a translation of the PCT application, nor does it appear] Stevens never averred that Stevens was not in possession of the application or the translation. [Although Tamai alleges that the PCT application has the same disclosure as the JP '371 and submitted a declaration executed by Sadao Kinashi attesting to the fact that the disclosures of the PCT application and JP '371 are the same,] Stevens [was not given] had the opportunity to examine the disclosures and translations for themselves. [Therefore, we will not grant the motion as it is directed to the PCT application.]

In regard to Stevens' allegation that the motion failed to include a statement of material facts and to prove that the disclosure of the JP '371 and PCT applications [is] are a constructive reduction to practice of the count, we disagree. The motion clearly states that the drawings of the JP '371 and PCT applications are identical to the drawings of the 183' application. We note that Figure 1 of the JP '371 and PCT applications and Figure 1 of the '183 application are identical. And from this figure, it is clear that the '183 device includes

Interference No. 103,662

the elements of the count. Tamai also argues that the specifications of the JP '371 and PCT applications [is] are substantially identical to the specification of the '183 application. As such, in our view, Tamai did include in the motion a statement of material facts to prove that the disclosures of the JP '371 and PCT applications [is] are a constructive reduction to practice of the count.

Stevens also argues that the disclosures of the JP '371 and PCT applications [does] do not meet the requirements of 35 U.S.C. § 112, first paragraph, because in Steven's opinion, the disclosures [does] do not contain a written description of the invention of the count and [does] do not enable a person of ordinary skill in the art to make and use the invention of the count. Specifically, Stevens argues that the disclosures of the JP '371 and PCT applications [does] do not include a guide means on either side of the tip which operates with the tip shape to twist the tape, the tape path is not in a plane substantially perpendicular to the tip edge and that the JP '371 and PCT applications [does] do not enable a person of ordinary skill in the art to include a guide means in the tip of the device. We do not agree with this analysis for the reasons stated above in our discussion of Tamai's preliminary motion for benefit of the '183 application.

Interference No. 103,662

    For the foregoing reasons, we will grant the Senior party's

motion for benefit [as it is directed] to the JP '371

application and [but will deny this motion with regard] to the

PCT application.

# Exhibit C

Law Offices
ARMSTRONG, WESTERMAN & HATTORI, LLP
Suite 1000, 1725 K Street, Washington, D.C. 20006
Telephone (202) 659-2930
Facsimile (202) 887-0357 (GP III)
(202) 331-7519 (GP III)

To: Riggs National Bank NA, Lincoln Branch, Account #37 17143 569

Date: July 31, 2002
Debit Note: 02-07-179

Itami Patent Office
Daisan Bldg.,
2-4, 3-Chome, Nishitenma
Kita-ku, Osaka 530-0047
Japan

Our File No: 1151-0179
==================================================================

For services rendered during the period
July 5, 2002 through July 31, 2002
Re: COATING FILM TRANSFER TOOL

11,392.50

Disbursements                                                 112.80

                                                        -----------
Total Amount Due:                                        $ 11,505.30
                                                        ===========

COATING FILM TRANSFER TOOL
Our Reference: 1181 0179

| DATE | ATTORNEY | DESCRIPTION | TIME | VALUE |
|---|---|---|---|---|
| 07/05/02 | J. Kong | Review Decision. | 2.5 | $750.00 |
| 07/06/02 | J. Kong | Detailed review of Decision; conference with Messrs. W. Westerman, E. Kenehan and T. Macpeak. | 1.9 | $570.00 |
| 07/08/02 | E. Kenehan | Office conference with Messrs. W. Westerman, J. Kong and T. Macpeak; review the Board's decision. | 1.5 | $525.00 |
| 07/08/02 | W. Westerman | Discuss with Mr. T. Macpeak and prepare letter to Mr. Itami. | 0.4 | $140.00 |
| 07/09/02 | E. Kenehan | Office conference with Mr. T. Macpeak. | 0.3 | $105.00 |
| 07/10/02 | W. Westerman | Review Board's decision in detail and discuss with Messrs. J. Kong, T. Macpeak and E. Kenehan. | 2.5 | $875.00 |
| 07/10/02 | J. Kong | Conference with Messrs. W. Westerman, E. Kenehan and T. Macpeak; prepare for Request for Reconsideration. | 1.5 | $450.00 |
| 07/12/02 | W. Westerman | Discuss with Messrs. J. Kong, T. Macpeak and E. Kenehan; draft letter to client. | 0.8 | $280.00 |
| 07/22/02 | J. Kong | Draft Request for Reconsideration. | 6.8 | $2,040.00 |
| 07/23/02 | J. Kong | Revise Request for Reconsideration; conference with Messrs. W. Westerman and E. Kenehan. | 6.7 | $2,010.00 |
| 07/23/02 | W. Westerman | Review Request for Reconsideration and discussed with Messrs. T. Macpeak, E. Kenehan and J. Kong. | 2.0 | $700.00 |
| 07/23/02 | T. Macpeak | Review draft request for reconsideration and comments thereon; office conference with Messrs. W. Westerman and E. Kenehan regarding Request for Reconsideration; further conference with Mr. J. Kong. | 1.1 | $662.50 |
| 07/23/02 | E. Kenehan | Review draft reconsideration request from Mr. J. Kong; draft comments; draft appendix commenting on particular statements in decision; draft appendix; review decision; office conferences with Messrs. T. Macpeak, J. Kong, and W. Westerman. | 2.5 | $875.00 |
| 07/24/02 | J. Kong | Prepare proposed modified decision. | 3.9 | $1,170.00 |
| 07/24/02 | W. Westerman | Review and discussion with Messrs. E. Kenehan and J. Kong | 1.0 | $350.00 |

Total Attorney Services. . . . $ 11,392.50

DISBURSEMENTS
-----------

| | |
|---|---|
| Duplicating | 55.80 |
| Patent Office Copies | 57.00 |

ATTORNEY TIME:
| | | | |
|---|---|---|---|
| WFW | 6.70 HOURS AT $350.00 | $2,345.00 | |
| TJM | 1.30 HOURS AT $425.00 | $552.50 | |
| EPK | 4.30 HOURS AT $350.00 | $1,505.00 | |
| JPK | 23.30 HOURS AT $300.00 | $6,990.00 | |

