## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SEED COMPANY, LTD., et al.** ) | |
| ) | |
| **Plaintiffs** ) | |
| ) | |
| **v.** ) | **CASE NUMBER 1:08-CV-00355-RMU** |
| ) | |
| **WILLIAM F. WESTERMAN, et al.** ) | |
| ) | |
| **Defendants.** ) | |

### PLAINTIFFS' NOTICE OF FILING

Plaintiffs Seed Company, Ltd. and Shigeru Tamai, hereby file the enclosed Declaration of Masatoshi Shintani along with its exhibits. The Declaration which was filed on Friday along with Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment failed to have the exhibits attached.

Dated: April 14, 2008                         Respectfully submitted,


                                              /s/ Creighton R. Magid
                                              Creighton R. Magid (D.C. Bar No. 476961)
                                              DORSEY & WHITNEY LLP
                                              1050 Connecticut Avenue, N.W., Suite 1250
                                              Washington, D.C. 20036
                                              Telephone: (202) 442-3555
                                              Fax: (202) 442-3199
                                              magid.chip@dorsey.com

                                              Counsel For Plaintiffs
                                              SEED COMPANY LIMITED and SHIGERU
                                              TAMAI

OF COUNSEL:
Paul T. Meiklejohn
Curt R. Hineline
James Howard
Mark S. Carlson
DORSEY & WHITNEY LLP
U.S. Bank Centre
1420 Fifth Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone:  (206) 903-8800
Fax:  (206) 903-8820

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of April, 2008, a copy of the foregoing

PLAINTIFFS' NOTICE OF FILING was sent by first-class mail, postage prepaid to:

Christopher B. Mead, Esquire
London & Mead
1225 19th Street, N.W., Suite 320
Washington, D.C.  20036

Paul J. Maloney, Esquire
Carr Maloney, P.C.
1615 L Street, N.W., Suite 500
Washington, D.C.  20036

John H. Harman, Esquire
Coggins, Harman & Hewitt
8905 Fairview Road, Suite 600
Silver Spring, MD 20910

/s/ Creighton R. Magid

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SEED COMPANY, LTD. and SHIGERU )
TAMAI                          )
                               )
            Plaintiffs         )
                               )    CASE NUMBER 1:08-CV-00355-RMU
v.                             )
                               )
WILLIAM F. WESTERMAN, et al.   )
                               )
            Defendants.        )

## DECLARATION OF MASATOSHI SHINTANI

I, Masatoshi Shintani, declare as follows:

1.      I am over the age of eighteen years, I make the following declaration based upon my personal knowledge, and I am competent to testify as to the matters asserted herein.

2.      I am the General Manager of the Development Department of Seed Company, Ltd. ("Seed").

3.      Seed, acting through its representative, Mr. Kenji Itami, engaged the defendants in this case as its attorneys to represent Seed in matters before the United States Patent and Trademark Office, including prosecuting the United States national phase of the Patent Cooperation Treaty Application No. PCT/JP92/00947 ("PCT '947 Application") and the *Tamai v Stevens* Patent Interference No. 103,662.

4.      From the time this interference commenced until now, Seed has not employed an in-house United States Patent Attorney, or a United States Patent Agent.  Seed has no offices in the United States, and the employees handling its patents are primarily fluent only in Japanese.

5.      At all material times during the interference and the subsequent decisions of the courts and the Patent Office concerning the interference, Seed generally relied upon the

statements, representations, correspondence and advice of defendants in the legal matters on which they were engaged for Seed.

6.    Between 1993, when Seed first engaged defendants, and 2002, Seed paid legal fees and costs to defendants for the PCT '947 Application and the *Tamai v Stevens* Patent Interference No. 103,662 exceeding $120,000. Of course, in the years following 2002 Seed's damages greatly exceeded this sum due to additional legal fees and loss of actual and potential license revenue.

7.    Attached hereto as Exhibit 1 is a true and correct copy of a letter by Mr. Kenji Itami to the firm of Armstrong, Westerman, Hattori, McLeland & Naughton and dated March 13, 1993. Seed received a copy of this correspondence.

8.    Attached hereto as Exhibit 2 is a true and correct copy of a letter from Mr. Albert Tockman to Mr. Kenji Itami and dated March 29, 1993. Seed received a copy of this correspondence.

9.    Attached hereto as Exhibit 3 is a true and correct copy of a letter from Armstrong, Westerman, Hattori, McLeland & Naughton to Mr. Kenji Itami and dated July 15, 1993. Seed received a copy of this correspondence.

10.    Attached hereto as Exhibit 4 is a true and correct copy of a letter from Mr. Kenji Itami to Mr. James P. Welch and dated February 8, 1994. Seed received a copy of this correspondence.

11.    Attached hereto as Exhibit 5 is a true and correct copy of a letter from James P. Welch to Mr. Kenji Itami and dated February 23, 1994. Seed received a copy of this correspondence.

12.     Attached hereto as Exhibit 6 is a true and correct copy of a letter from Armstrong, Westerman, Hattori, McLeland & Naughton to Mr. Kenji Itami and dated November 9, 1994. Seed received a copy of this correspondence.

13.     Attached hereto as Exhibit 7 is a true and correct copy of a letter from Mr. Ronald F. Naughton to Mr. Kenji Itami and dated May 16, 1997. Seed received a copy of this correspondence.

14.     Attached hereto as Exhibit 8 is a true and correct copy of a letter from Mr. Kenji Itami to Mr. Ronald F. Naughton and dated May 20, 1997. Seed received a copy of this correspondence.

15.     Attached hereto as Exhibit 9 is a true and correct copy of a letter from Mr. William F. Westerman to Mr. Kenji Itami and dated May 21, 1997. Seed received a copy of this correspondence.

16.     Attached hereto as Exhibit 10 is a true and correct copy of a letter from Mr. William F. Westerman to the Assistant Commissioner for Patents and dated October 21, 1997. Seed received a copy of this correspondence.

17.     Attached hereto as Exhibit 11 is a true and correct copy of a letter from Mr. William F. Westerman to Mr. Kenji Itami and dated July 8, 2002. Seed received a copy of this correspondence. Seed received a copy of this correspondence.

18.     Attached hereto as Exhibit 12 is a true and correct copy of a letter from Mr. William F. Westerman to Mr. Kenji Itami and dated July 11, 2002. Seed received a copy of this correspondence.

19.     Attached hereto as Exhibit 13 is a true and correct copy of a letter from Mr. William F. Westerman to Mr. Kenji Itami and dated August 7, 2002. Seed received a copy of this correspondence.

20.     Attached hereto as Exhibit 14 is a true and correct copy of a letter from Mr. William F. Westerman to Mr. Kenji Itami and dated March 17, 2003. Seed received a copy of this correspondence.

21.     Attached hereto as Exhibit 15 is a true and correct copy of a letter from Mr. William F. Westerman to Mr. Kenji Itami and dated March 21, 2003. Seed received a copy of this correspondence.

22.     Attached hereto as Exhibit 16 is a true and correct copy of a letter from Mr. William F. Westerman to Mr. Kenji Itami and dated April 18, 2003. Seed received a copy of this correspondence.

23.     Attached hereto as Exhibit 17 is a true and correct copy of a letter from Mr. William F. Westerman to Mr. Kenji Itami and dated May 13, 2003. Seed received a copy of this correspondence.

24.     Attached hereto as Exhibit 18 is a true and correct copy of a letter from Mr. Edward F. Kenehan, Jr. to Mr. Kenji Itami and dated October 8, 2003. Seed received a copy of this correspondence.

25.     Attached hereto as Exhibit 19 is a true and correct copy of a letter from Mr. Edward F. Kenehan, Jr. to Mr. Kenji Itami and dated January 22, 2004. Seed received a copy of this correspondence.

26.    Attached hereto as Exhibit 20 is a true and correct copy of a facsimile from Mr. Edward F. Kenehan, Jr., William F. Westerman and John P. Kong to Mr. Kenji Itami and dated May 5, 2004.  Seed received a copy of this correspondence.

27.    Attached hereto as Exhibit 21 is a true and correct copy of a letter from Mr. Edward F. Kenehan, Jr. to Mr. Kenji Itami and dated May 12, 2004.  Seed received a copy of this correspondence.

28.    Attached hereto as Exhibit 22 is a true and correct copy of a letter from Mr. Edward F. Kenehan, Jr. to Mr. Kenji Itami and dated May 27, 2004.  Seed received a copy of this correspondence.

29.    Attached hereto as Exhibit 23 is a true and correct copy of a letter from Mr. John P. Kong to Mr. Kenji Itami and dated June 15, 2004.  Seed received a copy of this correspondence.

30.    Attached hereto as Exhibit 24 is a true and correct copy of a letter from Mr. John P. Kong to Mr. Kenji Itami and dated July 8, 2004.  Seed received a copy of this correspondence.

31.    Attached hereto as Exhibit 25 is a true and correct copy of a letter from Mr. John Kong to Mr. Kenji Itami and dated July 27, 2004.  Seed received a copy of this correspondence.

32.    Attached hereto as Exhibit 26 is a true and correct copy of a letter from Mr. William F. Westerman to Mr. Toru Matsumoto and dated September 7, 2004.  Seed received a copy of this correspondence.

33.    Attached hereto as Exhibit 27 is a true and correct copy of a letter from Mr. William F. Westerman to Mr. Toru Matsumoto and dated October 12, 2004.  Seed received a copy of this correspondence.

34.     Attached hereto as Exhibit 28 is a true and correct copy of a letter from Mr. William F. Westerman to Mr. Toru Matsumoto and dated October 26, 2004. Seed received a copy of this correspondence.

35.     Attached hereto as Exhibit 29 is a true and correct copy of a letter from Mr. Stuart Graff to Mr. Yasuhiro Nishioka and dated January 14, 2004. Seed received a copy of this correspondence.

36.     Attached hereto as Exhibit 30 is a true and correct copy of a letter from Mr. William F. Westerman to Mr. Kenji Itami and dated December 4, 2006. Seed received a copy of this correspondence.

37.     Attached hereto as Exhibit 31 is a true and correct copy of a Tolling Agreement between Seed Company, Ltd. and William F. Westerman and Westerman, Hattori, Daniels & Adrian, and dated May 3, 2007.

38.     Attached hereto as Exhibit 32 is a true and correct copy of a Tolling Agreement between Seed Company, Ltd. and John P. Kong, and dated May 10, 2007.

39.     Attached hereto as Exhibit 33 is a true and correct copy of a tolling Agreement between Seed Company, Ltd. and Edward F. Kenehan, Jr., and dated May 10, 2007.

40.     Mr. Kenji Itami, at all material times, was an intermediary for Seed in this interference. Neither Mr. Itami, nor anyone in his firm, is a U.S. attorney or U.S. Patent Agent. Mr. Itami forwarded defendants' May 5, 2004 letter (Exhibit 22, above) to Seed. Based on this letter, Seed believed that the Federal Circuit's ruling contained legal and factual errors, and that the Westerman defendants would remedy those errors through one of the procedural options described in the letter. Seed continued to hold this belief at least until it was informed by the Westerman defendants that the Federal Circuit had denied Seed's Petition for Panel Rehearing

and Rehearing *En Banc* on June 10, 2004. Before that date, Seed relied on defendants' assurances that the Board and the Federal Circuit rulings were based on legal and factual mistakes, and Seed did not know that defendants had committed attorney malpractice.

41.    I have read a translation of certain excerpts from the Westerman Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment. At page 8, I understand that the brief states that "Plaintiffs and their Defendant attorneys conceded on the appeal that without the PCT '947 Application, they could not get the benefit of the earlier-filed JP '371 Application." Seed did not know that defendants had made this concession, and did not authorize them to make it.

I declare under penalty of perjury of the United States of America that the foregoing is true and correct.

Signed in Osaka, Japan, this _10th_ day of April, 2008.

_Masatoshi Shintani_
Masatoshi Shintani

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of April, 2008, a copy of the foregoing

Declaration of Masatoshi Shintani was sent by first-class mail, postage prepaid to:

Christopher B. Mead, Esquire
London & Mead
1225 19th Street, N.W., Suite 320
Washington, D.C.  20036

Paul J. Maloney, Esquire
Carr Maloney, P.C.
1615 L Street, N.W., Suite 500
Washington, D.C.  20036

John H. Harman, Esquire
Coggins, Harman & Hewitt
8905 Fairview Road, Suite 600
Silver Spring, MD 20910

/s/ Creighton R. Magid

# Exhibit 1

# ITAMI PATENT OFFICE

**DAISAN BLDG,**
**2-4, 3-CHOME, NISHITENMA, KITA-KU,**
**OSAKA, 530, JAPAN.**

ARMSTRONG,WESTERMAN,HATTORI,
McLELAND & NAUGHTON
Suite 1000, 1725 K Street,
N.W. Washington D.C.
20006, U.S.A.

TEL: (06)365-9078
CABLE: ITAMIPAT
FACSIMILE: (06)365-8577
(GⅡ, GⅢ)

March 13, 1993

Dear Sirs,

Re: National Phase of PCT Patent Appln. No.PCT/JP92/00947
    Our ref:   P-123/SE.90

We shall be glad if you kindly take over representation of
the national phase of the captioned PCT application and to
take a necessary action required for further prosecution not
later than ___March 31, 1993___ , 20th month from the
convention date.

The following papers are enclosed herewith;

⊠   Set of application documents filed with the
    Japanese Patent Office
⊠   English translation of the specification and claims
⊠   Notice under PCT rule 47.1 (c), first sentence
⊠   First page of the published specification
⊠   International search report
⊠   Declaration and Assignment
⊠   Verified statement claiming Small Entity Status
☐   Power of a ttorney
☐   Assignment .
☐

Please acknowledge receipt of this letter via facsimile to
(06) 365-8577.

## ITAMI PATENT OFFICE

We thank you in advance for your prompt attention to
the matter.

Yours faithfully,

K. ITAMI

Encls. as stated above.
KI/ky

P.S.

☐ A full copy of the foregoings is also sent to you by
express by way of precaution.

☐ Please prepare formal drawings on your side.

# Exhibit 2

LAW OFFICES

## ARMSTRONG, WESTERMAN, HATTORI, McLELAND & NAUGHTON

SUITE 1000
1725 K STREET, N.W.
WASHINGTON, D.C. 20006
——
(202) 659-2930
CABLE "ASTROPAT WASHINGTONDC"
TELEX 440142
FACSIMILE (202) 887-0357
FACSIMILE (202) 331-7519

JAMES E. ARMSTRONG, III
WILLIAM F. WESTERMAN
KEN-ICHI HATTORI
LE-NHUNG McLELAND
RONALD F. NAUGHTON*
JAMES P. WELCH
ALBERT TOCKMAN
JOHN R. PEGAN*
WILLIAM G. KRATZ, JR.*

J. HERBERT O'TOOLE*
MEL R. QUINTOS
MICHAEL J. FOYCIK, JR.
MARY E. GORMLEY*
JAMES C. LYDON*
VIVIAN P. KAFALENOS*
DONALD W. HANSON
STEPHEN G. ADRIAN*
GREGORY R. MUIR*
WILLIAM L. BROOKS
☐ITTED TO D.C. BAR
☐. PAT. AGENT

TOKYO LIAISON OFFICE
6TH FL., DIAMOND PLAZA BLDG.
25, ICHIBANCHO, CHIYODA-KU
TOKYO 102, JAPAN
TEL. (03) 3234-8429
FACSIMILE (03) 3234-5643

PITTSBURGH OFFICE
SUITE 721
500 WOOD STREET
PITTSBURGH, PENNSYLVANIA
15222
TEL. (412) 281-2931
FACSIMILE (412) 281-1821

OF COUNSEL
JOHN H. SHURTLEFF
JOSEPH J. ZITO

March 29, 1993



Mr. K. Itami
Itami Patent Office
Daisan Building
2-4, 3-chome, Nishitenma
Kita-ku, Osaka 530, Japan

     RE:  Filing New U.S. Patent Application - PCT/JP92/00947
           Filing Date:  March 29, 1993
           By:  Shigeru TAMAI
           Your Ref:  P-123/SE.90
           <u>Our Ref:    P1151-2717-A930203</u>

Dear Itami san:

    Thank you for your letter of March 13, 1993 entrusting the subject application to our office for filing in the United States Patent and Trademark Office.  We are looking forward to working with you during the prosecution of this case.

    We are pleased to inform you, as we noted in our facsimile of March 29, 1993, that the application was filed in the Patent and Trademark Office on March 29, 1993.  The Official Filing Receipt for the application will be forwarded to you as soon as it is received.

    The application was reviewed prior to filing and appeared to be in good form and to comply with the formal filing requirements of the Patent and Trademark Office.

    The U.S. Patent and Trademark Office has advised that references identified in the international search report in international applications should be cited and copies submitted to the Patent and Trademark Office to insure compliance with the duty of disclosure.  Examiners do not always have copies of the references identified in the international search report. Although the Patent and Trademark Office has promised to correct this

Mr. K. Itami
March 29, 1993
Page 2

situation in the future, we recommend that copies of the references be submitted with an information disclosure statement. Therefore, we ask that such copies be forwarded to us as soon as possible for filing with the Office.

Thank you for allowing us to be of service. Our debit note for the filing of the application is enclosed. If you have any questions relating to these charges, please let us know.

Very truly yours,

ARMSTRONG, WESTERMAN, HATTORI, McLELAND & NAUGHTON

Albert Tockman

AT/rgm

Enc.
   Transmittal Letter (2)
   Assignment Recordation Form (2)
   Debit Note (3)
   Duty of Disclosure

# Exhibit 3

LAW OFFICES

## ARMSTRONG, WESTERMAN, HATTORI, McLELAND & NAUGHTON

SUITE 1000

1725 K STREET, N.W.

WASHINGTON, D.C. 20006

JAMES E. ARMSTRONG, III
WILLIAM F. WESTERMAN
KEN-ICHI HATTORI
LE-NHUNG McLELAND
RONALD F. NAUGHTON*
JAMES P. WELCH
ALBERT TOCKMAN
JOHN R. PEGAN*
WILLIAM G. KRATZ, JR.*

J. HERBERT O'TOOLE*
MEL R. CUINTOS
MICHAEL J. FOYCIK, JR.
JAMES C. LYDON*
VIVIAN P. KAFALENOS*
DONALD W. HANSON
STEPHEN G. ADRIAN*
GREGORY R. MUIR+
WILLIAM L. BROOKS
STEPHEN B. PARKER+
*NOT ADMITTED TO D.C. BAR
+REG'D U.S. PAT. AGENT

(202) 659-2930

CABLE "ASTROPAT WASHINGTONDC"

TELEX 440142

FACSIMILE (202) 887-0357

FACSIMILE (202) 331-7519

TOKYO LIAISON OFFICE
6TH FL., DIAMOND PLAZA BLDG.
25, ICHIBANCHO, CHIYODA-KU
TOKYO 102, JAPAN
TEL. (03) 3234-8429
FACSIMILE (03) 3234-5643

PITTSBURGH OFFICE
SUITE 721
500 WOOD STREET
PITTSBURGH, PENNSYLVANIA
15222
TEL. (412) 281-2931
FACSIMILE (412) 281-1821

OF COUNSEL
JOHN H. SHURTLEFF
JOSEPH J. ZITO

July 15, 1993



Mr. K. Itami
Itami Patent Office
Daisan Bldg.
2-4, 3-chome, Nishitenma
Kita-ku, Osaka 530, Japan

> Re:  Official Filing Receipt
> U.S. Patent Appln. S. N. 08/030,183
> By:  Shigeru TAMAI
> Your Ref:  P-123/SE.90
> Our  Ref:  PI151-2717-A930203

Dear Itami san:

Enclosed is the official filing receipt for the subject application. This document is an official confirmation that the subject application was filed on March 29, 1993 and has been assigned Serial No. 08/030,183.

Very truly yours,

ARMSTRONG, WESTERMAN, HATTORI,
McLELAND & NAUGHTON

tnd
Enclosure:  Official Filing Receipt

O-103X
.ev. 11-86)

   FILING RECEIPT



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | GRP ART UNIT | FIL FEE REC'D | ATTORNEY DOCKET NO. | DRWGS | TOT CL | IND CL |
|---|---|---|---|---|---|---|---|
| 08/030,183 | 03/29/93 | 1304 | $ 415.00 | 930203 | 5 | 1 | 1 |

ARMSTRONG & KUBOVCIK
1725 K STREET, N.W., SUITE 1000
WASHINGTON, DC 20006

Receipt is acknowledged of the patent application identified herein. It will be considered in its order and you will be notified as to the examination thereof. Be sure to give the U.S. SERIAL NUMBER, DATE OF FILING, NAME OF APPLICANT, and TITLE OF INVENTION when inquiring about this application. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this transmittal.

Applicant(s)        SHIGERU TAMAI, OSAKA, JAPAN.

FOREIGN/PCT APPLICATIONS-PCT                    PCT/JP92/00947   07/24/92
                              JAPAN             3-068371         07/31/91

                                        * SMALL ENTITY *

TITLE
COATING FILM TRANSFER TOOL

PRELIMINARY CLASS: 156



RECEIVE
JUL 7 1993
ARMSTRONG, WESTERMAN, HATTORI
McLELAND & NAUGHTON

(see reverse)

LICENSE FOR FOREIGN FILING UNDER
Title 35, United States Code, Section 184
Title 37, Code of Federal Regulations, 5.11

## GRANTED

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "FOREIGN FILING LICENSE GRANTED" followed by a date appears on the reverse side of this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required. The scope and limitations of this license are set forth in 36 CFR 5.15(a). This license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license has been granted under 37 CFR 5.13.

This license is to be retained by the licensee and may be used at anytime on or after the effective date thereof unless it is revoked. The license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations, especially with respect to certain countries, of other agencies, particularly the Office of Munitions Control, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR, Parts 121-128)); the Office of Export Administration, Department of Commerce (15 CFR 370.10(j)); and the Department of Energy or its successors.

## NOT GRANTED

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "FOREIGN FILING LICENSE GRANTED" DOES NOT appear on the reverse side of this form. Applicant may still petition for a license under 37 CFR 5.12(b), if a license is desired.

# Exhibit 4

# ITAMI PATENT OFFICE

DAISAN BLDG.
2-4, 3-CHOME, NISHITENMA, KITA-KU,
OSAKA, 530, JAPAN

TEL: (06)365-9078
CABLE: ITAMIPAT
FACSIMILE: (06)365-8577
(GⅡ, GⅢ)

Law Offices
Armstrong,Westerman,Hattori,
McLeland & Naughton
Suite 1000, 1725 K Street, N.W.
Washington, D.C. 20006
U.S.A

February 8, 1994

Dear Mr. Welch:

Re: U.S.Pat. Appln. S.N. 08/030,183
    Your ref: P1151-2717-A930203
    Our ref : P-123/SE.90

Thank you for your letter of August 25, 1993, forwarding to us the Office Action and your analysis of October 18, 1993, via facsimile.

Enclosed herewith are an English specification and informal drawings to be filed as CIP application, in which the features of the present invention are not only more clarified, but also some embodiments are newly added. Applicants are still in a position to enjoy the benefit of Small Entity Status. Please abandon the patent application.

For your reference, the corresponding Japanese application was laid-open for public inspection on February 23, 1993, and thus, it will be necessary to file the CIP application on or before February 23, 1994 (in fact, February 18, 1994,

Cnt'd.....

# ITAMI PATENT OFFICE

page 2

the three-month extended date).

As emphasized in the CIP specification with illustrations of use, the tool of the present invention is much more convenient for use in the lateral direction, e.g., correcting characters written laterally such as English, than the conventional tool for use in the vertical direction.

Enclosed are two erasing tools of the present invention and two conventional erasing tools. Please compare them by actually erasing characters. And please have the Examiner used for better understanding of the advantage and convenience of the present invention at an appropriate opportunity, for examle, at the time of responding to the forthcoming Office Action against the CIP application.

We are looking forward to your prompt attention to the subject.

Yours faithfully,

K. Itami

Encls.
KI/th

# Exhibit 5

LAW OFFICES

## ARMSTRONG, WESTERMAN, HATTORI, McLELAND & NAUGHTON

SUITE 1000

JAMES E. ARMSTRONG, III
WILLIAM F. WESTERMAN
KEN-ICHI HATTORI
LE-NHUNG McLELAND
RONALD H. NAUGHTON*
JAMES P. WELCH
ALBERT TOCKMAN
JOHN R. PEGAN*
WILLIAM G. KRATZ, JR.*

J. HERBERT O'TOOLE*
MEL R. QUINTOS
MICHAEL J. FOYCIK, JR.
JAMES C. LYDON*
DONALD W. HANSON
STEPHEN G. ADRIAN*
GREGORY R. MUIR*
WILLIAM L. BROOKS
STEPHEN B. PARKER*
JOHN F. CARNEY

*NOT ADMITTED TO D.C. BAR

1725 K STREET, N.W.
WASHINGTON, D.C. 20006

—

(202) 659-2930
CABLE "ASTROPAT WASHINGTONDC"
TELEX 440142
FACSIMILE (202) 887-0357
FACSIMILE (202) 331-7519

February 23, 1994

TOKYO LIAISON OFFICE
6TH FL., DIAMOND PLAZA BLDG.
25. ICHIBANCHO, CHIYODA-KU
TOKYO 102, JAPAN
TEL. (03) 3234-8429
FACSIMILE (03) 3234-5643

—

PITTSBURGH OFFICE
SUITE 721
500 WOOD STREET
PITTSBURGH, PENNSYLVANIA
15222
TEL. (412) 281-2931
FACSIMILE (412) 281-1821

—

OF COUNSEL
JOHN H. SHURTLEFF
JOSEPH J. ZITO



Mr. K. Itami
Itami Patent Office
Daisan Building
2-4, 3-chome, Nishitenma
Kita-ku, Osaka 530, Japan

      RE:  Filing New U.S. C-I-P Patent Application
           Filing Date:  February 15, 1994
           By:  Shigeru TAMAI
           Your Ref:  P-123/SE.90
           Our Ref:   P1151-2717-A940094

Dear Itami san:

    Thank you for your letter of February 8, 1994 entrusting the subject application to our office for filing in the United States Patent and Trademark Office.  We are looking forward to working with you during the prosecution of this case.

    We are pleased to inform you, as we noted in our facsimile of February 15, 1994, that the application was filed in the Patent and Trademark Office on February 15, 1994.  The Official Filing Receipt for the application will be forwarded to you as soon as it is received.

    Because the application was filed without a Declaration, the Patent and Trademark Office will issue a Notice to File Missing Parts of Application requiring the filing of the Declaration within one month of the date of the notice or two months of the date of filing of the application, whichever date is later.  When we receive the Notice to File Missing Parts of Application, we will prepare and forward to you a Declaration and Assignment.  At that time you may have it properly signed and returned to us.

/A

Mr. K. Itami
February 23, 1994
Page 2

An Information Disclosure Statement was also filed with the
application submitting the documents enclosed with your order
letter.    Copies of the Information Disclosure Statement are
enclosed.

A duty of candor and good faith, which includes a duty of
disclosure, is a continuing duty which exists in connection with a
United States patent application.  The duty of disclosure can be
satisfied by filing an information disclosure statement that
complies with the requirements of Rule 98.  Under Rules of Practice
of the U.S. Patent and Trademark Office, as to information
available at the time the application is filed, an information
disclosure statements should be submitted within three months of
the filing date of an application or prior to the date of the first
Official Action on the merits, whichever date is later, to avoid
late filing fees and certification requirements.  As to information
which becomes available after the application is filed, please
refer to the enclosed "DUTY OF DISCLOSURE/NEW U.S. PATENT
APPLICATION" for a description of the requirements of the Rules of
Practice of the United States Patent and Trademark Office for
complying with the duty of disclosure.

Thank you for allowing us to be of service.  Our debit note
for the filing of the application is enclosed.  We have instituted
procedures to reduce the number of debit notes you and we must
handle and so the debit note includes charges for the late filing
of missing formal documents.  We trust you will agree with this
procedure.  If you have any questions relating to these charges,
please let us know.

Very truly yours,

ARMSTRONG, WESTERMAN, HATTORI, McLELAND & NAUGHTON

James P. Welch

JPW/rgm

Enc.
   Transmittal Letter (2)
   Preliminary Amendment (2)
   Information Disclosure Statement (2)
   Debit Note (3)
   Duty of Disclosure

# Exhibit 6

LAW OFFICES

## ARMSTRONG, WESTERMAN, HATTORI, McLELAND & NAUGHTON

SUITE 1000.

