**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SEED COMPANY, LTD., et al, **Plaintiffs** v. WILLIAM F. WESTERMAN, et al. **Defendants.** | Civil No. 1:08-cv-00355 (RMU) |

**REPLY IN SUPPORT OF WESTERMAN DEFENDANTS'**
**MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY**
**JUDGMENT, ON STATUTE OF LIMITATIONS AND CAUSATION GROUNDS**

In a stunning failure either to research or acknowledge controlling precedent, Plaintiffs make three losing arguments in an attempt to escape the obvious statute of limitations bar to their claims based on Defendants' 1997 failure to file an English translation of Plaintiffs' Patent Cooperation Treaty ("PCT") Application. Plaintiffs have also failed to demonstrate that they can allege that Defendants' allegedly negligent advice proximately caused them to reject settlement offers.

**I.     PLAINTIFFS CANNOT DISPUTE THAT THEY WERE ON INQUIRY**
**NOTICE OF THE ALLEGED PROCEDURAL FAILURE TO FILE AN**
**ENGLISH TRANSLATION, AND D.C. LAW EXPLICITLY PROVIDES THAT**
**EVEN NOMINAL DAMAGES TRIGGER THE STATUTE OF LIMITATIONS.**

Plaintiffs argue that they did not "discover" that they were damaged by Defendants' alleged failure to file an English translation until the Federal Circuit denied their petition for rehearing on June 10, 2004.[1] Plaintiffs acknowledge that under the discovery rule, a claim

---

[1]Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment (hereafter "Opposition") at 24.

accrues when the plaintiff "knows, or in the exercise of reasonable diligence should know, of (1) an injury, (2) its cause, and (3) some evidence of wrongdoing. *Wagner v. Sellinger*, 847 A.2d 1151, 1154 (D.C. 2004)."[2]

Plaintiffs do not, and cannot, dispute that they were on notice that Defendants had failed to file an English translation of the PCT Application, and that Stevens, the opposing party in the patent interference, was arguing that this failure meant that Stevens' patent should receive priority. Indeed, in a letter faxed to Defendants in April, 2003, Plaintiffs' representative noted that the Board of Patent Appeals and Interferences had denied Seed's motion for reconsideration in a March 13, 2003 decision, and that the Board had ruled that Defendant attorneys failed to file a required English translation of the PCT Application:

> the problem was caused by the fact that though Tamai was required under CFR to file a translation of the PCT application along with the motion, Tamai did not do so. In other words, if only Tamai had filed said translation, the problem would not have happened.
>  In this sense, the client considers that the problem was caused by a procedural mistake.[3]

Plaintiffs cannot dispute that they were aware of Defendants' alleged wrongdoing (failing to file a translation) more than four years before the effective limitations date. However, Plaintiffs say that they were not aware that they were injured, because the thousands of dollars in attorneys' fees they paid addressing the issue were so "nominal" that they did not trigger the statute of limitations, and because the Board of Patent Appeals and Interferences ruled in their

---

[2]Opposition at 18.

[3]*See* Second Declaration of William F. Westerman at paragraphs 2, 3, and attachment G to that Declaration, attached hereto as Exhibit 1.

favor on priority.[4]

Plaintiffs' argument that "nominal damages" do not trigger the statute of limitations flies in the face of long-established precedent.  As the D.C. Circuit has repeatedly noted, "statutes of limitation begin running when the wrong has been committed, even if at the time 'no more than nominal damages may be proved, and no more recovered; but on the other hand, it is perfectly clear, that the proof of actual damage may extend to facts that occur and grow out of the injury, even up to the day of the verdict.'" *Norwest Bank Minnesota National Association v. FDIC*, 354 U.S. App. D.C. 78, 312 F.3d 447, 452 (D.C. Cir. 2002), *quoting Wilcox v. Plummer*, 29 U.S. (4 Pet.) 172, 182 (1830).  *See also, Harris v. FAA*, 359 U.S. App. D.C. 281, 353 F.3d 1006, 1012 (D.C. Cir. 2004).  This has long been the law in the District of Columbia.  "'Nominal damages at least can be recovered immediately upon the happening of the breach, and the Statute of Limitations then begins to run; its operation is not delayed until substantial or consequential damages accrue.'" *Reynolds Metals v. McCrea*, 99 A.2d 84, 85 (D.C. 1953), *quoting Livingston v. Sims*, 197 S.C. 458, 15 S.E.2d 770, 772 (S.C. 1941)(other citations omitted).

In any event, more than three years before the effective filing date, Seed paid a <u>minimum</u> of $4,000 in attorneys' fees to file a motion for reconsideration specifically addressing the failure to file an English translation of the PCT Application.  Nominal damages generally are entered in the amount of $1; $4,000 is not nominal.  In *Williams v. Mordofsky*, 284 U.S. App. D.C. 52, 901 F.2d 158  (D.C. Cir. 1990), the D.C. Circuit held that the payment of $7,235 in fees to deal with an attorney's alleged negligence triggered the statute of limitations.

Plaintiffs attempt to argue that the triggering date for the statute of limitations has a *de*

---

[4]Opposition at 19-28.

*minimis* exception, based on the percentage of total attorneys' fees paid, or the percentage of their total alleged damages.[5]  Tellingly, Plaintiffs cite no authority for this argument.[6]  The argument is absurd, and would fundamentally defeat the public policy of repose animating statutes of limitations.  If plaintiffs could argue that their causes of action did not accrue until they had suffered some undefined "substantial" percentage of their damages, they could frequently defeat motions to dismiss or for summary judgment by arguing that a question of fact existed as to whether the initial damages were a "*de minimis*" amount of their total damages.

In an oversimplification, Plaintiffs say that they <u>won</u> the interference proceeding before the Board of Patent Appeals and Interferences, and thus did not realize that they were damaged.  However, as the correspondence between the parties cited in Plaintiffs' Opposition reveals, Plaintiffs realized that the Board's ruling that an English translation was required was adverse to their interests, and created a potential issue on appeal to the Federal Circuit, and in any subsequent patent litigation.[7]

In any event, Plaintiffs do not contest the material fact that indisputably put them on notice of their claim and actual injury by October, 2002.  It is undisputed that Plaintiffs paid a

---

[5]Opposition at 26.

[6]Indeed, Plaintiffs construct their fanciful "nominal damages" argument from a stray phrase in a quote from a case from another jurisdiction in *Knight v. Furlow*, 553 A.2d 1232, 1235 (D.C. 1989).  The *Knight v. Furlow* opinion quoted a California case, *Budd v. Nixen*, 6 Cal. 3d 195, 491 P.2d 433, 436 (Cal. 1971): "The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm–not yet realized–does not suffice to create a cause of action for negligence."  That quotation hardly reflects a judgment by the D.C. Court of Appeals that incurring $4,000 in attorneys' fees dealing with an issue created by an attorneys' alleged negligence does not trigger the statute of limitations.  For the reasons stated below, the holding of *Knight v. Furlow* is directly to the contrary.

