## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SEED COMPANY, LTD., et al. ) | |
| ) | |
| **Plaintiffs** ) | |
| ) | |
| **v.** ) | **CASE NUMBER 1:08-CV-00355-RMU** |
| ) | |
| WILLIAM F. WESTERMAN, et al. ) | |
| ) | |
| **Defendants.** ) | |

## PLAINTIFFS' OPPOSITION TO KRATZ DEFENDANTS' MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Plaintiffs Seed Company, Ltd. and Shigeru Tamai (collectively, "Plaintiffs"), hereby oppose the motion to dismiss, or in the alternative, for summary judgment, of Defendants Armstrong, Westerman, Hattori, McLeland & Naughton, LLP; Armstrong, Westerman & Hattori, LLP; Armstrong, Kratz, Quintos, Hanson & Brookes, LLP; and Kratz, Quintos & Hanson, LLP (the "Kratz defendants), and respectfully request that the Court deny Defendants' motion to dismiss, or in the alternative, for summary judgment.  Plaintiffs direct the Court's attention to the attached Plaintiffs' Memorandum of Points and Authorities in Response to Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment.  If the Court treats this motion to dismiss as a motion for summary judgment, then plaintiffs request a continuance pursuant to Fed. R. Civ. P. 56(f) to conduct discovery to obtain additional evidence in opposition to defendants' motion.

This Response is supported by the declarations of Messrs. Masatoshi Shintani and James Howard, and the exhibits attached to the declarations, which were filed with Plaintiffs' Opposition to the Westerman defendants' motion to dismiss, or in the alternative, for summary judgment (Dkt 8-3 and 8-2, respectively).  In addition, this Response is supported by the May 2, 2008 Declaration of Masatoshi Shintani and the May 5, 2008 Declaration of James Howard, filed

concurrently with these papers.  Alternative proposed Orders accompany these papers, as well.

Dated:  May 5, 2008                                    Respectfully submitted,


                                                       /s/ Creighton R. Magid_____
                                                       Creighton R. Magid (D.C. Bar No. 476961)
                                                       DORSEY & WHITNEY LLP
                                                       1050 Connecticut Avenue, N.W., Suite 1250
                                                       Washington, D.C. 20036
                                                       Telephone:  (202) 442-3555
                                                       Fax:  (202) 442-3199
                                                       magid.chip@dorsey.com

                                                       Counsel For Plaintiffs
                                                       SEED COMPANY LIMITED and SHIGERU
                                                       TAMAI


OF COUNSEL:
Paul T. Meiklejohn
Curt R. Hineline
Mark S. Carlson
DORSEY & WHITNEY LLP
U.S. Bank Centre
1420 Fifth Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone:  (206) 903-8800
Fax:  (206) 903-8820

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of May, 2008, a copy of the foregoing Plaintiffs' Opposition To Kratz Defendants' Motion To Dismiss, Or, In The Alternative, For Summary Judgment, Memorandum Of Points And Authorities In Opposition To Kratz Defendants' Motion To Dismiss, Or, In The Alternative, For Summary Judgment, Statement Of Genuine Issues Of Material Facts, and proposed Orders, was sent by first-class mail, postage prepaid to:

Christopher B. Mead, Esquire
London & Mead
1225 19th Street, N.W., Suite 320
Washington, D.C.  20036

Paul J. Maloney, Esquire
Carr Maloney, P.C.
1615 L Street, N.W., Suite 500
Washington, D.C.  20036

John H. Harman, Esquire
Coggins, Harman & Hewitt
8905 Fairview Road, Suite 600
Silver Spring, MD 20910

/s/ Creighton R. Magid

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SEED COMPANY, LTD., et al. )<br><br>**Plaintiffs** )<br><br>v. )<br><br>WILLIAM F. WESTERMAN, et al. )<br><br>**Defendants.** ) | **CASE NUMBER 1:08-CV-00355-RMU** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO KRATZ DEFENDANTS' MOTION TO DISMISS, OR, IN THE ALTERNATIVE,
MOTION FOR SUMMARY JUDGMENT**

Creighton R. Magid (D.C. Bar No. 476961)
DORSEY & WHITNEY LLP
1050 Connecticut Avenue, N.W., Suite 1250
Washington, D.C. 20036
Telephone:  (202) 442-3555
Fax:  (202) 442-31990
magid.chip@dorsey.com

Counsel For Plaintiffs
SEED COMPANY LIMITED and SHIGERU
TAMAI

OF COUNSEL:
Paul T. Meiklejohn
Curt R. Hineline
James Howard
Mark S. Carlson
DORSEY & WHITNEY LLP
U.S. Bank Centre
1420 Fifth Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone:  (206) 903-8800
Fax:  (206) 903-8820

Dated:  May 5, 2008

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................1

STATEMENT OF MATERIAL FACTS.................................................................................4

ARGUMENT ............................................................................................................................9

    A.    Legal Standards Governing Defendants' Motion to Dismiss and for Summary Judgment. ..................................................................................9

    B.    Seed's Legal Malpractice Claims Against Defendants Are Timely Under the Law of the District of Columbia. .................................................10

        1.    Under The Discovery Rule, Seed's Claims Are Timely...........................11

            a.    Defendants Have Failed to Carry Their Burden of Showing that Seed Knew It had Been Injured by Defendants at Any Point Outside the Statute of Limitations Period. ..........................11

        2.    Defendants' Lulling Comments Estop Them From Asserting the Statute of Limitations Under the "Lulling Doctrine." ...............................15

            a.    The District of Columbia Follows the "Lulling Doctrine." ...........15

            b.    The "Lulling Doctrine" Estops Defendants From Asserting the Statute of Limitations Defense.................................................17

    C.    The Continuous Representation Doctrine Applies Here to Toll the Statute of Limitations..............................................................................20

        1.    The Kratz Firm Continued to Represent Seed, Tolling the Statute of Limitations...........................................................................22

        2.    The Continuing Representation of Seed by Former Kratz Firm Attorneys Tolled the Statute of Limitations for Malpractice Committed by those Attorneys at the Kratz Firm.....................................24

    D.    The Kratz Defendants Bear Responsibility for Seed's Loss of Valuable Settlement Opportunities. ......................................................................25

    E.    If the Court Treats This Motion As a Motion for Summary Judgment, and Believes Defendants Have Carried Their Burden, Then Seed Requests a Continuance Pursuant to Rule 56(f) to Conduct Further Discovery.....................26

CONCLUSION.........................................................................................................................28

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Biomet Inc. v. Barnes & Thornburg*, 791 N.E. 2d 760 (Ind. Ct. App. 2003)................................23

*Black v. National Football League Players Ass'n*, 87 F. Supp. 2d 1 (D.D.C. 2000)....................27

*Bradley v. National Ass'n. of Securities Dealers Dispute Resolution, Inc.*, 433 F.3d 846
     (D.C. Cir. 2005) ........................................................................................................21

*Campbell v. Grand Trunk W.R.R. Co.*, 238 F.3d 772 (6th Cir. 2001) ............................................9

*Doe v. Dept. of Justice*, 753 F.2d 1092 (D.C. Cir. 1985)...............................................................9

*Gonzalez v. K-Mart Corp.*, 940 F. Supp. 429 (D.P.R. 1996)......................................................27

*Hobson v. Wilson*, 737 F.2d 1 (D.C.Cir.1984)...............................................................10, 16

*In re Deep Vein Thrombosis*, 356 F. Supp. 2d 1055 (N.D. Cal. 2005)........................................27

*Interdonato v. Interdonato*, 521 A.2d 1124 (D.C. 1987) ...................................................... *passim*

*Janicki Logging & Constr. Co., Inc. v. Schwabe, Williamson & Wyatt, P.C.*, 109
     Wash.App. 655, 37 P.3d 309 (2001)....................................................................................23

*Johnson v. Ashcroft*, 2005 U.S. Dist. LEXIS 17961 (D.D.C. August 17, 2005) ...........................9

*Knight v. Furlow*, 553 A.2d 1232 (D.C. 1989) ...............................................................11, 12, 14

*Minebea Co., Ltd. v. Papst*, 444 F.Supp.2d 68 (D.D.C. 2006) .....................................................10

*Property 10-F, Inc. v. Pack & Process, Inc.*, 265 A.2d 290 (D.C. 1970).........................15, 16, 20

*R.D.H. Communications, Ltd. v. Winston*, 700 A.2d 766 (D.C. 1997).......................20, 21, 22, 24

*Ranier v. Stuart & Freida, P.C.*, 887 P.2d 339 (Okla.Ct.App.1994)...........................................21

*Ray v. Queen*, 747 A.2d 1137 (D.C. 2000) ...................................................................................16

*Richards v. Mileski*, 662 F.2d 65 (D.C. Cir. 1981) ........................................................................9

*Stevens v. Tamai*, 366 F.3d 1325 (Fed. Cir. 2004)..........................................................................6

*Wagner v. Sellinger*, 847 A.2d 1151 (D.C. 2004)...........................................................11, 12, 14

## Sᴛᴀᴛᴜᴛᴇs ᴀɴᴅ ʀᴇɢᴜʟᴀᴛɪᴏɴs

35 U.S.C. § 119(a) ....................................................................................................6

35 U.S.C. § 146....................................................................................................7

D.C. Code § 12-301(8)........................................................................................10

## Oᴛʜᴇʀ Aᴜᴛʜᴏʀɪᴛɪᴇs

Fed. R. Civ. P. 56(f) ....................................................................................4, 21, 23

Mallen & Smith, 3 Lᴇɢᴀʟ Mᴀʟᴘʀᴀᴄᴛɪᴄᴇ § 23:18 (2008)..................................14, 22, 24

## PRELIMINARY STATEMENT

Seed's Complaint in this action focuses on two general categories of legal malpractice.[1] The first arises from the negligent failure of the Kratz defendant firms and individual defendants Westerman, Kenehan, and Kong to file a key document to protect Seed's patent rights in an interference proceeding before the U.S. Patent Office's Board of Patent Appeals and Interferences. The second arises from several settlement opportunities that Seed lost due to incorrect legal advice repeatedly given by the Kratz and Westerman defendants, to the effect that the Board's adverse ruling arising from failure to file the translation did not alter Seed's victory, could be remedied, and would not prevent Seed from obtaining U.S. patent protection for its invention. As revealed through later proceedings, this advice turned out to be incorrect as a matter of law.

The Kratz defendants have moved to dismiss both categories of malpractice in this motion.[2] They assert that the first category, related to defendants' filing failure, is barred by the statute of limitations, and adopt and join in a motion to dismiss or alternatively for summary judgment filed by the Westerman defendants. The fundamental premise of the Westerman defendants' motion is the remarkable contention that the statute of limitations commenced to run between July and October, 2002, when Seed *was the prevailing party* in the interference proceeding before the Board. In other words, Seed's attorneys initially obtained the exact result that they were retained to seek-- priority for Seed's U.S. patent application over Stevens's

---

[1]  Plaintiffs Seed Co. Ltd. and Shigeru Tamai are collectively referred to herein as "Plaintiffs" or "Seed."

[2]  The other defendants to Seed's complaint, John Kong, Ed Kenehan, William Westerman, and Westerman, Hatori, Daniels, LLP (collectively the "Westerman defendants"), filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. Kratz, Quintos & Hanson LLP, and its predecessors in interest (collectively, the "Kratz defendants") incorporated the Westerman defendants' motion by reference. Accordingly, Seed incorporates its Opposition to the Westerman defendants' motion by reference, and, where appropriate, addresses arguments from the Westerman defendants' reply that the Kratz defendants apparently have incorporated. Finally, Seed suggests that the Court combine the Westerman and Kratz defendants' motions for a joint hearing, given the overlapping issues and common facts.

competing patent application -- but according to defendants, the statute of limitations nonetheless commenced running on a malpractice claim against them.  The reason offered is that defendants lost an underlying motion that did not affect the judgment entered by the Board in Seed's favor.  If this were truly the law, then clients would be forced to file countless protective malpractice claims against their attorneys, even if their attorneys had obtained a judgment in their favor, to protect themselves from the risk of having any latent malpractice claims barred by the statute of limitations should their victory someday be overturned on appeal.

It should thus not be surprising that the Kratz defendants fall far short of carrying their burden to show that Seed's claims accrued under the discovery rule based on its *victory* before the Board.  Rather, the evidence before the Court demonstrates that the claim accrued, at the earliest, when the Federal Circuit's reversal of Seed's victory became final through the denial of Seed's petition for rehearing and rehearing *en banc* in June of 2004, which is less than three years before Kratz defendants' May 10, 2007, Tolling Agreement with Seed, rendering Seed's claims timely under the discovery rule.

