UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SEED COMPANY, LTD., *et al.*,        :
                                     :
        Plaintiffs,                  :
                                     :
v.                                   :   C.A. No.: 1:08-CV-00355(RMU)
                                     :
WILLIAM F. WESTERMAN, *et al.*,      :
                                     :
        Defendants.                  :

**KRATZ DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION
TO MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

The Kratz Defendants, in reply to the arguments set forth in Plaintiffs' Opposition to their Motion to Dismiss, Or In The Alternative, for Summary Judgment, state as follows:

**I.    INTRODUCTION**

Plaintiffs Oppose the Kratz Defendants' Motion to Dismiss with only two arguments. First, Plaintiffs argue that the continuous representation doctrine and the lulling doctrine serve to toll the accrual of the statute of limitations pertaining to both the Kratz Defendants and the Westerman Defendants. Second, plaintiffs argue that they were not placed on notice of their legal malpractice claim until June of 2004 or after.

In their Opposition, Plaintiffs take the position that the same arguments that apply to the Westerman Defendants' motion to dismiss also apply to the Kratz Defendants' motion to dismiss. This is not the case. By arguing that the continuous representation doctrine and the lulling doctrine serve to toll the accrual of the statute of limitations, the Plaintiffs themselves demonstrate why the Kratz Defendants- who were terminated as counsel in the interference matter at issue on October 1, 2003- should be dismissed as a matter of law.

20080512-NOG-8 (Reply to Pltf Opposition to MTD)

While Plaintiffs posture their Opposition as if there are scores of material facts at issue and a need for additional discovery, to the contrary, the two salient facts mandating dismissal are both known and agreed to by all parties.

As set forth below, and as stated in Plaintiffs' Complaint, two facts are unrefuted: (1) as of October 1, 2003, Plaintiffs terminated the Kratz Defendants with respect to the interference matter at issue; and (2) plaintiffs were provided definite notice of injury when the fatal Federal Circuit decision was transmitted to their attention, via facsimile, on May 5, 2004. Based upon those two dates alone, dismissal of the Kratz Defendants is warranted as a matter of law at this time.

## II.   ARGUMENT

### A.   The Statute of Limitations Bars Plaintiffs' Suit Against the Kratz Defendants As Neither the Continuous Representation Doctrine nor the Lulling Doctrine Apply to the Kratz Defendants After October 1, 2003.

Both the Westerman Defendants and the Kratz Defendants move to dismiss, arguing that the statute of limitations bars Plaintiffs' suit. With respect to <u>when</u> Plaintiffs were on notice of their injury, the Kratz Defendants' argument was aligned with the Westerman Defendants' argument. However, Plaintiffs opposed the Motions to Dismiss by arguing that the continuous representation doctrine and the lulling doctrine serve to toll the statute of limitations. Plaintiffs attempt to argue that certain of the comments or advice they characterize as "lulling" were made while the Westerman Defendants were still practicing law with the Kratz Defendants, i.e., prior to October 1, 2003. For the purposes of this motion, the Kratz Defendants do not need to address the characterizations of statements made prior to October 1, 2003, as the only relevant fact (as demonstrated by the caselaw below) is that Plaintiffs terminated the Kratz Defendants with respect to the interference proceeding at hand on October 1, 2003. *See* Complaint, at ¶24; *see also*

declaration of D. Hanson, Exhibit 1 to Kratz Defendants' Motion to Dismiss, at ¶ 3; *and see* September 9, 2003 letter from the Itami Patent Office[1], attached to declaration of D. Hanson as Exhibit A.

