# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SEED COMPANY LIMITED<br>3-5-25 Uchindai-cho Miyakojima-ku<br>Osaka, Japan 534-001 3, | ) <br> ) <br> ) <br> ) |
| SHIGERU TAMAI<br>2-1-33 Asahigaoka, Ikeda-shi<br>Osaka, Japan 563-0022, | ) <br> ) <br> ) |
| | ) |
| **Plaintiffs,** | ) <br> ) |
| **v.** | ) <br> ) |
| WILLIAM F. WESTERMAN<br>10409 Shepherds Crook Court, # C<br>Potomac, MD 20854-1902 | ) <br> ) <br> ) <br> ) |
| SERVE: Mark London, Esquire<br>London & Mead<br>1225 19th Street, N.W., Suite 320<br>Washington, D.C. 20036 | ) <br> ) <br> ) <br> ) |
| WESTERMAN, HATTORI, DANIELS &<br>ADRIAN, LLP,<br>1250 Connecticut Avenue, N.W., Suite 700<br>Washington, D.C. 20036 | ) <br> ) <br> ) <br> ) |
| SERVE: Mark London, Esquire<br>London & Mead<br>1225 19th Street, N.W., Suite 320<br>Washington, D.C. 20036 | ) <br> ) <br> ) <br> ) |
| KRATZ, QUINTOS & HANSON, LLP<br>1420 K Street, N.W., Suite 400<br>Washington, D.C. 20005 | ) <br> ) <br> ) |
| SERVE: Don Hanson, Esquire<br>Kratz, Quintos & Hanson, LLP<br>1420 K Street, N.W., Suite 400<br>Washington, D.C. 20005 | ) <br> ) <br> ) <br> ) |
| ARMSTRONG, KRATZ, QUINTOS,<br>HANSON & BROOKS, LLP,<br>1420 K Street, N.W., Suite 400<br>Washington, D.C. 20005 | ) <br> ) <br> ) <br> ) |

**CASE No: 1:08-CV-00355-RMU**

**JURY TRIAL DEMANDED**

SERVE: Don Hanson, Esquire )
Kratz, Quintos & Hanson, LLP )
1420 K Street, N.W., Suite 400 )
Washington, D.C. 20005 )
)
ARMSTRONG, WESTERMAN & )
HATTORI, LLP )
1420 K Street, N.W., Suite 400 )
Washington, D.C. 20005 )
)
SERVE: Don Hanson, Esquire )
Kratz, Quintos & Hanson, LLP )
1420 K Street, N.W., Suite 400 )
Washington, D.C. 20005 )
)
ARMSTRONG, WESTERMAN, HATTORI, )
McLELAND & NAUGHTON, LLP )
1420 K Street, N.W., Suite 400 )
Washington, D.C. 20005 )
)
SERVE: Don Hanson, Esquire )
Kratz, Quintos & Hanson, LLP )
1420 K Street, N.W., Suite 400 )
Washington, D.C. 20005 )
)
JOHN KONG )
10301 Grosvenor Place, Apt. 2101 )
Rockville, MD 20852-4692 )
)
SERVE: Mark London, Esquire )
London & Mead )
1225 19th Street, N.W., Suite 320 )
Washington, D.C. 20036 )
)
ED KENEHAN )
14405 Cervantes Avenue )
Germantown, MD 20874-3356 )
)
SERVE: Mark London, Esquire )
London & Mead )
1225 19th Street, N.W., Suite 320 )
Washington, D.C. 20036 )
)
)
)
)

| | |
|---|---|
| JAMES ARMSTRONG, III (deceased) | ) |
| Susan Armstrong (Personal Representative) | ) |
| C/O Coggins, Harman & Hewitt | ) |
| 8905 Fairview Road, Suite 600 | ) |
| Silver Spring, MD 209 10 | ) |
| | ) |
| SERVE: John H. Harman, Esquire | ) |
| Coggins, Harman & Hewitt | ) |
| 8905 Fairview Road, Suite 600 | ) |
| Silver Spring, MD 20910 | ) |
| | ) |
| The Estate of James Armstrong, III | ) |
| Susan Armstrong (Personal Representative) | ) |
| C/O Coggins, Harman & Hewitt | ) |
| 8905 Fairview Road, Suite 600 | ) |
| Silver Spring, MD 20910 | ) |
| | ) |
| SERVE:  Paul J. Maloney, Esquire | ) |
| Carr Maloney, P.C. | ) |
| 1615 L Street, N.W., Suite 500 | ) |
| Washington, D.C.  20036 | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## FIRST AMENDED COMPLAINT FOR LEGAL MALPRACTICE

