**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SEED COMPANY, LTD., et al,**<br><br>**Plaintiffs**<br><br>**v.**<br><br>**WILLIAM F. WESTERMAN, et al.**<br><br>**Defendants.** | **Civil No. 1:08-cv-00355 (RMU)** |

**MOTION OF WESTERMAN DEFENDANTS TO DISMISS FIRST AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, ON STATUTE OF LIMITATIONS AND CAUSATION GROUNDS**

Defendants William F. Westerman; Westerman, Hattori, Daniels & Adrian, LLP; Armstrong, Westerman & Hattori; Armstrong, Westerman, Hattori, McLeland & Naughton, LLP; John Kong; and Ed Kenehan (collectively "the Westerman Defendants"), move this court to dismiss the First Amended Complaint. In support of their motion, the Westerman Defendants submit the attached Memorandum of Points and Authorities, and ask the Court to incorporate their previously briefed Motion to Dismiss, which applies with equal force to the First Amended Complaint.

Respectfully submitted,

Mark London
Christopher B. Mead
London & Mead
1225 19th Street, N.W., Suite 320
Washington, D.C. 20036
(202) 331-3334

Counsel for Defendants William F. Westerman;
Westerman, Hattori, Daniels & Adrian, LLP;
Armstrong, Westerman & Hattori; Armstrong,
Westerman, Hattori, McLeland & Naughton, LLP;
John Kong; and Ed Kenehan

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SEED COMPANY, LTD., et al,**<br><br>**Plaintiffs**<br><br>**v.**<br><br>**WILLIAM F. WESTERMAN, et al.**<br><br>**Defendants.** | **Civil No. 1:08-cv-00355 (RMU)** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WESTERMAN DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, ON STATUTE OF LIMITATIONS AND CAUSATION GROUNDS**

Plaintiffs have filed a First Amended Complaint before the Court had an opportunity to decide fully briefed motions to dismiss. Apparently acknowledging the force of Defendants' statute of limitations arguments, Plaintiffs added new Counts III and IV against the Kratz firm and the estate of James Armstrong III, alleging that the Kratz firm and Armstrong gave them bad advice about the applicable statute of limitations date.

The new allegations against the Kratz firm do not apply to the Westerman Defendants.[1] Accordingly, the Westerman Defendants' renew their previously-filed and fully briefed Motion to Dismiss, and ask the Court to incorporate their previously filed Memorandum in Support and Reply in support of this Motion to Dismiss the First Amended Complaint.

**SUPPLEMENTAL ARGUMENT ADDRESSED TO AMENDMENT OF COMPLAINT**

The First Amended Complaint made only one change of relevance to the Westerman

[1]The "Westerman Defendants" are William F. Westerman; Westerman, Hattori, Daniels & Adrian, LLP; John Kong; and Ed Kenehan.

Defendants' Motion to Dismiss. Paragraph 28 of the initial Complaint alleged that "[i]n a letter dated January 14, 2004, the owner of the Stevens patent offered to settle the Interference by each party granting to the other a royalty-free, non-exclusive license, including the right to sublicense." Paragraph 32 of the initial Complaint alleged that "[o]n July 12, 2004, the owner of the Stevens patent renewed the offer to settle in exchange for mutual cross-licenses, omitting on the provision for granting sublicenses." In response to arguments by the Westerman Defendants that the initial Complaint failed to allege facts sufficient to demonstrate proximate causation, the First Amended Complaint added new paragraph 33, which says: "For the next several years the Westerman firm continued negligently to advise Seed that it could still obtain a U.S. patent and related protections for its invention, and Plaintiffs believed that such protections were more valuable than the settlement offers they received from the owner of the Stevens patent."

