UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SEED COMPANY, LTD., et al. ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | CASE NUMBER 1:08-CV-00355-RMU |
| ) | |
| WILLIAM F. WESTERMAN, et al. ) | ORAL HEARING REQUESTED |
| ) | PURSUANT TO LCvR 7(f) |
| Defendants. ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO KRATZ DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Creighton R. Magid (D.C. Bar No. 476961)
DORSEY & WHITNEY LLP
1050 Connecticut Avenue, N.W., Suite 1250
Washington, D.C. 20036
Telephone:  (202) 442-3555
Fax:  (202) 442-31990
magid.chip@dorsey.com

James E. Howard (D.C. Bar No. 481455)
DORSEY & WHITNEY LLP
1420 Fifth Ave., Ste. 3400
Seattle, WA 98101
Tel:  (206) 903-2390
Fax:  (206) 903-8820
howard.james@dorsey.com

OF COUNSEL:
Paul T. Meiklejohn
Curt R. Hineline
Mark S. Carlson
DORSEY & WHITNEY LLP
U.S. Bank Centre
1420 Fifth Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone:  (206) 903-8800
Fax:  (206) 903-8820

Counsel For Plaintiffs
SEED COMPANY LIMITED and SHIGERU TAMAI

Dated:  June 26, 2008

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ............................................................................................................1

II.  FACTS .........................................................................................................................1

III. ARGUMENT .................................................................................................................5

IV. CONCLUSION..............................................................................................................8

## I.     INTRODUCTION

While the Kratz Defendants' motion to dismiss Plaintiffs' original complaint was pending, Plaintiffs filed an Amended Complaint, as permitted by Fed. R. Civ. P. 15, to add additional claims against the Estate of James Armstrong, III and the Kratz Defendants.[1]  The Amended Complaint also added clarifying allegations related to proximate cause.  In renewing their motion to dismiss, the Kratz Defendants adopt their prior briefing, and address only new matters raised by the Amended Complaint.  Plaintiffs follow suit, and below address only the allegedly "new" facts and arguments raised by the Kratz Defendants.  Accordingly, Plaintiffs adopt and incorporate herein by reference their previously-filed memorandum of points and authorities and supporting papers filed in opposition to the Kratz Defendants' motion to dismiss the original complaint.  In addition, this opposition is supported by the concurrently-filed Declarations of Masatoshi Shintani and Mark Carlson.  Plaintiffs also respectfully request the opportunity to present oral argument in support of their opposition.

## II.     FACTS

Plaintiffs adopt and incorporate their recitation of facts in their opposition to the Kratz Defendants' motion to dismiss the original complaint and statement of material facts (Dkt. No. 25-01), the Declaration of Masatoshi Shintani in support thereof (Dkt. No. 25-02), and the supporting declaration of James Howard (Dkt. No. 25-03), and their opposition to the Westerman Defendants' motion to dismiss the original complaint and supporting declarations of Messrs. Shintani and Howard (Dkt. Nos. 8-01, 8-02 and 8-03).  In addition, this opposition is supported

_____

[1]  On June 16, 2008, the Estate of James Armstrong, III filed a joinder in the Kratz Defendants' Motion to Dismiss First Amended Complaint, or in the Alternative, for Summary Judgment (Dkt 36).  Consequently, the term "Kratz Defendants," as used herein, includes the Estate of James Armstrong, III.

1

by the concurrently-filed Declaration of Masatoshi Shintani.  Facts that are specific to the Kratz

motion to dismiss the amended complaint are discussed briefly below.

In March 1993, Plaintiff Seed Company Ltd. ("Seed"), of Osaka, Japan, engaged the law

firm of Armstrong, Westerman, Hattori, McLeland & Naughton, LLP to procure a United States

patent.  Seed's invention was a type of correction tape dispenser, and the inventor was Plaintiff

Shigeru Tamai.  Plaintiffs Seed and Tamai are collectively referred to herein as "Plaintiffs" or

"Seed."  Between March 1993 and the present, Armstrong, Westerman, Hattori, McLeland &

Naughton, LLP changed its name several times, to Armstrong, Westerman & Hattori, LLP;

Armstrong, Kratz, Quintos, Hanson & Brookes, LLP; and finally to Kratz, Quintos & Hanson,

LLP ("Kratz Firm").

The Kratz Firm, including Defendants Westerman, Kenehan, Kong, and Armstrong, filed

and/or prosecuted patent applications on behalf of Seed.  On May 9, 1997, the United States

Patent and Trademark Office ("USPTO") declared an Interference (the "Interference") between

Seed's pending US '839 Application and a patent issued to Christopher Stevens on February 28,

1995 ("Stevens Patent").  An Interference is litigation before the Board of Patent Appeals and

Interferences ( "Board") to determine which party to the Interference was first to invent the

subject matter in the claims at issue (called the "Count").  During the Interference, the Kratz

Defendants negligently failed to file an English language translation of a Seed patent application

written in Japanese.  This English language translation was required by federal regulations and

Board rules.  Notwithstanding this negligence by the Kratz Defendants, on June 25, 2002, the

Board issued a ruling in Seed's favor, awarding it priority of invention over the Stevens patent. Stevens appealed the Board's ruling to the Federal Circuit Court of Appeals on May 12, 2003.[2]

In October 2003, three of the Kratz Defendant attorneys who were responsible for the Seed Interference, Defendants Westerman, Kong, and Kenehan, left the Kratz Defendants and formed their own law firm, Defendant Westerman, Hattori, Daniels & Adrian, LLP (collectively, the "Westerman Defendants"). On September 9, 2003, Seed's representative, Mr. Kenji Itami, wrote to the Kratz Defendants, and confirmed Seed's understanding that it would allow the Westerman Defendants to continue representing Seed in matters relating to the Interference, but that the Kratz Defendants otherwise remained Seed's intellectual property attorneys:

> Please be informed that only one case: Patent Interference No. 103,662, US Pat. Appln. S.N. 08/196,839, Your ref: P1151-2717-A 940094 I is entrusted to Westerman, Hattori, Daniels & Adrian, and that the [sic] *all of the rest [of the] cases are entrusted to Armstrong, Kratz, Quintos, Hanson & Brooks.*

September 9, 2003 letter from Itami to Kratz Defendants.[3] After the departure of the Westerman Defendants, Plaintiffs continued to regard the Kratz Defendants as its intellectual property attorneys.[4] Indeed, the Kratz Defendants even prosecuted another patent application on behalf of Seed, which matured into U.S. Patent No. 5,379,477 (the "O-Ring Patent").[5] The Kratz Defendants continued to maintain the O-Ring Patent for Seed following the departure of the Westerman Defendants, paying a maintenance fee as recently as June 30, 2006.[6]

---

[2] This followed the Board's denial of Seed's motion to reconsider a portion of the Board's ruling in its favor in the Interference.

[3] Hanson Dec. Ex. A (Dkt 19-2) (emphasis supplied).

