UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SEED COMPANY, LTD., et al.<br><br>        Plaintiffs<br><br>v.<br><br>WILLIAM F. WESTERMAN, et al.<br><br>        Defendants. | )<br>)<br>)<br>)  CASE NUMBER 1:08-cv-00355-RMU<br>)<br>)<br>)  ORAL HEARING REQUESTED<br>)  PURSUANT TO LCvR 7(f)<br>)<br>) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO WESTERMAN DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, ON STATUTE OF LIMITATIONS AND CAUSATION GROUNDS

OF COUNSEL:
Paul T. Meiklejohn
Curt R. Hineline
Mark S. Carlson
DORSEY & WHITNEY LLP
U.S. Bank Centre
1420 Fifth Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: (206) 903-8800
Fax: (206) 903-8820

Dated: June 26, 2008

Creighton R. Magid (D.C. Bar No. 476961)
DORSEY & WHITNEY LLP
1050 Connecticut Avenue, N.W., Suite 1250
Washington, D.C. 20036
Telephone: (202) 442-3555
Fax: (202) 442-31990
magid.chip@dorsey.com

James E. Howard (D.C. Bar No. 481455)
DORSEY & WHITNEY LLP
1420 Fifth Ave., Ste. 3400
Seattle, WA 98101
Tel: (206) 903-2390
Fax: (206) 903-8820
howard.james@dorsey.com

Counsel For Plaintiffs
SEED COMPANY LIMITED and SHIGERU TAMAI

## TABLE OF CONTENTS

I. INTRODUCTION ....................................................................................................................1

II. FACTS ...................................................................................................................................2

III. ARGUMENT.........................................................................................................................2

    A.    The Settlement Proposals Offered Value to Seed: Guaranteed Access to the United States Market...................................................................................2

        1.    Stevens' January 14, 2004 Settlement Offer and Westerman Defendants' Negligent Advice................................................................2

        2.    Stevens' July 12, 2004 Settlement Offer. .....................................................4

        3.    The Westerman Defendants Conceded That They Gave Incorrect Legal Advice..........................................................................................4

    B.    Plaintiffs Properly Pled Proximate Cause and Damages. ..........................................5

        1.    The Pleadings................................................................................................5

        2.    The Westerman Defendants' Proximate Cause Arguments Are No More Than an Improper Attack on Seed's Credibility. ...............................9

IV. CONCLUSION....................................................................................................................10

## I.   INTRODUCTION

While the Westerman Defendants' motion to dismiss Plaintiffs' original complaint was pending, Plaintiffs filed an amended complaint, as permitted by Fed. R. Civ. P. 15, to include additional claims against the Estate of James Armstrong, III and the Kratz Defendants. The First Amended Complaint also added some clarifying allegations related to proximate cause. In renewing their motion to dismiss, the Westerman Defendants adopt their prior briefing, and address only new matters raised by the Amended Complaint. Plaintiffs will follow suit, and address only the allegedly "new" arguments that Defendants raised, in section III, below. Accordingly, Plaintiffs adopt and incorporate herein by reference their memorandum of points and authorities in opposition to the Westerman Defendants' motion to dismiss the original complaint and statement of material facts (Dkt. No. 8-01), and the declarations of Masatoshi Shintani and James Howard in support thereof (Dkt. Nos. 8-03 and 8-02, respectively).[1] Plaintiffs also respectfully request the opportunity for oral argument in support of their Opposition.

---

[1] The Westerman Defendants recently filed a belated Opposition to Plaintiffs' Motion to Strike the Second Declaration of William F. Westerman (Dkt. Nos. 33-01 and 33-02), and apparently intend to rely on this declaration as part of the record for their renewed motion. Plaintiffs object that the declaration itself is comprised in substantial part of inadmissible speculation and opinion (¶¶ 2-5), and self-serving hearsay statements (¶ 4), rendering it improperly considered in support of a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *see also, Hall v. Central Intelligence Agency*, 538 F. Supp.2d 64, 67-70 (D.D.C. 2008). Plaintiffs also object to the unauthenticated exhibit attached to the declaration, which Defendants speculate is ultimately a statement from Seed. This does not lay a proper foundation, and is particularly problematic given possible translation issues. But even putting these deficiencies aside, the declaration adds nothing to Defendants' statute of limitations arguments, as it at most emphasizes that questions of fact may exist as to when Plaintiffs' claims accrued. It also has no bearing on the tolling arguments that Plaintiffs have raised. If the Court believes it necessary, Plaintiffs can address these issues further through their previously requested surreply.

