**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SEED COMPANY, LTD. *et al.*,     :

                        :

        Plaintiffs,     :   Civil Action No.:   08-0355 (RMU)

                        :

        v.           :   Re Document Nos.:  34, 35

                        :

WILLIAM F. WESTERMAN *et al.*,     :

                        :

        Defendants.     :

<u>**MEMORANDUM OPINION**</u>

**DENYING WITHOUT PREJUDICE THE WESTERMAN DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; DENYING WITHOUT PREJUDICE THE KRATZ DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT; GRANTING THE PLAINTIFFS' REQUEST FOR DISCOVERY**

## I. INTRODUCTION

This matter is before the court on the defendants' respective motions for summary
judgment, as well as the plaintiffs' request for discovery. The plaintiffs, Seed Company Ltd. and
Shigeru Tamai, (collectively, "Seed"), bring claims of legal malpractice against the two law
firms and individual lawyers who represented them in a prior patent dispute. The plaintiffs assert
that the defendants acted negligently when they allegedly (1) failed to file an English translation
of the plaintiffs' Japanese patent application with a particular motion in their patent litigation,
and (2) provided erroneous legal advice that led the plaintiffs to reject two settlement offers
related to that same patent litigation.

The defendants now move for summary judgment.[1]  The plaintiffs, in response, ask that the court allow a period of discovery before ruling on the defendants' motions for summary judgment.  Because the court determines that discovery should proceed prior to ruling on the defendants' motions, the court grants the plaintiff's request and denies without prejudice the defendants' respective motions.

## II.  BACKGROUND

### A.  Factual Background

On July 31, 1991, Seed filed a patent application ("JP 371") with Japan's patent office authority.  Am. Compl. ¶ 13.  On July 24, 1992, Seed filed an international patent application under the Patent Cooperation Treaty ("PCT") in Japan.  *Id.* ¶ 14.  The subject matter of both of these patent documents was a correction tape dispenser created by one of the plaintiffs, Shigeru Tamai.  *Id.* ¶ 15.

In March 1993, Seed retained the law firm of Kratz, Quintos, & Hanson, LLP ("the Kratz firm") to file a patent application for Tamai's correction tape dispenser in the United States.  *Id.* ¶ 16.  On March 29, 1993, the Kratz firm filed an initial U.S. patent application ("183 application") on behalf of Seed.  *Id.* ¶ 17.  The following year, on February 15, 1994, the Kratz firm filed an additional patent application ("839 application"), which was a partial continuation of the 183 application.  *Id.* ¶ 18.

---

[1]     The defendants style their motions as motions to dismiss, or, in the alternative, for summary judgment.  Because the parties have presented materials outside of the pleadings and because the court has not excluded that material in making its rulings, the court treats these motions as motions for summary judgment.  *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003) (observing that when resolving a motion to dismiss for failure to state a claim and "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56").

Around the same time, on February 10, 1993, an individual named Christopher Stevens ("Stevens") filed a patent application in the United Kingdom for a correction tape dispenser. *Id.* ¶ 19. While Seed's U.S. patent application was pending, Stevens had filed a patent application for the correction tape dispenser in the United States. *Id.* ¶ 21. Approximately two years later, on February 28, 1995, the United States Patent and Trademark Office ("USPTO") issued Stevens a patent for his design. *Id.* ¶ 19.

Detecting that Seed's pending 839 application and Stevens' U.S. patent involved potentially similar subject matter, the USPTO declared an "interference" to determine the relative priority of the two.[2] *Id.* ¶ 20. Stevens petitioned the U.S. Board of Patent Appeals and Interferences ("the Board") to have his U.S. patent application backdated to the date that he filed his United Kingdom patent application. *Id.* ¶ 21. The Board granted his request, allowing Stevens' U.S. patent application to be considered filed as of February 10, 1993. *Id.*

The Kratz firm filed a similar motion with the Board requesting that Seed receive the benefit of the PCT and JP 371 applications filed in Japan and dated July 24, 1992 and July 31, 1991, respectively. *Id.* ¶ 22. With the motion, the Kratz firm included an English language translation of the JP 371 application, but did not include an English language translation of the PCT application. *Id.*

