UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SEED COMPANY LIMITED, *et al.*,  )
)
Plaintiffs,  )
)
v.  ) Civil Case No. 8-00355 (RJL)
)
WESTERMAN, *et al.*,  )
)
Defendants.  )

**MEMORANDUM OPINION**

(July 30, 2014) [Dkt. ##127, 128, 129]

**FILED**

**JUL 3 0 2014**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Plaintiffs Seed Company Limited ("Seed") and Shigeru Tamai ("Tamai") (together "plaintiffs")[1] brought this action on February 28, 2008 against the Westerman defendants[2] and the Kratz defendants[3] (together "defendants"), seeking damages for alleged legal malpractice. *See* Complaint ("Compl.") [Dkt. #1].[4] Now before the Court are defendants' Motions for Summary Judgment and plaintiffs' Motion for Partial

---

[1] Seed is a Japanese limited liability company—with offices in Osaka, Japan—that is in the business of designing, manufacturing, and distributing stationary and office supplies. *See* Plaintiffs' Statement of Undisputed Material Facts ("Pls.' Facts") at ¶ 1 [Dkt. #130]; Kratz Defendants' Statement of Material Facts Not in Dispute ("Kratz Facts") at ¶ 1 [Dkt. #128-2]. Tamai is the President of Seed and the sole inventor of all subject matter claimed in the Seed patents and patent applications discussed herein. *See* Pls.' Facts at ¶¶ 2-3.
[2] The Westerman defendants are comprised of Ed Kenehan, John Kong, William Westerman, and the law firm of Westerman, Hattori, Daniels & Adrian, LLP.
[3] The Kratz defendants are comprised of the law firms of Armstrong, Kratz, Quintos, Hanson & Brooks, LLP, Armstrong, Westerman & Hattori, LLP, Armstrong, Westerman, Hattori, McLeland & Naughton, LLP, Kratz, Quintos & Hanson, LLP, and the Estate of James Armstrong, III.
[4] Plaintiffs filed an Amended Complaint on May 21, 2008. See Amended Complaint ("Am.

1

Summary Judgment. *See* Westerman Defendants' Motion for Summary Judgment ("Westerman MSJ") [Dkt. #127]; Kratz Defendants' Motion for Summary Judgment ("Kratz MSJ") [Dkt. #128]; Plaintiffs' Motion for Partial Summary Judgment ("Pls.' MSJ") [Dkt. #129]. Upon consideration of the parties' pleadings, relevant law, and the entire record in this case, the Westerman defendants' Motion for Summary Judgment is GRANTED, the Kratz defendants' Motion for Summary Judgment is GRANTED, and the plaintiffs' Motion for Partial Summary Judgment is DENIED.

## BACKGROUND

This legal malpractice case is based on the defendants' alleged negligence in failing to attach an English-language translation of plaintiffs' international stage patent application to a motion filed in an interference action before the United States Patent and Trademark Office ("USPTO"), and for providing erroneous legal advice that resulted in plaintiffs rejecting two settlement offers related to the interference action. *See* Am. Compl. at ¶ 1.

On July 31, 1991, Seed filed Japanese Patent Application No. 3-68371 ("JP '371 application") for a corrective tape dispenser, listing Tamai as the inventor. *See* Pls.' Facts at ¶ 12; Westerman Defendants' Statement of Undisputed Material Facts ("Westerman Facts") at ¶ 1 [Dkt. #127-2]; Kratz Facts at ¶ 2. Seed filed the JP '371 application in the Japanese language only. *See* Pls.' Facts at ¶ 12. On July 24, 1992,

Compl.") [Dkt. #29].

