# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **SEED COMPANY LTD.**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs**, | ) | |
| | ) | |
| **v.** | ) | **Civil Case No. 08-0355 (RJL)** |
| | ) | |
| **WESTERMAN**, *et al.*, | ) | |
| | ) | **FILED** |
| **Defendants.** | ) | |
| | | **JUL 1 8 2017** |

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION
(July 18, 2017) [Dkts. ##161, 162]

Seed Company Limited and its leader, Shigeru Tamai (collectively "Seed" or "plaintiffs"), brought this suit against their former attorneys, Westerman, Hattori, Daniels, and Adrian, LLP (the "Westerman defendants") and Kratz, Quintos, and Hanson, LLP (the "Kratz defendants"), alleging legal malpractice arising out of an unsuccessful patent application. Before the Court is the Westerman defendants' Motion for Judgment on the Pleadings as to Count II [Dkt. #161], and the Kratz defendants' Motion for Summary Judgment on Counts III and IV of the Amended Complaint [Dkt. #162]. Upon consideration of the pleadings, relevant law, and the entire record herein, the Court will GRANT the motions.

## BACKGROUND

The issue in this case is whether Tamai, an inventor of a dispenser of white correctional tape, can recover for malpractice against his company's former attorneys following the mishandling of a U.S. patent application and the award of the patent to

another inventor, Christopher J. Stevens.  The background has been set forth in detail by our Court of Appeals and by this Court.  *See Seed Co. Ltd. v. Westerman*, 832 F.3d 325, 329–31 (D.C. Cir. 2016) ("*Seed II*"); *Seed Co. Ltd. v. Westerman*, 62 F. Supp. 3d 56, 59–62 (D.D.C. 2014) ("*Seed I*").  The Court will thus limit its present statement of the facts to that necessary for the present disposition.

Plaintiffs allege that defendants committed legal malpractice by failing to file an English-language translation of their international Patent Cooperation Treaty ("PCT") application and by giving erroneous advice about the implications of a patent suit in the Federal Circuit.  The first and second counts of the amended complaint assert that both the Westerman and Kratz defendants are responsible for these errors.  Am. Compl. ¶¶ 42–52 (May 29, 2008) [Dkt. #29].[1]  The third and fourth counts, which are contingent on the dismissal of the first two counts on statute-of-limitations grounds, name only the Kratz defendants and allege that these defendants committed malpractice by giving erroneous advice concerning the statute of limitations for plaintiffs' primary claims.  Am. Compl. ¶¶ 53–66.  Following the close of discovery, defendants moved for summary judgment.  I found that plaintiffs' claims were not barred by the statute of limitations, granted judgment for defendants on count one and two, and dismissed counts three and four as moot.  *Seed I*, 62 F. Supp. 3d at 67.

---

[1]    As has previously been explained, *see Seed II*, 832 F.3d at 330–32, the law firm representing plaintiffs in filing their patent application split in October 2003.  The lawyers who left formed the Westerman firm and took the patent matter with them.  The lawyers who remained founded the Kratz firm.

The Court of Appeals reversed.  Although the court agreed that the first and second counts were timely as to the Westerman defendants, it held that they were untimely as to the Kratz defendants.  *Seed II*, 832 F.3d at 335.  On the merits, the court held that the Westerman defendants were not entitled to summary judgment on count one because plaintiffs had raised "a genuine dispute of material fact about whether the defendants' decision [not to file a translation of the PCT application] could have been characterized as an exercise of professional judgment in 1997," *id.* at 336–37, and because the Westerman defendants had "introduced no evidence of their deliberative process in reaching the decision not to file the translation," *id.* at 338.  The court remanded count one for trial.  As to count two, the court declined to review my determination that plaintiffs had withdrawn this count.  Instead, responding to arguments plaintiffs raised for the first time on appeal, the court reasoned that "[b]ecause the district court found that the claims were brought within the statute of limitations, it had no occasion to consider whether the second count alleges damages stemming from appellants' failure to pursue their malpractice claims sooner due to the defendants' erroneous advice about the significance of the Federal Circuit appeal (and, if it does, whether Seed waived those damages as well)" and "remand[ed] to the district court to interpret the complaint in the first instance." *Id.* at 339.  Finally, consistent with its determination that counts one and two were untimely as to the Kratz defendants, the Court of Appeals reinstated contingent counts three and four against the Kratz defendants and remanded them "for the district court to adjudicate . . . in the first instance." *Id.* at 335.

