**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**



FILED
JUL 17 2019
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

SEED COMPANY LIMITED, *et al.*, )
)
      Plaintiffs, )
)
v. )   Civil Case No. 08-355 (RJL)
)
WILLIAM F. WESTERMAN, *et al.*, )
)
      Defendants. )

## MEMORANDUM OPINION
(July **16**, 2019) [Dkt. # 180]

This legal malpractice case has been remanded to this Court for a trial to resolve Count I of the operative complaint. Plaintiffs, Seed Company Limited, and its president, an inventor, Shigeru Tamai (collectively, "Seed" or "plaintiffs"), however, request that I certify for appeal under Federal Rule of Civil Procedure 54(b) my July 18, 2017 Order dismissing the three remaining counts (Counts II, III, and IV) and stay proceedings as to Count I until the appeal of Counts II, III, and IV is complete. For the following reasons, Seed's motion must be GRANTED.

### BACKGROUND[1]

In its May 21, 2008 amended complaint, Seed alleges two primary and two

---

[1] Additional background about this case can be found in *Seed Co. Ltd. v. Westerman*, 266 F. Supp. 3d 143, 144-46 (D.D.C. 2017) ("*Seed II*"); *Seed Co. Ltd. v. Westerman*, 832 F.3d 325, 329-31 (D.C. Cir. 2016) ("*Seed I*"); and *Seed Co. Ltd. v. Westerman*, 62 F. Supp. 3d 56, 59-62 (D.D.C. 2014). This opinion merely sets forth the facts relevant to my decision on Seed's pending motions to stay and for entry of final

contingent legal malpractice claims. The claims all stem from the same root allegation: Seed lost its right to patent a correction tape dispenser in the United States because attorneys from Armstrong, Westerman, Hattori, McLeland & Naughton, LLP ("the Armstrong firm") failed to attach an English translation of a foreign patent application to a motion filed with the United States Board of Patent Appeals and Interferences ("the Board"). *See* Am. Compl. ¶¶ 13-31 [Dkt. #29]. This allegedly deficient motion was part of an attempt by Seed to prove that it had invented the correction tape dispenser at issue *before* Christopher Stevens ("Stevens"), a competing inventor who had also applied for a correction tape dispenser patent in the United States. *See id.* ¶¶ 19-22.

To establish that it was first to invent correction tape dispenser, Seed attached two earlier filed patent applications to its motion. *See* Am. Compl. ¶ 22. One had been filed in Japan; the other had been filed pursuant to the Patent Cooperation Treaty ("PCT"). *See id.* Both were written in Japanese. *See id.* ¶¶ 13-14. The Board's rules required that Seed include an English translation of each foreign language application submitted with its motion. *See Stevens v. Tamai*, 366 F.3d 1325, 1328 (Fed. Cir. 2004) (citing 37 C.F.R. § 1.647 (2003)). But the attorneys representing Seed attached a translation only of the earliest filed application, the one filed with the Japanese Patent Office. *See* Am. Compl. ¶ 22. Seed's PCT application was submitted untranslated. *See id.*

When deciding Seed's motion, the Board declined to consider the untranslated PCT

---

judgment.

application but did, at first, rule in Seed's favor. *See* Am. Compl. ¶ 23. That success, however, was short lived. Stevens appealed, and the United States Court of Appeals for the Federal Circuit ("Federal Circuit") reversed the Board's determination that Seed was first to invent the correction tape dispenser. *See id.* ¶ 31; *see generally Stevens*, 366 F.3d at 1327-35. According to the Federal Circuit, Seed's failure to file a translation of its PCT application precluded Seed from relying on either the Japanese application or the PCT application to establish the date it reduced its correction tape dispenser to practice. *See* Am. Compl. ¶ 31; *Stevens*, 366 F.3d at 1335. As a result, Stevens was awarded the United States patent on the correction tape dispenser, and Seed's patent application had to be abandoned. *See* Am. Compl. ¶¶ 31, 39.