# Exhibit D

 **RIGGS**

ELECTRONIC PAYMENT ADVICE

Riggs Bank N.A.
Money Transfer Department

ARMSTRONG WESTERMAN HATTORI          17143569
MCLELAND & NAUGHTON
1725 K ST NW STE 1000                OCTOBER 8, 2002
WASHINGTON      DC  20006-1401

FWI TRN 021008-000368    1008B1Q8383C00220310080948FT01          $20,650.50
ORG: ITAMI PATENT OFFICE 2-4,3-CHOME NISHITENMA KITA-KU OSAKA     +15.00
OGB: SUMITOMO MITSUI BANKING CORPORATION 4-6-5, KITAHAMA, CHYUO-KU
   OSAKA,JP                                                      20665.5C
FROM: DEUTSCHE BANK TRUST CO. AMERICAS     ABA/021001033    1151
RFB: 710TTS-20642273
OBI: FEES DEDUCTED $15.00 MF-045 MF-151 MF-184 ███████████ 02-07-217 02-07-21
   9 02-08-218 02-08-201

SUMMARY

|            | NUMBER | AMOUNT      |
|------------|--------|-------------|
| DEBITS     | 0      | $.00        |
| CREDITS    | 12     | $77,690.65  |
| TOTAL      | 12     |             |

PLEASE NOTE:  All incoming wire transfers which have a valid beneficiary name and account number are credited to the beneficiary's
account for the amount received. All related charges are then debited from the account.

F94-01016 (Rev. 3/87)

# Exhibit
# E

Paper No. 82

Filed by: Merits panel
          Box Interference
          Washington, D.C. 20231
          Tel: 703-308-9797
          Fax: 703-308-7953

The opinion in support of the decision being entered today is <u>not</u>
binding precedent of the Board.

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

CHRISTOPHER J. STEVENS,

Junior Party,
(P.N. 5,393,368)

v.

SHIGERU TAMAI,

Senior Party.
(S.N. 08/196,839)

Patent Interference No. 103,662

MAILED

MAR 1 3 2003

PAT. & T.M. OFFICE
BOARD OF PATENT APPEALS
AND INTERFERENCES

Before: CRAWFORD, GARDNER-LANE, and MEDLEY, <u>Administrative Patent
Judges</u>.

CRAWFORD, <u>Administrative Patent Judge</u>.

-1-

RECEIVED

MAR 1 7 2003

ARMSTRONG, WESTERMAN, HATTORI,
LLP

Interference No. 103,662

## DECISION ON REQUEST FOR RECONSIDERATION

Tamai has requested reconsideration and modification of our

FINAL DECISION mailed June 25, 2002 (hereinafter, Decision).

Specifically, Tamai seeks reconsideration of that portion of the

Decision that denied Tamai's motion for benefit as it relates to

PCT Application No. PCT/JP92/00947 ("PCT application"). Stevens

opposes the request. For the following reasons, Tamai's request

for modification of the Decision is denied.

In our Decision, we noted that the PCT application is part

of the file wrapper of Tamai's application Serial No. 08/030,183

("'183 application"). Tamai was accorded the benefit for

purposes of priority of the '183 application.

Section 1.637(f) of 37 CFR states in relevant part:

> A preliminary motion for benefit under
> § 1.633(f) shall
>
> . . . When the earlier application is an
> application filed in a foreign country,
> certify that a copy of the application has
> been served on all opponents. If the earlier
> filed application is not in English, the
> requirements of § 1.647 must also be met.

Section 1.647 of 37 CFR states:

> When a party relies on a document or is
> required to produce a document [is] in a
> language other than English, a translation of
> the document into English and an affidavit
> attesting to the accuracy of the translation
> shall be filed with the document.

Clearly, as Tamai filed a motion for benefit of the filing date

-2-

Interference No. 103,662

of its PCT application, which was in Japanese, Tamai was required
to file a translation of the PCT application along with the
motion.  This Tamai did not do.

In regard to Tamai's argument that the '183 application is a
translation of the PCT application, we note that Tamai did not
state that the '183 application is a translation of the PCT
application, attaching same, when the motion for benefit was
filed.  As such, we are not persuaded that such an alleged
correspondence between the '183 application and the PCT
application relieves Tamai of its obligations under 37 CFR
§ 1.637(f).[1]  In addition, we agree with Stevens that it is not
the burden of Stevens or this tribunal to look to the '183
application and determine whether it is a translation of the PCT
application.   Tamai argues that the provisions of 37 CFR § 1.639
obviate the need for Tamai's 1.633(f) motion to include another
copy of documents already in the file wrappers of record.

The provisions of 37 CFR § 1.639 do not obviate the need for
the filing of the PCT application as argued by Tamai.  Section
1.639 of 37 CFR relates to evidence in support of a motion and
states in relevant part that:

. . .proof of any material fact alleged in a

---

[1] We also note that 35 U.S.C. § 371 (c)(2) requires a
translation but 37 CFR § 1.647 requires a translation and an
affidavit attesting to the accuracy of the translation.

-3-

Interference No. 103,662

> motion, opposition, or reply must be filed
> and served with the motion, opposition, or
> reply unless the proof relied upon is part of
> the interference file or the file of any
> patent or application involved in the
> interference or any earlier application filed
> in the United States of which a party has
> been accorded or seeks to be accorded
> benefit.

As section 1.639 relates to evidence needed to prove a material
fact in a motion while § 1.637(f) relates to documents that are
required to be filed with a motion for benefit, the provisions of
§ 1.637(f) are not obviated by the provisions of § 1.639.

Tamai also argues that all substantive issues were readily
resolved by simply referring to the embodiments shown in Figure 1
of Tamai's PCT application which was present in the file wrapper
of the '183 application.

However, it was not the obligation of Stevens to go through
the '183 application, find the PCT application and review the
drawings to resolve substantive issues.  It was Tamai's
obligation to file a copy of the translation with the motion
pursuant to the provisions of 37 CFR § 1.637(f).