JAMES E. ARMSTRONG, III
WILLIAM F. WESTERMAN
KEN-ICHI HATTORI
LE-NHUNG McLELAND
RONALD F. NAUGHTON*
JAMES P. WELCH
JOHN R. PEGAN*
WILLIAM G. KRATZ, JR.*

MEL R. QUINTOS
MICHAEL J. FOYCIK, JR.
JAMES C. LYDON*
DONALD W. HANSON
STEPHEN G. ADRIAN*
GREGORY R. MUIR*
WILLIAM L. BROOKS
STEPHEN B. PARKER*
AOI NAWASHIRO
CHERYL L. BECKER*
JESSICA H. TRAN*
* NOT ADMITTED TO D.C. BAR

1725 K STREET, N.W.
WASHINGTON, D.C. 20006

(202) 659-2930
CABLE "ASTROPAT WASHINGTONDC"
FACSIMILE (202) 887-0357
FACSIMILE (202) 331-7519
FACSIMILE (202) 887-5155

TOKYO LIAISON OFFICE
6TH FL., DIAMOND PLAZA BLDG.
25, ICHIBANCHO, CHIYODA-KU
TOKYO 102, JAPAN
TEL. (03) 3234-8429
FACSIMILE (03) 3234-5643

PITTSBURGH OFFICE
SUITE 721
500 WOOD STREET
PITTSBURGH, PENNSYLVANIA
15222
TEL. (412) 281-2931
FACSIMILE (412) 281-1821

OF COUNSEL
ALBERT TOCKMAN
JOSEPH J. ZITO
JOHN F. CARNEY
JOHN H. SHURTLEFF
EDWARD F. WELSH

November 9, 1994



Mr. Kenji Itami
Itami Patent Office
Daisan Bldg.,
2-4, 3-Chome, Nishitenma
Kita-ku, Osaka 530, JAPAN

Re: U.S. Patent Application    p-123/58-90
    Serial Number: 196,839
    Filing Date: 02/15/94
    Our Reference: P-1151-2717-940094

Dear Itami san:

    Enclosed is the official Filing Receipt for the subject
application. This document is an official confirmation that the
subject application was filed on February 15, 1994 and has been
assigned Serial No. 08/196,839.

                    Very truly yours,

                    ARMSTRONG, WESTERMAN, HATTORI,
                    McLELAND & NAUGHTON

adt
Enclosure: Official Filing Receipt

FILING RECEIPT



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING DATE | GRP ART UNIT | FIL FEE REC'D | ATTORNEY DOCKET NO. | DRWGS | TOT CL | IND CL |
|---|---|---|---|---|---|---|---|
| 08/196,839 | 02/15/94 | 1304 | $420.00 | 940094 | 10 | 18 | 2 |

ARMSTRONG, WESTERMAN, HATTORI,
MCLELAND & NAUGHTON
SUITE 1000
1725 K STREET, N.W.
WASHINGTON, DC 20006



RECEIVED
OCT - 6 1994
ARMSTRONG, WESTERMAN, HATTORI
MCLELAND & NAUGHTON

Receipt is acknowledged of this patent application. It will be considered in its order and you will be notified as to the results of the examination. Be sure to provide the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION when inquiring about this application. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. If an error is noted on this Filing Receipt, please write to the Application Processing Division's Customer Correction Branch within 10 days of receipt. Please provide a copy of the Filing Receipt with the changes noted thereon.

Applicant(s)      SHIGERU TAMAI, OSAKA, JAPAN.

CONTINUING DATA AS CLAIMED BY APPLICANT-
            THIS APPLN IS A CIP OF  08/030,183 03/29/93  ABN

FOREIGN/PCT APPLICATIONS-JAPAN              3-68371       07/31/91

                                    * SMALL ENTITY *
TITLE
COATING FILM TRANSFER TOOL

PRELIMINARY CLASS: 156

(see reverse)

# Exhibit 7

(AY. 716 97(FRI) 16:08    ARMSTRONG ET AL                TEL:202 331 7519              P. 002

LAW OFFICES

# Armstrong, Westerman, Hattori, McLeland & Naughton

SUITE 1000
1725 K STREET, N.W.
WASHINGTON, D.C. 20006

JAMES E. ARMSTRONG, III
WILLIAM F. WESTERMAN
KEN-ICHI HATTORI
LE-NHUNG McLELAND
RONALD F. NAUGHTON*
WILLIAM G. KRATZ, JR.*
MEL R. QUINTOS

PARTNER EMERITUS
JAMES R. WELCH

MICHAEL J. FOYCIK, JR.
DONALD W. HANSON
STEPHEN G. ADRIAN*
WILLIAM L. BROOKS
AOI NAWASHIRO
GAY ANN SPAHN
THERESA M. SMITH
PATRICK D. MUIR
*ADMITTED TO OTHER THAN D.C. BAR

(202) 659-2930
FACSIMILE (202) 867-0357
FACSIMILE (202) 331-7519
FACSIMILE (202) 867-5165

May 16, 1997

VIA FACSIMILE

TOKYO LIAISON OFFICE
6TH FL., DIAMOND PLAZA BLDG.
25 ICHIBANCHO, CHIYODA-KU
TOKYO 102, JAPAN
TEL. (03) 3234-8423
FACSIMILE (03) 3234-5643

PITTSBURGH OFFICE
THE LAW & FINANCE BUILDING
SUITE 707
429 FOURTH AVENUE
PITTSBURGH, PENNSYLVANIA
15219
TEL. (412) 281-2931
FACSIMILE (412) 281-1821

OF COUNSEL
JOHN R. PEGAN
ALBERT TOCKMAN
JOHN F. CARNEY
EDWARD F. WELSH

JAPANESE BENRISHI
YOSHINARI KISHIMOTO
YASUHISA KUROSE

Mr. Kenji Itami
Itami Patent Office
Daisan Bldg.,
2-4, 3-Chome, Nishitenma
Kita-ku, Osaka 530, JAPAN

RE: Interference No. 103,662
    U.S. Patent Appl. No. 08/196,839
    By: Shigeru TAMAI
    Your Ref: P123/SE.90
    Our Ref: P1151-2717-A940094

Dear Itami san:

Enclosed for your information are copies of two communications mailed from the Patent and Trademark Office on May 9, 1997.

The first communication advises that the subject application has been forwarded to the Board of Patent Appeals and Interferences because it has been adjudged to interfere with certain claims of Patent No. 5,393,368 which issued February 28, 1995 assigned to The Gillette Company. We understand from our file that a copy of the patent was previously provided for your consideration.

The second communication advises that this Interference No. 103,662 has been assigned to Andrew H. Metz, Administrative Patent Judge (APJ), and sets forth certain dates by which papers must be filed in the Patent Office. For example, the second communication has established <u>Friday, May 23, 1997</u> as the date when papers must be filed advising of the individual who has been appointed lead attorney for each of the parties and setting the date of

MAY.-16' 97(FRI) 16:08    ARMSTRONG ET AL              TEL:202 331 7519             P. 003

Mr. Kenji Itami
Itami Patent Office
May 16, 1997
Page 2

August 9, 1997 as the date for which the period for filing a preliminary statement and preliminary motions is to expire. This communication also advises that if there is any conflict in the proposed dates, that lead counsel for both parties should contact the APJ and attempt to resolve such a conflict in scheduling no later than May 23, 1997.

The rules controlling our interference practice were revised several years ago in order to expedite such a proceeding with the intention of bringing such proceedings to a decision within two years (24 months) of the date the interference is declared. Accordingly, there is a very tight schedule proposed in the rules for filing all motions, for taking discovery, and submitting whatever motions or objections may be appropriate in order that these matters may be decided quickly. It is difficult to estimate with any degree of certainty the amount of time required and expense incurred in conducting an interference proceeding, but we must caution that they can become very expensive if it becomes necessary to conduct extensive discovery. At present, without any unusual requirements, we estimate that expenses of between $10,000 and $20,000 will be incurred to cover the preparation and filing of preliminary statements, preliminary motions, oppositions to preliminary motions, and replies to oppositions, all of which will have to be handled within the first four and one half months, that is before about September 20, 1997. The expenses will likely increase substantially beyond that date depending upon the extent to which discovery is required by both parties and the manner and the form in which testimony is presented.

We presume your client intends to have our firm continue as attorneys of record in the subject interference. However, we solicit your confirmation that this is your client's intention in view of the fact that we must file a paper identifying the lead attorney with the Administrative Patent Judge no later than Friday, May 23, 1997. Accordingly, we request your confirmation by return facsimile, together with any additional comments or questions you may have.

Thank you for your prompt attention to this matter.

Very truly yours,

ARMSTRONG, WESTERMAN, HATTORI, McLELAND & NAUGHTON

Ronald F. Naughton

RFN:pjl
Enclosures: Interference 103,662/first and second communications

AY. -16-97(PRI) 16:09   ARMSTRONG ET AL        TEL:202 331 7519        P. 004

Paper No. 10



MAILED

MAY 0 9 1997

PAT. & T.M. OFFICE
BOARD OF PATENT APPEALS
AND INTERFERENCES

**U.S. DEPARTMENT OF COMMERCE**
Patent and Trademark Office

Address:  BOX INTERFERENCE
          Commissioner of Patents and Trademarks
          Washington, DC 20231

          Telephone:  (703) 308-9797
          Facsimile:  (703) 308-7853

Applicant:  Tamai
Serial No.:  08/196,839
Filed:  02/15/94
For:  COATING FILM TRANSFER
      TOOL
Accorded Benefit of:  Serial
      No. 08/030,183, filed
      03/29/93

     The case referred to above has been forwarded to the Board
of Patent Appeals and Interferences because it is adjudged to
interfere with other cases hereafter specified.  Attention is
directed to the fact that this interference is declared pursuant
to 37 CFR § 1.601 et seq., effective April 21, 1995 (60 Fed. Reg.
14,488, 1173 Off. Gaz. 384).  The interference is designated as
No. 103,662.

     By direction of the Commissioner of Patents and Trademarks
and as required by 35 U.S.C. § 135(c), notice is hereby given the
parties of the requirement of the law for filing in the Patent
and Trademark Office a copy of any agreement "in connection with
or in contemplation of the termination of the interference."

ORM PTO-78B

MAY. -16'97(FRI) 16:09  ARMSTRONG ET AL         TEL:202 331 7519 ·           P. 005

Serial No. 08/196,839

The cases involved in this interference are:

Junior Party

Patentee:   Christopher J. Stevens

Address:   8 The Willows, Caversham, Reading, Berkshire RG4 8BD, England

Serial No.:  08/192,471, filed 02/07/94, now U.S. Patent No. 5,393,368, issued 02/28/95

For:     CORRECTION TAPE DISPENSER

Assignee:   The Gillette Company, Boston, MA

Attorneys of Record:  Donal B. Tobin, Stephen P. Williams, Paul I. Douglas and Chester Cekala

Associate Attorney:  None

Accorded Benefit of:  None

Address:  Donal B. Tobin, Esq.
The Gillette Company
Prudential Tower Building, 38th Floor
Boston, MA  02199

)

-2-

AY, -16-97(FRI) 16:09    ARMSTRONG ET AL    TEL:202 331 7519    P. 006

Serial No. 08/196,839

Senior Party

Applicant:          Shigeru Tamai

Address:            1-3, Asahigaoka 2-chome, Ikeda-shi, Osaka 563, Japan

Serial No.:         08/196,839 filed 02/15/94

For:                COATING FILM TRANSFER TOOL

Assignee:           None

Attorneys of Record:    James E. Armstrong, III, William F.
                        Westerman, Ken-Ichi Hattori, John R. Pegan,
                        William G. Kratz, Jr., Le-Nhung McLeland,
                        James P. Welch, Ronald F. Naughton, Albert
                        Tockman, J. Herbert O'Toole, Mel R.
                        Quintos, Michael J. Poycik, Jr., Mary E.
                        Gormley, James C. Lydon, Vivian P.
                        Kafalcnos, Donald W. Hanson, Stephen G.
                        Adrian, Gregory R. Muir, William L. Brooks,
                        Joseph J. Zito and Stephen B. Parker

Associate Attorney:    None

Accorded Benefit of:   Serial No. 08/030,183, filed 03/29/93

Address:    ARMSTRONG, WESTERMAN, HATTORI,
            McLELAND & NAUGHTON
            1725 K St., N.W., Suite 1000
            Washington, DC  20006

-3-

Serial No. 08/196,839

Count 1

A correction tape dispenser comprising a tape comprising a carrier ribbon with correction composition thereon, supply and take-up spools for the tape, a tip having an edge for pressing the tape against a surface, a portion of the tape between the supply and take-up spools being guided to extend around said edge, wherein the edge is inclined to a feed direction which is the direction of travel of the tape leaving the supply spool, and the tip includes guide means on either side of the edge which operate in conjunction with the shape of the tip for twisting the tape so that the path of the tape around the edge between the guide means is in a plane substantially perpendicular to said edge and inclined to the feed direction.

The claims of the parties which correspond to this count are:

Stevens:  Claims 1-5, 7-16 and 18-21

Tamai:    Claims 1-21

ANDREW H. METZ
Administrative Patent Judge
(703) 308-9797

AHM:clm

-4-

IAY. -16 97(FRI) 16:09    ARMSTRONG ET AL    TEL:202 331 7519    P. 008

Communications respecting this
e should identify it by number
t names of parties.




U.S. DEPARTMENT OF COMMERCE
Patent and Trademark Office

See Next page

Address:  BOX INTERFERENCE
Commissioner of Patents and Trademarks
Washington, DC 20231

Telephone:  (703) 308-9797
Facsimile:  (703) 308-7953

## MAILED

### MAY 0 9 1997

PAT. & T.M. OFFICE
BOARD OF PATENT APPEALS
AND INTERFERENCES

Interference No. 103,662

Stevens

v.

Tamai

This interference has been assigned to the undersigned in accordance with 37 CFR § 1.610.  All future papers filed in this interference should be captioned to include this information.

Any questions regarding procedure in this interference should be directed to the undersigned.  However, any such contact _must_ include the participation of both parties, for example via a conference call.

Each party is required to file a paper in accordance with 37 CFR § 1.613 identifying its lead attorney or agent (see 37 CFR § 1.601(k)) by no later than __2 3 MAY 1997__.  Future changes in the lead attorney or agent must likewise be called to the attention of this Board as soon as is reasonably possible.  No contact should be made with the undersigned by anyone other than the lead attorneys or agents.

The time for filing and serving notice of filing (but not serving) preliminary statements (37 CFR § 1.621 through 1.628) and for filing preliminary motions (37 CFR § 1.633 et seq., particularly § 1.637) is set to expire __0 9 AUG 1997__.

The parties' attention is directed to the requirements of 37 CFR § 1.602(b) and (c).

Calendars should be checked forthwith to determine if this time conflicts with any previous commitments.  If a conflict is found, lead counsel or agent should promptly contact the undersigned (with the participation of _both_ parties, note _supra_) by no later than __2 3 MAY 1997__ so other mutually satisfactory

DOCKETED

5-13-97

-1-

FORM PTO-78B
Rev. 11-95)

'97年05月19日 (月) 10:19 東ジ ー F 7人

Interference No. 103,662

arrangements can be made, keeping in mind the requirements of
37 CFR § 1.610(c). (See the time schedule outlined at 49 Fed.
Reg. 48,449 (December 12, 1984).) If no contact is made within
the time indicated, it will be presumed the times set herein are
satisfactory and no extensions of time should be requested or
expected. See 37 CFR § 1.645.

Summary of Times Running

1. Statements and Motions due _____ 0 9 AUG 1997 .

2. Identity of lead attorney or agent due _____ 2 3 MAY 1997 .

3. Contact regarding setting of times to expire _ 2 3 MAY 1997 .

ANDREW H. METZ
Administrative Patent Judge
(703) 308-9797

AHM:clm

-2-

# Exhibit 8

# ITAMI PATENT OFFICE

DAISAN BLDG.
2-4, 3-CHOME, NISHITENMA, KITA-KU,
OSAKA, 530, JAPAN.

TEL: (06)365-9078
CABLE: ITAMIPAT
FACSIMILE: (06)365-8577
(GII, GIII)

Law Offices
Armstrong,Westerman,Hattori,
McLeland & Naughton
Suite 1000, 1725 K Street, N.W.
Washington, D.C. 20006
U.S.A

May 20, 1997

VIA FACSIMILE

Dear Mr. Naughton:

Re : Interference No. 103,662
    U.S. Pat. Appln. No. 08/196,839
    Your ref: P1151-2717-A940094
    Our ref: P-123/SE.90

Thank you for your facsimile letter of May 16, 1997.

You will please file a paper identifying the lead attorney
on or before May 23, 1997.

We are of the opinion that since the priority date of the
captioned application is earlier than that of Gillette
patent, the captioned application should prevail over said
patent, as far as the invention described in the priority
document of the captioned application is concerned.

Please let us have your reply by return facsimile.

Yours faithfully,

K. Itami

KI/ky

# Exhibit 9

LAW OFFICES

## Armstrong, Westerman, Hattori, McLeland & Naughton

SUITE 1000
1725 K STREET, N.W.
WASHINGTON, D.C. 20006

———

(202) 659-2930
FACSIMILE (202) 887-0357
FACSIMILE (202) 331-7519
FACSIMILE (202) 887-5155

JAMES E. ARMSTRONG, III
WILLIAM F. WESTERMAN
KEN-ICHI HATTORI
LE-NHUNG McLELAND
RONALD F. NAUGHTON*
WILLIAM G. KRATZ, JR.*
MEL P. QUINTOS

PARTNER EMERITUS
JAMES P. WELCH

———

DONALD W. HANSON
STEPHEN G. ADRIAN*
WILLIAM L. BROOKS
AOI NAWASHIRO
GAY ANN SPAHN
PATRICK D. MUIR
JOHN P. KONG
LUKE A. KILYK
*ADMITTED TO OTHER THAN D.C. BAR

TOKYO LIAISON OFFICE
6TH FL., DIAMOND PLAZA BLDG.
25 ICHIBANCHO, CHIYODA-KU
TOKYO 102, JAPAN
TEL (03) 3234-8429
FACSIMILE (03) 3234-5643

———

PITTSBURGH OFFICE
THE LAW & FINANCE BUILDING
SUITE 707
429 FOURTH AVENUE
PITTSBURGH, PENNSYLVANIA
15219
TEL (412) 281-2981
FACSIMILE (412) 281-1821

———

OF COUNSEL
JOHN R. PEGAN
ALBERT TOCKMAN
JOHN F. CARNEY
EDWARD F. WELSH

JAPANESE BENRISHI
YOSHINARI KISHIMOTO
YASUHISA KUROSE

May 21, 1997

Mr. Kenji Itami
Itami Patent Office
Daisan Bldg.,
2-4, 3-chome, Nishitenma
Kita-ku, Osaka 530, JAPAN

RE:    U.S. Patent Appln. S.N. 08/196,839
       By: Shigeru TAMAI
       Your Ref: P123/SH.90
       Our Ref: P1151-2717-A940094

Dear Itami san:

Thank you for your letter of May 20, 1997. Mr. John Kong and I will be working on this interference case. In accordance with your instructions, we confirm that a paper identifying myself as the lead attorney will be filed on or before May 23, 1997.

As you have noted, our priority date of July 1, 1991 is earlier than the constructive date of invention of February 7, 1994 for the Gillette. While Gillette may rely upon an earlier date of conception, Gillette may be hard pressed to prove a date of conception more than two and a half years earlier than their filing date, with due diligence towards reduction to practice and the filing of the patent application over the two and half year interval. Thus, the present application appears to have a good chance for prevailing in this interference.

If your client wishes to proceed with this interference, preliminary matters must be initiated as soon as possible. For instance, the prosecution history for the Gillette patent must be ordered and reviewed in detail for potential attacks on the lack of support for the interference count, to be submitted in preliminary motions. In addition, we must review the present application in detail to anticipate potential attacks on the present application by Gillette, especially with regard to the support for the "new matter" introduced in the continuation-in-part application and also with regard to the support in the original priority document for the features recited in the interference count. Potential estoppel issues should also be considered with respect to both the Gillette patent and the present application.

Mr. Kenji Itami
Itami Patent Office
May 21, 1997
Page 2


      Since the above described preliminary matters may take significant time, with corresponding costs, we await your approval before we proceed further with this interference. We look forward to receiving your instructions and approval as soon as possible.

Very truly yours,

ARMSTRONG, WESTERMAN, HATTORI,
McLELAND & NAUGHTON

William F. Westerman

WFW:mlj

cc:    John P. Kong

# Exhibit 10

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

| | | |
|---|---|---|
| STEVENS | ) | Interference No. 103,662 |
| | ) | |
| v. | ) | Administrative Patent |
| | ) | Judge: Andrew H. Metz |
| TAMAI | | |

**Motion under 37 CFR § 1.633(f) to be Accorded the Benefit of the
Filing Dates of Earlier Filed Applications Pursuant to 37 CFR § 1.637(c)(1)(vi)**

**Box Interference**

Assistant Commissioner for Patents
Washington, D.C.  20231                                    October 21, 1997

Sir:

Pursuant to 37 CFR § 1.637(c)(1)(vi), with regard to the Substitute Count set forth in the

concurrently filed motion under 37 CFR § 1.633(c)(1), the party TAMAI hereby moves to be

accorded the benefit of:

1) the **July 31, 1991** filing date of the earlier filed Japanese Patent Application No. 3-

68371 (hereinafter, JP '371) of record;

2) the **July 24, 1992** filing date of the earlier filed PCT Application No.

PCT/JP92/00947 (hereinafter, PCT '947) of record; and

3) the **March 29, 1993** filing date of the earlier filed U.S. Patent Application S/N

08/030,183 (hereinafter, the '183 Application) of record.

The party TAMAI is entitled to the earlier filing date of the '183 Application with respect

to the Substitute Count for at least the same reasons that the party TAMAI was accorded the

1

benefit of the earlier filing date for the '183 Application with regard to the existing Count 1.
The disclosure of the '183 Application (and Fig. 1) is substantially similar to the party TAMAI's
pending U.S. application S/N 08/196,839 and support the terms of the Substitute Count for the
same reasons set forth in the corresponding motion under 37 CFR § 1.633(c)(1).

Likewise, the party TAMAI is entitled to the earlier filing dates of JP '371 and PCT '947
since the drawings of JP '371 and PCT '947 are exactly identical to the drawings of the parent
'183 Application, and the certified English language translation of JP '371 is substantially
identical to the specification of the '183 Application.    The disclosure of PCT '947 is
substantially the specification of JP '371.

Respectfully submitted,

ARMSTRONG, WESTERMAN, HATTORI,
McLELAND & NAUGHTON

William F. Westerman
Reg. No. 29,988

Atty. Docket No. 9400941
1725 K Street, N.W., Suite 1000
Washington, D.C.  20006
Tel:  (202) 659-2930
Fax:  (202) 887-0357
JPK

2

# Exhibit 11

07-08-'02 16:06  FROM-Armstrong,Westerman    202-293-7726    T-670  P02/33  U-043

LAW OFFICES

# ARMSTRONG, WESTERMAN & HATTORI, LLP

SUITE 1000
1725 K STREET, N.W.
WASHINGTON, D.C. 20006

(202) 659-2930
FACSIMILE (202) 887-0357
FACSIMILE (202) 331-7519
FACSIMILE (202) 887-5155
VIDEO (202) 728-6844
www.armstrongpat.com

JAMES E. ARMSTRONG, III
WILLIAM F. WESTERMAN
KEN-ICHI HATTORI
WILLIAM G. KRATZ, JR.*
MEL R. QUINTOS
DONALD W. HANSON
STEPHEN G. ADRIAN
SCOTT M. DANIELS
WILLIAM L. BROOKS
THOMAS J. MACPEAK
JOHN K. CARNEY
JOHN P. KONG

JAMES E. ARMSTRONG, IV
SADAO KINASHI
THOMAS E. BROWN*
MICHAEL J. CARIDI
MICHAEL S. ALPRIN*
JOSEPH L. FELBER
KENNETH H. SALEN*
MICHAEL N. LAU
GEORGE N. STEVENS*
*Practice limited to matters and proceedings
before federal courts and agencies

TOKYO LIAISON OFFICE
6th Fl., Diamond Plaza Bldg.
25 Ichibancho, Chiyoda-Ku
Tokyo 102, Japan
Tel. (03) 3234-8429
Facsimile (03) 3234-5843

PITTSBURGH OFFICE
The Law & Finance Building
Suite 707, 429 Fourth Avenue
Pittsburgh, Pennsylvania 15219
Tel. (412) 281-2391
Facsimile (412) 281-1821

BALTIMORE OFFICE
502 Washington Avenue, Suite 220
Towson, Maryland 21204
Tel. (410) 337-2295
Facsimile (410) 337-2298

SENIOR COUNSEL
LEONARD BLOOM

OF COUNSEL
RONALD F. NAUGHTON*
EDWARD F. WELSH*
NICOLAS E. SECKEL*
NICHOLAS S. BROMER*
EDWARD F. KENEHAN, JR.

JAPANESE BENRISHI
SHUJI YOSHIZAKI
YASUHISA KUROSE

PATENT AGENTS
JAMES N. BAKER
DANIEL A. GESELOWITZ, Ph.D.

July 8, 2002

** VIA FACSIMILE **

Mr. Kenji Itami
ITAMI PATENT OFFICE
Daisan Bldg.
2-4, 3-Chome, Nishitenma
Kita-ku, Osaka 530
JAPAN

Re:    Interference No. 103,662
       U.S. Serial No.: 08/196,839
       By: TAMAI, Shigeru
       Your Ref: P123/SE.90
       Our Ref: P1151-2717-A940094I

Dear Itami san:

We are enclosing two (2) copies of the decision recently received from the Board of Patent Appeals and Interferences. This is a decision in our favor. The Board has indicated that a judgment is entered against Stevens and that Stevens is not entitled to claims 1-5, 7-16 and 18-21 of their involved patent and claims 1-5, 7-16 and 18-21 of their reissue application.

We will study the decision in detail and give you our in depth analysis within a week or so.

With best regards,

Very truly yours,

ARMSTRONG, WESTERMAN & HATTORI, LLP

William F. Westerman

WFW/klh
Enclosures:    Decision (2)

07-08-'02 16:07 FROM-Armstrong,Westerman    202-293-7726    T-670 P03/33 U-043



940094 I
Callop Ims
Paper No. 78
July 25, 2002

Filed by: Merits panel
Box Interference
Washington, D.C. 20231
Tel: 703-308-9797
Fax: 703-308-7953

The opinion in support of the decision being entered today is not binding precedent of the Board.

RECEIVED
JUN 28 2002
ARMSTRONG, WESTERMAN, HATTORI, LLP

## UNITED STATES PATENT AND TRADEMARK OFFICE

### BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

MAILED

JUN 25 2002

PAT. & T.M. OFFICE
BOARD OF PATENT APPEALS
AND INTERFERENCES

CHRISTOPHER J. STEVENS,

Junior Party,
(P.N. 5,393,368)

v.

SHIGERU TAMAI,

Senior Party.
(S.N. 08/196,839)

Patent Interference No. 103,662

Before: CRAWFORD, GARDNER-LANE, and MEDLEY, Administrative Patent Judges.

CRAWFORD, Administrative Patent Judge.

-1-

Interference No. 103,662

### FINAL DECISION

This interference was declared on May 9, 1997. Tamai's involved
application Serial No. 08/196,839 was filed on February 15, 1994.
Stevens' involved U.S. Patent No. 5,393,368 was filed on February
7, 1994 and issued on February 28, 1995. At the time this
interference was declared, Tamai was accorded the benefit of U.S.
Serial No. 08/030,183 ("'183 application") which was filed March
29, 1993 and was accorded senior party status on that basis.
Stevens filed a reissue application Serial No. 08/940,815 on
September 30, 1997. Stevens' reissue application was added to
this interference on September 28, 2000.

The invention at issue in this interference relates to a
correction tape dispenser. The particular subject matter in
issue is illustrated by count 1, the sole count, as follows:

A correction tape dispenser comprising:

a tape comprising a carrier ribbon with correction
composition thereon,

supply and take-up spools for the tape,

a tip having an edge for pressing the tape against a
surface

a portion of the tape between the supply and take-up
spools being guided to extend around said edge

-2-

Interference No. 103,662

      wherein the edge is inclined to a feed direction which
is the direction of travel of the tape leaving the supply
spool, and

the tip includes guide means on either side of the edge
which operate in conjunction with the shape of the tip
for twisting the tape so that the path of the tape
around the edge between the guide means is in a plane
substantially perpendicular to said edge and inclined
to the feed direction.

The claims of the parties which correspond to this count are:

    Stevens' patent: Claims 1 though 5, 7 through 16 and 18
through 21.

    Stevens' reissue application: Claims 1 through 5, 7 through
16 and 18 through 21.

    Tamai's application: Claims 1 through 21.

The following matters are before us for review:

(a)  Stevens' motion under 37 CFR § 1.633(a) for judgment.

(b)  Stevens' motion under 37 CFR § 1.633(f) to be accorded
     the benefit of earlier filed priority applications.

-3-

Interference No. 103,662

> (c)  Stevens' motion under 37 CFR § 1.633(g) to deny benefit
>       of earlier filed application to party Tamai accorded in
>       notice of interference.
>
> (d)  Tamai's motion under 37 CFR § 1.633(f) for benefit of
>       earlier filed foreign priority applications.
>
> (e)  Stevens' motion under 37 CFR § 1.633(c) to redefine
>       interference subject matter by designating claims of
>       Stevens' U.S. Patent 5,393,368 as not corresponding to
>       the count.
>
> (f)  Stevens' motion to suppress evidence pursuant to 37 CFR
>       § 1.656(h).
>
> (g)  Stevens' objections to evidence of Senior party Tamai.

<u>Redeclaration</u>

The count as originally filed is identical to Stevens' claim
1 and Tamai's claim 20.  The claims, however, include means plus
function language i.e.:

> guide means on either side of the edge which operate in
> conjunction with the shape of the tip for twisting the
> tape so that the path of the tape around the edge
> between the guide means is in a plane substantially
> perpendicular to said edge and inclined to the feed
> direction.

When an element in the claim is expressed as a means for
performing a specified function, the claim shall be construed to
cover the corresponding structure described in the specification

-4-

Interference No. 103,662

and equivalents thereof. 35 U.S.C. § 112, paragraph six. Thus,
it is possible to have two identical claims with slightly
different meanings.