[7]*See* Second Declaration of William F. Westerman, paragraphs 2-5.

minimum of $4,000 in October, 2002, to file a motion for reconsideration for the sole purpose of addressing the failure to file an English translation of the PCT Application.  That undisputed fact establishes that Plaintiffs were on inquiry notice of the failure to file an English translation, and knew that they suffered actual damages (in the form of attorneys' fees paid to deal with the issue) as a result.  Under D.C. law, that is enough to trigger the statute of limitations:

> We conclude that attorney's fees and costs expended as a result of an attorney's alleged malpractice constitute legally cognizable damages for purposes of stating a claim for such malpractice.  *See Wettanen* [*v. Cowper*, 749 P.2d 362, 365 (Alaska 1988)](plaintiff-client was injured when he retained new counsel and paid costs of appealing trial court order because of attorney's alleged negligence); *Cantu* [*v. The St. Paul Companies*, 514 N.E.2d 666, 669 (Mass. 1987)](legal fees expended by plaintiff to ameliorate harm caused by alleged legal malpractice considered legal injury); *Budd* [*v. Nixon*, 6 Cal.3d 195, 491 P.2d 433, 437, 98 Cal. Rptr. 849 (Cal. 1971)](plaintiff-client compelled to "incur and pay attorney's fees and legal costs and expenditures" would sustain sufficient injury to run statute of limitations claim).  The fact that not all of a client's damages are finally ascertainable pending the outcome of an appeal may suggest in some circumstances that trial of the malpractice action should be stayed pending the appeal; it does not indicate that the client has not been injured earlier.

*Knight v. Furlow*, 553 A.2d 1232, 1235-36 (D.C. 1989).

The best illustration that Plaintiffs were on inquiry notice of the alleged wrongdoing and actual harm by October, 2002, is the following hypothetical:  Suppose the Board had granted the motion for reconsideration, and suppose that Seed had won any subsequent appeals to the Federal Circuit.  Now suppose that Plaintiffs sued to recover the attorneys' fees they paid to file the motion for reconsideration.  If the failure to file the English translation was negligence, Plaintiffs would have a viable claim.  The same statute of limitations analysis would apply, and it would be obvious that Plaintiffs could not assert that they did not realize they were injured until after the Federal Circuit ruled in their favor.

In the hypothetical, the attorneys' fees paid to file the motion for reconsideration would

be Plaintiffs' only damages; in this case, those fees are part of Plaintiffs' alleged damages.  The outcome before the Board and the Federal Circuit would be irrelevant in a suit to recover the attorneys' fees paid to file the motion for reconsideration; for the same reason, under *Knight v. Furlow,* they are irrelevant to the limitations analysis here.

Plaintiffs' attempts to distinguish controlling D.C. case law are unavailing.  *Knight v. Furlow* squarely held that incurring attorneys' fees to address an attorney's malpractice triggers the statute of limitations, regardless of the ultimate outcome of the case.  553 A.2d 1235-36. *Williams v. Mordofsky*, 284 U.S. App. D.C. 52, 901 F.2d 158 (D.C. Cir. 1990), held that spending $7,235 in fees to deal with an attorney's alleged negligence triggered the statute of limitations, six months before plaintiffs in that case first lost their FCC proceeding.  And, as Defendants pointed out in their initial memorandum, *Wagner v. Sellinger,* 847 A.2d 1151 (D.C. 2004), does not apply here.  In that case, defendant presented no evidence that plaintiff had incurred additional attorneys' fees as a result of the alleged malpractice more than three years before filing suit.  The D.C. Circuit noted this crucial distinction in *Havens v. Patton Boggs, LLP*, 235 Fed. Appx. 750, 2007 U.S. App. LEXIS 11914 at **2-3 (D.C. Cir. 2007) (unpublished) ("While it is true that in some cases the existence of an injury from inferior representation may not be evident until a final verdict, *see Wagner v. Sellinger*, 847 A.2d 1151, 1156 (D.C. 2004), this is not always the case, *see Weisberg v. Williams, Connolly & Califano*, 390 A.2d 992, 995 (D.C. 1978)").[8]

Because there is no dispute that Plaintiffs knew that they had spent a minimum of $4,000

---

[8]*Havens v. Patton Boggs* and other unpublished opinions cited herein are attached hereto as Exhibit 2.

in fees solely to address the failure to file an English translation, and no dispute that Plaintiffs

knew that the failure to file the translation was a "procedural error," Plaintiffs' discovery

requests are unnecessary.  No amount of additional discovery can change the fact that Plaintiffs

were on inquiry notice of the alleged wrongdoing and resultant damages by at least October,

2002, or March, 2003.

**II.     PLAINTIFFS' LULLING ARGUMENTS ARE NOT RELEVANT TO
        THE TRIGGERING EVENT FOR LIMITATIONS PURPOSES, AND, IN ANY
        EVENT, THE LULLING DOCTRINE DOES NOT APPLY WHEN PLAINTIFFS
        HAVE "AMPLE TIME TO FILE SUIT WITHIN THE STATUTORY PERIOD."**

Defendants' motion asserts that Plaintiffs were on inquiry notice of their claims, and

suffered actual damages, when they paid a minimum of $4,000 in October, 2002, to file a motion

for reconsideration for the sole purpose of addressing the English translation issue.  The Board of

Patent Appeals and Interferences denied that motion for reconsideration in March, 2003, more

than three years before the effective filing date.

In a classic attempt to hide the ball, Plaintiffs spend pages of their opposition arguing that

they were "lulled" into believing they had not suffered damages because Defendants expressed

opinions that the Board and Federal Circuit would rule that no English translation was required.

All of the lulling arguments, however, address the issue of whether Plaintiffs would eventually

prevail in the interference proceeding.  By March, 2003, Plaintiffs knew they had spent $4,000

addressing the English translation issue before the Board, and that the Board had ruled against

them on that issue.  That is enough to trigger the statute of limitations.  Plaintiffs do not, and

cannot, assert that Defendants lulled them into believing they had not spent a minimum of

$4,000 on the motion for reconsideration, or that Plaintiffs had lulled them into believing that the

Board had granted the motion for reconsideration.  Plaintiffs' lulling arguments are not relevant.

Regardless of their relevance, Plaintiffs' lulling arguments suffer from a fatal defect:

> A defendant is estopped from asserting the statute of limitations as a bar to plaintiff's action if he has done anything that would tend to lull the plaintiff into inaction and thereby permit the statutory limitation to run against him. But the effect of such estoppel is not to stop the running of the statute or to create a new date for its commencement. If ample time to file suit within the statutory period exists after the circumstances inducing delay have ceased, there is no estoppel against pleading the bar of the statute.