Moreover, defendants' accrual argument is irrelevant under the lulling doctrine, due to the pattern of misleading and incorrect advice they continually provided regarding their own malpractice.  The Kratz defendants repeatedly advised Seed that their failure to file an English language translation of Seed's Japanese language PCT application was of no serious concern, that Seed would prevail over Steven's baseless and sanctionable appeal, and that Seed's patent rights remained protected.  Furthermore, in a May 21, 2005, email sent by the Kratz firm, Mr. Armstrong also specifically advised Seed regarding the accrual of Seed's claims and the statute of limitations in the District of Columbia.  Mr. Armstrong counseled that the statute of limitations did not commence to run on the substandard representation Seed received from defendants until the adverse Federal Circuit ruling became final between *June 10 and October 18, 2004*.  This email alone demonstrates that the Kratz defendants have not carried their burden of showing that plaintiffs' claims accrued outside the limitations period, and it, alone, would support tolling the statute of limitations at least through the May 21, 2005, date of the email.

Furthermore, Westerman, Kenehan, and Kong continuously represented Seed in relation to the correction tape dispenser patent from the date that the Seed U.S. patent application was filed, throughout the Interference, when they were members of the Kratz firm. This representation persisted after their departure to the Westerman firm in October of 2004 and the various appeals and motions that followed, up through December 2006, when Mr. Westerman finally conceded that he had been wrong in believing that the interference proceeding could be reopened. This ongoing representation of Seed by the former Kratz firm attorneys should toll the statute of limitations as to malpractice by the Kratz defendants under the continuous representation tolling doctrine.

Finally, the Kratz defendants are correct in pointing out that it was the Westerman defendants that offered incorrect advice to Seed related to Steven's settlement offers in 2004, and that this occurred after Westerman, Kenehan, and Kong had left the Kratz firm. These comments were not made in a vacuum, however. Rather, they were entirely consistent with incorrect advice previously offered by Westerman, Kong, Kenehan, and others *at the Kratz firm*. Those prior comments—which the Kratz defendants were well aware of—naturally informed Seed's decision in rejecting Stevens's settlement offers. The Kratz defendants had fiduciary duties to Seed, and it was their responsibility to inform Seed of the likely ramifications of the Kratz firm's malpractice, rather than attempting, as it is anticipated that discovery will confirm, quietly to shift liability for their malpractice to the Westerman defendants.

Seed would, of course, have itself pursued a settlement with Stevens if it had been given correct advice regarding the ramifications of the Board's refusal to reconsider its PCT application in awarding it priority. Stevens, who was interested in settling even *after* the Federal Circuit reversed Seed's victory, likely would have been quite interested on the heels of his loss before the Board. Thus, as further discovery is expected to confirm, the Kratz defendants bear responsibility for Seed's loss of settlement opportunities due to their incorrect legal advice for at least the two separate reasons articulated. Such claims are timely for the reasons already set forth herein.

3

Accordingly, the Kratz defendants' motion to dismiss, or in the alternative their motion for summary judgment, should be denied. If the Court is nonetheless inclined to dismiss some or all of Seed's claims, Seed respectfully seeks leave to amend. Alternatively, if the Court treats this motion to dismiss as a motion for summary judgment, and believes that defendants have carried their burden of showing that the statute of limitations may bar some or all of Seed's claims, then Seed respectfully requests a continuance pursuant to Fed. R. Civ. P. 56(f), to conduct discovery to obtain additional evidence in opposition to the Kratz defendants' motion. Indeed, if there is anything that the rather complex factual discussions in the briefs before the Court have demonstrated, it is that questions of fact abound.

## STATEMENT OF MATERIAL FACTS

Seed included a detailed Statement of Material Facts in support of its Opposition to the Westerman defendants' motion. Seed incorporates that Statement by reference, but highlights salient facts here for the convenience of the Court. In March 1993, plaintiff Seed Company Ltd., a small Japanese company, engaged the Kratz firm's predecessor, Armstrong, Westerman, Hattori, McLeland & Naughton, LLP, to procure a U.S. patent for a type of correction tape dispenser.[3] The firm filed a patent application, United States Patent Application No. 08/196,839 (the "'839 Application"), on behalf of Seed on February 15, 1994. On May 9, 1997, the United States Patent and Trademark Office ("USPTO") declared an interference proceeding ("Interference") between the '839 Application and another patent referred to herein as the "Stevens Patent," to determine which patent had priority of invention.

From the outset, defendants Westerman and Kong represented Seed at the Kratz Firm in the Interference. Mr. Westerman acted as lead attorney, with Mr. Kong providing substantial assistance. *See, e.g.*, May 21, 1997, Letter from Westerman. During this representation,

---

[3] Between March 1993 and the present, there were several successors in interest to the Armstrong Firm, including Armstrong, Westerman & Hattori, LLP; Armstrong, Kratz, Quintos, Hanson & Brookes, LLP; and, finally, Kratz, Quintos & Hanson, LLP. Unless otherwise specified, these defendants are collectively referred to herein as the "Kratz firm."

Westerman, Kong, and the Kratz firm made the critical error of failing to file with the Board a required English language translation of Seed's Japanese language PCT '947 application. This failure proved costly, as it would have guaranteed Seed an earlier priority date than the Stevens patent owner could produce in support of his competing patent application. But for these defendants' failure to file the translation, Seed would have won the Interference, secured its patent rights, and eliminated the patent of its competitor.

On June 25, 2002, the Board issued its ruling in the Interference.[4]  The Board granted a *victory* to Seed, and concluded that Seed had priority over the Stevens patent.[5]  In arriving at its ruling, however, the Board also concluded that Seed did not receive the benefit of its PCT '947 Application date because of defendants' failure to file an English language translation of that Application. The Board instead accorded Seed the benefit of the filing date of its JP '371 Japanese patent application. This ultimately proved critical, since Seed was later denied the benefit of the filing date of its Japanese patent application, which resulted in Stevens winning the Interference.[6]

As demonstrated by an April 2003 letter submitted by the Westerman defendants for the first time in their reply, Seed's representative, Mr. Itami, expressed concern over the Board's ruling on Seed's motion to reconsider, and asked for additional details.[7]  In response, the Kratz defendants and Westerman, Kong, and Kenehan at the time, attorneys in the Kratz firm, repeatedly emphasized to Seed that it had won, and downplayed the significance of the PCT

---

[4]  Complaint, ¶ 23; Shintani Dec. Ex. 11, Decision at p. 1.

[5]  Shintani Dec. Ex. 11, Decision at p. 29; Ex. 12 at p. 1.

[6]  Shintani Dec. Ex. 11, Decision at p. 22; Ex. 12 at p. 2.

[7]  April 25, 2008 Westerman Declaration, Ex. 1. As a procedural matter, this document should be stricken, given that it is new material submitted in reply. Seed, nonetheless addresses it herein because it is apparently incorporated by the Kratz defendants by reference. The piecemeal presentation of such documents demonstrates the burden defendants attempt to impose on the Court through their motion, and the less than full record available to address the many underlying factual issues. There are undoubtedly additional letters, emails, and deposition testimony that will be developed in discovery related to these events.

application, because Seed was the prevailing party.  These assertions continued through a string of letters from the Kratz firm that are quoted at length and included as exhibits in support of Seed's Opposition to the Westerman defendants' motion.  The letters stressed the significant victory that Seed's attorneys had obtained, counseled against any effort by Seed to appeal, and advised Seed that its rights remained solidly protected.

This message remained consistent during Stevens's May 12, 2003, appeal of the Board ruling to the Federal Circuit.  Kratz firm attorneys counseled Seed that this appeal was baseless.[8] Later, in October 2003, the three Kratz firm attorneys who were principally responsible for representing Seed in the interference, Westerman, Kong and Kenehan, left the Kratz firm and formed their own law firm, Westerman, Hattori, Daniels & Adrian, LLP.  (Westerman, Kong, Kenehan and the law firm of Westerman, Hattori, Daniels & Adrian, LLP are collectively referred to herein as the "Westerman defendants").  Seed allowed the Westerman defendants to continue to lead the representation in matters relating to the interference proceeding, but the Kratz defendants continued to represent Seed in all other intellectual property matters.[9]

The Westerman defendants continued the familiar "victory" refrain initiated at the Kratz firm, and advised Seed that Stevens's appeal was so lacking in merit that Seed might be entitled to attorney's fees.  The Federal Circuit disagreed, however, and on May 4, 2004, it affirmed the portion of the Board's ruling finding that Seed was not entitled to the benefit of the priority date of its Japanese language PCT '947 Application, due to defendants' failure to file the required translation into English.[10]  The Federal Circuit then reversed the ruling that Seed was entitled to the benefit of the earlier JP '371 Japanese application.  The court ruled that 35 U.S.C. § 119(a) precluded Seed from directly claiming the benefit of the JP '371 application because the JP '371

---

[8]  Complaint, ¶ 23; Shintani Dec. Ex. 17, Notice of Appeal at p. 1.

[9]  Hanson Dec. Ex. A; Howard Dec. at ¶ 6.

[10]  Complaint, ¶ 28; Shintani Dec. Ex. 20 at p. 1; *Stevens v. Tamai*, 366 F.3d 1325 (Fed. Cir. 2004).

application was filed more than one year before the '183 application, of which the pending US '839 application was a continuation-in-part.

On May 12, 2004, the Westerman defendants wrote to Seed, indicating that they were "in the process of drafting a petition for rehearing *en banc* (including a petition for reconsideration by the Panel)," *and that their firm would "absorb the cost for preparing and filing such a Petition*." May 12, 2004 Letter from Kratz Defs. to Pls. (emphasis added).[11] The Westerman defendants reassured Seed "that there is sound legal basis for filing a Petition for Rehearing En Banc." On June 10, 2004, however, the Federal Circuit issued its denial of the petitions for rehearing.[12]

On July 8, 2004, after the Federal Circuit remanded the Interference proceeding to the Board, the Westerman defendants filed a petition on behalf of Seed to reopen the Interference.[13] The Westerman firm also advised Seed that other options existed for overturning the result of the Federal Circuit's ruling, advising, "Even if the Petition [before the Board] is denied for whatever reason, and judgment is finally entered against Tamai, there are still other options for appeal, such as to the District Court under 35 U.S.C. § 146." July 27, 2004 Letter from Kratz Defs. to Pls. at 2.[14] The Westerman defendants closed the letter by emphasizing that "[w]e are continuing to take action. As mentioned above, a Second Petition [to the Board] was filed on July 23, 2004." *Id.* at 3. The Westerman defendants also filed a petition for *certiorari* to the United States Supreme Court. Throughout this process the Kratz defendants and Westerman defendants consistently and incorrectly advised that Seed's patent rights could be protected if necessary through litigation in U.S. District Court, or by reopening the Interference before the Board. These efforts continued through December 2006, when the Westerman defendants finally admitted that they had been wrong.

---

[11]  Shintani Dec. Ex. 21 at p. 1.
[12]  Shintani Dec. Ex. 23 at p. 1.
[13]  Shintani Dec. Ex. 24 at p. 1.
[14]  Shintani Dec. Ex. 25 at p. 2.

It is also important to note for the present motion that on May 21, 2005, defendant James

E. Armstrong wrote to Mr. Kenji Itami, Seed's representative, regarding the Seed Interference.

Mr. Armstrong forthrightly suggested that Seed consider a legal malpractice claim based on the

representation it received from the Kratz and Westerman firms, stating:

> I still believe that the case is ripe for immediately demanding a
> substantial monetary settlement.

May 21, 2005, letter from Kratz defendants to Seed.[15]  He then explained the statute of

limitations to Mr. Itami, and advised Mr. Itami that Seed had not been damaged until between

June 10, 2004, when the Federal Circuit denied Seed's petitions for rehearing, and October 18,

2004, when the Supreme Court denied the petition for *Certiorari*, stating:

> Under Washington, D.C.law (and the laws of every state) there are
> time limits (called statutes of limitation) within which claims for
> money damages can be made in court.  The damage occurred
> according to the [Kratz firm's] insurance company letter when the
> Federal Circuit denied rehearing on May 18, 2004 (actually the
> Federal Circuit denial was published on June 10, 2004 and the
> Supreme Court petition was denied on October 18, 2004).  Any
> subsequent action by the U.S. PTO is simply procedural and will
> have not [sic] effect on the loss of right which resulted from the
> Federal Circuit decision of May 4, 2004 and became final after all
> appeals were exhausted (October 18, 2004).
>
> According to D.C. law, legal actions for injury to personal property
> (in this case, a patent) must be brought within 3 years from the date
> on which the injury occurred.  Therefore, now the time is ripe to
> make a demand.