It is undisputed that the Kratz Defendants' representation of the Plaintiffs in the interference proceeding at issue ended on October 1, 2003. As a matter of law, the continuous representation doctrine only serves to toll the statute of limitations so long as the attorneys in question are retained for the particular legal matter at issue. *R.D.H. Communications v. Winston*, 700 A.2d 766, 768 (D.C. 1997) (Adopts continuous representation rule, wherein a malpractice cause of action accrues only upon termination of the attorney's representation concerning the particular matter in issue); *Ray v. Queen*, 747 A.2d 1137, 1141 FN 5 (D.C. 2000) (Under District of Columbia's "continuous representation" rule, the statute of limitations does not begin to run until attorney's representation of plaintiff for the particular matter is terminated); *Williams v. Mordkofsky*, 901 F.2d 158, 163 (D.C. Cir. 1990) (Under continuous representation rule, tolling is limited to the period that the attorney was under retainer); *Gallucci v. Schaffer*, 507 F. Supp.2d 85, 91 (D. D.C. 2007) (Under the continuous representation rule, a claim for legal malpractice does not accrue until the attorney's

---

[1] While not pertinent to an issue of material fact, the Kratz Defendants seek to clarify one point of apparent confusion. The Itami Patent Office is a patent agent based in Osaka, Japan. The Itami Patent Office serves as an agent between clients in Japan such as Seed Company and Tamai--the plaintiffs here-- and law firms in other countries serving as counsel on patent and trademark matters. The Itami Patent Office was not the "client" at any time, nor does the Complaint allege so. However, Plaintiffs' Opposition appears to take the position that Itami was the client, by averring that the September 3, 2003 letter's reference to "all of the rest of the cases" referred to Seed or Tamai matters (as opposed to other clients of the Itami Patent Office). The Complaint does not allege that the Kratz Defendants continued to represent Seed or Tamai on any other matters. Even if the Complaint did so allege, it would be irrelevant to the present Motion to Dismiss, as the only salient fact is that the Kratz Defendants no longer represented Seed or Tamai with respect to the particular interference matter at issue. All parties agree on

representation concerning the particular matter in issue is terminated).

The purpose of the continuous representation rule is to avoid disrupting the attorney-client relationship unnecessarily. *See Mallen & Smith,* 3 LEGAL MALPRACTICE §23:13 (2008 Ed.). Consistent with the policy rationale for the rule, Ronald Mallen and Jeffrey Smith make clear that the continuous representation rule only applies while the attorney in question continues to represent the client in the subject matter in which the error occurred. *Id.* at §23:13 Likewise, the three common law requirements for the continuous representation rule are: (1) ongoing representation by the attorney; (2) on the same subject matter; and (3) that is "continuous". *Id.* at §23:13 The caselaw interpreting the continuous representation doctrine in the District of Columbia, *supra,* comports with Mallen and Smith as well as the common law.

It is undisputed that the Kratz Defendants, with respect to the interference proceeding at issue, were terminated by the Plaintiffs on October 1, 2003. The District of Columbia caselaw as well as Mallen and Smith are clear that the dispositive issue is not the termination of all representations, but termination with respect to the particular matter wherein the malpractice sprouted:

> The determinative event for the continuous representation rule is when the representation ended. Unfortunately, the analysis is not always straightforward. The inquiry is not whether an attorney-client relationship still exists on any matter, or even generally, but when the representation of the specific subject matter concluded. Continuity of the representation on that subject matter is required.

*Id.* at §23:13

Thus, the unsupported averments, suppositions and Declarations (authored by counsel for

---

that point—the Complaint states so, the Hanson Affidavit states so, and the Itami letter states so.

plaintiff) that there may have been other matters in which Seed continued to be represented by the Kratz Defendants are irrelevant to the continuous representation rule, and thus irrelevant to the present analysis of this Motion to Dismiss. While there are no actual documents establishing a continued representation by the Kratz Defendants in other matters (except for a self-serving Declaration by counsel for Plaintiffs), even if there were, representation on other matters are irrelevant. Tellingly, and dispositively, Plaintiffs' Opposition does not dispute that the Kratz Defendants' representation of the particular matter at issue (the interference proceeding) terminated as of October 1, 2003.

Plaintiffs' argument relating to whether the lulling doctrine tolls the statute of limitations vis-à-vis the Kratz defendants is inapposite. There are no allegations that there was any continued communications or "lulling" by the Kratz Defendants after October 1, 2003. As noted above, Plaintiffs' Opposition argues that certain of the comments made by the Westerman Defendants while they were affiliated with the Kratz Defendants constituted "lulling." That argument is not relevant with respect to the Kratz Defendants' motion to dismiss, as there was not an attorney-client relationship with respect to this matter after October 1, 2003. District of Columbia law is clear: the lulling doctrine may only be applied in the context of a fiduciary relationship between the parties. *See Ray v. Queen*, 747 A.2d 1137, 1142 (D.C. 2000); *see also* Plaintiffs' Opposition to Kratz Defendants' Motion to Dismiss, at p. 16.