Plaintiffs Seed Co. Ltd. and Shigeru Tamai (collectively referred to herein as "Seed" or

"Plaintiffs"), for their complaint against the above-listed Defendants, allege and pray as follows:

## NATURE OF THE ACTION

1.      This is an action for professional legal malpractice by the above-listed Defendants

during the litigation of Patent Interference No. 103,662 (the "Interference") before the Board of

Patent Appeals and Interferences (the "Board") of the United States Patent and Trademark Office

("USPTO"), during the appeal of the Board's ruling in the Interference to the United States Court

of Appeals for the Federal Circuit, and during the subsequent proceedings that followed.

## THE PARTIES

2.      Plaintiff Seed is a limited liability company, organized and existing under the laws of Japan, with offices in Osaka, Japan. Seed is in the business of the design, development, manufacture and distribution of office and stationary supplies such as plastic erasers, rubber erasers and correction tape; and in the business of licensing others to market and sell its products in Japan, Europe, and the United States, including this judicial district. Seed is the owner by assignment of all Seed patent applications referred to herein.

3.      Plaintiff Shigeru Tamai is an individual who resides in Osaka, Japan. Mr. Tamai is the inventor of the subject matter claimed in all Seed patent applications referred to herein.

4.      Kratz, Quintos & Hanson, LLP (including all predecessor firms, by whatever name, dating from March 13, 1993) is a limited liability partnership that, on information and belief, is organized and existing under the laws the District of Columbia, and is engaged in the business of providing legal services, including patent prosecution, in the United States, including this judicial district. Kratz, Quintos & Hanson, LLP is the successor of Armstrong, Kratz, Quintos, Hanson & Brooks, LLP, which in turn, is the successor of Armstrong, Westerman & Hattori, LLP, which is a successor of Armstrong, Westerman, Hattori, McLeland & Naughton, LLP, which were all limited liability partnerships that, on information and belief, were organized and existed under the laws the District of Columbia, and were engaged in the business of providing legal services, including patent prosecution, in the United States, including this judicial district. Armstrong, Westerman, Hattori, McLeland & Naughton, LLP was originally engaged by Seed to prosecute patent applications and to litigate the Interference. Kratz, Quintos & Hanson, LLP; Armstrong, Kratz, Quintos, Hanson & Brooks, LLP; Armstrong, Westerman & Hattori, LLP; Armstrong, Westerman, Hattori, McLeland & Naughton, LLP, and any and all

other predecessor or successor firms of any of the foregoing firms, by whatever name, dating from March 13, 1993, to the present, are referred to collectively herein as "the Kratz firm."

5.     Westerman, Hattori, Daniels & Adrian, LLP ("the Westerman firm") is a limited liability partnership that, on information and belief, is organized and existing under the laws of the District of Columbia and is engaged in the business of providing legal services, including patent prosecution, in the United States, including this judicial district.  The Westerman firm was engaged by Seed to prosecute patent applications and to litigate the Interference.

6.     William F. Westerman, Esq., is an individual who, on information and belief, resides in Washington, D.C., and is engaged in the business of providing legal services, including patent prosecution, in the United States, including this judicial district.  Mr. Westerman was engaged by Seed to prosecute patent applications and to litigate the Interference while an attorney at Armstrong, Westerman, Hattori, McLeland & Naughton, LLP; at Armstrong, Westerman & Hattori, LLP; and subsequently at the Westerman firm.

7.     James Armstrong, III, Esq., was an individual who, on information and belief, resided in the State of Maryland and was engaged in the business of providing legal services, including patent prosecution, in the United States, including this judicial district.  Mr. Armstrong was engaged by Seed to prosecute patent applications and to litigate the Interference while an attorney at Armstrong, Westerman, Hattori, McLeland & Naughton, LLP; at Armstrong, Westerman & Hattori, LLP; and at Armstrong, Kratz, Quintos, Hanson & Brooks, LLP.  Mr. Armstrong is now deceased, and has been named herein as James Armstrong III (deceased).  For the sake of clarity, his estate is also named in this amended complaint.

8.     Ed Kenehan, Esq., is an individual who, on information and belief, resides in the State of Virginia and is engaged in the business of providing legal services, including patent

prosecution, in the United States, including this judicial district.  Mr. Kenehan was engaged by Seed to prosecute patent applications and to litigate the Interference while an attorney at the Westerman firm.