As the Westerman Defendants pointed out in the briefing on their Motion to Dismiss, Plaintiffs' descriptions of the settlement offers are misleading. The owner of the Stevens patent did not offer to settle for cross-licenses on the patent rights <u>at issue in the Interference</u>. Instead, as the settlement letters referred to in the First Amended Complaint reveal, the owner of the Stevens patent demanded that Plaintiff Seed license its entire patent portfolio for "sideways tape dispensers."[2]

**<u>SUPPLEMENTAL ARGUMENT</u>**

---

[2]*See* letter dated January 14, 2004, from Stuart I. Graff to Yashuhiro Nishioka, attached as Exhibit 1, and letter dated July 12, 2004, from Stuart I. Graff to Yashuhiro Nishioka, transmitting draft Settlement and License Agreement, attached as Exhibit 2. In ruling on a motion to dismiss, this court may consider "documents attached as exhibits or incorporated by reference in the complaint...." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d. 191, 196 (D.D.C. 2002) (Walton, J.).

Because the settlement offers required Seed to license its entire patent portfolio for "sideways tape dispensers," it is not enough for Plaintiffs to allege that they believed the U.S. rights they still hoped to obtain from the patent application at issue in the interference were more valuable than the license Seed was offering. In order to allege causation, Plaintiffs must allege that they relied on the allegedly negligent legal advice, and turned down the settlement offers because they believed that the value of patent rights they hoped to obtain, minus the value of the licenses they would have to grant on their existing patent portfolio, exceeded their estimate of the value of the licenses offered. Plaintiffs' First Amended Complaint does not make this necessary allegation, because the First Amended Complaint does not acknowledge that the settlement offers demanded that Seed license its pre-existing portfolio for "sideways tape dispensers."

Further, in order to allege actual damages, Plaintiffs must show that if they had accepted the settlement offer, they would have made more money than they lost. Plaintiffs must demonstrate that the value of the Stevens patent licenses offered exceeded the value of the licenses that Seed would have had to provide in return. Plaintiffs have not made this crucial allegation. Accordingly, their claims based on the failure to settle in the First Amended Complaint must be dismissed.

The Westerman Defendants ask that if Plaintiffs request the opportunity to further amend their claims to cure these deficiencies, that the Court require them to demonstrate some good faith basis for alleging what appear to be inherently speculative damages.

## **CONCLUSION**

For the foregoing reasons, this Court should dismiss all claims against the Westerman

Defendants.

Respectfully submitted,

Mark London
Christopher B. Mead
London & Mead
1225 19th Street, N.W., Suite 320
Washington, D.C. 20036
(202) 331-3334

Counsel for Defendants William F. Westerman; Westerman, Hattori, Daniels & Adrian, LLP; John Kong; and Ed Kenehan

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**SEED COMPANY, LTD., et al,**

**Plaintiffs**

**v.**

**WILLIAM F. WESTERMAN, et al.**

**Defendants.**

**Civil No. 1:08-cv-00355 (RMU)**

**ORDER**

This matter having come before this Court on this _____ day of _______, 2008 on Motion Of Westerman Defendants to Dismiss First Amended Complaint, or in the Alternative, for Summary Judgment, on Statute of Limitations and Causation Grounds, and this Court having considered said Motion and any opposition thereto, it is hereby

ORDERED, that all claims against defendants William F. Westerman; Westerman, Hattori, Daniels & Adrian, LLP; John Kong and Ed Kenehan be and hereby are dismissed.

_________________________________
U.S. District Court Judge Ricardo Urbina

# EXHIBIT 1

Received at: 1:07PM, 1/14/2004

Jan-14-04 12:07pm From-Newell Legal Department 815-381-8160 T-753 P.002/003 F-770

Stuart I. Graff
Senior Counsel
Director of Intellectual Property Law
(815) 381-8117
fax (815) 381-8160
email stuart.graff@newellco.com

**NewellRubbermaid**

January 14, 2004

VIA FACSIMILE to 011-81-6-6954-7851

Mr. Yashuhiro Nishioka
SEED CO., LTD.
3-5-25, Uchindai-cho
Miyakojima, Osaka-shi
Osaka 534-0013
JAPAN

**Re: U.S. Patent Interference No. 103,662**
**Stevens v. Tamai**

Dear Mr. Nishioka:

I am writing on behalf of our Sanford business unit, which, as you may know, is the successor to the stationary products group of Gillette. I have been given your name by your U.S. attorneys as the contact with whom I may conduct settlement negotiations in relation to the interference referenced above. It is with regret that I am writing in a date and so close to the oral hearing in this matter; we have requested for several months the name of a contact at Seed with whom we could speak regarding settlement, but your attorneys have not provided us with your name until last week.