[4] Shintani Dec. ¶ 3.

[5] Carlson Dec. ¶¶ 3-5 and Ex. 1-3.

[6] *Id.*

The Board's ruling in favor of Seed was eventually reversed on appeal, and Seed's petition for certiorari to the Supreme Court was denied. As later revealed, this resulted in the termination of the prosecution of Seed's patent application, and the adverse party in the Interference kept its patent on the same invention that Seed had sought to patent for itself. Thus, Seed lost the Interference, and ultimately was thereby precluded from obtaining a patent with respect to the technology disclosed in the US '839 Application in the United States.

On May 21, 2005, defendant James E. Armstrong, III, the primary named partner of the Kratz Defendants, wrote to Mr. Itami regarding the Seed Interference. Mr. Armstrong advised Seed to assert a legal malpractice claim against the Kratz firm. [7] He then gave Seed legal advice concerning when the statute of limitations would commence to run against any malpractice claims that Seed may have against Defendants, representing to Mr. Itami that Seed had not been damaged until some time between June 10, 2004, when the Federal Circuit denied Seed's petitions for rehearing, and October 18, 2004, when the Supreme Court denied the petition for Writ of Certiorari:

> Under Washington, D.C. law (and the laws of every state) there are time limits (called statutes of limitation) within which claims for money damages can be made in court. The damage occurred according to the [Kratz firm's] insurance company letter when the Federal Circuit denied rehearing on May 18, 2004 (actually the Federal Circuit denial was published on June 10, 2004 and the Supreme Court petition was denied on October 18, 2004). Any subsequent action by the U.S. PTO is simply procedural and will have not [sic] effect on the loss of right which resulted from the Federal Circuit decision of May 4, 2004 and became final after all appeals were exhausted (October 18, 2004).
>
> According to D.C. law, legal actions for injury to personal property (in this case, a patent) must be brought within 3 years from the date on which the injury occurred. Therefore, now the time is ripe to make a demand.

---

[7] Declaration of Masatoshi Shintani in Support of Seed's Opposition to Kratz Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, Ex. 1 (Dkt 25-2).

*Id.*

Based upon Mr. Armstrong's email, Seed reasonably believed that it had three years from June 10, 2004, *i.e.*, until June 10, 2007, to file suit. Plaintiffs and the Kratz Defendants entered into a Tolling Agreement to toll the running of the statute of limitations on any claims for legal malpractice that Seed may have against the Kratz Defendants to the extent that such claims were not already time-barred as of May 10, 2007. [8] Pursuant to the Tolling Agreement, Plaintiffs timely filed the original complaint in this action on February 28, 2008. [9]

In their motion to dismiss the fist amended complaint, however, the Kratz Defendants now take a different position on when the statute of limitations commenced to run. They argue that it commenced to run *years earlier*, in July of 2002 (Westerman Motion to Dismiss at 12 (Dkt. No. 5)), and therefore according to the Kratz Defendants, Seed's claims expired before Seed and the Kratz Defendants entered into the tolling agreement. The Kratz Defendants cannot have it both ways. If the Kratz Defendants gave correct legal advice in Mr. Armstrong's May 21, 2005 email, then Seed's claims are not time-barred. If the Kratz Defendants gave Seed *incorrect* legal advice in Mr. Armstrong's May 21, 2005 email, then Seed has an alternative claim—in the event that Seed's primary claims are held to be time-barred as the Kratz Defendants now argue—against the Kratz Defendants arising from their later incorrect legal advice. It is this alternative claim that the Kratz Defendants now urge the Court to dismiss.

## III.   ARGUMENT

The Kratz Defendants argue, based upon the "Amended Declaration of Donald Hanson," that after the Westerman Defendants left the Kratz firm, "Plaintiffs no longer utilized the

---

[8]   Declaration of James Howard in Support of Seed's Opposition to Kratz Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, Ex. 1 (Dkt 25-3).

[9]   The Tolling Agreement expired by its own terms on December 31, 2007; however, it included a provision that "[u]pon termination of the Agreement, any lawsuit commenced by Seed against the [defendants herein] shall, as to all claims preserved by this agreement, be considered timely commenced if a Complaint is filed within sixty (60) days following termination of the Agreement." The Tolling Agreements preserved all claims that were not already time-barred as of May 10, 2007.

professional services of, nor maintained an attorney-client relationship with, Kratz, Quintos & Hanson, LLP (or any of our predecessor firms)."[10]  Mr. Hanson does not purport to make this representation based upon his own personal knowledge, but rather, upon an "exhaustive search" of certain unspecified firm records.  Pursuant to Fed. R. Civ. P. 56(e), Mr. Hanson's assertion is insufficient to be an admissible statement that can be considered by the Court in a motion for summary judgment.  Moreover, these records have not been produced, and Plaintiffs have had no opportunity to review them for themselves, or to confirm through discovery the accuracy and completeness of Mr. Hanson's "exhaustive search."  Plaintiffs have also had no opportunity to depose witnesses that may contradict Mr. Hanson's self-serving declaration.  This only further demonstrates why a Rule 56(f) continuance would be appropriate absent a denial of Defendants' motion.

Furthermore, Mr. Hanson's declaration asserting that there was no ongoing attorney-client relationship between Seed and anyone at the Kratz firm is contradicted in multiple respects even on the pre-discovery record presently before the Court.  Mr. Hanson's declaration is contradicted by the declarations of Masatoshi Shintani and Mark Carlson, filed concurrently with this opposition.  Mr. Shintani states that Seed continued to regard the Kratz Defendants as its intellectual property attorneys after the departure of the Westerman Defendants.[11]  The Kratz Defendants had prosecuted two patent applications for Seed, the US '839 Application at issue in the Interference and a second application, which matured into the O-Ring Patent.[12]  After the Westerman Defendants left the Kratz Defendants to form their own firm, Seed directed the Westerman Defendants to continue their work on the Interference, but left the application that matured into the O-Ring Patent with the Kratz Defendants.[13]  The Kratz Defendants apparently

---

[10]  Amended Hanson Dec. ¶ 3 (Dkt No. 19-2).

[11]  Shintani Dec. ¶ 3.

[12]  Carlson Dec. ¶¶ 3-5 and Ex. 1-3.