## II. FACTS

Plaintiffs adopt and incorporate herein by reference the facts recited in their opposition to the Westerman Defendants' motion to dismiss the original complaint and statement of material facts (Dkt. No. 8-01), and the declarations of Masatoshi Shintani and James Howard in support thereof (Dkt. Nos. 8-03 and 8-02, respectively).

## III. ARGUMENT

The Westerman Defendants argue that Plaintiffs have failed to allege proximate cause and damages because the Westerman Defendants do not regard it as plausible that Plaintiffs would ever have accepted the settlement offers. Implicit in their argument is the proposition that the settlement offers would have no value to Seed. While not required at this stage of the litigation, Plaintiffs nonetheless demonstrate that the settlement offers had definite value to Seed in subsection A, below. In subsection B, Plaintiffs demonstrate that they have properly pled proximate cause and damages under the prevailing legal standards.

    A.    **The Settlement Proposals Offered Value to Seed: Guaranteed Access to the United States Market.**

        1.    **Stevens' January 14, 2004 Settlement Offer and Westerman Defendants' Negligent Advice.**

On June 25, 2002, the Board of Patent Appeals and Interferences issued its ruling, in which it determined that Seed was first to invent the subject matter claimed in the US '839 Application, and awarded Seed priority over the Stevens Patent.[2] Stevens, having lost before the Board, appealed to the Federal Circuit on May 12, 2003.[3]

---

[2] Shintani Dec. (Dkt. No. 8-03) Ex. 11 (Decision at p. 1).
[3] Shintani Dec. (Dkt. No. 8-03) Ex. 17 (Notice of Appeal at p. 1).

The Stevens Patent had been assigned to the Office Products Group of Gillette, which was succeeded by the Sanford business unit of Newell Rubbermaid.[4] On January 14, 2004, Associate General Counsel of Newell Rubbermaid, Mr. Stuart Graff, wrote to Mr. Yasuhiro Nishioka, President of Seed, to offer to settle the Interference.[5] The timing of this offer, after the Board ruled but before Stevens' appeal was decided, is crucial—if Seed had accepted it, Seed would have been granted a United States patent, and would have had to license only its foreign patent rights to Stevens in exchange. Thus, the settlement would have preserved Seed's status as the victor in the interference, and would have permitted Seed to obtain a patent on its US '839 Application. In sum, under the proposed settlement, Seed would receive rights to make, use, offer to sell, sell, import into the United States, and license the technology claimed in the US '839 Application in the United States market, in exchange for allowing Sanford to compete with Seed in markets outside of the United States—where Seed was already established.

The Westerman Defendants, however, incorrectly advised Seed that even in the unlikely event that Seed lost Stevens' appeal of the Board's ruling in the Federal Circuit, Seed's US '839 Application would be remanded to the patent Examiner for further prosecution and Seed could still be awarded a United States patent.[6] In other words, the proposed settlement would have had little value because, according to the Westerman Defendants, Plaintiffs would have been able to obtain a United States patent regardless of the outcome of Stevens' appeal and regardless of whether they settled with Newell Rubbermaid. Seed relied on this incorrect advice in deciding

---

[4] Shintani Dec. (Dkt. No. 8-03) Ex. 29 (1/14/04 letter from S. Graff to Y. Nishioka, at 1).
[5] *Id.*
[6] *Compare*, Shintani Dec. (Dkt. 8-03) Ex. 19 (1/22/04 letter of Westerman Defendants to Plaintiffs, at 4-5) *to* Shintani Dec. (Dkt. 8-03) Ex. 30 (12/04/06 letter from Westerman Defendants to Plaintiffs, at 1).