In June 2002, the Board granted Seed's request to receive the benefit of the July 31, 1991 date associated with the JP 371 application ("Board's June 2002 decision"). *Id.* ¶ 23. The Board did not, however, afford Seed the benefit of the July 24, 1992 date associated with its PCT application because Seed failed to include an English language translation of its Japanese PCT

---

[2]     "Whenever an application is made for a patent which . . . would interfere with any pending application, or with any unexpired patent, an interference may be declared. . . . The Board of Patent Appeals and Interferences shall determine questions of priority of the inventions and may determine questions of patentability."  35 U.S.C. § 135.

application with its motion, as required by 37 C.F.R. § 637(f) and § 1.647.  *Id.*  Nevertheless, because Seed's JP 371 application, dated July 31, 1991, was filed in Japan prior to Stevens' United Kingdom application, dated February 10, 1993, the Board assigned priority to Seed with respect to the correction tape dispenser patent in the United States.  *Id.*

In July 2002, the Kratz firm filed a motion for reconsideration with the Board, arguing that Seed should receive the benefit of the PCT application date notwithstanding the lack of an English translation filing.  Westerman Defs.' Mot. for Summ. J. ("Westerman Def.'s Mot.") at 6-7.  The Kratz firm argued that a translation of the PCT application was not necessary because one had already been included with the 183 application.  *Id.*  The Board denied this motion for reconsideration, reiterating its earlier ruling that a separate English translation was required for Seed to receive the benefit of its PCT application date.  *Id.* at 8.  Seed nevertheless retained the benefit of the date associated with the JP 371 application date and hence priority over Stevens' patent.  *Id.*

In May 2003, Stevens filed an appeal with the Federal Circuit regarding the Board's June 2002 decision that had awarded priority to Seed for the correction tape dispenser patent.  Am. Compl. ¶ 24.  Although the Kratz firm continued to represent Seed with respect to this appeal, *id.*, around October 1, 2003, some of the attorneys handling Seed's case – specifically William Westerman, John Kong, and Ed Kenehan – left the Kratz firm to establish their own law firm under the name Westerman, Hattori, Daniels and Adrian, LLP ("the Westerman firm"), *id.* ¶ 27. The Westerman firm took over Seed's representation regarding the correction tape dispenser patent in the United States.  *Id.*

In January 2004, while Stevens' appeal was pending in the Federal Circuit, Stevens submitted a settlement offer to Seed that would have granted each party a royalty-free, non-

exclusive license that included the right to sublicense for the other party's patent rights. *Id.* ¶ 28. According to the plaintiffs, the Westerman firm subsequently advised Seed that even if the Federal Circuit reversed the Board's decision granting Seed priority, Seed's patent application would "be returned to the [patent e]xaminer," at which point Seed would be permitted to "add or amend claims." *Id.* ¶ 29.  Seed claims that it acted in reliance upon this advice in choosing to decline the settlement offer. *Id.* ¶ 30.

On May 4, 2004, the Federal Circuit reversed the Board's decision to give Seed's patent application priority over Stevens' patent. *Id.* ¶ 31.  More specifically, the Federal Circuit held that under 35 U.S.C. § 119(a), a patent application may only receive the benefit of the date of a previous filing made in a foreign country if the application in the United States is filed within one year of the foreign application filing date. *Id.*  Because Seed's JP 371 application in Japan was filed more than one year before its U.S. patent application, Seed was not awarded priority. *Id.*  Further, the Federal Circuit affirmed the Board's decision that Seed was not entitled to the benefit of the PCT application's filing date because of Seed's failure to include an English language translation with its motion to the Board. *Id.*

Seed petitioned the Federal Circuit for a panel rehearing and for rehearing *en banc*, but on June 10, 2004, the Federal Circuit denied these petitions.  Pls.' Opp'n to Westerman Def.'s Mot. at 21.  Stevens offered to settle again in July 2004, this time offering Seed a mutual cross-license without a right to sublicense.  Am. Compl. ¶ 32.  Seed turned down this offer as well, allegedly in reliance on the Westerman firm's negligent advice. *Id.*