Seed filed Patent Cooperation Treaty Application No. PCT/JP92/100947 ("PCT '947 application")—in Japanese—containing claims virtually identical to those in the JP '371 application. *See* Pls.' Facts at ¶ 13; Westerman Facts at ¶ 2; Kratz Facts at ¶ 3. On March 13, 1993 Seed—acting through Mr. Kenji Itami and the Itami Patent Office ("Itami")—engaged the Kratz defendants[5] to act as legal counsel in prosecuting the national stage of the PCT '947 application before the USPTO. *See* Pls.' Facts at ¶ 14; Westerman Facts at ¶ 3; Kratz Facts at ¶ 4. The Kratz defendants filed United States Patent Application No. 08/030,183 ("'183 application")—the national stage of the PCT '947 application—with the USPTO on March 29, 1993. *See* Pls.' Facts at ¶ 16; Westerman Facts at ¶ 4; Kratz Facts at ¶ 5. The '183 application is—for all intents and purposes—an English translation of the PCT '947 application. *See* Pls.' Facts at ¶ 16; Westerman Facts at ¶ 4.

On February 7, 1994, Christopher Stevens ("Stevens")—another inventor—filed United States Patent Application No. 08/192,471 with the USPTO for a corrective tape dispenser similar to the one described in Seed's '183 application. *See* Pls.' Facts at ¶ 18; Westerman Facts at ¶ 7; Kratz Facts at ¶ 6. On February 15, 1994, the Kratz defendants filed United States Patent Application No. 08/196,839 ("'839 application")—as a continuation-in-part of the '183 application—with the USPTO. *See* Pls.' Facts at ¶ 17; Westerman Facts at ¶ 6; Kratz Facts at ¶ 7. On February 28, 1995, the USPTO issued

---

[5] Specifically, Seed and Itami engaged the law firm of Armstrong, Westerman, Hattori,

Stevens U.S. Patent No. 5,393,368 ("Stevens patent") for his design.[6] *See* Pls.' Facts at ¶ 18; Westerman Facts at ¶ 7; Kratz Facts at ¶ 8.

On May 9, 1997, the USPTO declared Patent Interference No. 103,662 ("Interference") between the plaintiffs' '839 application and the Stevens patent, seeking to determine which of the two had priority, as both sought protection for inventions that were not patentably distinct. *See* Pls.' Facts at ¶ 21; Westerman Facts at ¶ 8; Kratz Facts at ¶ 8. Plaintiffs and Stevens—through their attorneys—both filed motions with the USPTO under 37 C.F.R. § 1.633(f), seeking to have their applications back-dated to the respective overseas filing dates, in order to be accorded the benefit of the earliest possible priority date. *See* Pls.' Facts at ¶¶ 25-26; Westerman Facts at ¶ 9; Kratz Facts at ¶ 9. In its motion ("Priority Motion"), Seed sought to be accorded the benefit of the filing dates of the JP '371 application and the PCT '947 application—July 31, 1991 and July 24, 1992, respectively. *See* Pls.' Facts at ¶ 26; Westerman Facts at ¶ 9; Kratz Facts at ¶ 9. The Kratz defendants attached an English-language translation of the JP '371 application to the Priority Motion, however, they did not attach an English translation of the PCT '947 application. *See* Pls.' Facts at ¶¶ 27-28; Westerman Facts at ¶ 10; Kratz Facts at ¶ 10. On June 25, 2002, the USPTO ruled in Seed's favor, awarding the priority filing date of the JP '371 application—July 31, 1991, but denied Seed the benefit of the PCT

---

McLeland & Naughton LLP.

[6] Stevens had earlier applied—on February 10, 1993—for a patent covering his corrective tape dispenser in the United Kingdom. *See* Ex. 4 to Declaration of Todd S. Fairchild ("Fairchild

'947 filing date—July 24, 1992.[7]  *See* Pls.' Facts at ¶ 29; Westerman Facts at ¶ 11; Kratz Facts at ¶ 10.  The USPTO based its decision—denying Seed the benefit of the PCT '947 application filing date—on the fact that the Priority Motion did not attach an English language translation of the PCT '947 application.[8]  *See* Pls.' Facts at ¶ 29; Westerman Facts at ¶ 11; Kratz Facts at ¶ 10.

On May 12, 2003, Stevens' attorneys filed a Notice of Appeal of the USPTO's decision with the United States Court of Appeals for the Federal Circuit.  *See* Pls.' Facts at ¶ 33; Westerman Facts at ¶ 19; Kratz Facts at ¶ 19.  On October 1, 2003—while Stevens' appeal was pending before the Federal Circuit—defendants Westerman, Kong, and Kenehan left the Kratz defendants' law firm[9] and—along with several other

---

Decl.") at 1 [Dkt. #129-4]; Westerman Facts at ¶ 9.