3

On remand, the Westerman defendants moved for judgment on the pleadings as to count two.  The Kratz defendants moved for summary judgment on counts three and four. Plaintiffs opposed both motions, Pls.' Mem. in Opp'n to Westerman Defs.' Mot for J. on the Pleadings ("Opp'n to Westerman") [Dkt. #169]; Pls.' Mem. of P. & A. in Opp'n to Kratz Defs.' Mot. for Summ. J. on Counts III and IV of the Am. Compl. ("Opp'n to Kratz") [Dkt. #170], and defendants replied in support of their motions, Reply in Supp. of Westerman Defs.' Mot. for J. on the Pleadings as to Count II [Dkt. #172]; Kratz Defs.' Reply Mem. in Supp. of their Mot. for Summ. J. on Counts III and IV of the Am. Compl. [Dkt #173].  I took the motions under advisement shortly thereafter.

## STANDARD OF REVIEW

The Westerman defendants move for judgment on the pleadings.  "[A] party may move for judgment on the pleadings" "[a]fter the pleadings are closed . . . but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  The motion shall be granted "if the moving party demonstrates that no material fact is in dispute and that it is entitled to judgment as a matter of law." *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1370 (D.C. Cir. 2008) (quoting *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C. Cir. 1992)).  In ruling on the motion, the court must "tak[e] the complaint's factual allegations as true." *Mpoy v. Rhee*, 758 F.3d 285, 287 (D.C. Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).  "[A]ny ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the pleader," *Schuler*, 514 F.3d at 1370 (quoting *Doe v. DOJ*, 753 F.2d 1092, 1102 (D.C. Cir. 1985)) (emphasis deleted), and the court should "accord the benefit of all reasonable inferences to the non-moving party," *Jones v. Law Office of*

*David Sean Dufek*, 77 F. Supp. 3d 134, 137 (D.D.C. 2015), *aff'd*, 830 F.3d 523 (D.C. Cir. 2016), *cert. denied*, 137 S. Ct. 1336 (2017).

The Kratz defendants move for summary judgment. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In making that determination, the court 'must view the evidence in the light most favorable to [the nonmoving party], draw all reasonable inferences in [their] favor, and eschew making credibility determinations or weighing the evidence.'" *Calhoun v. Johnson*, 632 F.3d 1259, 1261 (D.C. Cir. 2011) (quoting *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003)).

## ANALYSIS

**A.    Motion for Judgment on the Pleadings as to Count Two**

The Court of Appeals remanded the second count so that this Court could "interpret the complaint in the first instance and decide whether Seed waived any remaining claims." *Seed II*, 832 F.3d at 339. "[I]f the allegations in the complaint cover such a claim and Seed did not concede it, Seed could seek damages based on the Westerman defendants' faulty advice about the timing of its (now dismissed) claims against the Kratz defendants." *Id.*

The first question I must answer is "whether the second count [of the amended complaint] alleges damages stemming from [plaintiffs'] failure to pursue their malpractice

5

claims sooner due to the defendants' erroneous advice about the significance of the Federal Circuit appeal." *Id.* The Westerman defendants contend that our Circuit' opinion answers this question in the negative. *See* Mem. in Supp. of Westerman Defs.' Mot for J. on the Pleadings as to Count II 10–12 [Dkt. #161-1]. But that is plainly wrong; if our Circuit had answered this question, there would be no need for it to ask me to do so "in the first instance."[2]

Turning to the amended complaint, I find that it contains allegations that are consistent with a claim that defendants' advice caused plaintiffs to underestimate the importance of the Federal Circuit appeal (and therefore delayed the discovery of their malpractice claims).   To begin with, the amended complaint states that defendants counseled plaintiffs that "even if Seed lost the pending Federal Circuit appeal, the patent application would thereafter 'be returned to the Examiner' and Seed would be permitted to 'add or amend claims' and otherwise protect its rights to its invention." Am. Compl. ¶ 49 (internal citations omitted).  It also states that the behavior of defendants "had the effect of lulling [p]laintiffs into believing that their rights would be protected." Am. Compl. ¶¶ 34, 47. Although these statements may have only been intended as support for the claim that defendants' "incorrect advice was the proximate cause of [p]laintiffs' loss of royalties that would have been earned had [p]laintiffs agreed to settle with the owner of the Stevens

---

[2]     The Westerman defendants' argument is based on our Circuit's holding "that Seed had inquiry notice of an injury upon receiving the Federal Circuit decision." *Seed II*, 832 F.3d at 334–35. Although that holding might prevent plaintiffs from relying on damages stemming from advice given *after* the Federal Circuit's decision was announced, the amended complaint also contains allegations concerning advice given *before* the Federal Circuit's decision was announced.

patent," Am. Compl. ¶ 50, they arguably admit of some ambiguity. Thus, on the face of the complaint I cannot rule out the possibility that plaintiffs intended also to assert a separate claim for damages resulting from the delayed discovery of their malpractice claims. *See Schuler*, 514 F.3d at 1370 ("[A]ny ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the pleader." (emphasis deleted)).