Count I of the amended complaint alleges that this failure to attach a translation of the PCT application to Seed's motion before the Board constitutes malpractice. *See* Am. Compl. ¶¶ 42-46. In Count II, Seed claims that its attorneys committed further malpractice by providing inaccurate legal advice about the consequences of Stevens's appeal to the Federal Circuit after Seed's initial success before the Board. *See id.* ¶¶ 47-52. Counts I and II are both alleged against all named defendants.[2]

Counts III and IV, by contrast, are alleged against a subset of defendants. In October 2003, while Stevens's appeal to the Federal Circuit was pending, the Armstrong firm split up. *See Seed I*, 832 F.3d at 330. Some Armstrong attorneys formed Westerman, Hattori,

---

[2] The term "defendants" is used throughout this Memorandum Opinion to refer collectively to all named defendants. Two subsets of defendants are referred to as the "Westerman defendants" and "Kratz defendants," as explained below.

Daniels, and Adrian, LLP (the "Westerman defendants"), which continued representing Seed. *See id.* Others formed Kratz, Quintos, and Hanson, LLP (the "Kratz defendants"), the Armstrong firm's successor in interest. *See id.*; Am. Compl. ¶ 4. Counts III and IV of the amended complaint were pleaded as contingent claims, raised only against the Kratz defendants, and to be asserted only in the event Count I or II was dismissed on statute of limitation grounds. *See* Am. Compl. ¶¶ 53-66. In these contingent claims, Seed alleges that the Kratz defendants gave inaccurate legal advice about the date the statute of limitations would expire for malpractice claims arising from the Armstrong firm's prosecution of Seed's correction tape dispenser patent application. *See id.*

All defendants did, in fact, raise statute of limitations defenses to Counts I and II of the amended complaint. In August 2016, our Court of Appeals addressed those defenses and held the claims timely only as to the Westerman defendants. *See Seed I*, 832 F.3d at 332, 339. As alleged "against the Kratz defendants," the Court of Appeals deemed Counts I and II "barred by the statute of limitations." *Id.* at 339.

This dismissal of Counts I and II on statute of limitations grounds as to the Kratz defendants ripened Counts III and IV. The Court of Appeals further held, with respect to Count I, that neither Seed nor the Westerman defendants were entitled to summary judgment, leaving resolution of that claim "for the factfinder at trial." *Seed I*, 832 F.3d at 337-38. As a result of our Circuit Court's holdings, then, Counts I and II remained pending against the Westerman defendants only—with Count I earmarked for trial—and Counts III and IV were newly ripe as to the Kratz defendants.

On remand, the Westerman defendants moved for judgment on the pleadings as to Count II, and the Kratz defendants moved for summary judgment on Counts III and IV. I granted both motions on July 18, 2017, reasoning that Seed had waived Count II earlier in this litigation and that undisputed facts foreclose Seed's success on the merits of Counts III and IV. *See Seed II*, 266 F. Supp. 3d at 150; Order (July 18, 2017) [Dkt. # 175]. Thus, as this litigation now stands, Count I must be tried as to the Westerman defendants, and no claims remain pending against the Kratz defendants.

Seed now moves for Rule 54(b) certification of the July 18, 2017 Order dismissing Counts II, III, and IV and for a stay of proceedings on Count I. *See* Pls.' Mot. Under Rule 54(b) [Dkt. # 180]. Seed, in effect, wants to appeal my July 18, 2017 decision resolving Counts II, III, and IV as a matter of law before this case proceeds to trial on Count I. All defendants oppose the request. *See* Defs.' Joint Opp. to Pls.' Rule 54(b) Mot. [Dkt. # 182].

## STANDARD OF REVIEW

"When an action presents more than one claim for relief," Federal Rule of Civil Procedure 54(b) permits a district court to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). Deciding whether to certify a judgment under Rule 54(b) therefore involves two steps: "A district court must first determine that it is dealing with a 'final judgment,'" and if it is, "the district court must go on to determine whether there is any just reason for delay." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7-8 (1980).