Tamai has not met the requirements of 37 CFR § 1.637(f).

Tamai argues that it would be in the interest of justice to
accord Tamai the benefit of the filing date of the PCT
application notwithstanding the fact that the motion for benefit
was filed without the requisite translation of the PCT

-4-

Interference No. 103,662

application. We do not agree.

It is true that we may, in accordance with the provisions of 37 CFR § 1.640(b), take such other actions as will secure the just, speedy and inexpensive determination of the interference. However, we do not consider the granting of a motion for benefit of a PCT application which was filed without a copy of the translation of that PCT application to be in the interest of a just, speedy and inexpensive determination of the interference.

First, Stevens is entitled to review a translation of the PCT application at the time the motion was filed to determine how to respond to the motion. In addition, Stevens is entitled to expect that the rules of this tribunal will be followed by all parties to this interference.

Finally, we address Tamai's argument that it is inconsistent to accord Tamai the benefit of the Japanese Patent Application No. 3-68371 ("JP '371") and not accord Tamai the benefit of the PCT application. As we stated in our decision, Stevens was in possession of a translation of the JP '371 application at the time the motion was filed and was not in possession of the translation of the PCT application. As such, in our view, any inconsistency in the treatment of the JP '371 application and the PCT application arises because of Tamai's inconsistent actions in regard to these two applications.

Interference No. 103,662

The request for reconsideration is granted to the extent that we have reconsidered our decision but denied in that we decline to make any modifications to our decision.

Murriel E. Crawford
Administrative Patent Judge )
)
)
)
)
Sally Gardner-Lane )  BOARD OF PATENT
Administrative Patent Judge )    APPEALS AND
)    INTERFERENCES
)
Sally C. Medley )
Administrative Patent Judge )

MEC:tdl

-6-

Interference No. 103,662

Attorney(s) for Stevens:

Charles P. Boukus, Jr.
Suite 202
2001 Jefferson Davis Highway
Arlington, VA 22202


Attorney(s) for Tamai:

William F. Westerman
1725 K Street, N.W., Suite 1000
Washington, D.C. 20006

# Exhibit
# F

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

CHRISTOPHER J. STEVENS,

      Junior Party,

v.

SHIGERU TAMAI,

      Senior Party.

Interference No. 103,662

## NOTICE OF APPEAL TO THE UNITED STATES
## COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Mail Stop 8
Director of the United States Patent and Trademark Office
PO Box 1450
Alexandria, Virginia 22313-1450

Attention: Office of the Solicitor

Sir:

      Junior Party Christopher J. Stevens hereby serves notice under 35 U.S.C. §§ 141

and 142 of his appeal to the United States Court of Appeals for the Federal Circuit from the

"Decision on Request for Reconsideration" of the Board of Patent Appeals and Interferences

("Board") dated March 13, 2003, and from the Board's "Final Decision" dated June 25, 2002, in

Interference No. 103,662.

Pursuant to Federal Circuit Rules 15 and 52, three copies of this notice and

payment of the $100.00 docketing fee are being filed simultaneously with the Clerk of the

Federal Circuit.

Respectfully submitted,

May 12, 2003                    By:    _____

Michael R. Weiner (Reg. No. 38,359)
Sandip H. Patel (Reg. No. 43,848)
MARSHALL, GERSTEIN & BORUN
6300 Sears Tower
233 South Wacker Drive
Chicago, Illinois 60606-6357
(312) 474-6300 Telephone
(312) 474-0448 Facsimile

- 2 -

## CERTIFICATE OF MAILING

The undersigned hereby certifies that the foregoing "NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT" is being deposited with the United States Postal Services on May 12, 2003, utilizing the "Express Mail Post Office to Addressee" service of the United States Postal Service under Mailing Label No. EV 341012678 US, in an envelope addressed to:

> Mail Stop 8
> Director of the United States Patent and Trademark Office
> PO Box 1450
> Alexandria, Virginia 22313-1450

Richard Zimmermann

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and complete copy of the foregoing "NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT" is being served upon Counsel for Senior Party Shigeru Tamai by being deposited with the United States Postal Services on May 12, 2003, utilizing the "Express Mail Post Office to Addressee" service of the United States Postal Service under Mailing Label No. EV 341012664 US, in an envelope addressed to:

> Mr. William F. Westerman
> Armstrong, Westerman & Hattori, LLP
> 1725 K Street, N.W., Suite 100
> Washington, D.C. 20006

Richard Zimmermann

650649v1

# EXHIBIT 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SEED COMPANY, LTD., et al,

Plaintiffs

v.

WILLIAM F. WESTERMAN, et al.

Defendants.

Civil No. 1:08-cv-00355 (RMU)

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF WESTERMAN DEFENDANTS' MOTION
TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY
JUDGMENT, ON STATUTE OF LIMITATIONS AND CAUSATION GROUNDS

Plaintiffs allege that Defendant attorneys and their law firms committed legal malpractice

during the litigation of an interference proceeding before the Board of Patent Appeals and

Interferences ("the Board") and the subsequent appeal of the Board's ruling to the Federal

Circuit.[1] The Complaint alleges two distinct acts of malpractice: (1) in October, 1997, during the

interference proceeding before the Board, Defendants failed to file an English translation of

Plaintiff's Patent Cooperation Treaty ("PCT") Application;[2] and (2) in January, 2004, during the

appeal of the Board's ruling to the Federal Circuit, the Westerman Defendants incorrectly

---

[1] Complaint, paragraph 1. This Memorandum, filed on behalf of Defendants William F.
Westerman; Westerman, Hattori, Daniels & Adrian, LLP; John Kong; and Ed Kenehan
(collectively "the Westerman Defendants"), refers to "Defendants" and "Defendant attorneys" as
a group for ease of reference. This does not constitute an admission that any of the named
Defendant attorneys or law firms participated in, or are vicariously responsible for, any of the
conduct alleged in the Complaint. All references to "Plaintiffs" in this Memorandum are to Seed
Company Limited and Shigeru Tamai, the Plaintiffs in this action.