This interference is hereby redeclared, so that the count is
the disjunctive alternative union of Stevens' claim 1 and Tamai's
claim 20.

The claims of the parties that correspond to the count
remain the same.

Thus, for purposes of the priority, a party may demonstrate
priority with respect to Stevens' claim 1, which will be
interpreted in view of the Stevens specification, or with respect
to Tamai's claim 20, which will be interpreted in view of the
Tamai specification.


Stevens' Motion under § 1.633(a)

Stevens seeks to have the interlocutory order denying its
motion under CFR § 1.633(a) modified. Stevens argues in this
motion that claim 20 of Tamai's involved application is
unpatentable under 35 U.S.C. § 112, first paragraph, because, in
Stevens' view, the Tamai application does not contain a written
description of the subject matter of claim 20. Stevens also
argues that the disclosure of the Tamai application does not

-5-

Interference No. 103,662

enable a person of ordinary skill in the art to make and use the
invention.

As this is a substantive issue, we review this interlocutory
order de novo.

Written Description

In regard to the written description requirement, Stevens
argues that the Tamai description does not disclose:

the tip includes guide means on either side of the edge
which operate in conjunction with the shape of the tip
for twisting the tape so that the path of the tape
around the edge between the guide means is in a plane
substantially perpendicular to said edge and inclined
to the feed direction.

Specifically, Stevens argues that Tamai does not describe a
tip which includes a guide means on either side of the edge which
operates in conjunction with the shape of the tip for twisting
the tape. In Stevens' opinion, the head 18 of the Tamai device
is the only portion of the Tamai device that can be called the
tip. Stevens argues that head 18 does not have guide means on
either side of the edge. In Stevens' opinion, the flanges 33 are
the only guide means on the side of head 18 and these flanges 33
do not perform any twisting function.

Central to Stevens' argument is their contention that the
tip in Tamai is the head 18.

-6-

Interference No. 103,662

We note that in construing claims in an interference for purposes of a motion under 37 CFR § 1.633(a), the claim is construed in light of the specification of the application in which it appears.  As such, we will construe the term "tip" in claim 20 of the Tamai application in light of the disclosure of the Tamai application.

The Tamai application does not explicitly describe a tip. However, the test for determining compliance with the written description requirement is whether the disclosure of the application as originally filed reasonably conveys to the artisan that the inventor had possession at that time of the later claimed subject matter, rather than the presence or absence of literal support in the specification for the claim language.  See Vas-Cath, Inc. v. Mahurkar, 935 F.2d 1555, 1563-64, 19 USPQ2d 1111, 1116-17 (Fed. Cir. 1991) and In re Kaslow, 707 F.2d 1366, 1375, 217 USPQ 1089, 1096 (Fed. Cir. 1983).

The Tamai application describes a correction tape dispenser having supply and take-up spools, 15 and 16 respectively.  The tape is fed out of the supply spool 15 guided on its path by pin 21, guide pin 22, a slit 20 and a flange 33 to arrive at head 18. The tape is then guided on its path from the head 18 by the other flange 33, the other slit 20 and the other guide pin 23 to arrive at the take-up spool 16.

-7-

Interference No. 103,662

Stevens argues that the term "tip" which is recited in claim 1 of Stevens is the tip 10. Therefore, the tip which is recited in claim 20 of the Tamai application must be the head 18.

We do not agree with Stevens that the tip recited in claim 1 of the Stevens patent is necessarily the tip 10. In our view, the recitation of a "tip" in claim 1 of Stevens is broad enough to refer to the tip member 10. This interpretation is especially compelling to us in view of the recitation in claim 6 of the Stevens patent of a unitary member. However, as we stated above, claim 20 of the Tamai application is construed in light of the Tamai application for the purposes of a § 1.633(a) motion. As the Tamai application does not expressly define a tip, this term is given its customary meaning. We note that the Webster's Third New International Dictionary (G&C Meriiam Co., 1981) defines "tip" as "a pointed or rounded extremity of something" and defines an extremity as "an outlying or terminal part, section or point." When claim 20 is given its broadest reasonable interpretation, we find that the term "tip" is broad enough to include the section of the device below the take-up spool 16.

In the Tamai device, the tape is guided on its path below the take-up spool 16 by guide means 22 and 23, slits 20, and flanges 33. As such, these elements together form the guide means recited in claim 20.

-8-

Interference No. 103,662

The tape leaving guide pin 21 is guided and twisted by the combination of actions of the guide pins 22, 23, flanges 33 and head 18. Stevens argues that this twisting is done solely by the pins 22, 23. We do not agree because the twisting of the tape could not be accomplished without the anchoring actions of slits 20 and flanges 33. The twisting would also not be achieved without the overall configuration or shape of the tip of the device. In addition, the shape of the head 18, which is a portion of the tip, guides the tape so that it is traveling in a plane substantially parallel to the edge of the device.

In regard to the language that the path of the tape around the edge is inclined to the feed direction, Stevens argues that this feed direction is the direction of the tape as it leaves the guide pin 22 and that because the tape is traveling parallel to the axis of the device as it leaves pin 22 and also traveling to the head 18 in a direction parallel to the axis of the device, the path of the tape is not inclined to the feed direction.

Claim 20 recites that the feed direction is the direction of travel of the tape leaving the supply spool. In the Tamai device, the tape leaves the supply spool 15 at an angle with respect to the axis of the device while the tape travels parallel to the axis of the device as it travels to the head 18. As such,

-9-

Interference No. 103,662

the path of the tape is clearly inclined to the feed direction as
it travels to the head.

### Enablement

In regard to the question of enablement, Stevens argues that
there is no guidance in the Tamai disclosure of how to provide
guide means in the head 18 which Stevens views as the tip. As we
have stated above, the tip language in claim 20 is broad enough
to include the portion of the Tamai device which is below the
take-up spool 16. As the guide means includes pins 22, 23, slits
20, and flanges 33, the guide means is disposed at least in part
on either side of the edge of the device. Accordingly, Tamai
does include a description that would enable one of ordinary
skill in the art to make or use a guide means on either side of
the edge.

Stevens also argues that there is no recognition that the
peak portion of the head 18 is inclined relative to the
tape feed direction to allow the coating file transfer tool to be
angled forwardly and downwardly in a pen like manner in use.
We note initially that claim 20 does not recite that the
coating film transfer tool in use is angled forwardly and
downwardly in a pen like manner. Therefore, this portion of the
argument is not persuasive because it is not commensurate with

-10-

Interference No. 103,662

the actual scope of claim 20. Furthermore, as stated above, the
edge of the head 18 is disposed parallel to the case body and the
tape leaves spool 15 at an angle to the axis of the device.
Thus, head 18 is inclined relative to the tape feed direction.

Stevens further argues that the Tamai application lacks
sufficient information on the construction of the tape dispenser
to enable a person of ordinary skill in the art to make and use
the claimed invention. Specifically, Stevens argues that the
Tamai application contains no explanation of how the peak portion
32 of the head 18 is supported by the case 11.

An analysis of whether the claims are supported by an
enabling disclosure requires a determination of whether that
disclosure contains sufficient information regarding the subject
matter of the appealed claims as to enable one skilled in the
pertinent art to make and use the claimed invention. The test
for enablement is whether one skilled in the art could make and
use the claimed invention from the disclosure coupled with
information known in the art without undue experimentation. See
United States v. Telectronics, Inc., 857 F.2d 778, 785, 8 USPQ2d
1217, 1223 (Fed. Cir. 1988), cert. denied, 109 S.Ct. 1954 (1989);
In re Stephens, 529 F.2d 1343, 1345, 188 USPQ 659, 661 (CCPA
1976).

-11-

Interference No. 103,662

Thus, the dispositive issue is whether Tamai's disclosure, considering the level of ordinary skill in the art as of the date of Tamai's application, would have enabled a person of such skill to make and use the Tamai device without undue experimentation.

In our view, Stevens has not met its burden with respect to this aspect of the enablement issue because Stevens has not even addressed the issue of whether a person of ordinary skill in the art would have known how to attach the head 18 to the case 11 without undue experimentation. In other words, even though the connection of the head 18 to the case 11 is not explicitly disclosed in the Tamai application, Stevens has the burden of establishing that a person skilled in the art would not have known how to secure the head 18 to the case without undue experimentation. This Stevens has not done and as such this portion of the enablement argument also fails.

In view of the foregoing, we will not modify the interlocutory order denying Steven's motion under 37 CFR § 1.633(a).

### Tamai's benefit application

In the notice declaring this interference, Tamai was accorded the benefit of an application Serial No. 08/030,183 filed March 29, 1993 ("183 application"). Stevens has filed a

-12-

Interference No. 103,662

motion under 37 CFR § 1.633(g) requesting that Tamai be denied
benefit of this application because in Stevens' opinion, Tamai's
application does not contain adequate support for the following
claim limitation:

> the tip includes guide means on either side of the edge
> which operate in conjunction with the shape of the tip
> for twisting the tape so that the path of the tape
> around the edge between the guide means is in a plane
> substantially perpendicular to said edge and inclined
> to the feed direction.

In order to prevail on this motion, Stevens must prove that the
'183 application does not describe an embodiment within the scope
of the count. <u>Hunt v. Treppschurch</u>, 523 F.2d 1386, 1389, 187
USPQ 426, 429 (CCPA 1975).

Before this motion can be analyzed, we must first construe
the elements included in the count. Specifically, we must
interpret what is meant in the count by the language "tip,"
"guide means," and "inclined to the feed direction."

We note that Stevens has compared the language of claim 20
of the Tamai application with the disclosure of the '183
application and asserts that Tamai's claim 20 is not supported by
the '183 application.

Benefit for the purposes of priority in an interference
declared under 35 U.S.C. § 135(a) is something different than
benefit for the purpose of overcoming prior art. <u>Anderson v.</u>

-13-

Interference No. 103,662

Norman, 185 USPQ 371, 372 (Comm'r Pat. 1968). A benefit
application need only describe a single enabled embodiment within
the scope of the count to constitute a constructive reduction to
practice of the invention of the count. Hunt v. Treppschuh, 523
F.2d at 1389, 187 USPQ at 429; see also Weil v. Fritz, 572 F.2d
856, 865 n.16, 196 USPQ 600, 608 n.16 (CCPA 1978).

For an earlier-filed application to serve as constructive
reduction to practice of the subject matter of an interference
count, the earlier application must reasonably convey that the
inventor had possession at the time of the later claimed subject
matter.

It is well settled that counts should be given their
broadest reasonable interpretation and that only when there is
ambiguity can resort be had to the specification. Reese v.
Hurst, 661 F.2d 1222, 1236, 211 USPQ 936, 949-50 (CCPA 1981); In
re Baxter, 656 F.2d 679, 686, 210 USPQ 795, 802 (CCPA 1981). We
note that broad count language is not ambiguous merely because it
reads on more than one embodiment. Kroekel v. Shah, 558 F.2d 29,
32, 194 USPQ 544, 547 (CCPA 1977). Nor is an ambiguity
established by the fact that the parties offer different
interpretations of the count. Id. The rationale for this
reasoning is that when an applicant selects language which is
somewhat broad in scope, he takes the risk that others with

-14-

Interference No. 103,662

specifically different structures may be able to meet the
language selected; he will not be permitted to later urge that
the selected language should only be read in light of his
disclosure merely because the language originated with him. .
Hemstreet v. Rohland, 433 F.2d 1403, 1406, 167 USPQ 761, 763
(CCPA 1970).

The count includes a tip having an edge for pressing the
tape against the surface.  Stevens has not established that this
language is ambiguous.  In fact, Stevens has not addressed the
ambiguity of the count language in their opening brief.  In the
reply brief, Stevens argues that if an ambiguity exists, it
arises from the interpretation given the term "tip" by the
interlocutory order and by Tamai.  However, Stevens must prove
that there is an ambiguity in the count language itself to
warrant resort to the Stevens specification to interpret the
count.

We do not find that there is ambiguity in regard to the
language in the count directed to the tip and as such, we will
give this language its broadest reasonable interpretation.

In regard to the language "guide means on either side of the
. . . tip . . . for twisting the tape" which is set out in means
plus function format, it is interpreted in view of the

-15-

Interference No. 103,662

specification of the Tamai application or the Stevens patent in view of our Redeclaration.

When interpreted in view of the Tamai specification, this language refers to the operation of the guide pins 22, 23, flanges 33 and slits 20 which are disposed on either side of the tip (the portion of the device below reel 16) as we discussed above in our analysis of the Stevens' motion under 37 CFR § 1.633(a).

When interpreted in view of the Stevens specification, this language refers to the prepositioning posts 7, 8, and 9, the guide ridges 11 and 12 in the embodiment disclosed in Figure 1 and it refers to the guide pegs 22 and 23 and the wings 16 in the embodiment disclosed in Figure 8. We note that Stevens refers to posts 7, 8, and 9 as guiding means (col. 3, lines 25 to 30).

In regard to the language "the edge is inclined to a feed direction which is the direction of travel of the tape leaving the supply spool," there is no ambiguity. In our view, this language refers to the direction the tape is traveling as it leaves the supply spool 3 in Stevens and the direction the tape is traveling as it leaves the supply spool 15 in Tamai.

-16-

Interference No. 103,662

The '183 application

Stevens specifically argues that the '183 disclosure does not disclose the unique tip construction of the count.

Stevens argues that the tip which is disclosed in the '183 application is the head 18 and that the head 18 does not include guide means on either side of the edge. As we stated above, we do not agree that the tip which is recited in the count must be construed so narrowly. In our view, the term "tip" is broad enough to encompass more than the head 18. Specifically, the term tip may be interpreted to include the portion of the '183 device below the reel 16.

Stevens argues that the term "tip" as defined by Webster's Third New International Dictionary is a small piece or part (as a belt, shoe, cane, pen or billiard cue) designed to serve as an end, cap or point and made usually of metal, leather, or other durable substance. Stevens then concludes that only peak portion 32 of head 18 is the tip. We must point out that the proceeding dictionary definition indicates that the tip may be a part which serves as an end. In addition, the first definition given for "tip" in Webster's Third New International Dictionary as we discussed above is "a pointed or rounded extremity of something" and further defines extremity as "an outlying or terminal part, section or point". When this broad definition is considered, it

-17-

Interference No. 103,662

is clear that the broadest reasonable construction of the term

"tip" would include the tip member 10

in the Stevens device and the portion below the reel 16 in the

Tamai device.

Stevens views the ridges 11 and 12 disclosed in Stevens to

be the only elements in the Stevens device which comprise the

guide means of the count.

However, Stevens discloses:

A length of tape extending between the supply and take-
up spools is guided to pass around the tip edge 6. The
guiding means include tape positioning means provided
by posts 7, 8, and 9 . . .[col. 3, lines 23 to 27].

Therefore, in our view the guide means in the first embodiment

disclosed in Stevens is a combination of elements, namely, the

prepositioning posts 7, 8, and 9 and the ridges 11 and 12.  In

addition, the guide means that is disclosed in the embodiment

disclosed in Figure 8 includes pegs 22 and 23 and wing

projections 16 which is very similar to the guide means disclosed

in Tamai.

In any case, in view of our redeclaration in this

interference, the guide means language can be interpreted in

terms of the Tamai disclosure or the Stevens disclosure.  When

this language is interpreted in view of the Tamai disclosure, it

is clear that the guide means of the count is disclosed in the

-18-

Interference No. 103,662

'183 specification as guide pins 22 and 23, slits 20 and flanges
33 as these elements operate to guide the travel of the tape.

In regard to the language about the direction of travel of
the tape leaving the spool, Stevens argues that the '183
disclosure is totally devoid of any discussion of the tape feed
direction and the relationship of the tape feed direction to the
peak portion 32 of the head 18.

While it is true that the '183 disclosure does not
specifically discuss the relationship of the travel of the tape
leaving the spool and the edge of the tip, it is clear from
Figure 1 of the '183 disclosure, that the tape leaves the feed
reel at an inclined angle with respect to the plane of the edge.

Stevens also argues that the '183 application does not meet
the enablement requirements of 35 U.S.C. § 112. Steven's
argument in regard to enablement is that the '183 application
does not explain how to provide guide means on the head 18 and
how to arrange the guide means on the head 18 to cooperate with
the shape of the head to achieve the travel of the tape in the
desired path perpendicular to the peak portion 32 and inclined to
the feed direction.

As we have interpreted the tip language of the count to be
broad enough to include the portion of the device below the
winding reel, we do not find this argument persuasive. The tip

-19-

Interference No. 103,662

of the '183 as depicted in Figure 1, includes the guide means as
recited in the count as we have discussed above.

In view of the foregoing, the Junior party's motion to deny
the Senior party's benefit in the '183 application is <u>denied</u>.

<u>Tamai's PCT and JP applications</u>

Tamai has moved for the benefit of earlier filed PCT and
Japanese applications. Tamai has identified the applications as
Japanese Patent Application No. 3-68371 ("JP '371") and PCT
Application No. PCT/JP92/00947 ("PCT application"). The PCT
application is part of the file wrapper of the '183 application
and JP '371 is part of the file wrapper for the involved Tamai
application and the '183 application. Translation of the JP '371
application is part of the file wrapper of the involved Tamai
application. A copy of the translation of the JP '371
application was attached with the motion. Copies of translations
of these documents were served on Stevens with the Reply to the
Opposition to this motion.

The motion indicates that the written specification of the
JP '371 and the PCT application are substantially identical to
the specification of the '183 application and that the drawings
of the JP '371 application and the PCT application are exactly
identical to the drawings of the '183 application and that thus

-20-

Interference No. 103,662

Tamai is entitled to the benefit of the JP '371 and PCT
application for the same reasons that it is entitled to the
benefit of the '183 application.

Stevens has opposed this motion stating that (1) Tamai has
failed to submit a copy of the JP '371 and PCT application with
the motion, (2) Tamai failed to make a showing that the JP '371
and PCT application constitute a constructive reduction to
practice of the count and (3) no statement of material facts was
submitted by Tamai to support the motion.

It is true that Tamai did not file a copy of the JP '371 and
PCT applications, or a translation of the PCT application with
the motion.  Tamai did file a translation of the JP '371
application with the motion.  In fact, Stevens analyzes the
subject matter disclosed in the JP '371 application in its
opposition with reference to the translation of the JP '371
application.  In addition, copies of both applications are a part
of the file wrapper of the '183 application and a translation of
the JP '371 application is part of the file wrapper for the
involved application.  As such, Stevens did have access to the
copies and translations of the JP '371 at the time of the motion.
Therefore, Tamai's failure to submit copies of the JP '371
application and its translation did not prejudice Stevens.  As

-21-

Interference No. 103,662

such, in the interest of justice, we will consider the motion as
it is directed to JP '371.

However, Tamai did not supply a translation of the PCT
application, nor does it appear that Stevens was in possession of
the application or the translation. Although Tamai alleges that
the PCT application has the same disclosure as the JP '371 and
submitted a declaration executed by Sadao Kinashi attesting to
the fact that the disclosures of the PCT application and JP '371
are the same, Stevens was not given the opportunity to examine
the disclosures and translations for themselves. Therefore, we
will not grant the motion as it is directed to the PCT
application.

In regard to Stevens' allegation that the motion failed to
include a statement of material facts and to prove that the
disclosure of the JP '371 application is a constructive reduction
to practice of the count, we disagree. The motion clearly states
that the drawings of the JP '371 application are identical to the
drawings of the '183 application. We note that Figure 1 of the
JP '371 application and Figure 1 of the '183 application are
identical. And from this figure, it is clear that the '183
device includes the elements of the count. Tamai also argues
that the specification of the JP '371 application is
substantially identical to the specification of the '183

-22-

Interference No. 103,662

application.  As such, in our view, Tamai did include in the
motion a statement of material facts to prove that the disclosure
of the JP '371 application is a constructive reduction to
practice of the count.

Stevens also argues that the disclosure of the
JP '371 application does not meet the requirements of 35 U.S.C.
§ 112, first paragraph, because in Stevens' opinion, the
disclosure does not contain a written description of the
invention of the count and does not enable a person of ordinary
skill in the art to make and use the invention of the count.
Specifically, Stevens argues that the disclosure of the JP '371
application does not include a guide means on either side of the
tip which operates with the tip shape to twist the tape, the tape
path is not in a plane substantially perpendicular to the tip
edge and that the JP '371 application does not enable a person of
ordinary skill in the art to include a guide means in the tip of
the device.  We do not agree with this analysis for the reasons
stated above in our discussion of Tamai's preliminary motion for
benefit for the '183 application.

For the foregoing reasons, we will grant the Senior party's
motion for benefit as it is directed to the JP '371 application
but will deny this motion with regard to the PCT application.

-23-

Interference No. 103,662

## Motion to suppress and Objections to evidence

Stevens has objected to and moved to suppress the JP '371 and the translation of JP '371 which are Exhibits 6 and 7 respectively. Stevens argues that Tamai did not certify in the Preliminary Motions under 37 CFR § 1.633(f) that the copy of the JP '371 was served on Stevens as is required by 37 CFR § 1.637(f)(2). As we stated above, while it is true that Tamai did not file a copy of JP '371 when the preliminary motion to be accorded the benefit of the filing date of JP '371 was filed, a translation of the document was served with the motion and the document itself was a part of the file wrapper of the '183 application which Stevens had access to. Therefore, in our opinion, it is in the interest of justice that this document be considered as evidence.

Stevens also argues that Tamai has failed to establish that this document is a constructive reduction to practice of the count. However, this argument goes to the sufficiency of the document rather than whether the document should be entered as evidence. In any case, as we discussed above, it is our view that Tamai has established that the JP '371 application is a constructive reduction to practice of the count.

Stevens has also moved to suppress the translation of JP '371 because in Stevens' view, Tamai did not show that the

-24-

Interference No. 103,662

translation constitutes a reduction to practice of the count.  We
do not agree for the reasons stated above.

As such, we consider JP '371 as evidence in spite of the
objections of Stevens and the motion as it is directed to JP '371
and its translation is <u>denied</u>.

The motion and the objections are  also directed to various
other exhibits of Tamai but as these exhibits are not relied on
in making our decision, the motion and objections in regard to
these other exhibits are <u>moot</u>.

Therefore, Tamai has established a constructive reduction to
practice of the count as of July 31, 1991.

<u>Stevens' motion for benefit</u>

Stevens has moved for benefit of the filing date of several
European applications.  The motion is unopposed.   Therefore, we
will grant Stevens' motion for benefit.  As such, Stevens has
established a constructive reduction to practice of the count as
of February 10, 1993.

<u>Stevens' motion to redefine</u>

Stevens seeks review of the interlocutory order that denied
its motion to redefine the interfering subject matter by
designating claims 2 to 5, 7 to 16 and 18 to 21 as not

-25-

Interference No. 103,662

corresponding to the count.  Stevens alleges that the APJ failed to consider the declaration of Joseph Vallera or to analyze the dependent claims.

We note that a party has the burden of establishing by a preponderance of the evidence that any argued claim is separately patentable or patentably distinct with respect to the prior art in accordance with the guidelines set forth in Graham v. John Deere.  See 37 CFR § 1.637(c)(4)(ii) and § 1.601(n).  Mere reference to a claimed feature which is not disclosed by the prior art and not included in the count does not per se establish "separate patentability" within the meaning of § 1.601(n).  Rather, the question is whether that feature would have been obvious to a person of ordinary skill in the subject art.  For example, we note that Stevens does not allege that he knows of no prior art that would render its claims 1 through 5, 7 through 16 and 18 through 21 unpatentable over Tamai's claims.

In regard to claims 2 to 4 and 7 to 10, Stevens argues that the particular features of these dependent claims are not included in the count.  With reference to the Form 850, in regard to claims 5, 11 to 16 and 18 to 21, Stevens argues that neither the count nor JP 63-56690 includes or discloses the particular features of the count.  However, Stevens has not established that the features that are recited in these claims render the claims

-26-

Interference No. 103,662

separately patentable from any other claim whose designation to
the count Stevens does not dispute. Stevens has failed to
present any evidence that the claimed configurations are
something more than obvious variations well within the ordinary
skill of those versed in the art. Nor has Stevens established or
even argued that the use of the claimed configurations in lieu of
that disclosed in the prior art solves a particular problem or
otherwise provides a particular benefit. In re Kuhle, 526 F.2d
553, 555, 188 USPQ 7, 9 (CCPA 1975).

For example, claim 2 recites that the guide means comprises
a linear edge around which the tape passes from one side to the
other side. Stevens argues that the count does not include such
a linear edge. Stevens has not established that this edge has
patentable significance. In this regard, we note that the other
embodiments disclosed in Stevens do not include such an edge (see
Figures 6 to 9). In addition, Stevens has not pointed to any
portion of the specification, and we can find none, which
establishes that the provision of the linear edge as the guide
means solves any problems or produces any unexpected results.

In regard to claim 5, for example, Stevens argues that
neither JP 63-56690 nor the count includes tape positioning means
to determine a first fixed position from which the tape passes to
the tip in the feed direction. While this may be so, Stevens has

-27-

Interference No. 103,662

not established that the provision of the fixed position solves
any problem or produces any unexpected result and would therefore
render claim 5 separately patentable. Again, as we view the
embodiment in Figures 6 and 7, no such fixed position is
provided.

Stevens directs our attention to the declaration of Joseph
Vallera (JP record, tab 2) which the Junior party asserts was
misconstrued by the examiner and incorrectly applied to Stevens'
claims 5, 11 to 16 and 18 to 21. Stevens does not indicate where
such analysis is located in the Vallera declaration. We have
reviewed the Vallera declaration and fail to find an analysis of
how the JP 63-56690 reference relates to the subject matter of
claims 5, 11 to 16 and 18 to 21. The Vallera declaration does
discuss the JP 63-56690 reference on page 17 but only discusses
what the JP 63-56690 reference teaches. The Vallera declaration
does not discuss claims 5, 11 to 16 and 18 to 21 in relation to
the JP 63-56690 reference. The Vallera declaration does not
discuss the obviousness of the features recited in claims 5, 11
to 16 and 18 to 21.

In view of the foregoing, we will not modify the
interlocutory order denying this motion.

-28-

Interference No. 103,662

<u>Judgment</u>

Because Tamai has established a constructive reduction to practice of July 31, 1991 and Stevens has established a constructive reduction to practice of February 10, 1993, judgment is herein entered against Stevens. Accordingly, Stevens is not entitled to claims 1 through 5, 7 through 16 and 18 through 21 of their involved patent or of claims 1 through 5, 7 through 16 and 18 through 21 of their reissue application which correspond to the count.

In view of the Redeclaration of the interference (supra at 4-5), the parties shall, within the time set for requesting reconsideration under 37 CFR § 1.658(b), present any arguments

07-08-'02 16:13 FROM-Armstrong,Westerman    202-293-7726    T-670 P32/33 U-043

Interference No. 103,662

for reconsideration and, if the parties present any new

arguments, explain why the arguments are necessitated by the

Redeclaration.

Murriel E. Crawford                              )
Administrative Patent Judge                      )
                                                 )
                                                 )
                                                 )
Sally Gardner-Lane                               )    BOARD OF PATENT
Administrative Patent Judge.                     )      APPEALS AND
                                                 )     INTERFERENCES
                                                 )
                                                 )
Sally C. Medley                                  )
Administrative Patent Judge                      )

MEC:tdl

-30-

Interference No. 103,662

Attorney(s) for Stevens

Charles P. Boukus, Jr.
Suite 202
2001 Jefferson Davis Highway
Arlington, VA 22202

Attorneys for Tamai

William F. Westerman
1725 K Street, N.W., Suite 1000
Washington, D.C. 20006

-31-

# Exhibit 12

07-11-'02 17:27 FROM-Armstrong,Westerman    202-293-7120    P.11  T02/04  F-333

LAW OFFICES

# ARMSTRONG, WESTERMAN & HATTORI, LLP

SUITE 1000
1725 K STREET, N.W.
WASHINGTON, D.C. 20006

(202) 658-2930
FACSIMILE (202) 887-0357
FACSIMILE (202) 331-7519
FACSIMILE (202) 887-5165
VIDEO (202) 728-6844
www.armstrongpat.com

JAMES E. ARMSTRONG, III
WILLIAM F. WESTERMAN
KEN-ICHI HATTORI
WILLIAM G. KRATZ, JR.*
MEL R. CLINTOS
DONALD W. HANSON
STEPHEN G. ADRIAN
SCOTT M. DANIELS
WILLIAM L. BROOKS
THOMAS J. MACPEAK
JOHN F. CARNEY
JOHN P. KONG

JAMES E. ARMSTRONG, IV
SADAO KINASHI
THOMAS E. BROWN*
MICHAEL J. CARIDI
MICHAEL S. ALPRIN*
JOSEPH L. FELBER
KENNETH H. SALEN*
MICHAEL N. LAU
GEORGE N. STEVENS*
*Practice limited to matters and proceedings
before federal courts and agencies

TOKYO LIAISON OFFICE
6TH FL., DIAMOND PLAZA BLDG.
25 ICHIBANCHO, CHIYODA-KU
TOKYO 102, JAPAN
TEL. (03) 5234-8429
FACSIMILE (03) 3234-5843

PITTSBURGH OFFICE
THE LAW & FINANCE BUILDING
SUITE 707, 429 FOURTH AVENUE
PITTSBURGH, PENNSYLVANIA 15219
TEL. (412) 281-2931
FACSIMILE (412) 281-1821

BALTIMORE OFFICE
502 WASHINGTON AVENUE, SUITE 220
TOWSON, MARYLAND 21204
TEL. (410) 337-2295
FACSIMILE (410) 337-2296

SENIOR COUNSEL
LEONARD BLOOM

OF COUNSEL
RONALD R. NAUGHTON*
EDWARD F. WELSH*
NICOLAS E. SECKEL*
NICHOLAS S. BROMER*
EDWARD F. KENEHAN, JR.