*Property 10-F, Inc. v. Pack & Process, Inc.*, 265 A.2d 290, 291 (D.C. 1970).

Plaintiffs failed to cite this controlling authority to this Court. Here, Plaintiffs' Opposition concedes that Plaintiffs were on inquiry notice of their alleged injury from the failure to file an English translation by June 10, 2004, when the Federal Circuit denied their petitions for rehearing, or by October 26, 2004, when the Supreme Court denied their petition for certiorari.[9] They did not negotiate tolling agreements with Defendants until May 3, 2007 and May 10, 2007,[10] more than two and a half years after the latest date when Defendants' alleged lulling ended in the face of final judgments against Plaintiffs. Two and a half years was more than "ample time to file suit within the statutory period." *Property 10-F, Inc.,* 265 A.2d at 291.

---

[9]Opposition at 21-22.

[10]The Federal Circuit ruled against Seed on May 3, 2004. That is obviously the latest limitations date that Plaintiffs could reasonably argue, and to do that they must ignore the attorneys' fees they paid in October, 2002, and the Board's denial of the motion for reconsideration in March, 2003. However, Plaintiffs frivolously argue that the earliest triggering date was when the Federal Circuit denied petitions for rehearing, on June 10, 2004, because they did not negotiate tolling agreements with Defendants Kratz Firm, Armstrong, Kong, and Kenehan until May 10, 2007, more than three years after the Federal Circuit ruled against Seed. Complaint, paragraph 32.

III.    **THE D.C. CIRCUIT CORRECTLY READ** *R.D.H. COMMUNICATIONS, LTD.* **TO HOLD THAT THE CONTINUOUS REPRESENTATION RULE DOES NOT APPLY TO SUBSEQUENT APPEALS.**

In their initial memorandum in support of this motion, Defendants argued that in *Bradley v. National Association of Securities Dealers Dispute Resolution, Inc.*, 369 U.S. App. D.C. 79, 433 F.3d 846, 850 (D.C. Cir. 2005), the D.C. Circuit held that the continuous representation rule did not apply to subsequent appeals.  Defendants quoted the D.C. Circuit's opinion in *Bradley*: "The court in [*R.D.H. Communications, Ltd. v. Winston*, 700 A.2d 766, 770-71 (D.C. 1997)] also set an outer bound on the duration of the 'specific dispute'–it does not include appeals." *Bradley*, 433 F.3d at 851 (other citations omitted).

Plaintiffs argue that the D.C. Circuit does not know how to read, and that it misinterpreted the D.C. Court of Appeals opinion in *R.D.H. Communications, Ltd. v. Winston*.[11] Instead, it appears that Plaintiffs willfully failed to alert this Court to a subtlety in the *R.D.H. Communications* opinion that the D.C. Circuit fully understood.

In its *R.D.H. Communications* opinion, the D.C. Court of Appeals noted that the FCC dismissed R.D.H.'s radio station application on January 28, 1991, because the application failed to include a financial certification page.  The opinion said that on February 19, 1991, attorney Winston sent his clients a copy of a petition for reconsideration he had filed with the FCC.  The opinion went on: "The FCC denied the petition for reconsideration and the United States Court of Appeals for the District of Columbia Circuit affirmed, on a motion for summary affirmance, the FCC's decision."  Winston wrote a letter on March 15, 1994, informing the client that the D.C. Circuit's opinion was "the end of the road on this case."  On August 17, 1995, R.D.H. sued

---

[11]Opposition at 34-42.

attorney Winston for failing to include the financial certification page in the FCC application. 700 A.2d at 767.

The Superior Court granted defendant Winston's motion for summary judgment on limitations grounds, holding that Plaintiffs were on notice of Winston's alleged malpractice when they learned that the FCC first denied the application in January, 1991. The Court of Appeals reversed, holding that the continuous representation rule tolled the statute of limitations "until the attorney ceases to represent the client in the specific matter at hand." 700 A.2d at 768 (emphasis added).

If the Court of Appeals had intended the continuous representation rule to apply not just to the FCC proceedings, but also to attorney Winston's representation of R.D.H. in the appeal to the D.C. Circuit, the relief granted would have been simple–the Court of Appeals would have reversed, with instructions to let R.D.H.'s claims proceed. After all, R.D.H. sued in August, 1995, well within three years if March, 1994 was the triggering date for limitations. Instead, the Court of Appeals said something entirely different: "Here, when the representation by Winston and his firm terminated is a question of fact that should be answered upon remand to the trial court." 700 A.2d at 768.

The need for remand is apparent upon reading a document that Plaintiffs cited in their Opposition–the D.C. Circuit's summary affirmance of the FCC's denial of R.D.H.'s application, *R.D.H. Communications v. FCC*, 1994 WL 88230, 1994 U.S. App. LEXIS 13812 (D.C. Cir. March 8, 1994) (unpublished). In that summary affirmance, the D.C. Circuit wrote that the motion for summary affirmance was granted "substantially for the reasons stated by the Federal Communications Commission in its orders adopted December 18, 1990, July 19, 1991, August

18, 1992, and August 20, 1993." *Id.*, 1994 U.S. App. LEXIS at *1 (emphasis added). Obviously, proceedings before the FCC continued long after the FCC's initial decision in January, 1991. R.D.H. sued on August 17, 1995, indicating that its counsel probably believed that the August 18, 1992 FCC order was of significance to the limitations analysis.

There would have been no need for a remand or factual determinations about when attorney Winston's representation "in the specific matter at hand" terminated if the continuous representation rule extended beyond the proceedings before the FCC. In footnote 94 of their Opposition, Plaintiffs argued just the opposite, writing: "Since the D.C. Circuit did not issue an opinion until March 8, 1994, a timely post-appeal malpractice claim would only be possible if the court concluded that the statute of limitations was tolled due to Winston's continuous representation of R.D.H. on appeal. *See RDH Communications Ltd. v. Fed. Communications Comm'n*, 1994 WL 88230 at *1 (D.C. Cir. March 8, 1994)."[12]

If Plaintiffs' counsel read the summary affirmance opinion they cited, it is difficult to interpret their argument as anything but a willful attempt to mislead this Court. The D.C. Circuit got it precisely right–the D.C. Court of Appeals opinion in *R.D.H. Communications* limited the continuous representation rule to the proceedings where the alleged malpractice occurred, and not to any subsequent appeals. *Bradley*, 433 F.3d at 851. Accordingly, the continuous representation rule does not save Plaintiffs' time-barred claims based on the failure to file an English translation of the PCT Application.

---

[12]Opposition at 39 & n. 94.