*Id*.  Thus, Mr. Armstrong admitted on behalf of defendants that the earliest date that Seed's

claims could be said to accrue is the date that the insurance carrier incorrectly thought the

Federal Circuit denied rehearing *en banc*, May 18, 2004, rather than the actual date of this denial,

June 10, 2004.  Regardless, all of the listed accrual dates are within three years of the tolling

---

15  May 2, 2008, Shintani Dec. Ex. 1.

agreement executed by the Kratz defendants, which tolled any claims for legal malpractice that

Seed may have against the Kratz defendants effective May 10, 2007.[16]

## ARGUMENT

**A.    Legal Standards Governing Defendants' Motion to Dismiss and for Summary Judgment.**

Courts in this Circuit are particularly reluctant to terminate a plaintiff's right to redress

for injuries caused by a defendant on a motion to dismiss based on the statute of limitations due

to the inherent factual questions that arise.  As the Court of Appeals for the D.C. Circuit said in

*Richards v. Mileski*, 662 F.2d 65 (D.C. Cir. 1981):

> We do not hold that the use of a motion to dismiss is always improper to raise a
> statute of limitations defense, but we do suggest that a responding party often
> imposes an undue burden on the trial court and impedes the orderly administration
> of the lawsuit when he relies on a motion to dismiss to raise such an affirmative
> defense.

*Id.* at 73.  Thus, given that statute of limitations arguments typically involve issues of contested

fact—as amply demonstrated by the instant briefing—"the court should grant a motion to

dismiss only if the complaint on its face is conclusively time-barred."  *Johnson v. Ashcroft*, 2005

U.S. Dist. LEXIS 17961, *14-15 (D.D.C. August 17, 2005), (*citing Smith-Haynie v. District of

Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998) and *Doe v. Dept. of Justice*, 753 F.2d 1092, 1115

(D.C. Cir. 1985)); *Campbell v. Grand Trunk W.R.R. Co.,* 238 F.3d 772, 775 (6th Cir. 2001)

(burden is on defendant to show statute of limitations has run).  Moreover, when, as here, the

wrong remains undiscovered because it is by its nature "self-concealing," or because the

defendant has taken affirmative steps to conceal it, the defendant bears the burden of proving that

---

[16]  Plaintiffs timely filed the Complaint in this action, pursuant to the terms of this Tolling
Agreement, on February 28, 2008.  The Tolling Agreement expired by its own terms on
December 31, 2007; however, it included a provision that "[u]pon termination of the
Agreement, any lawsuit commenced by Seed against the [defendants herein] shall, as to all
claims preserved by this agreement, be considered timely commenced if a Complaint is filed
within sixty (60) days following termination of the Agreement."  The Tolling Agreement
preserved all claims that were not already time-barred as of May 10, 2007.  *See* May 5, 2008
Howard Dec. Ex. 1.

the plaintiff was on inquiry notice of its claims.  *See Hobson v. Wilson,* 737 F.2d 1, 35

(D.C.Cir.1984) ("When tolling is proper because the defendants have concealed the very cause

of action . . . they have the burden of coming forward with any facts showing that the plaintiff

could have discovered . . . the cause of action if he had exercised due diligence."); *Minebea Co.,*

*Ltd. v. Papst*, 444 F. Supp.2d 68, 174 (D.D.C. 2006) (same).

## B. Seed's Legal Malpractice Claims Against Defendants Are Timely Under the Law of the District of Columbia.

In the District of Columbia, a legal malpractice action must be filed within three years

after the right to maintain the action accrues.  D.C. Code § 12-301(8).  Here, it is undisputed that

the Kratz Defendants executed a tolling agreement that preserves all claims that had not been

extinguished by the statute of limitations as of May 10, 2007.  Thus, Seed's claims are timely so

long as they accrued on or after May 10, 2004, with respect to the Kratz defendants.[17]  For three

separate reasons, any of which is sufficient to deny the Kratz defendants' motion, Seed's claims

did not accrue against the Kratz defendants until well after May 10, 2004.

First, the District of Columbia applies the "discovery rule" to determine when a cause of

action accrues for purposes of the statute of limitations.  Here, plaintiffs' did not discover all

three elements necessary to trigger accrual -- their injury, its cause, and the fact that the Kratz

defendant's had wronged them -- until well after May 10, 2004.  Second, a string of

representations — notably including the Kratz defendants' letter to plaintiffs on May 21, 2005, in

which Mr. Armstrong opines on accrual dates — kept the statute of limitations from beginning to

run until sometime between June 10 and October 18, 2004 at the earliest.  Under the "lulling

doctrine," defendants are estopped from asserting that the statute of limitations began to run prior

to these dates, which easily render Seed's claims timely.  Third, the Kratz defendants continued

to represent Seed until at least May 21, 2005, and Westerman, Kenehan, and Kong continued to

---

[17] For the Westerman defendants, the operative date is May 2, 2004.

represent Seed through 2006, tolling the statute of limitations under the continuous representation tolling doctrine due to either of these ongoing representations.

### 1.    Under The Discovery Rule, Seed's Claims Are Timely.

The discovery rule governs the issue of when a cause of action for legal malpractice accrues. *Knight v. Furlow*, 553 A.2d 1232, 1234 (D.C. 1989). Under the discovery rule, a claim does not accrue until a plaintiff knows, or in the exercise of reasonable diligence should know, of: (1) an injury, (2) its cause, and (3) some evidence of wrongdoing. *Wagner v. Sellinger*, 847 A.2d 1151, 1154 (D.C. 2004). There is no bright line rule in the District of Columbia that knowledge sufficient to cause a malpractice action to accrue occurs upon the filing of an appeal. Rather, it is well established that "a client may not have reason to discover malpractice, in some instances, until years after an appeal has been resolved." *Knight,* 553 A.2d at 1236. This inquiry is inherently factual. D.C. courts have repeatedly emphasized that they do not "wish to encourage clients to rush prematurely into court, before their attorney's malpractice can be proved." *See, e.g., Knight,* 553 A.2d at 1236. Thus, as in all discovery rule cases, "the inquiry is highly fact-bound and requires an evaluation of all of the plaintiff's circumstances." *Id.*

### a.    Defendants Have Failed to Carry Their Burden of Showing that Seed Knew It had Been Injured by Defendants at Any Point Outside the Statute of Limitations Period.

Relying on the Westerman defendants' motion, the Kratz defendants argue that Seed was on notice that it had suffered injury when (1) the Board ruled *in favor of Seed* and granted it a victory in the interference without relying on the Japanese language PCT '947 Application; and (2) Seed incurred approximately $4,000 in legal fees in October 2002, when it moved for reconsideration of the portion of the Board's ruling as to the PCT '947 Application. They argue that, although the Board's ruling in the interference was a complete victory for Seed over Stevens, it "carried the seeds of its own dismissal" because "losing the benefit of the PCT '947 Application broke the required one-year chain" between the JP '371 Application and the PCT '947 Application. Westerman Kratz Defs.' Mem. at 7.

The fundamental premise of this argument — that a *prevailing* litigant has been "injured" if an underlying mistake is made in the litigation, so long as that mistake later results in a reversal on appeal on some future date — is absurd. If this were correct, prevailing litigants would routinely be forced to sue their attorneys to insulate themselves against the possibility that an appellate court might reverse their victory someday in the future. Indeed, win or lose, a client would have to file protective claims in every case to avoid statute of limitations issues.

That is nonetheless exactly what defendants argue for here. Seed engaged defendants to litigate the Interference between Seed's US '839 Application and the Stevens patent. The object of that litigation was to secure priority for Seed over Stevens. On June 25, 2002, the Board ruled in Seed's favor, *granting* priority to Seed's US '839 Application and invalidating the Stevens patent. Seed thus *won* the Interference, and at that point in time, was clearly not injured. The defendants now argue that Seed should have nevertheless sued them on the heels of that victory. It is difficult to believe that such a lawsuit would have been accepted as a reasonable decision at the time that defendants prevailed on Seed's behalf.

In support of their accrual argument, defendants rely on an entirely speculative, contingent "harm" that defendants allege Seed suffered at the time the Board ruled. The hypothetical nature of Seed's injury is readily apparent on reflection. Since Seed was the prevailing party in the Interference, no "injury" of any kind flowed from defendants' failure to file an English language translation of the PCT '947 Application. Rather, Seed *won*, and effectively extinguished the patent of its competitor. Any actual injury was contingent on (1) Stevens filing an appeal to the Federal Circuit based on the PCT '947 Application; (2) the Federal Circuit reversing the Board based on defendants' failure to file a translation; (3) the Federal Circuit denying petitions for rehearing; and (4) the Federal Circuit's decision becoming final, binding, and unappealable. Such speculative harm, contingent upon uncertain future events, does not constitute injury under the discovery rule. *Knight*, 553 A.2d at 1235; *Wagner*, 847 A.2d at 1155.

Furthermore, contrary to defendants' present argument that Seed had been injured by the Board's failure to accord Seed the benefit of the PCT '947 Application's filing date, defendants consistently told plaintiffs the *opposite*.  These assurances were made by Messrs. Westerman, Kong and Kenehan *while they were with the Kratz firm*.  They repeatedly reassured Seed that it had *not* suffered any injury as a consequence of the portion of the Board's ruling regarding the PCT '947 Application.  Indeed, the Kratz defendants specifically assured Seed that upon remand of the Board's favorable ruling to the Examiner, the USPTO would allow a patent to issue on the pending US '839 Application despite the Board's ruling on the PCT '947 Application:

> Tamai has priority with respect to Stevens and Stevens cannot be used as a reference against Tamai during the further prosecution of the Tamai application.  Thus, we see no reason why the Tamai prosecution should not continue before the Patent Office (and eventually be allowed).

March 21, 2003 Letter from Kratz Defs. to Pls. at 2.[18]

The Kratz defendants also repeatedly assured Seed that the Board's failure to accord Seed the benefit of the PCT '947 Application would have no adverse consequences to Seed in any future patent litigation:

> A Federal District Court (which hears patent cases) is not required to follow the rules of the Board of Patent Appeals and Interferences.  *Accordingly, we believe that a Federal District Court could conclude that there is sufficient support for the claims in the Tamai application.*

March 21, 2003 Letter from Kratz Defs. to Pls. at 2 (emphasis added).[19]  They reiterated this point again a month later:

> PTO rules apply only towards the claiming of priority benefits *during an interference*, and are not applicable during any future patent infringement lawsuits in federal district court.  <u>The present Decision ends the Interference between Stevens and Tamai.</u>  ***The Board's denial of benefits to the PCT date for lack of compliance with certain procedural Interference rules should not affect the substantive priority of our application if we later enforced a patent issuing therefrom against a third party.***

---

[18]  Shintani Dec. Ex. 15 at p. 2.

[19]  *Id.*

April 18, 2003 Letter from Kratz Defs. to Pls.[20]  Even after Stevens appealed the Board's decision, the Kratz defendants assured Seed that the appeal was frivolous:

> Enclosed please find a copy of the Brief for Appellant Stevens, filed August 21, 2003 at the U.S. Court of Appeals for the Federal Circuit.  We have been working on our response thereto.  We will be filing our Brief for Appellee Tamai before the end of September.  We are also considering demanding attorney's fees from party Stevens for filing a frivolous appeal.

September 9, 2003, letter from Kratz Defs.[21]

Thus, applying D.C. precedent, Seed did not sustain actual, non-contingent injury until, at the *earliest* June 10, 2004, when its victory before the Board was irrevocably reversed by the Federal Circuit's denial of Seed's petitions for rehearing and for rehearing *en banc,* or alternatively, on October 26, 2004, when defendants informed Seed that the Supreme Court had denied *Certiorari*.  *See Wagner*, 847 A.2d 1151 ("an attorney's negligent error in the prosecution of a lawsuit 'may create only the potential for injury.'  If that potential is not realized until later — if its occurrence depends on a 'contingent or future event' — then the injury is not sustained until the contingent or future event occurs").

Furthermore, given defendants' erroneous affirmative representations that Seed could continue prosecution of its pending patent application even if it *lost* the Stevens appeal, Seed was not on notice of its injury or defendants' wrongdoing until defendants finally notified Seed that their advice on this point was incorrect by letter dated December 4, 2006.[22]  *See, e.g.*, *Knight*, 553 A.2d at 1235 (a claim may accrue either before or *"years after an appeal has been resolved."* ) (emphasis supplied); Mallen & Smith, 3 LEGAL MALPRACTICE, § 23:18 (2008) (same).  Until Seed had reasonable notice that it was injured by its attorney's "wrongdoing," its claims could not accrue under the discovery rule.

---

[20]  Shintani Dec. Ex. 16 at p. 3 (emphasis in bold italics added).

[21]  Exhibit B to May 5, 2008 Howard Dec.

[22]  Shintani Dec. Ex. 30 at p. 1.