Plaintiffs' Opposition places a great deal of emphasis on a May 21, 2005 e-mail message from James Armstrong, III, who was a Kratz Defendants' partner at the time of the e-mail message. *See* May 21, 2005 e-mail from James Armstrong, III to Itami Patent Office, attached to Plaintiffs' Opposition to Kratz Defendants' Motion to Dismiss as Exhibit 1 to May 2, 2008 Masatoshi

Shintani Declaration. For ease of reference, a duplicate copy of the e-mail is attached hereto as Exhibit 1. As there is no question that the representation for this particular matter terminated, the language of the e-mail message, and even the fact of its existence, is not relevant to the motion to dismiss. However, assuming that the e-mail message were relevant— and even when considered in a light most favorable to the plaintiffs—the language at issue encourages plaintiff to demand redress (the exact opposite of "lulling"). *See* Exhibit 1. Although the language of the e-mail speaks for itself, it should be noted that Plaintiffs' Opposition mis-states the language of the May 21, 2005 e-mail. Specifically, on page 16 of the Opposition, Plaintiffs claim that the e-mail message states that "Defendants have until June 10, 2007 to assert a claim." That language is not found in the e-mail, although Plaintiffs' Opposition fails to make that clear to the Court, and seeks to benefit from the potential confusion. There is no reference to a "date certain" for the statute of limitations whatsoever. *See* Exhibit 1. In fact, the e-mail message is very clear, and is the opposite of "lulling." The email indicates, not once, but twice: "The case is ripe for immediately demanding a substantial monetary settlement" and "Now the time is ripe to make a demand." *See* Exhibit 1. The email also refers to a "loss of right" that resulted from the Federal Circuit decision of May 2004. Finally, although not of particular relevance, it should be noted that the final sentence of the e-mail message is clear in that there was no continued attorney-client relationship between Plaintiffs and the Kratz Defendants: "I will be pleased to answer any further questions your client may have." (emphasis added). *See* Exhibit 1. Based on the October 1, 2003 termination of the Kratz Defendants, Plaintiffs claim is barred by the three year statute of limitations. As plead in the Complaint, the tolling agreement for the Kratz defendants had an effective date of May 10, 2007, well outside of the three year statute of limitations.

B.  The Statute of Limitations Bars Plaintiffs Claim As It Is
Undisputed That Plaintiffs Had Knowledge Of An Injury
As of May 5, 2004.

Should this Court conclude that the date of termination of representation—October 1, 2003— is not the accrual date for the statute of limitations, then the analysis focuses on when Plaintiffs were placed on notice of their injury. There are multiple dates set forth in the Westerman Defendants' and the Kratz Defendants' Motions to Dismiss as to when Plaintiffs had knowledge of their injury sufficient for accrual of the statute of limitations. Under the discovery rule, the accrual analysis focuses on when plaintiffs knew (or should have known) of an injury. *See Knight v. Furlow*, 553 A.2d 1232, 1234 (D.C. 1989) (Legal malpractice action accrues when plaintiff has knowledge of (or with reasonable diligence should have knowledge of) the existence of an injury, its cause, and some evidence of wrongdoing). In addition, accrual begins when there is knowledge of some injury, as "it is not necessary that all or even the greater part of the damages have to occur before the cause of action arises." *Id.* at 1235 (internal citations omitted); *Gallucci v. Schaffer*, 507 F. Supp.2d 85, 90 (D. D.C. 2007) (Under District of Columbia law, a plaintiff need not sustain or identify all his damages for a cause of action to accrue).