9.      John Kong, Esq., is an individual who, on information and belief, resides in Washington, D.C. and is engaged in the business of providing legal services, including patent prosecution, in the United States, including this judicial district.  Mr. Kong was engaged by Seed to prosecute patent applications and to litigate the Interference while an attorney at Armstrong, Westerman, Hattori, McLeland & Naughton, LLP; at Armstrong, Westerman & Hattori, LLP; and subsequently at the Westerman firm.

## JURISDICTION AND VENUE

10.  This Court has subject matter jurisdiction under 28 U.S.C. § 1332 since the Plaintiffs in this action are citizens of a foreign state, the Defendants are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11.  This Court has personal jurisdiction over the parties, and venue in this Judicial District is proper under 28 U.S.C. § 1391(b) and (c), because one or more of the Defendants resides in this Judicial District, a substantial part of the events or omissions giving rise to Plaintiffs' claim occurred in this Judicial District, and at all relevant times the Defendants conducted business in this Judicial District.

12.  The parties stipulated, in Tolling Agreements dated May 3, 2007, and May 10, 2007, to venue in the Superior Court of the District of Columbia. Subsequent to the execution of the Tolling Agreements, the Federal Circuit ruled in two cases that federal courts, pursuant to 28 U.S.C. § 1338, have exclusive jurisdiction over at least some types of legal malpractice cases involving issues of patent law.  Solely to avoid any possible statute of limitations issues,

Plaintiffs have filed, concurrently with this action, a similar action in the Superior Court of the District of Columbia.

## FACTS

13.  On July 31, 1991, Seed filed Japanese Patent Application No. 3-68371 ("JP '371 application"). The JP '371 application was filed in the Japanese language.

14.  On July 24, 1992, Seed filed Patent Cooperation Treaty ("PCT") Application No. PCT/JP92/100947 ("PCT application"). The PCT application was filed in the Japanese language.

15.  The claims of JP '371 and the PCT application are directed to a correction tape dispenser.

16.  On about March 13, 1993, Seed engaged the Kratz firm to prepare and prosecute the United States national phase of the PCT application directed to the subject matter claimed in the JP '371 and PCT applications. Attorneys who were responsible for the Seed files at various times included defendants Westerman, Armstrong, Kenehan, and Kong.

17.  On March 29, 1993, the Kratz firm filed United States Patent Application Serial No. 08/030,183 ("'183 application") on behalf of Seed. The '183 application was directed to the subject matter claimed in the JP '371 and PCT applications.

18.  On February 15, 1994, the Kratz firm filed United States Patent Application Serial No. 08/196,839 ("'839 application") on behalf of Seed, which was a continuation-in-part of the '183 patent application.

19.  On February 7, 1994, Christopher Stevens filed a patent application, which subsequently issued on February 28, 1995, as U.S. Patent No. 5,393,368 ("Stevens patent"). The Stevens patent is directed to a correction tape dispenser.

20. On May 9, 1997, the USPTO found that the claims of Seed's '839 application and those of the Stevens patent were not patentably distinct and accordingly declared an Interference proceeding to determine the relative priority of the subject matter of the '839 application and the Stevens patent. Seed's '839 patent application was accorded the benefit of the filing date of the '183 patent application, of which the '839 application was a continuation-in-part.

21. Seed did not oppose Stevens' motion seeking to be granted the benefit of the February 10, 1993, filing date of an earlier-filed United Kingdom patent application by Stevens.

22. On October 21, 1997, the Kratz firm filed, on behalf of Seed, a motion in the Interference asking the Board to grant the '839 application priority based upon the earlier filing dates of the PCT application and the JP '371 Japanese patent application. The Kratz firm filed an English language translation of the JP '371 Japanese patent application with the motion, but it did not file an English language translation of the PCT application.

23. On June 25, 2002, the Board issued its ruling. With respect to Seed's motion to be accorded the priority of the earlier filing dates of the PCT application and the JP '371 Japanese patent application, the Board granted the motion in part, and denied it in part. The Board ruled that as to the PCT application, Seed's attorneys had violated 37 C.F.R. §§ 637(f) and 1.647, which require that when a motion is filed seeking the earlier priority date of an application that is not in English, the motion must be accompanied by a certified English language translation of the application. Since the Kratz firm had not filed a certified English language translation of the PCT application with its motion, the Board denied Seed the benefit of the PCT's earlier filing date. The Board went on to rule, however, that Seed was entitled to claim priority based upon the still earlier filing date of the JP '371 patent application, a translation of which had accompanied Seed's motion. Because the JP '371 patent application had a filing date before

Stevens' UK application's filing date, the Board accorded priority to Seed. Consequently, Seed won the Interference.