It is our understanding at this stage that seed has secured several patents and countries outside the United States for transverse (sideways) action tape dispensers. At this stage, Sanford is the owner of a patent relating to such a tape dispenser in the United States. Given the relative sizes of the markets affected by such patents, and the interest and ability of both parties to compete in the tape dispenser category with or without the use of this patent, we suggest to settle this case on the following terms:

- Sanford will grant to Seed a royalty-free, perpetual, non-exclusive license under Sanford's U.S. patent relating to the transverse action tape dispenser.
- Seed will grant to Sanford a royalty-free, perpetual, non-exclusive license under Seed's patents outside the U.S. relating to the transverse action tape dispenser.

Received at: 1:07PM, 1/14/2004

Jan-14-04 12:07pm From-Newell Legal Department 815-381-8160 T-753 P.003/003 F-770

Mr. Yashuhiro Nishioka
January 14, 2004
Page 2

- Pursuant to such licenses, each party will permit the other two sublicense the manufacture, sale, and distribution of products made pursuant to the licensed patents.

Please let me know if Seed is interested pursuing such a cross-license agreement to settle this dispute.

Sincerely,

Stuart I. Graff

Stuart I. Graff

cc: Jim Zeller (via fax)
Edward F. Kenchan, Jr. (via fax to 202-822-1111)

# EXHIBIT
# 2

Received at: 3:58PM, 7/12/2004

Jul-12-04 02:56pm From-Newell Legal Department 630-481-1609 T-235 P.001/009 F-340

Stuart I. Graff
Associate General Counsel
Newell Rubbermaid
2707 Butterfield Road

**Newell Rubbermaid**

RECEIVED
JUL 12 2004
WESTERMAN, HATTORI, DANIELS, & ADRIAN, L.L.P.

# Fax

| To: | Edward F. Kenchan, Jr. | From: | Stuart I. Graff |
|---|---|---|---|
| Fax: | 202-822-1111 | Pages: | 9 |
| Phone: | | Date: | 7/12/2004 |
| Re: | U.S. Patent Interference No. 103,662<br>Stevens v. Tamai | CC: | |

☐ Urgent ☐ For Review ☐ Please Comment ☐ Please Reply ☐ Please Recycle

● **Comments:** Please see attached.

ACKNOWLEDGED
JUL 12 2004
WESTERMAN, HATTORI
DANIELS & ADRIAN, LLP

This message and any attachments may contain confidential information protected by the attorney-client or other privilege. If you believe that it has been sent to you in error, please reply to the sender that you received the message in error. Then discard it. Thank you.

Received at: 3:58PM, 7/12/2004

[illegible]

**Newell Rubbermaid**

Stuart I. Graff
Associate General Counsel
(630) 481-1686
fax (630) 481-1699
email stuart.graff@newellco.com

July 12, 2004

**VIA FACSIMILE to 011-81-6-6954-7851**

Mr. Yasuhiro Nishioka
President
SEED CO., LTD.
5-25, 3-Chome
Uchindai-cho, Miyakojima-ku
Osaka Japan

**Re: U.S. Patent Interference No. 103,662**
**Stevens v. Tamai**

Dear Mr. Nishioka:

Enclosed is a draft settlement agreement relating to the interference litigation referenced above. This draft corresponds to the principles of agreement outlined in our exchange of correspondence in this matter. Please revert to me with your comments on this draft, which I hope you will find acceptable, as soon as possible.

I note in passing that your counsel continues to press [illegible] before the U.S. Patent Office despite the final order of the Court in this matter. If we are forced to continue to incur expenses responding to the frivolous assertions of your counsel, we will seek from Seed, as part of the settlement, the reimbursement of our expenses to respond to those assertions. I hope that you will instruct your counsel to withdraw its current petition and to take no further actions that might derail our settlement.