[13]  *Id.*

continued to represent Plaintiffs as their patent attorneys before the USPTO with respect to the O-Ring Patent long after the departure of the Westerman Defendants.[14]

Mr. Hanson's declaration is also contradicted by Mr. Itami's September 9, 2003 letter (*i.e.*, "all of the rest [of the] cases are entrusted to Armstrong, Kratz, Quintos, Hanson & Brooks"), which clearly evidences that Seed believed that the Kratz Defendants remained its attorneys, regardless of whether there were, or were not, any active matters at that particular point in time.[15]  Admissions made by Mr. Armstrong to Plaintiffs' counsel demonstrate that the Kratz Defendants had the same understanding ("Mr. Armstrong also advised that upon Mr. Westerman's departure, it was Seed's desire to keep all of its work with the Armstrong firm.").[16] Mr. Hanson's declaration is further contradicted by the concurrently-filed declaration of Mr. Shintani ("Seed intended for the new Westerman firm to continue working on the Interference, but Seed continued to regard the Armstrong law firm as its United States attorneys for all other intellectual property matters."), as well as the O-Ring Patent work that the Kratz Firm performed for Seed.[17]

In addition, the very content of Mr. Armstrong's May 21, 2005 email provides additional evidence that at least he intended to maintain an attorney-client relationship with Plaintiffs concerning the Interference, as an agent of the Kratz firm, after the Westerman Defendants departed. [18]  In the email, Mr. Armstrong provided legal advice for Mr. Itami to convey to Seed, regarding a potential legal malpractice claim and the statute of limitations.[19]  His discussion of

---

[14] *Id.*  The USPTO records suggest that the Kratz Defendants may have even paid a maintenance fee on this patent on behalf of Plaintiffs as late as June 30, 2006.  Regardless, on this record more discovery is required before a finding of fact could be made regarding the last date upon which the Kratz Defendants represented Plaintiffs.

[15] Hanson Dec. Ex. A (Dkt 19-2).

[16] Declaration of James Howard, ¶ 5 (Dkt 25-3).

[17] Shintani Dec. ¶ 3.

[18] Declaration of Masatoshi Shintani in Support of Seed's Opposition to Kratz Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, Ex. 1 (Dkt 25-2).

[19] *Id.*

the procedural history of the Stevens appeal indicated that he had continued to follow the Interference and appeals after the departure of the Westerman Defendants.[20]  Finally, he concluded by offering "to answer any further questions your client may have" presumably regarding the legal malpractice claims and the date the statute of limitations commenced to run on them.[21]

In summary, Mr. Hanson's declaration at most creates a disputed issue of material fact as to the existence of an attorney-client relationship between Plaintiffs and the Kratz Defendants at the time of Mr. Armstrong's May 21, 2005 email.  Defendants argument that no relationship remained is contradicted in multiple respects by the present record; this is a factual issue that should not be decided before discovery, and may ultimately be a question for the jury to decide. *See, e.g.,* R. Mallen and J. Smith, 2 LEGAL MALPRACTICE § 15:3 (2008) ("Once the attorney-client relationship exists, courts are reluctant to draw a fine line concerning when it ended.  One reason is that the 'ascendant or controlling' influence of the attorney can extend beyond technical termination.  Thus, unless there is a court order, there should be a distinct and unequivocal understanding between attorney and client that the relationship has ceased.  Only then is the attorney relieved of the fiduciary obligations." (citations omitted)).  Indeed, the length of the Kratz Firm's attorney-client relationship with Plaintiffs seems particularly fact-based here, given that Plaintiffs were a foreign client relying on the Kratz Firm's advertised expertise and specialization in patent prosecutions before the USPTO.  On this record, the Kratz Defendants' motion to dismiss the amended complaint must be denied.

## IV.    CONCLUSION

For the foregoing reasons, and those stated in Plaintiffs' original memoranda in opposition to the Kratz and Westerman Defendants' motions to dismiss, or in the alternative for

---

[20] *Id.*

[21] *Id.*

summary judgment, Plaintiffs respectfully request that the Kratz Defendants' motion be denied, or that a continuance be granted pursuant to Fed. R. Civ. P. 56(f).

Dated: June 26, 2008

Respectfully submitted,


s/James E. Howard _____
Creighton R. Magid (D.C. Bar No. 476961)
DORSEY & WHITNEY LLP
1050 Connecticut Avenue, N.W., Suite 1250
Washington, DC 20036
Telephone: (202) 442-3555
Fax: (202) 442-3199
magid.chip@dorsey.com

James E. Howard (D.C. Bar No. 481455)
DORSEY & WHITNEY LLP
1420 Fifth Ave., Ste. 3400
Seattle, WA 98101
Tel: (206) 903-2390
Fax: (206) 903-8820
howard.james@dorsey.com

Counsel For Plaintiffs
SEED COMPANY LIMITED and SHIGERU
TAMAI

OF COUNSEL:
Paul T. Meiklejohn
Curt R. Hineline
Mark S. Carlson
DORSEY & WHITNEY LLP
U.S. Bank Centre
1420 Fifth Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: (206) 903-8800
Fax: (206) 903-8820

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SEED COMPANY, LTD. and SHIGERU TAMAI ) )<br><br>Plaintiffs )<br><br>v. )<br><br>WILLIAM F. WESTERMAN, et al. )<br><br>Defendants.        ) | **CASE NUMBER 1:08-CV-00355-RMU** |

## DECLARATION OF MASATOSHI SHINTANI IN SUPPORT OF PLAINTIFFS' OPPOSITION TO THE KRATZ DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

I, Masatoshi Shintani, declare as follows:

1.      I am over the age of eighteen years, I make the following declaration based upon my personal knowledge, and I am competent to testify as to the matters asserted herein.

2.      I am the General Manager of the Development Department of Seed Company, Ltd. ("Seed").

3.      Attached hereto as Exhibit 1 is a true and correct copy of a September 9, 2003 letter from Mr. Kenji Itami to the law offices of Armstrong, Westerman & Hattori, LLP. Seed instructed Mr. Itami to send this letter when Seed learned that Mr. Westerman and other attorneys who worked on the Seed Interference matter were going to leave the Armstrong law firm. Seed intended for the new Westerman firm to continue working on the Interference, but Seed continued to regard the Armstrong law firm as its United States attorneys for all other intellectual property matters.

I declare under penalty of perjury of the United States of America that the foregoing is true and correct.

Signed in Osaka, Japan, this 24 th day of June, 2008.

_____ Masatoshi Shintani

Masatoshi Shintani

# Exhibit 1

# 1151

# ITAMI PATENT OFFICE

DAISAN BLDG.
2-4, 3-CHOME, NISHITENMA, KITA-KU,
OSAKA, 530-0047, JAPAN

TELEPHONE: (06)6365-9078
FACSIMILE: (06)6365-8577
(GL GIII)
CABLE: ITAMIPAT
E-MAIL:
itamipt@mua.biglobe.ne.jp

Law Offices
Armstrong, Westerman
& Hattori, LLP
Suite 1000, 1725 K Street, N.W.
Washington, D.C. 20006
U.S.A

September 9, 2003

## VIA FACSIMILE

Dear Sirs,

Re:  Representation of our cases

Thank you for your letters of July 31 through August 26, 2003, relating to transition into two separate law firms.

Please be informed that only one case: Patent interference No. 103,662, US Pat. Appln. S.N. 08/196,839, Your ref: P1151-2717-A 940094 I is entrusted to Westerman, Hattori, Daniels & Adrian, and that the all of the rest cases are entrusted to Armstrong, Kratz, Quintos, Hanson & Brooks.