3

not to accept the January 14, 2004 settlement offer.[7] Less than five months after the January 14, 2004 settlement offer, on May 4, 2004, the Federal Circuit reversed the Board's ruling on priority, taking priority away from Plaintiffs and granting it instead to Stevens.[8]

### 2. Stevens' July 12, 2004 Settlement Offer.

After the Federal Circuit's reversal of the Board's ruling in favor of Plaintiffs, Newell Rubbermaid was still willing to settle, although the terms were different than they had been previously. Under the July 12, 2004 proposed settlement, after the Federal Circuit reversed the Board, the parties would grant one another mutual world-wide royalty-free licenses to make, use, offer to sell, sell or import "sideways tape dispensers" within the scope of the claims of the patent and application at issue in the Interference.[9] The value of this offer to Plaintiffs is that it would have guaranteed Plaintiffs access to the United States market without risk of a claim of infringement of the Stevens Patent. Plaintiffs, in reliance on the Westerman Defendants' incorrect legal advice that they could obtain a United States patent notwithstanding their defeat in the Federal Circuit, did not agree to these or subsequent settlement terms.[10]

### 3. The Westerman Defendants Conceded That They Gave Incorrect Legal Advice.

It was not until December 4, 2006 that the Westerman Defendants wrote to Seed and admitted that they were "*mistaken in thinking that the[US '839 Application] prosecution would reopen [after the Federal Circuit ruled against Seed]*." December 4, 2006 letter from Defs. to

---

[7]  First Amended Complaint ¶¶ 28-30.
[8]  First Amended Complaint ¶ 31; Shintani Dec. Ex. 20 at p. 1.
[9]  Westerman Dec. Ex. 2 (Dkt. No. 34-4) (July 12, 2004 Letter from Graff to Nishioka, with attached draft Settlement and License Agreement, "Recitals," ¶¶ 1.2-1.6 and Exs. A and B).
[10] First Amended Complaint ¶ 32.

Pls. at 1 (emphasis supplied).[11] Had Defendants previously reviewed 37 C.F.R. § 41.127(a)(2), they would have known that an "[a]dverse judgment against a claim is a final action of the [Patent] Office requiring no further action by the [Patent] Office to dispose of the claim permanently." Had they read the Manual of Patent Examining Procedure ("MPEP") § 2308.01, a public document that instructs Patent Office Examiners how to examine patent applications, they would have known that if no claim is allowed by the Board, "no further action is needed from the examiner" and "a notice of abandonment should be issued." Instead, the Westerman Defendants first informed Seed that the prosecution of its US '839 Application had actually been closed since the Federal Circuit issued its mandate on September 14, 2004, over two years later on December 4, 2006.[12]

### B. Plaintiffs Properly Pled Proximate Cause and Damages.

#### 1. The Pleadings.

In a legal malpractice action, "[p]roximate cause exists when there is a 'substantial and direct causal link' between the attorney's breach and the injury sustained by the client." *Dalo v. Kivitz*, 596 A.2d 35, 42 (D.C. 1991). In the First Amended Complaint, Seed properly alleged proximate causation and damages under this standard. Seed alleged:

> 28. In a letter dated January 14, 2004, the owner of the Stevens patent offered to settle the Interference by each party granting the other a royalty-free, non-exclusive license, including the right to sublicense.
>
> 29. On January 22, 2004, the Westerman firm incorrectly

---

[11] First Amended Complaint ¶ 39; Shintani Dec. Ex. 30 at p. 1.

[12] *Id.* Notably, the Federal Circuit's denial of panel rehearing and rehearing *en banc*, dated June 10, 2004, the Federal Circuit's mandate, dated September 14, 2004, or the Westerman Defendants' December 4, 2006 admission that their legal advice had been incorrect, would all render Plaintiffs' claims timely under the accrual rule.

5

> advised Seed in a letter from Defendant Westerman that even if Seed were to lose the pending Federal Circuit appeal, the patent application would thereafter "be returned to the Examiner" and Seed would be permitted to "add or amend claims."
>
> 30. Seed, in reliance upon such incorrect advice, decided not to accept the cross-license settlement offer from the owner of the Stevens patent. *Seed would have accepted this valuable settlement offer if Defendants had not negligently advised them, among other things, regarding: its ability to protect its invention in the United States despite Defendants' failure to file an English language translation of the PCT application; its chance of success in the appeal pending before the Federal Circuit Court of Appeals; and its ability to raise new or amended claims before the patent examiner.*
>
> [. . . .]
>
> 32. On July 12, 2004, the owner of the Stevens patent renewed the offer to settle in exchange for mutual cross-licenses, omitting only the provision for granting sublicenses. Again, Seed, in reliance upon the Westerman firm's incorrect and negligent advice, decided not to accept the cross-license settlement offer.
>
> 33. For the next several years the Westerman firm continued to incorrectly advise Seed that it could still obtain a U.S. patent and related protections for its invention, and *Plaintiffs believed that such protections were more valuable than the settlement offers they received from the owner of the Stevens patent.*