In December 2006, the Westerman defendants allegedly informed Seed that contrary to its prior advice, the Federal Circuit's ruling on priority was final and Seed would not be able to pursue its patent application in the United States. *Id.* ¶ 39.  Seed and the Westerman defendants

subsequently entered into an agreement to toll the running of the statute of limitations on any legal malpractice claims; the effective date of this agreement was May 3, 2007. *Id.* ¶ 41. Seed and the Kratz defendants entered into an identical agreement which went into effect on May 10, 2007. *Id.* Although both agreements expired on December 31, 2007, they included a provision that allowed the plaintiffs to receive the benefit of the tolling agreement if they filed a claim within sixty days of the expired tolling agreement. *Id.*

## B. Procedural Background

On February 28, 2008, the plaintiffs commenced this action against the Kratz defendants[3] and the Westerman defendants[4] (collectively, "the defendants"). *See generally* Compl. The plaintiffs allege that the defendants committed legal malpractice by (1) failing to file an English translation with the PCT application ("failure to file claim"), and by (2) erroneously informing the plaintiffs that if the Federal Circuit did not find in their favor, the plaintiffs would still be able to pursue a U.S. patent for their correction tape dispenser ("erroneous advice claim"). *Id.* ¶ 33-43.

The Westerman and Kratz defendants have previously moved for summary judgment. *See generally* Westerman Defs.' Mot. for Summ. J.; Kratz Defs.' Mot. for Summ. J. ("Kratz Def.'s Mot."). The plaintiffs, however, amended their complaint in May 2008, to include two "contingent" legal malpractice claims against the Kratz defendants. The plaintiffs wish to pursue these two contingent claims only if the court were to dismiss the failure to file claim based on statute of limitations grounds. Am. Compl. ¶ 53-66. After the amended complaint was filed, the

---

[3]     The Kratz defendants include the law firm of Kratz, Quintos, & Hanson, LLP, as well as James Armstrong III, who is now deceased and represented by his estate's personal representative, John Harmon.

[4]     The Westerman defendants include the law firm of Westerman, Hattori, Daniels & Adrian, LLP, as well as the individual defendants – William F. Westerman, Ed Kenehan and John Kong.

Westerman and Kratz defendants subsequently renewed their respective motions for summary judgment. *See generally* Westerman Defs.' Renewed Mot. for Summ. J. ("Westerman Defs.' Renewed Mot."); Kratz Defs.' Renewed Mot. for Summ. J. ("Kratz Defs.' Renewed Mot."). The parties have not yet engaged in discovery. With the defendants' motions ripe for review, the court turns to the parties' arguments and the applicable legal standards.

## III.  ANALYSIS

### A.  Legal Standard for Summary Judgment

Summary judgment is appropriate when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine dispute" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248. In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

### B. Legal Standard for a Request for Additional Discovery Under Rule 56(d)

Under Rule 56(d), a court "may deny a motion for summary judgment or order a continuance to permit discovery if the party opposing the motion adequately explains why, at that timepoint, it cannot present by affidavit facts needed to defeat the motion." *Strang v. U.S. Arms Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir. 1989); *Londrigan v. Fed. Bureau of Investigation*, 670 F.2d 1164, 1174 (D.C. Cir. 1981). "[T]he purpose of Rule 56(d) is to prevent railroading the non-moving party through a premature motion for summary judgment before the non-moving party has had the opportunity to make full discovery." *Dickens v. Whole Foods Market Group, Inc.*, 2003 WL 21486821, at *2 n.5 (D.D.C. Mar. 18, 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)). Whether the circumstances warrant a continuance to permit discovery is a decision that falls within the discretion of the district court. *Stella v. Mineta*, 284 F.3d 135, 147 (D.C. Cir. 2002).

A non-moving party seeking the protection of Rule 56(d) "must state by affidavit the reasons why he is unable to present the necessary opposing material." *Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Wash.*, 699 F.2d 1274, 1278 n.6 (D.C. Cir. 1983); *see also Hotel & Rest. Employees Union, Local 25 v. Attorney Gen.*, 804 F.2d 1256, 1269 (D.C. Cir.