[7] On July 25, 2002, the Kratz defendants filed a request for reconsideration of the USPTO's decision pursuant to 37 C.F.R. § 1.658(b).  *See* Ex. 20 to Westerman MSJ at 1 [Dkt. #127-23].  Plaintiffs viewed the failure to attach an English translation of the PCT '947 application as a "procedural error," and paid the Kratz defendants over $11,000 in legal fees to draft the request for reconsideration.  *See* Westerman Facts at ¶ 18; Kratz Facts at ¶ 18.  The USPTO denied the request for reconsideration on March 13, 2003, stating that Seed "has not met the requirements of 37 C.F.R. § 1.637(f)."  Ex. 23 to Westerman MSJ at 4 [Dkt. #127-26].

[8] Specifically, the USPTO held that:
> Tamai did not supply a translation of the PCT application, nor does it appear that Stevens was in possession of the application or the translation.  Although Tamai alleges that the PCT application has the same disclosure as the JP '371 and submitted a declaration executed by Sadao Kinashi attesting to the fact that the disclosures of the PCT application and JP '371 are the same, Stevens was not given the opportunity to examine the disclosures and translations for themselves.  Therefore, we will not grant the motion as it is directed to the PCT application.

Ex. 15 to Westerman MSJ at 22 [Dkt. #127-18].

[9] By October 2003 the firm was called Armstrong, Westerman & Hattori, LLP.  *See* Pls.' Facts at ¶ 34; Westerman Facts at ¶ 28; Kratz Facts at ¶ 20.  Following the breakup, the firm became known as Armstrong, Kratz, Quintos, Hanson & Brooks, LLP.  *See* Kratz Facts at ¶ 20.

attorneys—founded the law firm of Westerman, Hattori, Daniels & Adrian, LLP ("Westerman firm"). *See* Pls.' Facts at ¶ 34; Westerman Facts at ¶ 28; Kratz Facts at ¶ 20. Following the formation of the Westerman firm in October 2003, the Kratz defendants were discharged as counsel, and the Westerman defendants continued to represent plaintiffs with regards to the '839 application, including the Interference proceedings and Stevens' appeal of the USPTO decision to the Federal Circuit. *See* Pls.' Facts at ¶ 35; Kratz Facts at ¶ 21.

On January 14, 2004, Sanford—owner of the Stevens' patent—offered to settle the Interference with plaintiffs. *See* Am. Compl. at ¶ 28; Westerman Facts at ¶ 23; Kratz Facts at ¶ 22. Specifically, the settlement offer proposed that

> Sanford will grant to Seed a royalty-free, perpetual, non-exclusive license under Sanford's U.S. patent relating to the transverse action tape-dispenser[.]
>
> Seed will grant to Sanford a royalty-free, perpetual, non-exclusive license under Seed's patents outside the U.S. relating to the transverse action tape dispenser.
>
> Pursuant to such licenses, each party will permit the other two [sic] sublicense the manufacture, sale, and distribution of products made pursuant to the licensed patents.

Ex. 29 to Westerman MSJ at 1-2 [Dkt. #127-32]. Plaintiffs—allegedly relying on the Westerman defendants' legal advice—declined to accept the settlement offer. *See* Am. Compl. at ¶ 30.

On May 4, 2004, the Federal Circuit affirmed in part and reversed in part the

USPTO's decision below. *See Stevens v. Tamai*, 366 F.3d 1325 (Fed. Cir. 2004). The Federal Circuit held that plaintiffs were not entitled to the benefit of the PCT '947 application's filing date—because the Priority Motion did not include an English language translation—or the JP '371 application—because JP '371's filing was more than one year before the '183 application was filed, in violation of 35 U.S.C. § 119—and consequently awarded priority to Stevens.[10] *See id.* at 1331, 1334-35. On September 14, 2004, the USPTO entered a final judgment in favor of Stevens—and against plaintiffs—pursuant to the Federal Circuit's decision in *Stevens v. Tamai*. *See* Pls.' Facts at ¶ 37. Following the Federal Circuit's denial of plaintiffs' petition for rehearing *en banc*, the Westerman defendants filed a *writ of certiorari* to the United States Supreme Court, which was denied on October 18, 2004. *See* Kratz Facts at ¶¶ 26-27.