Having resolved any ambiguity in favor of plaintiffs and thereby concluded that the amended complaint plausibly alleges damages stemming from defendants' erroneous advice, I must next determine "whether Seed waived those damages." *Seed II*, 832 F.3d at 339. When this case was last before me, plaintiffs purported to withdraw the second count of their amended complaint, stating they would "not be pursuing that cause of action." Pls.' Mem. of P. & A. in Opp'n to Kratz Defs.' Mot. for Summ. J. 6 ("Opp'n to First Kratz Mot. for Summ. J.") [Dkt. #137]. Plaintiffs now argue, however, as they did for the first time on appeal, that their withdrawal of the second count was only a partial withdrawal. Specifically, they assert that the second count of their amended complaint asserted two types of damages, and that although they withdrew the claim for damages from not accepting a settlement, they did not withdraw the claim for damages resulting from their reliance on defendants' advice concerning the importance and finality of the Federal Circuit appeal. According to plaintiffs, the limited nature of their previous concession is shown by the fact that their prior "stipulation never mentions a waiver of any claims under Count II, and never mentions a waiver of any damages other than those arising from a failure to enter into a settlement agreement with Stevens." Opp'n to Westerman 10 (emphasis deleted).

Plaintiffs are mistaken. To begin with, their prior stipulation does expressly mention the waiver of "claims" under count two. It both refers to the "withdrawn *claim* for damages relating to the Stevens settlement proposals," Pls.' Mem. of P. & A. in Opp'n to Westerman Defs.' Consolidated Mot. for Summ. J. 9 [Dkt. # 138] (emphasis added), and states that the "factual allegations contained in Count II" concerning "defendants' 'lulling' activity"—i.e., the delaying of the discovery of plaintiffs' malpractice claims by misapprehending the significance of the Federal Circuit appeal—are "not [relevant] to any specific *claim* for damages." *Id.* (emphasis added). Equally plain is the breadth of that stipulation. In addition to the phrase just quoted, which on its face encompasses "any specific claim for damages" brought under count two, plaintiffs represented to the Court that they had "informed defendants that they were not aware of damages arising from Count II that would be different or greater than the damages under Count I," Opp'n to First Kratz Mot. for Summ. J. 41. This broad language clearly waives any claim for damages outside of count one, and thus cannot be squared with plaintiffs' current contention that they only partially withdrew count two. I therefore conclude based on plaintiffs' prior statements that they have waived *any* claim for damages under the second count of the amended complaint. *Cf. El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 876 (D.C. Cir. 2014) (holding parties to prior admissions in briefs and other filings).

Plaintiffs raise one final issue. They argue that even if the scope of their prior waiver was "ambiguous," that cannot be held against them because "[j]udical admissions 'must be deliberate, express and unequivocal.'" Opp'n to Westerman 10. This argument misses the mark. Plaintiffs' prior statements were clear. They used broad, general language to delimit

the scope of their waiver, and it is presumed, absent some indication to the contrary, that general terms should be accorded "their full and fair scope" and not "be arbitrarily limited." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 101 (2012) (general-terms canon).  To be sure, plaintiffs did not say in so many words that they were withdrawing a claim for the delayed discovery of their malpractice claims.  But that omission "does not demonstrate ambiguity"; "[i]t demonstrates breadth." *United States v. Monsanto*, 491 U.S. 600, 609 (1989) (construing general terms in statute).   Indeed, although I gave plaintiffs the benefit of the doubt in deciding whether their amended complaint plausibly pleads a claim for the delayed discovery of their malpractice claims, it is quite possible that the reason plaintiffs' waiver of count two does not specifically identify that claim is because plaintiffs never intended to bring it in the first place (and thus could not identify a claim they had not considered).  In any event, plaintiffs' decision not to spell out every possible application of the comprehensive waiver language they used "does not lessen the force of the [waiver's] plain language." *Id.*  As such, the Court will grant judgment on pleadings for the Westerman defendants as to count two.