The first step is satisfied when a court has issued a "decision [that] is an ultimate disposition regarding a party's claim for relief." *Serv. Employees Int'l Union Nat'l Indus. Pension Fund v. Sci. & Commercial Sys. Corp.*, 249 F. Supp. 3d 130, 133 (D.D.C. 2017).

At the second step, courts "weigh[] both 'justice to the litigants' and 'the interest of sound judicial administration.'" *Brooks v. Dist. Hosp. Partners, L.P.*, 606 F.3d 800, 806 (D.C. Cir. 2010) (quoting *Curtiss-Wright*, 446 U.S. at 6, 8). The considerations involved in this balancing "will inevitably differ from case to case." *Id.* But they include the determinations "whether the claims under review [are] separable from the others remaining to be adjudicated and whether the nature of the claims already determined [is] such that no appellate court [will] have to decide the same issues more than once even if there [are] subsequent appeals." *Id.* (quoting *Curtiss-Wright*, 446 U.S. at 8). Courts often "employ[] a list of five relevant factors"— referred to as the *Allis-Chalmers* factors—to guide the decision whether a case presents any just reason for delay. *Serv. Employees Int'l*, 249 F. Supp. 3d at 133. The factors are:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Id.* (quoting *Allis-Chalmers Corp. v. Phila. Elec. Co.*, 521 F.2d 360, 364 (3d Cir. 1975)); *see also Planned Parenthood v. DeWine*, 696 F.3d 490, 503 (6th Cir. 2012) (confirming

that district courts should consider the *Allis-Chalmers* factors); *Braswell Shipyards, Inc. v. Beazer East, Inc.*, 2 F.3d 1331, 1335-36 (4th Cir. 1993) (same). While helpful, "[t]hese factors are not . . . all-inclusive." *Serv. Employees Int'l*, 249 F. Supp. 3d at 133. The ultimate decision whether there is a just reason for delay remains in "the sound judicial discretion of the district court." *Curtiss-Wright*, 446 U.S. at 8.

As for Seed's request to stay proceedings on Count I pending appeal, the "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Philipp v. Fed. Republic of Germany*, 253 F. Supp. 3d 84, 88 (D.D.C. 2017) (quoting *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998)). When deciding whether to grant a stay, courts "must weigh competing interests and maintain an even balance." *Id.* (quoting *Air Line Pilots Ass'n*, 523 U.S. at 879 n.6).

## ANALYSIS

Seed has demonstrated both that the Court should direct entry of final judgment on Counts II, III, and IV under Rule 54(b) and that proceedings as to Count I should be stayed while this case is on appeal.

### I. Dismissing Counts II, III, and IV as a Matter of Law Was a Final Judgment Under Rule 54(b)

The first prong of the Rule 54(b) test is not disputed here. The parties agree that the Order dismissing Counts II, III, and IV constitutes a final judgment as to each claim, and they are correct. Those three claims have all been resolved as a matter of law. "[U]nless

7

and until those claims are appealed, no further court action will take place" on any of the three claims, and but for the continued viability of Count I, the dismissal of Counts II, III, and IV "would qualify as an immediately appealable 'final judgment' under 28 U.S.C. § 1291." *Am. Forest Res. Council v. Ashe*, 301 F.R.D. 14, 18 (D.D.C. 2014). That is all that is required for a judgment to be "'final' for purposes of Rule 54(b)." *Id.*

## II. There Is No Just Reason to Delay Entry of Final Judgment

As such, the parties focus their dispute on the second step of the Rule 54(b) test: whether there is just reason to delay entry of final judgment on Counts II, III, and IV. After carefully balancing all relevant considerations, including the *Allis-Chalmers* factors, I find that there is no just reason to delay here.

The first *Allis-Chalmers* factor—the relationship between Seed's claims—makes clear that certification of final judgment is the most efficient way to proceed in this case. Seed alleges that all four of its claims arise from the conduct of former law partners and relate to the prosecution of a single patent application. Given the overlapping subject matter, a trial on Count I would likely involve similar witnesses, evidence, and arguments to a trial on Counts II, III, and IV. But at the same time, appellate review of the Order dismissing Counts II, III, and IV will address issues distinct from the Count I allegations that must be tried against the Westerman defendants. Count II was dismissed as waived, rather than on its merits, and Counts III and IV are alleged against the Kratz defendants only. Any challenge to the dismissal of those claims on appeal will therefore turn on the scope of Seed's waiver of Count II and on the question whether a reasonable jury could

8

find that the Kratz defendants committed malpractice by misrepresenting an applicable statute of limitations to Seed—issues that will not be raised at a trial on Count I. This confluence of the likelihood that two trials will require duplicative presentations with the unlikelihood that a trial on Count I will inform a subsequent appeal of Counts II, III, and IV heavily favors certification of final judgment on the latter claims. Certification obviates the possibility of separate trials without hampering the Circuit Court's review of any claim. The parties', the witnesses', and the Courts' resources are most efficiently employed by holding a single trial after the Court of Appeals has confirmed whether Counts II, III, and IV were properly resolved as a matter of law.

With respect to the second factor, future case developments are not likely to moot Seed's appeal of the dismissal of Counts II, III, and IV. If this case proceeds to trial on Count I only and the jury finds in Seed's favor, Seed will, in all likelihood, appeal the dismissal of Counts II, III, and IV, arguing that resolution of those claims could affect the amount of damages and the parties responsible for paying those damages. After all, Count I is set to be tried against the Westerman defendants only, and Seed has, from the outset of this case, sought damages from both the Westerman and Kratz defendants. On the other hand, if a jury were to find for the Westerman defendants at a trial on Count I, Seed will still, in all likelihood, appeal the dismissal of Counts II, III, and IV, arguing in this scenario that a jury finding for the Westerman defendants does not resolve the question whether the

Kratz defendants committed malpractice.[3] Trying Count I before Seed is allowed to appeal Counts II, III, and IV is unlikely, therefore, to preclude any appeal.[4] As Seed puts the point, it will appeal the dismissals "either . . . now, pursuant to Rule 54(b), or after the first trial is over." Pls.' Rep. Br. at 4 [Dkt. # 183]. But sooner or later, the issues will find their way to our Circuit Court, and the parties will have to devote resources to litigating the appeal. Accordingly, anticipated future case developments do not supply a reason to delay entry of final judgment on Counts II, III, and IV.

Third, this case does not present any danger that the Court of Appeals will need to consider the same issue twice. As explained, certifying the July 18, 2017 Order for appeal

---

[3] Counts III and IV allege that faulty legal advice given by the Kratz defendants caused Seed to file its primary malpractice claims after the statute of limitations expired. *See* Am. Compl. ¶¶ 53-66. According to Seed, Count II includes allegations that malpractice committed by the Westerman defendants caused Seed's claim against the Kratz defendants to be untimely. *See* Pls.' Opp. to Westerman Defs.' Mot. J. as to Count II at 12 [Dkt. # 169] ("[T]he Westerman Defendants' malpractice (as alleged in Count II) caused the loss of its claim against the Kratz Defendants . . . ."). A trial on Counts II, III, and IV would therefore address the questions whether the Kratz defendants committed malpractice in their representation of Seed and, if so, whether the Kratz defendants, the Westerman defendants, or both committed further malpractice causing Seed to file its claim against the Kratz defendants out of time.

[4] It is, of course, *possible* that a jury verdict for the Westerman defendants on Count I will reflect the jury's conclusion that no member of the Armstrong firm committed malpractice when representing Seed before the Board. If that possibility comes to fruition, the verdict on Count I could potentially moot Counts II, III, and IV. But evaluating whether a verdict about the Westerman defendants necessarily applies to claims that the Kratz defendants committed malpractice requires knowledge of the evidence and arguments actually presented to the jury that decides Count I. *Cf. Tucker v. Arthur Andersen & Co.*, 646 F.2d 721, 728-29 (2d Cir. 1981) (explaining, in the context of collateral estoppel, that "a general verdict . . . rendered in favor of a defendant" does not establish that a "question was actually decided or was essential to the judgment" when "several issues [were] litigated, [and] it is not known what factual issues the jury . . . decided, [because] the defendant was entitled to the verdict if the plaintiff failed to persuade the jury as to any element of his claim"). Such an evaluation is speculative at this juncture, and speculation about possible mootness does not outweigh the parties' interest in avoiding multiple trials. *See Chamberlain v. Harnischfeger Corp.*, 516 F. Supp. 428, 430 (E.D. Pa. 1981) ("Of course, it is possible that plaintiff may prevail against defendant Harnischfeger and be satisfied with that judgment. In that eventuality, whether or not Phillips is liable will be moot. But that likelihood is insufficient in itself to outweigh plaintiff's present practical choice between two simultaneous trials in two jurisdictions or two successive trials in the same jurisdiction. Plaintiff's predicament commends certification.").

will require the Court of Appeals to determine whether Seed waived Count II in its entirety during this litigation and whether undisputed facts resolve Counts III and IV. If the Court of Appeals affirms the dismissal of the claims, Counts II, III, and IV will be resolved, and no court need address them further. If the Court of Appeals reverses, Counts II, III, and IV will likely have to be decided by a jury, but the scope of Seed's waiver of Count II and the determination whether the Kratz defendants are entitled to summary judgment on Counts III and IV will be law of the case. Either way, there will be no duplicative appeal on these issues down the road.[5]

The fourth *Allis-Chalmers* factor "concern[s] . . . the possibility that a defendant will have to pay over monies to a plaintiff only to be reimbursed if defendant prevails on [an] as yet unadjudicated counterclaim." *Allis-Chalmers*, 521 F.2d at 366. There is no possibility of that here. The July 18, 2017 Order resolves claims only by dismissing them and therefore imposes no damages whatsoever. Because no monetary obligations will be incurred if that Order is certified for appeal, worries about future reimbursement are no reason to delay the appeal. *See Serv. Employees Int'l*, 249 F. Supp. 3d at 135 (finding no just reason to delay entry of final judgment when the "case [did] not include a potential set-off").

The miscellaneous *Allis-Chalmers* factors—"such as delay, economic and solvency

---

[5] The potential for duplicative appeals arises when issues being certified for "appeal . . . are common to the remaining parties and claims." *Navajo Nation v. Peabody Holding Co.*, 209 F. Supp. 2d 269, 274 (D.D.C. 2002). The claims in this case present potential *evidentiary* overlap, but the legal issues dispositive of Counts II, III, and IV are distinct from the claim that remains in the case. *See supra* pp. 8-9.

11

considerations, shortening the time of trial, frivolity of competing claims, expense, and the like," *Allis-Chalmers Corp.*, 521 F.2d at 364—also favor certifying the July 18, 2017 Order as a final judgment under Rule 54(b). The record here includes no indication that any defendant is on the brink of insolvency. And while delaying the resolution of a case is never desirable, the countervailing efficiencies gained by permitting Seed's appeal of Counts II, III, and IV before trying Count I could save time and expense in the long run.

Defendants point to a different sort of delay. They argue that, because Seed waited ten months from the date Counts II, III, and IV were dismissed to file its motion for certification, there must be just reason to further delay Seed's appeal of those claims' dismissal. But Seed did not miss any deadline here. "Rule 54(b), unlike a myriad of other provisions in the civil rules, contains no express temporal restrictions." *Bank of New York v. Hoyt*, 108 F.R.D. 184, 185 (D.R.I. 1985) (citations omitted). And due to the posture of this case, Seed's delay in moving for certification implies little about the justness of further delaying resolution of its appeal. Seed's delay in moving occurred after discovery had closed but before any trial date was set, an interlude during which minimal litigation resources needed to be expended. The question before me now is whether there is just reason to delay entry of final judgment on Counts II, III, and IV until after a trial on Count I. That is a question about how best to proceed through a period during which the parties and the Court will need to devote significant resources to this litigation. Seed's delay in seeking certification while the case moved no closer to trial is not a just reason to proceed inefficiently going forward.

Defendants' contention that Seed's appeal is futile is similarly unpersuasive. I agree, of course, that my dismissal of Counts II, III, and IV was a correct application of the law that should be affirmed. But Rule 54(b) certification is not reserved for close questions of law. *See Steinle v. City & Cty. of San Francisco*, No. 16-2859, 2017 WL 2021360, at *4 n.3 (N.D. Cal. May 12, 2017) ("Unlike analysis of a motion for interlocutory appeal under § 1292(b), the Rule 54(b) test does not require this Court to consider whether there are substantial grounds for a difference of opinion, and the Court declines to speculate as to Plaintiffs' likelihood of success."). Any appraisal of the futility of Seed's appeal is, accordingly, inappropriate.

In any event, if defendants are correct that Seed's position lacks merit, all it means is certifying Counts II, III, and IV for appeal will not unduly delay the progression of this case. In our Circuit, parties may "seek[] summary disposition" of an appeal when "the merits of [a] case are so clear that expedited action is justified." *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987) (per curiam). Defendants are free to argue for such a disposition to the Court of Appeals.

Finally, defendants' futility argument is no more compelling when dressed up as a claim that certifying judgment will prejudice defendants by forcing them to incur the time and expense of defending a meritless appeal. As already discussed, Seed is likely to appeal the disposition of Counts II, III, and IV after trying Count I if it is not allowed to do so now. Declining to certify judgment on those counts will not obviate the costs of litigating any appeal, so defendants' claim that certification causes them to incur costs they would

13

not otherwise need to incur does not hold water.

Thus, for all of these reasons, there is no just reason to delay entry of final judgment as to Counts II, III, and IV of the amended complaint. In fact, this is precisely the sort of case for which certification is useful. Rule 54(b) certification can "shorten the time and expense of trial," *Planned Parenthood v. DeWine*, 696 F.3d 490, 503 (6th Cir. 2012), "eliminate much uncertainty," and "streamline the resolution of . . . remaining . . . claims," *Fox v. Baltimore City Police Dep't*, 201 F.3d 526, 532 (4th Cir. 2000); *see also Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir. 1991) (holding that certification is appropriate where "the legal issues [being certified for] appeal[] will streamline the ensuing litigation"). Over a decade into this case, Seed maintains that it should be permitted to try four separate claims, while defendants urge trial on just one claim against only a subset of the named defendants. Streamlining and eliminating uncertainty from the coming trial will benefit all parties and help to produce a more efficient resolution. The best path forward is thus a Rule 54(b) certification of the July 18, 2017 dismissals of Counts II, III, and IV.

### III. Count I Will Be Stayed During Appeal

The same considerations that compel certification of Counts II, III, and IV militate in favor of staying proceedings on Count I. The most efficient use of the parties' and the Court's resources is to conclusively resolve Counts II, III, and IV before proceeding to trial. Discovery is complete, and both Seed's and the Westerman defendants' motions for summary judgment on Count I have been denied. *See Seed I*, 832 F.3d at 335-38. The next step in adjudicating Count I is a trial, and that is the step best left until the appeal of

the remaining claims is complete. Count I will, therefore, be stayed pending the appeal of Counts II, III, and IV.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Seed's motion to direct entry of final judgment on Counts II, III, and IV and to stay further proceedings pending appeal. An Order consistent with this decision accompanies this Memorandum Opinion.

*[signature]*
RICHARD J. LEON
United States District Judge