[2] Complaint, paragraphs 22, 28.

advised that if Plaintiffs lost the appeal, their patent application would be returned to the patent

examiner where Plaintiffs could "add or amend claims" in their patent application.[3]

The statute of limitations for legal malpractice actions is three years. The first alleged act

of malpractice (the failure to file an English translation of the PCT Application) occurred in

1997, almost 10 years before the effective limitations date.[4]

Controlling precedent mandates dismissal of claims related to the failure to file an

English translation on limitations grounds. Plaintiffs were on inquiry notice of the failure to file

an English translation when the Board ruled in 2002 that Plaintiffs were not entitled to the benefit

of the PCT Application filing date. Plaintiffs' claim accrued long before the Federal Circuit

ruled against them on appeal in 2004, because they incurred attorneys' fees in 2002 for the filing

of a motion for reconsideration directed solely to the Board's ruling that an English translation

was required.

It is black letter law that the "continuous representation" exception to the limitations

period in legal malpractice actions does not continue during subsequent appeals. Thus, the

"continuous representation" doctrine would not apply after May of 2003, when a notice of appeal

to the Federal Circuit terminated the interference proceeding.

Further, Plaintiffs have failed to make allegations necessary to establish causation for any

damages caused by advice that Plaintiffs could submit new or amended claims even if they lost

the Federal Circuit appeal. Plaintiffs have not alleged that they had any new or amended claims

---

[3]Complaint, paragraph 26.

[4]Tolling Agreements between Plaintiffs and the Defendants provide that this Court should
consider the effective limitations date as no earlier than May 3, 2007. Complaint, paragraph 32.

that they believed were more valuable than the settlement offers they turned down.

## STANDARDS ON MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

As this Court has recognized, the Supreme Court has clarified the standards for resolving

motions to dismiss:

> the plaintiff must allege a "plausible entitlement to relief," by setting forth "any set
> of facts consistent with the allegations." *Bell Atl. Corp. v. Twombly,* 127 S. Ct.
> 1955, 1967, 1969 (2007) (abrogating the oft-quoted language from *Conley* [*v.
> Gibson,* 355 U.S. 41, 45-46 (1957)], instructing courts not to dismiss for failure to
> state a claim unless it appears beyond doubt that "no set of facts in support of his
> claim [] would entitle him to relief"). While these facts must "possess enough heft
> to 'sho[w] that the pleader is entitled to relief,'" a complaint "does not need
> detailed factual allegations." *Id.* at 1964, 1966. In resolving a Rule 12(b)(6)
> motion, the court must treat the complaint's factual allegations--including mixed
> questions of law and fact--as true and draw all reasonable inferences therefrom in
> the plaintiff's favor. *Macharia v. United States,* 334 F.3d 61, 64, 67 (D.C. Cir.
> 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft,* 333 F.3d 156, 165 (D.C.
> Cir. 2003); *Browning* [*v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002)]. While
> many well-pleaded complaints are conclusory, the court need not accept as true
> inferences unsupported by facts set out in the complaint or legal conclusions cast
> as factual allegations. *Warren* [*v. District of Columbia,* 353 F.3d 36, 39 (D.C. Cir.
> 2004)]; *Browning,* 292 F.3d at 242.

*Bouknight v. District of Columbia,* 2008 U.S. District LEXIS 17678, *6-7 (D.D.C. March 10,

2008)(Urbina, J.).[5]

"A defendant may raise the affirmative defense of statute of limitations via a Rule

12(b)(6) motion when the facts that give rise to the defense are clear from the face of the

complaint." *Johnson v. Ashcroft,* 2005 U.S. Dist. LEXIS 17961, *14-15 (D.D.C. August 17,

2005)(Urbina, J.), *citing Smith-Haynie v. District of Columbia,* 332 U.S. App. D.C. 182, 155

F.3d 575, 578 (D.C. Cir. 1998).  However, because limitations issues often involve issues of

---

[5]*Bouknight v. District of Columbia* and other unpublished opinions cited in this
Memorandum can be found at Exhibit 1 to this Memorandum.

contested fact, "the court should grant a motion to dismiss only if the complaint on its face is conclusively time-barred." *Id., citing Smith-Haynie, supra,* and *Doe v. Department of Justice,* 243 U.S. App. D.C. 354, 753 F.2d 1092, 1115 (D.C. Cir. 1985).

Under Fed.R.Civ.Pro. 12(d), "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."

> In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson [v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)]. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex [v. Catrett,* 477 U.S. 317, 322 (1986)]. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

*Pierce v. Mansfield,* 530 F. Supp. 2d 146, 155 (D.D.C. 2008)(Urbina, J.).

## STATEMENT OF UNDISPUTED MATERIAL FACTS[6]

On July 31, 1991, Plaintiffs filed Japanese Patent Application No. 3-68371 ("JP '371") for a correction tape dispenser.[7]  On July 24, 1992, <u>less than one year after filing JP '371,</u> Plaintiffs filed Patent Cooperation Treaty Application No. PCT/JP92/00947 ("the PCT '947

---

[6]Pursuant to Local Rule 7(h), the Westerman Defendants are filing with this motion a separate Statement of Undisputed Material Facts, identical in text to this section of this Memorandum. The separate Statement of Undisputed Material Facts contains additional citations and exhibits supporting each assertion of fact.

[7]Complaint, paragraph 13.

Application"), the first step in obtaining a U.S. patent for the same claims.[8]

In March, 1993, Plaintiffs retained Defendant attorneys to prosecute a U.S. patent claim

based on the PCT '947 Application. On March 29, 1993, more than one year after the filing of

JP '371, Defendants filed U.S. Patent Application Serial No. 08/030,183 directed to the subject

matter of the JP '371 and PCT '947 Application ("the '183 Application"). On February 15,

1994, Defendants filed U.S. Patent Application Serial No. 08/196,839 ("the '839 Application"), a

continuation-in-part of the '183 Application.[9]

A competing patent applicant, Christopher Stevens, filed an application for a similar

correction tape dispenser. Stevens actually received a patent for his device, which issued on

February 28, 1995 ("the Stevens patent"). In 1997, however, the U.S. Patent Office determined

that Plaintiffs' patent claims and the Stevens patent were not patentably distinct, and declared an

interference proceeding to determine which party could claim priority by demonstrating through

earlier filed applications that they had reduced their patent claims to practice.[10]

In interference proceedings, 37 C.F.R. 1.633(f) provides that a party may file a

preliminary motion "to be accorded the benefit of the filing date of an earlier filed application."

37 C.F.R. 1.637 provides that a party filing such a preliminary motion has the burden of proof to

establish entitlement to the relief sought. Section 1.637(f)(2) says that if the earlier application is

not in English, "the requirements of section 1.647 must also be met." 37 C.F.R. 1.647 says:

---

[8]Complaint, paragraph 14.

[9]Complaint, paragraphs 16-18.

[10]Complaint, paragraphs 19-20; *Stevens v. Tamai*, 366 F.3d 1325, 1330-31 (Fed. Cir. 2004)(describing interference proceedings).

"When a party relies on a document or is required to produce a document in a language other than English, a translation into English and an affidavit attesting to the accuracy of the translation shall be filed with the document."[11]

In the interference proceeding, Stevens filed an unopposed motion to be accorded the benefit of a February 10, 1993, United Kingdom patent application for his device. On October 21, 1997, Defendant attorneys filed a motion to have Plaintiffs accorded the benefit of their July 31, 1991 Japanese Patent Application, JP '371, and the July 24, 1992 PCT '947 Application. Defendant attorneys filed an English translation of the JP '371 application. However, they did not file an English translation of the PCT '947 Application. The attorneys believed that an English translation of the PCT '947 Application was unnecessary, because an English translation had been included in the '183 Application and had been accepted by the Patent Office.[12]

Stevens argued that the failure to file an English translation for the PCT '947 Application meant that Plaintiffs had not met their burden of proof, and should not get the benefit of its 1992 filing date. On June 25, 2002, the Board of Patent Appeals and Interferences ("the Board") issued an opinion agreeing that the failure to file an English translation meant that Plaintiffs were not entitled to the benefit of the PCT '947 Application. However, the Board ruled that Plaintiffs were entitled to the filing date for their 1991 Japanese patent application, and held that Plaintiffs

---

[11]*See Stevens v. Tamai, supra,* 366 F.3d at 1328.

[12]Complaint, paragraphs 21-22; Declaration of William F. Westerman ("Westerman Dec."), paragraph 4, attached as Exhibit 1 to Statement of Undisputed Material Facts in Support of Westerman Defendants' Motion to Dismiss, Or, in the Alternative, for Summary Judgment, on Statute of Limitations and Causation Grounds.

were entitled to priority over the Stevens claims.[13]

Unfortunately for Plaintiffs, the Board's ruling carried the seeds of its own dismissal. 35 U.S.C. 119(a) provides:

> An application for patent for an invention filed in this country by any person who has . . . filed an application for a patent for the same invention in a foreign country . . . shall have the same effect as the same application would have if filed in this country on the date on which the application for patent . . . was first filed in such foreign country, if the application in this country is filed within twelve months from the earliest date on which such foreign application was filed . . . .

Plaintiffs filed the '183 Application more than one year after the JP '371 Application. Thus, losing the benefit of the PCT '947 Application broke the required one-year chain.

Defendant attorneys notified Plaintiffs of the risk that the Board's requirement of an English translation "could potentially break the chain of priority between the JP '371 and the US '183 applications." Defendant attorneys filed a motion for reconsideration with the Board on July 25, 2002, arguing that an English translation of the PCT '947 application was not required. The motion for reconsideration ended its argument by asking: "If this request is denied, it is respectfully requested that the Board explain how Tamai is entitled to the benefit of the JP '371 application without the linking PCT application in the chain of priority."[14]

The motion for reconsideration dealt solely with the issue of the failure to file an English translation of the PCT '947 Application. Plaintiffs paid a minimum of $4,000 in fees for the preparation and filing of the motion for reconsideration in October, 2002, more than four years

---

[13]Complaint, paragraph 23; Westerman Dec., paragraph 5.

[14]Westerman Dec., paragraphs 7-8. *See* letter of July 12, 2002, from William F. Westerman to Mr. Kenji Itami, attached to the Westerman Dec. as Exhibit A; Senior Party Tamai's Request for Reconsideration Under 37 C.F.R. 1.658(b) of June 25, 2002 Board Decision at 7, attached as Exhibit B to the Westerman Dec.; *Stevens v. Tamai*, 366 F.3d at 1329.

before the effective limitations date.[15]

The Board issued a Decision on Request for Reconsideration in March, 2003, reaffirming its ruling that Plaintiffs were required to file an English translation of the PCT '947 Application. The Board did not address Plaintiffs' request for an explanation of how they could be accorded the benefit of the JP '371 Application, and declined to modify its opinion.[16]

Stevens filed a Notice of Appeal of the Board's decision to the Federal Circuit on May 12, 2003.[17] That Notice of Appeal terminated the interference litigation before the Board.

As the Federal Circuit noted, Plaintiffs and their Defendant attorneys conceded on the appeal that without the PCT '947 Application, they could not get the benefit of the earlier filed JP '371 Application. *Stevens v. Tamai*, 366 F.3d at 1331. Plaintiffs were thus on notice that they would lose the Federal Circuit Appeal if the Federal Circuit affirmed the Board's holding that an English translation of the PCT '947 Application was necessary.

The Complaint alleges that in January, 2004, while the appeal was pending in the Federal Circuit, attorney Westerman incorrectly advised Plaintiffs that even if they lost the pending appeal, Plaintiffs' application would be returned to the patent examiner with an opportunity to "add or amend claims." The Complaint alleges that Plaintiffs turned down settlement offers in January and July, 2004, as a result of that allegedly negligent advice.[18]

---

[15]Westerman Dec., paragraphs 9-14, and exhibits C and D to that Declaration.

[16]Westerman Dec., paragraph 15; *see* Decision on Request for Reconsideration, mailed March 13, 2003, attached as Exhibit E to the Westerman Dec.

[17]Westerman Dec., paragraph 16; *see* Notice of Appeal, attached as Exhibit F to that Declaration.

[18]Complaint, paragraphs 25-27, 29.

On May 4, 2004, the Federal Circuit issued an opinion affirming the Board's holding that Plaintiffs lost the benefit of the PCT '947 Application because of the failure to file an English translation. The Federal Circuit reversed the Board's ruling that Plaintiffs were entitled to priority, holding that the unavailability of the PCT '947 Application broke the one-year chain required by 35 U.S.C. 119(a). *Stevens v. Tamai, supra.*

The Complaint alleges that in December, 2006, Westerman admitted that he had been mistaken in believing that Plaintiffs' application would be returned to the examiner. Instead, the Federal Circuit's decision meant that "no further action is needed," and "a notice of abandonment should be issued."[19]

The Complaint does not allege that Plaintiffs believed that they had any new or amended claims that would have exceeded the value of the settlement offers they refused.

## ARGUMENT

I. **THE STATUTE OF LIMITATIONS BARS ALL CLAIMS BASED ON A FAILURE TO FILE AN ENGLISH TRANSLATION OF THE PCT APPLICATION IN 1997.**

A. **D.C. Law Applies.**

Plaintiffs allege diversity as the basis for federal jurisdiction.[20] A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). The District of Columbia Court of Appeals recently summarized its choice of law analysis:

[i]n determining which jurisdiction's law to apply in a tort case, we use the

---

[19]Complaint, paragraph 30.

[20]Complaint, paragraph 10.

> "governmental interests" analysis, under which we evaluate the governmental
> policies underlying the applicable laws and determine which jurisdiction's policy
> would be more advanced by the application of its law to the facts of the case
> under review. As part of this analysis we also consider the four factors enumerated
> in the Restatement (Second) of Conflict of Laws § 145 [1971]: (a) the place where
> the injury occurred; (b) the place where the conduct causing the injury occurred;
> (c) the domicile, residence, nationality, place of incorporation and place of
> business of the parties; and (d) the place where the relationship is centered. . . .
> When both jurisdictions have an interest in applying their own laws to the facts of
> the case, the forum law will be applied unless the foreign jurisdiction has a greater
> interest in the controversy.

*Drs. Groover, Christie & Merritt v. Burke*, 917 A.2d 1110, 1117 (D.C. 2007) (quotation marks,

brackets in original, and citations omitted).

Plaintiffs hired Defendants in the District of Columbia to pursue patent rights under U.S.

law, and to conduct patent litigation in D.C. before U.S. courts. Although Plaintiffs are located

in Japan, they allege harms to their economic interests in the United States. The alleged conduct

causing the injury occurred in the District, Defendants work in the District, and the relationship

between the parties was centered in the District. Accordingly, D.C. law clearly applies.

**B.   The D.C. Statute Of Limitations For Legal Malpractice Is Three Years.**

Under District of Columbia law, the statute of limitations for legal malpractice actions is

three years. D.C. Code 12-301(8); *Bradley v. National Association of Securities Dealers Dispute*

*Resolution, Inc.*, 369 U.S. App. D.C. 79; 433 F.3d 846, 849 (D.C. Cir. 2005).

**C.   Plaintiffs Were On Inquiry Notice Of The Failure To File A Required
English Translation In 1997, And The Board's Ruling In 2002 Confirmed It.**

The Complaint alleges that on May 9, 1997, the U.S. Patent Office found that Plaintiffs'

patent claims for a correctable tape dispenser were not distinct from the patent claims of

Christopher Stevens for a similar device. The Patent Office declared an interference proceeding

before the Board of Patent Appeals and Interferences.[21] The Complaint alleges that on October

21, 1997, Defendants filed a motion in the interference proceeding to grant priority to Plaintiffs'

'839 patent application based on the earlier filing dates of PCT application and Plaintiffs' '371

Japanese patent application. Defendant attorneys did not file an English translation of the PCT

application.[22]

Stevens argued from that point forward that the attorneys' failure to file an English

translation of the PCT application meant that Plaintiffs should not be given the benefit of the

early filing dates of the PCT application and the Japanese patent application. The Complaint

specifically alleged that on June 25, 2002, the Board held that the failure to file an English

translation meant that Plaintiffs could not benefit from the filing date of the PCT application.[23]

In ruling on a motion to dismiss, this Court may consider "documents attached as exhibits

or incorporated by reference in the complaint . . . ." *Gustave-Schmidt v. Chao,* 226 F. Supp. 2d

191, 196 (D.D.C. 2002) (Walton, J.). The Board's opinion, referenced in paragraph 23 of the

Complaint, specifically noted Stevens' argument that Defendants had failed to file a required

English translation of the PCT application.[24] The record is clear; before the Board issued its

opinion on June 25, 2002, Stevens had argued that the failure to file an English translation of the

PCT application was fatal to Plaintiffs' patent claims in the interference. The Board's opinion

---

[21]Complaint, paragraph 20.

[22]Complaint, paragraph 22.

[23]Complaint, paragraph 23.

[24]*See Stevens v. Tamai,* Patent Interference No. 103,662, June 25, 2002, at p. 21 (attached
as Exhibit 2 to this Memorandum).

held that the translation was required.  Accordingly, Plaintiffs were on inquiry notice of

Defendants' failure to file the translation by at least June, 2002.

Under D.C. law, a plaintiff has "inquiry notice" of a claim for legal malpractice "as of the

time a reasonable investigation would have led to actual notice." *Wagner v. Sellinger*, 847 A.2d

1151, 1154 (D.C. 2004), *citing Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996)(opinion of

Ruiz, J.).  "In short, knowledge is deemed sufficient if the plaintiff has reason to suspect that the

defendant did something wrong, even if the full extent of the wrongdoing is not yet known."

*Wagner v. Sellinger, supra*, 847 A.2d at 1154, *citing Morton v. National Med. Enters., Inc.*, 725

A.2d 462, 468-69 (D.C. 1999).

Based on the allegations of the Complaint and the text of the Board's June 25, 2002

opinion, incorporated by reference, there is no dispute that Plaintiffs were on inquiry notice at

least as early as June, 2002, that Defendants had failed to file a required English translation.

**D.    Plaintiffs Suffered Injury, And Their Claim Accrued, At Least
As Early As July 2002, When Plaintiffs Incurred And Paid Attorneys
<u>Fees Addressing The Issue Of A Failure To File An English Translation.</u>**

In July, 2002, Plaintiffs and their attorneys filed a motion for reconsideration with the

Board.  The motion for reconsideration addressed only one issue–the effect of a failure to file an

English translation of the PCT '947 Application.  Plaintiffs would not have filed that motion but

for the allegedly negligent failure to file a translation.  Plaintiffs suffered economic loss as a

result, because they paid legal fees for the preparation and filing of the  motion for

reconsideration.  While any additional damages from the failure to file a translation might have

been uncertain, it is undisputed that by July, 2002, the failure to file a translation had begun to

cause economic injury to Plaintiffs, in the form of incurred attorneys' fees.  Plaintiffs paid for the

- 12 -

filing of the motion for reconsideration in October, 2002, more than four years before the

effective limitations date.

The law in the District of Columbia is crystal clear–the statute of limitations for legal

malpractice actions starts to run when the client begins to suffer damages by paying additional

attorneys' fees resulting from the alleged negligence. As the Court of Appeals for the District of

Columbia has written:

> It is not necessary that all or even the greater part of the damages have to occur
> before the cause of action arises. *United States v. Gutterman*, 701 F.2d 104, 106
> (9th Cir. 1983)(quoting *Bell v. Hummel & Pappas*, 136 Cal. App.3d 1009, 1-15,
> 186 Cal. Rptr. 688, 694 (1982)); *see also Cantu v. Saint Paul Companies*, 401
> Mass. 53, 514 N.E.2d 666, 668-69 (1987). . . . We conclude that attorney's fees
> and costs expended as a result of an attorney's alleged malpractice constitute
> legally cognizable damages for purposes of stating a claim for such malpractice.
> *See Wettanen [v. Cowper*, 749 P.2d 362, 365 (Alaska 1988)](plaintiff-client was
> injured when he retained new counsel and paid costs of appealing trial court order
> because of attorney's alleged negligence); *Cantu*, 514 N.E.2d at 669 (legal fees
> expended by plaintiff to ameliorate harm caused by alleged legal malpractice
> considered legal injury); *Budd [v. Nixon*, 6 Cal.3d 195, 491 P.2d 433, 437, 98 Cal.
> Rptr. 849 (1971)](plaintiff-client compelled to "incur and pay attorney's fees and
> legal costs and expenditures" would sustain sufficient injury to run statute of
> limitations claim). The fact that not all of a client's damages are finally
> ascertainable pending the outcome of an appeal may suggest in some
> circumstances that trial of the malpractice action should be stayed pending the
> appeal; it does not indicate that the client has not been injured earlier.

*Knight v. Furlow*, 553 A.2d 1232, 1235-36 (D.C. 1989).

In strongly analogous circumstances, the D.C. Circuit affirmed Judge Gasch's ruling

granting summary judgment on limitations grounds to defendant attorneys in *Williams v.*

*Mordofsky*, 284 U.S. App. D.C. 52, 901 F.2d 158 (D.C. Cir. 1990). In that case, plaintiff

business owners made an application to the FCC in 1981 for a license to construct a TV station

in Salt Lake City. In their application, plaintiffs represented that they would work full time

running the TV station.

In 1982, while the TV application was still pending, plaintiffs hired defendant attorneys to represent them in connection with an application to the FCC to build a cellular radio facility. Plaintiffs told the FCC they would work full time on that cellular radio facility.

At a hearing on the TV station application in August, 1984, one of the plaintiffs was cross-examined about the conflicting full-time commitments in the TV application and the cellular radio application. A different law firm represented plaintiffs on the TV application; that firm advised plaintiffs after the August hearing that the TV application was in "deep trouble" unless plaintiffs could explain the conflict between TV and cellular radio applications.

In November, 1984, the FCC administrative law judge requested an additional hearing on the TV application to determine whether plaintiffs' full-time commitment "lacked candor." Plaintiffs spent $7,235 in attorneys' fees trying to straighten out the confusion over the dueling time commitments and preparing for the hearing, which took place in January, 1985.

The ALJ ruled against Plaintiffs in May, 1985. They filed suit in January, 1988, alleging that the attorneys representing them on the cellular radio facility application had been negligent in advising them to make a full-time commitment in that application.

Judge Gasch ruled that the statute of limitations began to run when plaintiffs started incurring attorneys' fees to deal with the issue of the conflicting time commitments. The D.C. Circuit affirmed, holding: "the first element, existence of actual injury, was satisfied by the accrual of $7,235 in legal fees in November 1984." *Williams*, 901 F.2d at 162.

The D.C. Circuit ruled that plaintiffs' injury began when they started to incur attorneys' fees as a result of the alleged negligence, six months before the ALJ ruled against plaintiffs. The

- 14 -

same analysis applies here. Plaintiffs in this action were aware of the allegedly negligent failure

to file an English translation; they incurred attorneys' fees specifically addressing that issue at

least as early as July, 2002, and paid the bill in October, 2002. They knew by June, 2002, that

the Board had ruled that the failure to file an English translation meant that they could not obtain

the benefit of the PCT '947 Application. They knew, at least as early as when their attorneys

filed the motion for reconsideration with the Board in July, 2002, that without the benefit of the

PCT '947 Application, they risked not obtaining the benefit of their Japanese patent application.

Accordingly, under the reasoning of *Knight v. Furlow* and *Williams v. Mordofsky*, the

statute of limitations began to run at least as early as July, 2002, when Plaintiffs started incurring

attorneys' fees to address the failure to file an English translation, not in May, 2004, when the

Federal Circuit ruled against them.[25]

### E.    The Continuous Representation Rule Does Not Apply To Subsequent Appeals.

The District of Columbia has adopted an exception to the discovery rule in legal
malpractice suits–the continuous representation rule. Under this rule, "when the
injury to the client may have occurred during the period the attorney was retained,
the malpractice cause of action does not accrue until the attorney's representation
concerning the particular matter in issue is terminated." *R.D.H. Communs v.
Winston*, 700 A.2d 766, 768 (D.C. 1997)(quoting *Weisberg v. Williams, Connolly
& Califano*, 390 A.2d 992, 995 (D.C. 1977).

---

[25]*Wagner v. Sellinger*, 847 A.2d 1151 (D.C. 2004), is not to the contrary. In that case,
defendants presented no evidence that plaintiffs had incurred additional attorneys' fees as a result
of the alleged malpractice more than three years before filing suit. The D.C. Circuit noted this
crucial distinction in *Havens v. Patton Boggs, LLP*, 235 Fed. Appx. 750, 2007 U.S. App. LEXIS
11914, *2-3 (D.C. Cir. 2007) (unpublished; attached in Exhibit 1 to this Memorandum)("While it
is true that in some cases the existence of an injury from inferior representation may not be
evident until a final verdict, *see Wagner v. Sellinger*, 847 A.2d 1151, 1156 (D.C. 2004), this is
not always the case, *see Weisberg v. Williams, Connolly & Califano*, 390 A.2d 992, 995 (D.C.
1978)").

*Bradley v. National Association of Securities Dealers Dispute Resolution, Inc.*, 369 U.S. App.

D.C. 79, 433 F.3d 846, 850 (D.C. Cir. 2005)(emphasis added).

However, it is black letter law in the District of Columbia that the continuous

representation rule does not apply to subsequent appeals. *See Bradley,* 433 F.3d at 851 ("The

court in *Winston* also set an outer bound on the duration of the 'specific dispute'–it does not

include appeals. [*R.D.H. Communs v. Winston.* 700 A.2d] at 770-71; *see also Knight v. Furlow,*

553 A.2d 1232, 1235 (D.C. 1989)"); *Galluci v. Schaffer,* 507 F. Supp.2d 85, 91 (D.D.C.

2007)(Kessler, J.)("The scope of the 'particular matter in issue' extends to a final, appealable

decision, but does not include appeals")(citing *Bradley*).

Accordingly, this Court should dismiss all of Plaintiffs' claims based on the failure to file

an English translation of the PCT '947 Application, because those claims accrued at least as early

as July, 2002, and are barred by the applicable three-year statute of limitations.

## II.    PLAINTIFFS HAVE NOT ALLEGED THAT THEY BELIEVED THAT ANY NEW OR AMENDED CLAIMS WERE MORE VALUABLE THAN THE SETTLEMENT OFFERS THEY TURNED DOWN.

Plaintiffs allege that in January, 2004,[26] the Westerman Defendants incorrectly advised

them that even if they lost the Federal Circuit Appeal, their application would be returned to the

patent examiner with the opportunity to add or amend claims.[27] Plaintiffs allege that later in

---

[26]Defendants gave the allegedly negligent advice that the application would return to the patent examiner more than three years before the applicable limitations date. Plaintiffs have failed to allege that they were not on inquiry notice of this alleged negligence. Nor have they pled facts sufficient to establish the continuous representation rule. Without waiving their statute of limitations defense, the Westerman Defendants assume that, with leave to amend, Plaintiffs can plead sufficient facts to defeat a statute of limitations defense at this stage of the litigation.

[27]Complaint, paragraph 26.

- 16 -

January, 2004, before the Federal Circuit ruled on Stevens' appeal, they turned down a settlement offer from Stevens that would have granted each party a royalty-free, non-exclusive license, including the right to sublicense, for the other party's patent rights.[28]  Plaintiffs allege that in July, 2004, after the Federal Circuit ruled in favor of Stevens, Plaintiffs turned down a settlement offer for mutual cross-licenses, without a right to sublicense.[29]

The Complaint does not make a crucial allegation–it does not say that Plaintiffs believed that they had any new or amended claims that would have had an estimated economic value exceeding the value of either or both settlement offers. This pleading failure is more than academic. The Westerman Defendants contend that Plaintiffs did not turn down the settlement offers because of the possibility of adding new or amended claims. Further, the Westerman Defendants contend that Plaintiffs did not have any new or amended claims that would have resulted in any substantial economic value.

Plaintiffs must plead facts sufficient to show that Defendants' alleged negligence "resulted in and was the proximate cause of loss to the client." *Niosi v. Aiello*, 69 A.2d 57, 60 (D.C. 1949).   The allegedly negligent advice that Plaintiffs' application would return to the patent examiner even if they lost the Federal Circuit appeal was the proximate cause of Plaintiffs' decision to reject the two settlement offers <u>only if Plaintiffs believed that any new or amended claims would be more valuable than the settlement offers</u>. The Westerman Defendants do not believe that Plaintiffs can in good faith plead this crucial link to causation.

Accordingly, Plaintiffs' claims based on the allegedly negligent advice in January, 2004,

---

[28]Complaint, paragraphs 25, 27.

[29]Complaint, paragraph 29.

should be dismissed, unless Plaintiffs can plead, in good faith and subject to Rule 11, that they

believed that any new or amended claims were worth more than the value of the settlement

offers.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed in its entirety.

Respectfully submitted,

Mark London
Christopher B. Mead
London & Mead
1225 19th Street, N.W., Suite 320
Washington, D.C.  20036
(202) 331-3334

Counsel for Defendants William F. Westerman;
Westerman, Hattori, Daniels & Adrian, LLP; John
Kong; and Ed Kenehan

# EXHIBIT 4

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SEED COMPANY, LTD., *et. al.* | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Civil No.: 1:08-Cv-00355 (RMU) |
| | * | |
| WILLIAM F. WESTERMAN, *et. al.* | * | |
| | * | |
| Defendants | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## O R D E R

UPON CONSIDERATION of the Kratz Defendants' motion to dismiss, or in the alternative, for summary judgment, and any opposition thereto, it is this ___ day of _____, 2008

ORDERED, that the Motion is GRANTED; and it is further,

ORDERED, that judgment is entered in favor of Kratz, Quintos & Hanson, LLP, Armstrong, Kratz, Quintos, Hanson & Brooks, LLP, Armstrong, Westerman & Hattori, LLP, and Armstrong, Westerman, Hattori, McLeland & Naughton on all counts of plaintiffs' complaint.

_____
Hon. Ricardo Urbina

Cc: counsel of record