JAPANESE BENRISHI
SHUJI YOSHIZAKI
YASUHISA KUROSE

PATENT AGENTS
JAMES N. BAKER
DANIEL A. GEBELOWITZ, Ph.D.

July 11, 2002

** VIA FACSIMILE **

Mr. Kenji Itami
ITAMI PATENT OFFICE
Daisan Bldg.
2-4, 3-Chome, Nishitenma
Kita-ku, Osaka 530
JAPAN

Re:    Interference No. 103,662
       U.S. Serial No.: 08/196,839
       By: TAMAI, Shigeru
       Your Ref: P123/SE.90
       Our Ref: P1151-2717-A940094I

Dear Itami san:

Further to our letter of July 8, 2002, we will set forth our analysis below:

## SUMMARY

The judgment indicates that, Tamai established a constructive reduction to practice as of July 31, 1991, prior to Stevens' date of February 10, 1993, thus, judgment was entered against Stevens. Because of that Stevens is not entitled to claims 1-5, 7-16 and 18-21 of their involved patent and of their re-issue application.

07-11-'02 17:27 FROM-Armstrong,Westerman   202-293-7726   1-711 P68/04 U 000:

Mr. Kenji Itami
July 11, 2002
Page 2

## RE-DECLARATION ( page  ʳ )

The board has re-declare the interference because of the means-plus-function language in Stevens' claim 1 and Tamai's claim 20. The board indicates (page 5) that for "purposes of the priority", Stevens' claim 1 will be interpreted in view of Stevens' specification and Tamai's claim 20 will be interpreted in view of Tamai's specification.

## STEVENS' MOTION UNDER §1.633(a): (Page 5)

In this section, pages 5-12, the Board discusses Stevens' motion to modify the Board's previous interlocutory order denying Stevens' motion. This discussion has to do with the issue of the written description (page 6) and enablement (page 10). Regarding both issues, the Board has dealt with the specific structure at some length and has denied Stevens' motion to modify the original interlocutory order.

## TAMAI'S BENEFIT APPLICATION: (Page 12)

In this section, from page 12 through the top of page 20, the Board has substantially affirmed Tamai's rights to benefit of its '183 U.S. application.

## TAMAI'S PCT AND JP APPLICATIONS: (Page 20)

This is the section which has most concern for us. In summary, this section grants Tamai's motion for the benefit of its priority Japanese application (JP '371) but denies its motion in regard to the PCT application (PCT '947). While according benefit to JP '371 (priority date July 31, 1991) provides Tamai with the early priority it was seeking in order to have priority over Stevens. It is not entirely clear to us why the Board has denied the Motion with regard to PCT '947. It is hard for us to understand how the Board then would not also accord benefit of the PCT application which is intervening between the JP '371 application and the US '183 application. Since there is pendency and similar if not identical disclosures, we believe that Tamai should also be accorded the benefit of the PCT '947 application.

A-Y90

Mr. Kenji Itami
July 11, 2002
Page 3

## MOTION TO SUPPRESS AND OBJECTION TO EVIDENCE: (page 2/p )

Here the Board deals with Stevens' motion to suppress evidence submitted by Tamai. The Board indicates that Tamai has established a constructive reduction to practice as of July 31, 1991.

## STEVENS' MOTION TO REDEFINE: (Page 25)

In this section, Stevens asks for review of the Board's earlier order denying Stevens' original motion to have claims 2-5, 7-16 and 18-21 declared as not corresponding to the count. The Board here refuses to modify its original order.

## OUR RECOMMENDATION:

A Request for Reconsideration must be filed one month from the mailing date of this decision. Accordingly, a Request for Reconsideration must be filed on or before July 25, 2002. In view of our analysis above, we believe that there is one issue which should be addressed in a Request for Reconsideration. This issue is the Board's refusal to grant Tamai's motion to accord it the benefit of the PCT '947 application. Arguments were made on that basis in the briefs and during oral arguments. We believe that a Request for Reconsideration is in order and recommend filing such a Request.

Please let us have your authorization to proceed with the filing of a Request for Reconsideration as soon as possible, since such a motion must be filed on or before July 25, 2002.

Please let us know if you have any questions in this regard.

With best regards,

Very truly yours,

ARMSTRONG, WESTERMAN & HATTORI, LLP

William F. Westerman

WFW/klb

# Exhibit 13

LAW OFFICES

# Armstrong, Westerman & Hattori, LLP

SUITE 1000
1725 K STREET, N.W.
WASHINGTON, D.C. 20006

(202) 659-2930
FACSIMILE (202) 887-0357
FACSIMILE (202) 331-7519
FACSIMILE (202) 887-5155
VIDEO (202) 728-6844
www.armstrongpat.com

August 7, 2002

JAMES E. ARMSTRONG, III
WILLIAM F. WESTERMAN
KEN-ICHI HATTORI
WILLIAM G. KRATZ, JR.*
MEL R. QUINTOS
DONALD W. HANSON
STEPHEN G. ADRIAN
SCOTT M. DANIELS
WILLIAM L. BROOKS
THOMAS J. MACPEAK
JOHN P. CARNEY

JOHN P. KONG
JAMES E. ARMSTRONG, IV
SADAO KINASHI
THOMAS E. BROWN*
MICHAEL J. CARIDI
MICHAEL S. ALPRIN*
JOSEPH L. FELBER
KENNETH H. SALEN*
MICHAEL N. LAU
*Practice limited to matters and proceedings
before federal courts and agencies

TOKYO LIAISON OFFICE
6TH FL., DIAMOND PLAZA BLDG.
25 ICHIBANCHO, CHIYODA-KU
TOKYO 102, JAPAN
TEL. (03) 3234-8429
FACSIMILE (03) 3234-5643

PITTSBURGH OFFICE
THE LAW & FINANCE BUILDING
SUITE 707, 429 FOURTH AVENUE
PITTSBURGH, PENNSYLVANIA 15119
TEL. (412) 281-2931
FACSIMILE (412) 281-1821

BALTIMORE OFFICE
502 Washington Avenue, SUITE 220
Towson, Maryland 21204
TEL. (410) 337-2295
FACSIMILE (410) 337-2296

SENIOR COUNSEL
LEONARD BLOOM

OF COUNSEL
RONALD F. NAUGHTON*
EDWARD F. WELSH*
NICOLAS E. SECKEL*
NICHOLAS S. BROMER*
EDWARD F. KENEHAN, JR.

JAPANESE BENRISHI
SHUJI YOSHIZAKI

PATENT AGENTS
JAMES N. BAKER
DANIEL A. GESELOWITZ, Ph.D.

Mr. Kenji Itami
ITAMI PATENT OFFICE
Daisan Bldg.
2-4, 3-Chome, Nishitenma
Kita-ku, Osaka 530
JAPAN

Re:    **Interference No. 103,662**
       **U.S. Serial No.: 08/196,839**
       **By: TAMAI, Shigeru**
       **Your Ref: P123/SE.90**
       **Our Ref: P1151-2717-A940094I**

Dear Itami san:

We are enclosing two (2) copies of Senior Party Tamai's Request for Reconsideration, which was filed on July 25, 2002. We have contacted Mr. Boukus, counsel for the party Stevens, who indicated he did not file a Request for Reconsideration. Accordingly, we will not have to file a reply. Mr. Boukus may file a reply to our Request for Reconsideration. That reply will be due next week. As soon as we receive it, we will forwarded to you.

It appears that the next step is simply to wait for the Board's decision on our Request for Reconsideration.

Please let us know if you have any questions.

Mr. Kenji Itami
August 7, 2002
Page 2

We are enclosing our debit note herewith.

With best regards,

Very truly yours,

ARMSTRONG, WESTERMAN & HATTORI, LLP

William F. Westerman

WFW/klh

Enclosures:     Senior Party Tamai's Request for Consideration (2)
                Debit Note (3)

# Exhibit 14

FROM ARMSTRONG, WESTERMAN                    (TUE) 3. 18' 03 14:30/ST. 14:29/NO. 4864272335 P. 2

LAW OFFICES

# ARMSTRONG, WESTERMAN & HATTORI, LLP

SUITE 1000
1725 K STREET, N.W.
WASHINGTON, D.C. 20006
————
(202) 659-2930
FACSIMILE (202) 887-0357
FACSIMILE (202) 331-7519
FACSIMILE (202) 887-5165
VIDEO (202) 728-6844
www.armstrongpat.com

JAMES E. ARMSTRONG, III
WILLIAM F. WESTERMAN
KEN-ICHI HATTORI
WILLIAM G. KRATZ, JR.*
MEL R. QUINTOS
DONALD W. HANSON
STEPHEN G. ADRIAN
SCOTT M. DANIELS
WILLIAM L. BROOKS
THOMAS J. MACPEAK
JOHN F. CARNEY
JOHN R. KONG
JAMES B. ARMSTRONG, IV
SADAO KINASHI

THOMAS E. BROWN*
MICHAEL J. CARIDI
MICHAEL S. ALPRIN*
JOSEPH L. FELBER
KENNETH H. GALEN*
MICHAEL N. LAU
GEORGE N. STEVENS*
*Practices limited to matters and proceedings before federal courts and agencies

March 17, 2003

VIA FACSIMILE

Mr. Kenji Itami
Itami Patent Office
Daisan Bldg.
2-4, 3-chome, Nishitenma, Kita-ku
Osaka 530-0047, Japan

TOKYO LIAISON OFFICE
6TH FL., DIAMOND PLAZA BLDG.
25 ICHIBANCHO, CHIYODA-KU
TOKYO 102, JAPAN
TEL. (03) 3234-8429
FACSIMILE (03) 3234-5643

PITTSBURGH OFFICE
THE LAW & FINANCE BUILDING
SUITE 707, 429 FOURTH AVENUE
PITTSBURGH, PENNSYLVANIA 18219
TEL. (412) 281-2931
FACSIMILE (412) 281-1827

BALTIMORE OFFICE
502 WASHINGTON AVENUE, SUITE 220
TOWSON, MARYLAND 21204
TEL. (410) 857-2295
FACSIMILE (410) 337-2298

SENIOR COUNSEL
LEONARD BLOOM

OF COUNSEL
RONALD F. NAUGHTON*
EDWARD F. WELSH*
NICOLAS E. SECKEL*
NICHOLAS S. BROMER*
EDWARD P. KENEHAN, JR.

JAPANESE BENRISHI
YASUHISA KUROSE

PATENT AGENTS
JAMES N. BAKER
DANIEL A. GESELOWITZ, Ph.D.
SHUJI YOSHIZAKI

Re:    Decision
U.S. Patent Appln. S.N.: 08/196,839
By:    TAMAI, Shigeru
Your Reference:  P123/SE.90
Our Reference:   P1151-2717-940094

Dear Itami san:

We have just received today the decision by the Board of Patent Appeals and Interferences regarding our earlier filed Request for Reconsideration.

In short, the Board has considered our arguments and the arguments of the party Stevens and has refused to make any modifications to its earlier decision.

We are currently reviewing this decision and will provide you with our analysis within the next few days.

With best regards,

Very truly yours,

ARMSTRONG, WESTERMAN & HATTORI, LLP

William F. Westerman

WFW/meu
Enclosures: Decision

# Exhibit 15

FROM ARMSTRONG, WESTERMAN                    (FRI) 3.21'03 15:56/ST. 15:54/NO. 4864272470 P 2

LAW OFFICES

# ARMSTRONG, WESTERMAN & HATTORI, LLP

SUITE 1000
1725 K STREET, N.W.
WASHINGTON, D.C. 20006

———

(202) 659-2930
FACSIMILE (202) 887-0357
FACSIMILE (202) 331-7519
FACSIMILE (202) 887-5155
VIDEO (202) 728-5644
www.awmstrongpat.com

JAMES E. ARMSTRONG, III
WILLIAM F. WESTERMAN
KEN-ICHI HATTORI
WILLIAM G. KRATZ, JR.°
MEL R. QUINTOS
DONALD M. HANSON
STEPHEN B. ADRIAN
SCOTT M. DANIELS
WILLIAM L. BROOKS
THOMAS J. MACPEAK
JOHN F. CARNEY
JOSIP P. KONG
JAMES E. ARMSTRONG, IV
SADAO KINASHI

THOMAS E. BROWN°
MICHAEL J. GARIDI
MICHAEL S. ALPRIN°
JOSEPH L. FELBER
KENNETH M. SALEN°
MICHAEL N. LAU
GEORGE N. STEVENS°

°Practice limited to patent and prosecution before federal courts and agencies

Mr. Kenji Itami
Itami Patent Office
Daisan Bldg.
2-4, 3-chome, Nishitenma, Kita-ku
Osaka 530-0047, Japan



March 21, 2003

**VIA FACSIMILE**

TOKYO LIAISON OFFICE
6th Fl., Diamond Plaza Bldg.
25 Ichibancho, Chiyoda-Ku
Tokyo 102, Japan
Tel. (03) 3234-5429
Facsimile (03) 3234-5849

PITTSBURGH OFFICE
The Law & Finance Building
Suite 707, 429 Fourth Avenue
Pittsburgh, Pennsylvania 15219
Tel. (412) 281-2931
Facsimile (412) 281-1821

BALTIMORE OFFICE
502 Washington Avenue, Suite 220
Towson, Maryland 21204
Tel. (410) 337-2295
Facsimile (410) 337-2296

SENIOR COUNSEL
LEONARD BLOOM

OF COUNSEL
RONALD F. NAUGHTON°
EDWARD F. WELSH°
NICOLAS S. BECKEL°
NICHOLAS S. BROMER°
EDWARD F. KENEHAN, JR.

JAPANESE BENRISHI
YASUHISA KUROSE

PATENT AGENTS
JAMES N. BAKER
DANIEL A. GESELOWITZ, Ph.D.
SHUJI YOSHIZAKI

Re:    PATENT INTERFERENCE NO. 103,662
       Stevens v. Tamai
       U.S. Patent Appln S.N.: 08/196,839
       By: TAMAI, Shigera
       Our Reference: I1151-2717-9400941

Dear Itami san:

    Further to our letter of March 17, 2003 we are providing our analysis of the decision by the Board of Patent Appeals and Interferences regarding our Request for Reconsideration of the FINAL DECISION mailed June 25, 2002.

    The most important issue regarding the Board's Decision mailed March 13, 2003, is that it does not modify the Board's FINAL DECISION. Specifically, on page 6, of the Decision, the Board concludes with the following paragraph:

          The request for reconsideration is granted to the extent that we have
          reconsidered our decision but denied in that we decline to make any
          modifications to our decision.

    Thus, what was stated in the FINAL DECISION is still the judgement in this Interference. The most significant item to consider in the FINAL JUDGEMENT is that priority was awarded to Tamai, that judgement was entered <u>against Stevens</u> and that claims 1-5, 7-16, 18-21 of the Stevens patent are invalid. Specifically, the Board has stated it this way:

          Because Tamai has established a constructive reduction to practice of
          July 31, 1991 and Stevens has established a constructive reduction to
          practice of February 10, 1993, judgement is herein entered against
          Stevens. Accordingly, Stevens is not entitled to claims 1 through 5, 7

FROM ARMSTRONG, WESTERMAN                    (FRI) 3.21'03 15:56/ST. 15:54/NO. 4864272470 P. 3

    Mr. Kenji Itami
    Itami Patent Office
    March 21, 2003
    Page 2

through 16 and 18 through 21 of their reissue application which correspond to the count.

Thus, Stevens is not entitled to the claims set forth above, all the claims that correspond to the count.

Since the Board (in the FINAL DECISION) indicated that Tamai established a constructive reduction practice of July 31, 1991 compared to the Stevens constructive reduction practice of February 10, 1993, Tamai has priority with respect to Stevens and Stevens cannot be used as a reference against Tamai during the further prosecution of the Tamai application. Thus, we see no reason why the Tamai prosecution should not continue before the Patent Office [and eventually be allowed].

In fact, in the Decision, the Board seems to provide no new comments in supporting their previous reasoning in the final decision.

There are no provisions in the rules for appealing the Request for Reconsideration to the Board. The appeal which is available to us is an appeal to the Federal Circuit (CAFC). This appeal must be taken within two months of the mail date (March 13, 2003) of the Decision. Thus, such an appeal would be due on or before May 13, 2003. However, at this time, we do not recommend such an appeal. We believe that it is best to let the decision stand. We will wait for two months to see if Stevens appeals to the CAFC.

If this patent is very important to the client, then it is important to consider what might happen in a future lawsuit. The question is whether or not Tamai would be entitled to its early priority date of July 31, 1991, since the Board indicated that Tamai was not entitled to benefit of its PCT application. Despite this, the Board still ruled that Tamai was entitled to benefit of the early 1991 Japanese application. We believe that support for the U.S. application and claims is present. A Federal District Court (which hears patent cases) is not required to follow the rules of the Board of Patent Appeals and Interferences. Accordingly, we believe that a Federal District Court could conclude that there is sufficient support for the claims in the Tamai application.

Please let us know if you have any questions with regard to this decision.

With best regards,

        Very truly yours,

    ARMSTRONG, WESTERMAN & HATTORI, LLP

        William F. Westerman

WFW/meu

# Exhibit 16

04-18-'03 13:19  FROM-Armstrong,Westerman    202-293-7726        T-547  P02/06  U-158

LAW OFFICES

ARMSTRONG, WESTERMAN & HATTORI, LLP

SUITE 1000
1725 K STREET, N.W.
WASHINGTON, D.C. 20006
——
(202) 659-2930
FACSIMILE (202) 887-0957
FACSIMILE (202) 331-7619
FACSIMILE (202) 887-5155
VIDEO (202) 725-5544
www.armstrongpat.com

JAMES E. ARMSTRONG, III
WILLIAM F. WESTERMAN
KEN-ICHI HATTORI
WILLIAM G. KRATZ, JR.
MEL R. CURITOS
DONALD W. HANSON
STEPHEN G. ADRIAN
SCOTT M. DANIELS
WILLIAM L. BROOKS
THOMAS J. MACPEAK
JOHN F. CARNEY
JOHN F. KONG
JAMES E. ARMSTRONG, IV
SADAO KINASHI

THOMAS E. BROWN
MICHAEL J. CARIDI
NICHAEL S. ALPERT
JOSEPH L. FELBER
KENNETH M. SALEN
MICHAEL N. LAU
GEORGE N. STEVENS

TOKYO LIAISON OFFICE
6TH FL, DIAMOND PLAZA BLDG.
25 ICHIBANCHO, CHIYODA-KU
TOKYO 102, JAPAN
TEL. (03) 3234-8429
FACSIMILE (03) 3234-6943

PITTSBURGH OFFICE
THE LAW & FINANCE BUILDING
SUITE 707, 429 FOURTH AVENUE
PITTSBURGH, PENNSYLVANIA 15219
TEL. (412) 281-2331
FACSIMILE (412) 281-1821

BALTIMORE OFFICE
502 WASHINGTON AVENUE, SUITE 220
TOWSON, MARYLAND 21204
TEL. (410) 337-2295
FACSIMILE (410) 337-2296

SENIOR COUNSEL
LEONARD BLOOM

OF COUNSEL
RONALD F. NAUGHTON
EDWARD F. WELSH
NICOLAS E. SECKEL
NICHOLAS S. BROMER
EDWARD F. KENEHAN, JR.

JAPANESE BENRISHI
YASUHISA KUROSE

PATENT AGENTS
JAMES N. BAKER
DANIEL A. GESELOWITZ, Ph.D.
SHUJI YOSHIZAKI

April 18, 2003

VIA FACSIMILE

Mr. Kenji Itami
Itami Patent Office
Daisan Bldg.
2-4, 3-chome, Nishitenma, Kita-ku
Osaka 530-0047, Japan

Re:    PATENT INTERFERENCE NO. 103,662
       Stevens v. Tamai
       U.S. Patent Appln S.N.: 08/196,839
       By: TAMAI, Shigeru
       Our Reference: P1151-2717-9400941

Dear Itami san:

        Thank you for your facsimile letter of April 4, 2003 and your reminder today. We apologize
for our delay in putting together our detailed comments for your review. We understand that the
present application is very important to your client. Further, since the Board has awarded priority
to Tamai and since the Examiner already indicated that claims 20 and 21 of this application are
patentable when the interference was declared, we believe that the prospects are very good for the
application to be allowed when we return to ex *parte* prosecution. A patent issuing from this
application should be enforceable, even against Stevens (Rubbermaid).

        First, as you noted, the primary issue here appears to be procedural. On the merits of the
interference, the Board agreed with our arguments and awarded a Decision in our favor. The
procedural issue involves the alleged lack of submission of verified translations for our priority
applications.

Mr. Kenji Itami
Itami Patent Office
April 18, 2003
Page 2

In the Decision on the Request for Reconsideration, the Board stated that "Stevens was in possession of a translation of the JP '371 application at the time the motion was filed and was not in possession of the translation of the PCT application." However, if Stevens was in possession of a translation of JP '371 at the time the motion was filed, then Stevens also had possession of a translation of the PCT application since our motion for benefit stated that "[t]he drawings of JP '371 and PCT '947 are exactly identical...and the PCT '947 specification is substantially the disclosure of JP '371." We said that these documents are "substantially" similar (i.e., not *identical*) only because there are some formatting differences between PCT '947 and JP '371, but the substantive subject matter descriptions are identical.

In Stevens' opposition to our Request for Reconsideration, Stevens asserted that "[t]o this day, Tamai has never served a copy of the Japanese-language PCT application, an English-language translation thereof, or an affidavit attesting to the accuracy of such a translation." However, we have served these items on Stevens with our Reply to Stevens's Opposition to our motion for priority benefit. In particular, our Reply included a copy of the Japanese-language PCT application, an English-language translation of JP '371, and a Declaration by Mr. Sadao Kinashi verifying that the verified translation of JP '371 is also a verified translation of the PCT application.

Our responses to your specific questions follow:

(a) The Request for Reconsideration was an opportunity for us to attempt to obtain clarification of the Board's Decision on the issue of the PCT application. Without knowing what Stevens would do, we believe the decision to file the Request for Reconsideration was correct because it avoided the disadvantage to us if Stevens filed an appeal that would have prevented us from getting the opportunity to have the Board clarify the record first.

Even though the Board did not modify its Decision to grant us the benefit of our PCT application, we still have the Board's response re-affirming its Decision even after we alerted the Board to the chain of priority issue. The Board re-affirmed its Decision awarding priority to Tamai in this interference even without granting us the benefit of the PCT application date.

(b) Appeals under 35 USC 141 (CAFC) or 35 USC 146 (District Court) are for parties who are unsatisfied with the decision. We are satisfied with the decision. The Decision granted priority to Tamai in the interference. We take issue, however, with some of the positions taken by the Board in arriving at that decision. Under the circumstances, it would appear that any appeal should be taken by Stevens, not Tamai. Moreover, either Stevens or the Court may assert that Tamai does not have subject matter jurisdiction to file an appeal due to lack of "case or controversy" since the Decision was in favor of Tamai. Other factors we considered are set forth below:

Mr. Kenji Itami
Itami Patent Office
April 18, 2003
Page 3

1) It may take 2 or more years at the District Court. The decision by the District Court is also subject to appeal to the CAFC. An appeal to the CAFC may take 1-2 years. If appeal was made to the District Court, the total time could be an additional 5 years (more or less) before our application is returned to *ex parte* prosecution.

2) It may cost up to approximately $100,000 to appeal to the CAFC, and much more to appeal to the District Court (depending on the extent of new discovery and testimony).

3) The Board stated that Tamai did not satisfy PTO rules, 37 CFR 1.637(f)(2) and 1.647, with regard to the PCT application date. However, these PTO rules apply only towards the claiming of priority benefits *during an interference*, and are not applicable during any future patent infringement lawsuits in federal district court. The present Decision ends the interference between Stevens and Tamai. The Board's denial of benefit to the PCT date for lack of compliance with certain procedural interference rules should not affect the substantive priority of our application if we later enforced a patent issuing therefrom against a third party. Besides, upon returning to *ex parte* prosecution, we intend to file a verified translation in the file wrapper of Tamai's application to render this issue moot for any future litigation.

4) If we appeal directly to the CAFC, we would be limited to the current record.

5) If we appeal to the District Court, new discovery and testimony should be available.

One advantage that would follow from such newly available discovery and testimony is that we may be able to take discovery from Stevens' attorneys as to whether they considered any translation of the PCT application and whether they identified any substantive discrepancy between JP '371 and PCT '947, or between the translation of JP '371 and the '183 application (which is also a translation of the PCT application).

With the likely opportunity to take new discovery at the District Court, we would also consider taking discovery surrounding Stevens' alleged activities in the U.S. regarding conception, reduction to practice, and diligence from conception to reduction to practice. Stevens relied on alleged activities in the U.S. to antedate our March 29, 1993 filing date of the '183 application. While we did not take discovery on this and did not challenge it before, we may consider doing so in any appeal to District Court if we believe there is some strategic benefit to do so.

In addition, we may also consider the use of new expert testimony, such as from a Japanese speaking U.S. patent attorney, who can further attest to the correspondance between the PCT application and the verified translation for JP '371, as well as the correspondance with the '183 application. We may even try to file a separate verified translation of the PCT application (such as part of an expert report), if permitted under the rules of evidence.

Mr. Kenji Itami
Itami Patent Office
April 18, 2003
Page 4

6) If Stevens files an appeal to the CAFC, we have 20 days to file a notice with the Director (pursuant to 35 USC §141) to transfer proceedings from the CAFC to the District Court, as permitted under 35 USC §146.

7) During appeal, Stevens may (very likely) try to re-litigate all the merits of the interference. At the CAFC, the Board's Decision will be reviewed for substantial evidence in support thereof. At the District Court, the Board's Decision will be reviewed de novo.

8) Stevens (Rubbermaid) had previously expressed a desire to limit costs – one of the reasons no discovery was taken during the interference.

Given the points above, letting the Decision stand ends the interference in our favor. As mentioned above, the procedural matter regarding the PCT priority date does not apply to future lawsuits to enforce any patent issuing from our application. Even if Stevens appeal the case, we still have the opportunity to either keep the appeal at the CAFC or to transfer the appeal to the U.S. District Court for the District of Columbia. If Stevens files an appeal, we presently prefer the District Court since it provides the new evidentiary benefits mentioned above. In any event, we believe that it is unnecessary for us to appeal at this point, even though Stevens may do so.

(c) See above.

(d) See above. The inconvenience to your client may be the added time delay in securing a patent, as well as additional costs for the appeal, especially if new discovery and testimony is taken during an appeal to the District Court.

(e) The "risk" of Stevens breaking the chain of priority depended on the strength of their arguments opposing our Request for Reconsideration. The Board considered their arguments and still re-affirmed the Decision granting priority to Tamai in this interference. We do not know how the District Court or CAFC will rule on this issue. However, as we repeatedly emphasized in our submissions, this appears to be a very narrow application of the rules even though we had stated many times that all our applications are substantially identical (even the translations thereof). Besides, in making their Decision, the Board appeared to rely heavily on Fig. 1 – which is identical throughout the applications. No translation should be necessary to appreciate this point.

(f) See above.

Besides the discussion above concerning an appeal, you and your client may also wish to consider if claims 20 and 21 are sufficient to cover your client's business needs when this application returns to *ex parte* prosecution. Currently, only claims 20 and 21 of this application were deemed "patentable" by the Examiner when the interference was declared. Claim strategies

04-18-'03 13:20 FROM-Armstrong,Westerman    202-293-7726        T-547  P06/06  U-158

Mr. Kenji Itami
Itami Patent Office
April 18, 2003
Page 5

may also be considered to draft new claims and/or amend existing claims 1-19 (such as to depend from allowable claims 20 and 21).

We apologize for not providing such details to you earlier. We trust that this letter addresses your questions and concerns. Please do not hesitate to let us know if there are any further questions or comments. Thank you for your continued cooperation.

Very truly yours,

ARMSTRONG, WESTERMAN & HATTORI, LLP

William F. Westerman

WFW/TJM/EFK/JPK/ak

# Exhibit 17

FROM ARMSTRONG, WESTERMAN    (TUE) 5.13'03 16:13/ST. 16:11/NO. 4864272613 P 2

LAW OFFICES

# ARMSTRONG, WESTERMAN & HATTORI, LLP

SUITE 1000
1725 K STREET, N.W.
WASHINGTON, D.C. 20006

(202) 659-2930
FACSIMILE (202) 887-0357
FACSIMILE (202) 931-7519
FACSIMILE (202) 887-5155
VIDEO (202) 728-6944
www.armstrongpat.com

JAMES E. ARMSTRONG, III
WILLIAM K. WESTERMAN
KEN-ICHI HATTORI
WILLIAM G. KRATZ, JR.*
MEL R. QUINTOS
DONALD W. HANSON
STEPHEN G. ADRIAN
SCOTT M. DANIELS
WILLIAM L. BROOKS
THOMAS J. MACPEAK
JOHN F. CARNEY
JOHN R. KONG
JAMES E. ARMSTRONG, IV
SADAO KINASHI

THOMAS E. BROWN*
MICHAEL J. CARIDI
MICHAEL G. ALPRIN*
JOSEPH L. FELBER
KENNETH H. SALEN*
MICHAEL N. LAU
GEORGE N. STEVENS*
*Practice limited to matters and proceedings
before federal courts and agencies

TOKYO LIAISON OFFICE
5TH FL., DIAMOND PLAZA BLDG.
25 ICHIBANCHO, CHIYODA-KU
Tokyo 102, Japan
TEL. (03) 3234-8429
FACSIMILE (03) 3234-8643

PITTSBURGH OFFICE
THE LAW & FINANCE BUILDING
SUITE 707, 429 FOURTH AVENUE
PITTSBURGH, PENNSYLVANIA 15219
TEL. (412) 281-2831
FACSIMILE (412) 281-1821

BALTIMORE OFFICE
502 WASHINGTON AVENUE, SUITE 220
TOWSON, MARYLAND 21204
TEL. (410) 337-2288
FACSIMILE (410) 337-2298

SENIOR COUNSEL
LEONARD BLOOM

OF COUNSEL
RONALD F. NAUGHTON*
EDWARD F. WELSH*
NICOLAS S. SECKEL*
NICHOLAS S. BRONER*
EDWARD F. KENEHAN, JR.

JAPANESE BENRISHI
YASUHISA KUROSE*

PATENT AGENTS
JAMES N. BAKER
DANIEL A. GESSELOWITZ, Ph.D.
SHUJI YOSHIZAKI

May 13, 2003

VIA FACSIMILE

Mr. Kenji Itami
Itami Patent Office
Daisan Bldg.
2-4, 3-chome, Nishitenma, Kita-ku
Osaka 530-0047, Japan

Re:    Notice of Appeal to the CAFC
       PATENT INTERFERENCE NO. 103,662
       Stevens v. Tamai
       Serial No.: 08/196,839
       By: TAMAI, Shigeru
       Your Reference: P123/SE.90
       Our Reference: P1151-2717-940094T

Dear Itami san:

We are enclosing a copy of the Notice of Appeal to the CAFC by Stevens.

There are two courses of action now available.

1.    We file a notice to move the case to the District Court in Washington, DC.
      We have 20 days to file this notice; or

2.    Fight the appeal at the CAFC. To do this we must wait to receive
      Stevens appeal brief. Then we will file our reply.

FROM ARMSTRONG, WESTERMAN                    (TUE) 5. 13' 03 16:13/ST. 16:11/NO. 4864272613 P  3

Mr. Kenji Itami
Itami Patent Office
May 13, 2003
Page 2

We are reviewing the matter and will provide you with our detailed recommendation by the first part of next week.

Please let us know if you have any questions.

Very truly yours,

ARMSTRONG, WESTERMAN & HATTORI, LLP

William F. Westerman

WFW/meu
Encl.

FROM ARMSTRONG, WESTERMAN                    (TUE) 5. 13' 03 16:13/ST. 16:11/NO. 4864272613 P 4

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

CHRISTOPHER J. STEVENS,

Junior Party,

v.                                          Interference No. 103,662

SHIGERU TAMAI,

Senior Party.

## NOTICE OF APPEAL TO THE UNITED STATES
## COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Mail Stop 8
Director of the United States Patent and Trademark Office
PO Box 1450
Alexandria, Virginia 22313-1450

Attention: Office of the Solicitor

Sir:

Junior Party Christopher J. Stevens hereby serves notice under 35 U.S.C. §§ 141

and 142 of his appeal to the United States Court of Appeals for the Federal Circuit from the

"Decision on Request for Reconsideration" of the Board of Patent Appeals and Interferences

("Board") dated March 13, 2003, and from the Board's "Final Decision" dated June 25, 2002, in

Interference No. 103,662.

FROM ARMSTRONG, WESTERMAN                (TUE) 5.13'03 16:13/ST. 16:11/NO. 4864272613 P  5

Pursuant to Federal Circuit Rules 15 and 52, three copies of this notice and payment of the $100.00 docketing fee are being filed simultaneously with the Clerk of the Federal Circuit.

Respectfully submitted,

May 12, 2003                          By:  _____

Michael R. Weiner (Reg. No. 38,359)
Sandip H. Patel (Reg. No. 43,848)
MARSHALL, GERSTEIN & BORUN
6300 Sears Tower
233 South Wacker Drive
Chicago, Illinois 60606-6357
(312) 474-6300 Telephone
(312) 474-0448 Facsimile

- 2 -

## CERTIFICATE OF MAILING

The undersigned hereby certifies that the foregoing "NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT" is being deposited with the United States Postal Services on May 12, 2003, utilizing the "Express Mail Post Office to Addressee" service of the United States Postal Service under Mailing Label No. EV 341012678 US, in an envelope addressed to:

> Mail Stop 8
> Director of the United States Patent and Trademark Office
> PO Box 1450
> Alexandria, Virginia 22313-1450

Richard Zimmermann

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and complete copy of the foregoing "NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT" is being served upon Counsel for Senior Party Shigeru Tamai by being deposited with the United States Postal Services on May 12, 2003, utilizing the "Express Mail Post Office to Addressee" service of the United States Postal Service under Mailing Label No. EV 341012664 US, in an envelope addressed to:

> Mr. William F. Westerman
> Armstrong, Westerman & Hattori, LLP
> 1725 K Street, N.W., Suite 100
> Washington, D.C. 20006

Richard Zimmermann

650649v1

# Exhibit 18

10/08/2003 10:05 FAX   202 775 9242          WESTERMAN, HATTORI                    ☒002/004.

LAW OFFICES

## WESTERMAN, HATTORI, DANIELS & ADRIAN, LLP
1250 CONNECTICUT AVENUE, N.W., SUITE 700
WASHINGTON, DC 20036

WILLIAM F. WESTERMAN
KEN-ICHI HATTORI
SCOTT M. DANIELS
STEPHEN G. ADRIAN
JOHN P. KONG
SADAO KINASHI
THOMAS J. MACPEAK
EDWARD F. KENEHAN, JR.
NICOLAS E. SECKEL *

THOMAS E. BROWN*

MICHAEL J. CARIDI
M. SCOTT ALPRIN
JOSEPH L. FELBER
KENNETH H. SALEN*
MICHAEL N. LAU
SHUJI YOSHIZAKI**
YASUHISA KUROSE***

TELEPHONE: (202) 822-1100
FACSIMILE:  (202) 822-1111

October 8, 2003

TOKYO OFFICE
Cosmo Shinjuku Gyoen Bldg. 6F
1-1-7 Shinjuku, Shinjuku-ku
Tokyo, Japan
Telephone: 03-3356-1527
Facsimile: 03-3356-1529

*Practice limited to matters
and proceedings before
federal courts and agencies

** Patent Agent

*** Japanese Benrishi

Mr. Kenji Itami
Itami Patent Office
Daisan Building
2-4, 3-chome, Nishitenma, Kita-ku
Osaka, 530-0047, JAPAN

RE:   03-1479
      Interference No. 103,662
      Stevens v. Tamai

Dear Mr. Itami:

You should have received a copy of Appellee's Brief to the Federal Circuit Court of Appeals, filed on September 29, 2003, by this time.

In view of Tamai's position, as expressed in the Appellee's Brief, we fail to see how Stevens can, in good faith, maintain the appeal. In the event that Stevens cannot justify Stevens' position, it would be a waste of the time and resources of the Federal Circuit to consider the Briefs, conduct an Oral Hearing and render a decision. It would also be fundamentally unfair for Tamai to suffer the effort and expense of going forward from this point.

Accordingly, if Stevens does not dismiss the appeal, Tamai may request an award of attorney's fees, at least for those fees associated with reviewing any Reply Brief by Stevens and presenting an oral argument before the Federal Circuit.

An eventual motion for attorney's fees may be facilitated if Stevens is provided with a suitable warning. In particular, we suggest sending a letter to counsel for Stevens, notifying Stevens of the Federal Circuit Rules against maintaining a frivolous appeal and requesting Stevens to dismiss the appeal.

We therefore enclose a draft such a letter to counsel for Stevens.

Mr. Kenji Itami
October 8, 2003
Page 2


In a separate matter, on October 2, 2003, we received a request by telephone from Ms. Fletcher of the Solicitor's Office of the United States Patent and Trademark Office (USPTO) for a courtesy copy of our Appellee's Brief. This copy was forwarded to Ms. Fletcher on October 2, 2003. It is possible that the USPTO will simply review the Briefs of the parties and do nothing further, but it is also possible that the USPTO may take steps to become involved in the appeal.

Please review the enclosed draft letter and let us know if we should send it to Stevens' counsel. We will not send this letter without your approval.

Please let us know if you have any questions or comments or if we can be of any further assistance.

Very truly yours,

WESTERMAN, HATTORI, DANIELS & ADRIAN, LLP

*Edward F. Kenehan Jr.*

Edward F. Kenehan, Jr.

Encl:   Letter to Weiner as above

EFK/abp
H:\Litigation Matters\Tamai\Correspondence\Itami 10-03-03 - Tamai.doc

10/08/2003 10:05 FAX  202 775 8242        WESTERMAN, HATTORI                    @ 003/004

LAW OFFICES

# WESTERMAN, HATTORI, DANIELS & ADRIAN, LLP
1250 CONNECTICUT AVENUE, N.W., SUITE 700
WASHINGTON, DC 20036

WILLIAM F. WESTERMAN
KEN-ICHI HATTORI
SCOTT M. DANIELS
STEPHEN G. ADRIAN
JOHN P. KONG
SADAO KINASHI
THOMAS J. MACPEAK
EDWARD F. KENEHAN, JR.
NICOLAS E. SECKEL*

THOMAS E. BROWN*
MICHAEL J. CARIDI
M. SCOTT ALPRIN
JOSEPH L. FELBER
KENNETH H. SALEN*
MICHAEL N. LAU
SHUJI YOSHIZAKI**
YASUHISA KUROSE***

TELEPHONE: (202) 822-1100
FACSIMILE:  (202) 822-1111

TOKYO OFFICE
Cosmo Shinjuku Gyoen Bldg. 6F
1-1-7 Shinjuku, Shinjuku-ku
Tokyo, Japan
Telephone: 03-3356-1527
Facsimile: 03-3356-1529

*Practice limited to matters
and proceedings before
federal courts and agencies

** Patent Agent

*** Japanese Benrishi

**DRAFT**

Mr. Michael R. Weiner
Marshall, Gerstein & Borun
6300 Sears Tower
233 South Wacker Drive
Chicago, IL  60606-6357

RE:    03-1479
       Interference No. 103,662
       Stevens v. Tamai

Dear Mr. Weiner:

In view of Tamai's position, as expressed in the Appellee's Brief, we fail to see how Stevens can, in good faith, maintain the position expressed in the Appellant's Brief in the above-identified appeal of the Stevens v. Tamai interference.

We request that Stevens should carefully consider dismissing this appeal.

In the event that Stevens' position cannot be justified, we intend to request appropriate sanctions, pursuant to Rule 38 of the Federal Circuit Rules.

Very truly yours,

WESTERMAN, HATTORI, DANIELS & ADRIAN, LLP

Edward F. Kenehan, Jr.

CC:    Carl E. Moore
       Sandip H. Patel
       James P. Zeller
EFK/abp
H:\Litigation Matters\Tamai\Correspondence\Weiner 10-03-03 - Tamai.doc

# Exhibit 19

01/22/2004 16:21 FAX 202 775 9242    WESTERMAN, HATTORI    ☒002/008



**WESTERMAN
HATTORI
DANIELS &
ADRIAN, LLP**

WILLIAM F. WESTERMAN    THOMAS E. BROWN    PATENT AGENT
KEN HATTORI    MICHAEL J. CANDI    SHUJI YOSHIZAKI
SCOTT M. DANIELS    SCOTT ALPRIN*
STEPHEN G. ADRIAN    JOSEPH L. FELBER    JAPANESE BENRISHI
JOHN P. KONG    KENNETH H. SALENT    YASUHISA KUROSE
SADAO FINASHI    MICHAEL N. LAU
THOMAS J. MACPEAK
EDWARD F. KENEHAN, JR.
NICOLAS E. SECKEL*

January 22, 2004

*VIA FACSIMILE*

Mr. Kenji Itami
Itami Patent Office
Daisan Building
2-4, 3-chome, Nishitenma, Kita-ku
Osaka, 530-0047, Japan

            Re:     03-1479
                     Interference No. 103,662
                     Stevens v. Tamai

Dear Mr. Itami:

       Thank you for your letter, dated January 21, 2004.

       Provided herein are our answers to SEED's questions.

**(1) FUTURE PROSPECTS**

       We continue to believe that our prospects for success are very good. Much of the costs, in terms of preparing the Brief and the record have already been incurred.

       Reasons why we believe that our prospects for success are very good, include the following:

- The United States Patent and Trademark Office (USPTO) should be required by statute (35 USC 363) and treaty (the Patent Cooperation Treaty) to recognize the PCT filing date as the filing date of Tamai's U.S. application for priority purposes. This point was not disputed in Stevens' Briefs. Stevens merely suggests that this argument was not timely presented, as being made for the first time on appeal. However, Tamai's Brief before the Board (before the appeal) did point out that Tamai is entitled to the PCT filing date pursuant to 35 USC 363.

- Stevens did not timely present most of the arguments presented in Stevens' Briefs. In Stevens' Opposition to Tamai's motion in the interference, Stevens merely stated that copies of the Japanese priority document, the Japanese PCT application and the translation of the PCT application were <u>not served</u> on Stevens. Stevens did not allege that Stevens lacked copies of these documents. Stevens did not allege that Stevens could not respond to Tamai's motion, because Stevens lacked an affidavit attesting to the accuracy of any translation. Had Stevens made any of these allegations in Stevens

Z 'd    EE1O 'ON    伊藤特許事務所 06 6365 8577    2004年 1月26日 14時29分    NO.0173 P. 2

Mr. Kenji Itami
Page 2
January 22, 2004

Opposition, this matter could have been quickly resolved with a simple conference call with the Administrative Patent Judge. In such a conference call, Tamai would have simply pointed out, as in Tamai's Reply to Stevens' Opposition, that Stevens already had copies of all three of the documents, which were of record in the interference, but **not served** with the motion.

(3) • The interference Rules specify the copies of documents of record in an involved application need not be filed or served. These interference Rules further specify that duplicate copies of documents should not be filed in an interference.

(4) • Stevens has not alleged that Stevens was prejudiced by the failure of Tamai to **serve** upon Stevens extra copies of documents, which Stevens possessed. Under these circumstances, any error on the part of Tamai must be regarded as harmless and disregarded.

(5) • Stevens Reply Brief includes a number of misstatements of material facts. For example, Stevens states that Tamai did not file "even a single copy" of the translation of the PCT application. This statement is clearly false, because Tamai filed a copy of the national stage application (the '183 application), which is the translation of the PCT application, and Tamai filed a copy of the translation of the Japanese priority document, while pointing out that this translation is also an accurate translation of the PCT application.

(6) • Although the Board's reasoning was not entirely correct, the Board correctly ruled that Tamai is entitled to priority and that Stevens is **not** entitled to priority. Stevens should not be entitled to priority, in view of the provisions of the Patent Cooperation Treaty and 35 USC 363.

After the final hearing is concluded, we can simply wait for the decision. A motion for attorneys' fees may be filed within 30 days after the Federal Circuit issues its decision. We estimate that this decision may be issued about 3 to 4 months after the Oral Hearing.

However, the time between final hearing and decision can vary considerably, according to the complexity of the issues, the size of the docket of the panel, etc. For example, on January 21, 2004, the Federal Circuit issued a decision involving three patents, wherein Oral Hearing took place on December 2, 2004. However, in a recent appeal handled by a partner of our firm, the court took seven months from the date of the Oral Hearing to issue the decision.

**(2) APPEAL SCHEDULE**

The appeal may be dismissed any time before final decision is issued. In particular, the practice note to Rule 42 (Voluntary Dismissal) of the Federal Circuit Rules states:

Mr. Kenji Itami
Page 3
January 22, 2004

Request to Withdraw Appeal or Petition.  An appellant or petitioner may request to withdraw an appeal or petition at any time before decision, and the request will be granted in all but the most unusual circumstances.  An opposing party is ordinarily expected to consent to the withdrawal on terms requiring each party to bear its own costs on appeal.  A stipulation of the parties that a case is withdrawn may refer to a settlement agreement, but the stipulation should not include the terms of the settlement.

Therefore, it is possible to continue settlement negotiations after the Oral Hearing.  As noted above, we estimate that it may take three or four month for the Federal Circuit to issue a decision after the Oral Hearing.

Although the Federal Circuit does not require the parties to file the terms of a settlement agreement, the USPTO does have such a requirement.  In particular, 35 USC 135(c) provides:

Any agreement or understanding between parties to an interference, including any collateral agreements referred to therein, made in connection with or in contemplation of the termination of the interference, shall be in writing and a true copy thereof filed in the Patent and Trademark Office before the termination of the interference as between said parties to the agreement or understanding.  If any party filing the same so requests, the copy shall be kept separate from the file of the interference, and made available only to Government agencies on written request, or to any person on a showing of good cause.

The agreement or understanding may be filed in the USPTO under seal.

It may be difficult to postpone the Oral Hearing, even with a joint request, simply to attempt to adjust the settlement terms.

Since Stevens filed the appeal, Stevens would be primarily responsible for requesting an extension of time.  Unless Tamai can promptly provide Stevens with a favorable counter settlement proposal, Stevens may not be motivated to go through the effort of requesting an extension of time.

According to Federal Circuit Rule 26(b)(1), a request for an extension of time must be filed at least 7 days before the date sought to be extended.  Since the Oral Hearing is scheduled for February 6, 2004, the request would have to be filed by January 30, 2004.  However, the court is not likely to rule on the request on the same day it is filed.  It may take several days for the court to make this ruling.  It is possible that the parties would not know whether the requested was either granted or denied until the day before the Oral Hearing.

Mr. Kenji Itami
Page 4
January 22, 2004

The Federal Circuit Rules specifically address the possibility of extending due dates for the purposes of settlement negotiations. In particular, the practice notes accompanying Rule 26 (Computing and Extending Time), includes the following statement:

> **Extension During Settlement Negotiations; Stipulation of Dismissal Without Prejudice Pending Settlement.** Parties jointly stipulating that they are actively pursuing settlement of the case will be granted a reasonable extension of time to accomplish settlement. The parties may also move to dismiss the appeal pending settlement negotiations, with the appellant reserving the right to reinstate the appeal on notice to the clerk that the settlement negotiations have failed.

This practice note indicates that the Federal Circuit gives favorable consideration to requests for extensions for <u>accomplishing</u> settlement. Furthermore, Rule 26(b)(4) states that the motion to extend time, must provide a showing of <u>good cause</u>. Preferably such a showing would include statement that the parties have spent a considerable amount of time and effort to achieve settlement and that negotiations have advanced to the point were settlement issues can be resolved within a short period of time, perhaps a month. Since there has been little advancement of negotiations between Stevens and Tamai, it may be difficult to convince the court that there is a good cause for postponing the date for Oral Hearing.

If a request is filed to postpone the Oral Hearing, we recommend that the parties stipulate to a new, fixed Oral Hearing date, perhaps about one month or six weeks from February 5, 2004. We do not recommend filing a motion to dismiss the appeal pending settlement negotiations. It is noted that that a copy of any request for an extension of time should be filed with the solicitors office of the USPTO. The solicitors office is likely to object to an indefinite dismissal, where the appellant (Stevens) can reinstate the appeal at any time.

By having the Oral Hearing, the parties may be able to learn how the Federal Circuit is likely to decide the appeal. It is also possible, although highly unlikely, that the court could decide the appeal at the end of the hearing, from the bench. We may also be able to determine whether the court is likely to give favorable consideration to a motion for attorneys' fees.

Under the present circumstances, the best option for Tamai may be to continue to negotiate with Stevens, but <u>not</u> to request postponement of the Oral Hearing.

## (3) RENEWED PROSECUTION OF TAMAI'S APPLICATION

In the event that Tamai loses the appeal, the application will be returned to the Examiner. The Examiner will then reject all of the claims designated as corresponding to the lost count of the interference. These claims are claims 1-21, i.e. all of the claims in Tamai's application.

01/22/2004 16:24 FAX  202 775 9242        WESTERMAN. HATTORI        -                        ☒006/008

Mr. Kenji Itami
Page 5
January 22, 2004

If Tamai loses the appeal, Tamai may add or amend claims, but the new or amended claims would have to be patentably distinct from the lost count of the interference.

If Tamai wins the appeal, Tamai's claims cannot be rejected over the count of the interference. In particular, upon return of the present application to the USPTO for further examination, 37 CFR 1.664(a) requires the Examiner to promptly take action, such as by issuing a new Office Action or Notice of Allowance (see also MPEP 2363). The status of the claims is identical to the status immediately before the interference. The claim (claim 20 of the present application) that is identical to the interference count should be deemed allowable in accordance to the Office Action dated August 4, 1995. All other claims may still be rejected over the prior art for the reasons as set forth in the August 4, 1995 Office Action. Of course, we will not know for sure until we receive another Office Action from the USPTO.

To quickly obtain a Patent, all remaining rejected claims may be canceled from the present application and re-submitted in a Continuation Application for further prosecution. This would allow a Letters Patent to be issued on claim 20 and any other claim(s) deemed allowable in a subsequent Office Action after the case is returned to the USPTO.

There is a question about the status of claims 5 and 6, which were first rejected (1st Office Action dated November 18, 1994), then were deemed allowable (2nd Office Action dated July 11, 1995), and then rejected again (3rd Office Action dated August 4, 1995). In response to the arguments distinguishing the prior art, the Examiner thought claims 5 and 6 were allowable, at first. But, when the Examiner found the Stevens Patent and suggested the allowable claim for interference, the Examiner appears to have simply repeated the original rejections covering claims 5 and 6, without addressing the arguments that had previously distinguished the prior art. There is a possibility that claims 5 and 6 may be deemed allowable again if we reminded the Examiner about the distinguishing arguments, as well as the Examiner's initial allowance of the claims in response to our arguments. Again, any response will depend on the status of the claims after the Examiner (perhaps a new one) issues a new Office Action when the case is returned to the USPTO.

### (4) THE SANFORD PATENT

We concur that that Mr. Graff should confirm that the patent referred to as being owned by Sanford is the Stevens patent. Without the assistance of Mr. Graff it may be difficult to determine precisely which patents Sanford owns in this area. Such patents may be assigned on their face to Gillete or Rubbermaid or some other entity.

We have conducted a quick USPTO web site search for U.S. patents issued after 1976, which are assigned to Gillete and mention the words, "correction" and "tape". Thirteen patents were identified, including the Stevens patent (US 5,393,368) involved in the present interference. Attached is a copy of our search results.

Mr. Kenji Itami
Page 6
January 22, 2004

We have not examined each of these patents to see if they are pertinent. However, we note that US 5,820,728 also names Stevens as the inventor. Claim 1 of this Stevens '728 patent recites:

1. A *correction tape* dispenser having a body member and an applicator tip assembly, said tip assembly comprising:

a supporting member; and

an applicator tip, said applicator tip having an edge for pressing a *tape* against a surface;

said supporting member and said tip being connected one to the other by a pair of mating arcuate bearing surfaces, said arcuate bearing surfaces having a common axis spaced from said mating arcuate bearing surfaces toward said tip to provide relative movement between said supporting member and said tip.

Please let us know if you have any questions or comments or if we can be of any further assistance.

Very truly yours,

*Edward F. Kenehan, Jr.*

Edward F. Kenehan, Jr.

cc:    John P. Kong
       William F. Westerman

01/22/2004 16:25 FAX  202 775 9242        WESTERMAN. HATTORI                      ☒008/008

Patent Database Search Results: an/Gillette and (correction and tape) in 1976 to present        Page 1 of 1

## USPTO PATENT FULL-TEXT AND IMAGE DATABASE

| Home | Quick | Advanced | Pat Num | Help |

| Bottom | View Cart |

*Searching 1976 to present...*

**Results of Search in 1976 to present db for:**
(AN/Gillette AND (correction AND tape)): 13 patents.
*Hits 1 through 13 out of 13*

 an/Gillette and (correction and tape)

**PAT. NO.    Title**

1   6,112,796   T Tape dispenser
2   6,027,272   T Fluid delivery system
3   5,820,728   T Tape Dispenser
4   5,804,633   T Permanent aqueous marker inks
5   5,714,035   T Correction tape dispenser
6   5,686,519   T Permanent aqueous marker inks
7   5,512,623   T Permanent aqueous marker inks
8   5,470,904   T Permanent aqueous marker inks
9   5,393,368   T Correction tape dispenser
10  5,310,445   T Tape dispenser
11  5,310,437   T Single spool correction tape dispenser
12  5,282,919   T Apparatus for removing a marking from a surface
13  5,281,298   T Film transfer device

| Top | View Cart |

| Home | Quick | Advanced | Pat Num | Help |

# Exhibit 20

/

 **WESTERMAN HATTORI DANIELS & ADRIAN, LLP**



# FACSIMILE

1250 Connecticut Avenue, NW — Suite 700       Tel: (202) 822-1100
Washington, DC 20036                          Fax:(202) 822-1111

| | |
|---|---|
| Date: | May 5, 2004 |
| To: | |
| TO: | Mr. Kenji Itami |
| | Itami Patent Office |
| | Daisan Building |
| | 2-4, 3-chome, Nishitenma, Kita-ku |
| | Osaka, 530-0047, JAPAN |
| RE: | 03-1479 |
| | Interference No. 103,662 |
| | <u>Stevens v. Tamai</u> |
| FROM: | Edward Kenehan |
| FAX TEL. NO.: | 011-81-6-6365-8577 |
| Number of Pages: | 5 (including cover sheet) |
| Remarks: | Kindly refer to the attached. The confirmation copy will be sent to your office via U.S. Postal Service. |

*THE INFORMATION CONTAINED IN THIS MESSAGE IS CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED.* This message may also be an attorney/client communication which is privileged and confidential. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by calling us collect and return the original message to us at the above address by mail. Thank you.

05/05/2004 17:24 FAX 202 775 9241    WESTERMAN HATTORI    @002/005



WESTERMAN
HATTORI
DANIELS &
ADRIAN, LLP

WILLIAM F. WESTERMAN        THOMAS E. BROWN        PATENT AGENT
KEN HAYTON                  MICHAEL H. LAU         SALLY YOSHIZAKI
SCOTT M. DANIELS
STEPHEN B. ADRIAN           MICHAEL J. CARDI       JAPANESE BENRISHI
JOHN P. KONG                M. SCOTT ALPRIN        TOMOKO NAKAJIMA
SADAO KINASHI               JOSEPH L. FELBER       YASUNISA KUNISE
THOMAS J. MACPEAK           KENNETH H. SALEN*
EDWARD F. KENEHAN, JR.      *Practice limited to matters and
NICOLAS E. SECKEL*          proceedings before Patent
                            and Trademark Office

May 5, 2004

***VIA FACSIMILE***

Mr. Kenji Itami
Itami Patent Office
Daisan Building
2-4, 3-chome, Nishitenma, Kita-ku
Osaka, 530-0047, Japan



Re:    03-1479
       Interference No. 103,662
       Stevens v. Tamai

Dear Mr. Itami:

We are very disappointed with the Federal Circuit decision in Stevens v. Tamai.

**Analysis of the Decision**

We believe that the decision includes legal errors, as well as mischaracterizations of the written record and the oral argument. We therefore present later in this letter a series of options for Tamai to consider.

The court confuses the provisions of 35 USC 363 with those of 35 USC 365. For example, at page 8 of the decision, it is stated:

A party to an interference seeking to be "accorded the benefit of the filing date of an earlier filed application" under 37 C.F.R. 1.633(f) is seeking to establish an effective filing date. See id. at 1351-52. "The effective filing date of an application is the filing date of an earlier application, benefit of which is accorded to the application under 35 U.S.C. 119, 120, 121, or 365 . . . ." 37 C.F.R. § 1.601(g); see also Hyatt, 146 F.3d at 1352 ("When a party to an interference seeks the benefit of an earlier-filed United States patent application, the earlier application must meet the requirements of 35 U.S.C. § 120 . . . .").

Also, at pages 11 and 12, it is stated:

Subject to 35 U.S.C. § 119(a)-(d), section 365(a) of title 35 grants national applications the benefit of corresponding international applications which designated at least one country other than the United States.

WASHINGTON OFFICE:   1250 CONNECTICUT AVE., N.W., SUITE 700, WASHINGTON, D.C. 20036   |   TEL. 202.822.1100   |   FAX. 202.822.1111   |   www.WHDApatentlaw.com
TOKYO OFFICE:   COSMO SHINJUKU GYOEN BLDG. 6F, 1-4-7 SHINJUKU, SHINJUKU-KU, TOKYO, 160-0022, JAPAN   |   TEL. 03.3356.1327   |   FAX. 03.3356.1329

05/05/2004 17:25 FAX  202 775 9241          WESTERMAN HATTORI                    @003/005

Mr. Kenji Itami
Page 2
May 5, 2004

The provisions of 35 USC 365, however, do not apply to the present interference. 35 USC 365 applies when an applicant claims priority benefit to a PCT application or claims continuing status to the PCT application. When an applicant enters the national stage of a PCT application, 35 USC 365 does not apply. Rather, 35 USC 363 applies when one enters the national stage of a PCT application.

35 USC 363 dictates that for all purposes other than 35 USC 102(e), a national stage application regularly filed in the United States has the filing date of the international (PCT) application. There is no question of priority or benefit of an earlier application. The PCT application is not an earlier application, because the filing date of the national stage application is the filing date of the PCT application.

Therefore, all the statements in the decision, that the filing date of the '183 application was the date of entry into the national stage, and that Tamai needed to be accorded the "benefit of" the "earlier filed" PCT application are in error.

There is no authority for the Interference Board to take away the filing status accorded by 35 USC 363. At page 12 of the decision, the court cites 35 USC 372(b)(2), stating:

> And, while overlooked by Tamai, 35 U.S.C. § 372(b)(3) permits the Director to "require a verification of the translation of the international application or any other document pertaining to the application if the application or other document was filed in a language other than English."

Tamai has not overlooked this provision. Rather, the court has misinterpreted it.

35 USC 372(b)(3) gives the Director (Commissioner of the USPTO) the statutory authority to promulgate a Rule for requiring a verification of the translation of the international application, as a condition for entering the national stage. That Rule is 37 CFR 1.495(f). Tamai complied with this Rule and was granted entry into the national stage. Therefore, the Board had no authority to revoke the national-stage status of Tamai's '183 application or to require any further verification of the translation.

A mischaracterization of the record occurs at page 8 of the decision, where it is stated:

> In the matter at hand, the Board held that because Tamai did not file with his motion for benefit an English language translation of the PCT '947 application and an affidavit attesting to the accuracy of the translation, Tamai had not proven that he was entitled to be accorded the filing date of the '947 application.

The Board never made any reference to an affidavit attesting to the accuracy of the translation. In opposing Tamai's motion, Stevens also made no reference to an affidavit attesting

05/05/2004 17:25 FAX  202 775 9241        WESTERMAN HATTORI                    ☑004/005

Mr. Kenji Itami
Page 3
May 5, 2004

to the accuracy of the translation. Any alleged requirement for Tamai to file an affidavit attesting to the accuracy of a translation was effectively waived by Stevens and the Board.

### Options Regarding the Decision

(1)    We are considering a number of options for going forward. One option is to request reconsideration. The filing date for such a request expires within 14 days of the court's decision. This request may be made to the original 3 judge panel and/or to the entire court en banc. Although such requests are rarely granted, there is at least a chance in the present decision, in view of the above-noted conflicts between (1) the interference Rules, as applied in the present decision and (2) the Patent Cooperation Treaty, as codified in 35 USC 363.

Another option would be to file a motion to reopen the testimony period, when the interference is remanded to the Board. This motion could be brought before or after the Board enters judgment. This motion would point out that any failure of Tamai to serve documents to Stevens was the result of an honest misunderstanding. We would again point out that Stevens is in possession of the translation (i.e., the '183 application), which Stevens noted was not served with Tamai's motion. Stevens has argued that this lack of service has shielded Stevens from pointing out any inaccuracies in the translation. The interests of justice would be served by an inter parties determination as to whether the '183 application is an accurate translation of the PCT. Stevens should be required to point out any inaccuracies in the translation.

We would argue that this motion could not have been brought earlier, because the Board had previously awarded priority to Tamai, and, therefore, such a motion was unnecessary.

(2)    Another option would be to try to appeal the new Board decision to a U.S. District Court. We could argue that any disputed inaccuracies in the '183 application, as a translation of the PCT, became relevant only when judgment was taken away from Tamai and given to Stevens. The District Court would be the venue to determine this new and important issue not considered by the Board. If the Board denies or dismisses a motion by Tamai to reopen the testimony period, we could also ask a District Court to review the decision of whether it was proper for the Board to so deny or dismiss such a motion.

(3)    Another option would involve an appeal to the Supreme Court. However, since the interference has been remanded to the Board, such an appeal might have to wait until the remand procedure is completed.

We are still in the process of considering the best possible options, and we will provide you with further comments, as soon as possible.

Mr. Kenji Itami
Page 4
May 5, 2004

### Options Regarding the New Prior Art

On another issue, we recently reviewed the Decision of the Technical Board of Appeal dated June 24, 2003, enclosed with your letter of September 18, 2003. Since the corresponding EP Patent No. 551522 was revoked, there may be a substantial question of patentability for the claims of the present application, as well as those of the Stevens patent. Despite the results of the interference, the Examiner must consider the Decision and the cited prior art in reviewing all the claims during *ex parte* prosecution. The allowability of claim 20 (identical to the interference count) will also be reviewed.

In particular, the prosecution history for the present application emphasized that the sideways application of the correction tape or "handling like an ordinary writing tool such as a pencil ball-point pen fountain pen, etc., in a so-called lateral drawing use" was "a very important aspect of the present invention" (see, e.g., April 18, 1995 Amendment, pages 7 and 8). However, French Patent FR 2 643 351 discloses an applicator apparently having a sideways-oriented tip. The applicator may be used for applying a white band for masking text (page 1, lines 9-12). The Decision found the EP Patent obvious over this reference, in combination with EP 0 427 870 (for disclosing the use of two spools instead of the one spool in the French patent). The U.S. Examiner will consider all of these factors when he again takes up examination of the case.

Therefore, we are also considering procedural strategies to address this prior art issue. For instance, we are considering the usefulness of filing a motion for invalidity of the Stevens patent upon remand of the case to the Board (if possible) and/or filing a Request for Re-examination of the Stevens patent, as well as the implications of this issue if we appeal to the District Court. We will provide you more details on this point shortly.

Very truly yours,

WESTERMAN, HATTORI, DANIELS & ADRIAN, LLP

Edward P. Kenehan Jr.

William F. Westerman

John P. Kong

# Exhibit 21

05/12/2004 18:02 FAX  202 775 9241    WESTERMAN HATTORI    ☎002/008



## WESTERMAN HATTORI DANIELS & ADRIAN, LLP

WILLIAM F. WESTERMAN
KEN HATTORI
SCOTT M. DANIELS
STEPHEN G. ADRIAN
JOHN P. KONG
SADAO KINASHI
THOMAS J. MACPEAK
EDWARD F. KENEHAN, JR.
NICOLAS E. SECKEL *

THOMAS E. BROWN*
MICHAEL N. LAU
MICHAEL J. CAROLI
M. SCOTT ALPRIN
JOSEPH L. FELBER
KENNETH H. SALEH*

*Practice limited to matters and
proceedings before federal
courts and agencies

PATENT AGENT
SHUJI YOSHIZAKI

JAPANESE BENRISHI
TOMOKO NAKAJIMA
YASUHISA KUROSE

May 12, 2004

### VIA FACSIMILE

Mr. Kenji Itami
Itami Patent Office
Daisan Building
2-4, 3-chome, Nishitenma, Kita-ku
Osaka, 530-0047, JAPAN

RE:    03-1479
       Interference No. 103,662
       Stevens v. Tamai

Dear Mr. Itami:

Further to our letters, dated May 5 and 11, 2004, we provide herein further comments regarding options on how we recommend proceeding in view of the Federal Circuit decision in the present interference.

### REHEARING

We are in the process of drafting a Petition for Rehearing En Banc (including a petition for reconsideration by the Panel). We will absorb the cost for preparing and filing such a Petition.

As suggested in our May 5th letter, we believe that there is sound legal basis for filing a Petition for Rehearing En Banc.

A Petition for Rehearing En Banc may be granted when a precedent-setting question of exceptional importance is raised.

We believe that such a question is whether the Patent Office violated 35 U.S.C. § 363 by designating the national stage entry date (March 29, 1993), instead of the international filing date (July 24, 1992), as the filing date of Tamai's U.S. Application Serial No. 08/030,183.

We are unaware of any decisions, which would permit the Commissioner to misconstrue the filing date of Tamai's application in the manner of the present interference.

WASHINGTON OFFICE:  1250 CONNECTICUT AVE., N.W., SUITE 700, WASHINGTON, D.C. 20036  |  TEL. 202.822.1100  |  FAX. 202.822.1111  |  www.WHDApatentlaw.com
TOKYO OFFICE:  COSMO SHINJUKU GYOEN BLDG. 6F, 1-1-7 SHINJUKU, SHINJUKU-KU, TOKYO, 160-0022, JAPAN  |  TEL. 03.3356.1527  |  FAX. 03.3356.1529

05/12/2004 18:04 FAX  202 775 9241        WESTERMAN HATTORI                    @003/008

Mr. Kenji Itami
Itami Patent Office
Page 2
May 12, 2004

The question is of exceptional importance, because any violation of a statute by a Commissioner should be considered to be, per se, of exceptional importance. Furthermore, if this question is answered incorrectly, it could be prejudicial to future applicants properly entering the national stage of an international application in the United States. Moreover, since 35 U.S.C. §363 is essentially a codification of provisions of an international treaty (i.e. the Patent Cooperation Treaty), U.S. applicants, availing themselves of the Patent Cooperation Treaty (PCT), could be prejudiced by reciprocal conduct abroad, wherein foreign patent offices improperly treat the national stage entry date as the filing date of international applications.

As noted in our May 5th letter, the Court relies on 35 USC 372(b)(3) as providing the authority for the Patent and Trademark Office for requiring verification of a translation of an international application. While the section 372(b)(3) does provide some authority for requiring such a verification as a condition for entering the national stage of an international application, we believe it is questionable whether the Patent Office can require further verification after the Patent Office has accepted the application as meeting the national stage requirements. Once national stage entry has been granted, the filing date is the international filing date, pursuant to 35 U.S.C. §363. Neither the Commissioner nor the Court has authority to override the statutory authority of §363, carrying out the mandates of the PCT.

Even assuming, *arguendo*, however, that the Patent Office has the authority to require further verification of a translation after the Patent Office has accepted the application as meeting the national stage requirements, there is no authority for changing the status quo accorded to the national stage application by 35 USC 363. That is, the filing date of the national stage application must be considered to be the same as the filing date of the international application, pending the outcome of the verification by the applicant.

In the present interference, the Patent Office effectively revoked the national stage status of the application without authority and contrary to 35 USC 363.

As a remedy, we would request that the interference be remanded with instructions to the Board to re-declare the interference by designating July 24, 1992, as the filing date of Tamai's '183 application. If Stevens can certify to the Court, under pain of perjury and sanctions, that there are material inaccuracies in the '183 application, as a translation of the PCT '948 application, the interference should go forward on the limited issue of whether there are material inaccuracies in the '183 application, as a translation of the PCT '948 application. If Stevens is not able to so certify, the Board should be directed to re-enter judgment in favor of Tamai.

The Petition for Rehearing En Banc is due on Tuesday, May 18, 2004.

## MOTIONS AND PETITIONS ON REMAND

As stated in our May 5th letter, we are considering filing a motion to reopen the testimony period when the interference is remanded to the Board. We are also considering the filing of one

05/12/2004 18:07 FAX  202 775 9241        WESTERMAN HATTORI                    @004/008

Mr. Kenji Itami
Itami Patent Office
Page 3
May 12, 2004

or more Petitions to the Commissioner to be filed in lieu of motions to the Board and/or to request reconsideration of a refusal of the Board to grant our motion. We attached detailed comments regarding these further Petitions.

We would note that the granting of a Petition by the Commissioner would materially advance the termination of the interference by obviating the need for Tamai to seek recourse by way of 35 USC 145 District Court action or seeking other appellate review.

## REACTION TO THE DECISION

In our conversations with other U.S. patent attorneys, the reaction has been consistently one of surprise and that the Court erred in not realizing the proper filing date of the '183 application.

## CONSULTING ARRANGEMENT

We have contacted Michael Sofocleous, a former interference Administrative Patent Judge (APJ), to consult with us. Mr. Sofocleous retired from the Patent Office in 1999 and has recently taken up practice as a solo practitioner. He is one of the most respected former interference APJs in private practice today.

Mr. Sofocleous did not work on the present interference while at the Board and, therefore, has no restrictions from the Patent Office, which would prevent him from consulting with us. He also has no conflicts, in terms of the real parties in interest to the present interference.

Mr. Sofocleous was an APJ for over twenty years and is most knowledgeable regarding interference practices and procedures, including those addressed in published and unpublished decisions.

We will absorb the costs for any consultation with Mr. Sofocleous.

We are scheduled to meet with Mr. Sofocleous tomorrow afternoon.

## PRIOR ART

As for the prior art enclosed with your letter of September 18, 2003, such prior art must be disclosed to the USPTO pursuant to the applicant's duty of disclosure.

In addition to submission of the prior art, we are also considering the advantages and disadvantages of filing a motion for unpatentability of the count. One advantage for such a motion is that, if the Board considers the motion, it would provide an early determination of the

Mr. Kenji Itami
Itami Patent Office
Page 4
May 12, 2004

patentability of the count. Such a determination may also affect the claims of the Stevens' patent that correspond to the count. On the other hand, one disadvantage is that our filing of such a motion may constitute an *admission* by Tamai of the unpatentability of the count.

We will further consider the issues of the prior art. Of course, please let us know if the applicant has any comments for distinguishing the prior art.

------------------------------------------------

In the meantime, we recommend proceeding with the Petition for Rehearing En Banc, due May 18, 2004. We look forward to your confirmation. We welcome any comments you may have in this matter.

Very truly yours,

WESTERMAN, HATTORI, DANIELS & ADRIAN, LLP

Edward F. Kenehan /WFW

Edward F. Kenehan

William F. Westerman

John P. Kong

EFK/WFW/JPK/kal

Enclosure:     Petitions on Remand

Attachment to May 12, 2004 Letter
Petitions on Remand
Page 1

## PETITIONS ON REMAND

A Petition to the Commissioner may be brought under 37 CFR 1.644(a)(1), 37 CFR 1.644(a)(2) or 37 CFR 1.644(a)(3).

A Petition under 37 CFR 1.644(a)(1) would require a certification by the Board that a decision by the Board involves a controlling question of procedure or an interpretation of a rule as to which there is a substantial ground for a difference of opinion and that an immediate decision on petition by the Commissioner may materially advance the ultimate termination of the interference.

We would take the position that there is a substantial ground for difference of opinion as to whether Tamai was required to file a translation or an affidavit under 37 CFR 1.637(f).

A motion for benefit of "an earlier filed application" is made pursuant to 37 C.F.R. 1.633(f), which recites (emphasis added), "A motion to be accorded the benefit of the filing date of an **earlier filed application**. See 1.637(a) and (f)".

The PCT application is not an "earlier filed application". 35 U.S.C. §363. MPEP §§1893.03(b) & (c). The filing date of the '183 application is the July 24, 1992, filing date of the PCT application. 35 U.S.C. §363.

37 C.F.R. 1.637(f) pertains to motions under 37 C.F.R. 1.633(f). 37 C.F.R. 1.637(f)(2) recites (emphasis supplied herein):

(f) A preliminary motion for benefit under 1.633(f) shall:

(2) When the **earlier application** is an application filed in the United States, certify that a complete copy of the file of the **earlier application**, except for documents filed under 1.131 or 1.608, has been served on all opponents. When the **earlier application** is an application filed in a foreign country, certify that a copy of the application has been served on all opponents. If the **earlier filed application** is not in English, the requirements of 1.647 must also be met.

The PCT application is not an "earlier application" or an "earlier filed application". 35 U.S.C. §363. MPEP §§1893.03(b) & (c). Therefore, Tamai was not required to comply with 37 C.F.R. 1.637(f)(2) in order to establish the July 24, 1992 filing date of the PCT application as the filing date of the '183 application.

Even assuming, *arguendo*, that the PCT application **is** (even though it is **not**) considered to be an "earlier application" for the purposes of 37 C.F.R. 1.637(f)(2), Tamai was in substantial compliance with this section.

05/12/2004 18:12 FAX  202 775 9241          WESTERMAN HATTORI                    @007/008

Attachment to May 12, 2004 Letter
Petitions on Remand
Page 2

A threshold question would be whether the first or second sentence of 37 C.F.R. 1.637(f)(2) would apply, because it is uncertain whether the PCT application should be considered (1) an application "filed in" the United States, as per the first sentence of this section, or (2) an application "filed in" a foreign country, as per the second sentence of this section.

Since the PCT application is an international application designating the United States, as a matter of law, it is considered to have the same effect of an application "filed in" the United States. 35 U.S.C. §363. Therefore, it is possible to construe the PCT application as being "filed in" the United States for the purposes of 37 C.F.R. 1.637(f)(2).

According to the first sentence of 37 C.F.R. 1.637(f)(2), a party is required to serve the "file" (without translations) of the "earlier application". The relevant contents of the file of the PCT application are believed to be incorporated in the file of the '183 application.

Since the PCT application was filed in Japan, it could also be construed as an application "filed in" a foreign country for the purposes of 37 C.F.R. 1.637(f)(2). According to the second sentence of this section, a party is required to serve a copy of the "earlier application". The PCT application is part of the file of the '183 application.

The third sentence of 37 C.F.R. 1.637(f)(2) requires a party to also comply with the provisions of 37 C.F.R. 1.647, when the "earlier filed application", filed in a foreign country, is not in English. According to 37 C.F.R. 1.647, a party is required to produce an English translation and an affidavit attesting to the accuracy of the translation with the "earlier filed application" filed in a foreign country. The '183 application file includes (1) a copy of the PCT application, (2) its English language version and (3) an affidavit attesting to the accuracy of the translation.

As noted in the Transmittal Letter in the '183 application, documents submitted for the file of the '183 application included (1) as per Box 3c, a copy of the International Application (i.e. the PCT application) as filed (35 U.S.C. §371(c)(2)); (2) as per Box 4, a translation of the International Application into English (35 U.S.C. §371(c)(2)); and (3) as per Box 6, an oath or declaration of the inventor (35 U.S.C. §371(c)(4)). (A1676-77).

The Oath or Declaration, referred to in the above-mentioned Transmittal Letter, is the Declaration for U.S. Patent Application, executed by Shigeru Tamai on March 10, 1993 (hereinafter "the Tamai Declaration"). (A1692). In view of the "I hereby declare . . ." statement at the bottom of the Declaration, this Tamai Declaration qualifies as a Declaration under 37 C.F.R. 1.68. Pursuant to 37 C.F.R. 1.601(b), a Declaration under 37 C.F.R. 1.68 qualifies as an "affidavit" for interference purposes.

Attachment to May 12, 2004 Letter
Petitions on Remand
Page 3

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled (insert Title)    COATING FILM TRANSFER TOOL

the specification of which
1. ☐ is attached hereto
2. ☒ was filed on ___July 24, 1992___ International PCT Application Serial No. ___PCT/JP92/00943___ and was amended on _____ (if applicable)
3. ☐ was filed on _____ U.S. Application Serial No. _____ and was amended on _____ (if applicable)

(A1692).

 The Tamai Declaration attests that the specification of the invention is attached thereto and that this specification was filed on July 24, 1992 as the PCT application. The specification attached to the Tamai Declaration is the specification of the '183 application. (A1675-91) Therefore, the Tamai Declaration is an "affidavit" filed with the PCT application (A1722-46) and its English translation (A1675-91) attesting to the fact that the translation accurately discloses the same subject matter as the PCT application.

 It is not asserted herein that the inventor, Tamai, is fluent in both English and Japanese. However, the interference rules specify that an affidavit may be based on information and belief. Such an affidavit is not necessarily the best for interference purposes, and may be negated with an appropriate counter affidavit based on direct knowledge. However, the Tamai Declaration satisfies the basic requirement of an affidavit under the interference rules.

 A Petition under 37 CFR 1.644(a)(2) seeks to invoke the supervisory authority of the Commissioner. The Commissioner should invoke this authority in the present interference to avoid violation of 35 USC 363 and the corresponding provisions of the Patent Cooperation Treaty.

 A Petition under 37 CFR 1.644(a)(3) seeks to permit, when justice requires, suspension of one or more interference rules. In the event that 37 CFR 1.633(f) is held to be applicable then we would take the position that the requirements to file duplicate copies of documents of record be suspended.

# Exhibit 22



**WESTERMAN HATTORI DANIELS & ADRIAN, LLP**

| | | |
|---|---|---|
| WILLIAM E. WESTERMAN | THOMAS E. BROWN* | PATENT AGENT |
| KEN HATTORI | MICHAEL N. LAU | SHUJI YOSHIZAKI |
| SCOTT M. DANIELS | | |
| STEPHEN G. ADRIAN | MICHAEL J. CARIDI | JAPANESE BENRISHI |
| JOHN F. KONG | M. SCOTT ALPRIN | TOMOKO KAWAJIMA |
| SADAO KAWASHI | JOSEPH L. FELBER | YASUHISA KUROSE |
| THOMAS J. MACPEAK | KENNETH H. SALEN* | |
| EDWARD F. KENEHAN, JR. | *Practices limited to matters and | |
| NICOLAS E. SECKEL* | proceedings before Patent courts and agencies | |

May 27, 2004

**_VIA FACSIMILE_**

Mr. Kenji Itami
Itami Patent Office
Daisan Building
2-4, 3-chome, Nishitenma, Kita-ku
Osaka, 530-0047, Japan

                    Re:    03-1479
                           Interference No. 103,662
                           Stevens v. Tamai

Dear Mr. Itami:

        Thank you for your letter dated, May 24, 2004.

        We checked the Federal Circuit list of dispositions again today and there still not been a ruling on our Petition for Reconsideration.

        Yesterday, a Petition for Panel Rehearing and Rehearing En Banc was dismissed on a decision (Unova v. Acer), dated March, 31, 2004.  This particular Petition would have been filed no later than April 14, 2004.

        Although the Petition in the Unova decision took more than a month to decide, it could take considerably less time for our Petition to be decided.

**Action Items**

        Our detailed comments are provided below.  However, at the outset, we would like to summarize the following requests.

- Please ask Mr. Graff for a detailed list of terms.  For example, ask whether the settlement involves Japan and includes licensees.

- Please give us representative details (dates and description, but not a complete list) of early U.S. sales of Tamai's product.

WASHINGTON OFFICE:  1250 CONNECTICUT AVE., N.W., SUITE 700, WASHINGTON, D.C. 20036   |   TEL. 202.822.1100   |   FAX. 202.822.1111   |   www.WHDApatentlaw.com

TOKYO OFFICE:  COSMO SHINJUKU GYOEN BLDG. 6F, 1-5-7 SHINJUKU, SHINJUKU-KU, TOKYO, 160-0022, JAPAN   |   TEL. 03.3356.1527   |   FAX. 03.3356.1529

05/27/2004 16:20 FAX  202 775 9242        WESTERMAN, HATTORI                    @003/009

Mr. Kenji Itami
Page 2
May 27, 2004

### Declaration Regarding Translation

We note that the person who prepared the translation of the PCT application is no longer living. We will have someone at our firm, probably Mr. Kinashi, prepare this Declaration, if needed.

### Chances of Success

It is difficult for us to speculate on our chances of success at this time. We believe that Tamai is an obvious winner to one fully comprehending the facts and applicable law of the present interference. However, neither the Federal Circuit nor the Board (as well as, perhaps, our opponent, Stevens) has appreciated these facts and applicable law.

Under the circumstances, it seems unlikely that the Federal Circuit will not admit that they made the wrong decision. Therefore, we do not expect that the Federal Circuit will modify the decision. It is most likely that the Petition for Rehearing will be denied without further comment.

In the event that the interference is remanded to the Board without further modification, it is most likely that the Board will simply go along with the decision and summarily deny any further petitions or motions by Tamai and rapidly award priority to Stevens. It may also be possible that the Board could award priority to Stevens before Tamai has an opportunity to file motions or petitions.

Any motions or petitions filed by Tamai, either before or after an award of priority to Stevens, could be rapidly and summarily denied.

If Stevens is awarded priority, we could file an action under 35 USC 146 for District Court review. Stevens could challenge the jurisdiction of the court to take such action, in view of the Federal Circuit decision. However, it may take the District Court some time (perhaps at least a year to rule on this challenge).

The outcome of this matter may be based on unpredictable factors out of our control. We could not have predicted the manner in which the Board and the Federal Circuit would misconstrue the facts and applicable law of the present interference.

Therefore, we estimate Tamai's chances, absent a settlement agreement, to succeed in the near term, without much further effort, to be very low. Furthermore, we estimate our chances to eventually succeed eventually, after considerable further effort, to be low.

Mr. Kenji Itami
Page 3
May 27, 2004

**Royalty-Free Cross License Proposal**

We would also have to speculate as to whether it would be advisable to accept Stevens'
proposal for a royalty-free exchange of cross licenses. However, we offer the follow comments,
which may be of some help.

As we will state a number of times herein, a cross-license agreement will grant freedom
of the parties to practice the invention without fear of litigation.

In Mr. Nishioka's letter, dated February 2, 2004, to Mr. Graff, a royalty bearing cross-
license was proposed. In Mr. Nishioka's letter, dated March 17, 2004, to Mr. Graff, this
proposal was clarified to exclude royalty payments for the subject matter of the count of the
interference, provided that Stevens conceded priority by withdrawing from the appeal.
Therefore, the Mr. Nishioka's March 17th proposal seem to be essentially a royalty-free proposal,
not substantially different from that now proposed by Mr. Graff.

A royalty-free agreement is certainly much simpler to construct and maintain than a
royalty bearing agreement, especially one involving running (as opposed to paid-up) royalties.
In a royalty-free agreement, there is no need to account for number of units sold, payment
schedules, currency exchange rates, taxes, etc.

We are not aware of any current business restrictions to the royalty-free proposal of Mr.
Graff. However, for completeness we note that such restrictions could theoretically exist. For
example, it is understood that Seed already has licensees. If such exiting licensees have
exclusive rights or are paying royalties under a most favored nations provision, then existing
license agreements may have to be renegotiated before Seed can agree to a comprehensive,
royalty free exchange with Sanford.

In the event that a totally royalty-free exchange is not acceptable to Seed, a possible
compromise might involve a one-time, lump sum, fixed payment from Sanford to Seed to permit
Sanford, its affiliates and licensees to make use and sell an unlimited number of dispensers. At
present, Sanford clearly seems to be unwilling to make any payments to Seed. However, if Seed
believes that there is a realistic chance of convincing Sanford to make a payment to Seed, as a
negotiating point, the amount of this payment might involve compensation to Seed for legal
expenses incurred in the interference, especially the present appeal.

Although not specified in Mr. Graff's May 20, 2004, letter, it is assumed that a world-
wide agreement is contemplated, in view of earlier proposals. Sanford may be willing to
exchange U.S. patent licenses for licenses from Tamai to make and use "sideways" tape
dispensers in other countries, such as Japan. In Mr. Nishioka's letters, dated February 2, 2004
and March 17, 2004, Seed's Japanese patent rights were excluded.

Mr. Kenji Itami
Page 4
May 27, 2004

Seed should make an evaluation of both Seed's and Sanford's (including Rubbermaid and Gillette) world-wide patents covering "sideways" tape dispensers. In any given country, Seed and Sanford may have more than one patent directed to "sideways" tape dispensers. Attached hereto is a family list of patents and published applications corresponding to Stevens patent (US 5,393,368) involved in the present interference.

If the value of Sanford's portfolio is about equal to the value of Seed's portfolio, the proposed royalty-free exchange may be favorable to both Seed and Sanford. Seed should also give value to the agreement as a means of settling all potential law suits on the involved patents, thereby eliminating business uncertainties.

For example, Sanford's U.S. patent involved in the interference, may possibly be invalid, as being barred by prior sales of Seed's product. However, Sanford could still sue a licensee of Seed in the U.S. for infringement. Perhaps the licensee would decide to stop sales of dispensers, thereby interrupting royalty payments to Seed. Perhaps the licensing agreement would require Seed to defend the infringement suit and reimburse the licensee for any losses.

In view of the loss of Seed's European Patent and the potential problems with the U.S. application, in view of the reference in the European opposition, a royalty-free cross license may be especially desirable for Seed, from a legal point of view, at least in Europe and the U.S.

It would seem that Seed would want the agreement to cover existing licensees of Seed. If Seed is contemplating future licensees, such future licensees may also need to be covered in the agreement. Whatever, rights Seed desires for its licensees, reciprocal rights would, most likely, need to be provided for Sanford's affiliates (e.g., Rubbermaid and Gillette) and licensees.

It is possible that Sanford, for the first time, now appreciates Tamai's position, in view of the Petition for Rehearing. During oral argument, Stevens' attorney (Mr. Moore) stated that Tamai needed to comply with 35 USC 120 in order to receive the benefit of the PCT application. Mr. Moore stated that Tamai never made a statement on the record claiming the benefit of the PCT application under 35 USC 120.

The position of Mr. Moore is clearly wrong, as pointed out in our Petition. Perhaps, Stevens now appreciates that this position is wrong, and Stevens may fear that the Federal Circuit will, perhaps, even without further rehearing, vacate its decision and remand the interference to the Board for clarification on this or other points.

Perhaps Stevens also appreciates that Tamai has grounds for filing additional motions and petitions upon remand, and that Tamai may further appeal a new judgment by the Board or seek further review in the District Court of the District of Columbia. Stevens may want to settle the matter before substantial further legal expenses are incurred.

05/27/2004 16:23 FAX 202 775 9242        WESTERMAN, HATTORI                    @006/009

Mr. Kenji Itami
Page 5
May 27, 2004

The decision of whether the settlement proposal includes many business factors unknown to us. The legal points discussed above must be view in the light of the relevant business factors.

## The Timing of the Opponent's Letter

Our first reaction to timing of the letter at this stage of the interference was one of surprise. However, there could be any number of reasons for the timing of Sanford's proposal.

We do not know if Stevens received a service copy of the decision prior to Mr. Graff's letter. The service copy of the Petition was sent to Mr. Moore by regular mail on May 18, 2004. It could have been received by Mr. Moore by the afternoon of May 20, 2004.

It is also possible that Stevens attorneys checked with the Federal Circuit to determine whether Tamai had filed a Petition for Rehearing. However, it is also possible that Mr. Graff did not know that Tamai had filed a Petition for Rehearing, when Mr. Graff sent the May 20th letter to Mr. Nishioka.

If our Petition is granted, Sanford would probably want to settle the interference, rather than to subject Stevens' position to further scrutiny. If the Petition is denied, Sanford may simply withdraw the proposal. If Sanford knew about our Petition, the timing of the proposal may just be a matter of Sanford protecting themselves in the event of the Petition succeeding.

Sanford may simply have wanted to wait for the Federal Circuit decision before responding to Seed's counterproposal, as clarified in Mr. Nishioka's letter, dated March 23, 2004 to Mr. Graff.

Sanford may believe that Seed's patent rights in Japan are worth trading for Sanford's world-wide rights. Insofar as the parties have made some attempts to negotiate a cross license agreement, Sanford may just be taking the opportunity to negotiate a favorable deal with Seed, regardless of the outcome of the interference. It is possible that Sanford may not even regard its patent involved in the interference to be of much value, in view of prior art problems.

## The Possibility of Terminating the Interference in Favor of Tamai by Settlement

If the Federal Circuit grants Tamai's Petition for Rehearing, the Federal Circuit could allow the parties to settle the interference in favor of Tamai. Even if the Federal Circuit does not permit such a settlement, it seems unlikely that the Federal Circuit would grant the Petition for Rehearing and then rule in favor of Stevens. If the Federal Circuit grants Tamai's Petition, then we believe that the Federal Circuit will rule in favor of Tamai.

Once the interference is remanded to the Board, the parties should be able to settle the interference in favor of Tamai.

05/27/2004 18:23 FAX  202 775 9242      WESTERMAN, HATTORI                    ☒007/009

Mr. Kenji Itami
Page 6
May 27, 2004

With a suitable cross license agreement, it could be desirable to both parties to have Tamai declared the winner. Tamai's prior sales would appear to constitute prior art to Stevens patent, but not to Tamai's application.

### Our Opinion Regarding Attack on Seed's Licensee

Of course, a cross license agreement covering Seed's licensee would protect Seed's licensee from attack by Sanford.

Absent a cross license agreement, however, it is possible that Sanford could eventually attempt to enforce its patent against Seed's licensee. The cost to Sanford of bringing the suit would be expensive, but, if Sanford is willing to spend the money, Sanford could cause considerable expenses to defend the suit.

Sanford faces two prior art problems: (1) the prior art cited in the opposition to Tamai's European patent; and (2) the products placed on sale by Seed, as early as 1991. In view of these problems, Sanford should not be able to show sufficient likelihood of success to support a motion for a Preliminary Injunction. Therefore, Sanford should not be able to stop Seed's licensee from continued sales pending the outcome of the litigation.

The prior art could also be ground for summary judgment of invalidity. Seed's licensee could be spared the cost of providing discovery to Sanford pending the outcome of the summary judgment motion. If the summary judgment motion is successful, the cost of defending the suit would be minimal, yet substantial.

In view of potential prior art problems, Sanford may be reluctant to sue Seed's licensee, and may be motivated to reach a reasonable settlement without vigorously litigating the matter. However, Sanford's course of action is unpredictable.

### Sales of Seed's Product

We would like to evaluate the sales of Seed's product in the United States.

We would first need to determine whether this product anticipates or renders obvious any products claimed by Stevens. Could you provide us with a sample of this product or a drawing or picture of this product showing the elements of the count?

We do not need a complete list of sales records at this time. However, we would ask that you provide us with representative records to show that Seed's product was sold in the United States at least one year prior to February 7, 1994, U.S. filing date of the Stevens patent (i.e. show sales prior to February 7, 1993).

Mr. Kenji Itami
Page 7
May 27, 2004

### Other Problems

When parties settle an interference, a good faith effort should be made to reach a mutual agreement as to which party is entitled to priority.  ~~Tamai~~

We fail to see how either party, Stevens or Tamai, could, in good faith, agree that Tamai is not entitled to filing date of the PCT application for priority purposes. Furthermore, in the event that the prior sales of Stevens product do constitute a bar to Stevens patent, it seems problematic for Tamai to concede priority to Stevens.

If Stevens now concedes that Tamai is entitled to priority, it brings into question whether Sevens has acted in good faith in the appeal to the Federal Circuit. Furthermore, in view of Tamai's prior sales, it may be a disadvantage to both parties to have Stevens declared the winner of the interference. Therefore, at this stage, it may be awkward to designate the proper party as the winner of the interference.

In Mr. Graff's letter, dated May 20, 2004, Mr. Graff offers to prepare a "final" settlement agreement. It is not understood what is meant by "final". However, it is assumed that Mr. Graff is proposing to provide an offer of agreement terms, which Seed may choose to either accept or modify in a counter offer.

If Seed is generally agreeable to a royalty-free cross license agreement, we recommend asking Stevens to provide a more detailed explanation of specific terms for the agreement. Mr. Graff states that he will have his lawyers prepare a "final" agreement. Mr. Graff title is Associate General Counsel. The so-called "final" agreement may already have been prepared, perhaps by Mr. Graff.

Mr. Graff could be asked to provide a detailed proposed agreement to form a basis for further negotiation.

When responding to Mr. Graff, Seed should also address (1) whether Sanford can make, use or sell the product in Japan, (2) whether Sanford can have more than one brand name associated with the product; and (3) whether the agreement applies to licensees of the parties.

In particular, Seed should state whether it is willing to withdraw requirements set forth in Mr. Nishioka's letters, dated February 2, 2004, and March 17, 2004.

05/27/2004 16:25 FAX  202 775 9242      WESTERMAN, HATTORI                     @009/009

Mr. Kenji Itami
Page 8
May 27, 2004


Please let us know if you have any further questions or comments or if we can provide any further assistance.

Very truly yours,

Edward F. Kenehan, Jr.

cc:    William F. Westerman
       John P. Kong

# Exhibit 23

08/15/2004 16:21 FAX  202 775 9241     WESTERMAN HATTORI                                    ☒002/004



**WESTERMAN HATTORI DANIELS & ADRIAN, LLP**

| | | |
|---|---|---|
| WILLIAM F. WESTERMAN | THOMAS E. BROWN* | PATENT AGENT |
| KEN HATTORI | MICHAEL H. LAU | SHUJI YOSHIZAKI |
| SCOTT M. DANIELS | | |
| STEPHEN G. ADRIAN | MICHAEL J. CIRADI | JAPANESE BENRISHI |
| JOHN R KONG | M. SCOTT ALPRIN | TOMOKO NAKAJIMA |
| SADAO XENASHI | JOSEPH H. FELKER | YASUHISA KUROSE |
| THOMAS J. MACPEAK | KENNETH H. SALEN* | |
| EDWARD F. KENEHAN, JR. | *Practice limited to matters and | |
| NICOLAS E. SECKEL* | proceedings before federal | |
| | courts and agencies | |

June 15, 2004

<u>Via Facsimile</u>

Mr. Kenji Itami
Itami Patent Office
Daisan Building
2-4, 3-chome, Nishitenma
Kita-ku, Osaka 530, Japan

RE:   Interference No. 103,662
      U.S. Patent Appln. S.N. 08/196,839
      By:  Shigeru TAMAI
      Your Ref: P123/SE.90
      <u>Our Ref:  940094I</u>

Dear Mr. Itami:

Thank you for your letters of June 10, 2004 and June 15, 2004. We apologize for the brief delay. We understand that this is an important matter for your client.

As we have discussed in detail in our arguments before the Federal Circuit, the issue is not a simple procedural error in which a translation was not filed. In fact, Stevens already had numerous "translations" the PCT application. One such translation is the '183 application itself since the USPTO accepted the '183 application as a proper national stage application of the international PCT application.

As we mentioned before, we were also quite shocked at the decision by the Federal Circuit. The initial emphasis in this interference was whether our applications had substantive support for the interference count. We won on the merits of that issue before the Board and were granted the benefit of the filing date of the '183 application. However, according to the statutory authority of 35 USC § 363, the "filing date" of the '183 application is not the U.S. filing date, but rather, the international PCT application filing date. We did not expect both the Board and the Federal Circuit to misunderstand this fact and misapply the law. We intend to pursue all reasonable means to have this corrected.

Indeed, Mr. Kenehan is currently focusing his attention in preparing the Motions and Petitions to be filed when the case is remanded to the Board. In particular, on June 10, 2004, we discovered that our Petition for Rehearing at the Federal Circuit was denied. We are now monitoring when this case is officially remanded to the Board.

WASHINGTON OFFICE:  1250 CONNECTICUT AVE., N.W., SUITE 700, WASHINGTON, D.C. 20036   |   TEL. 202.822.1100   |   FAX. 202.822.1111   |   www.WHDApatentlaw.com
TOKYO OFFICE:  COSMO SHINJUKU GYOEN BLDG. 6F, 1-1-7 SHINJUKU, SHINJUKU-KU, TOKYO, 160-0022, JAPAN   |   TEL. 03.3356.1527   |   FAX. 03.3356.1529

NO. 2376   P. 2                                    特許業務法人 06 6365 8577                         9時33分        2004年 6月16日

Mr. Kenji Itami
Itami Patent Office
June 15, 2004
Page 2

We are also investigating the possibility for filing a Petition with the PCT Legal Administrator who specializes in legal issues related to PCT applications. Mr. Kenehan had talked to some ex-PCT Legal Administrators about this case and will try to bring this matter to the attention of the current PCT Legal Administrator. It is hoped that the PCT Legal Administrator may contribute to the considerations by the Board on remand.

As for your client's question regarding settlement, we believe it is possible to settle the interference in favor of Tamai when the case is remanded to the Board. Pursuant to 35 USC § 135(c) and 37 CFR § 1.666(a), a settlement agreement may be submitted prior to the "termination" of the interference. Under 37 CFR § 1.661, after a final decision is entered by the Board, an interference is "terminated" when no appeal (under 35 USC § 141) or other review (under 35 USC § 146) has been or can be taken.

Therefore, a settlement agreement may be filed immediately upon remand of this case to the Board (since the current "final" decision is against Stevens). Or, a settlement agreement may be filed after the Board enters judgment against Tamai (since there is still the potential for review under 35 USC § 146 for Tamai – especially after our additional Motions and Petitions are filed).

In addition to filing the settlement agreement, the party giving up priority (i.e., Stevens, after the Board enters judgment against Tamai) must submit a Request for Adverse Judgment under 37 CFR § 1.662. Such a request "may" be accepted by the Board. Given the unpredictable response of the Board thus far and the Federal Circuit decision, we believe it is necessary for Stevens to cooperate in providing a reasonable basis to request adverse judgment against itself. One reasonable explanation may be Stevens' recent understanding of the complex PCT issues that justifies priority for Tamai. We will need to work with Stevens' attorneys in this matter.

As for your question regarding filing a "divisional" application, we had previously discussed the possibility for filing a continuation application (not a divisional application since there was no restriction requirement identifying more than one patentably distinct claimed subject matter) for all claims other than for claim 20. As mentioned before, once the case is returned to ex parte prosecution, the Examiner will reconsider the merits of the case. As the case stood just before the interference, there were several prior art rejections against the other claims. In addition, in view of your disclosure regarding the prior art references involved in the revocation of your client's European patent, there may be new prior art rejections after we submit the prior art and decision from the European Office in an Information Disclosure Statement. There is also the possibility that even claim 20 (the count) may be rejected over the new prior art. It is still unclear how these prior art issues will be resolved after the case returns to ex parte prosecution.

Mr. Kenji Itami
Itami Patent Office
June 15, 2004
Page 3

We also refer to our earlier request in our letter of May 27, 2004 for details regarding the sales you mentioned in your letter of May 24, 2004. In particular, to constitute "prior art" against Stevens, there must be a sale or offer to sell *in the United States* of the claimed invention more than one year before the U.S. filing date of Stevens' patent. What exactly was sold? Does it look exactly like Fig. 1 of Tamai's application? When did the sale or offer to sell in the U.S. occur?

We look forward to your clarification regarding the "prior art" sales. Please let us know if you have any further questions in this matter. Thank you for your patience and continued understanding.

Very truly yours,

WESTERMAN, HATTORI, DANIELS & ADRIAN, LLP

John P. Kong

JPK/EFK

# Exhibit 24

07/08/2004 15:22 FAX 202 775 9242    WESTERMAN, HATTORI    @002/037



**WESTERMAN HATTORI DANIELS & ADRIAN, LLP**

WILLIAM F. WESTERMAN
KEN HATTORI
SCOTT M. DANIELS
STEPHEN G. ADRIAN
JOHN P. KONG
SADAO KINASHI
THOMAS J. MACPEAK
EDWARD F. KENEHAN, JR.
NICOLAS E. SECKEL*

THOMAS E. BROWN*
MICHAEL N. LAU
MICHAEL J. CARIDI
M. SCOTT ALPRIN
JOSEPH L. FELBER
KENNETH H. SALEN*

*Practice limited to employee and proceedings before federal courts and agencies

PATENT AGENT
SHUJI YOSHIZAKI

JAPANESE BENRISHI
TOMOKO NAKAJIMA
YASUHISA KUROSE

July 8, 2004

<u>Via Facsimile</u>

Mr. Kenji Itami
Itami Patent Office
Daisan Building
2-4, 3-chome, Nishitenma
Kita-ku, Osaka 530, Japan

RE:    Interference No. 103,662
U.S. Patent Appln. S.N. 08/196,839
By: Shigeru TAMAI
Your Ref: P123/SE.90
<u>Our Ref: 9400941</u>

Dear Mr. Itami:

Enclosed please find "Senior Party Tamai Petition in Interference to the Commissioner under 37 CFR 1.644(a)(2), 37 CFR 1.644(a)(3) and 37 CFR 1.182," filed on July 8, 2004.

A copy of this Petition was also directed to Charles A. Pearson, the Director of the Office of PCT Legal Administration who specializes in legal issues related to PCT applications. As you will notice, the second signature on this Petition is Richard Lazarus. Mr. Lazarus was the previous Director of the Office of PCT Legal Administration and had worked closely with the current Director, Mr. Pearson. Mr. Lazarus was also quite shocked at the Federal Circuit decision and had agreed to add his name to our Petition in the hopes that special attention at the USPTO will be given to our Petition.

A copy of our Petition was also directed to Fred E. McKelvey, senior Administrative Patent Judge. As mentioned before, we hired Michael Sofocleous to assist in this matter. Mr. Sofocleous had also been a senior Administrative Patent Judge at the Board of Patent Appeals and Interferences with over 20 years of experience, and is familiar with Mr. McKelvey.

Please feel free to contact us if you have any questions. Thank you for your patience and continued understanding.

Very truly yours,

WESTERMAN, HATTORI, DANIELS & ADRIAN, LLP

John P. Kong

JPK/kal
Enclosure: Senior Party Tamai Petition in Interference to Commissioner

WASHINGTON OFFICE:  1250 CONNECTICUT AVE., N.W., SUITE 700, WASHINGTON, D.C. 20036   |   TEL. 202.822.1100   |   FAX. 202.822.1111   |   www.WHDApatentlaw.com
TOKYO OFFICE:  COSMO SHINJUKU GYOEN BLDG. 8F, 1-1-7 SHINJUKU, SHINJUKU-KU, TOKYO, 160-0022, JAPAN   |   TEL. 03.3356.1527   |   FAX. 03.3356.1529

# Exhibit 25



**WESTERMAN HATTORI DANIELS & ADRIAN, LLP**

WILLIAM F. WESTERMAN
KEN HATTORI
SCOTT M. DANIELS
STEPHEN A. ADRIAN
JOHN P. KONG
SADAO KINASHI*
THOMAS J. MACPEAK
EDWARD F. KENEHAN, JR.
NICOLAS E. SECKEL*

THOMAS E. BROWN*
MICHAEL J. CARDI
M. SCOTT ALPRIN
JOSEPH L. FELBER
KENNETH H. SALEN*
WILLIAM M. SCHERTLER

*Practice limited to matters and
proceedings before federal
courts and agencies

PATENT AGENT
SHUJI YOSHIZAKI

JAPANESE BENRISHI
TOMOKO NAKAJIMA
YASUHISA KUROSE

July 27, 2004

Mr. Kenji Itami
Itami Patent Office
Daisan Building
2-4, 3-chome, Nishitenma
Kita-ku, Osaka 530, Japan

<u>Via Facsimile</u>



RE:    Interference No. 103,662
       U.S. Patent Appln. S.N. 08/196,839
       By: Shigeru TAMAI
       Your Ref: P123/SE.90
       <u>Our Ref: 940094I</u>

Dear Mr. Itami:

Thank you for your letter of July 23, 2004. We provide our comments as follows.

1.    <u>The Proposed Settlement</u>

If Mr. Graff's proposal is accepted, the interference would end in favor of Stevens. Such a settlement would likely require Tamai withdrawing the petition and dropping out of the interference. Our Petitions and efforts to reverse the Federal Circuit's decision are ways we hope to change the result of the interference to be in favor of Tamai, and this is a very difficult and unusual process. Further, the prior art discussed below could also change the negotiations.

The Petition emphasized how the Federal Circuit's decision was contrary to applicable U.S. statutes, the Paris Convention Treaty, and U.S. PTO rules. To remedy the situation, the Petition requested the Board to revise its earlier decision and request the Federal Circuit to modify or vacate its decision. A Second Petition filed July 23, 2004 further requested the Commissioner to become a party to the interference and request the Federal Circuit to recall its mandate. Therefore, even if we request withdrawal of the petition, it is possible, although uncertain, that the Commissioner of the U.S. Patent and Trademark Office may refuse to accept the request and act against the Stevens patent on his own.

Moreover, even if both parties agreed to settle in favor of Stevens, and Tamai drops out of the interference, it is still possible for the Commissioner to issue a decision in the Petition that asks the Federal Circuit to modify or vacate the <u>Stevens v. Tamai</u> decision, or to become a party in the interference to ask the Federal Circuit to recall its mandate. Such action may result in a decision against Stevens, despite any settlement agreement among the parties in favor of Stevens. In such a situation, both parties lose.

WASHINGTON OFFICE: 1250 CONNECTICUT AVE., N.W., SUITE 700, WASHINGTON, D.C. 20036  |  TEL. 202.822.1100  |  FAX. 202.822.1111  |  www.WHDApatentlaw.com
TOKYO OFFICE: COSMO SHINJUKU GYOEN BLDG. 6F, 1-1-7 SHINJUKU, SHINJUKU-KU, TOKYO, 160-0022, JAPAN  |  TEL. 03.3356.1527  |  FAX. 03.3356.1529

07/27/2004 16:58 FAX  202 775 9241          WESTERMAN HATTORI                    ☒003/010

Mr. Kenji Itami
Itami Patent Office
July 27, 2004
Page 2

To help persuade Stevens to settle in favor of Tamai, it may be useful to identify any prior sales or offers to sell the preferred embodiment of Tamai's application in the U.S. that occurred before February 7, 1993 (more than one year before Stevens' earliest U.S. filing date of February 7, 1994). Any such prior art, if sufficient, would be a statutory bar against Stevens, thus rendering Stevens' patent invalid. Instead, Seed could offer to license to Sanford any U.S. patent that issues from Tamai's pending application. To settle in favor of Tamai, Mr. Graff must also agree that Tamai is entitled to priority and that Tamai's position is not frivolous. However, we do not believe that Mr. Graff will easily agree to a settlement in which Tamai has priority.

It seems to us that the parties are quite far apart regarding settlement. As mentioned before, we question the value of Stevens'. patent, especially whether it is worth a license to Sanford for Seed's corresponding worldwide rights, including Japan.

We recognize that Seed's current position is difficult. The actions of the U.S. PTO have proven to be difficult to predict. Both the U.S. PTO and the Federal Circuit misunderstood and misapplied U.S. statutes and rules regarding our PCT application. As it currently stands, the Federal Circuit's mandate is for the interference to be remanded to the Board for entry of judgment against Tamai. Even this mandate is strange because the Federal Circuit itself could have entered judgment against Tamai, but did not do so. We simply cannot predict what the U.S. PTO will do next. We recommend at least waiting for a decision on the Petition.

Even if the Petition is denied for whatever reason, and judgment is finally entered against Tamai, there are still other options for appeal, such as to the District Court under 35 USC §146. Such District Court actions may take several more years to complete.

## 2.    Licensee's Products in the U.S.

Normally, a count of an interference should cover the preferred embodiment of an involved patent application, just as a main claim of a patent is expected to cover such a preferred embodiment. As you may recall from the beginning of this interference, we have pointed out that the count (Stevens' patent claim 1) could be interpreted in a way that would be supported by Tamai's application. Therefore, we have taken certain positions regarding claim interpretation and support in Tamai's application for the count, relying on the preferred embodiment, to satisfy §112, first paragraph. We won on the merits before the Board because of such positions. We must be consistent with such positions.

However, the prior art might change everything. First, any prior art sales or offers to sell in the U.S. before February 7, 1993 that would be sufficient statutory prior art against the Stevens patent may invalidate some of the claims of the Stevens patent. Second, the prior art from the EP decision may also invalidate some claims of the Stevens patent. Invalid claims cannot be infringed.

Mr. Kenji Itami
Itami Patent Office
July 27, 2004
Page 3

### 3.    Prior Art

The Applicant has a duty of candor and a duty of disclosure. There is no question that such prior art must be disclosed to the U.S. PTO during *ex parte* prosecution for Tamai's pending application. As to the timing of such disclosure, we are not currently aware of specific interference rules requiring the submission of prior art within certain time periods during an interference. However, an Administrative Patent Judge had previously written an article about ethics considerations before the BPAI, stating that Board proceedings are considered to be *ex parte* proceedings. This *ex parte* nature of Board proceedings is reflected in the Board's authority to enter new grounds for rejection of pending claims *sua sponte* (37 CFR §§1.641(a) and 1.977(b)), as well as the Board's authority to direct further actions after the Board's proceedings (by "recommendations" under 37 CFR §1.659 and by "remands" under § 1.977(a)). Furthermore, according to the American Bar Association Model Rules of Professional Conduct (applicable to attorneys), "in an *ex parte* proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse."

As we had mentioned before, the prior art references from your letter of September 18, 2003 were not submitted to the U.S. PTO because this case was pending at the Federal Circuit. Now that the parties are back in *ex parte* proceedings before the Board, the time is ripe to submit the references to the U.S. PTO. The prior art should be filed and made of record in the interference as soon as possible regardless of whether the parties reach a settlement agreement. Please confirm. We will handle matters related to the prior art at our normal costs.

As for disclosing the information to Stevens, it could be done very simply by pointing out that Seed's EP patent (currently listed in Graff's proposal) had been revoked. Seed could include copies of the appellate Decision revoking the EP patent, as well as the prior art cited therein. Of course, Stevens will also receive a copy of the prior art when we file these in an Information Disclosure Statement and provide a copy to the Board.

### 4.    Petitions

We are continuing to take action. As mentioned above, a Second Petition was filed on July 23, 2004 (copy attached).

Very truly yours,

WESTERMAN, HATTORI, DANIELS & ADRIAN, LLP

John P. Kong

WFW/SMD/EFK/JPK
Enclosure:  Second Senior Party Tamai Petition in Interference to Commissioner

# UNITED STATES PATENT AND TRADEMARK OFFICE

## BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

CHISTOPHER J. STEVENS
Junior Party
(P.N. 5,393,368)

v.

SHIGERU TAMAI
Senior Party
(S.N. 08/186,368)

Patent Interference No. 103,662

### SECOND SENIOR PARTY TAMAI
### PETITION IN INTERFERENCE TO COMMISSIONER
### UNDER 37 CFR 1.644(a)(2), 37 CFR 1.644(a)(3) AND 37 CFR 1.182

Date: July 23, 2004

Administrative Patent Judge

Murriel E. Crawford

of invention and its refusal to resolve the interference, the Commissioner filed a brief *amicus curiae* in which he asserted that the Board had no jurisdiction to dissolve an interference and urged that our reversal of that refusal was improper. We agreed with the Commissioner and amended our decision to eliminate the reversal of the Board's refusal to dissolve the interference and limit the decision to the reversal of the award of priority.

Wella, 858 F.2d at 729.

The Commissioner is respectfully requested to now become a party to the Federal Circuit appeal for reasons given in Tamai's first petition. The Federal Circuit has authority to recall its mandates and reinstate appeals. On July 12, 2004, the Federal Circuit recalled mandates and reinstated appeals in the following:

04-3240  Julie Wilson-Al-Mowallad v. Department of Veterans Affairs;

04-3258  Gary N. Johnson v. Department of the Air Force; and

04-3277  Gary N. Johnson v. Department of the Air Force.

Respectfully submitted,

Westerman, Hattori, Daniels & Adrian, LLP

Edward F. Renehan, Jr.
Reg. No. 28,962

1250 Connecticut Avenue, N.W. Suite 700
Washington, D.C. 20036
202-822-1100 (t)
202-822-1111 (f)

2

07/27/2004 16:59 FAX  202 775 9241          WESTERMAN HATTORI                        ☒008/010

# UNITED STATES PATENT AND TRADEMARK OFFICE

---

## BEFORE THE BOARD OF PATENT APPEALS
## AND INTERFERENCES

---

### CHISTOPHER J. STEVENS
Junior Party
(P.N. 5,393,368)

v.

### SHIGERU TAMAI
Senior Party
(S.N. 08/186,368)

---

Patent Interference No. 103,662

---

### SENIOR PARTY TAMAI
### PAYMENT OF SECOND PETITION FEE UNDER 35 CFR 1.17(b)

Date:  July 23, 2004

---

Administrative Patent Judge

Murriel E. Crawford

**Certificate of Service**

A copy of the foregoing Second Petition to the Commissioner and Payment of Second Petition Fee were served via Federal Express on July 23, 2004 on the following:

Michael Weiner
Marshall, Gerstein & Borun
6300 Sears Tower
233 South Wacker Driver
Chicago, IL 60606-6357
Fed Ex No. 8455 5020 5713

John M. Whelan
U.S. Patent and Trademark Office
2121 Crystal Drive, Suite 714
Arlington, Virginia 22202
Fed Ex. No. 8455 5020 5735

Charles Boukus, Jr.
2001 Jefferson Davis Hwy
Suite 202
Arlington, VA 22202
Fed Ex No. 8455 5020 5757

Fred E. McKelvey
Sr. Admin. Patent Judge
Board of Patent Appeals and Interferences
Crystal Gateway 2
1225 Jefferson Davis Hwy, Suite 1000
Arlington, Virginia 22202
Fed Ex No. 8455 5020 5724

Charles A .Pearson, Director
Office of PCT Legal Administration
U.S. Patent and Trademark Office
Crystal Plaza 2, 8th Floor
220 20th Street S
Arlington, Virginia 22202
Fed Ex No. 8455 5020 5746

A copy of this Second Petition to the Commissioner was also served via facsimile on Michael Weiner on July 23, 2004.

Edward Kenehan, Jr.

# Exhibit 26

WESTERMAN
HATTORI
DANIELS &
ADRIAN, LLP

WILLIAM F. WESTERMAN
XON HATTORI
SCOTT M. DANIELS
STEPHEN G. ADRIAN
JOHN P. KONG
SADAO KINASHI
THOMAS J. MACPEAK
EDWARD F. KENEHAN, JR
NICOLAS E. SECKEL*

THOMAS E. BROWN*
MICHAEL J. CARDI
M. SCOTT ALPRIN
JOSEPH L. FELBER
KENNETH H. SALEN*
WILLIAM M. SCHERTLER

*Practiced limited to matters now
proceeding before federal
courts and agencies

PATENT AGENT
SHUJI YOSHIZAKI

JAPANESE BENRISHI
TOMOKO NAKAJIMA
YASUHISA KUROSE

September 7, 2004

**VIA FACSIMILE**

Mr. Toru Matsumoto
Aqua Yadoyabashi Law Offices
Matsuzaki Bldg. 2nd Floor
3-1-21 Kitahama Chuo-ku
Osaka 541-0041, JAPAN

Re:    Interference No. 103,662 Stevens and Tamai

Dear Mr. Matsumoto,

In order to take advantage of every possible opportunity we have to reverse the adverse decision received, we will be filing an appeal (Petition for a Writ of Certiorari) from the decision of the Court of Appeals for the Federal Circuit (CAFC). This Petition will be filed in the United States Supreme Court tomorrow. We will file this Petition at no charge to you. We are enclosing a copy of our Petition.

In addition to the Petition that is pending at the Patent Office, we believe that it is important to file this Petition (an appeal) to the U.S. Supreme Court, the court of last resort in the United States. Although we are using our best efforts to clearly state our position, which we continue to believe is correct, we must note that, because of the large number of Petitions to the Supreme Court, very few are successful.

Furthermore, we believe it is now time to send a letter to Stevens' attorneys, disclosing the references cited in the European Opposition, in preparation of disclosing the references to the Patent Office. In the next day or two, we will forward a copy to you of our draft letter to Stevens' attorneys.

Very truly yours,

WESTERMAN, HATTORI, DANIELS & ADRIAN, LLP

William F. Westerman

Encl.
WFW/ya

WASHINGTON OFFICE:   1250 CONNECTICUT AVE, N.W., SUITE 700, WASHINGTON, D.C. 20036   |   TEL. 202.822.1100   |   FAX. 202.822.1111   |   www.WHDApatentlaw.com
TOKYO OFFICE:   COSMO SHINJUKU GYOEN BLDG. 6F, 1-1-7 SHINJUKU, SHINJUKU-KU, TOKYO, 160-0022, JAPAN   |   TEL. 03.3356.1527   |   FAX. 03.3356.1529

# Exhibit 27



WESTERMAN
HATTORI
DANIELS &
ADRIAN, LLP

WILLIAM F. WESTERMAN        THOMAS E. BROWN*        PATENT AGENT
KEN HATTORI                 MICHAEL J. CARON        SHUJI YOSHIZAWA
SCOTT M. DANIELS            M. SCOTT ALPRIN
STEPHEN B. ADRIAN           JOSEPH L. FELBER        JAPANESE BENRISHI
JOHN P. KONG                KENNETH H. SALEN*       TOMOKO MAKIJIMA
SADAO KHASHI                WILLIAM M. SCHERRER      YASUHISA KUROSE
THOMAS J. MACPEAK
EDWARD F. KENIHAN, JR.      * Practice limited to matters and
NICOLAS E. SECKEL*          proceedings before federal
                            courts and agencies.

October 12, 2004

<u>VIA FACSIMILE</u>

Mr. Toru Matsumoto
Aqua Yodoyabashi Law Office
Matsuzaki Bldg., 2nd Floor
3-1-21 Kitahama, Chuo-ku,
Osaka 541-0041 JAPAN

Re: Interference No. 103,662 Stevens and Tamai

Dear Mr. Matsumoto

Thank you for your letter facsimile letters of October 8, 2004 and of today. We apologize for our delay in getting back to you, our offices were closed yesterday for a National Holiday.

First, we have received a decision from the Patent Office on our Petitions for Reconsideration. The Patent Office has denied the Petitions. We are enclosing a copy of the "Decision on Petitions." The first Petition, which was to modify the panel's opinion, shift the burden of proof to Tamai and re-declare the interference, was denied. The second Petition, which asked to have the Patent Office to file a request with the Federal Circuit to recall its mandate (order) so that the Patent Office could become a party to the appeal, was also denied.

We believe that now is the proper time to file an IDS in the Patent Application for Tamai. Since these Petitions have been denied, the case is now back with the Examiner for consideration. The Decision also rescinded the order prohibiting the filing of further papers. Accordingly, it is now the appropriate time to file the references in question in an IDS. We will do so immediately, upon your approval. In other words, in view of the Decision by the Patent Office, we believe that the IDS in our case should be filed right away, before notifying Stevens of the references.

Regarding the question of the references and Stevens, we believe that we should notify Stevens about these references after our IDS is filed. Specifically in the context of continuing the negotiations with Stevens, we believe that we should indicate that the

WASHINGTON OFFICE:  1250 CONNECTICUT AVE., N.W., SUITE 700, WASHINGTON, D.C. 20036   |   TEL. 202.822.1100   |   FAX. 202.822.1111   |   www.WHDApatentlaw.com
TOKYO OFFICE:   COSMO SHINJUKU GYOEN BLDG. 6F, 1-1-7 SHINJUKU, SHINJUKU-KU, TOKYO, 160-0022, JAPAN   |   TEL. 03.3356.1527   |   FAX. 03.3356.1529

Mr. Toru Matsumoto
Aqua Yodoyabashi Law Office
October 12, 2004
Page 2

European patent will not be a part of the negotiations, because it has been cancelled by a
European Opposition, based upon the cited references.

We believe we must tell Stevens about the references in order to strengthen our
position in the negotiations. This is so that Stevens will recognize that, on the basis of
these references, Stevens' patent is weaker than they believed. Furthermore, in order to
avoid any appearance of impropriety, we do need to disclose these references to Stevens,
rather than to keep them secret. It could be considered to be inappropriate if we
conducted a negotiation regarding their patent without telling them about the references
which might adversely affect their patent.

Once Stevens has a copy of these references, they would be obliged to file them in
their reissue case. Attached is a draft of a letter to Stevens. Please let us know if you
have any questions.

Additionally, we note that there has not yet been a decision as to whether or not
the Supreme Court will accept our appeal (Writ of Certiorari).

With best regards,

Very truly yours,

WESTERMAN, HATTORI, DANIELS & ADRIAN, LLP

William F. Westerman

WFW/meu

Q:\Attorney Files\Litigation\Tamai\Ltr to T. Matsumoto.doc

受信時刻 10月13日  8時17分

# Exhibit 28

FAX  202 775 9242    WESTERMAN, HATTORI    ☎002/004



## WESTERMAN HATTORI DANIELS & ADRIAN, LLP

| | | |
|---|---|---|
| WILLIAM F. WESTERMAN | THOMAS E. BROWN | PATENT AGENT |
| KEN HATTORI | MICHAEL N. LAU | SHUJI YOSHIZAKI |
| SCOTT M. DANIELS | | |
| STEPHEN G. ADRIAN | MICHAEL J. CAREY | JAPANESE BENRISHI |
| JOSEPH R. KONG | M. SCOTT ALPRIN | TOMOKO KAKAJIMA |
| SADAO KINASHI | JOSEPH L. FELBER | YASUMASA KUROSE |
| THOMAS A. MACPEAK | KENNETH M. SALDA* | |
| EDWARD E. KENSHAW, JR. | | |
| NICOLAS E. SECKEL* | | |

October 26, 2004

### VIA FACSIMILE

Mr. Toru Matsumoto
Aqua Yodoyabashi Law Office
Matsuzaki Bldg., 2nd Floor
3-1-21 Kitahama, Chuo-ku,
Osaka 541-0041 JAPAN

Re: Interference No. 103,662 Stevens and Tamai

Dear Mr. Matsumoto:

We are enclosing a notification that the Supreme Court has refused to hear our appeal (Petition for Writ of Certiorari). Thus, there are no further appeals possible. As we noted earlier, there is such a great demand for appeals to the Supreme Court, there is only a small chance for any such appeals to succeed.

We are also enclosing our draft letter to Mr. Graff. Please let us know if it is acceptable.

We believe that our efforts should now be focused on following through with the prosecution, and obtaining the best results possible in the negotiation.

Please let us know if you have any questions.

With best regards,

Very truly yours,

WESTERMAN, HATTORI, DANIELS & ADRIAN, LLP

William F. Westerman

WFW/meu
Encl.

Q:\Attorney Files\Litigation\Tamai\Ltr to T. Matsumoto #4.doc

WASHINGTON OFFICE: 1250 CONNECTICUT AVE., N.W., SUITE 700, WASHINGTON, D.C. 20036  |  TEL. 202.822.1100  |  FAX. 202.822.1111  |  www.WHDApatentlaw.com
TOKYO OFFICE: BLDG. 6F, 1-1-7 SHINJUKU, SHINJUKU-KU, TOKYO, 160-0022, JAPAN  |  TEL. 03.3356.1527  |  FAX. 03.3356.1529

*As Kent*
*W. West*
*& kan*
*In [?] 10/25*

# Supreme Court of the United States
## Office of the Clerk
### Washington, DC 20543-0001

William K. Suter
Clerk of the Court
(202) 479-3011

October 18, 2004

Mr. Thomas J. Macpeak
1250 Connecticut Avenue NW
Suite 700
Washington, DC 20036

Re:  Shigeru Tamai
 v. Christopher J. Stevens
 No. 04-321

Dear Mr. Macpeak:

The Court today entered the following order in the above-entitled case:

The petition for a writ of certiorari is denied.

Sincerely,

*William K Suter*

**William K. Suter, Clerk**

# Exhibit 29

Jan-14-04 · 12:08pm · From-Newell Legal Department          815-381-8180 ·       T-754  P.001/003  F-768

Julie G. Kavanaugh
Sr. Executive Assistant
Newell Rubbermaid Legal Services
6833 Stalter Drive
Rockford, Illinois 61108
(815) 381-8159
fax (815) 381-8160
email julie.kavanaugh@newellco.com

**Newell Rubbermaid**

**URGENT**

**Privileged & Confidential**

| To: | Mr. Yashuhiro Nishioka | From: | Julie Kavanaugh for Stuart Graff |
|---|---|---|---|
| Fax: | 011-81-6-6954-7851 | Pages: | 3 |
| Phone: | | Date: | 1/14/2004 |
| Re: | Stevens v. Tamai | CC: | |

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

● **Comments:**

Mr. Nishioka:

Please find attached the letter from Stuart Graff regarding the Stevens v. Tamai matter.

Regards,

Julie Kavanaugh

Stuart I. Graff
Senior Counsel
Director of Intellectual Property Law
(815) 381-8117
fax (815) 381-8160
email stuart.graff@newellco.com

# ewell Rubbermaid

January 14, 2004

<u>VIA FACSIMILE to 011-81-6-6954-7851</u>

Mr. Yasuhiro Nishioka
SEED CO., LTD.
3-5-25, Uchindai-cho
Miyakojima, Osaka-shi
Osaka 534-0013
JAPAN

Re:   U.S. Patent Interference No. 103,662
      <u>Stevens v. Tamai</u>

Dear Mr. Nishioka:

I am writing on behalf of our Sanford business unit, which, as you may know, is the successor to the stationary products group of Gillette. I have been given your name by your U.S. attorneys as the contact with whom I may conduct settlement negotiations in relation to the interference referenced above. It is with regret that I am writing in a date and so close to the oral hearing in this matter; we have requested for several months the name of a contact at Seed with whom we could speak regarding settlement, but your attorneys have not provided us with your name until last week.

It is our understanding at this stage that seed has secured several patents and countries outside the United States for transverse (sideways) action tape dispensers. At this stage, Sanford is the owner of a patent relating to such a tape dispenser in the United States. Given the relative sizes of the markets affected by such patents, and the interest and ability of both parties to compete in the tape dispenser category with or without the use of this patent, we suggest to settle this case on the following terms:

- Sanford will grant to Seed a royalty-free, perpetual, non-exclusive license under Sanford's U.S. patent relating to the transverse action tape dispenser.

- Seed will grant to Sanford a royalty-free, perpetual, non-exclusive license under Seed's patents outside the U.S. relating to the transverse action tape dispenser.

Mr. Yashuhiro Nishioka
January 14, 2004
Page 2

- Pursuant to such licenses, each party will permit the other two sublicense the manufacture, sale, and distribution of products made pursuant to the licensed patents.

Please let me know if Seed is interested pursuing such a cross-license agreement to settle this dispute.

Sincerely,

Stuart I. Graff

Stuart L Graff

cc:   Jim Zeller (via fax)
      Edward F. Kenchan, Jr. (via fax to 202-822-1111)

# Exhibit 30



# WESTERMAN HATTORI DANIELS & ADRIAN, LLP

www.WHDApatentlaw.com

WILLIAM E WESTERMAN
KEN HATTORI
SCOTT M DANIELS
STEPHEN G. ADRIAN
JOHN P KONG
SADAO KINASHI
THOMAS E BROWN·
LEE C. WRIGHT
MICHAEL J. CARIDI

OF COUNSEL
NICOLAS F. SECKEL

KENNETH H. SALEN·
WILLIAM M SCHERTLI FR·
DARRIN A. AUITO·
DANIA MICHELE SOBO
IVAN B. CHERNOMAS·
ANDREW G. MELICK·

JAPANESE BENRISHI
SHUJI YOSHIZAKI·
YASUHISA KUROSE
ISUYOSHI NAKAMURA

PATENT AGENT
DENNIS M. HUBBS

December 4, 2006

**VIA FACSIMILE**

Mr. Kenji Itami
ITAMI PATENT OFFICE
Aite Building Doshomachi
1-2-11, Doshomachi, Chuo-ku
Osaka 541-0045 Japan

Re:    Application Status
       U.S. Patent Application No. 08/196,839
       By: TAMAI et al.
       Your Reference: P123/SE.90
       Our Reference: 940094

Dear Mr. Itami:

Further to our letter of June 16, 2006, we have not received any response from the PTO to our Request for Status.

We believed that the PTO would review the CAFC decision and then finally dispose of the case. Accordingly, we were waiting for that disposition. After filing our Request for Status a while ago, we have found out that it was the USPTO's practice after the end of an interference, if any claims remain unrejected or any other issues outstanding, the PTO will reopen the prosecution case. Unfortunately, in the final Mandate from the CAFC, dated September 14, 2004, no claims remained unrejected, nor did any other issues remain outstanding. Thus, we believe the prosecution was closed by the PTO as of the date of the final CAFC Mandate.

Accordingly, since the prosecution case became closed when the Federal Circuit rejected all the claims in the application, we were mistaken in thinking that the prosecution would reopen (without claims 1-21). On the other hand, realistically speaking, without the subject matter of claims 1-21 we do not see anything significant left to be patented in the case.

Mr. Hattori will be in Japan for one week beginning December 4th. If you would like to discuss this matter with him directly you may contact him through our Tokyo office or through his cell phone, 090-8016-1754.

WASHINGTON OFFICE: 1250 CONNECTICUT AVE., N.W., SUITE 700, WASHINGTON, D.C. 20036    |    TEL. 202.822.1100    |    FAX. 202.822.1111    |    mail@WHDApatentlaw.com

TOKYO OFFICE: COSMO SHINJUKU BLDG DG 6F, 1-1-7 SHINJUKU, SHINJUKU-KU, TOKYO, 160-0022, JAPAN    |    TEL. 03.3358.1527    |    FAX. 03.3356.1529

2/04/2006 17:29 FAX  202 822 1111      WESTERMAN HATTORI                    ☑003/003

Mr. Kenji Itami
ITAMI PATENT OFFICE
December 4, 2006
Page 2

    Please let us know if there is anything further we can do with regard to this matter.

    With best regards,

                    Very truly yours,
    WESTERMAN, HATTORI, DANIELS & ADRIAN, LLP

                  William F. Westerman

WFW/dlt

# Exhibit 31

## TOLLING AGREEMENT

This Tolling Agreement (hereinafter "the Agreement") is made between Seed Company, Ltd., its successors and predecessors and Party Tamai (collectively, the "Seed Parties"), on the one hand, and William F. Westerman("Westerman") and Westerman, Hattori, Daniels & Adrian, LLP ("the Firm"), on the other hand. Westerman and the Firm shall be collectively referred to as "the Westerman Parties." The effective date of the Agreement is May, 3, 2007.

### Recitals

1.      Whereas the Seed Parties contend that they have meritorious claims for a legal malpractice action against the Westerman Parties arising out the representation of the Seed Parties by the Westerman Parties in connection with Patent Interference No. 103,662. The Westerman Parties each deny that the Seed Parties' claims have any merit and assert that they each have valid defenses to all such claims. The Agreement neither creates nor waives rights or remedies for or against any party to the Agreement other than those specified in the Agreement.

2.      The parties are entering into this Agreement for the purposes of preserving the status quo as of the effective date, with respect to any applicable statutes of limitations and other time-related defenses relating to the legal representation of the Seed Parties by the Westerman Parties. The Seed Parties have requested this tolling agreement to allow it to delay the formal filing of a complaint against the Westerman Parties, while the Seed Parties and the Westerman Parties negotiate a potential settlement for legal malpractice claims the Seed Parties may assert against the Westerman Parties.

### Terms

NOW, THEREFORE, in consideration of the mutual covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereto agree as follows:

1.      The parties agree that effective as of the date of this Agreement the running of any statutes of limitations, whose period for filing a complaint has not already expired, with respect to any and all possible causes of action and claims that the Seed Parties may have against the Westerman Parties are tolled until this Agreement is terminated as set forth by one of the two methods described in paragraph 5. By entering into this Agreement, the Westerman Parties agree that the running of the applicable statutes of limitations and all other periods relating to the commencement of litigation (including but not limited to laches) are tolled and suspended and the Westerman Parties hereby expressly waive the pleading or assertion of any statutes of limitations or other time-related defense that is based, in whole or in part, on the time that has run while this Agreement is in effect, except that the Westerman Parties reserve the right to rely on any statute of limitations defense for which the period for filing a complaint has expired as of this date.

2.      In consideration for such tolling and waiver by the Westerman Parties, the Seed Parties agree not to initiate any litigation, cause of action, complaint or other proceeding against the Westerman Parties until first engaging in settlement negotiations with the Westerman Parties.

3.     This Agreement does not constitute in any way an admission or agreement on the part of the Westerman Parties that it is liable to the Seed Parties or any other party with respect to any of the tolled claims.

4.     The parties reserve all claims, rights and defenses that they may have, except as set forth in this Agreement, to assert, contest or defend any claims or actions by the Seed Parties against the Westerman Parties with respect to any of the tolled claims

5.     This Agreement may be terminated in two different manners:

      a.     The Agreement may be terminated by either of the parties hereto providing written notice to the other party of an intention to terminate. Notice shall be effective if mailed to:

          <u>in the case of the Seed Parties:</u>

          Paul T. Meiklejohn
          Dorsey & Whitney LLP
          1420 Fifth Ave., Ste. 3400
          Seattle, WA  98101

          <u>in the case of the Westerman Parties:</u>

          William F. Westerman
          Westerman, Hattori, Daniels & Adrian, LLP
          1250 Connecticut Avenue, N.W.
          Suite 700
          Washington, D.C. 20036

      b.     The Agreement shall terminate automatically on December 31, 2007, provided, however; that the Agreement may be extended on or before the day it is to terminate by a writing signed by both parties to the Agreement which establishes a date certain to which the Agreement shall be extended.

6.     Upon termination of the Agreement, any lawsuit commenced by the Seed Parties against the Westerman Parties shall, as to all claims preserved by this agreement, be considered timely commenced if a Complaint is filed with sixty (60) days following termination of the Agreement (by either method).

7.     The Agreement shall be deemed to have been drafted by all parties, and shall not be construed against any party on the premise that a specific party drafted the Agreement.

8.     In any action to enforce the Agreement or for its breach, the prevailing party shall be entitled to recover reasonable attorney's fees and costs.

9.     The Agreement is confidential and shall not be disclosed to any person or entity by any party to the Agreement, or their counsel, except as necessary to establish whether a claim or defense falls within the Agreement.

2

10.    The Agreement may be signed in duplicate originals, each of which, when fully executed, shall constitute the Agreement.

11.    The Agreement is the entire agreement among the parties.  In executing the Agreement, neither party is relying on or acting on any promise, inducement, or agreement not expressed in the Agreement.

12.    The Agreement is controlled by the law of the District of Columbia.

14.    Any dispute arising out of or connected with interpreting or enforcing the terms of this Agreement shall be filed in Superior Court in the District of Columbia.

15.    The parties agree and stipulate that the venue for any legal malpractice claims that Seed may bring against the Westerman Parties shall be in Superior Court in the District of Columbia.

THE SEED PARTIES

DATED: May 4, 2007                     by Paul T. Meiklejohn

                                       its Attorney

                                       WILLIAM F. WESTERMAN

DATED: May 4, 2007                     by

                                       its

                                       WESTERMAN, HATTORI, DANIELS, & ADRIAN, LLP

DATED: May 4, 2007                     by

                                       its

3

# Exhibit 32

## TOLLING AGREEMENT

This Tolling Agreement (hereinafter "the Agreement") is made between Seed Company, Ltd., its successors and predecessors and Party Tamai (collectively, the "Seed Parties"), on the one hand, and Edward F. Kenehan, Jr. ("Kenehan") and John P. Kong ("Kong"), on the other hand. Kenehan and Kong shall be collectively referred to as "the Westerman Parties." The effective date of the Agreement is May 10, 2007.

### Recitals

1.  Whereas the Seed Parties contend that they have meritorious claims for a legal malpractice action against the Westerman Parties arising out the representation of the Seed Parties by the Westerman Parties in connection with Patent Interference No. 103,662. The Westerman Parties each deny that the Seed Parties' claims have any merit and assert that they each have valid defenses to all such claims. The Agreement neither creates nor waives rights or remedies for or against any party to the Agreement other than those specified in the Agreement.

2.  The parties are entering into this Agreement for the purposes of preserving the status quo as of the effective date, with respect to any applicable statutes of limitations and other time-related defenses relating to the legal representation of the Seed Parties by the Westerman Parties. The Seed Parties have requested this tolling agreement to allow it to delay the formal filing of a complaint against the Westerman Parties, while the Seed Parties and the Westerman Parties negotiate a potential settlement for legal malpractice claims the Seed Parties may assert against the Westerman Parties.

### Terms

NOW, THEREFORE, in consideration of the mutual covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereto agree as follows:

1.  The parties agree that effective as of the date of this Agreement the running of any statutes of limitations, whose period for filing a complaint has not already expired, with respect to any and all possible causes of action and claims that the Seed Parties may have against the Westerman Parties are tolled until this Agreement is terminated as set forth by one of the two methods described in paragraph 5. By entering into this Agreement, the Westerman Parties agree that the running of the applicable statutes of limitations and all other periods relating to the commencement of litigation (including but not limited to latches) are tolled and suspended and the Westerman Parties hereby expressly waive the pleading or assertion of any statutes of limitations or other time-related defense that is based, in whole or in part, on the time that has run while this Agreement is in effect, except that the Westerman Parties reserve the right to rely on any statute of limitations defense for which the period for filing a complaint has expired as of this date.

2.  In consideration for such tolling and waiver by the Westerman Parties, the Seed Parties agree not to initiate any litigation, cause of action, complaint or other proceeding against the Westerman Parties until first engaging in settlement negotiations with the Westerman Parties.

3. This Agreement does not constitute in any way an admission or agreement on the part of the Westerman Parties that it is liable to the Seed Parties or any other party with respect to any of the tolled claims.

4. The parties reserve all claims, rights and defenses that they may have, except as set forth in this Agreement, to assert, contest or defend any claims or actions by the Seed Parties against the Westerman Parties with respect to any of the tolled claims

5. This Agreement may be terminated in two different manners:

    a. The Agreement may be terminated by either of the parties hereto providing written notice to the other party of an intention to terminate. Notice shall be effective if mailed to

    <u>in the case of the Seed Parties</u>:

    Paul T. Meiklejohn
    Dorsey & Whitney LLP
    1420 Fifth Ave., Ste. 3400
    Seattle, WA 98101

    <u>in the case of the Westerman Parties</u>:

    Edward F. Kenehan, Jr. <u>and</u> John P. Kong
    Westerman, Hattori, Daniels & Adrian, LLP
    1250 Connecticut Avenue, N.W. Suite 700
    Washington, D.C. 20036

    b. The Agreement shall terminate automatically on December 31, 2007, provided, however; that the Agreement may be extended on or before the day it is to terminate by a writing signed by both parties to the Agreement which establishes a date certain to which the Agreement shall be extended.

6. Upon termination of the Agreement, any lawsuit commenced by the Seed Parties against the Westerman Parties shall, as to all claims preserved by this agreement, be considered timely commenced if a Complaint is filed with sixty (60) days following termination of the Agreement (by either method)

7. The Agreement shall be deemed to have been drafted by all parties, and shall not be construed against any party on the premise that a specific party drafted the Agreement.

8. In any action to enforce the Agreement or for its breach, the prevailing party shall be entitled to recover reasonable attorney's fees and costs.

9. The Agreement is confidential and shall not be disclosed to any person or entity by any party to the Agreement, or their counsel, except as necessary to establish whether a claim or defense falls within the Agreement.

2

10. The Agreement may be signed in duplicate originals, each of which, when fully executed, shall constitute the Agreement.

11. The Agreement is the entire agreement among the parties. In executing the Agreement, neither party is relying on or acting on any promise, inducement, or agreement not expressed in the Agreement.

12. The Agreement is controlled by the law of the District of Columbia.

13. Any dispute arising out of or connected with interpreting or enforcing the terms of this Agreement shall be filed in Superior Court in the District of Columbia.

14. The parties agree and stipulate that the venue for any legal malpractice claims that Seed may bring against the Westerman Parties shall be in Superior Court in the District of Columbia.

THE SEED PARTIES

DATED: May 10, 2007 _____      by Paul T. Meiklejohn _____

its Attorney _____


EDWARD F. KENEHAN, JR.

DATED: May 10, 2007 _____      by _____

its _____


JOHN P. KONG

DATED: May 10, 2007 _____      by _____

its _____

3

# Exhibit 33

## TOLLING AGREEMENT

This Tolling Agreement (hereinafter "the Agreement") is made between Seed Company, Ltd., its successors and predecessors and Party Tamai (collectively, the "Seed Parties"), on the one hand, and Edward F. Kenehan, Jr. ("Kenehan") and John P. Kong ("Kong"), on the other hand. Kenehan and Kong shall be collectively referred to as "the Westerman Parties." The effective date of the Agreement is May 10, 2007.

### Recitals

1.   Whereas the Seed Parties contend that they have meritorious claims for a legal malpractice action against the Westerman Parties arising out the representation of the Seed Parties by the Westerman Parties in connection with Patent Interference No. 103,662. The Westerman Parties each deny that the Seed Parties' claims have any merit and assert that they each have valid defenses to all such claims. The Agreement neither creates nor waives rights or remedies for or against any party to the Agreement other than those specified in the Agreement.

2.   The parties are entering into this Agreement for the purposes of preserving the status quo as of the effective date, with respect to any applicable statutes of limitations and other time-related defenses relating to the legal representation of the Seed Parties by the Westerman Parties. The Seed Parties have requested this tolling agreement to allow it to delay the formal filing of a complaint against the Westerman Parties, while the Seed Parties and the Westerman Parties negotiate a potential settlement for legal malpractice claims the Seed Parties may assert against the Westerman Parties.

### Terms

NOW, THEREFORE, in consideration of the mutual covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereto agree as follows:

1.   The parties agree that effective as of the date of this Agreement the running of any statutes of limitations, whose period for filing a complaint has not already expired, with respect to any and all possible causes of action and claims that the Seed Parties may have against the Westerman Parties are tolled until this Agreement is terminated as set forth by one of the two methods described in paragraph 5. By entering into this Agreement, the Westerman Parties agree that the running of the applicable statutes of limitations and all other periods relating to the commencement of litigation (including but not limited to latches) are tolled and suspended and the Westerman Parties hereby expressly waive the pleading or assertion of any statutes of limitations or other time-related defense that is based, in whole or in part, on the time that has run while this Agreement is in effect, except that the Westerman Parties reserve the right to rely on any statute of limitations defense for which the period for filing a complaint has expired as of this date.

2.   In consideration for such tolling and waiver by the Westerman Parties, the Seed Parties agree not to initiate any litigation, cause of action, complaint or other proceeding against the Westerman Parties until first engaging in settlement negotiations with the Westerman Parties.

3.  This Agreement does not constitute in any way an admission or agreement on the part of the Westerman Parties that it is liable to the Seed Parties or any other party with respect to any of the tolled claims.

4.  The parties reserve all claims, rights and defenses that they may have, except asset forth in this Agreement, to assert, contest or defend any claims or actions by the Seed Parties against the Westerman Parties with respect to any of the tolled claims

5.  This Agreement may be terminated in two different manners:

      a.    The Agreement may be terminated by either of the parties hereto providing written notice to the other party of an intention to terminate. Notice shall be effective if mailed to

          in the case of the Seed Parties:

          Paul T. Meiklejohn
          Dorsey & Whitney LLP
          1420 Fifth Ave., Ste. 3400
          Seattle, WA 98101

          in the case of the Westerman Parties:

          Edward F. Kenehan, Jr. and John P. Kong
          Westerman, Hattori, Daniels & Adrian, LLP
          1250 Connecticut Avenue, N.W. Suite 700
          Washington, D.C.  20036

      b.    The Agreement shall terminate automatically on December 31, 2007, provided, however; that the Agreement may be extended on or before the day it is to terminate by a writing signed by both parties to the Agreement which establishes a date certain to which the Agreement shall be extended.

6.  Upon termination of the Agreement, any lawsuit commenced by the Seed Parties against the Westerman Parties shall, as to all claims preserved by this agreement, be considered timely commenced if a Complaint is filed with sixty (60) days following termination of the Agreement (by either method)

7.  The Agreement shall be deemed to have been drafted by all parties, and shall not be construed against any party on the premise that a specific party drafted the Agreement.

8.  In any action to enforce the Agreement or for its breach, the prevailing party shall be entitled to recover reasonable attorney's fees and costs.

9.  The Agreement is confidential and shall not be disclosed to any person or entity by any party to the Agreement, or their counsel, except as necessary to establish whether a claim or defense falls within the Agreement.

2

10. The Agreement may be signed in duplicate originals, each of which, when fully executed, shall constitute the Agreement.

11. The Agreement is the entire agreement among the parties. In executing the Agreement, neither party is relying on or acting on any promise, inducement, or agreement not expressed in the Agreement.

12. The Agreement is controlled by the law of the District of Columbia.

13. Any dispute arising out of or connected with interpreting or enforcing the terms of this Agreement shall be filed in Superior Court in the District of Columbia.

14. The parties agree and stipulate that the venue for any legal malpractice claims that Seed may bring against the Westerman Parties shall be in Superior Court in the District of Columbia.

THE SEED PARTIES

DATED: May 10, 2007 _____        by Paul T. Meiklejohn _____

its Attorney _____

EDWARD F. KENEHAN, JR.

DATED: May 10, 2007 _____        by _____

its _____

JOHN P. KONG

DATED: May 10, 2007 _____        by _____

its _____

3