IV.    **PLAINTIFFS HAVE FAILED TO ALLEGE FACTS SUFFICIENT TO SUPPORT PROXIMATE CAUSE FOR DAMAGES ON THEIR CLAIMS OF FAILURE TO SETTLE BASED ON NEGLIGENT ADVICE.**

Plaintiffs' Opposition still fails to allege facts sufficient to show that Defendants' allegedly negligent advice that Seed would have an opportunity to add or amend claims before the patent examiner proximately caused Plaintiffs' to reject two settlement offers.  Seeking to obscure this shortcoming, Plaintiffs assert that Defendants cite no authority for their argument that, to plead proximate cause in this case, Plaintiffs must plead that they believed that they had any new or amended claims that were worth more than the value of the settlement offers.

It is true that this is a rare case.  Defendants have found few cases in which clients sued their attorneys claiming that negligent advice caused them to reject a settlement offer.  Defendants' counsel have found no case discussing the standards for pleading causation in such a case.  This does not mean, however, that we are without guidance.  Black letter law in the District of Columbia sets out clear requirements for pleading and proving proximate cause.  Plaintiffs' Complaint falls far short of these standards.

Plaintiffs must plead facts sufficient to show that Defendants' alleged negligence "resulted in and <u>was the proximate cause</u> of loss to the client." *Niosi v. Aiello,* 69 A.2d 57, 60 (D.C. 1949)(emphasis added).  In this case, then, Plaintiffs must plead facts sufficient to show that Defendants' allegedly negligent advice <u>was the proximate cause</u> of their decision to reject the two settlement offers.  The D.C. Courts define proximate cause as, "'that cause which, in natural and continual sequence, unbroken by any efficient intervening cause, produces the injury <u>and without which the result would not have occurred</u>.'" *Butts v. United States*, 822 A.2d 407, 417 (D.C. 2003)(emphasis added) *quoting Wagshal v. District of Columbia*, 216 A.2d 172, 175

(D.C. 1966); *Dunn v. Marsh,* 129 U.S. App. D.C. 245, 393 F.2d 354, 357 (D.C. Cir. 1968); *St. Paul Fire & Marine Ins. Co. v. James G. Davis Constr. Corp.*, 350 A.2d 751, 752 (D.C. 1976).

In an attorney malpractice case, Judge Oberdorfer explained that in order to satisfy the causation element of their claim, plaintiffs:

> need only show that an attorney's negligence was a "but for cause" of the alleged harm. This means that if the harm would have occurred regardless of the attorney's advice, the attorney's negligence is not a "proximate cause," or a connection between events legally sufficient to support liability.

*Darby v. Medhin,* 1991 U.S. Dist. Lexis 752 at *6-7 (D.D.C. 1991)(unpublished).

The Courts have recognized that proximate cause includes "two components: 'cause-in-fact' and a 'policy element' which limits a defendant's liability when the chain of events leading to the plaintiff's injury is unforeseeable or 'highly extraordinary' in retrospect." *Majeska v. District of Columbia,* 812 A.2d 948, 950 (D.C. 2002) *quoting District of Columbia v. Carlson,* 793 A.2d 1285, 1288 (D.C. 2002); *Butts,* 822 A.2d at 417. A defendant's negligence is a "cause-in-fact" of an injury if it "played a substantial part in bringing about the injury or damages." *District of Columbia v. Freeman,* 477 A.2d 713, 715 (D.C. 1984); *Butts,* 822 A.2d at 417. *See also,* Standardized Civil Jury Instructions for the District of Columbia, § 5.12 (2007) ("An injury or damage is proximately caused by an act, or failure to act, whenever it appears from a preponderance of the evidence that the act or failure to act played a substantial part in bringing about the injury or damage. Moreover, it must be shown that the injury or damage was either a direct result or a reasonably probable consequence of the act or failure to act.")

A careful review of the Complaint in this case, and even of Plaintiffs' Opposition, reveals that Plaintiffs have failed to plead facts sufficient to establish proximate cause in this case. First, although Plaintiffs claim that they relied upon Defendants' "erroneous legal advice" in deciding

to reject the two settlement offers, <u>they never allege that they would have accepted the settlement</u> <u>offers if Defendants had not negligently advised them that they would have an opportunity to</u> <u>raise new or amended claims before the patent examiner</u>.  Absent an allegation that "but for" or "without" the attorneys' advice, Plaintiffs would have accepted the settlement offers and suffered no harm, Plaintiffs' Complaint fails to establish proximate cause.  *Butts,* 822 A.2d at 417; *Dunn,* 393 F.2d at 357;  *Darby,* 1991 U.S. Dist. Lexis 752 at *6-7.

The Westerman Defendants do not believe that Plaintiffs can make such an allegation in good faith.  The facts will show that the Complaint completely mischaracterized Stevens' settlement offers, which sought cross-licenses not just for the patent rights at issue in the interference, but for Plaintiffs' entire patent portfolio related to correction tape dispensers. Plaintiffs likely turned down the settlement offers because Stevens' potential patent at issue in the interference were not as valuable as Plaintiffs' other patent rights.  Because Plaintiffs would have rejected the settlements regardless of the Westerman Defendants' advice, that advice cannot be a proximate cause of their harm.  *Darby,* 1991 U.S. Dist. Lexis at 752 at *6-7.

Similarly, the Complaint does not allege any facts establishing that Defendants' advice "played a substantial part" in their decision to reject the settlement offers. The Complaint alleges that the Westerman firm "incorrectly advised Seed . . . that even if Seed were to lose the pending Federal Circuit appeal, the patent application would thereafter 'be returned to the Examiner' and Seed would be permitted to 'add or amend claims.'"  Complaint, paragraph 25.  It is not enough if this advice had some minuscule, fleeting affect on Plaintiffs' considerations. Defendants' advice could only have played a "substantial part" in Plaintiffs' decision to reject the two settlement offers if 1) Plaintiffs actually believed that they had new or amended claims to bring

before the patent examiner and 2) Plaintiffs believed that those new or amended claims were more valuable than the settlement offers.  The Complaint in this case includes no such allegations – nor does it include any other factual allegations which, if proven, would establish that the Defendants' advice played a substantial part in their decision to reject the settlement offers.  Accordingly, Plaintiffs have failed to plead that Defendants' advice was the cause in fact of their injury.

Finally, Plaintiffs are wrong in claiming that their Complaint satisfies the requirements of notice pleading.  Vague and general allegations of malpractice "do not meet the Rule 12(b)(6) standard for pleading sufficient facts to state a claim of legal malpractice on which relief can be granted." *Mount v. Baron,* 154 F. Supp.2d 3, 9 (D.D.C. 2001).  In *Mount,* the plaintiffs alleged generally that the defendant attorneys were negligent in dropping certain defendants, failing to add others, and in dropping various counts from the Complaint.  They did not include any allegations as to how the addition of the defendants and claims would have resulted in a different verdict.  The United States District Court granted defendants' motion to dismiss the complaint, holding that:

> The plaintiffs have pled no facts that, if proven true, would demonstrate the causal connection between the jury's verdict and the failure to keep or re-add defendants and claims at the time of the filing of the second amended complaint . . . In other words, the plaintiffs have failed to allege any facts showing that but for the defendants' negligence, there would have been a different verdict.

154 F. Supp.2d at 9-10.  *See also, Bigelow v. Knight,* 737 F. Supp. 669, 671 (D.D.C. 1990)(dismissing malpractice complaint that alleged only "vague and general failures" of the attorney to interview witnesses without alleging how the witnesses would have supported the defense.)

Here, as in *Mount* and *Bigelow,* Plaintiffs have alleged that the Westerman Defendants acted negligently.  What they have failed to do is to "specif[y] the causal connection" between this alleged negligence and their decision to reject the settlement offers.  *Mount,* 154 F. Supp.2d at 9.  The Complaint includes no allegations as to what new or amended claims Plaintiffs hoped to raise before the patent examiner or how valuable Plaintiffs believed those claims to be.  It includes no factual allegations as to which settlement offer Plaintiffs would have accepted but for Defendants' allegedly negligent advice.  Simply bandying around the words "proximate cause" does not provide Defendants with "fair notice of the nature of the plaintiff's claim and the grounds on which it rests."  *Mount,* 154 F. Supp.2d at 9; Fed R. Civ. P. 8(a)(2).

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed in its entirety.

## POSITION ON ORAL ARGUMENT

Defendants believe that this motion is a relatively simple application of black letter D.C. law to undisputed facts, and that oral argument is therefore unnecessary.  However, if the Court has any questions about Defendants' arguments, Defendants request the opportunity to address those questions at oral argument.

Respectfully submitted,

Mark London
Christopher B. Mead
London & Mead
1225 19th Street, N.W., Suite 320
Washington, D.C.  20036
(202) 331-3334

Counsel for Defendants William F. Westerman;
Westerman, Hattori, Daniels & Adrian, LLP; John
Kong; and Ed Kenehan


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I caused a true copy of the foregoing Reply in Support of

Westerman Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment, on

Statute of Limitations and Causation Grounds to be served on all parties by electronic filing and

to be served by email on April 25, 2008 to:

John H. Harman
chhlaw587@aol.com
Coggins, Harman & Hewitt
8905 Fairview Road, Suite 600
Silver Spring, MD 20910
personal representative of the Estate of James Armstrong, III

Christopher B. Mead

- 17 -

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SEED COMPANY, LTD., et al,**<br><br>**Plaintiffs**<br><br>v.<br><br>**WILLIAM F. WESTERMAN, et al.**<br><br>**Defendants.** | **Civil No. 1:08-cv-00355 (RMU)** |

## SECOND DECLARATION OF WILLIAM F. WESTERMAN

I, William F. Westerman, declare as follows:

1.      I am over 18 years of age and competent to testify about the matters in this Declaration from personal knowledge.

2.      Attached to this declaration as Exhibit G is a letter that I received from Kenji Itami, a Japanese patent lawyer who was our primary contact with Plaintiffs. Mr. Itami had authority to speak for Plaintiffs, and I understood Exhibit G to be a statement by our clients. The letter has a date of April 4, 2002 in the upper right hand corner. That date contains a typographical error. It was really written in 2003, as the received stamp from our office reflects.

3,      In the letter, Mr. Itami referred to the decision of the Board of Patent Appeals and Interferences issued March 13, 2003, denying our motion for reconsideration. In that decision, the Board held that the failure to file an English translation of the PCT Application meant that Plaintiffs were not entitled to the benefit of the date of the PCT Application in the interference. Mr. Itami's April, 2003 letter clearly reflects that Plaintiffs understood that the Board had ruled that we had made a procedural mistake by not filing an English translation of the PCT

Application.  Mr. Itami wrote:

> the problem was caused by the fact that though Tamai was required under CFR to file a translation of the PCT application along with the motion, Tamai did not do so.  In other words, if only Tamai had filed said translation, the problem would not have happened.
> In this sense, the client considers that the problem was caused by a procedural mistake.

4.      I have reviewed the correspondence from our firm to Plaintiffs attached to the Declaration of Masatoshi Shintani filed in Plaintiffs' opposition to our Motion to Dismiss, or, in the Alternative, for Summary Judgment.  That correspondence reflected our advice that Plaintiffs should not attempt to appeal the Board's decision in the interference proceeding.  As we said in that correspondence, the Board had ruled in Seed's favor in the interference, meaning that Seed really did not have a viable option to appeal.  The reason for this correspondence was that Seed realized that the Board had ruled that we had made a procedural mistake in failing to file an English translation of the PCT Application.  Seed wanted to know whether we could appeal that aspect of the Board's ruling, because Seed feared the impact of that ruling in any subsequent patent litigation in the event that Seed received a U.S. patent.  We advised that we did not believe that the Board's ruling that an English translation of the PCT Application was required was likely to affect subsequent patent litigation in the event that Seed received a U.S. patent.  That is an entirely different issue from the question of likelihood of success if Stevens appealed the Board's ruling in Plaintiffs' favor.  We advised Plaintiffs in writing that we estimated the chances of winning the appeal in the Federal Circuit at 60-80% after oral argument before the Federal Circuit.

5.      Far from indicating that Plaintiffs were unaware of the harms that would flow from the Board's decision that an English translation of the PCT Application was required, the

correspondence attached to Plaintiffs' Opposition demonstrates that Plaintiffs were aware that

the Board's decision related to the English translation issue was adverse to their interests.

I declare under penalty of perjury that the foregoing is true and correct. Executed on

April 25, 2008.

William F. Westerman

# Exhibit G
# to Second Declaration of William Westerman



# ITAMI PATENT OFFICE

DAISAN BLDG.
2-4, 3-CHOME, NISHITENMA, KITA-KU,
OSAKA, 530-0047, JAPAN

TELEPHONE:(06)6365-9078
FACSIMILE:(06)6365-8577

CABLE:ITAMIPAT
E-MAIL:
itamipt@mua. biglobe. ne. jp

Law Offices
Armstrong,Westerman,Hattori,
McLeland & Naughton
Suite 1000, 1725 K Street, N.W.
Washington, D.C. 20006
U.S.A

                    VIA FACSIMILE                     April 4, 2002

Att: Mr. Westerman:

Re : Patent Interference No. 103,662
     U.S. Pat. Appln. S.N. 08/196,839
     Your ref: P1151-2717-A940094I
     Our ref: P-123/SE.90

RECEIVED
APR - 4 2003
ARMSTRONG, WESTERMAN, HATTORI.

Thank you for your facsimile letters of March 17, 2003,
forwarding to us the Decision by the Board of Patent Appeals
and Interferences, and your facsimile letter of March 21,
2003, conveying your analysis of the above decision.

First, please bear in mind that the captioned application is
superlatively important to the client and the failure to
obtain its patent would inevitably afford serious damages to
the management of the client company.

Second, from the Decision mailed June 25, 2002 and the
Decision mailed March 13, 2003, the problem was caused by
the fact that though Tamai was required under CFR to file a
translation of the PCT application along with the motion,
Tamai did not do so. In other words, if only Tamai had
filed said translation, the problem would not have happend.
   In this sense, the client considers that the problem was
caused by a procedural mistake. In our opinion, whether or
not it was caused by a procedural mistake should be decided
on whether or not the procedure taken observed the law and
regulations or practices accumulated in the USPTO.

Third, in your analysis dated March 21, essential part
appears to perfectly drop out. What the client wishes to

ACKNOWLEDGED
DATE  4/14/03 mB
ARMSTRONG, WESTERMAN, HATTORI, LLP

Page 2

## ITAMI PATENT OFFICE

know at this stage is as below:

(a)  Why such unfavorable decision was rendered, though you strongly recommended filing a Request for Reconsideration?

(b)  You comment, "However, at this time, we do not recommend such an appeal (to CAFC)."  What are reasons for not being able to recommend at this time?

(c)  If an appeal is refrained from, what would happen in a possible lawsuit in the future?

As stated above, the importance of the captioned application is superlative and inestimable to the client.  Thus, the client has an intention to further appeal to CAFC, if fatal inconveniences would happen in a future lawsuis and if such inconveniences could be eliminated by such an appeal.  Your analysis also refers to a case of a future lawsuit, but unfortunately essential points as pointed out above that the client wants to know are not made clear.  Please note that those are indispensable for the client to determine whether they should further rely upon a further appeal.

(d)  If Stevens files an appeal, what inconveniences on the side of the client would likely happn?

(e)  According to the both Decisions, the Board denies priority for the PCT application.  With your letter dated 12, 2002, there is mentioned, "The risk is that, if Stevens files a Request for Reconsideration and prevails at the Board, then that could potentially break the chain of priority between the JP '371 and the US '183 applications.  While that may not happen, we believe that it is a risk and it is very important to address that risk at this time.  Thus, we strongly recommend filing a Request for Reconsideration on this point."

How much is such risk?  What are reasons you considered "While that may not happen"?  We are worrying that Stevens may file an appeal in an attempt to break such chain.  If appealed, the means left to us is only to repeat the same arguments as in Reconsideration?

And if not appealed by both parties, this problem would be carried forward in a lawsuit (infringement), for example?

# ITAMI PATENT OFFICE

In such a case, would any disadvantage happen by refraining from an appeal at this time?

(f)  You mention, "The appeal which is available to us is an appeal to the Federal circuit (CAFC).  But, we understand that such appeal may also be available to a Federal District Court.  In fact, you refer to a possible judgement of a Federal District Court in the last paragraph of your letter.  Please explain merits or demerits between CAFC and DC, when an appeal is made.

At any rate, the client asks for much more information so that the client could determine whether the case should be further pursued or not.

In brief, please explain merits or demerits in each case where an appeal is filed or not filed, taking into a consideration a case where a lawsuit is raised in the future. Please also explain a chance of success when an appeal is lodged at this time.

We are looking forward to hearing from you soon.

Yours faithfully,

K.  Itami

KI/ky

235 Fed. Appx. 750, *; 2007 U.S. App. LEXIS 11914, **

LEXSEE 235 FED. APPX 750

**WARREN C. HAVENS, APPELLANT v. PATTON BOGGS, LLP, A LIMITED LAW PARTNERSHIP, ET AL., APPELLEES**

No. 06-7124

**UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT**

*235 Fed. Appx. 750; 2007 U.S. App. LEXIS 11914*

**May 17, 2007, Filed**

**NOTICE:** [**1] PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**SUBSEQUENT HISTORY:** Rehearing denied by *Havens v. Boggs, 2007 U.S. App. LEXIS 17033 (D.C. Cir., July 13, 2007).*

**PRIOR HISTORY:** Appeal from the United States District Court for the District of Columbia. (No. 05cv01454).
*Havens v. Patton Boggs LLP, 2006 U.S. Dist. LEXIS 42910 (D.D.C., June 26, 2006)*

**COUNSEL:** For WARREN C. HAVENS, Plaintiff - Appellant: Matthew Henry Simmons, Sean Patrick Malloy, Simmons & Associates, Bethesda, MD.

For PATTON BOGGS, LLP, a Limited Law Partnership, STEVEN SCHNEEBAUM, an individual, Defendants - Appellees: Benjamin Gaillard Chew, Andrew Zimmitti, Patton Boggs, Washington, DC.

**JUDGES:** Before: RANDOLPH, TATEL and BROWN, Circuit Judges.

**OPINION**

[*751] **JUDGMENT**

This case was considered on the record from the United States District Court for the District of Columbia and on the briefs and arguments by the parties. Upon consideration of the foregoing, it is

**ORDERED** and **ADJUDGED** that the judgment of the District Court is hereby affirmed.

Warren C. Havens brought this claim against Patton Boggs on July 22, 2005, for breach of contract and legal malpractice in Patton Boggs's representation of Havens in a previous civil action. Havens, as the defendant, had filed counterclaims. The district court dismissed two of Havens's counterclaims. He argues [**2] this was a result of Patton Boggs's negligent representation. Havens fired Patton Boggs, retained new counsel, and, after settling the previous case, filed this action against Patton Boggs.

The district court dismissed Havens's claims as barred by the three-year statute of limitations, which it decided started running on May 8, 2000, once Havens fired Patton Boggs and retained new counsel. *Warren C. Havens v. Patton Boggs LLP, No. 05-01454, 2006 U.S. Dist. LEXIS 42910, 2006 WL 1773473, at *2-4 (D.D.C. June 26, 2006).* Havens claims in this appeal that the district court should have calculated the statute of limitations as starting almost two years later -- on July 23, 2002, when the district court in the previous case enforced the written settlement agreement. Patton Boggs agrees with the district court, but argues alternatively that the latest the limitations period began running was March 28, 2001, the date of the dismissal of Havens's counterclaims.

We agree with the district court that Havens would have been aware long before the enforcement of the settlement agreement of any injury Patton Boggs caused him. While it is true that in some cases the existence of an injury from inferior representation [**3] may not be evident until a final verdict, *see Wagner v. Sellinger, 847 A.2d 1151, 1156 (D.C. 2004),* this is not always the case, *see Weisberg v. Williams, Connolly & Califano, 390 A.2d 992, 995 (D.C. 1978).* Here, the very latest Havens must have known he was injured was when the district court dismissed his counterclaims in the previous litigation. He may not have known the extent of the injury that dismissal caused, but such knowledge is not required for the statute of limitations to begin running. *See Knight v. Furlow, 553 A.2d 1232, 1235-36 (D.C. 1989).*

Pursuant to *D.C. Circuit Rule 36,* this disposition

235 Fed. Appx. 750, *; 2007 U.S. App. LEXIS 11914, **

will not be published. The [*752] Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See FED. R. APP. P. 41(b)*; *D.C. Cir. Rule 41.*

LEXSEE 1994 US APP LEXIS 13812

**RDH Communications Limited Partnership, Appellant v. Federal Communications Commission; BEBE-F Broadcasting Corporation, Intervenor**

No. 93-1643

**UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT**

*1994 U.S. App. LEXIS 13812*

**March 8, 1994, Filed**

**NOTICE:** [*1] UNPUBLISHED DISPOSITION - NOT TO BE CITED AS PRECEDENT. SEE LOCAL RULE 11(c).

**JUDGES:** BEFORE: Mikva, Chief Judge; Edwards and Sentelle, Circuit Judges

**OPINION BY:** PER CURIAM

**OPINION**

*ORDER*

Upon consideration of the motion for summary affirmance, the opposition thereto and the reply; and the motion to strike appellee's reply, the response thereto and the reply, it is

**ORDERED** that the motion to strike be denied. It is

**FURTHER ORDERED** that the motion for summary affirmance be granted substantially for the reasons stated by the Federal Communications Commission in its orders adopted December 18, 1990, July 19, 1991, August 18, 1992, and August 20, 1993. *See also Russian River Vintage Broadcasting v. FCC, 303 U.S. App. D.C. 326, 5 F.3d 1518 (D.C. Cir. 1993).* The merits of the parties' positions are so clear as to warrant summary action. *See Cascade Broadcasting Group Ltd. v. FCC, 262 U.S. App. D.C. 110, 822 F.2d 1172 (D.C. Cir. 1987)* (per curiam); *Walker v. Washington, 201 U.S. App. D.C. 82, 627 F.2d 541, 545 (D.C. Cir.)* (per curiam), *cert. denied, 449 U.S. 994 (1980).* [*2]

The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. *See D.C. Cir. Rule 41.*

*Per Curiam*

1991 U.S. Dist. LEXIS 752, *

LEXSEE 1991 U.S. DIST. LEXIS 752

THE ESTATE OF EDGAR DARBY, et al., Plaintiffs, v. TAMRAT G. MEDHIN, et al., Defendants

Civil Action No. 90-887-LFO

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

*1991 U.S. Dist. LEXIS 752*

January 22, 1991, Decided
January 22, 1991, Filed

JUDGES: [*1] Louis F. Oberdorfer, United States District Judge.

OPINION BY: OBERDORFER

OPINION

*MEMORANDUM*

This dispute arises out of the sale of two parcels of land in northeast Washington. [1] On April 1, 1988, the Darbys entered into a contract to sell the two parcels to defendants Tamrat Medhin and his wife, Hewan Deneke. The Darbys promised to sell the two parcels in consideration for the promise of $ 40,000 in cash and a $ 145,000 promissory note secured by a first deed of trust. Before settlement, Medhin sought a one-year construction loan from the Capital City Mortgage Corporation ("CapCity"). CapCity demanded that its loan be secured by a one-year first deed of trust. As a consequence, on June 14, Medhin and the Darbys added a handwritten addendum to their sales contract. The addendum amended the sales contract to subordinate the Darbys' security interest to "a construction loan not to exceed $ 65,000 and only for 1 year." Addendum (Defendant's Exhibit 2). The transaction went to settlement ten days later at the offices of defendant Cantalupo.

    1 On January 15, 1990, the parties attended a pretrial conference. At that conference, defendant Anthony Cantalupo and plaintiffs Roberta Darby and the Estate of Edgar Darby argued Cantalupo's motion for summary judgment. At the end of the argument, the Court tentatively denied summary judgment on the attorney malpractice claim and granted it both on punitive damages and on the conspiracy to defraud claim. This memorandum explains and revises that tentative ruling.

[*2] Cantalupo was not retained as an attorney by the Darbys, but served instead as settlement attorney. According to plaintiffs, immediately before the settlement Edgar Darby asked Cantalupo "whether he could fix it so if Medhin did not pay I could get my property back." Affidavit of Edgar Darby, January 4, 1991, para. 2. Darby contends that Cantalupo replied "without hesitation that if Medhin did not pay, one thing we could do would be to foreclose. *Id.* Cantalupo denies that he had such a conversation with Darby.

Shortly after the settlement was completed and the parcels conveyed to them, Medhin and Deneke defaulted on the promissory note. Approximately one year later, the Darbys filed this complaint alleging, *inter alia,* that Medhin and Deneke had conspired with Cantalupo to defraud them. According to the Darbys, if they had understood that the addendum subordinated their security interest to CapCity's, they would not have signed it. They further allege that Medhin and Cantalupo, aware of Edgar Darby's inability to read, tricked him into signing the addendum. Accordingly, the Darbys sue Medhin and Cantalupo for "conspiracy to defraud" and sue Cantalupo for "attorney malpractice." [*3] They also seek punitive damages.

Currently before the Court is Cantalupo's motion for partial summary judgment on the attorney malpractice and punitive damage claims against him. At the hearing, Cantalupo also raised, and the Court entertained, a motion to dismiss, as against him, the conspiracy to defraud claims for failure to state a claim.

II.

In most attorney malpractice claims, the plaintiff must prove three elements: "1) the attorney's employment; (2) his neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of loss to the client." *Niosi v. Aiello, 69 A.2d 57, 60 (D. C. 1949)* (citations omitted). Cantalupo contends that the Darbys' malpractice claim must fail because t here was no attorney-client relationship between the Darbys

and himself. In the alternative, Cantalupo argues that the undisputed facts establish that Cantalupo's alleged negligence was not the proximate cause of the Darby's injury. Neither contention is persuasive.

A.

Although the plaintiffs in most attorney malpractice claims must prove the existence of an attorney-client relationship, in this case the Darbys do not need to show that an attorney-client relationship [*4] was established between Cantalupo and themselves. Cantalupo was the settlement attorney for the transaction between the principals. Under District of Columbia law, a settlement attorney is responsible for negligent advice given to a party to the settlement even though that party is not his client. *See, e.g., Faison v. Nationwide Mortgage,* No. 84-312-JHP, slip op. at 6 (D.D.C. March 6, 1985). As Judge Stanley Harris, then on the D.C. Court of Appeals, observed

It is obvious that an attorney does not owe members of the general public the same duties which he owes his client. *Nat'l Savings Bank of the District of Columbia v. Ward, 100 U.S. 195 (1880).* However, in appropriate circumstances an attorney is not exempt from the general principle that "one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." *Glanzer v. Shepard, 233 N.Y. 236, 135 N.E. 275, 276 (1922)* (Cardozo, J.).

*Sec. Nat'l Bank v. Lish, 311 A.2d 833, 834 (D.C. 1973).* The Darbys have presented evidence that Cantalupo, while serving as settlement attorney, told them that their interests would be protected by their ability to foreclose. [*5] Although Cantalupo denies that any conversation took place between himself and the Darbys, the Darbys' evidence raises a genuine issue as to whether Cantalupo in fact advised them and, if so, whether he did so with reasonable care.

At oral argument, Cantalupo attempted to distinguish *Lish* and *Faison.* He contended that in both cases the attorney-defendants "induced" reliance upon their statements, while in this case plaintiffs contend that Cantalupo merely answered a question. This argument is meritless. While it is true that the Darbys must show that they relied upon his allegedly negligent advice, they must do so in order to show proximate cause, not to show that a duty exists. This conclusion is easily demonstrated by restating Cantalupo's proposition in more natural syntax: The Darbys must show that they relied upon Cantalupo's advice in order to prove that Cantalupo's negligence caused harm to them. Moreover, to the extent that Cantalupo suggests that there is a requirement of scienter, of an intention to induce reliance, he is mistaken. "The elements of an action for professional negligence are the same as those of an ordinary

negligence actions," *O'Neil v. Bergan,* [*6] *452 A.2d 337, 342 (D.C. 1982),* and in ordinary negligence actions one need not show scienter in order to establish a duty of care. As a consequence, Cantalupo's attempt to distinguish *Lish* and *Faison* fails.

B.

Cantalupo also contends that the undisputed facts demonstrate that his alleged misrepresentation did not proximately cause any damage to the plaintiffs. Specifically, he points to Darby's admission that if Medhin had met his payments under the promissory note, Darby would not have sued Medhin. *See* Statement of Material Facts Not in Issue para. 19. From this fact Cantalupo concludes that the harm to the Darbys was caused by Medhin's default, not by their alleged reliance on Cantalupo's advice. This contention is not persuasive.

In order to satisfy the causation element of their claim, the plaintiffs need only show that an attorney's negligence was a "but-for cause" of the alleged harm. This means that if the harm would have occurred regardless of the attorney's advice, the attorney's negligence is not a "proximate cause," or a connection between events legally sufficient to support liability. *See M & S Building Supplies, Inc. v. Keiler, 738 F.2d 467, 473 (D.C.* [*7] *Cir. 1984).* Conversely, if the harm would not have occurred "but for" the alleged tortious action, then the element of proximate causation is satisfied. *See generally Prosser & Keaton on Torts* 266 (5th ed. 1984).

Given this standard, the Darbys have raised a genuine issue as to proximate causation. They aver that because they trusted Cantalupo's advice, they "signed the papers he told me to sign." Affidavit of Edgar Darby para. 3. A reasonable jury could infer from this statement that if Cantalupo had not told them that even with the addendum their interests would be secured by their right of foreclosure, the Darbys would have demanded a first trust and refused to consummate the transaction. Alternatively, a reasonable jury might conclude that the Darbys would have received the first deed of trust so that when Medhin defaulted the Darbys would have gotten their property back. Because a reasonable jury could conclude that "but-for" Cantalupo's negligence Medhin's default would not have harmed them, the Darbys have raised a genuine issue as to causation.

C.

In conclusion, although Cantalupo has established that there was no attorney-client relationship between himself and the Darbys, [*8] the Darbys have raised a genuine issue of material fact as to whether Cantalupo, while serving as a settlement attorney, gratuitously offered advice to them. The Darbys have also raised a genuine issue of material fact as to whether Cantalupo's

alleged breach of that duty caused harm to them. In addition, Cantalupo has not sought summary judgment on the third element of the Darbys' claim, the reasonableness of Cantalupo's advice. Accordingly, summary judgment on the legal malpractice claims must be denied.

III.

Cantalupo also moves for summary judgment on plaintiffs' claim for punitive damages. Under District of Columbia law, in order to win punitive damages, a plaintiff must show "willful or outrageous" actions, *Spar v. Obwoya, 369 A.2d 173, 180 (D.C. 1977)*, or conduct "aggravated by evil motive, act of malice, deliberate violence or oppression." *Price v. Griffin, 359 A.2d 582, 589 (D.C. 1976)* (quotation omitted). The Darbys have not proffered any evidence of such behavior. Instead, they contend that because Cantalupo failed to provide citations to the record to support his argument, his motion is the functional equivalent of a motion to dismiss and the plaintiffs need only [*9] allege outrageous conduct. This contention is incorrect. The Supreme Court has held that "the burden of the moving party may be discharged by 'showing' -- that is pointing out to the District Court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex v. Catrett*, 477 U.S. at 325. Once that burden has been met, the nonmoving party must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id. at 323*. Because Cantalupo has pointed out the absence of evidence of outrageous behavior and because the Darbys have failed to provide any evidence on that element, Cantalupo is entitled to summary judgment on the issue of punitive damages.

IV.

At oral argument, Cantalupo moved to dismiss the second claim against him, labeled "conspiracy to defraud," on the grounds that it did not state a claim under District of Columbia law. Although at the hearing the Court was favorably disposed toward defendant on this contention, upon further consideration it seems unfair to require the plaintiffs to argue a question of law without prior notice and briefing. [*10] Accordingly, the accompanying order will set a briefing schedule on this issue.

V.

For the reasons stated above, an accompanying order will deny summary judgment on the attorney malpractice claim, enter summary judgment on the issue of punitive damages, and retain under advisement the motion to dismiss the "conspiracy-to-defraud" claim.

ORDER - January 22, 1991, Filed

For the reasons stated in the accompanying memorandum, it is this 22nd day of January, 1991, hereby

ORDERED: that Defendant Cantalupo's Motion for Summary Judgment should be, and is hereby, denied as it relates to plaintiffs' claim of attorney malpractice; and it is further

ORDERED: that Defendant Cantalupo's Motion for Summary Judgment should be, and is hereby, granted on the issue of punitive damages; and it is further

NOTICED: that defendant Cantalupo's motion to dismiss the conspiracy to defraud claim remains under advisement; and it is further

ORDERED: that defendant Cantalupo may on or before January 22, 1991, file a dispositive motion on the conspiracy to defraud claim; and it is further

ORDERED: that plaintiffs may oppose such a motion on or before January 24, 1991; and it is further

ORDERED: that the parties [*11] shall serve these motions by hand.