Finally, the Westerman defendants offer a hypothetical in support of their motion in their Reply brief. Presumably the Kratz defendants purport to incorporate this hypothetical by reference; thus it is briefly addressed here. Defendants ask the Court to imagine that (1) the Board had granted Seed's motion to reconsider (ruling that it had erred when it held that Seed should be denied the benefit of the filing date of the PCT patent application for failure to file an English translation); (2) Seed won the appeal in the Federal Circuit (affirming the Board's ruling on reconsideration); and (3) Seed then sued defendants to recover the $4,000 spent on the motion to reconsider. Defendants argue that this hypothetical illustrates that a claim for malpractice arising from defendants' failure to file the translation of the PCT application would accrue at the time of the Board's ruling on the motion to reconsider, thereby proving that Seed's claims are untimely. The faulty premise of this hypothetical, however, is that there would no negligence by defendants to support a malpractice claim if the Board had *admitted that it had erred* by granting Seed's motion for reconsideration, and the Federal Circuit had agreed by affirming the Board.

Under these circumstances, the Kratz defendants have fallen far short of carrying their burden of demonstrating that Seed's claims accrued on June 25, 2002, when Seed prevailed in the interference, or on any other date that would render Seed's claims untimely.

### 2. Defendants' Lulling Comments Estop Them From Asserting the Statute of Limitations Under the "Lulling Doctrine."

#### a. The District of Columbia Follows the "Lulling Doctrine."

In the District of Columbia, "[a] defendant is estopped from asserting the statute of limitations as a bar to plaintiff's action if he has done anything that would tend to lull the plaintiff into inaction and thereby permit the statutory limitation to run against him." *Interdonato v. Interdonato*, 521 A.2d 1124, 1135 (D.C. 1987) (*quoting Property 10-F, Inc. v.*

15

*Pack & Process, Inc.*, 265 A.2d 290, 291 (D.C. 1970)).[23]  This doctrine "is frequently applied where the conduct of a fiduciary is alleged to have lulled the plaintiff into failure to protect his interests within the statutory limitations period."  *Ray v. Queen*, 747 A.2d 1137, 1142 (D.C. 2000).  Determining whether a defendant's statements lulled a plaintiff into not filing a cause of action presents issues of fact that preclude summary judgment.  *Interdonato*, 521 A.2d at 1135 (questions of fact as to nature of defendants' statements and whether they lulled plaintiff for 15 years precluded summary judgment).  Just such questions of fact abound here, where it is apparent that lulling statements were made by various defendants, commencing immediately after the Board ruling, and continuing unabated for several years.  This included statements in 2005 by the Kratz firm, through Mr. Armstrong, *that defendants had until at least June 10, 2007, to assert a claim*, and assertions into 2006 by the Westerman defendants that the Interference could still be reopened and Seed's patent rights protected.

Furthermore, when a wrong remains undiscovered because the defendant has taken affirmative steps to conceal it, it is the defendant that bears the burden of proving that the plaintiff was on inquiry notice of its claims.  *See Hobson v. Wilson,* 737 F.2d 1, 35 (D.C.Cir.1984) (quoting *Richards v. Mileski,* 662 F.2d 65, 71 (D.C.Cir.1981) ("When tolling is proper because the defendants have concealed the very cause of action . . . they have the burden of coming forward with any facts showing that the plaintiff could have discovered . . . the cause of action if he had exercised due diligence.")).  Defendants fall far short of carrying their burden here, even if the fact that additional lulling comments are almost certain to be developed in discovery is for the moment ignored.

---

[23] The Westerman defendants, in their reply, argue that Seed somehow failed to cite this controlling authority to this Court.  Seed, however, in its opposition to the Westerman defendants' motion, cited not only *Interdonato*, which is one of the District of Columbia's seminal lulling cases, but also specifically noted that *Interdonato* cited and discussed *Property 10-F, Inc*.  Given that *Property 10-F Inc.* is a four paragraph long opinion from 1970, *Interdonato* offers far greater guidance on this issue.

**b.    The "Lulling Doctrine" Estops Defendants From Asserting the Statute of Limitations Defense.**

Defendants assert that plaintiffs had notice of a claim against them when (1) the Board handed plaintiffs a victory in the Interference while at the same time denying them the benefit of the filing date of the PCT '947 Application and (2) plaintiffs incurred at most $4,000 in legal fees in October, 2002, moving the Board to reconsider its ruling as to the PCT '947 Application. Yet to argue that Seed should have been on notice of this claim as of October, 2002, defendants themselves would logically have had to have been on notice.  Their active representations to Seed, however, denied the existence of any claim, and constituted independent acts of malpractice with each affirmative misrepresentation.  Defendants emphasized that the most important fact was that Seed had prevailed before the Board; that Seed would not suffer any adverse consequences from the Board's ruling as to the PCT '947 Application; that defendants had done nothing wrong in the Interference; that the Board's and Federal Circuit's rulings as to the PCT '947 Application were erroneous; and that Seed would ultimately prevail either through the appellate process, in federal district court, or by reopening the interference proceeding.

Seed has submitted this correspondence that affirmed Seed's "victory" and assured Seed that its patent application remained safe and viable in support of its Opposition to the Westerman defendants' motion.[24]  Each one of these instances in which incorrect legal advice was provided to Seed is an independent instance of malpractice committed by the Kratz and Westerman defendants, and conveyed the message that the Kratz and Westerman defendants had not injured Seed, let alone caused wrongful injury of which Seed should have been aware.  Because those materials and Seed's Opposition have been incorporated by reference, they will not be repeated verbatim, but all of these documents show that under the lulling doctrine, Seed's claims are timely asserted.

_____

[24] *See* Masatoshi Shintani Declaration in opposition to Westerman defendants' motion to dismiss.

There is also another communication that is highly relevant to the lulling doctrine, and deserves special emphasis, as it renders Seed's claims timely, amounts to independent malpractice if incorrect, and raises numerous additional questions of fact for discovery. On May 21, 2005, defendant James E. Armstrong, III, then the primary named partner of the Kratz Firm, wrote to Mr. Kenji Itami, Seed's representative, regarding the Interference. Mr. Armstrong advised Seed that it should consider demanding a substantial sum from the firms' insurance carriers. He explained the statute of limitations to Mr. Itami, advising Mr. Itami that under D.C. law, Seed had not been damaged until sometime between June 10, 2004, when the Federal Circuit's denial of Seed's petitions for rehearing was published, and October 18, 2004, when the Supreme Court denied the petition for *certiorari*. Mr. Armstrong was very clear on these points, opining:

> Under Washington, D.C. law (and the laws of every state) there are time limits (called statutes of limitation) within which claims for money damages can be made in court. The damage occurred according to the [Kratz firm's] insurance company letter when the Federal Circuit denied rehearing on May 18, 2004 (actually the Federal Circuit denial was published on June 10, 2004 and the Supreme Court petition was denied on October 18, 2004). Any subsequent action by the U.S. PTO is simply procedural and will have not [sic] effect on the loss of right which resulted from the Federal Circuit decision of May 4, 2004 and became final after all appeals were exhausted (October 18, 2004).

> According to D.C. law, legal actions for injury to personal property (in this case, a patent) must be brought within 3 years from the date on which the injury occurred. Therefore, now the time is ripe to make a demand.

Exhibit 1 to May 2, 2008 Shintani Dec. The accrual dates listed by Mr. Armstrong — including what he noted was the insurance carriers' mistaken belief that the Federal Circuit denied rehearing on May 18, 2004 — are easily within three years of the May 10, 2007, tolling agreement executed by the Kratz defendants. At minimum, Mr. Armstrong's representations raise a question of fact as to their effect on Seed. *See Interdonao*, 521 A.2d 1124, 1135-36 (D.C. 1987) (promises by defendant raised question of fact as to whether their "lulling" nature tolled the statute of limitations for 15 years).

18

Accordingly, the circumstances here show that (1) Seed was a foreign language client relying heavily on defendants' advertised patent expertise; (2) Seed was advised by the Kratz defendants and Westerman defendants that it was victorious in the Interference proceeding; (3) Seed was assured by the Kratz defendants, Westerman, Kenehan, and Kong that the Board's ruling as to the PCT '947 Application had not injured Seed; (4) the Kratz defendants and the Westerman defendants consistently denied any wrongdoing in the Interference; (5) Seed was assured by at least the Westerman defendants that an appeal by Stevens to the Federal Circuit was frivolous, and might entitle Seed to attorney's fees; (6) Seed was assured by at least the Westerman defendants that the Federal Circuit was likely to affirm the Board's ruling in Seed's favor; (7) Seed was told by the Kratz defendants and Westerman defendants that the Board's rulings as to the PCT '947 Application were erroneous; (8) Westerman, Kenehan, and Kong continued the Kratz firm's assurances when they opened the Westerman firm, advising that Seed's rights remained protected in numerous respects; (9) the primary named partner for the Kratz firm advised Seed that under D.C. law the three year statute of limitations on any legal malpractice claim did not begin to run until between June 10 and October 18, 2004; and (10) the Westerman defendants continued to advise Seed that the Interference could be reopened and/or the patent prosecution resumed even after an adverse ruling by the Federal Circuit, and Seed's patent application could thereby be preserved, until December of 2006.

On these facts, it is difficult to conceive of a more appropriate case for applying the "lulling doctrine," estopping all the defendants, including the Kratz defendants, from asserting that the statute of limitations bars plaintiffs' claims. As in *Interdonato*, at minimum a question of fact exists as to the lulling effect of defendants statements. *Interdonato*, 521 A.2d at 1135-36 (question of fact existed precluding summary judgment as to whether defendant's statements

lulled plaintiff).[25]  Any other result would be a fundamental miscarriage of justice, as the defendants would be allowed to take advantage of a foreign client through resort to the statute of limitations where the client was lulled by representations that problems could be fixed, that there were no claims, and even if there were, that there was more than enough time to assert them.

### C.    The Continuous Representation Doctrine Applies Here to Toll the Statute of Limitations.

Under the continuous representation rule, "when the injury to the client may have occurred during the period the attorney was retained, the malpractice cause of action does not accrue until the attorney's representation concerning the particular matter in issue is terminated." *R.D.H. Communications, Ltd. v. Winston*, 700 A.2d 766, 768 (D.C. 1997).  The continuous representation rule is based on the sound policy that "a client should not be placed in the untenable position of suing his attorney while the latter continues to represent him." *Id.*  Actual knowledge of an attorney's error is irrelevant to the analysis.  *Id.* at 772-73.  In adopting the rule, the District of Columbia Court of Appeals emphasized the importance of allowing a client with knowledge of a potential error to decide whether to continue the relationship by allowing the attorney to attempt to remedy it.  *Id.* at 768-79 (citation omitted).  Given the broad parameters of the rule, the question of when the representation terminated is typically a question of fact.  *See id* at 768.

Defendants appear to realize that their continued representation of Seed renders Seed's claims timely under this rule, unless they can argue for some form of exception to the continuous representation doctrine.  Their only effort to do so, however, is based on a dogged reliance on

---

[25] The Westerman defendants' reply argues that in certain instances discrete lulling may only temporarily toll the statute of limitations, as observed in *Property 10-F, Inc. v. Pack & Process, Inc.*, 265 A.2d 290, 291 (D.C. 1970).  However, in circumstances like those present here, where the lulling actively continued for an extended period of time, and even involved an opinion offered on behalf of the Kratz defendants as to when Seed's claims could timely be asserted, cases such as *Interdonato* show that at minimum a question of fact exists under D.C. law as to the effect of defendant's lulling statements.  *See Interdonato v. Interdonato*, 521 A.2d 1124, 1135-36 (D.C. 1987) (question of fact as to whether statute was tolled for fifteen years under lulling doctrine).

inapposite, passing *dicta* from *Bradley v. National Ass'n. of Securities Dealers Dispute Resolution, Inc.*, 433 F.3d 846 (D.C. Cir. 2005), and a determined effort to misread *R.D.H. Communications*.

Defendants' argument is that despite all language and policy rationale in *R.D.H. Communications* to the contrary, what it actually said is that an appeal cuts off continuous representation rule tolling. However, the *R.D.H. Communications* court made it abundantly clear that it was applying an extremely broad version of the continuous representation rule. *R.D.H. Communications*, 700 A.2d at 772-73 (rejecting any limits on the rule due to the client's knowledge of the malpractice). Indeed, the *R.D.H. Communications* court explicitly *rejected* formulations of the continuous representation rule that would have limited tolling of the statute of limitations only to appeals in which the client did not know of the wrongdoing at the time of the appeal. *Id.* at 773 n.5 (citing and rejecting *Ranier v. Stuart & Freida, P.C.,* 887 P.2d 339 (Okla.Ct.App.1994)). The *R.D.H. Communications* court also stressed that the rule it was applying automatically took into account the policies cited in support of the exhaustion of appeal rule, applied in other jurisdictions, in which the rule tolls the limitations period for *all* appeals. *Id.* at 771. The court, moreover, stated explicitly that under the D.C. rule, a plaintiff who learned of malpractice prior to the exhaustion of appeals could wait to see if the attorney could correct or mitigate his errors before filing a claim. *Id.* at 770. The court's discussion of this issue is lengthy, but on any critical reading of the case, it is clear that the continuous representation rule in the District of Columbia extends to any continuing efforts by an attorney to remedy a mistake, including appeals.

Furthermore, there appears to be no authority anywhere — let alone in the District of Columbia — suggesting that in a continuous representation rule jurisdiction, the appeal by a losing party of a prevailing party's victory cuts off tolling for the prevailing party. *See* Mallen & Smith, 3 LEGAL MALPRACTICE § 23:18 (2008) (in a continuous representation rule jurisdiction, accrual is deferred until the relationship is terminated, and *this may extend through years of trial and appellate review*) (emphasis added). Such a rule would have the perverse effect of

21

disrupting the relationship between the client and his or her prevailing attorney, and encouraging a proliferation of malpractice claims that otherwise might never have been asserted.

Finally, even if defendants were correct, and an appeal could cut off tolling, that is far from the end of the issue in the present case. According to the many letters that defendants wrote to Seed, which were submitted in Seed's Opposition to the Westerman motion, the Federal Circuit appeal was not particularly important in preserving Seed's legal rights. Rather, defendants repeatedly advised that there were numerous other avenues, before the Board and in federal district court, where Seed could protect its patent rights. According to defendants, the appeal was merely a temporary detour in their representation of Seed in the interference proceeding. In other words, the ongoing representation of Seed by the Westerman defendants in the interference action continued before and after the appeal.

A similar point was made by the *R.D.H. Communications* court in concluding that the continuous representation rule applied to an attorney's efforts to remedy a fatal filing error that is strikingly similar to the one at issue in the instant litigation:

> In this case, there could be no clearer proof that Winston and the firm were attempting to remedy the error. Winston informed R.D.H. that his law firm might have lost the financial certification page, and in fact, assured R.D.H. that his firm would 'do everything we can to get the application reinstated.' Undoubtedly, at this point R.D.H. could have fired Winston and hired a new attorney to both get the application approved and file a malpractice claim against Winston and his firm. However, R.D.H.'s decision to stay the course with Winston is not one this court should second-guess in relation to the statute of limitations issue.

*Id.* at 769. Likewise, this rule would also apply to Seed's decision to stay the course with defendants in the instant case while they continued their efforts to protect Seed's U.S. patent rights in manners wholly unrelated to any appeal, such as through further Board proceedings and through federal district court litigation.

### 1.    The Kratz Firm Continued to Represent Seed, Tolling the Statute of Limitations.

The very letter that the Kratz defendants submit to contend that there was no longer any attorney-client relationship between Seed and the Kratz firm as of October 1, 2003, *emphasizes*

*the opposite*: that an ongoing relationship between Seed and the Kratz firm was desired and intended.  *See* Hanson Dec. Ex. A, Sept. 9, 2003, Letter from Armstrong to Itami.  Prior to the instant litigation, Mr. Armstrong confirmed that such an ongoing relationship did indeed exist, and encouraged Seed to allow the Westerman defendants to represent it with respect to the correction tape patent only, given the ongoing nature of the Interference.  *See* April 30, 2008 Howard Decl. at ¶ 6.[26]

Furthermore, Mr. Armstrong clearly continued to advise Seed regarding matters relating to, or arising from, its patent application, the Interference, and the appeals.  His email dated May 21, 2005, referenced an ongoing representation, and included advice as to whether Seed had a malpractice claim, what the applicable statute of limitations was under D.C. law, what date Seed's claims accrued, and basic strategy.  He also stated that he would forward correspondence from the insurance carrier for the Kratz firm related to the malpractice that occurred during the prosecution of Seed's patent.

There should be little doubt that there is, at minimum, a question of fact as to whether tolling applies in this situation.  As succinctly captured by the leading malpractice treatise, from which the D.C. Court of Appeals adopted the continuous representation rule, "In a 'continuous representation' rule jurisdiction [such as the District of Columbia], accrual is deferred until the relationship is terminated, and this may extend through years of trial and appellate review."  Mallen & Smith, 3 LEGAL MALPRACTICE § 23:18 (2008); *see also Janicki Logging & Constr. Co., Inc. v. Schwabe, Williamson & Wyatt, P.C.,* 109 Wash.App. 655, 37 P.3d 309 (2001) (same); *Biomet Inc. v. Barnes & Thornburg*, 791 N.E. 2d 760 (Ind. Ct. App. 2003) (same).  Thus, evidence suggesting that the Kratz firm was continuing to represent Seed raises questions of material fact barring application of the statute of limitations, particularly where discovery, which has not even taken place, is likely to yield additional evidence of such an ongoing representation.

---

[26] This statement constitutes an admission by the Kratz firm, and demonstrates that this may prove a fertile area for discovery.

2.    **The Continuing Representation of Seed by Former Kratz Firm Attorneys Tolled the Statute of Limitations for Malpractice Committed by those Attorneys at the Kratz Firm.**

Furthermore, the attorneys that represented Seed in relation to its correction tape dispenser patent application at the Kratz firm -- Westerman, Kenehan, and Kong -- were the same attorneys that continued the primary representation of Seed regarding this patent at the Westerman firm. Indeed, Westerman and Kenehan were involved in representing Seed in the Interference from the outset. *See* May 2, 2008 Shintani Dec. Ex. 2. Given that Seed continued to be represented by the same attorneys in relation to its patent until well into 2006, the continuous representation tolling doctrine applies.

Tolling in this situation is supported by policy rationale that serves as a foundation for the continuing representation rule. When it adopted the continuous representation rule, the D.C. Court of Appeals emphasized that a client's decision to remain with an attorney who committed malpractice could arise from any number of reasons, such as assurances of success, the attorney's experience, or blind loyalty. The Court observed that whatever the case, the client often knows very little about legal matters, and looks to the attorney for guidance, and the Court was unwilling to intrude in that relationship by forcing early malpractice claims. *R.D.H. Communications*, 700 A.2d at 769. Absent the continuous representation rule, the court observed, the client would be placed in the untenable situation of either staying with his attorney at the risk of the statute of limitations expiring, or suing his attorney for malpractice and retaining new counsel. *Id.* In the court's opinion, by adopting the continuous representation rule it could avoid exactly this dilemma. *Id.*

If the continuous representation rule were not applied here, the Court would impose on plaintiffs the very same dilemma that the District of Columbia continuous representation rule was adopted to avoid. Westerman and Kong had represented Seed since the beginning of the Interference proceeding. When they left the Kratz firm to form the Westerman firm, Westerman, Kong, and Kenehan sought to retain the work related to the Interference with the encouragement of the Kratz firm. At the same time, the Kratz firm retained the remainder of Seed's work.

24

Under these circumstances, there would be no way for Seed to have asserted a claim against the Kratz firm without accusing Westerman, Kong, and Kenehan — its then current attorneys — of malpractice for the work in the interference performed while they were at the Kratz firm. Seed would therefore have been forced to obtain new counsel for Stevens's Federal Circuit appeal of the Board's ruling, disrupting the relationship at great cost, and removing an opportunity for these defendants to avoid the adverse consequences to Seed of their potential malpractice. Seed also would have had to obtain new counsel for the remainder of the work that the Kratz firm continued to perform, disrupting that relationship, as well. It is exactly this type of dilemma that the continuous representation rule was adopted by the District of Columbia to avoid imposing on potential malpractice plaintiffs. Given that failure to apply the continuing representation rule would disrupt not one, but two relationships between Seed and its law firms, this presents a doubly compelling case for application of the rule to toll the statute of limitations.

### D. The Kratz Defendants Bear Responsibility for Seed's Loss of Valuable Settlement Opportunities.

The Kratz defendants contend that Seed's claim that incorrect legal advice caused it to reject Steven's offers of settlement applies only to the Westerman defendants. Accordingly, they move to dismiss this claim as it applies to the Kratz defendants. This contention rests on a flawed assumption that the actionable incorrect advice occurred only after Messrs. Westerman, Kong and Kenehan had left the Kratz firm. The Westerman defendants' incorrect legal advice, however, did not occur in isolation. Rather, the statements that the Westerman defendants made after they left the Kratz firm were consistent with incorrect and misleading advice previously offered by Westerman, Kong, Kenehan and others *before* they left the Kratz firm, and naturally informed Seed's decision in rejecting Steven's settlement offers. In effect, the Kratz defendant's incorrect legal advice continued to operate while Seed was at the Westerman firm. This would have arguably been foreseeable to the Kratz defendants, who were intimately familiar with the incorrect advice they had provided, and who encouraged Seed to allow the Westerman firm to handle the remainder of the Interference proceeding.

25

At a minimum, Seed is entitled to additional discovery, which may disclose knowledge by the Kratz firm that malpractice had occurred, and that Seed had been misled. That could render the Kratz firm liable for the foreseeable consequences that continued to flow from their own misconduct. For example, if it turns out that the Kratz firm knew the ramifications of its malpractice, and quietly encouraged Seed to allow the Westerman defendants to handle the matter to avoid liability, the Kratz firm could be found to have breached its fiduciary duties to Seed in a manner that deprived Seed of settlement opportunities.

In addition, Seed would surely have itself pursued a settlement with Stevens if it had been given correct advice regarding the ramifications of the Board's refusal to consider its PCT application in awarding it priority. This could have taken place at any point after the Board's ruling, including the interval in which the Kratz firm was exclusively representing Seed. Stevens, who was interested in a settlement even after the Federal Circuit overturned the Board's ruling in favor of Seed, would logically have been interested in a settlement prior to that appeal. Thus, Seed may be able to show that the Kratz firm's incorrect legal advice deprived Seed of settlement opportunities from at least the time the Board ruled, through the transition of Seed's Interference matter to the Westerman Firm on October 1, 2003.

Accordingly, a question of fact already exists as to whether the Kratz defendants bear responsibility for Seed's loss of settlement opportunities due to their incorrect legal advice, and discovery would only raise further factual questions. This precludes dismissal of Seed's loss of settlement claim against the Kratz defendants, which claim would also be timely for the many reasons set forth above.

### E.    If the Court Treats This Motion As a Motion for Summary Judgment, and Believes Defendants Have Carried Their Burden, Then Seed Requests a Continuance Pursuant to Rule 56(f) to Conduct Further Discovery.

The Court, at its option, may choose to convert this motion into one for summary judgment. Seed believes that, on the current record, the Kratz defendants have also fallen far short of carrying their burden of proving that Seed's claims accrued outside the statute of

limitations period.  Rather, the evidence indicates that Seed's claims accrued, at the earliest, sometime in June of 2004 when the Federal Circuit denied Seed's petition for rehearing, and likely much later.  If the Court nonetheless believes that defendants have carried their initial burden of proving that Seed's claims are outside the statute of limitations, despite the self-concealing nature of the harm, and defendants' lulling comments, then the burden shifts to Seed to show that the continuous representation rule applies.

Seed believes that the current record is sufficient to establish that the continuous representation tolling doctrine applies.  Should the Court believe that further evidence is necessary to raise a question of fact as to the continuous nature of this representation, or the other bases upon which Seed relies, then Seed respectfully requests a continuance of defendants' motion pursuant to Fed. R. Civ. P. 56(f), to allow Seed to conduct further discovery related to the accrual of its claims.

Requests to continue a summary judgment motion under Rule 56(f) should be liberally granted.  *Black v. National Football League Players Ass'n*, 87 F. Supp. 2d 1, 4 (D.D.C. 2000) (*citing* MOORE'S FEDERAL PRACTICE § 56.10[8][a] (3d ed.1999)); *see also, Gonzalez v. K-Mart Corp.,* 940 F. Supp. 429, 431 (D.P.R. 1996) ("[c]ourts should generally grant Rule 56(f) requests" unless the party has been dilatory in conducting discovery or is attempting to delay the case); *In re Deep Vein Thrombosis,* 356 F. Supp. 2d 1055, 1060 (N.D. Cal. 2005) (district court should grant Fed. R. Civ. P. 56(f) application when moving party files summary judgment early in the litigation, before opposing party has had any realistic opportunity to pursue discovery). Where Seed has had no opportunity to conduct any discovery given the nascent stage of the litigation, such a continuance would be required here.  The many factual issues that are already

27

apparent on the record before the Court only serve to highlight this point.[27]

The discovery sought by Seed would involve, for example, requests for the production of defendants' billing records, correspondence files, e-mails, notes, internal correspondence, external correspondence, and correspondence between firms, requests for admissions, and depositions of defendants. *See, e.g.,* April 30, 2008 Howard Dec. Ex. A (Proposed Discovery Requests). It is expected that such discovery will produce further evidence of defendants' lulling comments, additional incorrect legal advice by defendants, knowledge and concealment by defendants of their malpractice, communications obscuring the ramifications of defendants' malpractice from Seed, communications between the Kratz firm and the Westerman firm, and communications between the Kratz and Westerman firms and their insurers on these subjects. Finally, it would involve an assessment of the overall damages Seed ultimately incurred through the loss of its patent.

## **CONCLUSION**

For the foregoing reasons, plaintiffs respectfully request that the Kratz defendants' motion be denied.

---

[27] Indeed, the Westerman defendants have felt compelled to submit new declarations and documents in support of their reply brief to Seed's Opposition. The fact that at the pre-discovery stage of the litigation, a party feels compelled to submit documents and declarations piecemeal in support of its reply brief certainly highlights the factual questions that exist.

Dated: May 5, 2008                              Respectfully submitted,


                                                /s/ Creighton R. Magid_____
                                                Creighton R. Magid (D.C. Bar No. 476961)
                                                DORSEY & WHITNEY LLP
                                                1050 Connecticut Avenue, N.W., Suite 1250
                                                Washington, D.C. 20036
                                                Telephone:  (202) 442-3555
                                                Fax:  (202) 442-3199
                                                magid.chip@dorsey.com


                                                Counsel For Plaintiffs
                                                SEED COMPANY LIMITED and SHIGERU
                                                TAMAI



OF COUNSEL:
Paul T. Meiklejohn
Curt R. Hineline
James Howard
Mark S. Carlson
DORSEY & WHITNEY LLP
U.S. Bank Centre
1420 Fifth Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone:  (206) 903-8800
Fax:  (206) 903-8820

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SEED COMPANY, LTD. and SHIGERU TAMAI | ) <br> ) <br> ) |
| **Plaintiffs** | ) <br> ) |
| v. | )    **CASE NUMBER 1:08-CV-00355-RMU** <br> ) |
| WILLIAM F. WESTERMAN, et al. | ) <br> ) |
| **Defendants.** | ) |

**STATEMENT OF GENUINE ISSUES OF MATERIAL FACTS**
**IN RESPONSE TO KRATZ DEFENDANTS' MOTION TO DISMISS,**
**OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

    1.     Seed included a detailed Statement of Material Facts in support of its Opposition to the Westerman defendants' motion (Dkt. No. 8-1), supported by the Declaration of Masatoshi Shintani dated April 10, 2008 (Dkt. No. 8-3) and the Declaration of James Howard (Dkt. No. 8-2). Seed hereby incorporates the Statement of Material Facts and supporting Shintani Declaration in opposition to the Westerman defendants' motion by reference as though set forth fully herein. Below, Seed highlights facts that are particularly salient to the present motion for the convenience of the Court.

    2.     In March 1993, plaintiff Seed Company Ltd., a small Japanese company, engaged the Kratz firm's predecessor, Armstrong, Westerman, Hattori, McLeland & Naughton, LLP, to procure a U.S. patent for a type of correction tape dispenser.[1] The firm filed a patent application, United States Patent Application No. 08/196,839 (the "'839 Application"), on behalf of Seed on February 15, 1994. On May 9, 1997, the United States Patent and Trademark Office ("USPTO") declared an interference proceeding (the "Interference") between the '839

---

[1] Between March 1993 and the present, there were several successors in interest to the Armstrong Firm, including Armstrong, Westerman & Hattori, LLP; Armstrong, Kratz, Quintos, Hanson & Brookes, LLP; and, finally, Kratz, Quintos & Hanson, LLP. Unless otherwise specified, these defendants are collectively referred to herein as the "Kratz firm."

Application and another patent, referred to herein as the "Stevens Patent," to determine which patent had priority of invention.

3.      From the outset, defendants Westerman and Kong represented Seed at the Kratz Firm in the Interference. Mr. Westerman acted as lead attorney, with Mr. Kong providing substantial assistance. *See, e.g.*, May 21, 1997, Letter from Westerman. During this representation, Westerman, Kong, and the Kratz firm made the critical error of failing to file with the Board a required English language translation of Seed's Japanese language PCT '947 application. This failure proved costly, as it would have guaranteed Seed an earlier priority date than the Stevens patent owner could produce in support of his competing patent application. But for these defendants' failure to file the translation, Seed would have won the Interference, secured its patent rights, and eliminated the patent of its competitor.

4.      On June 25, 2002, the Board issued its ruling in the Interference.[2] The Board granted a *victory* to Seed, and concluded that Seed had priority over the Stevens patent.[3] In arriving at its ruling, however, the Board also concluded that Seed did not receive the benefit of its PCT '947 Application date because of defendants' failure to file an English language translation of that Application. The Board instead accorded Seed the benefit of the filing date of its JP '371 Japanese patent application. This ultimately proved critical, since Seed was later denied the benefit of the filing date of its Japanese patent application, which resulted in Stevens winning the Interference.[4]

5.      As demonstrated by an April 2003 letter submitted by the Westerman defendants for the first time in their reply, Seed's representative, Mr. Itami, expressed concern over the Board's ruling on Seed's motion to reconsider, and asked for additional details.[5] In response,

---

[2]  Complaint, ¶ 23; Shintani Dec. Ex. 11, Decision at p. 1.

[3]  Shintani Dec. Ex. 11, Decision at p. 29; Ex. 12 at p. 1.

[4]  Shintani Dec. Ex. 11, Decision at p. 22; Ex. 12 at p. 2.

[5]  April 25, 2008 Westerman Declaration, Ex. 1. As a procedural matter, this document should be stricken, given that it is new material submitted in reply. Seed nonetheless addresses it

the Kratz defendants and Westerman, Kong, and Kenehan, at the time, attorneys in the Kratz firm, repeatedly emphasized to Seed that it had won, and downplayed the significance of the PCT application, because Seed was the prevailing party. These assertions continued through a string of letters from the Kratz firm that are quoted at length and included as exhibits in support of Seed's Opposition to the Westerman defendants' motion. The letters stressed the significant victory that Seed's attorneys had obtained, counseled against any effort by Seed to appeal, and advised Seed that its rights remained solidly protected.

6.     This message remained consistent during Stevens's May 12, 2003, appeal of the Board ruling to the Federal Circuit. Kratz firm attorneys counseled Seed that this appeal was baseless.[6] Later, in October 2003, the three Kratz firm attorneys who were principally responsible for representing Seed in the interference, Westerman, Kong and Kenehan, left the Kratz firm and formed their own law firm, Westerman, Hattori, Daniels & Adrian, LLP. (Westerman, Kong, Kenehan and the law firm of Westerman, Hattori, Daniels & Adrian, LLP are collectively referred to herein as the "Westerman defendants"). Seed allowed the Westerman defendants to continue to lead the representation in matters relating to the interference proceeding, but the Kratz defendants continued to represent Seed in all other intellectual property matters.[7]

7.     The Westerman defendants continued the familiar "victory" refrain initiated at the Kratz firm, and advised Seed that Stevens's appeal was so lacking in merit that Seed might be entitled to attorney's fees. The Federal Circuit disagreed, however, and on May 4, 2004, it affirmed the portion of the Board's ruling finding that Seed was not entitled to the benefit of the

---

herein because it is apparently incorporated by the Kratz defendants by reference. The piecemeal presentation of such documents demonstrates the burden defendants attempt to impose on the Court through their motion, and the less than full record available to address the many underlying factual issues. There are undoubtedly additional letters, emails, and deposition testimony that will be developed in discovery related to these events.

[6] Complaint, ¶ 23; Shintani Dec. Ex. 17, Notice of Appeal at p. 1.

[7] Hanson Dec. Ex. A; Howard Dec. at ¶ 6.

priority date of its Japanese language PCT '947 Application, due to defendants' failure to file the required translation into English.[8]  The Federal Circuit then reversed the ruling that Seed was entitled to the benefit of the earlier JP '371 Japanese application.  The court ruled that 35 U.S.C. § 119(a) precluded Seed from directly claiming the benefit of the JP '371 application because the JP '371 application was filed more than one year before the '183 application, of which the pending US '839 application was a continuation-in-part.

8.      On May 12, 2004, the Westerman defendants wrote to Seed, indicating that they were "in the process of drafting a petition for rehearing *en banc* (including a petition for reconsideration by the Panel)," *and that their firm would "absorb the cost for preparing and filing such a Petition*."  May 12, 2004 Letter from Kratz Defs. to Pls. (emphasis added).[9]  The Westerman defendants reassured Seed "that there is sound legal basis for filing a Petition for Rehearing En Banc."  On June 10, 2004, however, the Federal Circuit issued its denial of the petitions for rehearing.[10]

9.      On July 8, 2004, after the Federal Circuit remanded the Interference proceeding to the Board, the Westerman defendants filed a petition on behalf of Seed to reopen the Interference.[11]  The Westerman firm also advised Seed that other options existed for overturning the result of the Federal Circuit's ruling, advising, "Even if the Petition [before the Board] is denied for whatever reason, and judgment is finally entered against Tamai, there are still other options for appeal, such as to the District Court under 35 U.S.C. § 146."  July 27, 2004, Letter from Kratz Defs. to Pls. at 2.[12]  The Westerman defendants closed the letter by emphasizing that "[w]e are continuing to take action.  As mentioned above, a Second Petition [to the Board] was

---

[8]  Complaint, ¶ 28; Shintani Dec. Ex. 20 at p. 1; *Stevens v. Tamai*, 366 F.3d 1325 (Fed. Cir. 2004).

[9]  Shintani Dec. Ex. 21 at p. 1.

[10]  Shintani Dec. Ex. 23 at p. 1.

[11]  Shintani Dec. Ex. 24 at p. 1.

[12]  Shintani Dec. Ex. 25 at p. 2.

filed on July 23, 2004." *Id.* at 3. The Westerman defendants also filed a petition for *certiorari* to the United States Supreme Court. Throughout this process the Kratz defendants and Westerman defendants consistently and incorrectly advised that Seed's patent rights could be protected if necessary through litigation in U.S. District Court, or by reopening the Interference before the Board. These efforts continued through December 2006, when the Westerman defendants finally admitted that they had been wrong.

10.    It is also important to note for the present motion that on May 21, 2005, defendant James E. Armstrong wrote to Mr. Kenji Itami, Seed's representative, regarding the Seed Interference. Mr. Armstrong forthrightly suggested that Seed consider a legal malpractice claim based on the representation it received from the Kratz and Westerman firms, stating:

> I still believe that the case is ripe for immediately demanding a substantial monetary settlement.

May 21, 2005 letter from Kratz defendants to Seed.[13] He then explained the statute of limitations to Mr. Itami, and advised Mr. Itami that Seed had not been damaged until between June 10, 2004, when the Federal Circuit denied Seed's petitions for rehearing, and October 18, 2004, when the Supreme Court denied the petition for *Certiorari*, stating:

> Under Washington, D.C.law (and the laws of every state) there are time limits (called statutes of limitation) within which claims for money damages can be made in court. The damage occurred according to the [Kratz firm's] insurance company letter when the Federal Circuit denied rehearing on May 18, 2004 (actually the Federal Circuit denial was published on June 10, 2004 and the Supreme Court petition was denied on October 18, 2004). Any subsequent action by the U.S. PTO is simply procedural and will have not [sic] effect on the loss of right which resulted from the Federal Circuit decision of May 4, 2004 and became final after all appeals were exhausted (October 18, 2004).
>
> According to D.C. law, legal actions for injury to personal property (in this case, a patent) must be brought within 3 years from the date on which the injury occurred. Therefore, now the time is ripe to make a demand.

---

13  May 2, 2008 Shintani Dec. Ex. 1.

*Id.* Thus, Mr. Armstrong admitted on behalf of defendants that the earliest date that Seed's claims could be said to accrue is the date that the insurance carrier incorrectly thought the Federal Circuit denied rehearing *en banc*, May 18, 2004, rather than the actual date of this denial, June 10, 2004. Regardless, all of the listed accrual dates are within three years of the tolling agreement executed by the Kratz defendants, which tolled any claims for legal malpractice that Seed may have against the Kratz defendants effective May 10, 2007.[14]

      11.     Plaintiffs timely filed the Complaint in this action on February 28, 2008.[15]

---

[14] Plaintiffs timely filed the Complaint in this action, pursuant to the terms of this Tolling Agreement, on February 28, 2008. Each Tolling Agreement expired by its own terms on December 31, 2007; however, they all included a provision that "[u]pon termination of the Agreement, any lawsuit commenced by Seed against the [defendants herein] shall, as to all claims preserved by this agreement, be considered timely commenced if a Complaint is filed within sixty (60) days following termination of the Agreement." The Tolling Agreements preserved all claims that were not already time-barred as of May 3, 2007 (as to defendants William F. Westerman and Westerman, Hattori, Daniels & Adrien LLP) or May 10, 2007 (as to defendants John Kong and Ed Kenehan). *See* May 2 Shintani Dec. Ex. 2.

[15] Each Tolling Agreement expired by its own terms on December 31, 2007; however, they all included a provision that "[u]pon termination of the Agreement, any lawsuit commenced by Seed against the [defendants herein] shall, as to all claims preserved by this agreement, be considered timely commenced if a Complaint is filed within sixty (60) days following termination of the Agreement." The Tolling Agreements preserved all claims that were not already time-barred as of May 10, 2007.

Dated:  May 5, 2008

Respectfully submitted,

/s/ Creighton R. Magid _____
Creighton R. Magid (D.C. Bar No. 476961)
DORSEY & WHITNEY LLP
1050 Connecticut Avenue, N.W., Suite 1250
Washington, D.C. 20036
Telephone:  (202) 442-3555
Fax:  (202) 442-3199
magid.chip@dorsey.com

Counsel For Plaintiffs
SEED COMPANY LIMITED and SHIGERU
TAMAI

OF COUNSEL:
Paul T. Meiklejohn
Curt R. Hineline
Mark S. Carlson
DORSEY & WHITNEY LLP
U.S. Bank Centre
1420 Fifth Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone:  (206) 903-8800
Fax:  (206) 903-8820

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SEED COMPANY, LTD. and SHIGERU TAMAI                )
                                                     )
                Plaintiffs                           )
                                                     )    CASE NUMBER 1:08-CV-00355-RMU
v.                                                   )
                                                     )
WILLIAM F. WESTERMAN, et al.                         )
                                                     )
                Defendants.                          )

**DECLARATION OF MASATOSHI SHINTANI IN SUPPORT OF PLAINTIFFS'
OPPOSITION TO THE KRATZ DEFENDANTS' MOTION TO DISMISS, OR IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT**

I, Masatoshi Shintani, declare as follows:

1.      I am over the age of eighteen years, I make the following declaration based upon my personal knowledge, and I am competent to testify as to the matters asserted herein.

2.      I am the General Manager of the Development Department of Seed Company, Ltd. ("Seed").

3.      Attached hereto as Exhibit 1 is a true and correct copy of an email by Mr. James E. Armstrong, III to Mr. Kenji Itami and dated May 21, 2005. It was Mr. Itami's practice to send documents to me promptly upon receiving them from the attorneys handling Seed's interference. This is true as to all of the documents attached to my previously-submitted declaration in opposition to the Westerman Defendants' motion to dismiss, as well as Exhibit 1 to this declaration. Based upon that practice, I believe that I would have received this email from Mr. Itami on or very shortly after May 21, and I would have reviewed it when it was received.

4.      Attached hereto as Exhibit 2 is a true and correct copy of a letter from Mr. Westerman, of Armstrong, Westerman, Hattori, McLeland & Naughton, dated May 21, 1997. I

believe that I would have received this ~~email~~ *m. S.* from Mr. Itami on or very shortly after May 21, and *letter* I would have reviewed it when it was received.

I declare under penalty of perjury of the United States of America that the foregoing is true and correct.

Signed in Osaka, Japan, this 2 nd day of May, 2008.

*Masatoshi Shintani*

Masatoshi Shintani

# Exhibit 1

Itami patient office

差信者: "James Armstrong III" <jarmstrong3@armstrongpat.com>
宛先:
送信日時: 2005年5月21日 6:53
件名:      Dear Itami san,

Dear Itami san,

Thanks for your e-mail of May 20, 2005. There was some mix-up between my secretary and me because the insurance letter could not be easily sent by e-mail. I am sending it to you today separately by facsimile.

I still believe that the case is ripe for immediately demanding a substantial monetary settlement. Under Washington, D.C. law (and the laws of every state,) there are time limits (called statutes of limitation) within which claims for money damages can be made in court. The damage occurred according to the insurance company letter when the Federal Circuit denied rehearing on May 18, 2004 (actually the Federal Circuit denial was published on June 10, 2004 and the Supreme Court petition was denied on October 18, 2004). Any subsequent action by the U.S. PTO is simply procedural and will have not effect on the loss of right which resulted from the Federal Circuit decision of May 4, 2004 and become final after all appeals were exhausted (October 18, 2004).

According to D.C. law, legal actions for injury to personal property (in this case, a patent) must be brought within 3 years from the date on which the injury occurred. Therefore, now the time is ripe to make a demand. Because of the Hatsumei Kyokai article, the publicity concerning the real facts would be more damaging than any amount of money to be paid.

I will be pleased to answer any further questions your client may have.

With kind regards,

James E. Armstrong, III

JEA/cs

1 / 1 ページ

# Exhibit 2

MAY-22-97 THU 14:14    ARMSTRONG WESTERMAN ETAL    FAX NO. 202 3317519    P. 02

LAW OFFICES

# ARMSTRONG, WESTERMAN, HATTORI, McLELAND & NAUGHTON

SUITE 1000

JAMES E. ARMSTRONG, III
WILLIAM F. WESTERMAN
KEN-ICHI HATTORI
LEN-HUNG McLELAND
RONALD F. NAUGHTON*
WILLIAM G. KRATZ, JR.*
MEL R. QUINTOS

PARTNER EMERITUS
JAMES P. WELCH

DONALD W. HANSON
STEPHEN G. ADRIAN*
WILLIAM L. BROOKS
AOI NAWASHIRO
GAY ANN SPAHN
PATRICK D. MUIR
JOHN P. KONG
LUKE A. KILYK
*ADMITTED TO OTHER THAN D.C. BAR

1725 K STREET, N.W.
WASHINGTON, D.C. 20006

(202) 659-2930
FACSIMILE (202) 887-0357
FACSIMILE (202) 331-7519
FACSIMILE (202) 857-6165

TOKYO LIAISON OFFICE
6TH FL., DIAMOND PLAZA BLDG.
25 IGARASHIKO, CHIYODA-KU
TOKYO 102, JAPAN
TEL (03) 3234-8429
FACSIMILE (03) 3234-5649

PITTSBURGH OFFICE
THE LAW & FINANCE BUILDING
SUITE 707
429 FOURTH AVENUE
PITTSBURGH, PENNSYLVANIA
15219
TEL (412) 281-2931
FACSIMILE (412) 281-1821

OF COUNSEL
JOHN R. PEGAN
ALBERT TOCKMAN
JOHN F. CARNEY
EDWARD F. WELSH

JAPANESE BENRISHI
YOSHINARI KISHIMOTO
YASUHISA KUROSE

May 21, 1997

Mr. Kenji Itami
Itami Patent Office
Daisan Bldg.,
2-4, 3-chome, Nishitenma
Kita-ku, Osaka 530, JAPAN

RE:    U.S. Patent Appln. S.N. 08/196,839
       By: Shigeru TAMAI
       Your Ref: P123/SH.90
       Our Ref: P1151-2717-A940094

Dear Itami san:

Thank you for your letter of May 20, 1997. Mr. John Kong and I will be working on this interference case. In accordance with your instructions, we confirm that a paper identifying myself as the lead attorney will be filed on or before May 23, 1997.

As you have noted, our priority date of July 1, 1991 is earlier than the constructive date of invention of February 7, 1994 for the Gillette. While Gillette may rely upon an earlier date of conception, Gillette may be hard pressed to prove a date of conception more than two and a half years earlier than their filing date, with due diligence towards reduction to practice and the filing of the patent application over the two and half year interval. Thus, the present application appears to have a good chance for prevailing in this interference.

If your client wishes to proceed with this interference, preliminary matters must be initiated as soon as possible. For instance, the prosecution history for the Gillette patent must be ordered and reviewed in detail for potential attacks on the lack of support for the interference count, to be submitted in preliminary motions. In addition, we must review the present application in detail to anticipate potential attacks on the present application by Gillette, especially with regard to the support for the "new matter" introduced in the continuation-in-part application and also with regard to the support in the original priority document for the features recited in the interference count. Potential estoppel issues should also be considered with respect to both the Gillette patent and the present application.

Mr. Kenji Itami
Itami Patent Office
May 21, 1997
Page 2

Since the above described preliminary matters may take significant time, with corresponding costs, we await your approval before we proceed further with this interference. We look forward to receiving your instructions and approval as soon as possible.

Very truly yours,

ARMSTRONG, WESTERMAN, HATTORI, McLELAND & NAUGHTON

William F. Westerman

WFW:mlj

cc:    John P. Kong

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SEED COMPANY, LTD. and SHIGERU )
TAMAI                        )
                             )     CASE NUMBER 1:08-CV-00355-RMU
            Plaintiffs       )
                             )
v.                           )
                             )
WILLIAM F. WESTERMAN, et al. )
                             )
            Defendants.      )

## DECLARATION OF JAMES E. HOWARD

James E. Howard declares as follows:

1.      I am over the age of eighteen years, and I am competent to testify as to the matters
asserted herein.

2.      I am an attorney, licensed in the District of Columbia, representing Plaintiffs Seed
Company, Ltd. and Shigeru Tamai in this litigation ("Seed"), and this declaration is made based
upon my personal knowledge.

3.      Beginning in May 2007, attorneys at my firm attempted to contact James E.
Armstrong at the then named Armstrong, Kratz, Quintos, Hanson, and Brooks ("Armstrong
firm"), to secure a tolling agreement from Mr. Armstrong and his firm.  Mr. Armstrong
ultimately agreed to a tolling agreement on behalf of himself and his firm, effective May 10,
2007.  A true and correct copy of the tolling agreement that Mr. Armstrong executed and sent to
my attention is attached hereto as Exhibit A.

4.      On or about June 6, 2007, during a telephone call that I had with Mr. Armstrong
regarding the tolling agreement, he explained that his firm was relieved by Mr. Westerman's
decision to leave the Armstrong firm.  He stated that there were numerous files at the Armstrong
firm that he could locate that Mr. Westerman had worked on and "screwed up."  According to

Mr. Armstrong, attorneys at the Armstrong firm had to address these deficiencies after Mr. Westerman's departure.

5.    Mr. Armstrong also advised that upon Mr. Westerman's departure, it was his understanding that Seed wished to keep all of its work with the Armstrong firm.  Mr. Armstrong explained that he encouraged Seed, through Mr. Itami, to let Mr. Westerman continue handling the interference proceeding, but agreed that the Armstrong firm would handle all other work.

6.    Mr. Armstrong's statements suggest that discovery from the Armstrong firm's successor, the Kratz firm, regarding other malpractice that Mr. Westerman may have committed, could be a potentially fertile area of inquiry for several reasons.

7.    Mr. Armstrong's comments suggest that he believed that Mr. Westerman had committed other patent related malpractice, and had committed malpractice with respect to Seed, but never contemporaneously told Seed these facts.  Such an omission, while at the same time encouraging Seed to let Mr. Westerman continue to handle the interference after he left the Armstrong firm, could raise breach of fiduciary duty issues.

8.    In addition, Mr. Armstrong's comments suggest that discovery may yield evidence confirming that the Armstrong firm continued to represent Seed, but advised Seed to allow Mr. Westerman to act as lead counsel in the interference proceeding.  Such evidence would be relevant to Seed's statute of limitations arguments, including application of the continuous representation doctrine and application of estoppel principles under the lulling doctrine.

9.    Mr. Armstrong's comments also give Seed reason to explore in discovery why the interference was actually shifted to the Westerman firm at the behest of the Armstrong firm. Discovery may confirm that the Armstrong firm was well aware of the nature and ramifications

of Westerman, Kenehan, and Kong's malpractice, and wished to relieve itself of liability, without

notifying Seed, thereby raising significant breach of fiduciary duty issues.

10.    Such evidence would also be relevant to Seed's statute of limitations arguments,

including application of estoppel principles under the lulling doctrine.  It would be inequitable

for the Kratz defendants to transfer representation in the interference proceeding due to

undisclosed malpractice concerns, and nevertheless rely on the statute of limitations to evade

responsibility for the malpractice of Kratz firm employees.

11.    Attached hereto as Exhibit B is a true and correct copy of a letter dated September

9, 2003, from the Armstrong firm.  The letter is signed by William F. Westerman, who was then

employed at the Armstrong firm, and was sent to Seed's representative, Kenji Itami.  The letter

comments on Steven's appeal of Seed's victory before the Board of Patent Appeals and

Interferences to the U.S. Court of Appeals for the Federal Circuit, and advises Seed that

attorney's fees may be warranted due to the frivolous nature of the appeal.

12.    Related to Plaintiffs' request in the alternative for a Fed. R. Civ. P. 56(f)

continuance, discovery requests such as those attached to the April 10, 2008, Howard declaration

would also be relevant to serve on the Kratz defendants.  Accordingly, those examples of the

discovery that could be sought, and the supporting explanations in the April 10 Howard

declaration, are incorporated herein by reference as to the Kratz defendants.

I declare under the penalty of perjury that the foregoing is true and correct to the best of

my knowledge.

Dated this 5th day of May, 2008.

James E. Howard

3

# EXHIBIT A

# TOLLING AGREEMENT

This Tolling Agreement (hereinafter "the Agreement") is made between Seed Company, Ltd., its successors and predecessors and Party Tamai (collectively, the "Seed Parties"), on the one hand, and James E. Armstrong, III ("Armstrong") and Armstrong, Kratz, Quintos, Hanson & Brooks, LLP and all of this firm's predecessors and successors including Armstrong, Westerman, Hattori, McLeland & Naughton, LLP and Armstrong, Westerman & Hattori, LLP ("the Firm"), on the other hand. Armstrong and the Firm shall be collectively referred to as "the Armstrong Parties." The effective date of the Agreement is May 10, 2007.

## Recitals

1. Whereas the Seed Parties contend that they have meritorious claims for a legal malpractice action against the Armstrong Parties arising out the representation of the Seed Parties by the Armstrong Parties in connection with Patent Interference No. 103,662. The Armstrong Parties each deny that the Seed Parties' claims have any merit and assert that they each have valid defenses to all such claims. The Agreement neither creates nor waives rights or remedies for or against any party to the Agreement other than those specified in the Agreement.

2. The parties are entering into this Agreement for the purposes of preserving the status quo as of the effective date, with respect to any applicable statutes of limitations and other time-related defenses relating to the legal representation of the Seed Parties by the Armstrong Parties. The Seed Parties have requested this tolling agreement to allow it to delay the formal filing of a complaint against the Armstrong Parties, while the Seed Parties and the Armstrong Parties negotiate a potential settlement for legal malpractice claims the Seed Parties may assert against the Armstrong Parties.

## Terms

NOW, THEREFORE, in consideration of the mutual covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereto agree as follows:

1. The parties agree that effective as of the date of this Agreement the running of any statutes of limitations, whose period for filing a complaint has not already expired, with respect to any and all possible causes of action and claims that the Seed Parties may have against the Armstrong Parties are tolled until this Agreement is terminated as set forth by one of the two methods described in paragraph 5. By entering into this Agreement, the Armstrong Parties agree that the running of the applicable statutes of limitations and all other periods relating to the commencement of litigation (including but not limited to latches) are tolled and suspended and the Armstrong Parties hereby expressly waive the pleading or assertion of any statutes of limitations or other time-related defense that is based, in whole or in part, on the time that has run while this Agreement is in effect, except that the Armstrong Parties reserve the right to rely on any statute of limitations defense for which the period for filing a complaint has expired as of this date.

2.  In consideration for such tolling and waiver by the Armstrong Parties, the Seed Parties agree not to initiate any litigation, cause of action, complaint or other proceeding against the Armstrong Parties until first engaging in settlement negotiations with the Armstrong Parties.

3.  This Agreement does not constitute in any way an admission or agreement on the part of the Armstrong Parties that it is liable to the Seed Parties or any other party with respect to any of the tolled claims.

4.  The parties reserve all claims, rights and defenses that they may have, except asset forth in this Agreement, to assert, contest or defend any claims or actions by the Seed Parties against the Armstrong Parties with respect to any of the tolled claims

5.  This Agreement may be terminated in two different manners:

   a.  The Agreement may be terminated by either of the parties hereto providing written notice to the other party of an intention to terminate. Notice shall be effective if mailed to

   in the case of the Seed Parties:

   Paul T. Meiklejohn
   Dorsey & Whitney LLP
   1420 Fifth Ave., Ste. 3400
   Seattle, WA 98101

   in the case of the Armstrong Parties:

   James E. Armstrong, III
   Armstrong, Kratz, Quintos, Hanson & Brooks, LLP
   1725 K St., N.W., Suite 1000
   Washington, D.C. 20006

   b.  The Agreement shall terminate automatically on December 31, 2007, provided, however; that the Agreement may be extended on or before the day it is to terminate by a writing signed by both parties to the Agreement which establishes a date certain to which the Agreement shall be extended.

6.  Upon termination of the Agreement, any lawsuit commenced by the Seed Parties against the Armstrong Parties shall, as to all claims preserved by this agreement, be considered timely commenced if a Complaint is filed with sixty (60) days following termination of the Agreement (by either method)

7.  The Agreement shall be deemed to have been drafted by all parties, and shall not be construed against any party on the premise that a specific party drafted the Agreement.

8.  In any action to enforce the Agreement or for its breach, the prevailing party shall be entitled to recover reasonable attorney's fees and costs.

FROM ARMSTRONG, KRATZ, QUINTOS, HANSON & BROOKS    (TUE) 6. 5'07 12:31/ST. 12:30/NO. 4864272386 P  4

 

9.  The Agreement is confidential and shall not be disclosed to any person or entity by any party to the Agreement, or their counsel, except as necessary to establish whether a claim or defense falls within the Agreement.

10. The Agreement may be signed in duplicate originals, each of which, when fully executed, shall constitute the Agreement.

11. The Agreement is the entire agreement among the parties. In executing the Agreement, neither party is relying on or acting on any promise, inducement, or agreement not expressed in the Agreement.

12. The Agreement is controlled by the law of the District of Columbia.

13. Any dispute arising out of or connected with interpreting or enforcing the terms of this Agreement shall be filed in Superior Court in the District of Columbia

THE SEED PARTIES

DATED: May 10, 2007                    by Paul T. Meiklejohn

                                       its Attorney


JAMES E. ARMSTRONG, III

DATED: May 10, 2007


ARMSTRONG, KRATZ, QUINTOS,
HANSON & BROOKS, LLP

DATED: May 10, 2007                    by

                                       its

# EXHIBIT B

LAW OFFICES

ARMSTRONG, WESTERMAN & HATTORI, LLP

SUITE 1000
1725 K STREET, N.W.
WASHINGTON, D.C. 20006

(202) 659-2930
FACSIMILE (202) 887-0357
FACSIMILE (202) 331-7519
FACSIMILE (202) 887-5155
VIDEO (202) 728-6844
www.armstrongpat.com

JAMES E. ARMSTRONG, III
WILLIAM F. WESTERMAN
KEN-ICHI HATTORI
WILLIAM G. KRATZ, JR.*
MEL R. QUINTOS
DONALD W. HANSON
STEPHEN G. ADRIAN
SCOTT M. DANIELS
WILLIAM L. BROOKS
THOMAS J. MACPEAK
JOHN F. CARNEY
JOHN P. KONG
JAMES E. ARMSTRONG, IV
SADAO KINASHI

THOMAS E. BROWN*
MICHAEL J. CARIDI
MICHAEL S. ALPRIN*
JOSEPH L. FELBER
KENNETH H. SALEN*
MICHAEL N. LAU
GEORGE H. STEVENS*
*Practice limited to matters and proceedings
before federal courts and agencies

TOKYO LIAISON OFFICE
6TH FL., DIAMOND PLAZA BLDG.
25 ICHIBANCHO, CHIYODA-KU
TOKYO 102, JAPAN
TEL. (03) 3234-8429
FACSIMILE (03) 3234-5843

PITTSBURGH OFFICE
THE LAW & FINANCE BUILDING
SUITE 707, 429 FOURTH AVENUE
PITTSBURGH, PENNSYLVANIA 15219
TEL. (412) 281-2931
FACSIMILE (412) 281-1821

BALTIMORE OFFICE
502 WASHINGTON AVENUE, SUITE 220
TOWSON, MARYLAND 21204
TEL. (410) 337-2295
FACSIMILE (410) 337-2296

SENIOR COUNSEL
LEONARD BLOOM

OF COUNSEL
RONALD F. NAUGHTON*
EDWARD F. WELSH*
NICOLAS E. SECKEL*
NICHOLAS S. BROMER*
EDWARD F. KENEHAN, JR.

JAPANESE BENRISHI
YASUHISA KUROSE

PATENT AGENTS
JAMES N. BAKER
DANIEL A. GESELOWITZ, Ph.D.
SHUJI YOSHIZAKI

September 9, 2003

VIA DHL

Mr. Kenji Itami
Itami Patent Office
Daisan Building
2-4, 3-chome, Nishitenma
Kita-ku, Osaka 530, Japan

RE:    Interference No. 103,662
       U.S. Patent Appln. S.N. 08/196,839
       By: Shigeru TAMAI
       Your Ref: P123/SE.90
       Our Ref: P1151-2717-A940094I

Dear Mr. Itami:

    Enclosed please find a copy of the Brief for Appellant Stevens, filed August 21, 2003 at the U.S. Court of Appeals for the Federal Circuit.  We have been working on our response thereto.  We will be filing our Brief for Appellee Tamai before the end of September.  We are also considering demanding attorneys fees from party Stevens for filing a frivolous appeal.  We will keep you informed on the progress of this case.

                    Very truly yours,

            ARMSTRONG, WESTERMAN & HATTORI, LLP

                    William F. Westerman

WFW/JPK
Enclosure: as stated above

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SEED COMPANY, LTD. and SHIGERU TAMAI** | ) <br> ) <br> ) |
| **Plaintiffs** | ) <br> ) |
| **v.** | )    **CASE NUMBER 1:08-CV-00355-RMU** <br> ) |
| **WILLIAM F. WESTERMAN, et al.** | ) <br> ) |
| **Defendants.** | ) |

## <u>ORDER</u>

This matter having come before this Court on this ___ day of _____, 2008 on the

motion of defendants Armstrong, Westerman, Hattori, McLeland & Naughton, LLP; Armstrong,

Westerman & Hattori, LLP; Armstrong, Kratz, Quintos, Hanson & Brookes, LLP; and Kratz,

Quintos & Hanson, LLP (the "Kratz defendants), to Dismiss, or in the Alternative, for Summary

Judgment, and this Court having considered said Motion and Plaintiffs' opposition thereto, it is

hereby

ORDERED, that the Kratz defendants' Motion to Dismiss, or in the Alternative, for

Summary Judgment, is hereby DENIED.


                                   _____

                                     U.S. District Court Judge Ricardo Urbina

COPIES:

Mark London, Esquire
London & Mead
1225 19th Street, N.W., Suite 320
Washington, D.C.  20036

Creighton R. Magid, Esquire
Dorsey & Whitney, LLP
1050 Connecticut Avenue, N.W., Suite 1250
Washington, D.C. 20036

Paul J. Maloney, Esquire
Carr Maloney, P.C.
1615 L Street, N.W., Suite 500
Washington, D.C.  20036

John H. Harman, Esquire
Coggins, Harman & Hewitt
8905 Fairview Road, Suite 600
Silver Spring, MD 20910

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SEED COMPANY, LTD. and SHIGERU TAMAI** | ) |
| | ) |
| **Plaintiffs** | ) |
| | ) **CASE NUMBER 1:08-CV-00355-RMU** |
| **v.** | ) |
| | ) |
| **WILLIAM F. WESTERMAN, et al.** | ) |
| | ) |
| **Defendants.** | ) |

## <u>ORDER</u>

This matter came before this Court on this ___ day of _____, 2008, on the motion of

defendants Armstrong, Westerman, Hattori, McLeland & Naughton, LLP; Armstrong,

Westerman & Hattori, LLP; Armstrong, Kratz, Quintos, Hanson & Brookes, LLP; and Kratz,

Quintos & Hanson, LLP (the "Kratz defendants) to Dismiss, or in the Alternative, for Summary

Judgment.  The Court has considered said Motion and Plaintiffs' opposition thereto, as well as

Plaintiffs' declarations, which establish that Plaintiffs, because discovery has not commenced in

this case, have not had the opportunity to discover information essential to their opposition to the

motion.  Therefore, pursuant to Fed. R. Civ. P. 56(f), it is hereby

ORDERED, that the Kratz defendants' Motion to Dismiss, or in the Alternative, for

Summary Judgment, is DENIED.

_____
U.S. District Court Judge Ricardo Urbina

COPIES:

Creighton R. Magid, Esquire
DORSEY & WHITNEY LLP
1050 Connecticut Avenue, N.W., Suite 1250
Washington, D.C. 20036

Christopher B. Mead, Esquire
London & Mead
1225 19th Street, N.W., Suite 320
Washington, D.C. 20036

Paul J. Maloney, Esquire
Carr Maloney, P.C.
1615 L Street, N.W., Suite 500
Washington, D.C. 20036

John H. Harman, Esquire
Coggins, Harman & Hewitt
8905 Fairview Road, Suite 600
Silver Spring, MD 20910