Plaintiffs' Opposition cites *Knight v. Furlow* as authority upon which this court should deny the Kratz Defendants' motion to dismiss. To an extent, the parties agree. *Knight v. Furlow* is binding precedent, and the Court of Appeals specifically rejects the notion that a party is not injured until an adverse ruling is affirmed on appeal. *Knight v. Furlow, supra,* at 1235-36 (Resolution of an appeal is not the critical event for ripeness of a legal malpractice claim). It should also be noted

that Plaintiffs' Opposition exhaustively analyzes *R.D.H. Communications, Ltd. v. Winston*, 700 A.2d 766 (D.C. 1997), and also cites the decision as binding precedent. Plaintiffs' Opposition, however, fails to acknowledge that in *R.D.H. Communications*, the Court of Appeals (for the second time) rejected the so-called "exhaustion of appeals" rule, re-affirming that a client sustains actionable injury prior to the final outcome of the appeal of an adverse ruling. *Id.* at 771.

When did Plaintiffs have knowledge that their attorneys' failure to file a translation caused an injury? Plaintiffs' Opposition to the Westerman Defendants' Motion to Dismiss answers the question dispositively. Plaintiffs attach a May 5, 2004 facsimile[2] as an exhibit to their Opposition to the Westerman Defendants' Motion to Dismiss. *See* Exhibit 20 to April 10, 2008 Masatoshi Shintani Declaration, May 5, 2004 facsimile from Westerman Defendants to Itami Patent Office. For ease of reference, a duplicate copy of the facsimile is attached hereto as Exhibit 2. The facsimile references the May 3, 2004 decision by the Federal Circuit Court of Appeals reversing the Board's ruling, which ends the interference proceeding in favor of the Plaintiffs' competitor (Stevens). The May 5, 2004 facsimile notified Plaintiffs of the loss in the Federal Circuit, and the first line reads: "We are very disappointed with the Federal Circuit Decision." *See* Exhibit 2. Under no set of circumstances could this letter be read as anything but providing definitive notice to plaintiffs of their injury that was caused by their attorneys' failure to file a translation. As noted in the Complaint, the tolling agreement for the Kratz Defendants had an effective date of May 10, 2007. *See* Complaint, ¶32. The May 5, 2004 facsimile provided notice to plaintiffs of the claim three years and five days prior to the tolling of the statute of limitations, and thus, the statute of

---

[2] Kratz' Defendants do not waive their prior arguments, nor the right to argue in the future, that Plaintiffs' possessed, for the purposes of accrual, knowledge of their injury prior to May of 2004.

limitations was not met with respect to the Kratz Defendants. The Kratz Defendants respectfully request dismissal at this time.

Respectfully submitted,

CARR MALONEY P.C.

By: \_\_\_\_\_/s/_____
Michael J. Sepanik, #471594
1615 L Street, N.W.
Suite 500
Washington, D.C.  20036
(202) 310-5500 (Telephone)
(202) 310-5555 (Facsimile)
mjs@carrmaloney.com

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the *Kratz Defendants' Reply to Plaintiffs' Opposition to Motion to Dismiss, Or In The Alternative, For Summary Judgment* was filed electronically and emailed on this 16th day of May, 2008 to:

Creighton R. Magid, Esquire
Dorsey & Whitney LLP
1050 Connecticut Avenue, N.W., Suite 1250
Washington, D.C. 20036

Paul T. Meiklejohn, Esquire
Curt R. Hineline, Esquire
Mark S. Carlson, Esquire
Dorsey & Whitney LLP
U.S. Bank Centre
1420 Fifth Avenue, Suite 3400
Seattle, Washington 98101

Christopher Mead, Esquire
Mark London, Esquire
London & Mead
1225 19th Street, N.W., Suite 320
Washington, D.C. 20036

_/s/_____
Michael J. Sepanik
mjs@carrmaloney.com

limitations was not met with respect to the Kratz Defendants. The Kratz Defendants respectfully request dismissal at this time.

                                                        Respectfully submitted,

                                                        CARR MALONEY P.C.

By:      /s/
            Michael J. Sepanik, #471594
            1615 L Street, N.W.
            Suite 500
            Washington, D.C. 20036
            (202) 310-5500 (Telephone)
            (202) 310-5555 (Facsimile)
            mjs@carrmaloney.com

**EXHIBIT 1**

Case 1:08-cv-00355-RMU    Document 28-2    Filed 05/16/2008    Page 2 of 8

itami patent office

| | |
|---|---|
| 差信者 | "James Armstrong III" <jarmstrongIII@armstrongpat.com> |
| 宛先 | <itampt@mua.biglobe.ne.jp> |
| 送信日時 | 2005年5月21日 5:53 |
| 件名 | Dear Itami san, |

1/1 ページ

Dear Itami san,

Thanks for your e-mail of May 20, 2005. There was some mix-up between my secretary and me because the insurance letter could not be easily sent by e-mail. I am sending it to you today separately by facsimile.

I still believe that the case is ripe for immediately demanding a substantial monetary settlement. Under Washington, D.C. law (and the laws of every state,) there are time limits (called statutes of limitation) within which claims for money damages can be made in court. The damage occurred according to the insurance company letter when the Federal Circuit denied rehearing on May 18, 2004 (actually the Federal Circuit denial was published on June 10, 2004 and the Supreme Court petition was denied on October 18, 2004). Any subsequent action by the U.S. PTO is simply procedural and will have not effect on the loss of right which resulted from the Federal Circuit decision of May 4, 2004 and become final after all appeals were exhausted (October 18, 2004).

According to D.C. law, legal actions for injury to personal property (in this case, a patent) must be brought within 3 years from the date on which the injury occurred. Therefore, now the time is ripe to make a demand. Because of the Hatsumei Kyokai article, publicity concerning the real facts would be more damaging than any amount of money to be paid.

I will be pleased to answer any further questions your client may have.

With kind regards,

James E. Armstrong, III

JEA/cs


EXHIBIT
1

# EXHIBIT 2

05/05/2004 17:24 FAX 202 775 9241    WESTERMAN HATTORI    ☒001/005



## WESTERMAN HATTORI DANIELS & ADRIAN, LLP

B

# FACSIMILE

1250 Connecticut Avenue, NW — Suite 700
Washington, DC 20036

Tel: (202) 822-1100
Fax: (202) 822-1111

| | |
|---|---|
| Date: | May 5, 2004 |
| To: | |
| TO: | Mr. Kenji Itami |
| | Itami Patent Office |
| | Daisan Building |
| | 2-4, 3-chome, Nishitenma, Kita-ku |
| | Osaka, 530-0047, JAPAN |
| RE: | 03-1479 |
| | Interference No. 103,662 |
| | Stevens v. Tamai |
| FROM: | Edward Kenehan |
| FAX TEL. NO.: | 011-81-6-6365-8577 |
| Number of Pages: | 5 (including cover sheet) |
| Remarks: | Kindly refer to the attached. The confirmation copy will be sent to your office via U.S. Postal Service. |



*THE INFORMATION CONTAINED IN THIS MESSAGE IS CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED.* This message may also be an attorney/client communication which is privileged and confidential. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by calling us collect and return the original message to us at the above address by mail. Thank you.



EXHIBIT 2

05/05/2004 17:24 FAX 202 775 9241       WESTERMAN HATTORI                          ⌀002/005



WESTERMAN
HATTORI
DANIELS &
ADRIAN, LLP

WILLIAM F. WESTERMAN    THOMAS E. BROWN*       PATENT AGENT
KEN HATTORI             MICHAEL N. LAU          SHUJI YOSHIZAKI
SCOTT M. DANIELS        MICHAEL J. CARIDI
STEPHEN B. ADRIAN       M. SCOTT ALPRIN         JAPANESE BENRISHI
JOHN P. KONG            JOSEPH L. FELBER        TOMOKO NAKAJIMA
SADAO KHASHI            KENNETH H. SALEN*       YASUHISA KUROSE
THOMAS J. MACPEAK
EDWARD F. KENEHAN, JR.   *Practice limited to matters not
NICOLAS E. SECKEL*       requiring bar membership


May 5, 2004

<u>*VIA FACSIMILE*</u>

Mr. Kenji Itami
Itami Patent Office
Daisan Building
2-4, 3-chome, Nishitenma, Kita-ku
Osaka, 530-0047, Japan



              Re:    03-1479
                     Interference No. 103,662
                     Stevens v. Tamai

Dear Mr. Itami:

   We are very disappointed with the Federal Circuit decision in Stevens v. Tamai.

<u>Analysis of the Decision</u>

   We believe that the decision includes legal errors, as well as mischaracterizations of the written record and the oral argument. We therefore present later in this letter a series of options for Tamai to consider.

   The court confuses the provisions of 35 USC 363 with those of 35 USC 365. For example, at page 8 of the decision, it is stated:

> A party to an interference seeking to be "accorded the benefit of the filing date of an earlier filed application" under 37 C.F.R. 1.633(f) is seeking to establish an effective filing date. See id. at 1351-52. "The effective filing date of an application is the filing date of an earlier application, benefit of which is accorded to the application under 35 U.S.C. 119, 120, 121, or 365 . . . ." 37 C.F.R. § 1.601(g); see also Hyatt, 146 F.3d at 1352 ("When a party to an interference seeks the benefit of an earlier-filed United States patent application, the earlier application must meet the requirements of 35 U.S.C. § 120 . . . .").

Also, at pages 11 and 12, it is stated:

> Subject to 35 U.S.C. § 119(a)-(d), section 365(a) of title 35 grants national applications the benefit of corresponding international applications which designated at least one country other than the United States.

WASHINGTON OFFICE:  1250 CONNECTICUT AVE., N.W., SUITE 700, WASHINGTON, D.C. 20036  |  TEL. 202.822.1100  |  FAX. 202.822.1111  |  www.WHDApatentlaw.com
TOKYO OFFICE:  COSMO SHINJUKU GYOEN BLDG. 6F, 1-1-7 SHINJUKU, SHINJUKU-KU, TOKYO, 160-0022, JAPAN  |  TEL. 03.3356.1527  |  FAX. 03.3356.1529

05/05/2004 17:25 FAX 202 775 9241    WESTERMAN HATTORI                    ☐003/005

Mr. Kenji Itami
Page 2
May 5, 2004

The provisions of 35 USC 365, however, do not apply to the present interference. 35 USC 365 applies when an applicant claims priority benefit to a PCT application or claims continuing status to the PCT application. When an applicant enters the national stage of a PCT application, 35 USC 365 does not apply. Rather, 35 USC 363 applies when one enters the national stage of a PCT application.

35 USC 363 dictates that for all purposes other than 35 USC 102(e), a national stage application regularly filed in the United States has the filing date of the international (PCT) application. There is no question of priority or benefit of an earlier application. The PCT application is not an earlier application, because the filing date of the national stage application is the filing date of the PCT application.

Therefore, all the statements in the decision, that the filing date of the '183 application was the date of entry into the national stage, and that Tamai needed to be accorded the "benefit of" the "earlier filed" PCT application are in error.

There is no authority for the Interference Board to take away the filing status accorded by 35 USC 363. At page 12 of the decision, the court cites 35 USC 372(b)(2), stating:

> And, while overlooked by Tamai, 35 U.S.C. § 372(b)(3) permits the Director to "require a verification of the translation of the international application or any other document pertaining to the application if the application or other document was filed in a language other than English."

Tamai has not overlooked this provision. Rather, the court has misinterpreted it.

35 USC 372(b)(3) gives the Director (Commissioner of the USPTO) the statutory authority to promulgate a Rule for requiring a verification of the translation of the international application, as a condition for entering the national stage. That Rule is 37 CFR 1.495(f). Tamai complied with this Rule and was granted entry into the national stage. Therefore, the Board had no authority to revoke the national stage status of Tamai's '183 application or to require any further verification of the translation.

A mischaracterization of the record occurs at page 8 of the decision, where it is stated:

> In the matter at hand, the Board held that because Tamai did not file with his motion for benefit an English language translation of the PCT '947 application and an affidavit attesting to the accuracy of the translation, Tamai had not proven that he was entitled to be accorded the filing date of the '947 application.

The Board never made any reference to an affidavit attesting to the accuracy of the translation. In opposing Tamai's motion, Stevens also made no reference to an affidavit attesting

05/05/2004 17:25 FAX 202 775 9241          WESTERMAN HATTORI                    ⌀004/005

Mr. Kenji Itami
Page 3
May 5, 2004

to the accuracy of the translation. Any alleged requirement for Tamai to file an affidavit attesting to the accuracy of a translation was effectively waived by Stevens and the Board.

### Options Regarding the Decision

(1)  We are considering a number of options for going forward. One option is to request reconsideration. The filing date for such a request expires within 14 days of the court's decision. This request may be made to the original 3 judge panel and/or to the entire court on banc. Although such requests are rarely granted, there is at least a chance in the present decision, in view of the above-noted conflicts between (1) the interference Rules, as applied in the present decision and (2) the Patent Cooperation Treaty, as codified in 35 USC 363.

Another option would be to file a motion to reopen the testimony period, when the interference is remanded to the Board. This motion could be brought before or after the Board enters judgment. This motion would point out that any failure of Tamai to serve documents to Stevens was the result of an honest misunderstanding. We would again point out that Stevens is in possession of the translation (i.e., the '183 application), which Stevens noted was not served with Tamai's motion. Stevens has argued that this lack of service has shielded Stevens from pointing out any inaccuracies in the translation. The interests of justice would be served by an inter partes determination as to whether the '183 application is an accurate translation of the PCT. Stevens should be required to point out any inaccuracies in the translation.

We would argue that this motion could not have been brought earlier, because the Board had previously awarded priority to Tamai, and, therefore, such a motion was unnecessary.

(2)  Another option would be to try to appeal the new Board decision to a U.S. District Court. We could argue that any disputed inaccuracies in the '183 application, as a translation of the PCT, became relevant only when judgment was taken away from Tamai and given to Stevens. The District Court would be the venue to determine this new and important issue not considered by the Board. If the Board denies or dismisses a motion by Tamai to reopen the testimony period, we could also ask a District Court to review the decision of whether it was proper for the Board to so deny or dismiss such a motion.

(3)  Another option would involve an appeal to the Supreme Court. However, since the interference has been remanded to the Board, such an appeal might have to wait until the remand procedure is completed.

We are still in the process of considering the best possible options, and we will provide you with further comments, as soon as possible.

Mr. Kenji Itami
Page 4
May 5, 2004

**Options Regarding the New Prior Art**

On another issue, we recently reviewed the Decision of the Technical Board of Appeal dated June 24, 2003, enclosed with your letter of September 18, 2003. Since the corresponding EP Patent No. 551522 was revoked, there may be a substantial question of patentability for the claims of the present application, as well as those of the Stevens patent. Despite the results of the interference, the Examiner must consider the Decision and the cited prior art in reviewing all the claims during *ex parte* prosecution. The allowability of claim 20 (identical to the interference count) will also be reviewed.

In particular, the prosecution history for the present application emphasized that the sideways application of the correction tape or "handling like an ordinary writing tool such as a pencil ball-point pen fountain pen, etc., in a so-called lateral drawing use" was "a very important aspect of the present invention" (see, e.g., April 18, 1995 Amendment, pages 7 and 8). However, French Patent FR 2 643 351 discloses an applicator apparently having a sideways-oriented tip. The applicator may be used for applying a white band for masking text (page 1, lines 9-12). The Decision found the EP Patent obvious over this reference, in combination with EP 0 427 870 (for disclosing the use of two spools instead of the one spool in the French patent). The U.S. Examiner will consider all of these factors when he again takes up examination of the case.

Therefore, we are also considering procedural strategies to address this prior art issue. For instance, we are considering the usefulness of filing a motion for invalidity of the Stevens patent upon remand of the case to the Board (if possible) and/or filing a Request for Re-examination of the Stevens patent, as well as the implications of this issue if we appeal to the District Court. We will provide you more details on this point shortly.

Very truly yours,

WESTERMAN, HATTORI, DANIELS & ADRIAN, LLP

Edward F. Kenehan, Jr.

William F. Westerman

John P. Kong