24. The owner of the Stevens patent appealed the Board's ruling to the Federal Circuit. The Kratz firm continued to represent Seed with respect to this appeal, advising Seed that the appeal could entitle Seed to attorney's fees due to its frivolous nature.

25. On or about October 1, 2003, Defendant Westerman left the Kratz firm, together with Defendant Kong, and formed the Westerman firm.

26. On information and belief, Defendants Armstrong and the Kratz firm were aware that Defendant Westerman made critical mistakes both while representing Seed in the Interference, and while representing other Kratz firm clients. Despite such knowledge, they encouraged Seed to allow the newly formed Westerman firm to take the lead in handling all proceedings related to the Interference, while also attempting to retain all other legal work for Seed at the Kratz firm.

27. Defendants Westerman and Kong, with the addition of Defendant Kenehan, continued their representation of Seed in relation to the '839 application and the Interference at the Westerman firm. On behalf of the Westerman firm, they also continued the advice that Seed received from the Kratz firm, to the effect that the Stevens appeal was so frivolous that Seed could be able to collect sanctions such as attorneys' fees against the Stevens patent owner.

28. In a letter dated January 14, 2004, the owner of the Stevens patent offered to settle the Interference by each party granting to the other a royalty-free, non-exclusive license, including the right to sublicense.

29. On January 22, 2004, the Westerman firm incorrectly advised Seed in a letter from Defendant Westerman that even if Seed were to lose the pending Federal Circuit appeal, the

patent application would thereafter "be returned to the Examiner" and Seed would be permitted to "add or amend claims."

30.   Seed, in reliance upon such incorrect advice, decided not to accept the cross-license settlement offer from the owner of the Stevens patent.  Seed would have accepted this valuable settlement offer if Defendants had not negligently advised them regarding, among other things, its ability to protect its invention in the United States despite Defendants' failure to file an English language translation of the PCT application; its chance of success in the appeal pending before the Federal Circuit Court of Appeals; and its ability to raise new or amended claims before the patent examiner.

31.   On May 4, 2004, the Federal Circuit issued an opinion affirming the Board in part and reversing in part.  The Federal Circuit affirmed the Board's ruling that Seed was not entitled to the benefit of the priority date of the PCT application, but it reversed the ruling that Seed was entitled to the benefit of the earlier JP '371 Japanese application.  The Federal Circuit agreed with Stevens that 35 U.S.C. § 119(a) precluded Seed from directly claiming the benefit of the JP '371 application because the JP '371 application was filed more than one year before the '183 application, of which the '839 application was a continuation-in-part.  If Seed had been granted the benefit of the filing date of the PCT application, through the proper filing of an English language translation of its PCT application, Seed would have ultimately prevailed in the Interference.

32.   On July 12, 2004, the owner of the Stevens patent renewed the offer to settle in exchange for mutual cross-licenses, omitting only the provision for granting sublicenses.  Again, Seed, in reliance upon the Westerman firm's negligent advice, decided not to accept the cross-license settlement offer.

33.     For the next several years the Westerman firm continued negligently to advise Seed that it could still obtain a U.S. patent and related protections for its invention, and Plaintiffs believed that such protections were more valuable than the settlement offers they received from the owner of the Stevens patent.

34.     Statements and conduct such as that set forth above from the Westerman and Kratz firms had the effect of lulling Plaintiffs into believing that their rights would be protected.

35.     As part of his continuing representation of Seed in relation to the Interference, Defendant Armstrong offered advice regarding the malpractice claims that Seed might have due to the negligent representation provided by Defendants. This included advice as to when Plaintiffs could assert timely claims against Defendants.

36.     Defendant Armstrong advised in a May 21, 2005 email that in relation to the '839 application and the Interference, any malpractice claims did not accrue until between the Federal Circuit's denial of Seed's petition for rehearing, published on June 10, 2004, and the U.S. Supreme Court's denial of Seed's petition for *certiorari* on October 18, 2004. Defendant Armstrong further advised Seed that the statute of limitations for bringing a malpractice claim in the District of Columbia was three years from the date of accrual. Defendants Armstrong and the Kratz firm had a fiduciary relationship with Seed at the time they provided the advice.

37.     Such comments and conduct by Defendants Armstrong and the Kratz firm caused Seed to believe that it had until at least June 10, 2007, to assert timely malpractice claims against Defendants.

38.     The Westerman firm continued negligently to advise Seed that the patent prosecution of the Tamai application would continue in the USPTO after the termination of the

Interference. Consistent with this incorrect advice, the Westerman firm continued actively to represent Seed with respect to the '839 application before the USPTO through December 2006.

39.    By letter dated December 4, 2006, Defendant Westerman finally admitted that he and his firm had been "mistaken in thinking that the prosecution would reopen" if Seed lost the Federal Circuit appeal. Defendant Westerman conceded that instead, under 37 C.F.R. § 41.127(a)(2), "[a]dverse judgment against a claim is a final action of the [Patent] Office requiring no further action by the [Patent] Office to dispose of the claim permanently." Further, the Manual of Patent Examining Procedure ("MPEP") § 2308.01 provides that, if no claim is allowed by the Board, "no further action is needed from the examiner" and "a notice of abandonment should be issued."

40.    Seed's licensees have ceased paying royalties to Seed under the terms of their licenses to sell the subject matter in Seed's pending United States patent applications.

41.    Seed and Defendants Westerman and the Westerman firm entered a Tolling Agreement to toll the running of the statute of limitations on any claims for legal malpractice that Seed may have against Defendants, or any of them, effective May 3, 2007. The Tolling Agreements for the Kratz Firm, Armstrong, Kong and Kenehan had an effective date of May 10, 2007. Each Tolling Agreement expired by its own terms on December 31, 2007; however, they all included a provision that "[u]pon termination of the Agreement, any lawsuit commenced by Seed against the [Defendants herein] shall, as to all claims preserved by this agreement, be considered timely commenced if a Complaint is filed with sixty (60) days following termination of the Agreement."

## COUNT I

42.  Plaintiffs adopt and incorporate by reference the allegations of paragraphs 1-41, as if fully set forth herein.

43.  Defendants each formed an attorney-client relationship with Plaintiffs, and accordingly, each owed Plaintiffs a duty of care.

44.  The failure of Defendants to file a certified copy of an English language translation of the PCT application, in violation of 37 C.F.R. §§ 637(f) and 1.647, breached their respective duties of care, constituting legal malpractice.

45.  As a proximate consequence of the foregoing negligence, Plaintiffs have been damaged in an amount to be proved at trial, but in any event not less than $75,000, exclusive of interest and costs.

46.  Defendants, and each of them, are liable to Seed for all damages so proven.

## COUNT II

47.  Plaintiffs adopt and incorporate by reference the allegations of paragraphs 1-41, as if fully set forth herein.

48.  Defendants each formed an attorney-client relationship with Plaintiffs, and accordingly, each owed Plaintiffs a duty of care.

49.  The erroneous legal advice provided by Defendants, including that the Stevens appeal was frivolous; that Seed could obtain a U.S. patent and related protections for its invention regardless of Defendants' failure to file an English translation of the PCT application; and that even if Seed lost the pending Federal Circuit appeal, the patent application would thereafter "be returned to the Examiner" and Seed would be permitted to "add or amend claims" (contrary to 37 C.F.R. § 41.127(a)(2) and MPEP § 2308.01) and otherwise protect its rights to its

invention, breached the duty of care owed by an attorney to a client, and therefore, constitutes legal malpractice.

50.    Plaintiffs had opportunities to make settlement offers to the owner of the Stevens patent after Plaintiffs prevailed before the Board, and had opportunities to accept settlement offers from the owner of the Stevens patent before and after the Federal Circuit ruling. Plaintiffs' decision not to enter into a settlement with the owner of the Stevens patent was made in reliance on the erroneous legal advice provided by Defendants.  This incorrect advice was the proximate cause of Plaintiffs' loss of royalties that would have been earned had Plaintiffs agreed to settle with the owner of the Stevens patent.

51.    As a proximate consequence of Defendants' negligence, Plaintiffs have been damaged in an amount to be proved at trial, but in any event not less than $75,000, exclusive of interest and costs.

52.    Defendants, and each of them, are liable to Plaintiffs for all damages so proven.

## COUNT III (Contingent)

53.    Plaintiffs adopt and incorporate by reference the allegations of paragraphs 1-41, as if fully set forth herein.

54.    Count III is a contingent claim asserted in the alternative against the Kratz firm and the estate of James Armstrong III.

55.    The Kratz firm and Defendant Armstrong had a long-standing attorney-client relationship with Plaintiffs that existed through at least the Spring of 2005.

56.    In the Spring of 2005, the Kratz firm, including Defendant Armstrong, provided legal advice to Plaintiffs regarding the statute of limitations in the District of Columbia and the time period in which any malpractice or other claims could timely be asserted against Defendants by Seed.

57. Plaintiffs were owed fiduciary duties by Defendants Armstrong and the Kratz firm at the time of this advice. If Defendants herein prevail in asserting that Plaintiffs' claims are untimely, then Defendants Armstrong and the Kratz firm's advice on the statute of limitations was erroneous, breached a duty of care to Plaintiffs, and constitutes malpractice.

58. Such malpractice injured Plaintiffs in an amount to be proven at trial, including the full amount of the damages that Plaintiffs seek in Counts I and II of their Complaint.

59. The Kratz firm and the Estate of James Armstrong III, and each of them, are liable to Plaintiffs for all damages so proven.

### COUNT IV (Contingent)

60. Plaintiffs adopt and incorporate by reference the allegations of paragraphs 1-41, as if fully set forth herein.

61. Count IV is a contingent claim asserted in the alternative against the Kratz firm and the estate of James Armstrong III.

62. Defendants Armstrong and the Kratz firm, in the course of their business, profession, or employment, supplied information to Plaintiffs regarding the date by which Plaintiffs could timely assert a claim related to the negligent legal representation that Defendants herein provided in the Interference and related proceedings.

63. Defendants Armstrong and the Kratz firm knowingly supplied this information for use by Plaintiffs in their business, and had a duty to use reasonable care in providing such information.

64. If Defendants herein prevail in asserting that Plaintiffs' claims are untimely, then Defendants Armstrong and the Kratz firm's communications to Plaintiffs conveyed false and misleading information related to the date by which Plaintiffs could file timely legal claims against Defendants.

65.  Defendants Armstrong and the Kratz firm's negligent misrepresentations were relied on by Plaintiffs to their detriment.  As a proximate consequence of Defendants' negligence, Plaintiffs were injured in an amount to be proven at trial, including the full amount of the damages that Plaintiffs seek in Counts I and II of their Complaint.

66.  Defendants the Kratz firm and the estate of James Armstrong III, and each of them, are liable to Plaintiffs for all damages so proven.

PRAYER FOR RELIEF WHEREFORE, Plaintiffs respectfully ask that the Court:

1.    Enter judgment in favor of Plaintiffs on Count I; and

2.    Enter judgment in favor of Plaintiffs on Count II; or

3.    In the alternative to judgment on both Counts I and II as to all Defendants, enter judgment in favor of Plaintiffs on Counts III and IV;

4.    Order that all attorney's fees paid by Plaintiffs to Defendants be disgorged and paid to Plaintiffs;

5.    Award Plaintiffs damages in an amount to be proved at trial;

6.    Award Plaintiffs their reasonable attorney's fees, costs, and expenses; and

7.    Award Plaintiffs such other and further relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiffs hereby demand trial by jury of all issues so triable.

Dated:  May 21, 2008

Respectfully submitted,

Creighton R. Magid (D.C. Bar No. 476961)
DORSEY & WHITNEY LLP
1050 Connecticut Avenue, N.W., Suite 1250
Washington, D.C. 20036
Telephone: (202) 442-3555
Fax: (202) 442-3 199
magid.chip@dorsey.com

Counsel For Plaintiffs
SEED COMPANY LIMITED and
SHIGERU TAMAI

OF COUNSEL:

Paul T. Meiklejohn
Curt R. Hineline
James E. Howard
Mark S. Carlson
DORSEY & WHITNEY LLP
U.S. Bank Centre
1420 Fifth Avenue, Suite 3400
Seattle, WA 98101 -4010
Telephone: (206) 903-8800
Fax: (206) 903-8820

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of May, 2008, a copy of the foregoing FIRST

AMENDED COMPLAINT FOR LEGAL MALPRACTICE was sent by first-class mail, postage

prepaid to:

Christopher B. Mead, Esquire
London & Mead
1225 19th Street, N.W., Suite 320
Washington, D.C. 20036

Paul J. Maloney, Esquire
Carr Maloney, P.C.
1615 L Street, N.W., Suite 500
Washington, D.C. 20036

John H. Harman, Esquire
Coggins, Harman & Hewitt
8905 Fairview Road, Suite 600
Silver Spring, MD 20910

                                        Creighton R. Magid