Sincerely,

Stuart I. Graff

Attachment

cc: Jim Zeller (with attachment, via fax)
Carl Moore (with attachment, via fax)
Edward F. Kenchan, Jr. (with attachment, via fax)

2707 Butterfield Road Suite 100 Oak Brook, IL 60523 tel: 630-481-1650 fax: 630-481-1699

Received at: 4:05PM, 7/12/2004

Jul-12-04 03:04pm From-Newell Legal Department 630-481-1699 T-236 P.003/009 F-340

SETTLEMENT AND LICENSE AGREEMENT

This settlement and license agreement ("Agreement") effective as of this ___ day of July, 2004 ("Effective Date") is by and between Sanford, L.P., a limited partnership with an office located at 2707 Butterfield Road, Oak Brook, Illinois, USA 65023 ("Sanford"), and Seed Company, a limited liability corporation with an office located at [insert address], Osaka, Japan [insert postal delivery information] ("Seed"), each referred to as a "Party" and collectively as the "Parties."

**RECITALS**

This Agreement arises from an interference proceeding between the Parties which was before the Board of Patent Appeals and Interferences of the United States Patent and Trademark Office and captioned *Stevens v. Tamai*, Interference No. 103,662 (the "Interference Proceeding"). That interference was decided by the U.S. Court of Appeals for the Federal Circuit in a decision reported at 366 F.3d 1325 (Fed. Cir., May 4, 2004). Rather than to further contest this matter, and instead to settle this and all other disputes that may now exist between the Parties, the Parties desire to establish a royalty-free cross-license allowing (a) Sanford the right to practice the subject matter described and claimed in any of Seed Company's patents which cover the manufacture, use, and/or sale of sideways tape dispensers and (b) Seed Company the right to practice the subject matter described and claimed in Sanford's patents which cover the manufacture, use, and/or sale of sideways tape dispensers.

The Parties agree as follows:

**1. Definitions**

1.1 **"Affiliate"** means: (a) any entity that owns, is owned by, or is under common ownership with a Party; and (b) any entity controlled by, controlling, or under common control with a Party.

1.2 **"Field"** means tape dispensers used to dispense correction, adhesive, or similar tapes, using an action in which the tape dispenser is oriented substantially perpendicular to the line of the dispensed tape. For greater clarity, but without limitation, the action just described can be demonstrated in Sanford's [ ] product and in Seed's [ ] product.

1.3 **"Sanford's Licensed Product(s)"** means individually or collectively, depending on the specificity of the reference, any product or process claimed in whole or in part by a Valid Claim within Seed's Patent Rights.

1.4 **"Sanford's Patent Rights"** means those patents and/or patent applications within the Field including those listed on Exhibit A and all related U.S. and non-U.S. patent applications and patents issued therefrom, as well as any provisional, continuation, continuation-in-part, division, reexamination, addition, reissue, extension or supplementary protection certificate of any of the foregoing.

1.5 **"Seed's Licensed Product(s)"** means individually or collectively, depending on the specificity of the reference, any product or process claimed in whole or in part by a Valid Claim within Sanford's Patent Rights.

Received at: 4:05PM, 7/12/2004

Jul-12-04 03:04pm From-Newell Legal Department 630-481-1609 T-236 P.004/009 F-340

1.6 **"Seed's Patent Rights"** means those patents and patent applications within the Field including those listed on Exhibit B and all related U.S. and non-U.S. patent applications and patents issued therefrom, as well as any provisional, continuation, continuation-in-part, division, reexamination, addition, reissue, extension or supplementary protection certificate of any of the foregoing.

1.7 **"Term"** means the period of time from the Effective Date until the shorter of twenty years or the date of the last to expire of the Patent Rights, unless earlier terminated as provided herein.

1.8 **"Valid Claim"** means any claim within the Patent Rights, on a country-by-country basis: (a) in any patent application that has not been pending for more than ten years from its filing date; or (b) in a patent that has not expired, been abandoned or declared invalid and unenforceable by a non-appealable order. why limit section A "that has not been pending for more than ten years…"

2. **Grant of Rights**

2.1 **License Grant.** Subject to and in consideration for the terms of this Agreement, (a) Sanford grants Seed a perpetual, irrevocable, royalty-free, nonexclusive license within the Field, without the right to sublicense, under Sanford's Patent Rights to make, have made, use, sell, offer for sale, and import Seed's Licensed Products; and (b) Seed grants Sanford a perpetual, irrevocable, royalty-free nonexclusive license within the Field, without the right to sublicense, under Seed's Patent Rights to make, have made, use, sell, offer for sale, and import Sanford's Licensed Products.

3. **Representations, Warranties and Disclaimers**

3.1 Each Party represents and warrants to the other that:

(a) the execution and delivery of this Agreement has been duly authorized and no further approval, corporate or otherwise, is required in order to execute this binding Agreement;

(b) it shall comply with any applicable international, national, or local laws and regulations in its performance under this Agreement;

(c) its rights and obligations under this Agreement do not conflict with any contractual or legal obligation, or any court or administrative order, by which that Party is bound;

(d) it is the owner of the patent rights ascribed to it herein, and has all necessary right and authority to grant the rights herein; and

(e) it owns no other patent or intellectual property right, nor shall acquire any other patent or intellectual property right, that shall prevent the sale by the other Party of sideways tape dispensers, unless such other patent or intellectual property right is licensed to the other party under the terms set forth in Section 2.1.

Received at: 4:05PM, 7/12/2004

Jul-12-04 03:04pm From-Newell Legal Department 630-481-1699 T-236 P.005/009 F-340

3.2 **Prohibition Against Inconsistent Representations.** Neither Party shall make any statements, representations or warranties, or accept any liabilities or responsibilities whatsoever which are inconsistent with any disclaimer or limitation included in this section or any other provision of this Agreement.

4. **Confidentiality**

4.1 **Confidentiality of Agreement.** Except as otherwise required by law, by the terms of this Agreement, or mutually agreed upon by the Parties hereto, the specific terms and conditions of this Agreement shall be Confidential Information, but the existence and Field of this Agreement will not be Confidential Information. In accordance therewith, Seed is allowed to state that it has a license under Sanford's Patent Rights and Sanford is allowed to state that it has a license under Seed's Patent Rights.

5. **Mediation.**

5.1 If any dispute or controversy arising out of this Agreement cannot be settled through the negotiation of the Parties, the Parties agree to try in good faith to settle the controversy with mediation. The Parties shall share equally the costs of a mutually agreeable mediator.

6. **Mutual Releases.**

6.1 **By Seed.** Seed, on behalf of itself and its predecessors, successors, assigns, officers, directors, affiliates, agents and employees does hereby remise, release, acquit and forever discharge Sanford, and its partners, parents, subsidiaries, affiliates, customers, predecessors, successors, assigns, officers, directors, affiliates, agents and employees of and from every and any and all manner of action and actions and cause and causes of action, suits, debts, dues, sums of money, damages, judgments, claims and demands, and any and all consequential damages, punitive damages and statutory penalties whatsoever, including, by way of illustration and not limitation, all costs and expenses, including attorney's fees, whether known or unknown and whether presently existing or existing hereafter, which against them it now has or has had, by reason of, related to or in any way arising out of the Interference Proceeding or Seed's Patents..

6.2 **By Sanford.** Sanford, on behalf of itself and its predecessors, successors, assigns, partners, officers, directors, affiliates, agents and employees does hereby remise, release, acquit and forever discharge Seed, and its parents, subsidiaries, affiliates, customers, predecessors, successors, assigns, officers, directors, affiliates, agents and employees of and from every and any and all manner of action and actions and cause and causes of action, suits, debts, dues, sums of money, damages, judgments, claims and demands, and any and all consequential damages, punitive damages and statutory penalties whatsoever, including, by way of illustration and not limitation, all costs and expenses, including attorney's fees, whether known or unknown and whether presently existing or existing hereafter, which against them it now has or has had, by reason of, related to or in any way arising out of the Interference Proceeding or Sanford's Patents.

7. **Miscellaneous Provisions**

Received at: 4:05PM, 7/12/2004

Jul-12-04 03:05pm From-Newell Legal Department 630-481-1699 T-236 P.006/009 F-340

7.1 **Governing; Jurisdiction and Venue.** Any dispute arising under this Agreement shall be negotiated or mediated in Chicago, Illinois, U.S.A., This Agreement will be construed in accordance with and governed by the laws of the State of Illinois, without giving effect to the principles of conflict of laws thereof, except that questions affecting the construction and effect of any patent shall be determined by the law of the country in which the patent was granted. The parties agree that any litigation will be subject to the exclusive jurisdiction and venue of the Illinois state courts located in Cook County, Illinois (or, if there is exclusive federal jurisdiction, the United States District Court for the Northern District of Illinois), and the parties hereby submit to the personal and exclusive jurisdiction and venue of these courts.

7.2 **Costs.** In any litigation between the Parties, the prevailing Party shall be entitled to recover its costs, including attorneys' fees.

7.3 **Entire Agreement.** This Agreement and its Exhibits constitute the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior communications, agreements or understandings, written, electronic or oral. No modification, amendment, or waiver of this Agreement, or any of its provisions, shall be effective unless executed by both Parties in writing. Each Party acknowledges that, in entering into this Agreement, it did not rely on any representation, warranty or other assurance from the other Party except as expressly provided herein. Notwithstanding the foregoing, nothing in this Agreement shall affect the liability of either Party for any fraudulent misrepresentation. Each Party acknowledges that it was provided an opportunity to seek advice of counsel and as such this Agreement shall not be strictly construed for or against either Party.

7.4 **Assignment.** Neither Party may assign or otherwise transfer its rights and/or obligations under this Agreement without the consent of the other, except to an Affiliate. Any assignment or transfer in contravention with this section shall be null and void.

7.5 **Use of Names.** Neither Party shall use the names or trademarks of the other nor any adaptation thereof without prior written consent obtained from the other in each separate case, except that the Parties may state that Seed is licensed under Sanford's Patent Rights and that Sanford is licensed under Seed's Patent Rights as previously described.

7.6 **Non-waiver.** The delay or failure of either Party to assert a right hereunder or to insist upon compliance with any term or condition of this Agreement shall not constitute a waiver of that right or excuse a similar subsequent failure to perform any such term or condition by the other Party. A valid waiver must be executed in writing and signed by the Party granting such waiver.

7.7 **Successor Obligation and Benefit.** This Agreement shall be binding on and inure to the sole benefit of the Parties and their permitted successors and assigns.

7.8 **Independent Contractors.** Nothing contained in this Agreement shall place the Parties in a partnership, joint venture or agency relationship and neither Party shall have the right or authority to obligate or bind the other Party in any manner.

7.9 **Headings.** The headings contained in this Agreement are for convenience of reference only and shall not be deemed a part of this Agreement or affect the meaning or interpretation of

Received at: 4:05PM, 7/12/2004

Jul-12-04 03:05pm From-Newell Legal Department 630-491-1699 T-236 P.007/009 F-340

this Agreement. Defined terms may be interchangeably referred to in the singular or plural tense, as the context requires, without effect to their definition.

7.10 **Executed in Counterparts; Delivery by Facsimile.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which taken together constitute one and the same instrument. An executed agreement transmitted by facsimile shall be given the same effect as an originally executed agreement.

7.11 **Notices.** Any notices to be given hereunder by one party to the other shall be sent to the address first written above (or such other address a party provides by notice under this Section) by overnight commercial courier (e.g., ,FedEx, DHL, etc.) requiring a signature upon delivery.

Sanford, L.P.

By:________________________
Stuart I. Graff, Assistant Secretary

Seed Company, Ltd.

By:________________________
[insert name, title]

Received at: 4:05PM, 7/12/2004

Jul-12-04 03:05pm From-Newell Legal Department 630-481-1699 T-236 P.008/009 F-340

## EXHIBIT A - SANFORD'S PATENT RIGHTS

**Patent**

U.S. Patent 5,393,368

**Patent Application**

Application number 08/940,815 (reissue of 5,393,368)

Received at: 4:05PM, 7/12/2004

Jul-12-04 03:06pm From-Newell Legal Department 630-481-1699 T-236 P.009/009 F-340

# EXHIBIT B - SEED'S PATENT RIGHTS

**Patents**

CA 2091996 C

DE 69224732 C0

DE 9219119 U1

EP 551522 B1

HK 1005775 A1

KR 168824 B1

**Patent Applications**

JP 3/68371 U

International Application No. PCT/JP92/00947