Yours faithfully,

K. Itami

KI/ky

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SEED COMPANY, LTD. and SHIGERU TAMAI** ) | |
| ) | |
| **Plaintiffs** ) | |
| ) | **CASE NUMBER 1:08-CV-00355-RMU** |
| **v.** ) | |
| ) | |
| **WILLIAM F. WESTERMAN, et al.** ) | |
| ) | |
| **Defendants.** ) | |

### DECLARATION OF MARK S. CARLSON IN SUPPORT OF PLAINTIFFS' OPPOSITION TO THE KRATZ DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

I, Mark S. Carlson, declare as follows:

1. I am over the age of eighteen years, I make the following declaration based upon my personal knowledge, and I am competent to testify as to the matters asserted herein.

2. I am one of the Dorsey & Whitney LLP attorneys representing Seed Company, Ltd. ("Seed") and Shigeru Tamai ("Tamai") (collectively "Plaintiffs") in the above-captioned litigation.

3. Attached hereto as Exhibit 1 is a true and correct copy of U.S. Patent No. 5,379,477 (the "O-Ring Patent"), which issued to Tamai, and others, on January 10, 1995, and was assigned to Seed. The patent states that the firm representing Seed and Tamai was Armstrong, Westerman, Hattori, McLeland & Naughton ("Kratz Defendants").

4. Attached hereto as Exhibit 2 is a true and correct copy of a webpage from the United States Patent and Trademark Office for the O-Ring Patent, which shows that Mr. Donald Hanson was one of the attorneys for the O-Ring Patent, in addition to James Armstrong III, whose estate is a defendant herein.

5.    Attached hereto as Exhibit 3 is a true and correct copy of a webpage from the United States Patent and Trademark Office for the O-Ring Patent. This webpage suggests that the Kratz Defendants continued to maintain the O-Ring Patent after the Westerman Defendants left to form their own firm (October 1, 2003), and that the Kratz Defendants may have paid Plaintiffs' O-Ring Patent maintenance fee on June 30, 2006.

6.    The records do not reflect when the O-Ring Patent "address for fee purposes" was changed from the Kratz Defendants to the Armstrong & Kubovcik firm. Given the opportunity, Plaintiffs would develop these facts further in discovery.

I declare under penalty of perjury of the United States of America that the foregoing is true and correct.

Signed in Seattle, Washington, this 26th day of June, 2008.

_____
Mark S. Carlson

# Exhibit 1

US005379477A

# United States Patent [19]

## Tamai et al.

| | |
|---|---|
| [11] | Patent Number: **5,379,477** |
| [45] | Date of Patent: **Jan. 10, 1995** |

[54] **COATING FILM TRANSFER TOOL**

[75] Inventors: **Shigeru Tamai**, Ikeda, Japan; **Naomi Ikeda**, London, United Kingdom; **Kakuhei Koyama**, Osaka, Japan

[73] Assignee: **Seed Rubber Company, Ltd.**, Osaka, Japan

[21] Appl. No.: **39,172**

[22] PCT Filed: **Aug. 28, 1992**

[86] PCT No.: **PCT/JP92/01098**

§ 371 Date: **Apr. 15, 1993**

§ 102(e) Date: **Apr. 15, 1993**

[87] PCT Pub. No.: **WO93/04875**

PCT Pub. Date: **Mar. 18, 1993**

[30] **Foreign Application Priority Data**

Aug. 30, 1991 [JP] Japan .................. 3-246848

[51] Int. Cl.⁶ ................................. **B05C 1/14**

[52] U.S. Cl. .................................... **15/104.94**; 15/97.1; 118/257

[58] Field of Search ...................... 15/104.94, 3.53, 3; 118/257; 400/695, 696

[56] **References Cited**

**U.S. PATENT DOCUMENTS**

4,112,536  9/1978  Carson, Jr. et al. ............. 15/104.94

**FOREIGN PATENT DOCUMENTS**

3834374  4/1990  Germany ...................... 118/257

63-56690  4/1988  Japan .

*Primary Examiner*—Edward L. Roberts
*Attorney, Agent, or Firm*—Armstrong, Westerman, Hattori, McLeland & Naughton

[57]  **ABSTRACT**

A coating film transfer tool is disclosed, wherein a case 31 provides therein a pay-out reel 34 for feeding a coating a film transfer tape and a winding reel 35 for recovering a used coating film transfer tape free to rotate, a peak-shaped paint film transfer head 36 is protrusively provided at one end of the case 31, the pay-out reel 34 is made by setting a pay-out cylinder 42 on the outer periphery of the boss 40 of the drive gear wheel 39 via a friction member 41 made of an elastomer free to rotate, the winding reel 35 is made by providing a driven gear wheel 50 engaging with the drive gear wheel 39 on the outer periphery of the winding cylinder 48 and one end of the coating film transfer tape 38 wound on the pay-out cylinder 42 is fed from the pay-out cylinder 42 and then turned back by the peak-shaped portion 51 of the head 36 and is then wound by the winding cylinder 48. When, as erasing is continued, the synchronism between the feeding speed and the winding speed of the coating film transfer tape 38 has been broken, the pay-out cylinder 42 slips against the boss 40 of the drive gear wheel 39 via the friction member 41 to thereby restore synchronism between the above-mentioned two speeds. Smooth running of the coating film transfer tape is thus ensured.

**6 Claims, 3 Drawing Sheets**





**Fig.1**



**Fig.2**



**Fig.3**



Fig.4



Fig.5



Fig.6

PRIOR ART

# Fig.7
### PRIOR ART



# Fig.8
### PRIOR ART

5,379,477

1

## COATING FILM TRANSFER TOOL

### TECHNICAL FIELD

The present invention relates to a coating film transfer tool with which it is possible to recover the used coating film transfer tape automatically.

### BACKGROUND ART

As an example of this kind of a coating film transfer tool, Japanese Patent Publication No. 11639/1991 has hitherto been widely known. The tool disclosed in the aforementioned patent publication is made up of a pay-out reel with a coating film transfer tape wound thereon and a winding reel for recovering the used tape disposed in a case and a peak-shaped head for transfering the coating film. With such a tool, however, winding of the used coating film transfer has to be done manually.

The present inventor has developed a method in which the used coating film transfer tape is wound up automatically (Japanese Utility Model application No. 68371/1991). This coating film transfer tool is, as shown in FIGS. 6–8, made up of a coating film transfer tape pay-out reel 4 and a coating film transfer tape winding reel 5 mounted on two supporting shafts 2, 3 embedded in the case 1 to be freely rotatable, a coating film transfer head 6 is provided protrusively out of the case 1 and a cover plate 7 is fitted to close the side opening of the case 1.

The pay-out reel 4 is made up of a boss 9 of a drive gear wheel 8 and a pay-out cylinder 10 freely rotatable on the outer periphery of the boss 9 and the boss 9 and a rim 11 are connected by 4 spokes 12. The boss 9 is made up of an outer cylinder 14 outside of an inner cylinder 13 with a given gap therebetween, with a base end of the outer cylinder 14 in connection with the inner cylinder 13. The inner cylinder having a through hole and a supporting shaft 2 inserted rotatably therethrough. On the side wall of the outer cylinder 14, there are formed a pair of clutch arms 16, each having one clutch claw 15 at the forward end thereof and the clutch claw 15 is engaged disengageably through the elasticity of the clutch arms 16 with a plurality of claws 17 formed annularly in the inner periphery of the pay-out cylinder 10. Also amid the pair of spokes 12, there are formed a pair of arc-shaped ratchet arms 19 with stopper claws 18 formed at the tip thereof and the stopper claws 18 are engaged disengageably through the elasticity of the ratched arms 19 with a plurality of claws 20 formed annularly on the inside of the case 1 to thereby prevent free rotation of the pay-out reel 4 and winding reel 15.

Meanwhile, the winding reel 5 forms a tape guiding flange 22 on the base end of a winding cylinder 21 and also forming a driven gear wheel 23 to be in mesh with a drive gear wheel 8 on the back of the flange 22 and having its supporting shaft 3 set freely rotatable through the through hole in the winding cylinder 21. The number of teeth of the driven gear wheel 23 is approximately ½ that of the drive gear wheel 8.

The pay-out cylinder 10 has a coating film transfer tape 24 wound thereon, then one end of the coating film transfer tape 24 is paid out from the pay-out cylinder 10, it is then twisted by 90° by a guide pin 25 a little before the head 6 and led outward, thereafter it is led past the peak-shaped portion 26 of the head 6 into the case 1, the aforementioned twisting is restored until it reaches the guide pin 27 or it is further twisted by 90° before it is

2

wound on the winding cylinder 21. In the amount of the coating film transfer tape 24 wound on the pay-out cylinder 10 is approximately twice as much as the diameter of the winding cylinder 21. By the way, the coating film transfer tape 24 is so wound that the coating film to be transferred is on the outside of the loop.

When the coating film transfer tool of the aforementioned construction is used as a tool for erasing characters or the like, a white corrective paint film is to be formed as the coating film transfer tape 24 over a layer of a release agent on one side of the substrate tape with a layer of the adhesive layer applied on the white corrective paint film. In order to erase characters or the like with this coating film transfer tape 24, the case 1 is to be moved in the direction perpendicular (the direction shown by the arrow "a" in FIG. 8) to the longitudinal direction of the coating film transfer tape 24 with the adhesive layer thereon being pressed against the characters or the like by means of the peak-shaped portion 26.

It is thereby possible to have the corrective paint layer on the coating film transfer tape 24 removed by the release agent layer and fixed by the adhesive layer on characters and the like by means of the peak-shaped portion 26. As the case 1 moves, the tension being applied to the coating film transfer tape 24 acts as a rotation torque to the pay-out cylinder 10, the pay-out cylinder 10 with its engagement with its claw 17 and with clutch claw 15 moves with the drive gear wheel B and a new coating film transfer tape 24 is paid out. The stopper claw 18 then goes out of engagement with the claw 20 because of the elasticity of the ratchet arm 19, the rotation of the drive gear wheel 8 being thus permitted. The drive gear wheel 8 rotates the winding cylinder 21 via the driven gear wheel 23 and the winding cylinder 21 winds the used coating film transfer tape 24 automatically. Thus, the corrective paint layer of the coating film transfer tape 24 is transferred on characters or the like for erasing thereof successively and the used coating film transfer tape 24 is automatically wound by the winding reel 5.

Meanwhile, the outer diameter of the coating film transfer tape 24 on the pay-out reel 4 decreases as erasing proceeds, this resulting in a lower feeding speed, while the outer diameter of the coating film transfer tape 24 on the winding reel 5 increases, this resulting in a higher winding speed. If this is allowed to continue, the coating film transfer tape 24 is bound to be broken due to the increasing tension, hence the feeding speed and the winding speed have to be synchronized. Hence, it is so arranged that, when the synchronism between the above two speeds is increased, the clutch claws 15 are disengaged from the claws 17 by the elasticity of the clutch arm 16 and the pay-out cylinder 10 is allowed to rotate in sliding contact with the outer cylinder 14 for restoration of synchronism between the feeding speed and the winding speed.

When the above-mentioned coating film transfer tool is used as a pasting tool, a coating film transfer tape 24 in which an adhesive layer is formed on one side of a substrate tape over a release agent layer is used and the adhesive layer alone is transferred to the surface of paper or the like in the same way as the above-mentioned erasing tool.

With the above-mentioned conventional coating film transfer tool, when the pay-out cylinder 10 rotates in

5,379,477

**3**

sliding contact with the outer cylinder 14 to synchronize the pay-out speed of the coating film transfer tape 24 with the winding speed thereof, the "sliding rotation" is bound to be repetition of disengaging of the clutch claw 15 and the claw 17 and reengaging of the two, this resulting in unevenness of the running speed of the coating film transfer tape 24 and, moreover, the running speed unevenness is bound to be greater, as the tool is used longer with increasing difference between the feeding speed and the winding speed.

The present invention is aimed at improving the conventional coating film transfer tool for solving the above-mentioned problems.

### DISCLOSURE OF THE INVENTION

In order to attain the above-mentioned object, the coating film transfer tool of the present invention comprises a pay-out reel for feeding a coating film transfer tape and a winding reel for recovering the used coating film transfer tape provided in the case to be freely rotatable, and a peak-shaped coating film transfer head provided protrusively at one end of the aforementioned case, the aforementioned pay-out reel is made by setting a pay-out cylinder on the outer periphery of the boss of the drive gear wheel via a friction member of elastomer to be freely rotatable, the winding reel has provided on the outer periphery of the winding cylinder a driven gear wheel which is engaged with the above-mentioned drive gear wheel and one end of the coating film transfer tape wound on the pay-out cylinder is paid out from the pay-out cylinder, turned back by the peak-shaped portion of the head and led to be wound by the winding cylinder.

As the above-mentioned friction member, an O-ring may preferably be used.

One end of the coating film transfer tape paid out from the pay-out cylinder may as well be twisted by 90° ahead of the head and restored after passing the peak-shaped portion of the head or may be further twisted by 90° before it is wound by the winding cylinder.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a partly-cut front view of the embodiment 1 of the present invention with the cover plate removed.

FIG. 2 is a sectional view taken along the line II—II of FIG. 1.

FIG. 3 is a partly detailed view of the embodiment 2 of the present invention.

FIGS. 4 and 5 are views showing the way in which the present invention is manipulated.

FIG. 6 is a partly-cut front view showing an example of a conventional coating film transfer tool.

FIG. 7 is a sectional view taken along the line VII—VII of FIG. 6.

FIG. 8 is a view showing the way in which the conventional coating film transfer tool is manipulated.

### OPTIMUM EMBODIMENTS PRACTICING THE INVENTION

The present invention will be described in detail below with reference to FIGS. 1–5.

#### Embodiment 1

The coating film transfer tool of the present embodiment comprises, as shown in FIGS. 1 and 2, two supporting shafts 32, 33 embedded in a case 31 with a pay-out reel 34 for feeding a coating film transfer tape and a winding reel 35 for recovery of the used transfer tape

**4**

supported free to rotate respectively, a coating film transfer head 36 protrusively provided at the forward end of the case 31 and a cover plate 37 provided to close the side opening of the case 31, and the pay-out reel 34 has wound thereon the coating film transfer tape 38.

The pay-out reel 34 comprises a pay-out cylinder 42 set on the outer periphery of a cylindrical boss 40 at the center of a drive gear wheel 39 via a friction member 41. The drive gear wheel 39 has its boss 40 and rim 43 connected by 4 spokes 44 and the through hole of the boss 40 has set therethrough a supporting shaft 32 to be freely rotatable. Between the pair of spokes 44, there are formed a pair of arc-shaped ratchet arms 46 having stopper claws 45 at its forward end, the stopper claws 45 disengageably engaged with a multiplicity of claws 47 by the elasticity of the ratchet arm 46 to prevent free rotation of the pay-out reel 34 and the winding reel 35.

The friction member 41 is for transmitting the torque acting on the pay-out cylinder 42 due to the tension of the coating film transfer tape 38 to the drive gear wheel 39 as friction torque. It comprises a cylindrical bush (the one shown in the figure), O-ring and the like made of an elastomer (e.g., nitrile rubber) and is disposed between the boss 40 and the pay-out cylinder 42 in somewhat compressed state.

The winding reel 35 forms a flange 49 for guiding the transfer tape on the outer periphery of the base end of the winding cylinder 48 and also forms a driven gear wheel 50 engaged with the drive gear wheel 39 on the back of a flange 49 with a supporting shaft 33 set through the through hole of the winding cylinder 48. The number of teeth of the driven gear wheel 50 is approximately ½ that of the drive gear wheel 39.

The head 36 comprises a peak-shaped portion 51, triangular in sectional shape and a guide flange 52 formed on each side thereof and its base is supported by a square pin 53 embedded inward of the case 31. It is, however, also possible to have the head 36 and the case 31 formed integrally.

The coating film transfer tape 38 is wound on the pay-out cylinder 42 and one end thereof is fed via the guide pins 54 and 55 embedded on the inside of the case 31, turned back by the peak-shaped portion 51 of the head 36 and then led past the guide pin 56 to be wound on the outer periphery of the winding cylinder 48. The transfer tape is then to be so set that the coating film comes to be on the outside of the loop. The number of laps of the coating film transfer tape 38 on the pay-out cylinder 42 before use may be such that the outer diameter of the tape wound thereon is approximately twice that of the winding cylinder 48. In other words, the ratio roughly corresponds to the ratio of the number of teeth of the drive gear wheel 39 to that of the driven gear wheel 50. If the ratio is higher, the winding speed of the coating film transfer tape 38 is too low in an early stage compared with the feeding speed, this resulting in slackening of the tape 38 as it is wound.

When the coating film transfer tool is used as an erasing tool for characters or the like, one comprising a plastic substrate film (approximately 25–38 μm) such as a polyester film or acetate film coated on one side with a layer of a release agent such as a vinyl chloride-vinyl acetate copolymer or low molecular polyethylene, a layer of a white corrective paint and thereupon a layer of pressure-sensitive adhesive such as a polyurethane, may be used as the coating film transfer tape 38.

In order to erase characters or the like with the above-mentioned coating film transfer tape 38, as

5,379,477

5

shown by FIG. 4, the case 31 is moved in the longitudinal direction (direction of the arrow A in FIG. 4) of the coating film transfer tape 38, with the adhesive layer side of the coating film transfer tape 38 being pressed against characters or the like by the ,aid of the peak-shaped portion 51 of the head 36. The white corrective paint of the coating film transfer tape 38 is then transfered onto characters or the like as it is pressed by the peak-shaped portion 51 by means of the uppermost layer of adhesive and the underlying layer of the release agent. As the case 31 is moved, the tension being applied to the coating film transfer tape 38 acts as rotation torque on the pay-out cylinder 42 and the pay-out cylinder 42 rotates with the drive gear wheel 39 due to the friction force of the friction member 41, this resulting in further feeding of the coating film transfer tape 38. Then, the stopper claw 45 is disengaged from the claw 47 by the elasticity of the ratchet arm 46, this allowing rotation of the drive gear wheel 39. Also, the drive gear wheel 39 drives the winding cylinder 48 via the driven gear wheel 50 and she winding cylinder 48 winds automatically the substrate tape with the release agent layer alone remaining thereon. Thus, the corrective paint layer is transferred progressively onto characters or the like to erase them, the used coating film transfer tape 38 being recovered automatically.

However, as erasing goes on, the outer diameter of the coating film transfer tape 38 on the pay-out reel 34 becomes smaller, while, the outer diameter of the used tape on the winding reel 35 becomes larger, this resulting in increase of the used tape winding speed. Since this is bound to cause breaking of the coating film transfer tape 38 due to the increasing tension, it is necessary to synchronize the tape feeding speed with the used tape winding speed. It is, therefore, so arranged that, when the synchronism between the above-mentioned two speeds is broken, with the rotation torque acting on the pay-out cylinder 42 being larger, the increased torque exceeds the friction torque of the friction member 41 and this results in sliding of the tape on the pay-out cylinder 42 against the boss 40 of the drive gear wheel 39 to thereby synchronize the feeding speed with the winding speed. Hence, smooth running of the coating film transfer tape 38 is ensured.

When the coating film transfer tool of the above construction is used as a pasting tool, the substrate tape with a layer of adhesive alone is formed over a layer of release agent and the the adhesive layer alone is transferred to the paper surface or the like by the same process as described above.

### Embodiment 2

In the coating film transfer tool of this embodiment as shown in FIG. 3, one end of the coating film transfer tape 38 fed from the pay-out cylinder 42 (not shown) is twisted by 90° by a guide pin 57 arranged inward of the head 36 to move it outward, then led into the case 31 past the peak-shaped portion 51 of the head 36 and on its way to the guide pin 58 the twisting of the tape is restored or it is further twisted 90° before it is wound by the winding cylinder 48. The case 31 has embedded therein, besides the above-mentioned guide pins 57 and 58, a supporting pin 59 and has formed on its side wall a square projection 60, the supporting pin 59 being for supporting the base portion of the head 36 and the square projection 60 for prevention of rotation of the head 36. The other setup is the same as described above for Embodiment 1.

Since, with the coating film transfer tool of the invention, the coating film transfer tape 38 is twisted by 90° inward of the head 36, the operating direction is differ-

6

ent from that of Embodiment 1, as shown in FIG. 5, the case 31 being moved in a direction perpendicular to the longitudinal direction (direction of the arrow B in FIG. 5) of the coating film transfer tape 38.

## POSSIBILITY OF INDUSTRIAL UTILIZATION

As described above, the present invention consists in that the pay-out cylinder is set freely rotatable on the outer periphery of the boss of the drive gear wheel via the friction member made of an elastomer and the torque acting on the pay-out cylinder induced by the tension of the coating film transfer tape is transmitted to the drive gear wheel as the friction torque of the friction member, hence even when, as the result of continued use, the synchronism between the feeding speed and the winding speed of the coating film transfer tape has been broken, the synchronism is restored when the pay-out cylinder rotates in sliding contact with the boss of the drive gear wheel, this ensuring always in smooth running of the coating film transfer tape.

It is convenient to use an O-ring as the friction member, for it is commercially available.

An alternative of the coating film transfer tool in which the coating film transfer tape is twisted by 90° ahead of the head allows holding the case in a hand and moving it horizontally with the elbow on the desk top, hence it is easy to bring the head accurately and stably to the desired position. Thus, provision of tools different in the way of operation gives a wider scope of choice to users and an increased variety as merchandise.

What is claimed is:

1. A coating film transfer tool, comprising:

a case for the tool;

a pay-out reel for feeding a coating film transfer tape rotatably mounted in said case;

a winding reel for recovery of the used coating film transfer tape rotatably mounted in said case;

a head provided protrusively extending out of said case at one end of said case;

said pay-out reel including a pay-out cylinder and including a drive-gear wheel having a boss;

a friction member provided on an outer periphery of said boss of the drive gear wheel, said pay-out cylinder being in frictional contact with said friction member;

said winding reel including a winding cylinder and including a driven gear wheel which engages with said drive gear wheel

said coating film transfer tape being wound on said pay-out cylinder, being fed from said pay-out cylinder, being turned around over said head, and being wound around said winding cylinder.

2. The coating film transfer tool according to claim 1, wherein said friction member is an O-ring made of an elastomer.

3. The coating film transfer tool according to claim 1, wherein the coating film transfer tape fed from the pay-out cylinder is arranged such that it is twisted by 90° before the head, and after the head, the twisting is restored before it is wound on the winding cylinder.

4. The coating film transfer tool according to claim 1, wherein said head is a peak-shaped head.

5. The coating film transfer tool according to claim 1, wherein said friction member is made of an elastomer.

6. The coating film transfer tool according to claim 1, wherein the coating film transfer tape fed from the payout cylinder is arranged such that it is twisted by 90° before the head, and after passing the head, the tape is further twisted 90° before it is wound onto the winding cylinder.

* * * * *







**United States Patent and Trademark Office**

| **Patent Bibliographic Data** | | **06/25/2008 06:01 PM** | |
|---|---|---|---|
| Patent Number: | 5379477 | Application Number: | 08039172 |
| Issue Date: | 01/10/1995 | Filing Date: | 04/15/1993 |
| Title: | COATING FILM TRANSFER TOOL | | |
| Status: | 4th, 8th and 12th year fees paid | Entity: | Small |
| Window Opens: | N/A | Surcharge Date: | N/A | Expiration: | N/A |
| Fee Amt Due: | Window not open | Surchg Amt Due: | Window not open | Total Amt Due: | Window not open |
| Fee Code: | | | |
| Surcharge Fee Code: | | | |
| Most recent events (up to 7): | 06/30/2006 Payment of Maintenance Fee, 12th Yr, Small Entity. 06/13/2002 Payment of Maintenance Fee, 8th Yr, Small Entity. 06/29/1998 Payment of Maintenance Fee, 4th Yr, Small Entity. --- End of Maintenance History --- | | |
| Address for fee purposes: | ARMSTRONG & KUBOVCIK SUITE 1000 1725 K STREET, N.W. WASHINGTON, DC 20006 | | |

Run Another Query

Need Help? | USPTO Home Page | Finance Online Shopping Page

# Exhibit 2



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz Alerts | News | Help

| Portal Home | Patents | Trademarks | Other |

| Patent eBusiness — ☐ | Patent Application Information Retrieval ☐ |
|---|---|

Patent eBusiness
- ⊞ Electronic Filing
- ⊞ Patent Application Information (PAIR)
- ⊞ Patent Ownership
- ⊞ Fees
- ⊞ Supplemental Resources & Support

Patent Information
- Patent Guidance and General Info
- ⊞ Codes, Rules & Manuals
- ⊞ Employee & Office Directories
- ⊞ Resources & Public Notices

Patent Searches
- Patent Official Gazette
- ⊞ Search Patents & Applications
- ⊞ Search Biological Sequences
- ⊞ Copies, Products & Services

Other
- Copyrights
- Trademarks
- Policy & Law
- Reports

ⓘ Order Certified Application As Filed    Order Certified File Wrapper    🛒 View Order List

| 08/039,172 | COATING FILM TRANSFER TOOL | 🅿 |
|---|---|---|

| Select New Case | Application Data | Transaction History | Continuity Data | Foreign Priority | Fees | Published Documents | Address & Attorney/Agent |

## Correspondence Address

Name:          ARMSTRONG & KUBOVCIK

Address:       SUITE 1000
               1725 K STREET, N.W.
               WASHINGTON DC 20006

Customer Number:   -

## Attorney/Agent Information

| Reg # | Name | Phone |
|---|---|---|
| 32878 | Adrian, Stephen | 202-822-1100 |
| 18366 | Armstrong, James III | 202-659-2930 |
| 30928 | Foycik, Michael Jr | 703-352-3790 |
| 27133 | Hanson, Donald | 202-659-2930 |
| 32861 | Hattori, Ken-Ichi | 202-822-1100 |
| 32903 | Kafalenos, Vivi | 304-876-6393 |
| 22631 | Kratz, William Jr | 412-291-2931 |
| 25401 | Kubovcik, Ronald | 703-412-9494 |
| 34409 | Lane, Mary | 240-243-8016 |
| 30082 | Lydon, James | 703-838-0445 |
| 31541 | McLeland, Le-Nhung | 703-323-4446 |
| 24616 | Naughton, Ronald | 843-342-7585 |
| 31404 | O'Toole, Joseph | 864-370-2211 |
| 18069 | Pegan, John | 412-281-2931 |
| 31898 | Quintos, Melanio | 202-659-2930 |
| 19722 | Tockman, Albert | 301-424-3989 |
| 17379 | Welch, James (Inactive) | 202-659-2930 |
| 29988 | Westerman, William | 202-822-1100 |
| 32076 | Zito, Joseph | 202-466-3500 |

*If you need help:*

- *Call the Patent Electronic Business Center at (866) 217-9197 (toll free) or e-mail EBC@uspto.gov for specific questions about Patent Application Information Retrieval (PAIR).*
- *Send general questions about USPTO programs to the USPTO Contact Center (UCC).*
- *If you experience technical difficulties or problems with this application, please report them via e-mail to Electronic Business Support or call 1 800-786-9199.*

You can suggest USPTO webpages or material you would like featured on this section by E-mail to the webmaster@uspto.gov. While we cannot promise to accommodate all requests, your suggestions will be considered and may lead to other improvements on the website.

Home | Site Index | Search | eBusiness | Help | Privacy Policy

# Exhibit 3





**United States Patent and Trademark Office**



| **Patent Bibliographic Data** | | **06/25/2008 06:01 PM** | |
|---|---|---|---|
| **Patent Number:** | 5379477 | **Application Number:** | 08039172 |
| **Issue Date:** | 01/10/1995 | **Filing Date:** | 04/15/1993 |
| **Title:** | COATING FILM TRANSFER TOOL | | |
| **Status:** | 4th, 8th and 12th year fees paid | **Entity:** | Small |
| **Window Opens:** | N/A | **Surcharge Date:** N/A | **Expiration:** N/A |
| **Fee Amt Due:** | Window not open | **Surchg Amt Due:** Window not open | **Total Amt Due:** Window not open |
| **Fee Code:** | | | |
| **Surcharge Fee Code:** | | | |
| **Most recent events (up to 7):** | 06/30/2006 Payment of Maintenance Fee, 12th Yr, Small Entity. 06/13/2002 Payment of Maintenance Fee, 8th Yr, Small Entity. 06/29/1998 Payment of Maintenance Fee, 4th Yr, Small Entity. --- End of Maintenance History --- | | |
| **Address for fee purposes:** | ARMSTRONG & KUBOVCIK SUITE 1000 1725 K STREET, N.W. WASHINGTON, DC 20006 | | |
| | Run Another Query | | |

Need Help? |  USPTO Home Page |  Finance Online Shopping Page

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SEED COMPANY, LTD. and SHIGERU TAMAI )<br>)<br>**Plaintiffs** )<br>)<br>v. )<br>)<br>**WILLIAM F. WESTERMAN, et al.** )<br>)<br>**Defendants.** ) | **CASE NUMBER 1:08-CV-00355-RMU** |

**ORDER**

This matter having come before this Court on this ___ day of _____, 2008 on the

motion of Defendants Armstrong, Westerman, Hattori, McLeland & Naughton, LLP; Armstrong,

Westerman & Hattori, LLP; Armstrong, Kratz, Quintos, Hanson & Brookes, LLP; and Kratz,

Quintos & Hanson, LLP, joined by Defendant the Estate of James Armstrong, III (the "Kratz

Defendants") to Dismiss Amended Complaint, or in the Alternative, for Summary Judgment, and

this Court having considered said Motion, Plaintiffs' opposition thereto, and the Kratz

Defendants' reply, it is hereby

ORDERED, that the Court regards the Kratz Defendants' Motion to Dismiss First

Amended Complaint, or in the Alternative, for Summary Judgment, as a motion for summary

judgment, and because: (1) discovery has not commenced in this case; and (2) Plaintiffs have

shown to the Court's satisfaction that they cannot present facts essential to their opposition

without discovery; then the Kratz Defendants' motion is hereby DENIED pursuant to Fed. R.

Civ. P. 56(f).

_____
U.S. District Court Judge Ricardo Urbina

COPIES:

Creighton R. Magid, Esquire
DORSEY & WHITNEY LLP
1050 Connecticut Avenue, N.W., Suite 1250
Washington, D.C. 20036

Christopher B. Mead, Esquire
London & Mead
1225 19th Street, N.W., Suite 320
Washington, D.C. 20036

Paul J. Maloney, Esquire
Carr Maloney, P.C.
1615 L Street, N.W., Suite 500
Washington, D.C. 20036

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

SEED COMPANY, LTD. and SHIGERU )
TAMAI                          )
                               )
             Plaintiffs        )
                               )    CASE NUMBER 1:08-CV-00355-RMU
v.                             )
                               )
WILLIAM F. WESTERMAN, et al.   )
                               )
             Defendants.       )

---

## ORDER

This matter having come before this Court on this ___ day of _____, 2008 on the

motion of Defendants Armstrong, Westerman, Hattori, McLeland & Naughton, LLP; Armstrong,

Westerman & Hattori, LLP; Armstrong, Kratz, Quintos, Hanson & Brookes, LLP; and Kratz,

Quintos & Hanson, LLP, joined by Defendant the Estate of James Armstrong, III (the "Kratz

Defendants"), to Dismiss First Amended Complaint, or in the Alternative, for Summary

Judgment, and this Court having considered said Motion, Plaintiffs' opposition thereto, and the

Kratz Defendants' reply, it is hereby

ORDERED, that the Kratz Defendants' Motion to Dismiss First Amended Complaint, or

in the Alternative, for Summary Judgment, is hereby DENIED.

_____
U.S. District Court Judge Ricardo Urbina

COPIES:

Mark London, Esquire
London & Mead
1225 19th Street, N.W., Suite 320
Washington, D.C. 20036

Creighton R. Magid, Esquire
Dorsey & Whitney, LLP
1050 Connecticut Avenue, N.W., Suite 1250
Washington, D.C. 20036

Paul J. Maloney, Esquire
Carr Maloney, P.C.
1615 L Street, N.W., Suite 500
Washington, D.C. 20036

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SEED COMPANY, LTD., et al. | ) |
| | ) |
| **Plaintiffs** | ) |
| | ) |
| v. | )     **CASE NUMBER 1:08-CV-00355-RMU** |
| | ) |
| WILLIAM F. WESTERMAN, et al. | ) |
| | ) |
| **Defendants.** | ) |

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that I filed the following documents:

- MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO KRATZ DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT;

- DECLARATION OF MARK S. CARLSON IN SUPPORT OF PLAINTIFFS' OPPOSITION TO THE KRATZ DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT;

- DECLARATION OF MASATOSHI SHINTANI IN SUPPORT OF PLAINTIFFS' OPPOSITION TO THE KRATZ DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT;

- PROPOSED ORDER DENYING DEFENDANTS' MOTION PURSUANT TO FED. R. CIV. P. 56(f);

- PROPOSED ORDER DENYING DEFENDANTS' MOTION TO DISMISS

with the clerk of the court using ECF which provides notice, via e-mail, to the below listed

interested parties:

Christopher Bowmar Mead
London & Mead
1225 19th St., NW, Ste. 320
cmead@londonandmead.com

Paul J. Maloney
Carr Maloney, P.C.
1615 L St., NW, Ste. 500
Washington, DC 20036
pjm@carrmaloney.com

Michael J. Sepanik
Carr Maloney, P.C.
1615 L St., NW, Ste. 500
Washington, DC 20036
mjs@carrmaloney.com

Creighton R. Magid
Dorsey & Whitney LLP
1050 Connecticut Ave., NW, Ste. 1250
Washington, DC 20036
magid.chip@dorseylaw.com

DATED this 26th day of June 2008.

s/Matthew C. Jaeger
Matthew C. Jaeger