Amended Complaint, ¶¶ 28-33 (emphasis supplied). Count II contains other proximate cause allegations:

> 48. Defendants each formed an attorney-client relationship with Plaintiffs, and accordingly, each owed Plaintiffs a duty of care.
>
> 49. The erroneous legal advice provided by Defendants, including that the Stevens appeal was frivolous, that Seed could obtain a U.S. patent and related protections for its invention regardless of Defendants' failure to file an English translation of the PCT application, and that even if Seed lost the pending Federal Circuit appeal, the patent application would thereafter "be returned to the Examiner" and Seed would be permitted to "add or amend claims" (contrary to 37 C.F.R. § 41.127(a)(2) and MPEP § 2308.01), breached the duty of care owed by an attorney to a client, and therefore, constitutes legal malpractice.

6

> 50. Plaintiffs had opportunities to make settlement offers to the owner of the Stevens patent after Plaintiffs prevailed before the Board, and had opportunities to accept settlement offers from the owner of the Stevens patent before and after the Federal Circuit ruling. Plaintiffs' decision not to enter into a settlement with the owner of the Stevens patent was made in reliance on the erroneous legal advice provided by Defendants. *This incorrect advice was the proximate cause of Plaintiffs' loss of royalties that would have been earned had Plaintiffs agreed to settle with the owner of the Stevens patent.*
>
> 51. As a proximate consequence of Defendants' negligence, Plaintiffs have been damaged in an amount to be proved at trial, but in any event not less than $75,000, exclusive of interest and costs.

Amended Complaint ¶¶ 48-51 (emphasis supplied).

Thus, if Seed had accepted the original settlement offer—after the Board ruled in favor of Seed and before the Federal Circuit reversed the Board—Seed would have obtained a United States patent based upon the US '839 Application. If Seed had accepted the second offer, it would have had access to the United States market without risk of a claim of infringing the Stevens Patent. Seed did not reach a settlement, however, in reliance on the incorrect legal advice of the Westerman Defendants. As a result, Seed lost the opportunity to obtain a United States patent and to license its technology or otherwise commercialize its invention in the United States market.[13]

---

[13] The Westerman Defendants assert that Seed's "descriptions of the settlement offers are misleading." Westerman Mem. at 2. They argue that the Amended Complaint implies that the settlement offers were "for cross-licenses on the patent rights at issue in the Interference," while in fact, Seed would have to "license its entire patent portfolio for 'sideways tape dispensers.'" Westerman Mem. at 2. Seed did not misrepresent the settlement offers. The Amended Complaint does not allege, or even imply, that the settlement offers addressed *only* the patent and application at issue in the Interference. And in fact, the settlement offers included the very Stevens Patent and Seed US '839 Application (among other applications), at issue in the Interference. Westerman Dec. Ex. 2 (Dkt. No. 34-4) (July 12, 2004 Letter from Graff to Nishioka, with attached draft Settlement and License Agreement, "Recitals," ¶¶ 1.2-1.6 and Exs. A and B).

7

The Westerman Defendants argue that these allegations are so deficient that the complaint must be dismissed. First, they argue that Seed failed to properly allege proximate cause:

> In order to allege causation, Plaintiffs must allege that they relied on the allegedly negligent legal advice, and turned down the settlement offers because they believed that the value of patent rights they hoped to obtain, <u>minus</u> the value of the licenses they would have to grant on their existing patent portfolio, exceeded their estimate of the value of the licenses offered.

Westerman Mem. at 3 (emphasis in original). Second, they argue that Seed failed to properly plead damage:

> Further, in order to allege actual damages, Plaintiffs must show that if they had accepted the settlement offer, they would have made more money than they lost. Plaintiffs must demonstrate that the value of the Stevens patent licenses offered <u>exceeded the value of the licenses that Seed would have had to provide in return</u>.

Westerman Mem. at 3 (emphasis in original).

The Westerman Defendants cite no legal authority that requires such detailed allegations to plead proximate cause and damages. To the contrary, "a complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests." *Lewis v. District of Columbia*, 535 F.Supp.2d 1, 8 (D.D.C. 2008) (*quoting Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003)). The Supreme Court requires only a "plausible entitlement to relief," by setting forth "any set of facts consistent with the allegations." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1967, 1969 (2007). While these facts must "possess enough heft to 'sho[w] that the pleader is entitled to relief,'" the Supreme Court held that a complaint "*does not need detailed factual allegations.*" *Id.* at 1964, 1966 (emphasis added). The court "must accept as true all of the factual allegations contained in the complaint." *Kassem v. Wash. Hosp. Ctr.*, 513 F.3d 251, 253 (D.C. Cir. 2008) (*quoting*

8

*Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007)); *see also Twombly*, 127 S.Ct. at 1965; *Brown v. Dist. of Columbia*, 514 F.3d 1279, 1281-82 (D.C. Cir. 2008); *Monument Realty LLC v. Washington Metropolitan Area Transit Authority*, 535 F.Supp.2d 60, 68 (D.D.C. 2008). The complaint is construed liberally in the Plaintiff's favor, "with the benefit of all reasonable inferences alleged." *In re Sealed Case*, 494 F.3d 139, 145 (D.C. Cir. 2007).

Seed's Amended Complaint easily meets the Supreme Court's plausibility standard. As a consequence of the Westerman Defendants' incorrect advice, Seed did not accept the settlement offers by Newell Rubbermaid. Had it accepted those offers, it would have been able to license its correction tape dispenser for sale in the United States. As a direct consequence, Seed has lost the revenue that these licenses would have provided. It is certainly plausible that access to the United States market would provide more value to Plaintiffs than would be lost by granting the cross-license to Newell Rubbermaid in other foreign markets, where Seed was already established.

### 2. The Westerman Defendants' Proximate Cause Arguments Are No More Than an Improper Attack on Seed's Credibility.

The Westerman Defendants' argument is directed more to credibility than to any pleading defect. They simply do not believe that Seed would have accepted the Newell Rubbermaid settlement offer but for their negligent advice. This is not grounds for dismissing a complaint. As the Supreme Court recently noted, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 127 S.Ct. at 1965 (internal citations omitted); *Monument Realty LLC*, 535 F.Supp.2d at 68. Here, Plaintiffs' original and amended complaints *far exceed* the Supreme Court's liberal "plausibility" standard. Taking the facts as alleged in Plaintiffs' complaints to be true, and drawing all inferences in their favor, there can be no doubt that Plaintiffs have pled a

9

plausible claim for relief. Defendants' incredulity is not a basis to dismiss Plaintiffs' claims under Rules 12(b) or 56.

## IV. CONCLUSION

For the foregoing reasons, and those stated in Plaintiffs' original memorandum in opposition to the Westerman Defendants' motion to dismiss, or in the alternative for summary judgment, Plaintiffs respectfully request that the Westerman Defendants' motion be denied, or that a continuance be granted pursuant to Fed. R. Civ. P. 56(f).

Dated: June 26, 2008

Respectfully submitted,

/s/ James E. Howard
Creighton R. Magid (D.C. Bar No. 476961)
DORSEY & WHITNEY LLP
1050 Connecticut Avenue, N.W., Suite 1250
Washington, DC 20036
Telephone: (202) 442-3555
Fax: (202) 442-3199
magid.chip@dorsey.com

James E. Howard (D.C. Bar No. 481455)
DORSEY & WHITNEY LLP
1420 Fifth Ave., Ste. 3400
Seattle, WA 98101
Tel: (206) 903-2390
Fax: (206) 903-8820
howard.james@dorsey.com

Counsel For Plaintiffs
SEED COMPANY LIMITED and SHIGERU TAMAI

OF COUNSEL:
Paul T. Meiklejohn
Curt R. Hineline
Mark S. Carlson
DORSEY & WHITNEY LLP
U.S. Bank Centre
1420 Fifth Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: (206) 903-8800
Fax: (206) 903-8820

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SEED COMPANY, LTD. and SHIGERU TAMAI )
)
)
        **Plaintiffs** )
) CASE NUMBER 1:08-CV-00355-RMU
v. )
)
WILLIAM F. WESTERMAN, et al. )
)
        **Defendants.** )

## ORDER

    This matter having come before this Court on this ___ day of _____, 2008 on the Motion to Dismiss First Amended Complaint, or, in the Alternative, for Summary Judgment, on Statute of Limitations and Causation Grounds, filed by Defendants William F. Westerman, John Kong, Ed Kennehan and Westerman, Hattori, Daniels & Adrian, LLP (collectively, "Westerman Defendants"), and this Court having considered said Motion, Plaintiffs' opposition thereto, and Defendants' reply, it is hereby

    ORDERED, that the Court regards the Westerman Defendants' Motion to Dismiss First Amended Complaint, or, in the Alternative, for Summary Judgment, on Statute of Limitations and Causation Grounds as a motion for summary judgment, and because: (1) discovery has not commenced in this case; and (2) Plaintiffs have shown to the Court's satisfaction that they cannot at this time present facts essential to their opposition without discovery; then the Westerman Defendants' motion is hereby DENIED pursuant to Fed. R. Civ. P. 56(f).

_____
U.S. District Court Judge Ricardo Urbina

COPIES:

Creighton R. Magid, Esquire
DORSEY & WHITNEY LLP
1050 Connecticut Avenue, N.W., Suite 1250
Washington, D.C. 20036

Christopher B. Mead, Esquire
London & Mead
1225 19th Street, N.W., Suite 320
Washington, D.C. 20036

Paul J. Maloney, Esquire
Carr Maloney, P.C.
1615 L Street, N.W., Suite 500
Washington, D.C. 20036

John H. Harman, Esquire
Coggins, Harman & Hewitt
8905 Fairview Road, Suite 600
Silver Spring, MD 2091

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SEED COMPANY, LTD. and SHIGERU TAMAI   )
)
)
Plaintiffs )
)   CASE NUMBER 1:08-CV-00355-RMU
v. )
)
WILLIAM F. WESTERMAN, et al. )
)
Defendants. )

## ORDER

This matter having come before this Court on this ___ day of _____, 2008 on the Motion to Dismiss First Amended Complaint, or, in the Alternative, for Summary Judgment, on Statute of Limitations and Causation Grounds filed by Defendants William F. Westerman, John Kong, Ed Kennehan and Westerman, Hattori, Daniels & Adrian, LLP (collectively, "Westerman Defendants"), and this Court having considered said Motion, Plaintiffs' opposition thereto, and the Westerman Defendants' reply, it is hereby

ORDERED, that the Westerman Defendants' Motion to Dismiss First Amended Complaint, or, in the Alternative, for Summary Judgment, on Statute of Limitations Grounds, is hereby DENIED.

_____
U.S. District Court Judge Ricardo Urbina

COPIES:

Creighton R. Magid, Esquire
DORSEY & WHITNEY LLP
1050 Connecticut Avenue, N.W., Suite 1250
Washington, D.C. 20036

Christopher B. Mead, Esquire
London & Mead
1225 19th Street, N.W., Suite 320
Washington, D.C. 20036
Paul J. Maloney, Esquire

Paul J. Maloney, Esquire
Carr Maloney, P.C.
1615 L Street, N.W., Suite 500
Washington, D.C. 20036

John H. Harman, Esquire
Coggins, Harman & Hewitt
8905 Fairview Road, Suite 600
Silver Spring, MD 20910

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SEED COMPANY, LTD., et al. )<br>)<br>**Plaintiffs** )<br>)<br>v. )<br>)<br>WILLIAM F. WESTERMAN, et al. )<br>)<br>**Defendants.** ) | CASE NUMBER 1:08-CV-00355-RMU |

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that I filed the following documents:

- MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO WESTERMAN DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, ON STATUTE OF LIMITATIONS AND CAUSATION GROUNDS;

- PROPOSED ORDER DENYING DEFENDANTS' MOTION PURSUANT TO FED. R. CIV. P. 56(f);

- PROPOSED ORDER DENYING DEFENDANTS' MOTION TO DISMISS

with the clerk of the court using ECF which provides notice, via e-mail, to the below listed interested parties:

Christopher Bowmar Mead
London & Mead
1225 19th St., NW, Ste. 320
cmead@londonandmead.com

Paul J. Maloney
Carr Maloney, P.C.
1615 L St., NW, Ste. 500
Washington, DC 20036
pjm@carrmaloney.com

-2-

Michael J. Sepanik
Carr Maloney, P.C.
1615 L St., NW, Ste. 500
Washington, DC 20036
mjs@carrmaloney.com

Creighton R. Magid
Dorsey & Whitney LLP
1050 Connecticut Ave., NW, Ste. 1250
Washington, DC 20036
magid.chip@dorseylaw.com

DATED this 26th day of June 2008.

                                                        s/Matthew C. Jaeger
                                                        Matthew C. Jaeger