1986) (noting that this affidavit requirement helps "prevent fishing expeditions"), *vacated on*

*other grounds*, 808 F.2d 847 (D.C. Cir. 1987).  The non-moving party bears the burden of

identifying the facts to be discovered that would create a triable issue and the reasons why the

party cannot produce those facts in opposition to the motion.  *Byrd v. Envtl. Prot. Agency*, 174

F.3d 239, 248 n.8 (D.C. Cir. 1999).  The non-moving party must show a reasonable basis to

suggest that discovery would reveal triable issues of fact.  *Carpenter v. Fed. Nat'l Mortgage*

*Ass'n*, 174 F.3d 231, 237 (D.C. Cir. 1999).  "It is well settled that conclusory allegations

unsupported by factual data will not create a triable issue of fact."  *Byrd*, 174 F.3d at 248 n.8

(internal citations omitted); *see also Exxon Corp. v. Crosby-Miss. Res., Ltd.*, 40 F.3d 1474, 1488

(5th Cir. 1995) (holding that Rule 56(d) may not defeat summary judgment "where the result of a

continuance to obtain further information would be wholly speculative").

### C.  The Court Denies Without Prejudice the Defendants' Respective Motions for Summary Judgment Regarding the Plaintiffs' Failure to File Claim and Grants the Plaintiffs' Request for Discovery

The Westerman and Kratz defendants move for summary judgment on the grounds that

the plaintiffs' failure to file claim is barred by the applicable statute of limitations.[5]  Westerman

---

[5]     The Kratz defendants "fully adopt and incorporate the factual assertions, choice of law analysis, and arguments (including all exhibits referenced)" advanced by the Westerman defendants regarding the plaintiffs' failure to file claim.  Kratz Def.'s Mot. at 7.  For ease, the court refers to the Westerman and Kratz defendants as "the defendants" in discussing the plaintiffs' failure to file claim.

Defs.' Mot. at 10.[6]  The defendants argue that the plaintiffs' three-year limitations period began

to run in July 2002 when the plaintiffs incurred legal fees as a result of the defendants' failure to

file an English translation with the PCT application.  *Id.* at 15.  According to the defendants, the

Board's June 2002 decision put the plaintiffs on "inquiry notice" of the defendants' failure to file

the translation.  *Id.* at 11-12.  The defendants further reason that the plaintiffs would have known

of the detrimental ramifications of their failure to file the translation because the defendants filed

a motion to reconsider with the Board, and the plaintiffs were billed for this motion by the Kratz

firm.  *Id.* at 12.  The defendants conclude that the plaintiffs should have therefore filed their

failure to file claim by July 2005, or within three years of July 2002.

The plaintiffs counter with three alternative arguments regarding the statute of

limitations, and they urge the court to allow a period of discovery before ruling on this matter.

Pls.' Opp'n to Westerman Def.'s Mot. at 17-18, 45.  First, the plaintiffs argue that they did not

know of the harm that the defendants' failure to file an English translation caused them until, at

the earliest, June 10, 2004, when the Federal Circuit denied Seed's petitions for a panel rehearing

and for a rehearing *en banc.  Id.*  In making their argument, the plaintiffs rely in large part on the

fact that the Board initially granted Seed priority over Stevens, which they allege gave them the

impression that the failure to file did not detrimentally affect the plaintiffs' pending patent

application.  *Id.* at 19.  Second, the plaintiffs assert that the defendants are estopped from

---

[6]     The court refers to the Westerman defendants' original motion for summary judgment instead of
the renewed motion for summary judgment because the Westerman defendants by and large
responded to the plaintiffs' amended complaint by simply referring the court to their original
motion.  *See generally* Westerman Defs.' Renewed Mot.  The court pauses here to remind both
parties that "[Local Civil Rule 7(h)(1)] places the burden on the parties and their counsel, who are
most familiar with the litigation and the record, to crystallize for the district court the material
facts and relevant portions of the record."  *Jackson v. Finnegan, Henderson, Farabow, Garrett &
Dunner,* 101 F.3d 145, 151 (D.C. Cir. 1996) (citing *Twist v. Meese*, 854 F.2d 1421, 1425 (D.C.
Cir. 1988)).  The parties' piecemeal efforts to broadly incorporate a variety of legal theories and
arguments in separate filings undermines the purpose of Local Civil Rule 7(h)(1), as it leaves the
court to guess which arguments are relevant to the instant motions.

asserting the statute of limitations because of the "lulling doctrine," which a plaintiff invokes when a defendant takes affirmative steps to conceal from that plaintiff an injury that he or she may have sustained.  *Id.* at 28.  Third, the plaintiffs argue that the fact that the same attorneys continued to represent them until December 2006 extends the start of the statute of limitations under the "continuous representation rule."  *Id.*

In their reply, the defendants assert that the lulling doctrine does not affect the commencement of the running of the statute of limitations.  Westerman Defs.' Reply to Pls.' Opp'n to Westerman Def.'s Mot. at 7-8.  The defendants further argue that the continuous representation rule does not apply to the representation of a client during subsequent appeals, and thus contend that the rule does not apply here because the defendants only continued to represent Seed during the appellate review of the Board's decision.[7]  *Id.* at 9.  The defendants do not respond to the plaintiffs' request for discovery.  *See id.*

The statute of limitations for legal malpractice claims in the District of Columbia is three years "from the time [that] the right to maintain the cause of action accrues."  *Wagner v. Sellinger*, 847 A.2d 1151, 1154 (D.C. 2004); *see* D.C. CODE § 12-301 (1981).  In the conventional negligence claim, where the fact of injury is clearly evident, the statute of limitations begins to run at the time that the injury actually occurs.  *Burns v. Bell*, 409 A.2d 614, 615 (D.C. 1979).  If, however, the fact of injury is unclear, as is sometimes the case in legal malpractice claims, courts apply the "discovery rule" to determine when the statute of limitations

---

[7]       The Kratz defendants claim that because their representation ended in October 2003 (before any of the alleged lulling occurred), the plaintiffs' arguments regarding lulling and continuous representation are inapplicable to them.  Kratz Defs.' Reply to Pls.' Opp'n to Kratz Defs.' Mot. at 2-6.  Because, however, the date that the cause of action accrued is not evident at this point, the court declines to address the Kratz defendants' additional arguments at this time.  Instead, the court believes the more prudent course is to allow the parties to partake in discovery and proceed to first resolve whether the plaintiffs' failure to file an English translation claim survives the defendants' statute of limitations defense.

begins to run.  *Knight v. Furlow*, 553 A.2d 1232, 1234 (D.C. 1989).  For a cause of action to

accrue under the discovery rule, the defendant must prove the plaintiff knew, or by the exercise

of reasonable diligence should have known of (1) the existence of the injury, (2) its cause in fact

and (3) some evidence of wrongdoing.  *Id.* at 1234.  Even under this rule, the point in time at

which the plaintiff knew or reasonably should have known is normally a question of fact for a

jury, and a trial judge should only make this determination as a matter of law if no reasonable

person could disagree on this date.  *Byers v. Burleson*, 713 F.2d 856, 861 (D.C. Cir. 1983).

To succeed on their statute of limitations arguments, the defendants must show that –

more than three years prior to the date that they filed their claims – the plaintiffs knew or had

reason to know of an injury caused by the failure to file an English translation of the PCT

application.  *Knight*, 553 A.2d at 1234.  Due to the tolling agreements between the parties, the

plaintiffs' claims are deemed to be filed in May 2007.[8]  As such, the pivotal question is whether

the plaintiffs' claims accrued before May 2004 (or stated otherwise, whether the claims accrued

more than three years from when the plaintiffs "filed" their suit).  If so, then the plaintiffs' claims

would be barred by the applicable three-year statute of limitations.

According to the defendants, the plaintiffs knew or had reason to know as early as July

2002 that the defendants' failure to file the translation had caused the plaintiffs' injury.

Westerman Defs.' Mot. at 12.  The plaintiffs, however, argue that they did not have any

knowledge of any injury resulting from the failure to file until, at the earliest, June 10, 2004,

---

[8]  Although the plaintiffs did not commence suit until February 2008, the parties entered into tolling agreements that allowed the plaintiffs to bring claims against the defendants within six months of the expiration of those tolling agreements.  In other words, the parties waived for purposes of the statute of limitations the time that elapsed from the date that the parties entered into the tolling agreements until the plaintiffs filed their claims.  Therefore, the court determines that the proper date to consider as the filing of the plaintiffs' suit is the date that the respective tolling agreement was entered into: May 3, 2007 with regard to the Westerman defendants, and May 10, 2007, with regard to the Kratz defendants.

when the Federal Circuit denied their petition for a panel rehearing.  Pls.' Opp'n to Westerman Defs.' Mot. at 24.  As evidence to support their argument, the plaintiffs provide the court with several letters that the defendants sent them after the Board's initial decision, which attempted to assure the plaintiffs that the failure to file a translation should not affect their pending patent application.  *Id.* at 20-21.

"A decision by summary judgment is disfavored when additional development of facts might illuminate the issues of law requiring decision."  *Barnes v. District of Columbia*, 2007 WL 896282, at *3 (D.D.C. Mar. 26, 2007) (citing *Nixon v. Freeman*, 670 F.2d 346, 362 (D.C. Cir. 1982)).  The parties here have yet to engage in discovery, and given the factual ambiguities surrounding the commencement of the statute of limitations, the court is persuaded that a period of discovery is warranted prior to ruling on the defendants' motions.  *See Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d 1271, 1274 (D.C. Cir. 1998) (holding that neither the Circuit nor the district court was "in a position to decide as a matter of law whether there [was] a genuine dispute . . . because the district court did not permit [the plaintiff] any discovery before issuing its ruling"); *First Chi. Int'l v. United Exchange Co.,* 836 F.2d 1375, 1380 (D.C. Cir.1988) (observing that, ordinarily, "summary judgment is proper only after the plaintiff has been given adequate time for discovery").  Accordingly, the court denies without prejudice the defendants' respective motions for summary judgment and grants the plaintiffs' request for discovery with respect to the failure to file an English translation claim.

**D.  The Court Denies Without Prejudice the Defendants' Respective Motions for Summary Judgment on the Plaintiffs' Erroneous Legal Advice Claim**

**1.  Legal Standard for Legal Malpractice Claim**

To establish a prima facie case of legal malpractice in the District of Columbia, a party must prove that (1) there was an attorney-client relationship, (2) the attorney neglected a

reasonable duty and (3) the attorney's negligence resulted in and was the proximate cause of a

loss to the client. *Herbin v. Hoeffel*, 806 A.2d 186, 194-95 (D.C. 2002). The plaintiff must first

establish that an attorney-client relationship existed, which gives rise to a duty or standard of

care. *Hinton v. Rudasill*, 624 F. Supp. 2d 48, 53 (D.D.C. 2009). Although the plaintiff must

prove causation, this element is usually a question for the jury and only an issue of law if there

are no facts or circumstances from which a jury could reasonably determine that such negligence

was the proximate cause of injury. *Bragg v. Owens-Corning Fiberglas Corp.*, 734 A.2d 643,

648 (D.C. 1999). Finally, although actual, not speculative, damages are required to succeed on a

legal malpractice claim, *see, e.g.*, *Poole v. Lowe*, 615 A.2d 589, 593 (D.C. 1992), the court has

discretion to postpone a ruling on a summary judgment motion if a party requests discovery to

prove damages, *Vermont Elec. Power Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 72 F.

Supp. 2d 441, 447-48 (D. Vt. 1999) (granting the plaintiff's request for additional discovery in

order to ascertain facts regarding damages).

### 2. The Court Declines at this Juncture to Rule on the Westerman Defendants' Summary Judgment Arguments Concerning Causation

The Westerman defendants argue that they should be granted summary judgment on the

plaintiffs' erroneous legal advice claim. More specifically, the Westerman defendants contend

that the plaintiffs do not proffer any evidence from which a reasonable fact-finder could

determine that the plaintiffs forfeited the settlement offers as a result of the Westerman

defendants' erroneous legal advice. Westerman Defs.' Mot. at 14. Instead, the Westerman

defendants insist that the plaintiffs turned down the settlement offers because the offers provided

no value to

Seed.[9]  *See* Westerman Defs.' Renewed Mot.

The plaintiffs, on the other hand, insist that the defendants' erroneous legal advice led the plaintiffs to believe that they could obtain a U.S. patent regardless of the Federal Circuit's ultimate ruling, thereby prompting the plaintiffs to reject the settlement offers from Stevens. Pls.' Opp'n to Westerman Defs.' Renewed Mot. at 7-8.  The plaintiffs assert that "[a]s a direct consequence [of turning down the settlement offers], Seed has lost the revenue" that it would have received from licensing its correction tape dispenser for sale in the United States.  *Id.*  The plaintiffs further argue that the Westerman defendants' causation arguments are merely attacks on their credibility.  *Id.* at 9.

Under Rule 56(d), "the district court may defer ruling on a summary judgment motion and permit further discovery so that the nonmoving party may obtain the information necessary to show an issue of material fact in dispute."  *First Chi. Int'l*, 836 F.2d at 1380.  Typically, the nonmoving party is expected to file an affidavit to ensure that the protections of Rule 56(d) are being invoked in good faith and "to afford the trial court the showing necessary to assess the merit of a party's opposition."  *Id.*  The court may determine, however, that a filing, such as an opposition, "suffices to alert the district court of the need for further discovery and thus serve[s] as the functional equivalent of an affidavit."  *Id.*

Here, the plaintiffs assert in their opposition to the Westerman defendants' motion for summary judgment that they acted in reliance on the defendants' erroneous legal advice when they declined the settlement offers.  Pls.' Opp'n to Westerman Defs.' Renewed Mot. at 7-8.  The court is bewildered as to why the plaintiffs would not attach any declaration that would support

---

[9]     The Westerman defendants also argue that the plaintiffs have not provided the court with sufficient evidence to establish actual damages.  Westerman Defs.' Renewed Mot. at 3.  Because the court grants the Westerman defendants' motion on causation grounds, it does not address the issue of damages.

this argument.  Notably, the plaintiffs have responded to other summary judgment arguments by point to supporting evidence such as e-mail correspondence and declarations pursuant to Rule 56(d).  *See generally id.*  Yet in addressing the issue of causation, the plaintiffs neither presented affidavits that would support their arguments for causation, nor indicated why further discovery would be necessary to acquire such evidence.  *See* FED. R. CIV. P. 56(d).

Notwithstanding the lack of supporting declarations, the court believes that a ruling on the Westerman defendants' summary judgment motion would be premature at this juncture.  The plaintiffs make a general plea for further discovery pursuant to Rule 56(d) before the court considers the Westerman defendants' motion for summary judgment.  *See* Pls.' Opp'n to Westerman Defs.' Renewed Mot. at 10.  The court has no reason to believe that the existence of such evidence on causation is speculative.  Thus, the court agrees that the plaintiffs should be afforded an opportunity to present evidence raising a genuine dispute of fact regarding causation. *Stella v. Mineta*, 284 F.3d 135, 147 (D.C. Cir. 2002) (noting that the district court may in its discretion permit additional discovery before resolving a motion for summary judgment). Accordingly, the court denies without prejudice the Westerman defendants' summary judgment arguments with respect to causation, and grants the plaintiffs' request for further discovery on

this issue.[10]

### 3. The Court Declines at this Juncture to Rule on the Kratz Defendants' Summary Judgment Arguments Concerning the Duty Element

The Kratz defendants argue that the plaintiffs' erroneous legal advice claim must fail because the alleged malpractice occurred after the Kratz defendants had terminated their representation of the plaintiffs with respect to the patent at issue.  Kratz Defs.' Mot. at 4; *see also id.*, Ex. A.  The plaintiffs respond that the Kratz defendants, as well as the Westerman defendants, are liable for Seed's "loss of valuable settlement opportunities" because the Kratz defendants provided "incorrect and misleading legal advice," even before the Westerman defendants left the Kratz firm.  Pls.' Opp'n to Kratz Defs.' Mot. at 25.  Such advice, the plaintiffs contend, "naturally informed Seed's decision in rejecting Stevens' settlement offers."  *Id.*  The plaintiffs insist that the Kratz defendants are liable because the erroneous legal advice that was given by the Westerman defendants was consistent with the incorrect and misleading advice that

---

[10]     According to the Westerman defendants, the plaintiffs must demonstrate that if they had accepted the settlement offer, "they would have made more money than they lost."  Westerman Defs.' Renewed Mot. at 3.  The Westerman defendants further insist that the plaintiffs were required but failed to allege that "any new or amended claims" which could have been added at the patent examiner level would have had an "estimated economic value exceeding the value of either or both settlement offers."  *Id.*  Requiring such factual showings, however, is not appropriate at the pre-discovery stage of this litigation.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002) (noting that it is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint); *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (recognizing that a plaintiff need not "plead law or match facts to every element of a legal theory" (internal quotation marks and citation omitted)).  The plaintiffs here have sufficiently alleged that they lost money (an injury) as a result of their reliance on erroneous legal advice (causation).  *See Herbin*, 806 A.2d at 194-95 (describing the elements of a legal malpractice claim).  While the Westerman defendants' arguments may eventually prove persuasive, nothing more is required from the plaintiffs at this procedural juncture.

the Kratz defendants had previously given.[11]  *Id.*

     To eventually succeed on their legal malpractice claim against the Kratz defendants, the plaintiffs must point to an act (or omission) by the Kratz defendants that resulted in a loss to the plaintiffs.  *See Herbin*, 806 A.2d at 194-95.  The Kratz defendants, moreover, are not accountable for those actions taken by the Westerman defendants once the Westerman defendants took over the plaintiffs' representation.  *See Bloome v. Wiseman, Shaikewitz, McGivern, Wahl, Flavin & Hesi, P.C.*, 279 Ill. App. 3d 469, 477 (Ill. App. Ct. 1996) (dismissing a legal malpractice claim against one attorney for the alleged malpractice of another attorney who took over the case).

     In their complaint, the plaintiffs allege that their decision to decline the first settlement offer was made in reliance on the defendants' advice "regarding, among other things, [Seed's] ability to protect its invention in the United States despite Defendants' failure to file an English language translation of the PCT application; its chance of success in the appeal pending [at the time] before the Federal Circuit Court of Appeals; and its ability to raise new or amended claims before the patent examiner."  Am. Compl. ¶ 30.  The plaintiffs argue that they "would surely have [] pursued a settlement with Stevens if [the Kratz defendants had] given [the plaintiffs] correct advice regarding the ramifications of the Board's refusal to consider its PCT application in awarding it priority."  Pls.' Opp'n to Kratz Defs.' Mot. at 26.  Thus, the plaintiffs point to

---

[11]    The plaintiffs further argue that the Kratz defendants breached their fiduciary duties by encouraging Seed to allow the Westerman defendants to handle their patent.  *Id.* at 26.  The plaintiffs, however, have not alleged a breach of fiduciary duty claim against the Kratz defendants in their complaint.  A plaintiff cannot amend its complaint by asserting new claims in a responsive pleading to survive a motion for summary judgment.  *See, e.g., Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 91 n.16 (D.D.C. 2006).  As the plaintiffs raise these claims for the first time in their opposition, the court declines to entertain their breach of fiduciary duty claim.

advice (or lack thereof) given by the Kratz defendants to the plaintiffs during the time that Kratz

was representing them.

Although the Kratz defendants cannot be held accountable for the advice that was offered

by the Westerman defendants, the plaintiffs point to specific advice allegedly offered by the

Kratz defendants that contributed to the plaintiffs' decision not to settle and their subsequent

loss.  Accordingly, the court deems that it would not be appropriate at this stage to grant

summary judgment to the Kratz defendants with respect to the plaintiffs' erroneous legal advice

claim, and denies their motion without prejudice in order to allow the parties to develop a factual

record regarding this claim.  *See Stella*, 284 F.3d at 147.


## IV. CONCLUSION

For the foregoing reasons, the court denies the defendants' respective motions for

summary judgment.  An Order consistent with this Memorandum Opinion is separately and

contemporaneously issued this 5th day of January, 2011.


RICARDO M. URBINA
United States District Judge