In December 2006, plaintiffs contacted Paul Meiklejohn and his law firm, Dorsey & Whitney, LLP, about pursuing potential legal malpractice claims against the defendants. *See* Kratz Facts at ¶ 36. On May 3, 2007, defendants William Westerman and Westerman, Hattori, Daniels & Adrian, LLP entered into an agreement with plaintiffs, tolling the statute of limitations for any legal malpractice claims in connection with the Interference. *See* Ex. 29 to Kratz MSJ at 1 [Dkt. #128-30]. On May 10, 2007, plaintiffs entered into two additional tolling agreements: one with the Kratz defendants,

---

[10] Following the Federal Circuit's ruling in its favor, Sanford renewed its original settlement offer to plaintiffs. *See* Am. Compl. at ¶ 32. Allegedly relying again on the Westerman defendants' advice, plaintiffs rejected the offer for a second time. *See id.*

*see* Ex. 30 to Kratz MSJ at 1 [Dkt. #128-31], and the second with defendants Edward Kenehan and John Kong, *see* Ex. 31 to Kratz MSJ at 1 [Dkt. #128-32].[11]

On February 28, 2008, plaintiffs filed the instant action seeking damages for the defendants' alleged legal malpractice in connection with the Interference before the USPTO. Plaintiffs then filed their Amended Complaint on May 21, 2008, adding two additional "contingent claims." *See* Am. Compl. at ¶¶ 53-66.[12] Plaintiffs allege—in Count I—that the defendants committed legal malpractice by failing to attach a certified English-language translation of the PCT '947 application to their motion seeking the benefit of earlier filing dates and—in Count II—further committed malpractice by providing erroneous legal advice that allegedly caused plaintiffs to reject Sanford's two settlement offers. *See* Am. Compl. at ¶¶ 44, 49-50.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the evidence in the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When evaluating cross motions for summary judgment, "the court shall grant summary judgment only if

---

[11] All three tolling agreements automatically terminated on December 31, 2007, and any claims preserved by the tolling agreements would be considered timely if filed within sixty days of the termination of the agreement—by February 29, 2008. *See* Exs. 29-31 to Kratz MSJ.
[12] Plaintiffs concede that the contingent claims—Counts III and IV—are only relevant if the Court dismisses Count I of the Amended Complaint on statute of limitations grounds. *See* Pls.' Opp'n to Kratz MSJ at 41 [Dkt. #137].

one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." *Select Specialty Hosp.-Bloomington, Inc. v. Sebelius*, 774 F. Supp. 2d 332, 338 (D.D.C. 2011) (citation omitted). The court must accept as true the evidence of, and draw "all justifiable inferences" in favor of, the party opposing summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). A genuine issue exists only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The nonmoving party may not rely solely on unsubstantiated allegations or conclusory statements. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

## ANALYSIS

As a preliminary matter, plaintiffs concede that they cannot identify any damages associated with Count II of the Amended Complaint that are distinct from damages associated with Count I. Therefore, plaintiffs have withdrawn the claim for damages contained in Count II of the Amended Complaint, but maintain that the factual allegations are still relevant to rebutting defendants' statute of limitations defense. *See* Pls.' Opp'n to Kratz MSJ at 41; Pls.' Opp'n to Westerman MSJ at 9 [Dkt. #138]; *see also* Am. Compl. at ¶¶ 47-52.

### I.  Statute of Limitations

Defendants argue that the statute of limitations for legal malpractice in the District of Columbia bars all of the plaintiffs' claims in this matter. *See* Westerman MSJ at

20-25; Kratz MSJ at 8-17. In the District of Columbia, legal malpractice claims must be brought within three years of the claimed injury. *See Hillbroom v. PricewaterhouseCoopers LLP*, 17 A.3d 566, 572 (D.C. 2011) (citing D.C. Code § 12-301(8) (2001)). In normal negligence actions—where the harm is often apparent—an injury occurs when the harm is suffered. *See Ft. Myers Seafood Packers, Inc. v. Steptoe and Johnson*, 381 F.2d 261, 262 (D.C. Cir. 1967) (citing *Hanna v. Fletcher*, 231 F.2d 469, 472 (D.C. Cir. 1956)). In legal malpractice actions, however—when the harm is often not immediately identifiable—courts apply the "discovery rule" to determine when the statute of limitations begins to run. *See Byers v. Burleson*, 713 F.2d 856, 860 (D.C. Cir. 1983). The discovery rule states that a claim accrues when the plaintiff becomes aware—or by the exercise of reasonable diligence should have become aware—of (1) the harm, (2) its cause in fact, and (3) some evidence of wrongdoing.[13] *See id.*; *Bleck v. Power*, 955 A.2d 712, 715 (D.C. 2008); *Wagner v. Sellinger*, 847 A.2d 1151, 1154 (D.C. 2004). Moreover, "attorney's fees and costs expended as a result of an attorney's alleged malpractice constitute legally cognizable damages for purposes of stating a claim for such malpractice." *Knight v. Furlow*, 553 A.2d 1232, 1235 (D.C. 1989).

Here—applying the discovery rule—plaintiffs were aware of their potential legal malpractice claim no later than March 13, 2003, when the USPTO denied the request for

---

[13] A plaintiff is on "inquiry notice" of a wrongdoing under the discovery rule when it "has reason to suspect that the defendant did some wrong, even if the full extent of the wrongdoing is not yet known." *Bradley v. Nat'l Ass'n of Securities Dealers Dispute Resolution, Inc.*, 433 F.3d 846,

reconsideration. At that point, plaintiffs knew that (1) they spent over $11,000 on a motion for reconsideration, (2) because no English-language translation was attached to the PCT '947 application, and (3) it was due to defendants' "procedural mistake." *See* Westerman Facts at ¶ 18; Kratz Facts at ¶ 18. The discovery rule, however, does not end the inquiry into when the statute of limitations began to run on plaintiffs' malpractice claims. How so?

D.C. law also recognizes the continuous representation rule, which tolls the statute of limitations on legal malpractice claims until the "the attorney's representation concerning the particular matter in issue is terminated." *R.D.H. Commc'ns, Ltd. v. Winston*, 700 A.2d 766, 768 (D.C. 1997) (*"Winston"*) (quoting *Weisberg v. Williams, Connolly & Califano*, 390 A.2d 992, 995 (D.C. 1978)). Some courts have held that the continuous representation rule requires exhaustion of all possible appeals before a malpractice claim can accrue. *See, e.g., Woodruff v. Tomlin*, 511 F.2d 1019 (6th Cir. 1975) (applying Tennessee law); *Bowman v. Abramson*, 545 F. Supp. 227 (E.D. Pa. 1982) (applying Pennsylvania law); *Haghayegh v. Clark*, 520 So. 2d 58 (Fla. Dist. Ct. App. 1988) (applying Florida law). However, the D.C. Court of Appeals has held—and our Circuit Court has adopted the position—that the resolution of an appeal is not the sole determinative factor of whether the particular matter at issue has been resolved. *See Bradley v. Nat'l Ass'n of Securities Dealers Dispute Resolution, Inc.*, 433 F.3d 846, 852 (D.C.

---

849 (D.C. Cir. 2005) (internal quotation marks and citation omitted).

11

Cir. 2005) (stating District of Columbia does not recognize the exhaustion of appeals rule); *Knight*, 553 A.2d at 1234-36; *Winston*, 700 A.2d at 771 ("[T]his court has rejected an exhaustion of appeals rule.").

As it is largely a fact-based determination, there is little guidance on what constitutes a "particular matter at issue" in the context of the continuous representation rule. *See Winston*, 700 A.2d at 768. Several courts have stated that "subsequent *general* representation of the plaintiffs regarding matters unrelated to [the initial transaction] does not warrant the application of the [continuous representation] doctrine." *De May v. Moore & Bruce, LLP*, 584 F. Supp. 2d 170, 181 (D.D.C. 2008) (ESH) (quoting *Dignelli v. Berman*, 293 A.D.2d 565, 566 (N.Y. App. Div. 2002)) (emphasis added) (internal quotation marks omitted); *see also Bastys v. Rothschild*, 154 Fed. Appx. 260, 261-62 (2d Cir. 2005); *Greene v. Morgan, Theeler, Cogley & Petersen*, 575 N.W.2d 457, 460 (S.D. 1998). In *De May*, Judge Huvelle decided that—while D.C. law does not recognize the exhaustion of appeals rule—an appeal does not *necessarily* sever the period of continuous representation.[14] *See De May*, 584 F. Supp. 2d at 183.

Judge Huvelle distinguished *De May* from *Bradley*—which stated that requiring exhaustion of appeals as a condition precedent to the accrual of a legal malpractice claim "stretch[es] the continuous representation exception beyond its limits," *Bradley*, 433 F.3d

---

[14] The court in *De May* simply reaffirmed that D.C. law does not *require* exhaustion of appeals as a condition precedent to bringing a claim for legal malpractice. *See De May*, 584 F. Supp. 2d at 183.

at 852—based on the fact that the attorneys who allegedly caused the harm in *De May* continued to represent their clients during the appeal of the same matter, whereas the attorneys in *Bradley* changed at the time of appeal. *See De May*, 584 F. Supp. 2d at 183.

Moreover, *Bradley* did not "decide whether the continuous representation rule extends to appeals; rather, the issue [was *only*] whether a cause of action for malpractice accrues only after an appeal is exhausted." *Id.*

Because the purpose of the continuous representation rule is to respect the attorney-client privilege and to avoid placing the client in "the untenable position of suing his attorney while the latter continues to represent him," *Winston*, 700 A.2d at 768 (internal quotation marks and citation omitted), an approach that *allows* for the application of the rule throughout an appeal—if the factual situation so warrants—makes perfect sense. Because the attorneys who allegedly caused the harm in *De May* continued to represent the plaintiff throughout the appeal of the very subject matter that served as the basis for the malpractice claim, the court appropriately applied the continuous representation rule and tolled the statute of limitations throughout the appeal. *See De May*, 584 F. Supp. 2d at 183.

Applying the same reasoning used by my colleague in *De May*, I find that the continuous representation rule extends through the appeals process in this case. Here, like in *De May*, the attorneys remained the same throughout the appeals process, and the subject matter on appeal was the very basis for the potential legal malpractice claim.

13

Any other ruling would run afoul of the continuous representation rule's purpose: to avoid placing the client in "the untenable position of suing his attorney while the latter continues to represent him," *Winston*, 700 A.2d at 768 (internal quotation marks and citation omitted).

Accordingly, the statute of limitations for plaintiffs' legal malpractice claims was tolled until "the attorney's representation concerning the particular matter in issue [was] terminated." *Id.* Here, that date is—at the earliest—September 14, 2004, when the USPTO entered its final judgment in accordance with the Federal Circuit's decision in *Stevens*—and, at the latest—October 18, 2004, when the Supreme Court denied to grant plaintiffs' petition for a *writ of certiorari*. Because the parties entered into tolling agreements within three years of the date on which plaintiffs' claims accrued, and because plaintiffs' filed their Complaint within sixty days of the expiration of those tolling agreements, their claims were timely filed.[15]

---

[15] Plaintiffs filed their Amended Complaint on May 21, 2008—well after the expiration of the statute of limitations. *See* Am. Compl. Nevertheless, because the claims contained in Count I of the Amended Complaint "assert[] a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," they satisfy the requirements for relating back to the filing date of the original complaint, and are thus timely filed. *See* Fed. R. Civ. P. 15(c)(1)(B). There is, however, a significant question as to whether the conduct that serves as the basis for Counts III and IV of the Amended Complaint arises out of the same conduct set forth in the original pleading. However, as plaintiffs have already conceded that Counts III and IV are only relevant if this Court dismisses Count I on statute of limitations grounds, this is a question that the Court need not address. *See* Pls.' Opp'n to Kratz MSJ at 41. Because I find that the claims contained in Count I of the Amended Complaint were timely filed, and thus decline to dismiss them based on statute of limitations grounds, Counts III and IV of the Amended Complaint are rendered moot.

14

## II. Duty of Care

The Westerman defendants argue that, even if the plaintiffs' claims were timely filed, Seed cannot establish that defendants breached their duty of care by not attaching an English-language translation of the PCT '947 application to the Priority Motion. *See* Westerman MSJ at 28. I agree.

In order to avoid malpractice liability, a lawyer must "exercise that degree of reasonable care and skill expected of lawyers acting under similar circumstances." *Biomet Inc. v. Finnegan Henderson LLP*, 967 A.2d 662, 665 (D.C. 2009) (quoting *Morrison v. MacNamara*, 407 A.2d 555, 561 (D.C. 1979)). The D.C. Court of Appeals also requires that "those with special training and experience adhere to a standard of conduct commensurate with such attributes." *O'Neil v. Bergan*, 452 A.2d 337, 341 (D.C. 1982) (citation omitted). In *Biomet*, the D.C. Court of Appeals formally recognized the judgmental immunity doctrine, which provides that an "informed professional judgment made with reasonable care and skill cannot be the basis of a legal malpractice claim." *Biomet*, 967 A.2d at 666. *Biomet* also makes clear that "no claim of legal malpractice will be actionable for an attorney's reasoned exercise of informed judgment on an unsettled proposition of law."[16] *Id.* at 668; *see also Encyclopedia Britannica, Inc. v.*

---

[16] Specifically, the court in *Biomet* said:
> In *Mills*, we recognized that "[a]n attorney is not liable for an error of judgment regarding an unsettled proposition of law" and that if "reasonable attorneys could differ with respect to the legal issues presented, the second-guessing after the fact of . . . professional judgment [i]s not a sufficient foundation for a legal malpractice claim." 647 A.2d at 1122. This unsettled law exception to

*Dickstein Shapiro, LLP*, No. 10-0454, 2012 WL 8466139, at *17 (D.D.C. Feb. 2, 2012) (recognizing "unsettled law exception to malpractice liability" relied on in *Biomet*) (citation omitted).

In this case, the Priority Motion filed with the USPTO—seeking the benefit of the JP '371 application and the PCT '947 application priority dates—specifically references 37 C.F.R. § 1.633, which provides a list of motions that may be filed in an interference action before the USPTO. *See* Ex. 13 to Westerman MSJ at 1 [Dkt. #127-16]. 37 C.F.R. § 1.637(f)—which lists the requirements for motions seeking the benefit of an earlier priority date—requires that, "[w]hen the earlier application is an application filed in a foreign country, [the applicant must] certify that a copy of the application has been served on all opponents. If the earlier filed application is not in English, the requirements of § 1.647 must also be met." 37 C.F.R. § 1.637(f)(2). 37 C.F.R. § 1.647

---

malpractice liability is a specific application of the judgmental immunity doctrine. *See* 7 AM. JUR. 2d *Attorneys at Law* § 208 ("[A]n informed judgment on the part of counsel, even if subsequently proved erroneous, is not negligence. *A fortiori*, an attorney is not liable for a mistaken opinion on a point of law that has not been settled by a court of last resort and on which reasonable doubt may well be entertained by informed lawyers."). That the existence of unsettled law relieves an attorney of malpractice liability is based on the understanding that an attorney is not expected, much less required, to accurately predict developments in the law. The law is not static, it ever-evolves and changes, and so "[b]ecause of those concerns, the rule that an attorney is not liable for an error of judgment on an unsettled proposition of law is universally recognized." MALLEN & SMITH, *Legal Malpractice* § 17.1, at 497 (4th ed. 1996) ("[T]he law is not an exact science. What an attorney thinks the law is today may not be what a court decides tomorrow[.]"); *see also Davis v. Damrell*, 119 Cal. App. 3d 883, 174 Cal. Rptr. 257, 261 (Cal. App. 1st Dist. 1981) ("[T]he exercise of sound professional judgment rests upon considerations of legal perception and not prescience.").

states that "[w]hen a party relies on a document or is required to produce a document in a language other than English, a translation of the document into English and an affidavit attesting to the accuracy of the translation shall be filed with the document." 37 C.F.R. § 1.647.

The Priority Motion included a certified English-language translation of the JP '371 application, but no translation of the PCT '947 application. *See* Ex. 13 to Westerman MSJ at 1-2. In fact, the Priority Motion specifically states that it includes a translation of the JP '371 application, but says nothing—in the very next line of text—about a PCT '947 application translation.[17] It is clear that defendants were aware of the requirements and, in the exercise of their professional judgment, believed that the rules required an English language translation of the JP '371 application, but not the PCT '947 application. Moreover, Stevens and the USPTO *already had* an English translation of the PCT '947 application: the '183 application filed—in English—on March 29, 1993. *See* Pls.' Facts at ¶ 16; Westerman Facts at ¶¶ 4, 9; Kratz Facts at ¶ 5; *see also* Exs. 12-13 to Westerman MSJ.

Defendants argue that the legal authorities available in 1997—the year in which

---

967 A.2d at 667-68.

[17] The Priority Motion requesting the benefit of the earlier filing dates states:
> The party TAMAI hereby moves to be accorded the benefit of the July 31, 1991 filing date of the earlier filed Japanese Patent Application No. 3-68371 . . . of record. A copy of the certified English language translation of JP '371 is attached hereto. The party TAMAI also moves to be accorded the benefit of the July 24, 1992 filing date of the earlier filed PCT Application No. PCT/JP92/00947 . . . of record.

defendants filed the motion—support their interpretation of the rules as not requiring a certified English language translation of PCT applications. *See* Westerman MSJ at 30-34. 35 U.S.C. § 363—the U.S. codification of PCT Article 11(3)—states that "[a]n international application designating the United States shall have the effect, from its international filing date under article 11 of the treaty, of a national application for patent regularly filed in the Patent and Trademark Office." 35 U.S.C. § 363. Moreover, in 1997 the Manual of Patent Examining Procedure ("MPEP") clarified this statute, stating that "[a]n international application designating the U.S. has two stages (international and national) with the filing date being the same in both stages," and "[f]or all legal purposes, the filing date [of a national stage application] is the PCT international filing date." MPEP § 1893.03(b) (6th Ed., Rev. 2, July 1996). Defendants' informed professional judgment was that the filing of a PCT '947 application established the legal filing date for the national stage application—the '183 application—*for all legal purposes*, and thus they were not required to file an English translation with the Priority Motion in the Interference proceedings.

Plaintiffs' only counter to this argument is to continually cite the opinion of the Federal Circuit in *this case*. In *Stevens v. Tamai*, the Federal Circuit interpreted *for the first time* whether a party to an interference action must file a certified English translation of a PCT application in order to be accorded the benefit of its filing date. *See Stevens v.*

---

Ex. 13 to Westerman MSJ at 1.

*Tamai*, 366 F.3d 1325 (Fed. Cir. 2004). *Biomet* requires that lawyers must exercise reasonable care, but does not require them to foretell the future. *See Biomet*, 967 A.2d at 667-68. As plaintiffs do not cite any other cases—prior to *Stevens v. Tamai*—that require an English-language translation of a PCT application, it does not appear as though they dispute that *Stevens* is a novel decision. As *Stevens* was the first time the Federal Circuit stated that an English translation of a PCT application is required in order to be accorded the benefit of the earlier filing date, any decision by this Court finding that defendants' breached their duty of care by not filing such a translation would assign liability based on hindsight, and would fly in the face of *Biomet*. Because an "informed professional judgment made with reasonable care and skill cannot be the basis of a legal malpractice claim," *Biomet*, 967 A.2d at 666, I find that the judgmental immunity doctrine applies here, and defendants have beached no duty of care owed to plaintiffs.

## CONCLUSION

Accordingly, for all the foregoing reasons, the Court GRANTS the Westerman defendants' Motion for Summary Judgment, GRANTS the Kratz defendants' Motion for Summary Judgment, and DENIES plaintiffs' Motion for Partial Summary Judgment. An Order consistent with this decision accompanies this Memorandum Opinion.

*[signature]*
RICHARD J. LEON
United States District Judge