**B.     Motion for Summary Judgment on Counts Three and Four**

The Court of Appeals also reinstated the third and fourth counts and "remand[ed] for the district court to adjudicate them in the first instance." *Seed II*, 832 F.3d at 335. When this case was last before me, I found counts three and four moot because they were contingent on the dismissal of at least one of the first two counts on statute-of-limitations grounds, an event that had not occurred under my ruling.  However, because our Circuit

"concluded that the claims against the Kratz defendants are barred by the statute of limitations," it also determined that "the contingent counts must be adjudicated." *Id.*

Despite this clear instruction from the Court of Appeals, the Kratz defendants contend that the third and fourth counts are moot. They contend this is so because the court found, applying the continuous-representation rule, that the statute of limitations does not bar any claims against the Westerman defendants. Kratz Defs.' Mem. of P. & A. in Supp. of Their Mot for Summ. J. on Counts III and IV 4 ("Kratz Mem.") [Dkt. #162-1]. But that finding does not render the remaining counts moot. Our Circuit expressly held that dismissal of counts one and two as to the Kratz defendants was sufficient to reinstate counts three and four and to require adjudication of those counts on the merits. *Seed II*, 832 F.3d at 335. The Kratz defendants' argument would require me to disregard the Circuit's determination, something I am not free to do.

Fortunately for the Kratz defendants, their analysis is on firmer footing when applied to the merits of the third and fourth counts. On the merits, the Kratz defendants argue they are entitled to summary judgment because, in light of our Circuit's finding that the claims against the Westerman defendants were timely, "there is no set of facts by which a reasonable jury could find causation or damages as alleged in Counts III and IV, *i.e.*, [that] the purportedly incorrect accrual date 'caused' the claims against the Westerman defendants to be dismissed, which 'damaged' Seed such that it cannot pursue a malpractice claim." Kratz Mem. 7–8. I agree. James Armstrong, a member of the Kratz firm, suggested to plaintiffs in an email sent on May 20, 2005, that plaintiffs' malpractice claims against the Westerman defendants had ripened on June 10, 2004. Kratz Defs.' Exs. 12 and

14 [Dkts. ##162-14, 162-16].[3]  Plaintiffs allege that this error—their claims in fact ripened

no later than May 4, 2004, *Seed II*, 832 F.3d at 334—"caused Seed to believe that it had

until at least June 10, 2007, to assert timely malpractice claims against [d]efendants." Am.

Compl. ¶ 37.  But, even if that is so, the error caused plaintiffs no harm because the

continuous-representation rule tolled the statute of limitations until at least May 3, 2007,

the date at which plaintiffs entered a tolling agreement with the Westerman defendants that

preserved their claims as to those defendants.  In other words, as I found and the Court of

Appeals affirmed, plaintiffs' claims against the Westerman defendants were timely.  *See*

*Seed II*, 832 F.3d at 332–33.  Because these claims were timely, plaintiffs cannot show

damages stemming from Armstrong's advice about when those claims accrued.

Plaintiffs concede that they cannot show causation or damages in regard to the

Westerman defendants.  But, they contend, that should not result in summary judgment

because "causation and damages are direct with respect to Count I claims against the Kratz

[d]efendants, which the D.C. Circuit held to be time-barred." Opp'n to Kratz 11 (emphasis

deleted).  Plaintiffs are mistaken.  Our Circuit's determination entitled plaintiffs to

adjudication on the merits of the contingent counts contained in their amended complaint,

nothing more.  The contingent counts assert claims against the Kratz defendants based on

the advice given by Armstrong in the spring of 2005, i.e., the May 20 email concerning the

statute of limitations.  But that email, and the rest of the email exchange between the

parties, is perfectly clear that Armstrong was advising plaintiffs about the accrual of their

---

[3]      Plaintiffs refer to this email by the date they received it, which, due to the time difference between
the United States and Japan, was May 21, 2005.

claims against the Westerman defendants, not about the accrual of any claims against himself or the Kratz firm (which had stopped representing Seed in connection with the patent matter in the fall of 2003).  For example, in the May 20 email, Armstrong wrote in response to a comment from Seed's agent about the company's efforts to negotiate a "settlement with the Westerman office" that the time was "ripe for immediately demanding a substantial monetary settlement."  Kratz Defs.' Ex. 12, at 3–4.  Earlier in the same exchange, Armstrong expressed his opinion that Seed "should demand return of all the money paid to Westerman plus ten or twenty times that amount for loss of [the] patent right."  Kratz Defs.' Ex. 12, at 2.  Nowhere is a claim against Armstrong or the Kratz firm suggested or discussed.  Plaintiffs' argument thus does nothing to alter my conclusion that the Kratz defendants are entitled to summary judgment on contingent counts three and four.

## CONCLUSION

For all of the above reasons, the Court will grant judgment on the pleadings for the Westerman defendants as to count two, and summary judgment for the Kratz defendants on counts three and four.  Count one will proceed to trial.  An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge